```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF CALIFORNIA
 2
                 HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
 3

 4    UNITED STATES OF AMERICA,        )
                                       )
 5              PLAINTIFF,             )  CASE NO. 07CR00329-LAB
                                       )           07CR00330-LAB
 6         VS.                         )
                                       )  SAN DIEGO, CALIFORNIA
 7    KYLE DUSTIN FOGGO,  (1)          )  MARCH 19, 2007
      BRENT ROGER WILKES, (2)          )  11:00 A.M.
 8                                     )
      BRENT ROGER WILKES, (1)          )
 9    JOHN THOMAS MICHAEL,(2)          )
                                       )
10              DEFENDANTS.            )
      _____)
11

12                       REPORTER'S TRANSCRIPT

13                     PRETRIAL CONFERENCE (1)
                       BOND HEARING        (1,2)
14                     PRETRIAL CONFERENCE (1,2)

15    APPEARANCES:
      FOR THE GOVERNMENT:        KAREN P. HEWITT, U.S. ATTORNEY
16                               BY: PHILLIP L.B. HALPERN, ESQ.
                                     JASON A. FORGE, ESQ.
17                                   VALERIE CHY, ESQ.
                                 ASSISTANT U.S. ATTORNEYS
18                               880 FRONT STREET
                                 SAN DIEGO, CA. 92101
19
      FOR DEFENDANT FOGGO:       AKIN GUMP STRAUSS HAUER & FELD
20                               BY:  W. RANDOLPH TESLIK, ESQ.
                                      ANDREW J. DOBER, ESQ.
21                               1333 NEW HAMPSHIRE AVE., N.W.
                                 WASHINGTON, DC 20036-1564
22
      FOR DEFENDANT WILKES:      GERAGOS & GERAGOS
23                               BY:  MARK J. GERAGOS, ESQ.
                                 350 SOUTH GRAND AVENUE, 39TH FL.
24                               LOS ANGELES, CA. 90071

25
```

2

```
1    CONTINUED APPEARANCES:

2    FOR DEFENDANT MICHAEL:        MCKENNA LONG & ALDRIDGE
                                   BY:  GARY K. BRUCKER, JR., ESQ.
3                                  750 B STREET, SUITE 3300
                                   SAN DIEGO, CA 92101
4                                        -AND-
     TELPHONIC APPEARANCE:         GOODWIN PROCTER
5                                  BY:  DAVID B. PITOFSKY, ESQ.
                                       YVONNE CHRISTOBICI, ESQ.
6                                  599 LEXINGTON AVENUE
                                   NEW YORK, NY 10022
7

8

9

10
     COURT REPORTER:              EVA OEMICK
11                                OFFICIAL COURT REPORTER
                                  UNITED STATES COURTHOUSE
12                                940 FRONT STREET, STE. 2190
                                  SAN DIEGO, CA 92101
13                                TEL: (619) 615-3103

14

15

16

17

18

19

20

21

22

23

24

25
```

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    **SAN DIEGO, CALIFORNIA-MONDAY, MARCH 19, 2007-11:00 A.M.**

2              THE CLERK:  CALLING NO. 7 AND NO. 8 ON THE CALENDAR,

3    07CR00329, UNITED STATES OF AMERICA VERSUS KYLE FOGGO AND

4    BRENT ROGER WILKES; AND

5              07CR00330, UNITED STATES OF AMERICA VERSUS BRENT

6    WILKES AND JOHN THOMAS MICHAEL.

7              IF ALL COUNSEL COULD PLEASE STATE THEIR APPEARANCE

8    FOR THE RECORD.

9              MR. HALPERN:  GOOD MORNING, YOUR HONOR.  PHIL

10   HALPERN, JASON FORGE, AND VALERIE CHU FOR THE GOVERNMENT.

11             MR. GERAGOS:  GOOD MORNING, YOUR HONOR.

12             MARK GERAGOS, G-E-R-A-G-O-S, FOR MR. WILKES.

13             THE COURT:  GOOD MORNING.

14             MR. TESLIK:  GOOD MORNING, YOUR HONOR.  RANDOLPH

15   TESLIK AND ANDREW DOBER FOR MR. FOGGO.

16             THE COURT:  GOOD MORNING.

17             MR. BRUCKER:  GOOD MORNING, YOUR HONOR.  GARY

18   BRUCKER OF MCKENNA LONG & ALDRIDGE SPECIALLY APPEARING ON

19   BEHALF OF JOHN MICHAEL.

20             MR. PITOFSKY:  YOUR HONOR, THIS IS DAVID PITOFSKY ON

21   THE PHONE.  I HAVE MY CLIENT, MR. MICHAEL, WITH ME.  THANK YOU

22   FOR ALLOWING US TO APPEAR BY PHONE THIS MORNING.

23             THE COURT:  YOU'RE WELCOME, MR. PITOFSKY.

24             MR. MICHAEL, YOU'RE ON AS WELL?

25             DEFENDANT MICHAEL:  YES, SIR.

PDF created with pdfFactory trial version www.pdffactory.com

4

```
 1          THE COURT:  IF, AT ANY POINT, YOU CAN'T HEAR
 2   SOMETHING THAT'S BEING SAID, INDICATE RIGHT AWAY AND I'LL HAVE
 3   IT REPEATED AND HAVE PEOPLE SPEAK INTO THE MIKE.
 4          NOW, THE COURT-APPOINTED SECURITY OFFICER IS ALSO
 5   HERE TODAY.
 6          DO YOU WANT TO STATE YOUR APPEARANCE?
 7          MR. LONDERGAN:  JIM LONDERGAN, COURT SECURITY
 8   OFFICER.
 9          THE COURT:  THANK YOU.
10          THERE ARE A NUMBER OF MATTERS BEFORE THE COURT.
11          THE COURT HAS CONVENED PRE-TRIAL CONFERENCE THAT IS
12   MANDATORY UNDER THE CIPA PROVISIONS.  BEFORE WE GET TO THAT,
13   THOUGH, THERE WAS A DISPUTE -- I SIGNED A PROTECTIVE ORDER
14   THAT WAS SENT TO ME.  IT WAS INDICATED IT WAS A JOINT MOTION.
15   I ASSUME THAT EVERYONE WAS ONBOARD.  I'VE SINCE RECEIVED AN
16   OPPOSITION FROM DEFENDANT FOGGO JOINED IN BY DEFENDANT WILKES
17   THAT THEY WERE NOT ONBOARD, THAT THERE'S SOME PROVISIONS THAT
18   THEY DISPUTE OR THAT ARE CONTROVERSIAL.
19          I THINK WE SHOULD PROBABLY DEAL WITH THAT FIRST
20   SINCE I SIGNED THE INITIAL ORDER.
21          MR. HALPERN:  I SPOKE WITH DEFENSE COUNSEL ABOUT
22   THIS.  IT WAS INITIALLY, AS I INDICATED IN MY PAPERS, STYLED A
23   JOINT MOTION.  THEY THOUGHT WAS IT WAS THE TERMS OF THE
24   AGREEMENT.  IT TURNED OUT THERE WASN'T AN AGREEMENT ON THIS.
25   I CHECKED TO PUT THOSE IN THE MOVING PAPERS.  I THINK I DID.
```

PDF created with pdfFactory trial version www.pdffactory.com

1    AND WHEN THE COURT SIGNED IT RIGHT AWAY, BOTH DEFENSE COUNSEL

2    AND I HAD A DISCUSSION ABOUT IT WITH THE UNDERSTANDING THAT

3    PERHAPS THE COURT DID NOT RECOGNIZE THAT.

4              AND WITH PERMISSION, WE CONTACTED YOUR COURT CLERK.

5    WE HEARD THAT THERE WAS GOING TO BE A SUBSEQUENT HEARING.  AND

6    IN THAT TIME, IT WAS OUR UNDERSTANDING THAT THE DEFENSE COULD,

7    IN FACT, RAISE THEIR OBJECTIONS, WHICH INITIALLY THERE WERE

8    TWO OF THEM, AND THEY ADDED ONE FURTHER ONE, WHICH HAS NOW

9    BEEN BRIEFED BY BOTH SIDES.

10             THE COURT:  YOU WANT TO SPEAK TO THOSE?  I'M

11   INCLINED TO MAKE THE PROVISIONS PARALLEL, MR. HALPERN.

12             DO THEY STILL HAVE THE -- WHAT DO THEY CALL IT,

13   STAFF PHONE?

14             MR. HALPERN:  STU PHONES, YOUR HONOR.  CLASSIFIED

15   PHONES.

16             THE COURT:  DO YOU STILL HAVE THOSE?  PRESUMABLY,

17   YOU'RE USING THEM IN THIS CASE.

18             MR. HALPERN:  ABSOLUTELY.

19             THE COURT:  WHY WOULDN'T I JUST MAKE THE PROVISIONS

20   PARALLEL?  THAT'S ONE OF THEIR OBJECTIONS, IS THAT TOP SECRET

21   CLEARANCES, THEY SAY, DON'T MATTER.  THEY'RE GOING TO HAVE

22   THEM, TOO.  I'M CONCERNED.

23             MR. MAC DOUGALL HAS ATTACHED EXHIBITS THAT SHOW THAT

24   SOMEBODY -- I DON'T KNOW WHO.  I DON'T SUSPECT IT WAS THE

25   PROSECUTORS.  BUT SOMEBODY IN CONNECTION WITH THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    INVESTIGATION WAS FORECASTING THINGS ABOUT THE INVESTIGATION,

2    THE NATURE OF IT BEFORE THERE WAS AN INDICTMENT IN THE CASE.

3            I DON'T THINK I NEED TO GO ANY BROADER THAT THIS

4    CASE, BUT HE POINTS OUT THAT IT'S NOT UNHEARD OF THAT

5    SOMETIMES CONFIDENTIAL INFORMATION IS LEAKED BY THE VERY

6    GOVERNMENT THAT'S TRYING TO PROVIDE IT.

7            SO WHY NOT CURE THAT BY MAKING THE PROVISIONS

8    RECIPROCAL TO ALL PARTICIPANTS?

9            MR. HALPERN:  WELL, I THINK I HAVE A NUMBER OF

10   POINTS THAT YOUR HONOR HAS MADE THAT I'D LIKE TO RESPOND TO.

11           I GUESS THE FIRST ONE HAS TO DO, IN GENERAL, JUST

12   WITH THE QUESTION THEY HAVE THEIR CLEARANCE AND WE HAVE OUR

13   CLEARANCE.  BUT AT THE OUTSET I'D LIKE TO MAKE IT CLEAR TO THE

14   COURT THAT THE CLEARANCES WE HAVE ARE VERY DIFFERENT.  THEY

15   HAVE CLEARANCE TO GET TOP SECRET INFORMATION ON THIS CASE.

16   THAT'S TRUE.

17           IN NO WAY DID THEY UNDERGO THE BACKGROUND CHECKS

18   THAT WE ALL GO THROUGH.  THEY DON'T HAVE THE RESTRICTIONS THEY

19   HAVE ON THEM THAT WE HAVE ON US, NOR THE COURT.  THEY DON'T

20   HAVE TO DO DISCLOSURE FORMS.  THEY DON'T HAVE PERIODIC UPDATES

21   ON THEIR BACKGROUNDS.  THERE ARE VERY DIFFERENT SECURITY

22   CLEARANCES THEY GET.  AND THAT'S JUST AT THE OUTSET I WANTED

23   TO MAKE THAT POINT.

24           NUMBER TWO, WHICH I THINK IS EQUALLY IMPORTANT, YOUR

25   HONOR, IS THE ENTIRE RATIONALE FOR HAVING THE PROTECTIVE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

7

1    ORDER.  THE REASON WE'RE HERE, THE REASON THE GOVERNMENT

2    FOLLOWED THE PROTECTIVE ORDER IS BECAUSE WE DECIDED TO GIVE

3    THEM CLASSIFIED INFORMATION.  WE HAVE CLASSIFIED INFORMATION

4    UNDER OUR CONTROL.

5            THERE ARE TIMES, WHETHER IT'S IN THIS CASE OR

6    HUNDREDS OF OTHER CASES, THERE WILL ALWAYS BE POTENTIAL LEAKS

7    OF CLASSIFIED INFORMATION, OF OTHER TYPES OF INFORMATION.

8    WE'RE NOT SAYING IT DOESN'T HAPPEN IN THAT CASE OR THIS CASE

9    OR ANY CASE.

10           WHAT I CAN SAY IS IT HAS NOTHING FROM THE

11   PROSECUTION TEAM.  THERE HAVE BEEN NO LEAKS.  THERE CERTAINLY

12   HAVE BEEN NO SUGGESTIONS THAT ANY INFORMATION THAT WE HAD THAT

13   WE'RE UNDER CONTROL OF HAS BEEN LEAKED.

14           THE COURT:  I DISAGREE, MR. HALPERN.  LOOK AT THEIR

15   EXHIBIT B TO THE MOTION.  THE SECOND PARAGRAPH OF THIS

16   ARTICLE, CITIZENS FOR RESPONSIBILITY & ETHICS IN WASHINGTON,

17   READS "THE OFFICIALS, WHO SPOKE TO THE ASSOCIATED PRESS ONLY

18   ON THE CONDITION OF ANONYMITY BECAUSE GRAND JURY PROCEEDINGS

19   ARE SECRET AND THE CHARGES HAVE NOT BEEN FINALIZED, SAID

20   PROSECUTORS PLANNED TO ASK THE SAN DIEGO GRAND JURY TO RETURN

21   CHARGES HONEST SERVICE."

22           YOU AND I BOTH KNOW THAT'S A VIOLATION OF RULE 6.

23   WHOEVER DID THAT SHOULDN'T HAVE DONE IT.

24           MR. HALPERN:  CLEARLY, YOUR HONOR.  BUT I DON'T

25   THINK THERE'S AN INDICATION THAT THAT'S A MEMBER OF THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

8

1    PROSECUTION TEAM.

2            THE COURT:  IT'S SOMEBODY ASSOCIATED WITH THE

3    GOVERNMENT THAT'S FORECASTING THIS FOR THE MEDIA AND TELLING

4    THEM WHAT'S GOING ON IN FRONT OF THE GRAND JURY.

5            MR. HALPERN:  THERE ARE MANY PEOPLE ASSOCIATED WITH

6    THE GOVERNMENT.  I'M NOT GOING TO QUARREL ON THE COURT'S

7    POINT.  I THINK YOU'RE MAKING A VALID POINT.  IT DOESN'T HAVE

8    TO DO WITH CLASSIFIED INFORMATION, THOUGH.

9            THE COURT:  NO.  IT HAS TO DO WITH LEAKING AND

10   SECURITY CONCERNS.  AND ALL THEY'RE SAYING IS "LOOK, WE'RE

11   AGREEABLE TO BEING BOUND BY THESE RESTRICTIVE CONDITIONS.  BUT

12   IF THE WHOLE POINT IS TO PREVENT LEAKING, ALBEIT OF CLASSIFIED

13   INFORMATION, THEN WE THINK WHAT'S SAUCE FOR THE GOOSE IS SAUCE

14   FOR THE GANDER."

15           MR. HALPERN:  I UNDERSTAND COMPLETELY.  AGAIN, IT'S

16   NOT THAT WE OBJECT THEORETICALLY TO ALL OF THE PROPOSALS.  IN

17   FACT, WE MADE THE PROPOSALS IN THE FIRST PLACE.  WE THINK

18   THEY'RE GOOD PROPOSALS.  IT'S THE CONTEXT IT COMES IN.  WE ARE

19   BOUND ANYWAY.  I WOULD SUGGEST SOME OF THE PROPOSALS, IN TERMS

20   OF THE TWO OF US, DON'T MAKE THE SAME AMOUNT OF SENSE, IN ANY

21   EVENT.  I THINK THEY'VE REALIZED THAT.

22           AND TO CUT BACK SOME AND TRY TO TEAR IT AWAY AND SAY

23   "WELL, THESE DO MAKE SENSE," I'M NOT EVEN SURE THAT'S TRUE,

24   WITH ALL DUE RESPECT TO MR. LONDERGAN.  AND I HAVE NOTHING BUT

25   RESPECT FOR HIM, AND I THINK HE'S GOING TO DO HIS JOB IN A

PDF created with pdfFactory trial version www.pdffactory.com

9

1    FIRST-RATE MANNER.  THERE ARE OTHER PEOPLE IN THE GOVERNMENT

2    THAT WE ALSO GO TO THAT WE HAVE TO GO THROUGH.

3             THERE ARE SECURED FACILITIES WE HAVE ALL OVER THAT

4    WE HAVE TO DEAL WITH.  THERE ARE PEOPLE -- FOR EXAMPLE, EVERY

5    TIME WE WANT TO BRING ANOTHER AGENT ON THE CASE, WE SHOULDN'T

6    HAVE TO GO TO GET MR. LONDERGAN'S APPROVAL.  THIS IS SOMETHING

7    WE'VE DONE FOR THE LAST COUPLE OF MONTHS.  IT'S SOMETHING

8    WE'LL CONTINUE TO DO.

9             THE COURT:  I DON'T THINK THEY'RE ASKING THAT.

10   THEY'RE SAYING BEFORE YOU DISCLOSE CLASSIFIED INFORMATION TO

11   ANOTHER AGENT, THAT MAYBE THAT OUGHT TO BE RUN BY THE COURT

12   SECURITY OFFICER, TOO.

13            MR. HALPERN:  I THINK THAT MAKES PERFECT SENSE WHEN

14   WE'RE DEALING WITH THIS BENCH.  I DON'T THINK IT MAKES ANY

15   SENSE WHEN WE'RE DEALING WITH A TEAM OF CIA AGENTS, ALL WHO

16   HAVE CLEARANCE, ALL WHO ARE PART OF A PROSECUTION TEAM, OR IF

17   WE WANT TO BRING SOMEONE ELSE WHO'S CLEARED ONTO THE

18   PROSECUTION TEAM.

19            THE COURT:  SOMEBODY IGNORED THE CONVENTIONS OF

20   FEDERAL CRIMINAL PRACTICE AND RULE 6 IN THE TWO DISCLOSURES

21   THAT WERE MADE.  SOMEBODY DID.  AND I'M CONCERNED ABOUT THAT.

22   AND I THINK IT MAKES A STATEMENT IF I SAY, "LOOK, EVERYBODY IS

23   GOING TO BE SUBJECT TO THESE RULES, AND THE RULES ARE

24   ENFORCEABLE BY THE COURT.  YOU FACE WHATEVER LEGAL CHARGES

25   STEM FROM THIS, BUT ALSO CONTEMPT OF THE COURT IF YOU DO THIS.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   THERE'S A COURT ORDER IN PLACE SAYING YOU'RE TO COMPLY WITH

2   THESE PROCEDURES."

3          AGAIN, I'M NOT ASSUMING THAT THIS HAS ANYTHING TO DO

4   WITH YOU OR MR. FORGE OR MS. CHU.  I'M ASSUMING IT WAS

5   SOMEBODY ELSE WHO WAS ANXIOUS TO GET A HEADLINE OR DO

6   SOMETHING THAT LED TO THIS.

7          I TAKE YOUR POINT, MR. HALPERN, THAT WHOEVER IT WAS

8   DIDN'T DISCLOSE CONFIDENTIAL SECRET NATIONAL SECURITY

9   INFORMATION, BUT IT WAS STILL -- IT'S A PRETTY EGREGIOUS

10  VIOLATION TO SAY, "HERE'S WHAT'S GOING ON IN FRONT OF THE

11  GRAND JURY, AND EXPECT AN INDICTMENT IN THE NEXT COUPLE OF

12  WEEKS."

13         MR. HALPERN:  YOUR HONOR, THERE'S NO WAY I WILL

14  DEFEND THAT ACTION BE WHOEVER IT WAS MADE, AND I DON'T INTEND

15  TO.  I'M NOT GOING TO PROTECT TOO MUCH AT THIS POINT.  I THINK

16  THE COURT UNDERSTANDS THE ISSUES.

17         BUT I WOULD JUST SAY THAT IN TERMS OF THE CIPA

18  HEARING AND THE RULES THAT WERE SET FORTH, I'M NOT SURE THAT'S

19  THE MOST LOGICAL.  IF THE COURT IS GOING TO DO IT IN ANY

20  EVENT, THAT'S ONE THING.  BUT ANOTHER EXAMPLE WOULD BE WHY ARE

21  WE DOING IT UNDER CIPA?  DOING IT UNDER THE EXACT TERMS THAT

22  WE LISTED DOESN'T MAKE SENSE WOULD BE THE PROVISION HAVING TO

23  DO WITH THE SKIP.

24         OBVIOUSLY, WE DON'T WANT TO GO TO MR. LONDERGAN

25  EVERY TIME WE WANT TO DISCUSS SOMETHING.  WE HAVE SECURE AREAS

PDF created with pdfFactory trial version www.pdffactory.com

1    IN OUR BUILDING AND OTHER PLACES.  WE MEET ALL THE TIME AT

2    OTHER PLACES.  IT SIMPLY DOES NOT MAKE SENSE.

3           THE COURT:  I DON'T THINK I'D IMPOSE THAT ON YOU

4    BECAUSE I'M AWARE THAT YOU DO HAVE -- YOU HAVE A SKIP ALREADY,

5    RIGHT?

6           MR. HALPERN:  OH, ABSOLUTELY.

7           THE COURT:  A VAULT.  SO I DON'T THINK I'D IMPOSE

8    THAT.  IT'S BECAUSE DEFENSE COUNSEL DOESN'T HAVE THAT, AS A

9    MATTER OF COURSE, IN THEIR OFFICE THAT THEY'RE GOING TO HAVE

10   TO GO TO MR. LONDERGAN TO LOOK AT ALL OF IT.  I'M TALKING

11   ABOUT JUST SETTING SOME RULES AS FAR AS DISCLOSURE IS

12   CONCERNED, WHICH IS WHAT THEY'RE ASKING FOR.

13          THAT'S THE GIST OF THE MOTION THAT I HAVE ON THE

14   FIRST POINT, IS THEY SAY THAT THEY'RE INTERESTED IN PROTECTING

15   THIS STUFF.  LET'S HOLD THEM TO THAT STATEMENT.

16          MR. HALPERN:  IF ALL THE COURT IS SAYING AND THE

17   DEFENSE IS SAYING IS THEY SIMPLY WANT THE GOVERNMENT TO BE

18   AWARE THAT IF WE DISCLOSE CLASSIFIED INFORMATION IMPROPERLY,

19   MEANING THROUGH A GOVERNMENT EMPLOYEE OR OTHERWISE DISSEMINATE

20   IN AN IMPROPER MANNER, WE WILL BE HELD NOT ONLY TO OUR NORMAL

21   SANCTIONS, BUT TO CONTEMPT OF COURT.  WE WOULD EMBRACE THAT,

22   YOUR HONOR.  WE WOULD NOT ARGUE ABOUT IT ONE BIT.

23          THE COURT:  WHAT ABOUT THE OTHER POINT THEY MAKE?

24   THERE'S BEEN ARGUMENT ABOUT COUNSEL'S EYES ONLY.

25          MR. HALPERN:  I DON'T KNOW IF THE COURT HAD A CHANCE

PDF created with pdfFactory trial version www.pdffactory.com

1    TO READ THE GOVERNMENT'S FILE --

2              THE COURT:  I DID.

3              MR. HALPERN:  -- THAT WE MADE ON FRIDAY.  I THINK I

4    ADDRESSED THAT, ALSO.  I THINK, ONCE AGAIN, THAT'S PROBABLY A

5    BIG BROUHAHA ABOUT NOTHING.  WE WERE ATTEMPTING TO DO THAT IN

6    A MANNER THAT WE THOUGHT MADE SENSE.  IT WASN'T ABOUT SHIFTING

7    THE BURDEN AND HAVING THEM HAVE AN UNEQUAL BURDEN.  WE JUST

8    THOUGHT THEY WOULDN'T WANT THE GOVERNMENT TO COME EX PARTE TO

9    THE COURT AND MAKE AN ARGUMENT, HAVE THE COURT SAY "YOU'RE

10   RIGHT, GOVERNMENT," THEN THEY GO "HOLD ON.  THAT'S WRONG.  WE

11   HAVE TO BE HEARD."

12             WE JUST THINK BOTH SIDES SHOULD BE HEARD.  WE'LL

13   GIVE THEM THE INFO.  IF THEY SAY THAT'S A PROBLEM, THEY CAN

14   CALL US AND WE CAN DISCUSS IT.  IF WE CAN'T DECIDE IT, WE'LL

15   JUST GO TO THE COURT ABOUT IT.  IT JUST SEEMED LIKE AN

16   EMINENTLY REASONABLE PROCEDURE.  AND TO NOT ADOPT IT SIMPLY

17   IMPOSES A BURDEN UPON THE COURT THAT WE DON'T THINK MAKES

18   SENSE.

19             AGAIN, IT'S THE COURT'S BURDEN MORE THAN US.  AND WE

20   DON'T THINK COMING TO YOU FIRST EX PARTE ABOUT SOMETHING THAT

21   WE'RE DEBATING GIVING THEM WOULD BE THE OPTIMAL SOLUTION

22   EITHER FOR THE COURT OR THE DEFENSE.

23             THE COURT:  YOU'VE SAID THAT ONE OF THE ISSUES THAT

24   WAS PRESENTED IN THE PAPERS HAS BEEN RESOLVED IN THE INTERIM?

25   I THOUGHT YOU SAID THAT THERE WAS ONLY --

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. HALPERN:  NO.  WE HAVE AN ADDITIONAL ONE.  IN

2     THE INTERIM, THERE WAS A THIRD ONE THAT WAS MENTIONED.  AND

3     THAT HAD TO DO WITH THE CHANGE OF CLASSIFICATION STATUS, WHICH

4     MY ARGUMENT ON THAT WOULD BE VERY SIMILAR TO MY ARGUMENT ON

5     THE FIRST POINT.  THIS HAS NOTHING TO DO WITH CIPA AGAIN.  IT

6     SHOULDN'T BE PART OF ANY CIPA ORDER.  IT DOESN'T NEED TO BE

7     ORDERED.  WE'RE OBVIOUSLY GIVING THEM DISCOVERY THAT IS

8     CLASSIFIED.  WE'VE MADE AN AGREEMENT.  AS SOON AS THEY GET THE

9     APPROPRIATE SECURITY CLEARANCE, IT WILL BE MARKED TO INDICATE

10    WHAT THE CLASSIFICATION IS.

11          IF THAT CHANGES, YOU HAVE THE GOVERNMENT'S

12    REPRESENTATION YOU DON'T NEED AN ORDER.  WE, OF COURSE, WILL

13    TELL THEM IF THERE'S A CHANGE.  IT ONLY MAKES SENSE FOR US TO

14    DO SO.  WE INTENDED ON DOING SO.  IF WE HAD DISCUSSED THAT,

15    THAT WOULD HAVE BEEN A POSITION WE WOULD HAVE RELATED AT THAT

16    POINT.

17          THE COURT:  ANYTHING ELSE ON THIS POINT?

18          MR. HALPERN:  NOT FROM THE GOVERNMENT, YOUR HONOR.

19          THE COURT:  LET ME HEAR, THEN, ON BEHALF OF

20    MR. FOGGO.

21          MR. TESLIK:  RANDY TESLIK FOR DEFENDANT FOGGO.

22          YOUR HONOR, I'LL ADDRESS THE SECOND TWO POINTS THAT

23    YOUR HONOR ADDRESSED.

24          THE FIRST IS WITH RESPECT TO THE BURDEN OF COMING TO

25    THE COURT AND SEEKING COURT AUTHORITY BEFORE MATERIAL CAN BE

PDF created with pdfFactory trial version www.pdffactory.com

14

1   DISCLOSED FOR ATTORNEYS' EYES ONLY.

2           WE TAKE THE GOVERNMENT AT ITS REPRESENTATION IN BOTH

3   ITS BRIEF AND ITS REPLY THAT THAT SITUATION WILL RARELY, I

4   BELIEVE, IF EVER, ARISE, ACCORDING TO THE GOVERNMENT.

5   APPARENTLY, IT BELIEVES THAT ITS DISCOVERY OBLIGATIONS WILL BE

6   ONLY OF INFORMATION THAT'S PROPERLY WITHIN THE AMBIT OF

7   RULE 16 AND ITS BRADY OBLIGATIONS.

8           SO WE DON'T BELIEVE THAT TEEING THIS UP AS A

9   SIGNIFICANT BURDEN FOR THE COURT IS NECESSARILY ACCURATE.  WE

10  THINK --

11          MR. PITOFSKY:  WE'RE HAVING A LITTLE BIT OF

12  DIFFICULTY HEARING COUNSEL.

13          THE COURT:  YOU CAN USE THE LECTERN.  I'LL HAVE HIM

14  START OVER.

15          MR. PITOFSKY:  NO.  WE'VE HEARD ENOUGH.  IT'S JUST

16  WE'RE --

17          THE COURT:  I'LL HAVE HIM RESUME FROM WHERE HE

18  STOPPED, THEN.

19          MR. PITOFSKY:  THANK YOU.

20          MR. TESLIK:  OUR CONCERN IS SIMPLY THAT WE BELIEVE

21  THAT THE PRESUMPTION SHOULD BE THAT MATERIAL THAT'S DISCLOSED

22  IN DISCOVERY SHOULD BE MATERIAL THAT WE SHOULD BE PERMITTED TO

23  DISCUSS WITH OUR CLIENT.  WE THINK THAT THE RELATIONSHIP

24  BETWEEN AN ATTORNEY AND HIS CLIENT IN DEFENDING CHARGES SUCH

25  AS THESE SHOULD TRUMP THE CONVENIENCE THAT THE GOVERNMENT HAS

PDF created with pdfFactory trial version www.pdffactory.com

15

1    ARTICULATED.

2          THE COURT:  AS A PRACTICAL MATTER, I HAVE LESS

3    PROBLEM WITH THAT IN FOGGO'S CASE BECAUSE HE PROBABLY KNOWS

4    THE INFORMATION ALREADY TO BEGIN WITH.

5          BUT MR. GERAGOS, YOU'VE JOINED IN IT.  I WANT TO

6    HEAR FROM YOU.  IT'S NOT NECESSARILY SO WITH RESPECT TO

7    MR. WILKES.  I DON'T THINK THE GOVERNMENT'S GOING TO DISCLOSE

8    ANYTHING THAT MR. FOGGO DOESN'T ALREADY KNOW.

9          MR. GERAGOS:  THAT'S EXACTLY RIGHT.  ACTUALLY, MY

10   POSITION HAS ALMOST EVOLVED SINCE I JOINED.  IT HAS.  IT'S NOT

11   ACTUALLY.  I'M IN A SITUATION WHERE MY CLIENT, BY VIRTUE OF

12   THE INDICTMENT -- YOU CAN READ IT -- HAS NO SECURITY

13   CLEARANCE.  I DON'T HAVE THE SECURITY CLEARANCE.  WE'RE

14   TALKING ABOUT SOMEBODY WHO WAS THE DEPUTY DIRECTOR OF

15   DAY-TO-DAY OPERATIONS FOR A PERIOD OF TIME.

16         NOW HAVING REREAD AGAIN THE GOVERNMENT'S PAPERWORK

17   AS TO THE WAY THEY THINK IT'S CLASSIFIED, WHICH IS BASICALLY

18   THE LOCATIONS, WE KNOW THE LOCATIONS.  I'VE ALMOST COME TO THE

19   POINT, GIVEN ALL OF THE -- I LOOK AT CIPA, AND I THINK THAT

20   THERE'S SOME REAL PROBLEMS.  I KNOW THERE'S SOME DISTRICT

21   COURT CASES OUT THERE, BUT THERE'S NOT A WHOLE LOT OF CIRCUIT

22   COURT CASES.

23         I'M NOT SO SURE THAT I WANT THESE SECURITY

24   CLEARANCES.  I'M NOT SO SURE THAT I WANT TO COME IN HERE AND

25   VENT WHAT IT IS UNDER SECTION 5 I'M GOING TO DO IN

PDF created with pdfFactory trial version www.pdffactory.com

1   CROSS-EXAMINATION.  I KNOW WHERE THE LOCATIONS WERE.  MY

2   CLIENT HAS BEEN TO THE LOCATIONS.  MY CLIENT, WITHOUT A

3   SECURITY CLEARANCE, KNOWS MOST OF THIS INFORMATION.  IF THEY

4   WANT TO COME IN HERE AND REDACT THE LOCATIONS OFF OF THE

5   DISCOVERY AND TURN IT OVER, THAT'S FINE.

6          BUT I'M NOT SO SURE THAT I WANT TO GET -- I THINK

7   IT'S A VIOLATION OF MY CLIENT'S 6TH AMENDMENT RIGHTS TO HAVE

8   ME COME IN HERE, NUMBER ONE, AND HAVE THE GOVERNMENT DO SOME

9   KIND OF AN INITIATION OF AN INVESTIGATION OF ME AS TO WHETHER

10  OR NOT I'VE SATISFIED THE GOVERNMENT AS THE ATTORNEY.  SO I

11  DON'T THINK THAT I WANT A SECURITY CLEARANCE.

12         NUMBER TWO, I DON'T THINK I WANT TO AGREE TO COME IN

13  HERE AND VENT ANYTHING TO THE GOVERNMENT THAT I PLAN ON DOING.

14         THE COURT:  HERE'S WHAT YOU'RE UP AGAINST:  CIPA'S

15  BEEN UPHELD, AND IT'S THE LAW THAT APPLIES IN THIS CASE GIVEN

16  THE NATURE OF THE UNDERLYING INFORMATION.

17         NOW, I SUPPOSE YOU CAN WAIVE YOUR RIGHT TO HAVE THEM

18  TURN OVER CLASSIFIED INFORMATION, WHICH IS GOING TO BE THE

19  CONSEQUENCE IF YOU DON'T UNDERGO THE BACKGROUND INVESTIGATION

20  AND AGREE TO THE PROVISIONS.

21         MR. GERAGOS:  I COULD ASK THE COURT -- IT'S BEEN

22  UPHELD, BUT, AS I INDICATED, I DON'T THINK BY THIS CIRCUIT.

23  AND MAYBE WHAT THE MORE PRUDENT THING TO DO IS TO GIVE THIS

24  COURT -- LET ME OUTLINE WHY I THINK THAT IT'S INAPPROPRIATE

25  FOR -- IN THIS CASE SPECIFICALLY.  BECAUSE WE HAVE A DIFFERENT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

17

1    SITUATION.

2         IN THE CASES THAT I'VE REVIEWED, THE BIN LADEN CASE,

3    WHICH WAS OUT OF NEW YORK, AND THE JOIAT (PHONETIC) CASE AS

4    WELL.  IN THOSE SITUATIONS, YOU HAD -- AND EVEN GOING BACK TO

5    POINDEXTER -- YOU HAD SITUATIONS WHERE -- IN BIN LADEN, THERE

6    WAS SOMEBODY WHO WAS NOT -- WHO HAD NOT BEEN AFFORDED A

7    SECURITY CLEARANCE BEFORE.  IN THE POINDEXTER CASE, YOU HAD

8    SOMEBODY WHO HAD BEEN AFFORDED A SECURITY CLEARANCE.

9         HERE WE'RE JOINING TOGETHER TWO DEFENDANTS, ONE WHO

10   HAS A SECURITY CLEARANCE AND OBVIOUSLY COULDN'T BE MUCH HIGHER

11   THAN HIS SECURITY CLEARANCE, I ASSUME -- HE'S THE DEPUTY

12   DIRECTOR -- AND SOMEBODY WHO DOES NOT.

13        AND THE INFORMATION THAT I BELIEVE -- AT LEAST

14   WHAT'S BEEN KIND OF REPRESENTED IN THE PAPERWORK -- IS NOT

15   SOMETHING THAT I REALLY THINK IS ALL THAT -- IT'S NOT GOING TO

16   STOP THE PRESSES.  SO I DON'T REALLY KNOW THAT IT'S GOING TO

17   HELP ME.  AND GIVEN THAT SITUATION AND THE DISPARATE POSITIONS

18   OF THE TWO DEFENDANTS, I THINK THAT MAYBE THIS COURT COULD

19   TAKE A LOOK AT THIS AND THAT THERE ARE SOME PROBLEMS THAT NEED

20   TO BE ADDRESSED.

21        THE COURT:  YOU CAN BRING THE MOTION, AND I'LL LOOK

22   AT IT.  BUT I THINK THE CONSEQUENCE OF UPHOLDING THIS STATUTE

23   HERE WOULD BE THAT YOU HAVE AN ELECTION TO MAKE.  IF YOU DON'T

24   WANT TO AVAIL YOURSELF OF THE MATERIAL, THEN I SUPPOSE YOU

25   DON'T HAVE TO BE SUBJECTED TO A BACKGROUND CHECK AND TOP

PDF created with pdfFactory trial version www.pdffactory.com

1    SECRET CLEARANCE, AND THAT WOULD BE YOUR CHOICE.  THAT ASSUMES

2    THAT I DON'T FIND SOME FAULT WITH THE STATUTE.

3            I UNDERSTAND THE DIFFERENCES YOU'RE POINTING OUT

4    BETWEEN MR. WILKES AND THE OTHER DEFENDANTS WHO'VE BEEN

5    SUBJECT TO THE PROCEDURE BEFORE, BUT IT REALLY TURNS ON THE

6    NATURE OF THE INFORMATION.

7            THAT'S THE GENESIS FOR THIS PROVISION; RIGHT?

8            MR. GERAGOS:  THAT'S EXACTLY RIGHT.  THAT'S WHY I'M

9    SAYING THAT MAYBE THE BETTER WAY TO APPROACH THIS IS LET ME

10   BRIEF IT FOR THE COURT.  IF THE COURT UPHOLDS IT, THEN I'LL

11   MAKE THE ELECTION.  IF THE COURT MAYBE SEES IT MY WAY, THEN

12   MAYBE WE DON'T HAVE TO GET TO THAT POINT.

13           ONE OTHER THING THAT I FEEL COMPELLED TO TALK ABOUT

14   A LITTLE BIT, BECAUSE MR. MAC DOUGALL AND MR. TESLIK IN THEIR

15   MOTION HAD MENTIONED IT, THERE'S SOMETHING PARTICULARLY

16   GALLING ABOUT THE IDEA OF MY OFFICE BEING UNDER A PROTECTIVE

17   ORDER WHEN ALL INFORMATION FOR THE THREE WEEKS PRIOR TO THIS

18   INDICTMENT CAME FROM WHAT I READ IN THE PRESS AND WHAT

19   REPORTERS WERE LEAVING MESSAGES ON MY VOICEMAIL.

20           POOR MR. HALPERN, I WOULD CALL HIM ALMOST DAILY AND

21   THEN WROTE LETTERS TO HIM SAYING, "I'M NOW HEARING" -- I WOULD

22   FAX HIM THE ARTICLES AS THEY WOULD COME IN.  I SENT HIM

23   LETTERS SAYING, "LOOK, WE'RE NOT ONLY DISCUSSING 6E MATERIAL.

24   I HAD A REPORTER CALL UP AND LEAVE A MESSAGE THAT THEY HAD

25   VIEWED" -- BEFORE THE INDICTMENTS, TWO INDICTMENTS,

PDF created with pdfFactory trial version www.pdffactory.com

19

1   POST-INDICTMENTS, THEY KNEW SPECIFICALLY THAT ONE HAD TO DO

2   WITH CUNNINGHAM.  THEY KNEW THE OTHER ONE HAD TO DO WITH

3   FOGGO.  THEY LEFT THE MESSAGE AS TO WHAT THE SPECIFICS WERE.

4             I CALLED MR. HALPERN AND TOLD HIM -- AND I'VE DEALT

5   WITH MR. HALPERN BEFORE ON OTHER CASES AND HAD NO BELIEF

6   WHATSOEVER THAT HE HAD ANYTHING TO DO WITH IT.  IN FACT, I

7   THINK HE WAS DEALING WITH SOMETHING ELSE AT THE TIME AND WAS

8   KIND OF BLIND-SIDED.

9             BUT THE DAILY DRUMBEAT OF WHAT WAS BEING RELEASED,

10  FROM MY CLIENT'S STANDPOINT, I THINK WAS DESIGNED TO DO

11  NOTHING MORE THAN TORCH HIS DEAL ON SELLING OF THE PROPERTY,

12  NUMBER ONE.  AND SOMEBODY WAS OUT THERE, I BELIEVE, TRYING TO

13  PUT SOME PRESSURE ON GETTING THE FIRE UNDER THE U.S. ATTORNEYS

14  AND EVERYTHING ELSE, TRYING TO PUT SOME PRESSURE ON TO BRING

15  THE INDICTMENT BECAUSE THERE WAS A BACK-AND-FORTH BETWEEN MAIN

16  JUSTICE AND WHAT WAS HAPPENING HERE IN SAN DIEGO.

17            SO NOW FOR THE GOVERNMENT -- I UNDERSTAND THAT

18  THEY'RE COMING IN BECAUSE THEY'VE GOT THE CLASSIFIED

19  INFORMATION.  THEY HAVE TO DO IT.  BUT THIS IDEA OF IT BEING

20  UNILATERAL, AS I THINK THE COURT HAS ALREADY INDICATED, MAKES

21  LITTLE OR NO SENSE.  AND THEY HAVE ADVANTAGES THAT WE DON'T

22  HAVE AND ESPECIALLY I DON'T HAVE AS NOT BEING IN THIS

23  DISTRICT.

24            THE IDEA OF NOT BEING ABLE TO GET ON A PHONE WHEN

25  I'M DOWN HERE TO CALL MY OFFICE AND TALK ABOUT CERTAIN THINGS

PDF created with pdfFactory trial version www.pdffactory.com

20

1    THAT ARE IN THE MATERIAL IS JUST IMPOSSIBLE FOR ME TO BE ABLE

2    TO DO.  THE IDEA OF EVERY TIME I WANT TO SEE SOMETHING, I'VE

3    GOT TO RUN DOWN HERE TO A SAFE ROOM IS IMPOSSIBLE FOR ME TO

4    DO.  IT'S ESPECIALLY GALLING, AS I INDICATE, WHEN I'VE GOT

5    REPORTERS WHO HAVE BEEN VENTED ALL THE INFORMATION PRIOR TO IT

6    HAPPENING.  AND MR. HALPERN, TO HIS CREDIT, WOULD NEVER AFFIRM

7    OR DENY ANYTHING THAT I WAS GETTING EVEN IF IT WAS 18 HOURS

8    BEFORE I WAS TOLD TO COME DOWN HERE AND SURRENDER MY CLIENT.

9         I KNEW BEFORE -- THE ONLY WAY I FOUND OUT THAT

10   MR. WILKES WAS GOING TO GET INDICTED WAS WHEN I GOT A CALL

11   FROM A REPORTER SAYING, "THEY'RE GOING TO BRING THE GRAND JURY

12   IN.  IT'S GOING TO HAPPEN ON A TUESDAY.  YOU'RE GOING TO BE

13   ORDERED DOWN HERE ON A WEDNESDAY."

14        THERE'S SOMETHING EXTREMELY DISTURBING ABOUT IT.  I

15   HAD ASKED AS A REMEDY THAT EVERYBODY, ALL OF THEIR AGENTS,

16   STATE UNDER PENALTY OF PERJURY THAT IT WASN'T THEM.  I'VE BEEN

17   INVOLVED IN THE NORTHERN DISTRICT HERE BEING INVESTIGATED BY

18   THE CENTRAL DISTRICT IN THE BONDS INVESTIGATION AS TO WHO DID

19   THE LEAKING, THE CENTRAL DISTRICT BEING INVESTIGATED BY THE

20   SOUTHERN DISTRICT AS TO WHO WAS DOING THE LEAKING IN THE

21   PELICANO CASE, WHICH WE'RE TANGENTIALLY INVOLVED IN AS WELL.

22        AND WE'VE GOT ALL THESE U.S. ATTORNEYS' OFFICES

23   INVESTIGATING WHO'S DOING THE LEAKING, AND WE NEVER GET ANY

24   ANSWERS EXCEPT FROM THE NORTHERN DISTRICT, AND IT TURNS OUT TO

25   BE THE DEFENSE LAWYER.  I DON'T EVEN WANT TO GO THERE.  I'D

PDF created with pdfFactory trial version www.pdffactory.com

21

1   RATHER BE IN A POSITION WHERE I DON'T HAVE TO GIVE THE

2   INFORMATION.

3          THE COURT:  MR. TESLIK, TALK TO ME ABOUT THE OTHER

4   MODIFICATIONS OF THE ORDER THAT I SIGNED THAT YOU ADVOCATE.

5          MR. TESLIK:  THERE'S ONLY ONE MORE, YOUR HONOR.

6   THAT'S THE THIRD POINT, THE NOTICE OF CHANGES IN

7   CLASSIFICATION STATUS.  THE REASON WHY THAT'S IMPORTANT TO US

8   IS BECAUSE THERE'S REALLY A DISTINCTION BETWEEN INSIDER CASES

9   LIKE POINDEXTER AND THIS ONE AND CASES DEALING WITH PERSONS

10  WHO WERE NEVER CLEARED.

11         OBVIOUSLY, OUR CLIENT, AS MR. GERAGOS JUST POINTED

12  OUT, HAD INCREDIBLE ACCESS TO THE MOST HIGHLY CLASSIFIED

13  INFORMATION.  AND NOTWITHSTANDING THE FACT THAT HE'S NO LONGER

14  WITH THE CIA, HE STILL HAS THAT INFORMATION IN HIS HEAD.  AND

15  HE IS UNDER CONTRACT TO NOT DISCLOSE IT, AND HE CERTAINLY

16  WON'T DISCLOSE IT.

17         SO THE PROBLEM THAT WE HAVE ISN'T SO MUCH WITH

18  WRITTEN MATERIALS THAT WILL BE PROVIDED TO US WITH A TS STAMP

19  OR A CLASSIFIED STAMP.  AND I CERTAINLY TRUST THE GOVERNMENT'S

20  REPRESENTATIONS THAT THEY'LL NOTIFY US IF THERE'S EVER A

21  CHANGE IN THOSE CLASSIFICATIONS.

22         THE COURT:  ISN'T THAT SUFFICIENT AT THIS POINT?

23         MR. TESLIK:  IT'S NOT, YOUR HONOR.  BECAUSE WITH

24  RESPECT TO AN ISSUE THAT WE'LL BE DISCUSSING WITH MR. FOGGO,

25  AN ISSUE THAT MAY BE CLASSIFIED AT THE TS LEVEL OR CLASSIFIED

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    AT THE SECRET LEVEL, IN THE EVENT THAT THERE'S A CHANGE IN

2    THAT CLASSIFICATION, THEN UNDER THE PARAMETERS OF THE

3    PROTECTIVE ORDER, IT'S GOING TO CHANGE THE MECHANISMS BY WHICH

4    WE DISCUSS THE CASE WITH OUR CLIENT.

5            AND ALL WE'RE ASKING -- WE DON'T EXPECT THERE TO BE

6    A PLETHORA OF CHANGES IN THE CLASSIFICATION STATUSES.  BUT

7    WHEN THERE IS A CHANGE IN THE CLASSIFICATION STATUS, WE'D ASK

8    THE GOVERNMENT TO GIVE US NOTICE OF IT WITHOUT HAVING TO ASK

9    FOR IT OR FILE SOME SORT OF DEMAND.  THAT WAY WE'LL KNOW WHAT

10   WE CAN TALK TO MR. FOGGO ABOUT AND UNDER WHAT LEVELS OF

11   PROTECTION.

12           THE COURT:  MR. PITOFSKY, DO YOU HAVE ANY POSITION

13   ON THIS PARTICULAR ISSUE?

14           MR. PITOFSKY:  I DON'T BELIEVE SO.  I DON'T BELIEVE

15   THAT THE CONFIDENTIAL DISCLOSURES REALLY TOUCH MR. MICHAEL.

16   WE HAVE THE SAME STRONG COMPLAINTS ABOUT THE LEAKS FROM

17   BEFORE, BUT I THINK THEY'RE UNRELATED TO THIS ISSUE.

18           THE COURT:  ANYTHING ELSE, MR. HALPERN?

19           MR. HALPERN:  WELL, I WAS JUST GOING TO SAY I DIDN'T

20   THINK MR. PITOFSKY HAD A DOG IN THIS FIGHT IN THE SENSE THAT

21   HE REALLY IS NOT UNDER THE CIPA UMBRELLA.

22           THE COURT:  THIS IS THE WILKES/FOGGO INDICTMENT THAT

23   THIS RELATES TO.

24           MR. HALPERN:  YES, YOUR HONOR.  I THINK MR. FORGE

25   HAD A POINT THAT HE WANTED TO MAKE BEFORE THE COURT RULED.  I

PDF created with pdfFactory trial version www.pdffactory.com

1    JUST WANTED TO QUICKLY RESPOND TO THE LAST POINT THAT

2    MR. TESLIK MADE.

3          YOUR HONOR, IT'S VERY EASY WHEN WE LOOK AT A CASE

4    AND WE SEE THE RANGE OF MATERIAL THAT'S POTENTIALLY RELEVANT

5    TO SAY, "HERE'S THE CLASSIFICATION OF IT."  IT'S DIFFICULT TO

6    KNOW -- WE HAVE NO IDEA WHAT THE DEFENSE IS GOING TO BE.  WE

7    HAVE NO IDEA ABOUT THE RANGE OF INFORMATION THAT MR. FOGGO HAS

8    OTHER THAN TO SAY IT'S EXTENSIVE.

9          HE WAS THE INDIVIDUAL, AS MR. TESLIK INDICATED,

10   RUNNING THE CIA ON A DAILY BASIS FOR A LONG PERIOD OF TIME.

11   HE HAS ACCESS LITERALLY TO AS MUCH CLASSIFIED INFORMATION AS

12   ANYBODY IN THIS COUNTRY.  THAT ALL MAY CHANGE ON A DAILY BASIS

13   IF THEY GET BUMPED UP.  SOME OF THESE THINGS HE KNOWS ABOUT

14   MAY BE BUMPED DOWN.  WE HAVE NO WAY OF KNOWING.  WE CAN'T

15   PREDICT IT.

16          ALL WE CAN SAY IS TO THE EXTENT THAT WE HAVE

17   GATHERED CLASSIFIED INFORMATION RELATED TO THIS CASE.  IF THAT

18   CHANGES, WE'LL LET THEM KNOW.  THAT'S ALL WE'RE PHYSICALLY

19   ABLE TO DO AS WELL AS THEORETICALLY ABLE TO DO.

20          MR. FORGE:  I THINK I'LL TAKE THE LECTERN, YOUR

21   HONOR, SO MR. PITOFSKY CAN HEAR.

22          YOUR HONOR, I WANT TO MAKE IT CLEAR TO THE COURT --

23   AND I THINK MR. HALPERN DID THIS AS WELL -- THE LEAKS OF THE

24   INFORMATION TO THE PRESS WERE ABSOLUTELY REPREHENSIBLE AND

25   COMPLETELY INEXCUSABLE.

PDF created with pdfFactory trial version www.pdffactory.com

24

1        THE COURT:  ARE YOU DOING AN INVESTIGATION TO FIND
2    OUT WHO DID THIS?
3        MR. FORGE:  I'M NOT IN A POSITION TO DISCLOSE THAT
4    IN OPEN COURT, BUT I WILL STATE THAT NOTHING WOULD PLEASE ME
5    MORE THAN TO DETERMINE WHO IS RESPONSIBLE FOR THAT AND GET
6    THEM IN FRONT OF THIS COURT TO BE HELD ACCOUNTABLE FOR HAVING
7    DONE THAT.  IT'S EMBARRASSING.  IT'S REPREHENSIBLE AND
8    INEXCUSABLE.  AND I DON'T IN ANY WAY QUESTION WHY DEFENSE
9    COUNSEL ON BOTH COATS WOULD BE SO UPSET ABOUT THIS.  IT IS NOT
10   THE WAY THE GOVERNMENT SHOULD BE HANDLING BUSINESS.
11       THE COURT:  I WAS UPSET WHEN I READ IT.  BUT THE
12   ADDITION THAT MR. GERAGOS MENTIONED, THAT SOMEBODY --
13   APPARENTLY SOMEBODY WHO HAD BEEN SHOWN THE INDICTMENTS
14   BEFOREHAND KNEW ABOUT THOSE AND COMMUNICATED THAT TO A MEMBER
15   OF THE MEDIA, WHO THEN CALLED MR. GERAGOS AND SAID "LOOK,
16   HERE'S WHAT THE INDICTMENTS ARE GOING TO SAY," THAT'S WAY
17   BEYOND EVEN WHAT I READ ABOUT "THERE'S A PENDING GRAND JURY
18   INVESTIGATION, AND INDICTMENTS ARE EXPECTED."  THAT'S
19   SOMETHING THAT, IN MY JUDGMENT, IS A CLEAR VIOLATION.
20   SOMEBODY OUGHT TO BE TAKEN TO TASK FOR THAT.
21       MR. FORGE:  I AGREE.  I'M FAMILIAR WITH ALL THE
22   PRESS REPORTS AND THE EXTENT OF THE LEAKS, AND WE'RE TAKING
23   THAT VERY SERIOUSLY.
24       WE TURN, ACTUALLY, TO THE CIPA PROTECTIVE ORDER.  I
25   THINK THE POINTS YOUR HONOR MADE ARE ALL WELL-TAKEN.  BUT WHEN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   YOU ACTUALLY LOOK AT THE DETAILS OF THE RECIPROCAL PROVISIONS

2   THAT ARE REQUESTED BY MR. FOGGO AND JOINED BY MR. WILKES, THE

3   MAJORITY OF THEM, IF YOU GO ONE BY ONE, ARE TIED TO SECURE

4   AREA PROVISIONS.  AND CLEARLY, THAT IS THE DEFINING TERM UNDER

5   THE COURT'S PROTECTIVE ORDER, AT PAGE 5 OF THE COURT'S

6   PROTECTIVE ORDER.

7           THE FIRST -- ACTUALLY, IF WE TAKE THEM ONE BY ONE.

8   AT PAGE 4, SECTION 9, THE FILING OF PAPERS BY EITHER PARTY,

9   AGAIN, FOR US TO CLEAR OUR PAPERS WITH THE COURT SECURITY

10  OFFICER IS NOT WHAT WE'RE TALKING ABOUT WITH THESE LEAKS.

11  IT'S NOT THE ROLE OF THE COURT SECURITY OFFICER VIS-A-VIS

12  COLLEAGUES WITHIN THE EXECUTIVE BRANCH.

13          WHEN YOU MOVE ON TO THE GUTS OF THEIR REQUESTS, THE

14  NEXT PAGE, PAGE 5, THIS IS WHAT MR. HALPERN WAS TALKING ABOUT,

15  AND THIS IS WHAT I WANTED TO MAKE SURE THAT THE COURT WAS

16  FOCUSING ON IN DETERMINING WHAT WOULD BE APPROPRIATE FOR

17  RECIPROCAL OBLIGATIONS ON THE PART OF THE GOVERNMENT.

18          IF YOU LOOK AT THE SECTION 13(C) REQUEST, WE'RE

19  TALKING ABOUT WORD-PROCESSING EQUIPMENT APPROVED EITHER BY A

20  COURT SECURITY OFFICER OR THE GOVERNMENT EXECUTIVE BRANCH

21  AGENCY WITH ORIGINAL CLASSIFICATION AUTHORITY.  CLEARLY,

22  THERE'S NO NEED FOR THAT.  WE HAVE SECURE FACILITIES IN OUR

23  OFFICE.  WE HAVE SECURE FACILITIES THAT HAVE BEEN APPROVED BY

24  THE APPROPRIATE EXECUTIVE BRANCH OFFICIALS.  NOT NECESSARILY

25  EXECUTIVE BRANCH OFFICIALS WITH THE CIA, WHICH WOULD BE THE

PDF created with pdfFactory trial version www.pdffactory.com

26

1   ORIGINAL CLASSIFICATION AUTHORITY, AND NOT NECESSARILY THE

2   EXECUTIVE BRANCH OFFICIAL WHO'S THE COURT SECURITY OFFICER

3   HERE, BUT THERE ARE APPROVED FACILITIES.

4           SO THERE'S NO NEED FOR US TO THEN HAVE MR. LONDERGAN

5   OR SOMEONE FROM THE CIA WALK THROUGH OUR OFFICE, WALK THROUGH

6   THE FBI'S OFFICE, WALK THROUGH THE IRS'S OFFICE AND ANY OTHER

7   AGENCY WITH WHICH WE'RE WORKING AND APPROVE THEIR FACILITY.

8   THERE'S NO NEED FOR THAT REDUNDANCY.

9           THE NEXT REQUEST AT SECTION 13(E), AGAIN, IT

10  REFERENCES ONLY A SECURE AREA OR AN AREA AUTHORIZED BY THE

11  COURT SECURITY OFFICER.  NOW, "SECURE AREA," ONCE AGAIN IN

12  THIS CONTEXT, IS A TERM OF ART BECAUSE WE'RE TALKING ABOUT AN

13  AREA THAT HAS BEEN APPROVED BY THE COURT SECURITY OFFICER.

14          AS YOUR HONOR RECOGNIZED, WE HAVE A SKIP.  THE FBI

15  HAS A SKIP.  THERE ARE OTHER SKIPS LOCATED IN THE COUNTRY.  IF

16  I TRAVEL TO LOS ANGELES TO MEET WITH MY COLLEAGUES TO DISCUSS

17  SOMETHING THERE AND WE GO TO THEIR SKIP, THAT'S GOOD ENOUGH.

18  AND THAT'S A RESTRICTION THAT WE HAVE.  WE KNOW THE LEVEL OF

19  CLASSIFICATION THAT WOULD REQUIRE A SKIP-ONLY DISCUSSION, AND

20  WE FOLLOW THOSE PROCEDURES.

21          TWO OF THE NEXT THREE PROVISIONS, IF YOU LOOK AT

22  13(G), AGAIN, RESTRICTING US TO CONVERSING WITH THIS MATTER TO

23  ANY PERSON WHO HAS BEEN GRANTED ACCESS BY THE COURT, THIS JUST

24  GOES BACK TO MR. HALPERN'S POINT.  I UNDERSTAND WHY DEFENSE

25  COUNSEL WOULD INTUITIVELY THINK THAT WOULD BE APPROPRIATE AND

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

27

1    A FAIR PROVISION.  BUT WHEN YOU STEP BACK A LITTLE BIT AND

2    LOOK AT WHAT THAT REALLY MEANS IN PRACTICE, IT DOESN'T MAKE A

3    WHOLE LOT OF SENSE.

4           BECAUSE WE MIGHT TALK WITH VARIOUS PEOPLE IN OUR

5    OFFICE WHO HAVE THE APPROPRIATE CLEARANCES, BUT ARE NOT

6    SUBMITTED TO THIS COURT FOR YOUR HONOR'S CONSIDERATION.  WE

7    MAY SPEAK WITH DIFFERENT AGENTS WHO HAVE THE APPROPRIATE LEVEL

8    OF CLEARANCE, WHO HAVE SIGNED OFF ON 6(C) LETTERS.  AND AGAIN,

9    THOSE INDIVIDUALS DO NOT HAVE TO BE RAISED WITH THE COURT

10   BECAUSE WE ALREADY HAVE OBLIGATIONS.  THEY ALREADY HAVE

11   OBLIGATIONS.

12          I AGREE THAT SOMEONE OR SOME PEOPLE DID NOT FOLLOW

13   THEIR 6(E) OBLIGATIONS IN THIS CASE.  THEY REPREHENSIBLY

14   VIOLATED THOSE OBLIGATIONS.  BUT WE STILL HAVE PROCEDURES IN

15   PLACE.  WE STILL HAVE RESTRICTIONS IN PLACE.

16          AND REGARDING CLASSIFIED INFORMATION, YOUR HONOR, WE

17   KNOW WHAT WE'RE SUPPOSED TO -- HOW WE'RE SUPPOSED TO HANDLE

18   IT.  THE DEFENSE NOW KNOWS HOW THEY'RE SUPPOSED TO HANDLE IT.

19   BUT TO ASK US TO GO TO THE COURT EVERY TIME A PERSON WITH TOP

20   SECRET CLEARANCE IN OUR OFFICE IS CONSULTED ON AN ISSUE, I

21   THINK THAT'S JUST GOING TOO FAR, AND I DON'T THINK IT'S

22   NECESSARY.

23          TO TOUCH BRIEFLY UPON MR. GERAGOS'S POINT REGARDING

24   HIS NEED FOR SECURITY CLEARANCE, I'M NOT GOING TO GET INTO THE

25   SUBSTANCE OF THE CONSTITUTIONALITY OF CIPA.  IT'S BEEN APPLIED

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

28

1    BY THE 9TH CIRCUIT MULTIPLE TIMES, BY THE WAY.  BUT I'LL WAIT

2    FOR MR. GERAGOS'S MOTION.

3         THE COURT:  YOU AGREE THE CONSEQUENCE IS THAT IF HE

4    ELECTS NOT TO UNDERGO THE CLEARANCE, THAT HE'S NOT GOING TO

5    GET THE INFORMATION?

6         MR. FORGE:  WELL, THAT'S THE POINT I WANTED TO

7    ADDRESS.

8         I DON'T THINK WE SHOULD BE SO QUICK TO THINK IT'S A

9    BLACK-AND-WHITE DECISION ON BEHALF OF MR. GERAGOS BECAUSE I

10   THINK THERE'S A REAL 6TH AMENDMENT ISSUE REGARDING THE

11   EFFECTIVENESS OF HIS COUNSEL IF HE DOESN'T RECEIVE THAT

12   INFORMATION.

13        WHEN YOU THINK ABOUT HIS ARGUMENT A LITTLE BIT, IT'S

14   ALMOST AS IF HE'S SAYING, "MR. FOGGO IMPROPERLY DISCLOSED SO

15   MUCH CLASSIFIED INFORMATION TO MY CLIENT, AND MY CLIENT HAS

16   THEN DISCLOSED ALL OF THAT CLASSIFIED INFORMATION TO ME, I

17   DON'T NEED ANYMORE INFORMATION.  I HAVE ENOUGH."

18        WELL, YOUR HONOR, FIRST OF ALL, THERE IS INFORMATION

19   THAT WE BELIEVE MR. FOGGO DOESN'T HAVE, CLASSIFIED INFORMATION

20   IN THIS CASE THAT WE WILL BE DISCLOSING IN DISCOVERY.  I THINK

21   THAT INFORMATION TOUCHES UPON SUBJECT MATTERS OF WHICH

22   MR. FOGGO IS AWARE.  HIS INFORMATION CERTAINLY FELL WITHIN THE

23   CLASSIFICATION LEVEL THAT HE HAD AT ONE TIME.

24        BUT THERE ARE E-MAILS AND THERE ARE DOCUMENTS THAT

25   IT IS OUR BELIEF THAT HE HAS NEVER SEEN BEFORE THAT WE WISH TO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

29

1    DISCLOSE TO HIM AND DISCLOSE TO MR. WILKES UNDER THE RIGHT

2    CIRCUMSTANCES.  AND I JUST THINK THAT THERE IS -- WE'LL

3    ADDRESS IT IF AND WHEN MR. GERAGOS PUTS THE QUESTION OF

4    WHETHER HE WANTS TO PUT IN FOR SECURITY CLEARANCE.

5         I DON'T THINK WE SHOULD ASSUME THAT ULTIMATELY IT'S

6    HIS DECISION.  ULTIMATELY, IT'S THE COURT'S DECISION AS TO

7    WHETHER OR NOT MR. GERAGOS WILL BE ABLE TO RENDER EFFECTIVE

8    ASSISTANCE OF COUNSEL WITHOUT THIS INFORMATION.  I DON'T THINK

9    HE COULD.

10        THE COURT:  HAVE YOU STARTED THE PROCESS YET,

11   MR. GERAGOS, ARE HAVE YOU REFRAINED FROM FILLING OUT THE FORMS

12   AND LETTING THE PROCESS BEGIN?

13        MR. GERAGOS:  I HAVE NOT.  MR. LONDERGAN HAD CALLED

14   ME.  HE INDICATED THAT IN ORDER TO RECEIVE THE INFORMATION, I

15   HAD TO DO IT.  I TOLD HIM, I THINK, POLITELY "I RESIST THAT."

16        HE SAID WE COULD BRING IT UP IN COURT.  THAT'S WHAT

17   I'VE DONE.

18        THE COURT:  IF YOU'RE INTENT ON BRINGING A MOTION

19   CHALLENGING THE PROVISIONS OF CIPA, WE'D BETTER DO THAT IN

20   FAIRLY QUICK ORDER.

21        MR. GERAGOS:  I INTEND ON DOING THAT.  I APOLOGIZE

22   TO THE COURT.  I'VE BEEN IN TRIAL UNTIL LAST FRIDAY.  MY

23   CO-COUNSEL, MR. BUEHLER, IS IN A CAPITAL CASE IN FEDERAL COURT

24   IN THE CENTRAL DISTRICT RIGHT NOW.  I'M OUT, THOUGH.  SO I CAN

25   GET IT DONE FAIRLY QUICKLY.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I'M MINDFUL WHEN YOU WERE HERE THE FIRST

2     TIME, YOU SAID THAT MR. WILKES MAY WANT HIS TRIAL WITHIN

3     70 DAYS.

4          MR. GERAGOS:  THAT'S CORRECT.

5          THE COURT:  I'M PREPARED TO GIVE HIM THAT SUBJECT TO

6     THE EXEMPTIONS UNDER THE SPEEDY TRIAL ACT, IF WE NEED TO GET

7     THIS NAILED DOWN RIGHT AWAY BECAUSE THERE ARE QUESTIONS BEYOND

8     JUST WHETHER YOU WANT TO ACCEDE TO THIS PROCEDURE OR NOT, AS

9     MR. FORGE RAISED IT.  SO I WANT YOU TO FILE THAT MOTION

10    IMMEDIATELY.

11         MR. GERAGOS:  I WILL DO THAT.

12         THE COURT:  GO AHEAD, MR. FORGE.

13         MR. PITOFSKY:  WE'RE HAVING A LITTLE PROBLEM HEARING

14    THE COURT.

15         THE COURT:  I'M SORRY.  I'VE JUST TOLD MR. GERAGOS

16    THAT IF HE INTENDS TO CHALLENGE THE CIPA PROVISIONS, BRING

17    CONSTITUTIONAL OR OTHER CHALLENGE TO THEM, THAT HE NEEDS TO DO

18    THAT RIGHT AWAY.  WE NEED TO GET NAILED DOWN WHETHER HE'S

19    GOING TO BE SUBJECT TO THAT AND WHETHER THE COURT WILL PERMIT

20    HIM TO MAKE THE ELECTION THAT HE'S TALKED ABOUT; THAT IS, THAT

21    HE'S NOT TO GO THROUGH THE SECURITY CLEARANCE.  I'LL RESERVE

22    ON THAT UNTIL SUCH TIME I SEE HIS MOTION CHALLENGING THE CIPA

23    PROVISION.

24         MR. PITOFSKY:  THANK YOU.

25         MR. FORGE:  I JUST WANT TO WRAP IT UP WHERE I BEGAN,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

31

1    AND THAT IS WITH THE LEAKS AND THE PROPER WAY OF ADDRESSING

2    THOSE LEAKS AND DOING THE BEST THAT WE CAN SO THE COURT STANDS

3    ASSURED THAT THEY DON'T HAPPEN IN THE FUTURE.

4           I THINK AS POINTED OUT, WHEN YOU GO ONE BY ONE

5    THROUGH THE REQUESTS FOR RECIPROCAL PROVISIONS IN THE

6    PROTECTIVE ORDER, THAT'S NOT THE RIGHT WAY TO GO ABOUT IT.

7    HOWEVER -- ALSO, YOUR HONOR, I THINK IF WE BURY IT IN A CIPA

8    PROTECTIVE ORDER, THAT'S NOT, I DON'T THINK, THE MESSAGE THE

9    COURT WANTS TO SEND.

10          WHAT I WOULD INVITE THE COURT TO DO IS TO ISSUE A

11   SEPARATE ORDER RESTRICTING THE DISSEMINATION OF INFORMATION BY

12   ALL PARTIES AND REMINDING ALL PARTIES -- AND YOUR HONOR DOES

13   NOT MISS WORDS.  IF YOUR HONOR CHOOSES TO ADDRESS THE LEAKS OF

14   INFORMATION, SO BE IT.  THEY CERTAINLY WEREN'T FROM THE

15   DEFENSE, AT LEAST BASED ON THE PRESS ACCOUNTS.

16          THAT, I THINK, YOUR HONOR, WOULD SEND A VERY STRONG

17   MESSAGE TO WHOEVER THE INDIVIDUAL OR INDIVIDUALS WERE WHO

18   LEAKED THIS INFORMATION.  AND I THINK IT WOULD KEEP THAT

19   PORTION OF THIS COURT'S VIEWS IN THE PROPER CONTEXT.

20          I DON'T THINK IT'S INTERTWINED WITH CIPA.  I THINK

21   IT'S A SEPARATE ISSUE, A VERY SERIOUS ISSUE, BUT A SEPARATE

22   ISSUE THAT IS BEST HANDLED IN THE CONTEXT OF A DIFFERENT

23   ORDER.

24          THE COURT:  I HAVE A QUESTION ABOUT YOUR

25   CHARACTERIZATION OF MR. LONDERGAN AS BEING A REPRESENTATIVE OF

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

32

1    THE EXECUTIVE.  HERE I DON'T VIEW HIS FUNCTION AS BEING A

2    REPRESENTATIVE OF THE EXECUTIVE.  I'VE APPOINTED HIM AS COURT

3    SECURITY OFFICER.  I REALLY SEE HIS FUNCTION AS A

4    QUASI-JUDICIAL FUNCTION.

5             HE IS RESPONSIBLE FOR IMPLEMENTING THE CIPA

6    PROVISIONS USING HIS BEST JUDGMENT.  HE WORKS UNDER THE

7    AUSPICES OF THE COURT.  SO I DON'T SEE HIM IN HIS ROLE AS A

8    REPRESENTATIVE OF THE EXECUTIVE IN THIS CASE.  I SEE HIM AS

9    SORT OF AN OMBUDSMAN FOR THIS CLASSIFIED INFORMATION, AND HE'S

10   TO ADVISE ME ABOUT THE PROPER PROCEDURES.

11            DO YOU AGREE WITH THAT?

12            MR. FORGE:  I DO, YOUR HONOR.  MY POINT IS THAT

13   MR. LONDERGAN IS A MEMBER OF THE EXECUTIVE BRANCH.  I AGREE

14   WITH YOU THAT HE IS STRADDLING THE LINE BETWEEN THE TWO

15   BRANCHES.  I AGREE, HE IS MORE IN THE ROLE OF AN OMBUDSMAN.

16            THE COURT:  THAT BEING SO, MR. LONDERGAN, I'D LIKE

17   TO HEAR YOUR POINT OF VIEW ON THE DEFENSE POSITION HERE.  I

18   HAVE SOME QUESTION -- IF YOU'LL APPROACH THE LECTERN.  I HAVE

19   SOME QUESTION ABOUT THE PRACTICALITY OF IMPOSING ON THE

20   GOVERNMENT THE OBLIGATION OF GOING THROUGH YOU BEFORE LOOKING

21   AT THE MATERIALS.  AFTER ALL, YOU AND I HAD A DISCUSSION.

22            AND FOR THE EDIFICATION OF COUNSEL, BECAUSE I'M

23   SUBJECT TO THESE PROVISIONS AS WELL, IT WAS WHETHER A SKIP WAS

24   GOING TO BE INSTALLED IN MY CHAMBERS AND A SAFE.  AND I

25   ELECTED NOT TO DO THAT.  I SAID, "I'LL GO OVER TO THE

PDF created with pdfFactory trial version www.pdffactory.com

33

1    GOVERNMENT'S SECURE FACILITY."  MR. LONDERGAN TOLD ME HE'D

2    ALREADY INSPECTED IT AND KNEW THAT IT EXISTED AND IT COMPLIED

3    WITH THE PROVISIONS.  I SAID, "IF I NEED TO LOOK AT THIS

4    STUFF, THEN I'LL GO OVER THERE RATHER THAN HAVE THIS CAPITAL

5    EXPENSE HERE."

6         YOU'RE FAMILIAR WITH THEIR SHOP.  THE PRACTICAL

7    IMPLICATIONS OF REQUIRING THEM TO GO THROUGH YOU TO LOOK AT

8    THINGS THAT ARE UNDER THEIR LOCK AND KEY DON'T MAKE MUCH

9    SENSE, BUT I AM CONCERNED.  THE GIST OF THIS MOTION, AS I

10   UNDERSTAND IT, THE GENESIS IS THAT DEFENSE COUNSEL ARE RIGHTLY

11   CONCERNED ABOUT LEAKING, AND THEY'RE WORRIED ABOUT, I THINK,

12   AMONG OTHER THINGS, LEAKING OF CLASSIFIED INFORMATION.

13   THERE'S BEEN LEAKING SO FAR.  IT'S BEEN PREJUDICIAL, I THINK,

14   TO THE DEFENDANTS.

15        I DON'T CONDONE TRYING THE CASE IN THE PRESS OR

16   FORECASTING EVEN BEFORE DEFENSE COUNSEL AND THE DEFENDANTS

17   KNOW TO THE PRESS AND THE PUBLIC WHAT'S GOING TO HAPPEN.  THAT

18   SHOULDN'T HAVE BEEN DONE.  AND I THINK THEY HAVE A JUSTIFIED

19   CONCERN THAT GIVEN THE NATURE OF THE INFORMATION HERE, THAT

20   THERE OUGHT TO BE SOME RECIPROCAL RESTRICTIONS ON BOTH SIDES.

21        THAT'S WHAT I'D LIKE TO ADDRESS.  I AGREE WITH

22   MR. FORGE.  I CAN DO THAT ON A STAND-ALONE BASIS.  I'M

23   PREPARED TO DO THAT.  I THINK THAT THERE'S ALSO SOME

24   APPLICATION OF CIPA PROVISIONS THAT WOULD CONTROL THAT.  AND

25   IF THERE'S ANOTHER LEAK, MAKE THE PERSON LEAKING SUBJECT TO

PDF created with pdfFactory trial version www.pdffactory.com

34

1    SANCTIONS IN ANY NUMBER OF WAYS.

2            I'M INTERESTED IN YOUR VIEW ON THIS PROPOSAL THAT

3    THE DEFENSE IS MADE TO MAKE ALL THESE PROVISIONS RECIPROCAL.

4            MR. LONDERGAN:  FIRST OF ALL, I WORK AS A NEUTRAL

5    OFFICER OF THE COURT.  I'M PAID BY THE EXECUTIVE BRANCH,

6    NOMINATED TO THE COURT UNDER CIPA.  ONCE THE NOMINATION IS

7    ACCEPTED, THE COURT ISSUES AN ORDER, WHICH THE COURT HAS DONE.

8    THAT GIVES ME THE STATUS AS A NEUTRAL PERSON REPORTING TO THE

9    JUDGE ANY PROBLEMS IN TERMS OF CLASSIFIED INFORMATION FROM A

10   SECURITY POINT OF VIEW THAT MAY ARISE.

11           UNDER CIPA, YOUR HONOR, IT DISTINCTLY SEPARATES

12   CERTAIN PROCEDURES, CIPA AND ALSO THE SECURITY PROCEDURES,

13   WHICH MUST BE UPHELD BY THE DEFENSE AND BY THE GOVERNMENT.

14   AND WITHIN CIPA, THE DEFENSE IS REQUIRED TO FILE UNDER SEAL

15   UNTIL THERE'S A REVIEW MADE IN TERMS OF DETERMINATION OF

16   CLASSIFIABILITY OF THE INFORMATION THAT THEY WERE PROFFERING

17   TO THE COURT.

18           ONCE THAT'S DONE UNDER CIPA, THAT REVIEW CAN BE DONE

19   IN CONJUNCTION WITH EITHER ME AND REPRESENTATIVES OF THE

20   PARTICULAR AGENCIES OR IN CONJUNCTION WITH THE GOVERNMENT, WHO

21   ALSO IS DEALING WITH THE AGENCIES, WHO WOULD BE THE

22   CLASSIFYING AGENCIES FOR THE MATERIAL.

23           THE GOVERNMENT -- BECAUSE THE CLASSIFICATION IS AN

24   EXECUTIVE BRANCH DETERMINATION, THE GOVERNMENT IS IN THE

25   POSITION OF THE POWER TO DETERMINE WHAT IS CLASSIFIED AND WHAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

35

1    IS NOT CLASSIFIED.  THEREFORE, THEY DON'T HAVE THE PROTECTION

2    OR THE INSURANCE PROTECTION, AS SUCH, OF GOING THROUGH ME VIA

3    THAT PROCESS.  THEY OPERATE AT THEIR OWN RISK IN TERMS OF

4    FILING OPENLY OR FILING UNDER SEAL WHAT IS CLASSIFIED.

5            THE COURT:  SO YOUR VIEW IS THE GIST OF THIS

6    PROVISION IS CONTROLLING ONLY ON THE DEFENSE AND THEIR

7    FILINGS?

8            MR. LONDERGAN:  UNDER THE ACT ITSELF, THE ACT AND

9    THE SECURITY PROCEDURES.

10            THE COURT:  WHAT PROVISION IS THERE IN CIPA, IF ANY,

11    THAT ALLOWS ME TO ISSUE A FAIRLY STRICT NON-DISCLOSURE ORDER

12    TO BOTH SIDES?  I MEAN, I THINK I HAVE INHERENT POWER TO DO

13    THAT.

14            MR. LONDERGAN:  I THINK YOU DO, SIR.

15            THE COURT:  IS THERE A PROVISION IN CIPA?

16            MR. LONDERGAN:  I DON'T KNOW OF ANY LIMITATIONS.

17            THE COURT:  WELL, YOU'VE VIEWED THE SKIP AND THE

18    VAULT AND ALL THE PRECAUTIONS THAT THE U.S. ATTORNEY HAS IN

19    PLACE?

20            MR. LONDERGAN:  THE SKIP IN THE U.S. ATTORNEY'S

21    OFFICE HAD BEEN ACCREDITED BY THE DEPARTMENT OF JUSTICE

22    SPECIAL SECURITY OFFICER, THE NUMBER ONE PERSON IN THE

23    DEPARTMENT OF JUSTICE WHO DOES THIS PARTICULAR FUNCTION, AS

24    HAD BEEN THE FACILITY IN LOS ANGELES.

25            THE COURT:  ALL RIGHT.  ANYTHING ELSE I SHOULD KNOW,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    MR. LONDERGAN, FROM YOUR POINT OF VIEW?

2              MR. LONDERGAN:  NO, SIR.  IN TERMS OF MR. GERAGOS,

3    WHEN WE SPOKE, IT WAS MORE IN THE CONTEXT OF MR. GERAGOS WAS

4    GOING TO CONSIDER WHETHER HE WOULD BE APPLYING FOR A SECURITY

5    CLEARANCE.

6              THE COURT:  YOU AGREE OR ACCEPT THAT THE CONSEQUENCE

7    IS IF I UPHOLD THE CONSTITUTIONALITY OR ANY OTHER CHALLENGE TO

8    THE STATUTE, THAT HE MUST GO THROUGH THAT OR FOREGO USE OF

9    CLASSIFIED MATERIALS?

10             MR. LONDERGAN:  THAT MIGHT BE STEPPING A LITTLE BIT

11   OUTSIDE OF MY REALM.

12             THE COURT:  HAVE YOU EVER HAD A SITUATION WHERE

13   COUNSEL HAS ELECTED TO WAIVE ENTITLEMENT TO CONFIDENTIAL

14   MATERIAL BECAUSE THEY DIDN'T WANT TO GO THROUGH THE

15   PROCEDURES?

16             MR. LONDERGAN:  I'M SURE THERE HAS BEEN AN INSTANCE.

17   IT WAS AN AWFUL LONG TIME AGO.  THAT PARTICULAR COUNSEL HAD --

18   DEFENSE COUNSEL HAD A PRIOR RELATIONSHIP WITH A CERTAIN UNITED

19   STATES GOVERNMENT ORGANIZATION.  SO BASED ON THAT RELATIONSHIP

20   AND PREVIOUS LITIGATIONS.

21             THE COURT:  ALL RIGHT.  THANK YOU, MR. LONDERGAN.

22             MR. GERAGOS, HERE'S THE PROBLEM I SEE.  I'LL

23   ENTERTAIN ANY CHALLENGE YOU WANT TO BRING.  BUT LOOK, THE

24   NATURE OF WHAT'S AT ISSUE AND WHAT'S CONTESTED HERE IS

25   CLASSIFIED INFORMATION.  SO WHETHER YOU KNOW THAT SOMEHOW

PDF created with pdfFactory trial version www.pdffactory.com

37

1    INDEPENDENTLY OR BECAUSE YOU GOT IT FROM THE UNITED STATES, I

2    THINK THE PROVISIONS STILL APPLY TO YOU.

3         THE WHOLE PURPOSE BEHIND THE CIPA THING IS FOR ME TO

4    HEAR FROM THE GOVERNMENT THAT CERTAIN THINGS SHOULD NOT BE

5    AIRED AND TO EVALUATE WHETHER THOSE THINGS NEED TO BE AIRED IN

6    ORDER TO FAIRLY DEFEND THE DEFENDANT, MAKE A JUDGMENT ABOUT

7    THAT.  IF I CONCLUDE THAT THEY SHOULD NOT, THEN I WOULD ORDER

8    THEM NOT DISCLOSED.

9         I HAVE A FEELING THAT THE POSITION YOU'RE ADVOCATING

10   GIVES GREAT PAUSE TO THE UNITED STATES.  THEY'RE FEARFUL THAT

11   WHILE YOU MAY HAVE GOTTEN SOME OF THIS INFORMATION IN AN

12   UNAUTHORIZED FASHION, THAT THAT STILL DOESN'T ENTITLE YOU --

13   AND BY "UNAUTHORIZED," I MEAN YOUR CLIENT GOT IT IN AN

14   UNAUTHORIZED WAY AND TOLD YOU.  I DON'T MEAN ANYTHING UNTOWARD

15   ON YOUR PART.

16        BUT I THINK THEIR POSITION IS STILL GOING TO BE "WE

17   DON'T CARE HOW HE GOT IT.  IF IT'S CLASSIFIED INFORMATION THAT

18   YOU DETERMINE NOT TO BE RELEVANT TO THE DEFENSE, THEN IT'S NOT

19   GOING TO BE BROUGHT UP BY ANYONE."

20        ISN'T THAT YOUR POSITION?  YOU THINK THAT

21   MR. GERAGOS, LIKE IT OR NOT, IS SUBJECT AT LEAST TO THOSE

22   PROVISIONS OF CIPA THAT HAVE THE COURT EVALUATE THE NATIONAL

23   SECURITY INTEREST VERSUS THE RELEVANCY?

24        MR. FORGE:  YES, YOUR HONOR.  THERE ARE ALSO

25   STATUTES BEYOND CIPA THAT RESTRICT ANYONE'S DISCLOSURE OF

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

```
1    CLASSIFIED INFORMATION.  SO IT'S NOT JUST A CIPA ISSUE.  THERE
2    ARE SPECIFIC STATUTES DEALING WITH IT.
3            THE COURT:  I WANT YOU TO ADDRESS THAT AS WELL.  NOT
4    JUST YOUR AS-APPLIED CHALLENGE TO THIS STATUTE.  LET'S ASSUME
5    I RULE THAT THE STATUTE IS OKAY.  I'M NOT SURE YOU HAVE THE
6    LATITUDE TO DO WHAT YOU THINK EVEN IF YOU MAKE THE ELECTION.
7            MR. GERAGOS:  I THINK THAT THE PROBLEM IS THERE'S A
8    6TH AMENDMENT PROBLEM.  SO I THINK THAT TRUMPS ANYTHING THAT'S
9    IN CIPA, ANY OTHER CLASSIFICATION THAT THEY HAVE.  I THINK
10   THAT MY DUTY TO ZEALOUSLY DEFEND MY CLIENT IN THE BEST WAY
11   POSSIBLE AND MY RIGHT TO CROSS-EXAMINE IN A WAY THAT I THINK
12   IS APPROPRIATE, I DON'T THINK THAT I NEED TO VENT.  THAT WILL
13   BE SUBJECT, OBVIOUSLY, TO THE MOTION.
14           I THINK CIPA ALREADY ANTICIPATED YOU DON'T HAVE TO
15   GET CLEARANCE FOR JURORS.  JURORS ARE HERE AND THEY DON'T NEED
16   THE CLEARANCE, I DON'T -- AND THERE ARE PROVISIONS -- I'LL PUT
17   THIS IN THE MOTION AS WELL -- THAT INDICATE THAT IF THE
18   INFORMATION WAS PREVIOUSLY GLOBAL POSSESSION, YOU CAN'T DO
19   ANYTHING ABOUT PUTTING THE HORSE BACK IN THE BARN.
20           THE COURT:  THERE MAY BE NO PROVISION WHERE I CAN
21   FORCE YOU TO UNDERGO THIS SCREENING AND ALL.  I UNDERSTAND
22   YOUR LEGAL POSITION ON THAT.  I'M CONCERNED ABOUT THE BROADER
23   IMPLICATIONS; THAT DEFENDANTS BAR THE DOOR, AND THAT WHATEVER
24   YOU KNOW YOU CAN CROSS-EXAMINE ON.  IF THAT'S THE CASE, THEN
25   MR. FOGGO WOULDN'T NEED TO HAVE THIS EITHER.  HE CAN SAY, "I
```

PDF created with pdfFactory trial version www.pdffactory.com

39

1    ELECT NOT TO HAVE IT.  I ALREADY KNOW EVERYTHING I NEED TO

2    KNOW."

3            MR. GERAGOS:  I THINK THERE'S A QUALITATIVE

4    DIFFERENCE.  MR. FOGGO IS IN A SITUATION WHERE HE HAD, AS WAS

5    INDICATED, A PRIOR CONTRACT.  AND HE HAD -- AS PART OF HIS

6    DUTIES IN THE CIA, HE HAD TO GO THROUGH A CERTAIN KIND OF --

7    OATHS AND EVERYTHING ELSE AND CONTRACTS.  SO HE'S IN A VERY

8    DIFFERENT POSITION.

9            MY CLIENT IS NOT.  MY CLIENT WAS A CONTRACTOR.  MY

10   CLIENT, IN THE COURSE AND SCOPE OF HIS CONTRACTING, KNOWS THE

11   INFORMATION WITHOUT A SECURITY CLEARANCE AND NOT NECESSARILY

12   FROM MR. FOGGO.  SO I WANT THAT TO BE CLEAR.

13           THEREFORE, WHEN THAT'S COMMUNICATED TO ME, IT'S NOT

14   SO MUCH THE SECURITY CLEARANCE THAT I OBJECT TO, EVEN THOUGH I

15   HAVE A PROBLEM WITH THE DOJ DOING ANYTHING, TELLING MY CLIENT

16   WHO HIS LAWYER CAN AND CAN'T BE.  IT IRKS ME.  I DON'T KNOW

17   THAT THE IRKSOME BASIS IS SUFFICIENT TO DECLARE THAT

18   UNCONSTITUTIONAL.

19           I HAVE A PROBLEM WITH THE SECTION 5 AND THE OTHER

20   PROVISIONS THAT SAY THAT I'VE GOT TO VENT CERTAIN THINGS AND

21   THAT I'VE GOT TO COME HERE AND I'VE GOT TO GIVE THEM A PREVIEW

22   OF WHAT MY CROSS-EXAMINATION IS GOING TO BE.  I TAKE GREAT

23   UMBRAGE AT THAT AND THINK THAT THAT'S A 6TH AMENDMENT

24   VIOLATION.  I DON'T THINK ANYTHING THAT THEY'VE GOT IS GOING

25   TO TRUMP THE 6TH AMENDMENT.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

40

1          THE COURT:  THAT SHOULD BE PART OF YOUR MOTION, TOO,

2     THEN.  I WANT TO RESOLVE THAT AT THE EARLIEST POSSIBLE DATE.

3          WHAT DATE HAVE WE SET FOR SUBSTANTIVE MOTIONS?

4          MR. GERAGOS:  APRIL 2ND BY 2:00.

5          THE COURT:  YOU'RE PREPARED --

6          MR. HALPERN:  APRIL 2ND IS DISCOVERY MOTIONS.

7          THE COURT:  I THINK THIS IMPACTS ON YOUR DESIRE THAT

8     YOU STATED INITIALLY AND THEN REITERATED TODAY FOR A SPEEDY

9     TRIAL.  I THINK YOU SHOULD FILE THIS MOTION AS SOON

10    AS YOU CAN.  THE TIME SCHEDULE IS THREE WEEKS BEFORE HEARING,

11    AND THE GOVERNMENT'S RESPONSE IS DUE A WEEK IN ADVANCE.

12         I'M NOT GOING TO PRESUME TO GIVE ANY KIND OF

13    TENTATIVE INDICATION UNTIL I READ THE PAPERS.  I THINK YOU

14    SHOULD INCLUDE ALL OF THESE CONCERNS THAT YOU'VE RAISED TODAY

15    IN YOUR MOTION AND LET ME DECIDE THOSE, AND WE'LL SEE WHERE WE

16    GO FROM THERE.

17         MR. GERAGOS:  COULD I ALSO ADDRESS ONE OTHER AREA,

18    WHICH IS THE LEAKS AND THE IDEA OF THE STAND-ALONE ORDER.

19         I HAD SUGGESTED IN A LETTER PRIOR TO MY CLIENT'S

20    INDICTMENT, BECAUSE I WAS SO IRATE AT THE TIME AND I'VE

21    MENTIONED BEFORE, THAT I WANTED ALL OF THE PEOPLE ON THE

22    PROSECUTION TEAM, HOWEVER WE WANT TO DEFINE THAT, TO FILE

23    DECLARATIONS UNDER PENALTY OF PERJURY.

24         I'D SUGGESTED AT THE TIME SINCE JUDGE GONZALEZ WAS

25    THE ONE WHO WAS HANDLING THE SPECIAL MASTER PROCEEDINGS THAT

PDF created with pdfFactory trial version www.pdffactory.com

1    IT BE PRESENTED TO HER.  I THINK IT'S APPROPRIATE -- IF THE

2    COURT WANTS, I WILL FILE A MOTION WITH THE REQUEST -- THAT

3    THAT BE DONE AND THE COURT APPOINT SOMEONE TO DO AN

4    INVESTIGATION.

5             AS THIS COURT WELL KNOWS, THE SOURCE PRIVILEGE IS

6    NOT MET WITH A WHOLE LOT OF SUCCESS IN THE FEDERAL COURTS

7    ANYMORE.  UNFORTUNATELY, IN THE STATE COURTS IT'S STILL THERE,

8    AND YOU CAN'T GET TO THE BOTTOM OF THIS.  HERE WE CAN GET TO

9    THE BOTTOM OF THIS.  CLEARLY, AS THEY'VE CONCEDED, IT DID NOT

10   COME FROM THE DEFENSE.  I THINK IT POTENTIALLY IS BRADY OR

11   GIGLIO INFORMATION AS TO WHO IT IS WHO WILLINGLY WILL GO OUT

12   AND VIOLATE 6(E).

13            AND THE WAY TO FIND THAT OUT IS TO GET THESE PEOPLE

14   TO PUT THEIR DECLARATIONS UNDER PENALTY OF PERJURY AND BRING

15   IN THE REPORTERS AND PUT THEM UNDER OATH AND LET THEM SAY WHO

16   IT WAS WHO DISCLOSED THE INFORMATION.

17            THE COURT:  YOU CAN BRING THAT MOTION.  I HAVE A LOT

18   ON MY PLATE ALREADY.  I DON'T KNOW IF I WANT TO UNDERTAKE

19   ANOTHER CASE AT THIS POINT.

20            MR. TESLIK, ANYTHING MORE?

21            MR. TESLIK:  JUST BRIEFLY.

22            JUST FOR THE RECORD, WE LEARNED THE DETAILS OF THE

23   INDICTMENT FROM A TELEPHONE CALL FROM A REPORTER BEFORE THE

24   INDICTMENT WAS RETURNED AS WELL.  WE DIDN'T PUT THAT IN OUR

25   MOTION.  BUT GIVEN THE NATURE OF THE REPRESENTATIONS AND THE

PDF created with pdfFactory trial version www.pdffactory.com

1    COURT'S CONCERNS HERE ABOUT 6(E), I THINK IT'S IMPORTANT THAT

2    THE RECORD REFLECT THAT WE GOT THE SAME TELEPHONE CALL AS

3    MR. GERAGOS.

4           YOUR HONOR, IT APPEARS, FROM WHAT MR. LONDERGAN HAS

5    SAID AND WHAT THE GOVERNMENT HAS SAID, THAT THE GOVERNMENT IS

6    IN -- APPEARS TO BE OR IS REPRESENTING TO THE COURT THAT IT IS

7    IN COMPLIANCE WITH MOST OF THE SECURITY PROCEDURES.  THAT

8    WOULD MAKE THE RECIPROCAL PROCEDURES THAT WE ASK THAT THE

9    COURT IMPOSE UNDER THE CIPA MOTION VERY EASY TO COMPLY WITH.

10          IT APPEARS THAT MR. LONDERGAN HAS ALREADY SEEN THE

11   SKIP OVER AT THE U.S. ATTORNEY'S OFFICE.  SO WHAT WE'RE ASKING

12   BE INCLUDED IN THE CIPA ORDER SEEMS TO BE SOMETHING THAT THE

13   GOVERNMENT SHOULD READILY AGREE TO BECAUSE IT APPEARS THAT

14   THEY'RE ALREADY IN THE COMPLIANCE THAT WE SEE.

15          THE COURT:  HERE'S THE PROBLEM I HAVE:  AS

16   MR. LONDERGAN POINTS OUT, CIPA IS DIRECTED AT ACTIONS BY

17   DEFENSE COUNSEL AND AVOIDING THE WHOLE PROBLEM WITH GRAY

18   MAILING AND SETTING SOME PROCEDURES SO THAT THAT DOESN'T

19   OCCUR.

20          THE OTHER SALIENT POINT IS THAT THE GOVERNMENT, IN

21   THE FIRST INSTANCE, DECIDES THE CLASSIFICATION LEVEL.  SO ONE

22   WOULD THINK IF THEY'RE ENTRUSTED WITH THAT AUTHORITY, THEN

23   THEY'RE GOING TO OBSERVE THE CLASSIFICATION LEVELS THEMSELVES.

24          I'M RELUCTANT, ON A TACTICAL BASIS, BECAUSE I KNOW

25   YOU DON'T ORDINARILY HAVE A SKIP.  YOU DON'T HAVE TO DEAL WITH

PDF created with pdfFactory trial version www.pdffactory.com

1    INFORMATION YOU GET FROM CLIENTS ON THAT BASIS.  IT'S THE

2    PECULIAR NATURE OF WHAT'S INVOLVED HERE THAT REQUIRES

3    DIFFERENT PROCEDURE IN THIS CASE THAT YOU HAVE TO FOLLOW.

4          I'M RELUCTANT TO IMPOSE CONDITIONS ON THEM THAT

5    THEY'VE ALREADY IMPOSED UPON THEMSELVES, PARTICULARLY WHEN

6    CIPA DOESN'T PARTICULARLY AUTHORIZE ME TO DO THAT.  I THINK I

7    CAN GET TO THE GIST OF THE PROBLEM THAT YOU AND MR. GERAGOS

8    HAVE RAISED WITH RESPECT TO LEAKS BY ISSUING A STAND-ALONE

9    ORDER.  I'M PREPARED TO DO THAT.  MR. GERAGOS SAYS HE'S GOING

10   TO FILE A MOTION FOR SOME FURTHER RELIEF.

11         LOOK, I THINK IT'S A BIG PROBLEM.  AND I THINK

12   MR. FORGE AND MR. HALPERN HAVE ACKNOWLEDGED IT.  IF THEY HAVE

13   SOMEBODY THAT'S LEAKING GRAND JURY INFORMATION, WHY WOULD YOU

14   ASSUME THAT THEY WOULDN'T ALSO LEAK A TITILLATING BIT OF

15   CLASSIFIED INFORMATION THAT COULD SERVE THEIR ENDS.  THAT

16   SHOULDN'T HAPPEN.  THE FIRST THING SHOULDN'T HAVE HAPPENED,

17   THAT THAT CERTAINLY SHOULDN'T HAPPEN.

18         I IMAGINE THEY'VE BEEN PRETTY DEFT IN RESPONDING.  I

19   IMAGINE THAT THERE'S PROBABLY AN INVESTIGATION UNDERWAY

20   ALREADY AND THEY'RE SCURRYING TO STOP WHATEVER LEAKING HAS

21   OCCURRED.  I THINK I CURE THAT PROBLEM BY ISSUING A

22   STAND-ALONE ORDER.

23         I'LL ENTERTAIN PROPOSED ORDERS FROM THE THREE OF

24   YOU, MR. GERAGOS AND MR. TESLIK AND THEN THE GOVERNMENT.

25   WHATEVER PROPOSED ORDER YOU THINK IS APPROPRIATE TO COVER THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

44

1    CONCERN RAISED BY THE DEFENSE MOTION, I'LL LOOK AT THEM.

2    MAYBE YOU CAN AGREE ON A STIPULATED ORDER AND I'LL SIGN THAT.

3    BUT I THINK CERTAINLY THAT THAT OUGHT TO APPLY RECIPROCALLY.

4            THE PROOF'S IN THE PUDDING, MR. FORGE.  I THINK AS

5    COUNSEL FOR THESE DEFENDANTS AND AS AMERICAN MEMBERS OF THE

6    PUBLIC, THESE TWO FELLOWS HAVE A RIGHT TO BE PRETTY OUTRAGED

7    AT WHAT'S HAPPENED SO FAR.  THEY'RE CONCERNED THAT IT OUGHT

8    NOT TO HAPPEN ANYMORE.

9            MR. FORGE:  THEY CERTAINLY HAVE THAT RIGHT.

10           THE COURT:  I'LL SIGN AN ORDER, BUT I THINK THAT

11   ANSWERS THAT.

12           AS FAR AS THE OTHER PROVISIONS YOU SET FORTH AT 4

13   THROUGH 5, I THINK ALL OF THAT -- IT WOULD BE SUPERFLUOUS FOR

14   ME TO AMEND THE PROTECTIVE ORDER TO REQUIRE THAT.  THEY'RE

15   DOING THAT ANYWAY.

16           YOUR NOTES, TO THE EXTENT THEY IMPLICATE

17   CONFIDENTIAL INFORMATION, I ASSUME THAT YOU'RE FOLLOWING THE

18   PROCEDURE AND KEEPING THOSE NOTES --

19           MR. FORGE:  WE HAVE TO GO INTO THE SKIP, OPEN THE

20   DOOR OF THE SKIP --

21           THE COURT:  I'M CONCERNED, MR. TESLIK, ALSO, THAT I

22   SAY, "OKAY.  TELL ME WHO YOU'RE REPORTING THE INFORMATION TO."

23   I'M DEALING WITH THE BRANCH OF THE EXECUTIVE.  AND THEY'RE THE

24   ONES, AFTER ALL, THAT HAVE THIS CONCERN ABOUT TOP SECRET

25   CLEARANCES.  IT'S THEIR REPRESENTATIVES WHO MAKE THE

PDF created with pdfFactory trial version www.pdffactory.com

1    DETERMINATION WHETHER SOMEBODY IS WORTHY OF THAT KIND OF

2    CLEARANCE THEY'VE MADE IT AS TO THESE FELLOWS AND PRESUMABLY

3    WHO THEY'RE TALKING TO ABOUT IT.

4            YOU KNOW THE PROCEDURES THEY GO THROUGH; TRIAL TEAM

5    MEETINGS, INDICTMENT REVIEW.  TO HAVE THEM HAVE TO REPORT TO

6    ME ON ALL OF THOSE INTERACTIONS WITH CAREER MEMBERS OF THE

7    U.S. ATTORNEY'S OFFICE, I JUST THINK IT'S SUPERFLUOUS.  I

8    DON'T THINK I NEED TO LOOK AT THAT.

9            IT'S A DIFFERENT STORY IF YOU WANT TO CONSULT WITH

10   SOME EXPERT OR SOMEBODY OUTSIDE AND CLASSIFIED INFORMATION IS

11   IMPLICATED.  THEN I DO HAVE A CONCERN.  BUT THOSE ARE

12   PRACTICAL DIFFERENCES, I THINK.  AND SENSIBLY, I THINK, CIPA

13   DOESN'T EXTEND EVERYBODY THE U.S. ATTORNEY WANTS TO CONSULT ON

14   THIS.

15           SO THE MOTION TO MODIFY IS DENIED EXCEPT INSOFAR AS

16   THE RECIPROCAL PROVISIONS REGARDING KEEPING SECRET THIS

17   INFORMATION.  AND PERHAPS NOT UNDER THE AUSPICES OF CIPA, BUT

18   UNDER THE INHERENT POWER OF THE COURT, I WILL SIGN AN ORDER

19   THAT APPLIES TO ANYONE TO WHOM THE INFORMATION IS DISSEMINATED

20   OR ANYONE WHO'S HAD ANY PART OF THE INVESTIGATION, WHETHER

21   WITH THE GOVERNMENT OR ON THE OTHER SIDE REPRESENTING THE

22   DEFENDANTS, THAT THEY NOT DISCLOSE ANY MORE INFORMATION ABOUT

23   THIS, THAT THE DISCLOSURE PROVISIONS THAT CIPA PROVIDES FOR

24   RUNNING THINGS THROUGH MR. LONDERGAN THAT ARE CLASSIFIED APPLY

25   TO EVERYONE ON BOTH SIDES.

PDF created with pdfFactory trial version www.pdffactory.com

46

1          SO DRAFT AN APPROPRIATE ORDER.  GET TOGETHER AND

2     GIVE ME A STIPULATED ORDER, IF YOU CAN REACH ONE.  OTHERWISE,

3     GIVE ME YOUR COMPETING VERSIONS, AND I'LL EITHER HARMONIZE

4     THEM OR CHOOSE BETWEEN THEM AND SIGN SUCH AN ORDER.

5          LET ME DEAL WITH THE OTHER PROVISION.

6          THE "EYES ONLY" PROVISION, I'M GOING TO GRANT THE

7     MODIFICATION SOUGHT BY DEFENDANT FOGGO IN THAT CASE.  JUST AS

8     I TRIED TO BE PRACTICAL IN RULING ON THE FIRST ONE -- LOOK,

9     MR. FORGE, I DON'T PRESUME TO KNOW EVERYTHING YOU'RE GOING TO

10    GIVE THEM, BUT I'M ASSUMING DEFENDANT FOGGO KNOWS ALL THE

11    CLASSIFIED INFORMATION.  IT'S NOT GOING TO COME AS A SECRET TO

12    HIM.  IT MAKES LITTLE SENSE TO HAVE THE DEFENSE COME BACK TO

13    ME AND SAY "WE WANT TO DISCUSS THIS WITH OUR CLIENT" WHEN IT'S

14    APPARENT TO EVERYONE THAT HE ALREADY KNOWS THAT INFORMATION,

15    UNLESS THERE'S SOMETHING I'M MISSING HERE.  I CAN SEE WHERE I

16    MIGHT DO IT DIFFERENTLY WITH MR. WILKES.

17          MR. FORGE:  THIS IS THE POINT I TOUCHED UPON

18    BRIEFLY, YOUR HONOR.  THERE'S CERTAINLY NOT GOING TO BE A

19    CATEGORY OF INFORMATION THAT DIDN'T FALL WITHIN MR. FOGGO'S

20    PREVIOUS SECURITY CLEARANCE, BUT THERE UNQUESTIONABLY ARE

21    DOCUMENTS THAT HE HAS NOT SEEN BEFORE.

22          WHAT I WOULD SUGGEST -- I THINK THE POINT YOU'RE

23    MAKING IS CERTAINLY A GOOD ONE -- IF THERE ARE INSTANCES IN

24    WHICH WE HAVE A GOOD FAITH BELIEF THAT MR. FOGGO HAS NEVER

25    SEEN THE DOCUMENT BEFORE, IN THOSE INSTANCES WHAT WE WOULD

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

47

1    PREFER TO DO IS TO PRESENT THEM TO MR. TESLIK AND OTHERS IN

2    HIS FIRM WHO HAVE BEEN CLEARED AND EXPLAIN TO THEM WHY WE

3    DON'T THINK IT IS MATERIAL TO THE DEFENSE.  THEY CAN EXPLAIN

4    TO US WHY THEY BELIEVE IT IS.

5              AT THAT POINT, BOTH SIDES JUST FILE THEIR PAPERS

6    WITH THE COURT.  AT THAT POINT, IT REALLY -- IT'S NOT A MATTER

7    OF WHO GOES FIRST.  WE'VE ATTEMPTED TO WORK IT OUT AMONGST

8    OURSELVES.  WE DISAGREE.  THE COURT NEEDS TO HEAR FROM BOTH OF

9    US BEFORE MAKING A DECISION.

10             THE COURT:  THAT'S A DIFFERENT DECISION.  THE

11   QUESTION ABOUT WHETHER THE STUFF SEES THE LIGHT OF DAY IF THE

12   CASE IS TRIED IS DIFFERENT FROM WHETHER THEY CAN DISCUSS IT

13   WITH THEIR CLIENT.  WHEN I CONSIDER THE BACKGROUND HERE,

14   HERE'S A FELLOW THAT'S BEEN WITH THE CIA FOR 23 YEARS AND WAS

15   THE THIRD IN CHARGE.  I CAN'T IMAGINE THAT THERE'S GOING TO BE

16   ANYTHING THAT -- EVEN THOUGH THIS INFORMATION MAY HAVE COME

17   AFTERWARDS, THERE'S NOT GOING TO BE ANYTHING THAT'S REALLY

18   SURPRISING TO HIM.

19             I JUST DON'T SEE -- I DON'T SEE THE POINT OF TELLING

20   THEM BEFORE THEY CAN DISCLOSE IT TO HIM IF IT'S DISPUTED, I

21   HAVE TO LOOK AT IT AND MAKE A RULING.  I'M NOT TRYING TO SHIRK

22   MY RESPONSIBILITIES, BUT THERE'S SO MUCH THAT MR. FOGGO KNOWS

23   THAT PRESUMABLY IS GOING TO BE AT ISSUE ABOUT WHETHER THIS

24   GETS DISCLOSED OR DOESN'T GET DISCLOSED, IT JUST DOESN'T SEEM

25   TO MAKE PRACTICAL SENSE TO APPLY THE "EYES ONLY" PROVISION AS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

48

1    TO OTHER MATERIAL THAT YOU CONTEMPLATE THAT HE HASN'T YET

2    SEEN.

3         MR. FORGE:  JUST SO THE COURT IS CLEAR, WE'RE

4    TALKING ABOUT A NARROW SET OF CIRCUMSTANCES IN WHICH -- EITHER

5    WAY THE COURT IS GOING TO HAVE TO ADDRESS THE ISSUE IF THE

6    PARTIES CAN'T AGREE ON THE RESTRICTION OR AGREE THAT IT

7    SHOULDN'T BE RESTRICTED FROM MR. FOGGO LOOKING AT IT.

8         THE COURT:  YOU'RE TALKING ABOUT I'LL HAVE TO

9    ADDRESS IT IN TERMS OF WHETHER MR. FOGGO GETS TO SEE IT OR

10   WHETHER ULTIMATELY IT CAN BE USED IN HIS DEFENSE?

11        MR. FORGE:  WE'RE TALKING ABOUT STRICTLY THE FORM,

12   WHETHER MR. FOGGO GETS TO SEE IT.  IF WE DON'T AGREE, THERE

13   MAY NOT BE INSTANCES -- IT MAY BE A SITUATION WHERE SOMETHING

14   OCCURRED AFTER MR. FOGGO WENT ON ADMINISTRATIVE LEAVE.

15        WE SAID, "LOOK, WE DON'T THINK IT'S RELEVANT.  I

16   CAN'T IMAGINE THERE ARE ANY DEFENSES THIS WOULD RELATE TO, BUT

17   YOU MAY HAVE SOMETHING IN MIND.  TAKE A LOOK AT THIS.  LET US

18   KNOW IF YOU THINK IT'S RELEVANT."

19        AND MR. TESLIK SAYS, "I THINK THIS DOES RELATE TO

20   SOMETHING.  I WOULD LIKE TO TALK IT OVER WITH MR. FOGGO AND

21   GET BACK TO YOU."

22        THE COURT:  WELL, THE CONCERN IS BASICALLY YOU DON'T

23   WANT TO ADD THE STORE OF INFORMATION THAT HE HAS WITH THINGS

24   THAT OCCURRED SUBSEQUENT TO HIS EMPLOYMENT?

25        MR. FORGE:  SUBSEQUENT OR THINGS THAT WERE

PDF created with pdfFactory trial version www.pdffactory.com

1   OCCURRING -- THERE MAY BE WITNESS STATEMENTS.

2           THE COURT:  YOU KNOW WHAT, MR. TESLIK, I'M GOING TO

3   LEAVE THE PROTECTIVE ORDER IN PLACE.  IF THIS BECOMES AN

4   ISSUE -- I DON'T WANT TO MAKE A HARD ONE OUT OF AN EASY ONE.

5   THEY SAY THEY DON'T CONTEMPLATE THAT IT'S GOING TO BE A

6   PROBLEM.  IF IT BECOMES AN ISSUE THE FIRST TIME YOU GET AN

7   "EYES ONLY" THING OR IT BECOMES BURDENSOME TO YOU TO DISCUSS

8   IT WITH THEM AND REACH SOME ACCOMMODATION, THEN I'M GOING TO

9   DENY THE REQUEST FOR MODIFICATION WITHOUT PREJUDICE.  BRING IT

10  BACK TO ME AT THAT POINT.

11          MR. TESLIK:  YOUR HONOR, THAT RAISES ANOTHER ISSUE

12  THAT I DISCUSSED WITH MR. LONDERGAN BEFORE WE CAME INTO COURT

13  THIS MORNING.

14          THE GOVERNMENT, IN ITS MOTION, POINTS TO THE FACT

15  THAT MR. FOGGO IS NO LONGER CLEARED.  NOW, HE IS STILL UNDER

16  CONTRACT PURSUANT TO HIS CIA SECURITY CLEARANCES THAT HE HAD

17  PRIOR TO HIS LEAVING THE AGENCY.  I WOULD IMAGINE THAT BECAUSE

18  OF THE NATURE OF THAT CONTRACT, THE GOVERNMENT HAS NO PROBLEM

19  WITH US DISCUSSING INFORMATION WITH MR. FOGGO AT WHATEVER

20  LEVEL CLEARANCE WE, THE LAWYERS, OBTAIN.  WE'VE BEEN OPERATING

21  UNDER THAT ASSUMPTION.

22          THE COURT:  I'M ASSUMING THAT'S CORRECT, TOO.

23  MR. FOGGO KNOWS WHAT HE KNOWS, AND THESE FELLOWS ARE HIS

24  REPRESENTATIVES.  I WOULD BE RELUCTANT TO ISSUE SOME ORDER

25  THAT WOULD IMPLICATE THEIR ATTORNEY-CLIENT COMMUNICATIONS.

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. FORGE:  I THINK THAT MR. TESLIK SHOULD ADDRESS

2     THAT IN A SEPARATE MOTION.  IT'S A COMPLEX AREA OF THE LAW IN

3     TERMS OF PREEXISTING KNOWLEDGE; WHAT CAN BE DISCUSSED, WHAT

4     CAN'T BE DISCUSSED.  THE CASES DO RECOGNIZE THAT CONTRACTUAL

5     OBLIGATIONS PERSIST BEYOND THE POINT OF EMPLOYMENT WITH THE

6     GOVERNMENT.

7          SO AGAIN, SPEAKING HYPOTHETICALLY, THERE ARE

8     CERTAINLY A WIDE RANGE OF TOPICS THAT MR. FOGGO ONCE HAD

9     SECURITY CLEARANCE TO DISCUSS AND TO BE EXPOSED TO THAT WOULD

10    BE ENTIRELY INAPPROPRIATE FOR HIM TO DISCUSS WITH MR. TESLIK

11    AND HIS OTHER COUNSEL BECAUSE THEY DON'T FALL WITHIN THE SCOPE

12    OF HIS CASE.

13         THE COURT:  HOW DOES THAT GET ENFORCED, THOUGH?  HOW

14    DO ANY OF US KNOW WHAT MR. FOGGO AND HIS COUNSEL ARE TALKING

15    ABOUT WHEN THEY MEET PRIVATELY TO PREPARE FOR THIS CASE?

16         MR. FORGE:  OBVIOUSLY, WE DON'T KNOW EXACTLY WHAT

17    THEY'RE TALKING ABOUT.  WE'RE NOT TRYING TO PUT OUR EARS IN

18    THAT ROOM AND KNOW EVERYTHING THEY'RE TALKING ABOUT.

19         BUT I THINK WE START, FIRST OF ALL, WITH THE SCOPE

20    OF THE INDICTMENT ITSELF, WHICH IS RATHER EXTENSIVE AND RATHER

21    DETAILED.

22         AND THEN NEXT WE'RE GOING TO GO TO THE DISCOVERY,

23    WHICH ONCE EVERYBODY HAS BEEN CLEARED, THEY'RE GOING TO SEE IT

24    IS VERY EXTENSIVE.

25         JUST WITH THOSE TWO STARTING POINTS, WE'RE GOING TO

PDF created with pdfFactory trial version www.pdffactory.com

1    GET A PRETTY GOOD IDEA OF THE LEGAL LANDSCAPE OF THIS CASE AND

2    TOPICS THAT ARE COVERED.

3            LET'S GO FURTHER DOWN THE ROAD AND ASSUME THAT

4    MR. TESLIK WANTS TO ERR ON THE SIDE OF CAUTION, AND MR. FOGGO

5    SAYS "THERE'S SOMETHING I WANT TO TALK TO YOU ABOUT, BUT IT

6    DOESN'T FALL WITHIN THE FOUR CORNERS OF THIS DISCOVERY OF THE

7    INDICTMENT," THAT, I WOULD ASSUME, AS HAPPENS IN OTHER CASES

8    AND OTHER TYPES OF ISSUES, IT WOULD HAVE TO GO TO THE COURT TO

9    SAY, "LOOK, THIS IS -- WE THINK IT'S WITHIN THIS SUBJECT AREA.

10   YOU MAY DISAGREE, YOUR HONOR.  WE WANT TO RAISE IT WITH YOU

11   AND FIND OUT."  MR. LONDERGAN WOULD HAVE TO BE INVOLVED IN

12   THAT PROCESS.

13           THE COURT:  DO YOU HAVE A PROBLEM WITH THAT,

14   MR. TESLIK?

15           MR. TESLIK:  I'M NOT SURE MECHANICALLY HOW THIS IS

16   GOING TO WORK.  OUR CLIENT HAS BEEN CHARGED WITH FRAUD.  SO

17   CLEARLY, WE HAVE AN OBLIGATION TO DEFEND HIM ON THE MENS REA

18   ELEMENT.  HE'S BEEN CHARGED WITH CAUSING A CONTRACT TO BE LET

19   UNDER CIRCUMSTANCES THAT WE DISPUTE AND HE DISPUTES.  HE IS

20   GOING TO ABSOLUTELY HAVE TO DEMONSTRATE WHY THOSE CONTRACTS

21   WERE LET AND UNDER WHAT CIRCUMSTANCES.

22           THIS IS A MAN WHO OVER 80 PERCENT OF HIS WORKDAY WAS

23   INVOLVED IN TOP SECRET PROJECTS, THE HIGHEST -- PROTECTED

24   HIGHER THAN ANY SECURE INFORMATION ONE CAN IMAGINE.  WE'RE

25   GOING TO HAVE TO BE FREE TO TALK TO HIM ABOUT WHAT HE WAS

PDF created with pdfFactory trial version www.pdffactory.com

52

1    DOING AND WHY HE WAS DOING IT.  WHAT I UNDERSTAND MR. FORGE TO

2    BE SAYING IS, "YEAH, BUT YOU'VE GOT TO COME IN TO ASK THE

3    COURT EVERY TIME."  THAT'S NOT WORKABLE.

4         THE COURT:  I DON'T SEE IT AS MY AUTHORITY UNDER

5    CIPA TO TRY TO POLICE THE ATTORNEY-CLIENT DISCUSSIONS.

6         LOOK, MR. FOGGO HAS CONTRACT OBLIGATION THAT

7    PERTAINED EVEN AS TO HIS COUNSEL.  MY OBLIGATION IS TO LOOK AT

8    MATERIAL THAT THEY BELIEVE IS RELEVANT, ALTHOUGH CLASSIFIED,

9    AND MAKE A DETERMINATION WHETHER THEY ABSOLUTELY NEED IT,

10   ACTUALLY WHETHER IT'S RELEVANT, AND WHETHER THERE ARE ANY

11   PRIVILEGES THAT APPLY OR OTHER LEGAL REASONS THAT IT NOT -- OR

12   THAT IT NOT COME IN, MAKE A DETERMINATION THAT IT'S USEFUL TO

13   THEM IN THEIR DEFENSE, AND THEN GIVE YOU THE ELECTION TO TRY

14   TO SANITIZE IT OR NOT USING IT.

15        I DON'T THINK IT EXTENDS TO ME SAYING, "NO.  BEFORE

16   YOU HAVE A DISCUSSION WITH MR. FOGGO IN YOUR PRIVATE LAW

17   OFFICE, YOU'VE GOT TO COME AND CLEAR THAT WITH ME."

18        MR. FORGE:  I AGREE WITH WHAT YOU'RE SAYING

19   ENTIRELY.  THIS WHOLE DISCUSSION BEGAN WITH MR. TESLIK

20   ESSENTIALLY ASKING YOUR HONOR TO ENDORSE MR. FOGGO DISCUSSING

21   IT.  MR. FOGGO, AS YOUR HONOR PUT IT PERFECTLY, HE HAS

22   CONTRACTUAL OBLIGATIONS.  I'M NOT TRYING TO CHILL HIS

23   COMMUNICATION WITH HIS COUNSEL.  I KNOW YOUR HONOR IS NOT.

24        THE COURT:  MR. TESLIK, I'M GOING TO LEAVE IT AT

25   THAT.  I'M NOT GOING TO ISSUE ANY ORDER ON THAT.  YOU HAVE TO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

53

1    DO YOUR LEVEL BEST TO DEFEND THIS FELLOW.  HE KNOWS WHAT HIS

2    LEGAL OBLIGATIONS ARE BASED ON HIS EMPLOYMENT.

3            I'M RELUCTANT TO POLICE ANY OF THAT.  I'M NOT GOING

4    TO GET INVOLVED IN YOUR DISCUSSIONS WITH HIM, ATTORNEY-CLIENT

5    DISCUSSIONS.  MY ROLE UNDER THIS IS TO DETERMINE WHAT SEES THE

6    LIGHT OF DAY IN THE EVENT THERE'S A TRIAL.  I'M PREPARED TO DO

7    THAT.  I'M NOT GOING TO GO FURTHER THAN THAT.

8            MR. TESLIK:  HERE'S THE PROBLEM THAT WE FACE:  UNDER

9    THE CONTRACT, THE POST-EMPLOYMENT TERMS OF MR. FOGGO'S

10   CONTRACT, HE CAN'T DISCLOSE ANYTHING.  HE ABSOLUTELY --

11   THERE'S NOT A DEFENSE COUNSEL EXCEPTION TO THAT CONTRACT.  WE

12   NEED TO COMMUNICATE WITH MR. FOGGO IN ORDER TO PREPARE HIS

13   DEFENSE IN THIS CASE.  MR. LONDERGAN TOLD ME "WELL, YOU'RE

14   RIGHT.  HE'S NOT CLEARED ANYMORE.  BY THE WAY, BECAUSE OF THE

15   CHARGES PENDING AGAINST HIM, HE CAN'T BE CLEARED."

16           SO SOMEWHERE IN HERE WE'VE GOT TO TALK TO THE MAN.

17   WE'VE GOT TO LEARN WHAT HE KNOWS THAT WE BELIEVE WOULD BE

18   MATERIAL TO HIS DEFENSE AND RELEVANT TO RESPONDING TO THE

19   CHARGES.  AND WHAT MR. FORGE IS JUST SAYING IS "WELL,

20   MR. FOGGO KNOWS WHAT HE CAN'T DISCLOSE," WHICH IS, BY THE WAY,

21   NOTHING.

22           THE COURT:  I THINK THE FACT THAT THERE ARE CIPA

23   PROVISIONS THAT CONTEMPLATE THAT THERE COULD BE CLASSIFIED

24   INFORMATION THAT'S RELEVANT TO THE DEFENSE TRUMP THE CONTRACT

25   OBLIGATIONS HERE.

PDF created with pdfFactory trial version www.pdffactory.com

54

1          AFTER ALL, THE WHOLE PURPOSE OF THE CIPA PROVISION

2     WAS TO DEAL WITH SITUATIONS LIKE THIS; HIGH-LEVEL GOVERNMENT

3     OFFICIALS THAT HAD CLASSIFIED INFORMATION.  CONGRESS WAS WELL

4     AWARE THAT THERE WERE CONTRACT OBLIGATIONS.  I DON'T THINK

5     THEY READ THOSE AS FORECLOSING A DEFENDANT FROM DISCUSSING

6     WITH HIS LAWYERS HOW HE'S GOING TO DEFEND HIS CASE.  AND THE

7     CIPA PROVISIONS ARE AN ATTEMPT TO KEEP THE LID ON THE MOST

8     CLASSIFIED INFORMATION TO PROTECT THE NATIONAL SECURITY WHILE

9     GIVING THE DEFENDANT THE RIGHT TO DEFEND HIMSELF.  THAT'S HOW

10     I REGARD IT.

11          MR. FORGE HAS SPECIFICALLY SAID THEY'RE NOT TRYING

12     TO CHILL YOUR DISCUSSIONS WITH HIM, NOR AM I.  I THINK HE'S

13     FREE TO TALK WITH YOU.  AND THEN IT'S THE DISSEMINATION OF

14     THAT INFORMATION THAT IS A MATTER FOR THE COURT.

15          MR. TESLIK:  I'M VERY WORRIED ABOUT MR. FOGGO

16     GETTING HIMSELF INTO TROUBLE BY HAVING THIS CONVERSATION.  I

17     UNDERSTAND WHAT THE COURT'S SAYING.  WHAT I WOULD SUGGEST IS

18     THAT WE PROPOSE AN ORDER TO THE COURT UNDER CIPA SO THAT

19     MR. FOGGO IS PROTECTED IN THIS SITUATION.

20          THE COURT:  WHY DON'T YOU DO THAT, RUN IT BY

21     MR. FORGE.  THERE MAY BE NO OBJECTION TO IT WHEN HE LOOKS AT

22     IT.

23          AGAIN, LET ME REITERATE THAT IT'S NOT THE COURT'S

24     INTENTION NOR GOVERNMENT COUNSEL'S INTENTION TO TRY TO

25     RESTRICT IN ANY WAY THE FLOW OF INFORMATION BETWEEN YOU AND

PDF created with pdfFactory trial version www.pdffactory.com

1    YOUR CLIENT THAT'S NECESSARY TO DEFEND HIM ON THESE VERY

2    SERIOUS CHARGES.  I'D BE PREPARED TO SIGN SUCH AN ORDER.

3                MR. TESLIK:  THANK YOU, YOUR HONOR.

4                I HAVE ONE JUST FINAL COMMENT.

5                AS YOU KNOW, THE GOVERNMENT'S BRIEF IN THIS CASE

6    TOUCHED UPON LOTS OF DIFFERENT CIPA ISSUES, INCLUDING THE

7    SECTION 5 RESPONSIBILITIES AND THE SECTION 6 RESPONSIBILITIES.

8    WE DIDN'T BELIEVE THAT NOW WAS THE APPROPRIATE TIME TO CONTEST

9    SOME OF THE LEGAL POSITIONS THE GOVERNMENT WAS TAKING.

10               THE COURT:  I AGREE.

11               MR. TESLIK:  WE ARE JUST NOT WAIVING ANYTHING.

12               THE COURT:  I AGREE.  I'LL RECOGNIZE THAT.

13               I THINK I'VE SPOKEN TO THE ISSUES YOU'VE RAISED.

14   THE COURT THEN DENIES THE MOTION TO MODIFY THE PROTECTIVE

15   ORDER SUBJECT TO AUGMENTATION BY TWO STAND-ALONE ORDERS, ONE

16   REGARDING NO LEAKING AND CONSEQUENCES FOR DOING SO.  IT'S MY

17   FIRM INTENTION, IF THERE'S ANY MORE LEAKING, TO GET TO THE

18   BOTTOM OF IT AND TO FIND OUT WHO VIOLATED THE COURT ORDER AND

19   TO HOLD THAT PERSON ACCOUNTABLE.

20               SECOND, I'LL SIGN THE ORDER MR. TESLIK'S DISCUSSED

21   PROPOSING THAT HE AND MR. MAC DOUGALL BE ABLE TO DISCUSS

22   FREELY ALL OF THE INFORMATION NECESSARY IN ORDER TO HELP THEM

23   PREPARE TO DEFEND MR. FOGGO.

24               OBVIOUSLY, THOSE ORDERS WOULD APPLY TO YOU AND YOUR

25   CLIENT AS WELL, MR. GERAGOS.  WE NEED TO GET TO YOUR ISSUE

PDF created with pdfFactory trial version www.pdffactory.com

1    HERE FAIRLY QUICKLY.  I DO HAVE SOME CONCERN OF BALANCING HIS

2    RIGHT TO A SPEEDY TRIAL, WHICH HE'S ASSERTED, AND RESOLVING

3    THESE OTHER ISSUES.  FILE THOSE AS QUICKLY AS POSSIBLE.

4            MR. GERAGOS:  I WILL, YOUR HONOR.

5            WE ALSO HAVE A BOND ISSUE.  MR. HALPERN AND COUNSEL

6    AND I SPOKE BEFOREHAND.  THE ONE KIND OF NUB IS THERE IS A

7    CROSS-COLLATERALIZATION ON THE HOUSE THAT IS ALSO ON THE

8    PROPERTY.  IT'S A CREDIT LINE.  THAT CREDIT LINE, EVEN THOUGH

9    IT'S ON THERE FOR 7 MILLION, IS ONLY $700,000.

10           WHAT WE HAVE AGREED IS THAT I WOULD MAKE THE

11   REPRESENTATION THAT I BELIEVE ON APRIL 9TH, THERE'S A

12   TENTATIVE CLOSE DATE ON THE PROPERTY THAT WILL TAKE CARE OF

13   THAT $700,000 WHEN THE PROPERTY SELLS.

14           THE COURT:  IT WILL BE UP TO A MILLION AND A HALF IN

15   PROPERTY VALUE THEN?

16           MR. GERAGOS:  WE HAVE SOMEWHERE IN THE NEIGHBORHOOD

17   OF 1.3.

18           THE COURT:  THAT'S AGREEABLE?

19           MR. FORGE:  THAT WILL BE FINE.  ONCE THAT CREDIT

20   LINE HAS BEEN PAID DOWN, THAT CREDIT LINE WILL BE

21   TERMINATED.

22           MR. GERAGOS:  TERMINATED OR IT WOULD NOT BE DRAWN

23   UPON SO THAT THE GOVERNMENT -- MR. WILKES JUST GAVE ME THE

24   HIGH SIGN, WHICH MEANS IT WILL BE TERMINATED.

25           THE COURT:  IT'S ALREADY BEEN DONE?

PDF created with pdfFactory trial version www.pdffactory.com

57

1          THE DEFENDANT:  ONCE IT'S PAID OFF, IT WILL BE

2    TERMINATED.

3          THE COURT:  THAT'S APRIL 9TH?

4          MR. GERAGOS:  HOPEFULLY, THE DEAL CLOSES.

5          THE COURT:  HERE'S WHAT I'VE DONE:  I'VE AGREED TO

6    CONTINUE HIM ON THE CURRENT BOND PURSUANT TO YOUR EX PARTE

7    APPLICATION.  THAT ORDER WILL REMAIN IN EFFECT UNTIL APRIL 9TH

8    WITH THE UNDERSTANDING THAT ONCE THE CREDIT LINE IS

9    EXTINGUISHED, THE PROPERTY VALUE SUPPORTING THE BOND WILL BE

10   APPROXIMATELY A MILLION THREE.

11         MR. GERAGOS:  THANK YOU.

12         THE COURT:  ANYTHING ELSE?

13         MR. GERAGOS:  NOT FROM US.

14         THE COURT:  WE'RE IN RECESS.

15         MR. PITOFSKY:  THANK YOU, YOUR HONOR.

16                        --OOO--

17

18

19              I HEREBY CERTIFY THAT THE TESTIMONY

20              ADDUCED IN THE FOREGOING MATTER IS

21              A TRUE RECORD OF SAID PROCEEDINGS.

22

23              S/ EVA OEMICK          1-30-09

24              EVA OEMICK              DATE
                OFFICIAL COURT REPORTER
25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com