```
 1                    UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF CALIFORNIA
 2
                  HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
 3

 4    UNITED STATES OF AMERICA,        )
                                       )
 5                   PLAINTIFF,        )  CASE NO. 07CR00329-LAB
                                       )            07CR00330-LAB
 6           VS.                       )
                                       )  SAN DIEGO, CALIFORNIA
 7    KYLE DUSTIN FOGGO,  (1)          )  APRIL 2, 2007
      BRENT ROGER WILKES, (2)          )  2:00 P.M.
 8                                     )
      BRENT ROGER WILKES, (1)          )
 9    JOHN THOMAS MICHAEL,(2)          )
                                       )
10                   DEFENDANTS.       )
      _____)
11

12                        REPORTER'S TRANSCRIPT

13        07CR00329:     MOTION HEARING (1,2)
                         BOND HEARING   (2)
14
          07CR00330:     MOTION HEARING (1,2)
15

16    APPEARANCES:
      FOR THE GOVERNMENT:            KAREN P. HEWITT, U.S. ATTORNEY
17                                   BY: PHILLIP L.B. HALPERN, ESQ.
                                         VALERIE CHU, ESQ.
18                                   ASSISTANT U.S. ATTORNEYS
                                     880 FRONT STREET
19                                   SAN DIEGO, CA. 92101

20    FOR DEFENDANT FOGGO:           AKIN GUMP STRAUSS HAUER & FELD
                                     BY:  MARK J. MAC DOUGALL, ESQ.
21                                        ANDREW J. DOBER, ESQ.
                                     1333 NEW HAMPSHIRE AVE., N.W.
22                                   WASHINGTON, DC 20036-1564

23    FOR DEFENDANT WILKES:          GERAGOS & GERAGOS
                                     BY:  MARK J. GERAGOS, ESQ.
24                                   350 SOUTH GRAND AVENUE, 39TH FL.
                                     LOS ANGELES, CA. 90071
25
```

2

1    CONTINUED APPEARANCES:

2    FOR DEFENDANT MICHAEL:          BY:  RAYMOND GRANGER, ESQ.

3                                         -AND-
                                     FRANK AND MILCHEN
4                                    BY:  HOWARD B. FRANK, ESQ.
                                     136 REDWOOD STREET
5                                    SAN DIEGO, CA 92103

6

7

8    COURT REPORTER:                 EVA OEMICK
                                     OFFICIAL COURT REPORTER
9                                    UNITED STATES COURTHOUSE
                                     940 FRONT STREET, STE. 2190
10                                   SAN DIEGO, CA 92101
                                     TEL: (619) 615-3103
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   **SAN DIEGO, CALIFORNIA - MONDAY, APRIL 2, 2007 - 2:00 P.M.**

2        THE CLERK:  CALLING NO. 13 ON THE CALENDAR, 07CR329,

3   UNITED STATES OF AMERICA VERSUS KYLE FOGGO AND BRENT ROGER

4   WILKES; AND

5        NO. 14, 07CR330, UNITED STATES OF AMERICA VERSUS

6   BRENT ROGER WILKES AND JOHN THOMAS MICHAEL.

7        IN BOTH MATTERS, ON FOR MOTION HEARING.

8        COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

9   RECORD.

10        MR. HALPERN:  GOOD AFTERNOON, YOUR HONOR.

11        PHIL HALPERN FOR THE GOVERNMENT.

12        MR. GERAGOS:  GOOD AFTERNOON, YOUR HONOR.

13        MARK GERAGOS FOR BRENT WILKES.

14        MR. FRANK:  GOOD AFTERNOON, YOUR HONOR.

15        HOWARD FRANK APPEARING AS LOCAL COUNSEL FOR RAYMOND

16   GRANGER, WHO DESIRES TO BE GENERAL COUNSEL FOR MR. MICHAEL,

17   WHO IS PRESENT BEFORE THE COURT.  A SUBSTITUTION OF ATTORNEY

18   HAS BEEN PRESENTED TO YOUR HONOR'S CLERK.

19        THE COURT:  MR. MICHAEL, IS IT THE CASE THAT YOU

20   HAVE RETAINED MR. GRANGER TO REPRESENT YOU IN THIS MATTER?

21        DEFENDANT MICHAEL:  YES, YOUR HONOR.

22        THE COURT:  MR. GRANGER, DO YOU ACCEPT THIS

23   APPOINTMENT AND ARE YOU MAKING A GENERAL APPEARANCE?

24        MR. GRANGER:  YES, YOUR HONOR.

25        THE COURT:  FOR ALL PURPOSES, THEN?

PDF created with pdfFactory trial version www.pdffactory.com

4

1          MR. GRANGER:  YES.

2          THE COURT:  IN FOR A PENNY, IN FOR A POUND; RIGHT?

3          MR. GRANGER:  YES, YOUR HONOR.

4          THE COURT:  THE COURT RECOGNIZES, THEN,

5   MR. GRANGER'S APPEARANCE ON BEHALF OF MR. MICHAEL AND

6   RECOGNIZES MR. FRANK AS LOCAL COUNSEL.  MR. PITOFSKY --

7          IS THAT YOUR FORMER COUNSEL?

8          DEFENDANT MICHAEL:  YES, YOUR HONOR.

9          THE COURT:  MR. PITOFSKY IS RELIEVED.

10          MR. MAC DOUGALL:  MARK MAC DOUGALL AND ANDREW DOBER

11   FOR DEFENDANT FOGGO.

12          THE COURT:  THE RECORD SHOULD REFLECT THAT THE COURT

13   SECURITY OFFICER, MR. LONDERGAN, IS PRESENT, ALSO.

14          MR. HALPERN:  IF I MAY, YOUR HONOR, VALERIE CHU WILL

15   COME.

16          THE COURT:  ALL RIGHT.

17          I HAVE READ THE PENDING MOTIONS IN BOTH CASES, THE

18   WILKES/FOGGO CASE AND WILKES/MICHAEL CASE, MOTIONS ESSENTIALLY

19   FOR DISCOVERY AND FOR A BILL OF PARTICULARS.

20          MR. GERAGOS, YOU WERE GOING TO FILE SOME OTHER

21   MOTION REGARDING THE --

22          MR. GERAGOS:  THERE IS ACTUALLY TWO:  THE CIPA,

23   WHICH I PLAN ON FILING WITHIN A WEEK.  I'VE TAKEN THE -- I'VE

24   DRAFTED IT.  I HAVE VIRTUALLY ALL THE ARGUMENTS THAT WE'VE

25   DISCUSSED.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          IN ADDITION TO THAT, THE LEAKS MOTION THAT I TALKED

2     ABOUT LAST TIME, SINCE THERE'S BEEN A RELEASE OF E-MAILS IN

3     THIS CASE AND A SUBPOENA TO THE WHITE HOUSE ISSUED BY CONGRESS

4     SPECIFICALLY PARTING COMMUNICATIONS WITH MY CLIENT, IT'S MY

5     BELIEF THAT THAT LEAKS MOTION HAS EXPANDED.

6          BECAUSE I BELIEVE, BASED UPON WHAT I'VE SEEN AND

7     ALSO MR. MUELLER'S TESTIMONY IN THIS CASE, WHICH TOOK PLACE

8     SINCE THEN, THAT ONE OF THE AGENTS WAS SPECIFICALLY INSTRUCTED

9     BY THE HEAD OF THE FBI TO STOP TALKING TO THE MEDIA PRIOR TO

10    THE LEAKS THAT OCCURRED IN THIS CASE.

11          THE COURT:  HOLD ON ONE SECOND.

12          MR. WILKES AND MR. GRANGER, THE TWO OF YOU CAN HAVE

13    A SEAT RIGHT BEHIND COUNSEL.

14          I'M NOT SURE I'M FOLLOWING EVERYTHING.

15          MR. GERAGOS:  I BELIEVE THAT THERE'S GOING TO BE A

16    MOTION FOR OUTRAGEOUS GOVERNMENTAL MISCONDUCT, AND I BELIEVE

17    THAT THE INDICTMENT WAS LEAKED PURPOSEFULLY IN ORDER TO GAIN,

18    IF YOU WILL, MAIN JUSTICE INTO STANDING BACK AND NOT MAKING A

19    DECISION ON WHETHER TO INDICT MY CLIENT.

20          THERE IS TESTIMONY, AND I'M ASSEMBLING THAT AS WELL

21    AND PLAN ON FILING THAT MOTION, A MOTION FOR OUTRAGEOUS

22    GOVERNMENTAL MISCONDUCT, THAT'S IN THE CONTEXT OF THE LEAKS

23    MOTION.

24          THE REASON I BROUGHT THAT UP IS BECAUSE LAST TIME

25    YOU ENCOURAGED ME OR SAID THAT IF I WAS GOING TO RAISE THAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

6

1    ISSUE -- I THINK YOU SAID YOUR PLATE WAS FULL AND YOU DIDN'T

2    WANT ANY MORE WORK.  BUT THIS IS NOT, I BELIEVE, AT THIS POINT

3    GOING TO REQUIRE THE COURT TO DO THE INVESTIGATION.

4            I THINK THAT BASED ON THE E-MAILS THAT ARE BEING

5    RELEASED OUT OF THE DEPARTMENT OF JUSTICE AND ON THE SUBPOENAS

6    THAT ARE BEING ISSUED OUT OF CONGRESS, THAT MOST OF THIS

7    INFORMATION AND THE TESTIMONY THAT IS COMING UP, I CAN PUT

8    TOGETHER, I BELIEVE, WHAT HAPPENED HERE.

9            SO I PLAN ON FILING BOTH THE CIPA MOTION AND THIS

10   MOTION FOR OUTRAGEOUS GOVERNMENTAL MISCONDUCT AT THE SAME

11   TIME.  AND I WOULD ASK THE COURT FOR -- WHAT I WAS GOING TO

12   ASK THE COURT FOR IS A MOTIONS DATE, PREFERABLY MAY THE 2ND.

13           THE COURT:  I WANT TO MAKE SURE THAT I'M TRACKING

14   WITH YOU.

15           I AWARE, FROM WATCHING THE NEWS AND READING THE

16   NEWSPAPER, THAT THERE'S SOME INVESTIGATION GOING ON OR AT

17   LEAST INDICATED ABOUT THE DISMISSAL OF THE U.S. ATTORNEYS --

18           MR. GERAGOS:  THAT'S CORRECT.  THERE'S AN

19   INVESTIGATION GOING ON SURROUNDING THE DISMISSAL OF THE U.S.

20   ATTORNEYS.

21           THE COURT:  IS IT E-MAILS IN CONNECTION WITH THAT

22   AND SUBPOENAS BEING ISSUED IN CONNECTION WITH THAT?

23           MR. GERAGOS:  RIGHT, AND CONTACTS -- APPARENTLY,

24   CONGRESSMAN WAXMAN ISSUED A SUBPOENA TO THE WHITE HOUSE

25   REGARDING SPECIFIC CONTACTS IN REGARDS TO MR. WILKES.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          AND SPECIFICALLY, THE HEAD OF THE FBI HAS TESTIFIED

2     UNDER OATH IN FRONT OF CONGRESS THAT ONE OF HIS AGENTS -- I DO

3     NOT HAVE THE NAME OF THE AGENT, AND I'M ATTEMPTING TO GET THE

4     TRANSCRIPT -- BUT HAS REPORTED IN A PRESS RELEASE THAT HE HAD

5     TOLD ONE OF HIS AGENTS SPECIFICALLY TO STOP TALKING TO THE

6     MEDIA ABOUT THIS CASE.

7          THE COURT:  I DON'T PRESUME TO HAVE ANY FIRSTHAND

8     KNOWLEDGE OF THAT, BUT I'M VAGUELY FAMILIAR WITH WHAT YOU'RE

9     TALKING ABOUT.

10         I THOUGHT THAT WAS ALL IN THE CONTEXT OF A LOCAL

11    HEAD OF THE FBI, THE SPECIAL AGENT IN CHARGE, DEFENDING

12    MS. LAM, THE FORMER U.S. ATTORNEY, IN SAYING HE BELIEVES THE

13    DISMISSAL WAS POLITICAL, AND THEN MR. MUELLER SAYING, "WE'RE

14    THE FBI.  WE DON'T GET INVOLVED IN POLITICS."

15         MR. GERAGOS:  THAT'S CORRECT.  THAT REPRESENTATION

16    IS EXACTLY CORRECT AS TO WHAT HE TESTIFIED TO.

17         THE COURT:  THAT DOESN'T HAVE ANYTHING TO DO WITH

18    THIS, DOES IT?

19         MR. GERAGOS:  IT DOES.  I BELIEVE FURTHER THAT IT IS

20    EITHER THE FBI OR ONE OF THOSE AGENTS THAT WAS ON THE TASK

21    FORCE OR SOMEONE WITHIN THE U.S. ATTORNEY'S OFFICE THAT

22    SPECIFICALLY LEAKED THE INDICTMENT.  I MENTIONED TO THE COURT

23    BEFORE AND I WROTE A LETTER TO THE U.S. ATTORNEY BEFORE THIS

24    CASE WAS INDICTED SAYING THAT REPORTERS HAD SAID THEY WERE

25    SHOWN THE INDICTMENTS DOWN TO THE DETAILS OF WHAT THE

PDF created with pdfFactory trial version www.pdffactory.com

8

1    INDICTMENTS -- THERE WERE TWO SEPARATE INDICTMENTS, WHICH WAS

2    CLEARLY A VIOLATION OF 6(E).

3              I BELIEVE NOW, IN THE CONTEXT OF WHAT WAS GOING ON

4    AT THE TIME, THAT THE LEAKS WERE DESIGNED -- AND I HATE TO --

5    I KNOW THAT THEY'RE CHARGING MY CLIENT WITH CONSPIRACY.  I

6    HATE TO SOUND LIKE A CONSPIRACY BUFF HERE.  BUT I BELIEVE WHAT

7    HAPPENED HERE IS THAT THESE INDICTMENTS AS TO MY CLIENT WERE

8    RETURNED, AS THIS COURT KNOWS, HOURS BEFORE MS. LAM WAS TO

9    EXIT.

10             I BELIEVE THAT THE REASON THAT THEY WERE LEAKED WAS

11   BECAUSE THE -- BASED ON THE INVESTIGATION SO FAR, THAT THE

12   INDICTMENTS HAD BEEN SENT TO MAIN JUSTICE; THAT THEY WERE

13   REJECTED AND TOLD THAT, NO, THEY WERE NOT READY; AND THEY WERE

14   THEN LEAKED TO THE PRESS TO CREATE THIS KIND OF POLAXING, IF

15   YOU WILL, OF MAIN JUSTICE.

16             I PLAN ON FILING A MOTION OUTLINING ALL OF THIS.

17   THAT'S WHY I BRING IT TO THE COURT'S ATTENTION, BECAUSE IT'S

18   IN THE CONTEXT OF THE LEAKS INVESTIGATION AS WELL.

19             THE COURT:  YOU CERTAINLY HAVE A RIGHT TO BRING A

20   MOTION AND TO HAVE A HEARING ON THIS.

21             MR. HALPERN.

22             MR. HALPERN:  ABSOLUTELY.  I JUST WANTED TO SAY THAT

23   I THINK THE GOVERNMENT HAS SET FORTH ITS POSITION WITH WHAT

24   MR. GERAGOS HAS CLAIMED TO BE LEAKS.  OF COURSE, WE'VE NOTED

25   OUR CONCERN FOR ANY IMPROPER DISSEMINATION OF INFORMATION.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

9

1        THE COURT:  MR. FORGE ACTUALLY CONCEDED THAT THERE

2   HAD BEEN A LEAK AND IT WAS INAPPROPRIATE AND HE WAS TAKING

3   STEPS TO MAKE SURE THAT IT DIDN'T REOCCUR.  THAT WAS WHAT HE

4   SAID LAST TIME HE WAS HERE.

5        MR. HALPERN:  THERE'S NO QUESTION, YOUR HONOR, THAT

6   IT APPEARS THAT THERE WAS A LEAK OF SOME INFORMATION.

7   CLEARLY, IT WASN'T CLASSIFIED INFORMATION.  WE DECRIED THAT.

8   WE'VE TAKEN ALL APPROPRIATE STEPS.

9        WHAT I THINK IS IMPORTANT NOW HERE IS SIMPLY THAT

10  THE GOVERNMENT -- TO SAY THAT THE GOVERNMENT WELCOMES

11  MR. GERAGOS TO FILE WHATEVER TYPE OF MOTION HE'D LIKE, I DON'T

12  WANT MY SILENCE TO BE TAKEN AS ANY ACCEPTANCE OF ANY OF THE

13  CLAIMS HE MADE TODAY.

14        I BELIEVE ONCE THE FACTS ARE OUT, IT WILL SUPPORT

15  WHAT THE COURT HAS SAID IN TERMS OF WHAT WAS GOING ON WITH

16  THESE LATER STATEMENTS.  I THINK IT'S IMPORTANT TO NOTE --

17        THE COURT:  WAIT.  I WANT TO STOP YOU THERE FOR A

18  SECOND.

19        I DON'T HAVE ANY FIRSTHAND KNOWLEDGE OF THIS.  I

20  JUST WANTED TO MAKE SURE I WAS TRACKING.  WHEN I SAID I WAS

21  VAGUELY FAMILIAR, I'VE BEEN LOOSELY FOLLOWING THIS WHOLE THING

22  IN THE PAPER.  BUT I DON'T HAVE ANY FIRSTHAND KNOWLEDGE.

23        YOU'RE RIGHT, MR. HALPERN.  HE'S ENTITLED TO A

24  HEARING.  WE'LL FLESH OUT WHAT HAPPENED.  AND IF THERE'S ANY

25  RESPONSIBILITY THAT FLOWS FROM THAT, MR. GERAGOS CAN FILE A

PDF created with pdfFactory trial version www.pdffactory.com

1    MOTION, AND WE'LL HAVE A HEARING.

2         MR. HALPERN:  EXACTLY RIGHT.  THERE'S A BIG

3    DIFFERENCE BETWEEN RHETORIC AND ACTUAL FACTS.  I THINK THE

4    COURT SHOULD RECOGNIZE SUBSEQUENT TO YOUR RULING -- BECAUSE I

5    DO THINK IT'S IMPORTANT FOR THE RECORD -- THAT NOT ONLY DID WE

6    TAKE YOUR RULING VERY SERIOUSLY, BUT WE WELCOMED THE ORDER AND

7    GAVE IT THE RESPECT IT DESERVED.

8         BUT WE ALSO CONTACTED WASHINGTON AND INFORMED THEM

9    OF YOUR ORDER, WHICH WILL ENABLE THEM TO FURTHER RESIST THE

10   IMPROPER ATTEMPTS, IF THERE ARE ANY, TO GET INFORMATION

11   RELATING TO THIS CASE.  I THINK IT WILL ALL COME OUT AT THE

12   APPROPRIATE TIME.  WE LOOK FORWARD TO MR. GERAGOS'S FILING.

13        THE COURT:  NOW, LET ME GET BACK TO THE MATTERS AT

14   HAND.

15        YOU INTEND TO FILE YOUR MOTION YOU JUST ALLUDED TO

16   AS WELL AS THE MOTION THAT YOU CAN EXEMPT YOURSELF FROM --

17        MR. GERAGOS:  FROM CIPA AND ALSO THE CLAIM CIPA IS

18   UNCONSTITUTIONAL AS WELL.

19        THE COURT:  I'LL LOOK AT BOTH OF THOSE.

20        YOU'RE PREPARED TO FILE THIS WEEK?

21        MR. GERAGOS:  CIPA, I'M PREPARED TO FILE -- I THINK

22   THE LOCAL RULES HERE ARE THREE WEEKS IN ADVANCE.  SO I WAS

23   GOING TO ASK FOR, IF IT WAS OKAY WITH THE COURT AND COUNSEL, A

24   MAY 2ND DATE AND HAVE IT ON FILE BEFORE APRIL 10TH.

25        THE COURT:  AND THAT MOTION WILL APPLY ONLY -- AND I

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    WANT TO GIVE YOU THE NUMBERS.  THAT APPLIES ONLY IN THE

2    07CR0329?  THAT IS THE WILKES/FOGGO CASE?

3          MR. GERAGOS:  THAT'S CORRECT.

4          THE COURT:  THE OTHER ONE, I ASSUME, HAS APPLICATION

5    TO BOTH CASES IN WHICH MR. WILKES IS CHARGED?

6          MR. GERAGOS:  CROSS-APPLICATION.

7          THE COURT:  WE'LL HEAR BOTH OF THOSE.

8          IF I SET A MOTION DATE OUT, SAY, FOUR WEEKS FROM

9    NOW, WILL THAT BE ENOUGH TIME TO FILE BOTH?

10          MR. GERAGOS:  THAT'S EXACTLY WHY I WAS GOING TO ASK

11    FOR MAY 2ND IF THE COURT WAS OKAY WITH THAT DATE.

12          THE COURT:  I HEAR MOTIONS ON MONDAYS.  I'LL SET IT

13    ON THE 14TH AT 2:00.  DEPENDING ON THE RESOLUTION OF THE

14    DISCOVERY ISSUES IN THIS CASE, IT WOULD BE MY INTENTION TO

15    MOVE FORWARD WITH A TRIAL DATE AT THE CONCLUSION OF THE MOTION

16    HEARING ON MAY 14TH IN THE WILKES/MICHAEL CASE.  THAT'S THE

17    CASE THAT I THINK YOU ANNOUNCED YOU'D BE READY TO GO ON.

18          MR. GERAGOS:  NO.  I NOTICED IN THE GOVERNMENT'S

19    OPPOSITION THAT THEY BROUGHT THE FOOTNOTE -- I THINK IT WAS

20    FOOTNOTE NO. 7 -- SAYING THAT, I BELIEVE -- AND I DON'T HAVE

21    THE TRANSCRIPT OF IT -- I BELIEVE WHAT I WAS REFERRING TO WAS

22    THAT THE WILKES/FOGGO CASE WAS THE ONE THAT I THOUGHT WAS MORE

23    STRAIGHTFORWARD.  COUNSEL HAD INTERPRETED THE OPPOSITE.

24    THAT'S THE ONE THAT I THOUGHT WAS THE SPEEDIER BECAUSE THE

25    OTHER IS THE ONE THAT'S MORE INVOLVED FACTUALLY.

PDF created with pdfFactory trial version www.pdffactory.com

1        THE COURT:  ONE OF THEM INVOLVES CONFIDENTIAL

2    MATERIALS AND INVOLVES SPECIAL PROCEDURES FOR HANDLING THOSE,

3    WILKES/FOGGO, AND THE OTHER ONE, AS FAR AS I KNOW, DOES NOT;

4    RIGHT?

5        MR. HALPERN:  THAT'S CORRECT.

6        THE COURT:  SO THAT ONE IS MORE STRAIGHTFORWARD, AT

7    LEAST IN TERMS OF THE PROCEDURES AND PROCEDURAL OBSTACLES THAT

8    HAVE TO BE OVERCOME BEFORE WE SET A TRIAL DATE.

9        ARE YOU READY IN THE ORDINARY COURSE FOR ME TO SET A

10    TRIAL DATE ON MAY 14TH IN THE WILKES/MICHAEL CASE?

11        MR. GERAGOS:  NOT ON THE WILKES/MICHAEL CASE.

12    DEPENDING ON HOW THE COURT RULES, I MAY BE READY ON THE

13    WILKES/FOGGO.

14        THE COURT:  WE'RE A LONG WAY AWAY, THOUGH.  THESE

15    MOTIONS HAVE ACQUAINTED ME WITH THE SCOPE OF MATERIALS.  AND

16    AS YOU KNOW, I'VE BEEN WORKING WITH MR. LONDERGAN.

17        THERE'S GOING TO BE SOME DETERMINATIONS THAT I'M

18    GOING TO HAVE TO MAKE.  AND THEY'RE GOING TO TAKE SOME TIME,

19    AND THEY'RE GOING TO INVOLVE MEETINGS AT LEAST WITH

20    MR. MAC DOUGALL AND COUNSEL FOR MR. FOGGO, IF NOT WITH YOU,

21    DEPENDING ON THE OUTCOME OF THE OTHER MOTION ABOUT THE

22    APPLICATION OF CIPA AND YOU AND YOUR CLIENT.

23        MR. GERAGOS:  MAYBE I'M GETTING TOO FAR AHEAD OF

24    MYSELF.  BUT IF THE COURT WERE TO RULE AT LEAST NOT DECLARING

25    CIPA UNCONSTITUTIONAL, THEN AMONG THE LINES OF AN ELECTION ON

PDF created with pdfFactory trial version www.pdffactory.com

1    MAY 14TH, THAT I COULD ELECT OUT, OPT OUT.  THEN IF THAT'S THE

2    CASE, MAYBE THERE'S A MOTION FOR SEVERANCE AT THAT POINT.

3         THE COURT:  WELL, WE'LL CROSS THAT BRIDGE WHEN WE

4    COME TO IT.  I WOULD BE DISINCLINED -- BASED ON WHAT I SEE

5    HERE, I THINK THE DEFENDANTS OUGHT TO BE SEVERED ON THAT CASE.

6         YOU SORT OF HAVE TO MOVE AT THE PACE OF THE SLOW

7    SHIP IN THE CONVOY, WHICH IN THIS CASE -- AND I HAVEN'T HEARD

8    FROM MR. MAC DOUGALL YET, BUT THERE'S BEEN NO INDICATION

9    FROM MR. FOGGO THAT HE WANTS TO OPT OUT, THAT HE DOESN'T WANT

10   THE CLASSIFIED MATERIALS TO OTHERWISE BE TURNED OVER.

11        MR. GERAGOS:  I THINK, AS WE POINTED OUT LAST TIME,

12   THERE'S A MATERIAL DIFFERENCE BETWEEN THE TWO OF THEM BECAUSE

13   HE'S HAD SECURITY CLEARANCE, AND HE'S GOT A CONTRACT.  MY

14   CLIENT DOES NOT.

15        THE COURT:  HERE'S MY THINKING ON THAT.  AND I'M

16   ANXIOUS TO READ AND CONSIDER THE MOTION.

17        I THINK IT MAY BE POSSIBLE, MR. GERAGOS, FOR YOU AND

18   MR. WILKES TO OPT OUT.  BUT I DON'T THINK THAT RELIEVES YOU OF

19   THE RESPONSIBILITY TO ABIDE BY THE OTHER PROVISIONS OF CIPA,

20   WHICH IS THAT YOU DON'T DISCLOSE CONFIDENTIAL INFORMATION AND

21   YOU'LL STILL BE UNDER AN OBLIGATION TO SHARE WITH ME -- BEFORE

22   YOU BRING SOMETHING OUT IN OPEN COURT, IT NEEDS TO BE

23   CLASSIFIED REGARDLESS OF HOW YOU LEARNED OF IT.

24        I DON'T -- I HAVEN'T THOUGHT IT ALL THE WAY THROUGH.

25   I DON'T THINK, FOR EXAMPLE, IF YOU SAY "NO WAY.  I'M NOT GOING

PDF created with pdfFactory trial version www.pdffactory.com

14

1    TO SUBMIT TO THIS BACKGROUND INVESTIGATION NOT FOR ANY OTHER

2    REASON OTHER THAN IT'S OFFENSIVE TO ME, AND I DON'T THINK MY

3    CLIENT" -- YOU MAY BE RIGHT ABOUT THAT.

4            ALTHOUGH THE COURT HAS SOME INHERENT POWER TO REMOVE

5    YOU EVEN IF YOUR CLIENT WANTS YOU BASED ON A CONFLICT, I'M NOT

6    SURE THAT THAT APPLIES IN THIS CASE BECAUSE IT SEEMS TO ME THE

7    ONLY DETRIMENTAL EFFECT OF NOT GETTING INFORMATION WILL BE

8    WITH MR. WILKES AND WITH YOU, NOT TO THE PUBLIC.  THE CASE

9    WILL STILL GO FORWARD, AND YOU'LL STILL BE SUBJECT TO THE

10   RESTRICTIONS.

11           AGAIN, I'M ANXIOUS TO SEE YOUR MOTION AND TO READ

12   THE ARGUMENTS THAT YOU MAKE.  BUT IT OCCURRED TO ME THINKING

13   AFTERWARDS THAT WHILE YOU MAY BE ABLE TO OPT OUT OF THE

14   PORTION THAT SAYS YOU HAVE TO SUBJECT YOURSELF TO A BACKGROUND

15   CHECK -- AND THERE MAY BE GOOD LEGAL REASONS WHY YOU SHOULDN'T

16   HAVE TO DO THAT -- I STILL THINK THAT THE GIST OF THE STATUTE

17   IS TO PROTECT CLASSIFIED INFORMATION.

18           SO REGARDLESS OF HOW YOU LEARNED IT, YOU REPRESENTED

19   LAST TIME AND MR. WILKES TOLD ME A LOT OF STUFF.  I DON'T

20   THINK I NEED THE REST OF IT.  THE GIST OF THE STATUTE IS TO

21   PREVENT THAT INFORMATION THAT'S CLASSIFIED FROM COMING OUT IN

22   OPEN COURT AND EFFECTIVELY BEING DECLASSIFIED IN THAT MANNER.

23   SO WHILE YOU MAY OPT OUT, YOU'RE GOING TO HAVE TO --

24           MR. GERAGOS:  I UNDERSTAND.  I THINK IN A

25   POST-CRAWFORD WORLD, HOWEVER, THAT THERE IS A MORE -- AT LEAST

PDF created with pdfFactory trial version www.pdffactory.com

15

1    THE U.S. SUPREME COURT, THEY'RE READING MORE EXPANSIVELY WHAT

2    THE 6TH AMENDMENT MEANS.  AS I INDICATED LAST TIME, I DON'T

3    THINK THAT HAVING TO VENT MY CROSS-EXAMINATION, WHICH IS

4    EXACTLY WHAT CIPA MAKES YOU DO, IS SOMETHING THAT'S PROPER.

5         THE COURT:  WITH ME, NOT WITH THE GOVERNMENT.

6         MR. GERAGOS:  WELL, I MAY BE MORE INCLINED TO DO IT

7    WITH THE COURT IF THE GOVERNMENT IS NOT THERE.

8         THE COURT:  I THINK THAT'S ALL YOU HAVE TO DO.

9         YOU DON'T READ CIPA AS GIVING YOU AN ENTITLEMENT TO

10   BEING PRESENT WHEN THEY MAKE THE SHOWING ON MATERIALITY;

11   RIGHT?

12        MR. HALPERN:  ABSOLUTELY NOT.

13        THE COURT:  AS I UNDERSTAND THE PROCEDURE, YOU COME

14   BACK AND MR. WILKES COMES BACK AND YOU SAY, "LOOK, THIS

15   INFORMATION, I UNDERSTAND, IS CLASSIFIED.  BUT WE NEED IT.

16   HERE'S WHY WE NEED IT.  HERE'S WHY IT'S RELEVANT MATERIAL TO

17   OUR DEFENSE."  THEN I MAKE A DETERMINATION.  IF THE GOVERNMENT

18   DISAGREES WITH IT, IT'S IMMEDIATELY APPEALABLE.

19        MR. GERAGOS:  THAT'S THE PART I HAVE THE PROBLEM

20   WITH, IF THE GOVERNMENT AT SOME POINT GETS THE INFORMATION

21   PRIOR TO ME DOING IT ON CROSS-EXAMINATION.  I DON'T HAVE A

22   PROBLEM WITH VENTING IT WITH THE COURT.  I HAVE A PROBLEM WITH

23   THEM IN THE MIX OF MY CROSS-EXAMINATION AT ANY POINT.

24        THE COURT:  THE PORTION OF THE PROCEDURE THAT THEN

25   HAS ME COME OUT AND SAY "MR. GERAGOS AND MR. WILKES HAVE

PDF created with pdfFactory trial version www.pdffactory.com

16

1   CONVINCED ME THAT THEY NEED X INFORMATION, AND I'M PREPARED TO

2   RELEASE X INFORMATION," YOU BELIEVE THAT TIPS YOUR HAND?

3           MR. GERAGOS:  EXACTLY.  BECAUSE WHEN THAT HAPPENS,

4   THAT'S -- AND I'M NOT ACCUSING MR. HALPERN OF THIS, BUT I'VE

5   CERTAINLY HAD PROSECUTORS WHO PROGRAMMED THEIR WITNESSES.  AND

6   ONCE MY -- ONCE I VENT IN ANY WAY, SHAPE, OR FORM -- I CAN

7   GIVE YOU EXAMPLES.  BUT ONCE I VENT WHERE I'M HEADING WITH THE

8   CROSS-EXAMINATION, ALL OF A SUDDEN WITNESSES GET VERY

9   INVENTIVE.  AND THAT, I BELIEVE, DOES IMMENSE DESTRUCTION OF

10  THE 6TH AMENDMENT AND THE WAY YOU CROSS-EXAMINE.

11          MR. HALPERN:  YOUR HONOR, WE HAVE TWO QUESTIONS:

12  ONE IS THE OVERALL CONSTITUTIONALITY OF CIPA, WHICH I THINK

13  WAS BEST ADDRESSED IN A MOTION.  THE SECOND ONE IS MR. GERAGOS

14  IS WORRIED AND CONCERNED -- AND IT'S A JUSTIFIABLE ONE --

15  ABOUT ANY CHILLING OF 6TH AMENDMENT RIGHTS HE HAS DUE TO HIS

16  ABILITY TO FULLY EXAMINE WITNESSES WITHOUT INPUT FROM THE

17  GOVERNMENT.

18          I THINK THAT QUESTION IS BEST HANDLED ON A

19  WITNESS-BY-WITNESS BASIS.  THE COURT CLEARLY HAS ENOUGH

20  EXPERIENCE IN TRIAL MATTERS THAT IT COULD FRAME THE ISSUE IN

21  TERMS OF THE GOVERNMENT'S NEED TO MAKE A DECISION TO APPEAL IN

22  SUCH A WAY THAT IT IN NO WAY GIVES AWAY MR. GERAGOS'S HAND.  I

23  DON'T THINK THE TWO ARE NECESSARILY INCOMPATIBLE.

24          THE COURT:  I DON'T KNOW.  IT SOUNDS LIKE A

25  LOGISTICAL NIGHTMARE TO ME BECAUSE THE ISSUE THAT HE RAISES IS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    "I DON'T WANT THEM TO KNOW WHAT I'M GOING TO USE IN MY

2    CROSS-EXAMINATION.  IF YOU THINK I GET TO DO THIS, THEN YOU'RE

3    OBLIGATED UNDER CIPA TO TELL THEM AND LET THEM DETERMINE

4    WHETHER THEY WANT TO APPEAL THE RELEASE OF THAT INFORMATION TO

5    ME."

6              MR. HALPERN:  EVEN THEN, WE WOULD HAVE A SERIES, FOR

7    EXAMPLE, OF CLASSIFIED INFORMATION WHICH THE GOVERNMENT HAS

8    DETERMINED IS RELEVANT.  WE HAVE WORK-AROUNDS FOR THAT

9    SUBSTITUTION.  FOR EXAMPLE, INDIVIDUALS' NAMES, WE'D USE

10   INITIALS INSTEAD.  WE'D PROVIDE ALL THAT TO THE COURT.  THE

11   COURT CAN ONLY SEE --

12             THE COURT:  I'LL TAKE IT UP ON THE 14TH RATHER THAN

13   GO THROUGH A STREAM OF CONSCIOUSNESS WITH THE TWO OF YOU NOW.

14   BUT I UNDERSTAND THAT FUNDAMENTALLY MR. GERAGOS SAYING, "I

15   DON'T WANT TO TELL THEM ANYTHING ABOUT WHAT MY

16   CROSS-EXAMINATION STRATEGY IS.  WHETHER THERE'S WORK-AROUNDS

17   OR NO WORK-AROUNDS, I DON'T WANT THEM TO KNOW THAT I THINK

18   CERTAIN MATERIAL IS SIGNIFICANT AND THAT I INTEND TO USE IT."

19   I GUESS THAT'S PART OF THE QUESTION.

20             WHY DON'T YOU BOTH DEVELOP THE ARGUMENTS FOR AND

21   AGAINST, AND I'LL LOOK AT THEM AND DECIDE ON THE 14TH.  BUT

22   THIS UNDERSCORES THE POINT ABOUT THE COMPLEXITY OF THE

23   WILKES/FOGGO CASE VERSUS WILKES/MICHAEL.  WE DON'T OF THOSE

24   PROBLEMS IN THE OTHER CASE.

25             SO I'M GOING TO BE PUSHING YOU AND MR. GRANGER,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

18

1    WHO'S NEW TO THE CASE, TO MOVE FORWARD ON THAT.  WE'LL TALK

2    ABOUT THAT AFTER WE GET THROUGH THE DISCOVERY OBSTACLES.  I

3    THINK IN THE ORDER OF THINGS, THAT MY INCLINATION IS TO TRY

4    THAT CASE FIRST AND PICK A TRIAL DATE SOMETIME AFTER MAY

5    THAT'S REASONABLE.

6            MR. GERAGOS:  I UNDERSTAND.

7            THE COURT:  LET'S TURN TO THE MATTER AT HAND.

8            MR. HALPERN, I'VE GOT A QUESTION BEFORE I RULE ON

9    THE MOTIONS FOR A BILL OF PARTICULARS.

10            YOU'VE TAKEN THE POSITION THAT THIS IS NOT AN OPEN

11   DISCOVERY CASE.  I UNDERSTAND THAT.  I UNDERSTAND IT'S

12   DANGEROUS TO SAY THIS IS OPEN DISCOVERY BECAUSE THEN IT COMES

13   BACK AND BITES YOU IF YOU INADVERTENTLY FORGOT SOMETHING OR

14   YOU WANT TO EXERCISE SOME RESTRAINTS ON SOME PART OF THE

15   INFORMATION.

16            BUT MORE GENERALLY, AS I LOOK THROUGH THE TWO

17   MOTIONS FOR BILL OF PARTICULARS, IT SEEMS TO ME THAT A LOT OF

18   THE QUESTIONS THAT DEFENSE COUNSEL HAVE ON THE EFFECT OF THE

19   EVIDENCE OR WHAT THE GOVERNMENT THINKS HAPPENED COULD BE

20   RESOLVED IF YOU WOULD GIVE OVER THE JENCKS MATERIAL SOONER

21   THAN 30 DAYS BEFORE TRIAL.  I UNDERSTAND I CAN'T FORCE YOU TO

22   DO THAT.  I'M WELL FAMILIAR WITH THE LAW IN THE 9TH CIRCUIT ON

23   THAT.  I DON'T HAVE ANY AUTHORITY.

24            BUT LET'S DEAL WITH THE WILKES/MICHAEL CASE FIRST.

25            WHY AT THIS POINT WOULDN'T YOU GIVE ALL THE JENCKS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

19

1   MATERIAL OVER?

2           MR. HALPERN:  YOUR HONOR, IT'S NOT A GREAT CONCERN

3   IN THIS COURT DUE TO THE WAY IT CONDUCTS ITS BUSINESS.  WHAT

4   HAPPENS IN MANY, MANY COURTS, UNFORTUNATELY -- AND I DON'T SAY

5   THIS -- BECAUSE I'M NOT TRYING TO IN ANY WAY SUGGEST THAT

6   JUDGES DON'T HAVE A GRIP OF WHAT THEY'RE DOING, BECAUSE

7   CLEARLY THEY DO.

8           FROM TIME TO TIME, THINGS COME UP THAT MAKES IT

9   DIFFICULT.  AND PROSECUTORS TURN OVER JENCKS MATERIAL WHAT

10  THEY THINK IS GOING TO BE TWO MONTHS BEFORE TRIAL OR THREE

11  MONTHS BEFORE TRIAL.  IT TURNS OUT IT'S TWO YEARS BEFORE

12  TRIAL.

13          THE COURT:  YOU DON'T HAVE THAT PROBLEM HERE.

14          MR. HALPERN:  I DON'T THINK WE DO.  AND CLEARLY IN

15  THE WILKES/MICHAEL CASE, WE'D BE HAPPY TO TAKE TWO MONTHS

16  BEFORE ANY TRIAL DATE.

17          THE COURT:  WHY NOT NOW?  IF I'M CONTEMPLATING

18  SETTING A TRIAL DATE AFTER THE MAY 14TH HEARING ON THE MOTIONS

19  IN THAT CASE, WHY NOT GIVE THOSE MATERIALS OVER?  IT WILL

20  SOLVE -- I LOOKED THROUGH MR. GERAGOS'S REQUEST FOR A BILL OF

21  PARTICULARS, WHICH IS REALLY A DISCOVERY REQUEST.

22          BUT IT DOES SEEM TO ME THAT THERE'S SOME CONFUSION

23  BECAUSE THE INDICTMENT USES PERSON X OR SUBORDINATE -- IT USES

24  SOME TITLE OTHER THAN THE PERSON'S SURNAME OR PROPER NAME TO

25  IDENTIFY PEOPLE.  COMPLETE DISCOVERY, IT SEEMS TO ME, WILL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   SOLVE ANY CONFUSION ABOUT WHO PLAYED WHAT PART AND WHEN THINGS

2   HAPPENED AND THE FUNDAMENTAL QUESTIONS HE HAS TO TRY TO

3   INTERPRET THE ALLEGATIONS IN THE INDICTMENT.

4            MR. HALPERN:  I DON'T DISAGREE, ALTHOUGH I WOULD SAY

5   THAT I THINK THE DISCOVERY WE DID PROVIDE DOES CURE 95 PERCENT

6   OF THAT, IF NOT 99 PERCENT.  JUST SO THE COURT UNDERSTANDS,

7   WE'RE HOLDING BACK A RELATIVELY LIMITED UNIVERSE OF DOCUMENTS,

8   THOSE BEING ONLY SPECIFIC GRAND JURY TRANSCRIPTS OF WITNESS

9   STATEMENTS AND REPORTS REGARDING THOSE.  SO IT IS A SMALL

10  UNIVERSE --

11           THE COURT:  FOR SOME LEGITIMATE PURPOSE LIKE A FEAR

12  OF SOMEBODY'S SAFETY?

13           MR. HALPERN:  IT'S NOT FEARING FOR THEIR SAFETY, BUT

14  IT'S A MATTER OF COURSE.  EVERY SINGLE TIME WE SPEAK TO

15  WITNESSES, WE TELL THEM WE'RE BOUND TO -- THAT THE GOVERNMENT

16  TAKES THEIR CONFIDENTIALITY AS SOMETHING THAT'S VERY IMPORTANT

17  TO US.  I PERSONALLY SAY THAT TO EVERY SINGLE WITNESS.  I TELL

18  THEM "LOOK, WE'RE GOING TO DO OUR BEST TO NOT REVEAL WHO YOU

19  ARE AND WHAT YOU SAID FOR AS LONG AS WE CAN.  THERE IS A TRIAL

20  IN THIS CASE."  AND I TELL THEM THAT MAYBE WE HAVE TO REVEAL

21  IT THE DAY BEFORE THAT.

22           BUT TIME AND TIME AGAIN, WE END UP REVEALING THESE

23  THINGS, CASES PLEAD OUT, AND WE'VE LET THE WITNESSES DOWN, AS

24  FAR AS I'M CONCERNED, IN TERMS OF PROTECTING THEIR IDENTITY.

25  AND THAT'S MY ONLY CONCERN.  I WANT TO MAKE SURE THAT THE CASE

PDF created with pdfFactory trial version www.pdffactory.com

21

1    WILL GO TO TRIAL AND THERE'S A FIRM DATE.  IT'S NOT ABOUT

2    TRYING TO GET SOME TYPE OF TACTICAL ADVANTAGE WHERE I'M

3    WAITING 30 VERSUS 60 DAYS.

4              THE COURT:  I KNOW.  I'M NOT IMPUTING THAT TO YOU.

5    I KNOW YOU WOULDN'T DO IT FOR THAT REASON.  BUT IT DOES SEEM

6    TO ME, YOU'VE ACKNOWLEDGED, THAT CASES GO TO TRIAL ON THE

7    APPOINTED DATES HERE.  AND MR. GERAGOS ISN'T FAMILIAR WITH

8    THAT.  I HOLD TRIAL DATES, AND THERE HAS TO BE A SHOWING OF

9    GOOD CAUSE BEFORE I MOVE THINGS.

10             MR. GERAGOS:  YOUR REPUTATION PRECEDES YOU.

11             THE COURT:  WELL, IN THIS INSTANCE, I'M HAPPY TO BE

12   SINGLED OUT WITH THAT DISTINCTION.

13             GIVEN THAT, MR. HALPERN --

14             MR. GERAGOS, YOU'RE GOING TO TRY THIS CASE, GO TO

15   TRIAL?

16             MR. GERAGOS:  THERE IS NO WAY THAT MY CLIENT IS

17   PLEADING TO ANYTHING.

18             THE COURT:  THAT'S PRETTY DEFINITIVE, THEN.  I'M

19   TELLING YOU THERE'S A DEFINITE TRIAL DATE.  HE TELLS YOU HIS

20   CLIENT WANTS HIS DAY IN COURT.  SO IT SEEMS TO ME THAT IT'S

21   TIME TO GIVE UP THE JENCKS MATERIAL AND TELL THE PEOPLE "LOOK,

22   THAT DAY I TOLD YOU ABOUT, IT'S HERE.  THE JUDGE IS GOING TO

23   SET A TRIAL DATE.  MR. GERAGOS SAID MR. WILKES ISN'T PLEADING

24   TO ANYTHING."

25             MR. GERAGOS:  RIGHT.  MR. HALPERN HAS APPROACHED ME,

PDF created with pdfFactory trial version www.pdffactory.com

22

1    AS I'M SURE HE DOES TO ALL DEFENSE COUNSEL.  I THINK HE CAN

2    ATTEST TO THIS COURT THAT I HAVE NOT COME OVER AND ASKED FOR

3    ANYTHING IN TERMS OF ANY KIND OF A PLEA BARGAIN.  WE'RE NOT

4    INTERESTED.

5            THE COURT:  I THINK HE MEANS WHAT HE SAYS.

6            MR. HALPERN:  PERHAPS WE CAN EVEN AGREE TO A TRIAL

7    DATE RIGHT HERE.  THAT WOULD MAKE THE GOVERNMENT FAR MORE

8    COMFORTABLE.  WE KNOW THE TRIAL DATE.  WE CAN TELL OUR

9    WITNESSES.

10           THE COURT:  HERE'S THE PROBLEM:  HE WANTS TO FILE

11   MOTIONS.  AND SOME OF THE MOTIONS MAY BE DISPOSITIVE.  I DON'T

12   WANT TO PRE-JUDGE THOSE.

13           MR. HALPERN:  IF THEY ARE DISPOSITIVE, YOUR HONOR, I

14   HATE TO GIVE OVER THE JENCKS BEFORE WE HAVE A DISPOSITIVE

15   MOTION.

16           HOW ABOUT IF I SAY ASSUMING THAT THE COURT DOES NOT

17   FIND ANY OF THE MOTIONS DISPOSITIVE ON MAY 2ND {SIC}, WE TURN

18   IT OVER THEN?

19           THE COURT:  MAY 14TH.

20           WELL, LOOK, I CAN'T ORDER YOU TO DO IT.  I'M JUST

21   TELLING YOU YOU CAN HANDICAP THIS THING.  I DON'T WANT TO

22   PRE-JUDGE THIS AT ALL.  BUT UNLESS THIS SOMEHOW CAME DIRECTLY

23   BACK TO YOU AS THE LEAKER OR SOMETHING LIKE THAT -- AND I

24   DON'T KNOW UNDER WHAT CIRCUMSTANCES IT WOULD BE APPROPRIATE TO

25   DISMISS IF YOU'RE SO HANDICAPPED AS USING YOUR JUDGMENT.

PDF created with pdfFactory trial version www.pdffactory.com

1      MR. GERAGOS:  IF IT DID COME BACK TO CAROL LAM, THAT

2  WOULD STRIKE ME AS BEING PROBABLY THE MOST COMPELLING GROUNDS

3  TO DISMISS.

4      THE COURT:  MR. GERAGOS, YOU'VE BEEN AROUND A LONG

5  TIME.

6      MR. GERAGOS:  I UNDERSTAND.  IT'S RARE THAT A CASE

7  GETS DISMISSED IN FEDERAL COURT.  I UNDERSTAND THAT.  IT'S

8  ALSO A RARE CASE WHERE YOU HAVE 6(E) MATERIAL BANDIED ABOUT TO

9  REPORTERS, INCLUDING THE INDICTMENT, PRIOR TO THE INDICTMENT

10  HAPPENING.

11      THE COURT:  I AGREE.  I ALREADY TOLD YOU THAT.  I

12  THINK THAT THAT WAS A GREAT MISTAKE IN THIS CASE.  I'M THE

13  JURY JUDGE HERE.  I DON'T KNOW, MR. HALPERN, IF YOU'VE EVER

14  BEEN HERE FOR THE IMPANELMENT OF GRAND JURIES.  BUT I IMPRESS

15  UPON THEM THAT THE MOST IMPORTANT THING IS SECRECY.  THE POWER

16  TO CHARGE SOMEONE IS THE POWER TO RUIN THEM, RUIN THEIR

17  REPUTATION.  SO THEY NEED TO BE SECRET AND OBJECTIVE AND

18  CONSCIENTIOUS IN ALL THEIR DELIBERATIONS.

19      AND WE'VE NOT IN THIS DISTRICT, TO MY KNOWLEDGE, HAD

20  ANY PROBLEMS WITH GRAND JURORS THEMSELVES.  THIS IS A PROBLEM.

21  GOVERNMENT AGENTS DON'T FOLLOW THE RULE.  I DON'T KNOW THAT IT

22  WAS A GOVERNMENT AGENT, BUT IT WAS SOMEBODY THAT WAS IN THE

23  KNOW BECAUSE THE MATERIAL THAT THESE TWO LAWYERS TOLD ME ABOUT

24  THAT THEY WERE ASKED ABOUT BY REPORTERS WAS TOO SPECIFIC NOT

25  TO COME FROM SOMEBODY WHO WAS IN THE KNOW ON THIS THING.

PDF created with pdfFactory trial version www.pdffactory.com

24

1          AGAIN, WE'LL LEAVE THAT FOR ANOTHER DAY.

2          I'D PREFER, USING YOUR EXPERIENCE AND JUDGMENT, IF

3   YOU WOULD TURN OVER THE JENCKS MATERIAL TO THE DEFENDANTS AT

4   THIS TIME.

5          MR. HALPERN:  YOUR HONOR, I HEAR YOU LOUD AND CLEAR.

6   I WOULD ASK YOU TO TRUST MY EXPERIENCE AND JUDGMENT.  I WOULD

7   NOT LIKELY COMMIT WITHOUT SPEAKING TO MY CO-COUNSEL AS WELL AS

8   MS. CHU.  BUT I HEAR THE COURT LOUD AND CLEAR.  I'LL SPEAK TO

9   MR. GERAGOS ABOUT THAT AND MR. GRANGER CERTAINLY BY THE END OF

10  THIS WEEK.  IF THEY HAVE A PROBLEM, WE CAN ALWAYS GET BACK IN

11  FRONT OF THE COURT.

12         THE COURT:  MR. GRANGER, I'M SURE YOU HAVE A POINT

13  OF VIEW ON ALL THIS, TOO.

14         MR. GRANGER:  JUDGE, IF I MAY, WITH RESPECT TO

15  SETTING A SCHEDULE, IT'S MY UNDERSTANDING FROM MR. HALPERN

16  THAT THE GOVERNMENT HAS NOW MADE AVAILABLE AN EXTRAORDINARY

17  NUMBER OF DOCUMENTS.  I BELIEVE IT'S IN EXCESS OF A MILLION

18  DOCUMENTS.

19         UP TO THIS POINT, MR. MICHAEL DOES NOT HAVE THEM.

20  WE'RE MAKING ARRANGEMENTS.  ONE OF THE PROBLEMS, IN PART,

21  RELATES TO A DISCUSSION ABOUT RULE 6 DISCLOSURES.  MY CLIENT'S

22  BUSINESS AS OF THE TIME OF THE FIRST DISCLOSURE, HE HAD SOME

23  NINE OFFICES AROUND THE COUNTRY, OVER 700 EMPLOYEES.  AS OF

24  TODAY, THE COMPANY HAS DISSOLVED.  IT IS DIFFICULT FOR HIM

25  EVEN TO AFFORD THE $10- TO $20,000 IN COPY COSTS.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1           THAT SAID, MR. HALPERN HAS BEEN GOOD ENOUGH TO TELL

2    ME THAT TOMORROW HE'LL MAKE AS MANY DOCUMENTS AVAILABLE TO ME

3    SO I CAN DECIDE WHAT WE DON'T NEED.  THEN I CAN MAKE

4    ARRANGEMENTS FOR THE ONES WE DO NEED COPIED.

5           AND I WOULD ASK THE COURT'S INDULGENCE TO GIVE ME A

6    LITTLE TIME TO REVIEW IT TO SEE IF I NEED TO MAKE ANY MOTIONS.

7    THAT'S MY CONCERN.

8           THE COURT:  OKAY.  TODAY IS APRIL 2ND.

9           MAY 14TH, DOES THAT GIVE YOU ADEQUATE TIME?

10          MR. GRANGER:  MAY 14TH MAY BE ENOUGH TIME TO GET

11   THROUGH WHAT'S GOING TO BE AT LEAST HUNDREDS OF THOUSANDS OF

12   DOCUMENTS.  I'LL NEED A LITTLE TIME AFTER THAT TO FILE A

13   MOTION.

14          THE COURT:  HERE'S WHAT MY INTENTION IS,

15   MR. MICHAEL.  I INTEND TO SET A TRIAL DATE AFTER HEARING THE

16   DISPOSITIVE MOTIONS ON THE WILKES/MICHAEL CASE ON MAY 14TH.  I

17   MAY ALSO SET AN INTERIM MOTIONS DATE BETWEEN THE 14TH AND THE

18   TRIAL DATE IF YOU HAVE ADDITIONAL MOTIONS THAT YOU WERE NOT

19   ABLE TO FILE.  SO WE'LL DO THAT.  BUT I WANT TO MOVE THINGS

20   ALONG.

21          MY BELIEF AND EXPERIENCE IS THAT A FIRM TRIAL DATE

22   FORCES ACTION IN CASES.  IT ALWAYS DID WHEN I WAS A LAWYER.

23   THAT'S NOT TO SAY WHEN THE DATE WILL BE.  I'LL CERTAINLY

24   CONSULT WITH YOU AND MR. GERAGOS AND THE GOVERNMENT BEFORE I

25   SET A REASONABLE DATE.

PDF created with pdfFactory trial version www.pdffactory.com

26

1        I WOULD EXPECT THAT THIS CASE -- IF MR. GERAGOS AND

2   MR. WILKES HOLD THROUGH, THIS CASE IS GOING TO BE IN TRIAL

3   THIS SUMMER.

4        MR. GRANGER:  YES.

5        THE COURT:  WITH THAT UNDERSTANDING, DO YOUR BEST.

6   IT SOUNDS LIKE THE DISCOVERY IS GOING TO BE FORTHCOMING, AND

7   YOU'LL HAVE A LOT OF READING TO DO BETWEEN NOW AND THE 14TH.

8   IF YOU NEED ADDITIONAL TIME TO FILE SOME MOTIONS, I'LL GIVE

9   THAT TO YOU.

10        MR. GRANGER:  IF I NEED TIME BEYOND THE 14TH?

11        THE COURT:  YES.

12        MR. HALPERN:  I WILL COMMIT HERE TO ASSIST

13   MR. GRANGER.  WE'RE NOT JUST GOING TO DUMP DISCOVERY IN FRONT

14   OF HIM.  I'M HAPPY TO TELL HIM EXACTLY WHAT IS RELEVANT, AND

15   I'LL DO ANYTHING I CAN.

16        THE COURT:  WHAT ABOUT GIVING HIM THE ELECTRONIC

17   DISCOVERY FREE?  YOU TOOK THE POSITION THEY HAD TO CONTRIBUTE

18   ON THIS.  AFTER ALL, IT IS THE GOVERNMENT WHO'S PROSECUTING

19   THESE GUYS.  WHY DON'T YOU JUST GIVE THEM COPIES OF THIS

20   STUFF.  WOULD YOU MIND DOING THAT?

21        MR. GERAGOS:  I WOULD SECOND THAT.

22        MR. HALPERN:  THIS IS A LITTLE DIFFERENT POSITION.

23   ALL I ASK IS RECIPROCITY, FRANKLY.  IF THEY ARE GOING TO SCAN

24   THINGS AND THEY PROVIDE THEM TO US, I'M HAPPY TO --

25        THE COURT:  IS THAT A DEAL?

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. GRANGER:  THAT'S A DEAL.

2          MR. GERAGOS:  I AGREE TO RECIPROCITY.

3          THE COURT:  GOOD.

4          THAT GOES FOR MR. FOGGO, TOO?

5          MR. HALPERN:  ABSOLUTELY, YOUR HONOR.

6          THE COURT:  ALL RIGHT.

7          NOW, LET ME TURN TO THE MOTION FOR BILL OF

8    PARTICULARS.  I'M HAPPY TO HEAR FROM YOU, MR. GERAGOS.  I

9    DON'T THINK THE MOTION IS PARTICULARLY WELL-FOUNDED BECAUSE

10   THERE ARE HOLES IN THE INDICTMENT.  YOU'VE IDENTIFIED THEM IN

11   YOUR MOTION FOR A BILL OF PARTICULARS.  BUT IT SOUNDS MORE IN

12   THE NATURE OF GIVING DISCOVERY SO I CAN UNDERSTAND HOW YOU'RE

13   GOING TO PROVE THIS, NOT I DON'T UNDERSTAND WHAT THE THEORY IS

14   OR WHAT THE CHARGE IS.

15          MR. GERAGOS:  I'D BE WILLING TO TABLE IT, TO SOME

16   DEGREE.  IF MR. HALPERN IS GOING TO GO BACK AND TALK AND

17   THERE'S SOME KIND OF FORTHCOMING JENCKS, THAT SOLVES PRETTY

18   MUCH MY CONCERN.  I CAN FIGURE IT OUT.  IF HE WANTS, ALSO --

19   IN ADDITION TO RECIPROCITY ON ELECTRONIC, IF HE WANTS ME TO

20   TAKE IT UNDER A GENTLEMEN'S AGREEMENT THAT I WILL NOT HAVE ANY

21   OF THE WITNESSES CONTACTED BY MY INVESTIGATOR UNTIL THE 14TH,

22   I'M WILLING TO DO THAT AS WELL.

23          THE COURT:  OKAY.  WHATEVER YOU WANT TO WORK OUT

24   WITH MR. HALPERN.  I THINK YOU SHOULD GET THE MATERIALS SO

25   THEY CAN START READING AND DIGESTING.  MR. GRANGER IS NEW

PDF created with pdfFactory trial version www.pdffactory.com

28

1    HERE, AND HIS WORK'S CUT OUT FOR HIM.  HE'S GOING TO HAVE TO

2    CATCH UP.

3           MR. HALPERN:  THEY HAVE A RIGHT TO BE PREPARED, AND

4    I WILL ASSIST THEM IN ANY WAY I CAN.

5           THE COURT:  I HAD GONE THROUGH IN BOTH CASES,

6    MR. GERAGOS, YOUR BILL OF PARTICULARS.  YOU'VE WRITTEN "YES,"

7    YES," "NO," "MAYBE" ON SOME OF THEM.  IT SOUNDS LIKE THE YESES

8    ARE ALL GOING TO BE ANSWERED IF MR. HALPERN GIVES YOU THE

9    MATERIALS.

10          THE MATERIALS WOULD SUPPLY THE NAMES, THE DATES, AND

11   AMOUNTS THAT HE'S LOOKING FOR?

12          MR. HALPERN:  ABSOLUTELY.  IN FACT, JUST SO THE

13   COURT UNDERSTANDS -- YOU PROBABLY DO ALREADY -- THE LANGUAGE

14   IN AN INDICTMENT, ONCE AGAIN, IS CHOSEN TO PROTECT THE PEOPLE.

15   IT'S NOT TO KEEP THE DEFENSE IN THE DARK.  THE DISCOVERY TELLS

16   YOU WHAT WILKES AND SUBORDINATE X DID AND THE DATES AND THE

17   LOCATIONS.  WE'RE JUST DOING SO TO PROTECT THOSE PEOPLE.

18          THE COURT:  I GET IT.  BUT IF WE'RE GOING TO GO

19   FORWARD AND WE'RE GOING TO HAVE A FIRM TRIAL DATE, I WANT ALL

20   DEFENDANTS TO BE IN A POSITION TO KNOW HOW THE GOVERNMENT

21   BELIEVES THEY'RE GOING TO PROVE THE CHARGES AGAINST THEM.  I

22   THINK THAT'S WHAT THEY'RE ENTITLED TO BEFORE TRIAL STARTS.  I

23   KNOW YOU THINK THAT, TOO.  SO IF YOU'LL GIVE THAT OVER, I

24   THINK IT RESOLVES IT.

25          YOU WITHDRAW THE MOTION, THEN, GIVEN THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

29

1    REPRESENTATION?

2          MR. GERAGOS:  GIVEN THE REPRESENTATIONS, I DO.

3          THE COURT:  ARE THERE ANY OTHER CONSENT TO DISCOVERY

4    ISSUES THAT I NEED TO DEAL WITH FROM MR. WILKES'S PERSPECTIVE?

5          MR. GERAGOS:  NOT ANYTHING THAT'S OUTSIDE OF CIPA AT

6    THIS POINT.

7          THE COURT:  HOW ABOUT FROM MR. MICHAEL'S

8    PERSPECTIVE?  IS THERE ANYTHING THAT YOU THINK YOU'RE ENTITLED

9    TO, IN LIGHT OF THE REPRESENTATIONS TODAY, THAT YOU HAVEN'T

10   BEEN OR WON'T BE GIVEN?

11         MR. GERAGOS:  NO.

12         MR. GRANGER:  NOTHING FURTHER.

13         THE COURT:  LET ME TURN TO THE WILKES/FOGGO MATTER.

14   YOU'VE ALSO FILED A MOTION FOR A BILL OF PARTICULARS.  THE

15   THEORY IS PRETTY CLEAR TO ME.  THIS ISN'T A BOILERPLATE

16   INDICTMENT.  IN FACT, THE GOVERNMENT WENT OUT OF ITS WAY TO

17   INCLUDE OVERT ACTS AND THEORIES AND THINGS THAT ONE DOESN'T

18   USUALLY SEE IN AN ORDINARY BOILERPLATE INDICTMENT.  I LOOKED

19   AT IT, AND IT'S PRETTY CLEAR TO ME WHAT THEY'RE ALLEGING.

20         NOW, SOME OF THE DETAILS NEED SPECIFICATION.  BUT IT

21   SOUNDS LIKE THAT WILL COME IN THE PRODUCTION OF THE JENCKS

22   MATERIAL.

23         I'M HAPPY TO HEAR FROM YOU.

24         MR. MAC DOUGALL:  IF THE COURT IS MAKING THE SAME

25   OPTION AVAILABLE TO MR. FOGGO, THAT WILL OBVIATE MUCH OF WHAT

PDF created with pdfFactory trial version www.pdffactory.com

1   WE HAD IN THE BILL OF PARTICULARS.

2           THE COURT:  YOU'RE WILLING TO DO THAT PUTTING

3   CLASSIFIED MATERIALS ASIDE?  I UNDERSTAND THAT THAT IS A HORSE

4   OF A DIFFERENT COLOR AND YOU GO THROUGH DIFFERENT PROCEDURES

5   WITH RESPECT TO THAT.  BUT NON-CLASSIFIED MATERIAL, WILL YOU

6   TURN ALL THE JENCKS STUFF OVER?

7           MR. HALPERN:  I'M A LITTLE MORE HESITANT TO DO IT

8   HERE, YOUR HONOR, ESPECIALLY BECAUSE I THINK JUST ABOUT EVERY

9   STATEMENT HAS TO GO THROUGH THE CLASSIFICATION PROCESS.

10          THE COURT:  THAT SHOULDN'T BE A BASIS FOR HESITANCY

11  BECAUSE WE'LL GO THROUGH THE CLASSIFICATION PROCESS WITH THAT.

12  I'M TALKING ABOUT THE NON-CLASSIFIED STUFF THAT MAY QUALIFY AS

13  JENCKS.

14          WILL YOU GIVE THAT OVER AT THE SAME TIME?  NO REASON

15  NOT TO.

16          MR. HALPERN:  ONCE AGAIN, I HEAR THE COURT.  LET

17  ME JUST GO BACK AND DISCUSS THAT.  WE CAN GET BACK TO

18  MR. MAC DOUGALL.

19          YOUR HONOR, THE REASON I HESITATE, I NEED TO PICK

20  THROUGH AND SPEAK TO THE PEOPLE AT THE CIA TO MAKE SURE THEY

21  AGREE WITH SUCH A COURSE OF CONDUCT.

22          THE COURT:  IT DOESN'T SEEM TO ME THAT THAT'S WITHIN

23  THEIR BAILIWICK.  WE'RE TALKING ABOUT NON-CLASSIFIED

24  INFORMATION, NOT INFORMATION THAT YOU'RE CHARGED WITH THE

25  DECISION TO TURN OVER.  IF YOU'LL AGREE TO THAT, THEN WE'RE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

31

1    ONTO THE CIPA PROCEDURES.  AND IF IT WILL HELP SEAL THE DEAL,

2    DO A PROTECTIVE ORDER.

3              MR. MAC DOUGALL AND MR. GERAGOS -- MR. GRANGER

4    HASN'T MADE THE POINT YET, BUT THEY'RE HARDLY IN A POSITION TO

5    COMPLAIN ABOUT PROSPECTIVE ORDERS.  WE'VE GOT THIS MOTION

6    CONTEMPLATED NOW TO FIND OUT WHO LEAKED THE INFORMATION AND

7    DETERMINE WHAT TO DO ABOUT THAT.

8              I'M ASSUMING, MR. GERAGOS, YOU'D BE HAPPY TO SIGN A

9    REASONABLE PROTECTIVE ORDER?

10             MR. GERAGOS:  ABSOLUTELY.

11             MR. MAC DOUGALL:  WE WOULD.  IF I MAY, THERE'S SORT

12   OF A THIRD-TIER ATTENTION HERE WITH REGARD TO MR. FOGGO.  ON

13   THE ONE HAND, WE DON'T HAVE OPEN FILE DISCOVERY.  AS THE COURT

14   KNOWS, THERE'S A REASON FOR OPEN FILE DISCOVERY IN

15   WHITE-COLLAR CASES.  PUT EVERYTHING IN A ROOM, AND THE DEFENSE

16   LAWYERS COME IN AND FIND WHAT THEY WANT.  THE CASES RARELY

17   COME BACK ON DISCOVERY.

18             THE REASON WE NEED A BILL OF PARTICULARS, AS THE

19   COURT POINTED OUT, IS THERE'S NUMEROUS UNNAMED PEOPLE, STRAW

20   MEN, CONTRACTOR X, AND SO FORTH.  SO WE CAN'T EVEN KNOW WHAT

21   WE'D ASK FOR WITHOUT HAVING THAT INFORMATION.

22             THE COURT:  DOESN'T IT SOLVE, MR. MAC DOUGALL, IF

23   MR. HALPERN AGREES -- CIPA STANDS ON ITS OWN.  BUT IF HE

24   AGREES WITH RESPECT TO UNCLASSIFIED MATERIAL TO GIVE YOU ALL

25   THE JENCKS MATERIAL, HE'S REPRESENTED THAT ONCE YOU READ THAT,

PDF created with pdfFactory trial version www.pdffactory.com

32

1    IT WILL SUPPLEMENT WHAT YOU'LL ALREADY HAVE AND ALL THE

2    QUESTIONS THAT WERE RAISED ABOUT WHO DID WHAT AND WHAT THE

3    AMOUNTS ARE WILL BE ANSWERED.

4            MR. MAC DOUGALL:  I THINK IT WILL.  AND IF I

5    UNDERSTAND THE COURT CORRECTLY, WE'RE CLEARED TO THE SECRET

6    LEVEL NOW.  ONCE WE'RE CLEARED TO THE T.S. LEVEL, THAT WOULD

7    ESSENTIALLY OPEN ALL THAT UP FOR OUR REVIEW.

8            THE COURT:  I'M ASSUMING THAT'S SO.

9            MR. HALPERN:  I DON'T THINK IT'S ACTUALLY SO.  IT'S

10   CLOSE TO BEING.  I JUST -- WITH ANY TYPE OF DEFINITIVE

11   ABILITY, I COULDN'T SAY -- THE REASON I SAY THAT IS ABOVE THE

12   TOP SECRET, THERE ARE VARIOUS COMPARTMENTS THAT HAVE TO --

13   COUNSEL HAVE TO HAVE CLEARANCE FOR.  ASSUMING THAT THEY'RE

14   READ IN THE APPROPRIATE COMPARTMENT, THEN IT WOULD BE SO.

15           IN FACT, THAT BRINGS ME BACK TO THE DISCUSSION WE

16   HAD LAST TIME WHERE THE GOVERNMENT SAID WE, OF COURSE, HAVE NO

17   OBJECTION TO COUNSEL TALKING TO MR. FOGGO ON ANY SUBJECT AS

18   LONG AS MR. FOGGO HAS APPROVAL TO DO THAT.

19           AGAIN, MR. FOGGO UNDERSTANDS THE RULES AS WELL AS

20   ANYBODY IN THIS COURT.  AND SIMPLY BECAUSE COUNSEL HAS TOP

21   SECRET CLEARANCE DOESN'T MEAN THEY GET TO SEE ANY MATERIAL

22   THEY DESIRE.  MR. FOGGO CAN SAY ANYTHING HE WANTS.  WHAT IT

23   DOES MEAN IS IF MR. FOGGO BELIEVES THERE IS SOMETHING THAT IS

24   CLASSIFIED ABOVE A TOP SECRET LEVEL THAT HIS COUNSEL NEEDS TO

25   KNOW, HE COULD COME TO MR. LONDERGAN, WHO CAN INFORM THE

PDF created with pdfFactory trial version www.pdffactory.com

1    COURT, AND THEN A DECISION CAN BE MADE ON IT.

2           AS I'VE TOLD DEFENSE COUNSEL IN DISCUSSIONS WE'VE

3    HAD, WE WILL, OF COURSE, SUPPORT THEIR NEED TO KNOW ANYTHING

4    THAT'S RELEVANT TO THIS CASE BECAUSE WE BELIEVE THEY NEED

5    COMPLETE ACCESS TO RELEVANT AND MATERIAL INFORMATION IN ORDER

6    TO PREPARE THEIR DEFENSE.

7           THE COURT:  I HAD A DIFFERENT VIEW OF THAT LAST

8    TIME.  I THOUGHT WHAT MR. FOGGO CHOOSES TO DISCUSS WITH HIS

9    LAWYER WOULD BE SUBJECT TO THE CONTRACT AND THE OATH OF

10   SECRECY THAT HE ENTERED INTO WITH THE CENTRAL INTELLIGENCE

11   AGENCY.  I WASN'T GOING TO PRESUME TO GET BETWEEN MR. FOGGO

12   AND WHAT HE TOLD HIS LAWYERS.

13          NOW, WHETHER IT EVER AIRS IN AN OPEN COURT OR

14   PUBLICLY IS MY BAILIWICK.  AND I DO INTEND TO FOLLOW SECRET

15   PROCEDURES AND MEET WITH COUNSEL FOR MR. FOGGO ON THAT.  BUT,

16   MR. HALPERN, I THINK IT STRETCHES CIPA TO SAY, "NO, NO.  I

17   HAVE A RIGHT TO KNOW FROM MR. FOGGO WHAT HE'S ABOUT TO TELL

18   MR. MAC DOUGALL BEFORE HE TELLS HIM."

19          MR. HALPERN:  NO, I DON'T MEAN TO SUGGEST THAT.  BUT

20   I DO BELIEVE THAT THERE IS A LEVEL OF SECURITY THAT WILL, IN

21   FACT, BIND MR. FOGGO.  HE UNDERSTANDS THAT.  I'M NOT

22   SUGGESTING THE COURT AHEAD OF TIME GET INVOLVED.  PERHAPS THIS

23   WILL NOT COME UP.

24          IF MR. FOGGO POSSESSES -- WELL, HE CLEARLY POSSESSES

25   COMPARTMENTED INFORMATION ABOVE THE TOP SECRET LEVEL.  AND IF

PDF created with pdfFactory trial version www.pdffactory.com

1  HE BELIEVES HE NEEDS TO DISCUSS THAT WITH HIS DEFENSE

2  ATTORNEY, HE WILL NOT DO SO BECAUSE HE WILL BE BOUND BY HIS

3  CONTRACT.  HE WILL BE BOUND BY THE DISSEMINATION OF CLASSIFIED

4  INFORMATION AND THE LAW REGARDING THAT IN TITLE 18.  HE KNOWS

5  THAT.  IF THAT DOES BECOME A PROBLEM, ONLY THEN WILL HE HAVE

6  TO GO TO THE COURT.  IT'S MY HOPE WE DON'T REACH THAT STAGE.

7          THE COURT:  I DON'T SEE MYSELF AS HAVING ANY

8  INVOLVEMENT IN THAT ASPECT OF IT.  THAT'S BETWEEN MR. FOGGO

9  AND THE CIA'S LAWYERS.  WHAT'S COMMITTED TO MY DISCRETION IS

10  TO HEAR FROM MR. MAC DOUGALL AND MR. GERAGOS AT THE

11  APPROPRIATE TIME SAYING, "WE THINK WE NEED THIS TO DEFEND OUR

12  CLIENTS.  HERE'S WHY IT'S RELEVANT.  HERE'S WHY IT'S

13  MATERIAL."  AND THEN I APPLY RULE 402, 403, AND PRIVILEGES AND

14  MAKE A JUDGMENT ON THAT AND ANNOUNCE THE JUDGMENT.

15          BUT THESE INTERNAL DELIBERATIONS, MR. HALPERN, I'M

16  VERY RELUCTANT TO SAY THAT I HAVE ANY INVOLVEMENT IN WHAT

17  MR. FOGGO RELEASES TO MR. MAC DOUGALL.  IF HE'S GOT A QUESTION

18  ABOUT THAT, HE OUGHT TO GO BACK TO THE CIA AND SAY, "LOOK, I'M

19  IN A PINCH HERE.  I'VE GOT TO DEFEND MYSELF.  AND I THINK IN

20  ORDER TO PROPERLY DEFEND MYSELF, MY LAWYER NEEDS TO KNOW THIS

21  CONTEXT."

22          MR. HALPERN:  I AGREE WITH ALL OF THAT.  IT ONLY

23  COMES TO THE COURT IF, IN FACT, THE CIA SAYS, "NO, YOU CAN'T

24  DO IT."  AND, OF COURSE, WE'LL HAVE INPUT ON THAT IF WE FEEL

25  THEY SHOULD.  WE WOULD ARGUE THAT.  SO IT IS MY HOPE THAT THAT

PDF created with pdfFactory trial version www.pdffactory.com

1    NEVER REACHES THE LEVEL OF GOING TO THE COURT, BUT IT'S JUST

2    CONCEPTUALLY -- I THINK MR. MAC DOUGALL UNDERSTANDS IT IS

3    CONCEPTUALLY AN ISSUE THAT PERHAPS HE WILL BRING TO THE COURT.

4    WE WON'T BE BRINGING IT.

5         MR. MAC DOUGALL:  IT'S MORE COMPLICATED THAN

6    MR. HALPERN IS ALLUDING TO.  THERE'S A SET OF REGULATIONS THAT

7    BIND THE CIA.  ANY PRESENT OR FORMER AGENCY EMPLOYEE IS BOUND

8    BY IT.  WHEN WE HAVE TRIED TO REACH OUT TO POTENTIAL WITNESSES

9    WHO WERE FORMER CIA, WE GET A FORM LETTER BACK FROM GENERAL

10   COUNSEL SAYING, "TELL US EVERYTHING YOU WANT TO ASK THEM, AND

11   WE'LL LET YOU KNOW WHETHER WE CAN DO IT."  THAT INFORMATION, I

12   SUSPECT, IF WE WERE EVER FOOLISH ENOUGH TO RESPOND TO ONE OF

13   THOSE LETTERS, WOULD BE FAXED TO THE U.S. ATTORNEY'S OFFICE.

14   THAT'S THE PROBLEM.

15        WE'RE IN A BIZARRE POSITION OF HAVING A CLIENT WHO

16   CAN'T TALK TO US.  WE'LL GET UP TO A CERTAIN POINT, AND HE'LL

17   SAY, "I CAN'T GO ANY FURTHER."  WE APPRECIATE THE COURT'S HELP

18   AND ADVICE ON HOW TO PROCEED WITH THAT.  BUT BEYOND MR. FOGGO,

19   THE CIA IS GOING TO BE A BRICK WALL.

20        MR. HALPERN:  THAT MAY OR MAY NOT BE TRUE.  I DO

21   THINK IT'S COMPLICATED, EVEN MORE COMPLICATED THAN THIS.  THIS

22   IS ONE OF THE REASONS WHY IT'S JUST GOING TO TAKE A LITTLE

23   WHILE TO GET THROUGH THIS.

24        AGAIN, I BELIEVE WE HAVE TO TAKE ALL ISSUES AS THEY

25   COME UP ON A FACT-BY-FACT BASIS.  ONCE MR. MAC DOUGALL HAS TOP

PDF created with pdfFactory trial version www.pdffactory.com

1   SECRET CLEARANCE, MR. FOGGO WILL HAVE THE ABILITY TO TELL JUST

2   ABOUT EVERYTHING.

3          THE COURT:  BUT YOU'RE TELLING ME THAT THERE'S SOME

4   LEVEL BEYOND TOP SECRET?  WHAT IS THAT, LIKE TOP-TOP OR

5   SUPER-TOP?  I DON'T MEAN TO BE FACETIOUS, BUT THAT'S NEWS TO

6   ME.  I THOUGHT TOP SECRET WAS THE TOP SHELF ON SECURITY.

7          MR. HALPERN:  AS I UNDERSTAND IT, YOUR HONOR -- AND

8   AGAIN, PERHAPS EVEN PUTTING LEVELS ON IT IS TOO SIMPLISTIC

9   BECAUSE YOU CAN HAVE COMPARTMENTED INFORMATION THAT MIGHT BE

10  EVEN AT THE SECRET LEVEL.  AND MR. LONDERGAN COULD CERTAINLY

11  HELP YOU ON THIS.

12         SO ALL CLASSIFICATION, YOUR HONOR, IS PREDICATED

13  BOTH UPON THE EFFECT ON NATIONAL SECURITY AS WELL AS THE NEED

14  FOR INDIVIDUALS TO KNOW.  AND THERE IS CERTAIN INFORMATION

15  THAT EVEN PEOPLE WHO HAVE TOP SECRET CLEARANCE, THEY ARE NOT

16  ALLOWED TO POSSESS UNLESS THERE'S AN INDEPENDENT DETERMINATION

17  THAT THEY HAVE A NEED TO KNOW, THAT THEY HAVE A NEED TO BE

18  READY TO THAT COMPARTMENT.

19         AN EXAMPLE COULD BE, YOUR HONOR, ALL INFORMATION

20  HAVING TO DO WITH NUCLEAR PROLIFERATION OF OTHER COUNTRIES.

21  EVEN IF YOU HAVE TOP SECRET CLEARANCE, THEY'RE STILL NOT GOING

22  TO TELL YOU ABOUT THAT UNLESS THERE'S AN INDEPENDENT

23  DETERMINATION BY WHOEVER IS THE CLASSIFYING AUTHORITY; NSA,

24  WHITE HOUSE, CIA.

25         THE COURT:  YOU HAVE A NEED TO KNOW THAT.  I GET

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   THAT.  IT'S STILL TOP SECRET INFORMATION.  IT'S JUST THAT YOU

2   MAY NOT HAVE A NEED TO KNOW BECAUSE YOUR FUNCTION DOESN'T

3   IMPLICATE A NEED FOR THAT.

4           MR. HALPERN:  THAT DECISION MAY HAVE TO BE MADE ON

5   CERTAIN INFORMATION THAT MR. FOGGO HAS.

6           THE COURT:  MR. HALPERN, DON'T YOU THINK THERE'S A

7   CONSTITUTIONAL OVERLAY ON THESE REGULATIONS, THOUGH?  HERE'S A

8   FELLOW CHARGED WITH SERIOUS CRIMINAL OFFENSES.  HE'S GOT A

9   6TH AMENDMENT RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL AND A

10  DUE PROCESS RIGHT TO DEFEND HIMSELF.

11          AND IF THE INFORMATION TRULY IS RELEVANT AND

12  MATERIAL AND HE NEEDS THAT INFORMATION, I CAN'T IMAGINE ANY

13  COURT NOT SAYING THE REGULATIONS HAVE TO GIVE WAY TO THIS

14  FELLOW'S RIGHT TO DEFEND HIMSELF OR THE GOVERNMENT OTHERWISE

15  HAS TO MAKE SOME ELECTION THAT "WELL, WE'LL FOREGO BRINGING

16  THESE CHARGES OR WE'LL GIVE IT UP AT THIS POINT."

17          MR. HALPERN:  EXACTLY RIGHT.  YOU COULD HAVE WRITTEN

18  CIPA BECAUSE I THINK THAT'S THE FRAMEWORK THAT CIPA PROVIDES

19  FOR ALL OF THIS.

20          THE COURT:  THE ONLY PART I'M STRUGGLING WITH IS HOW

21  I WOULD PRESUME TO GET INVOLVED -- LOOK, I'VE NEVER BEEN IN

22  THE CIA.  SO IT'S NOT MY PORTFOLIO TO DECIDE WHO HAS A NEED TO

23  KNOW.

24          HOW WOULD SUCH A HEARING OCCUR?  I MEET PRIVATELY

25  WITH MR. FOGGO AND HE'D SAY TO ME "HERE'S THE INFORMATION THAT

PDF created with pdfFactory trial version www.pdffactory.com

1    I THINK MY COUNSEL NEEDS TO KNOW.  CAN I TELL HIM?"

2              MR. HALPERN:  WHAT YOU HAVE THE RIGHT AND ABILITY

3    AND THE OBLIGATION TO DECIDE, YOUR HONOR, IS WHETHER THE

4    INFORMATION IS RELEVANT AND MATERIAL.  THAT'S WHAT FALLS INTO

5    YOUR BAILIWICK.  IF YOU MAKE THAT FINDING, THAT BY ITS VERY

6    NATURE MEANS THERE'S A NEED TO KNOW.  AND THEN THE GOVERNMENT

7    HAS A CHOICE.  THE COURT HAS A CHOICE.  YOU ORDER US TO GO

8    AHEAD --

9              THE COURT:  I UNDERSTAND ALL THAT.  BUT THE PART

10   THAT I'M HAZY ON AND HAVING SOME DIFFICULTY WITH IS

11   MR. MAC DOUGALL NOW SAYS MR. FOGGO SAYS, "I CAN'T TELL YOU

12   CERTAIN THINGS THAT I THINK ARE IMPORTANT FOR YOU TO KNOW IN

13   ORDER TO DEFEND ME."  THAT RAISES THE QUESTION OF "OKAY.

14   WELL, WHO MAKES THE DECISION ON THAT?"

15             UP UNTIL NOW, IT'S BEEN MY BELIEF THAT THE CIA AND

16   MR. FOGGO MAKE THAT DECISION.  HE TELLS THE CIA "LOOK, I'M IN

17   A FIX HERE.  I'M CHARGED WITH SERIOUS OFFENSES.  I'VE GOT

18   THESE LAWYERS.  THEY NEED TO KNOW THIS, AND I'M GOING TO TELL

19   THEM."

20             YOU'RE SAYING IF THERE'S DISAGREEMENT BETWEEN THE

21   CIA AND MR. FOGGO ON THAT, THAT I RESOLVE IT?

22             MR. HALPERN:  ABSOLUTELY.  THAT'S WHERE YOU HAVE TO

23   MAKE A DECISION WHETHER WHAT MR. FOGGO IS REALLY ASKING FOR IS

24   RELEVANT OR MATERIAL.

25             THE COURT:  EVEN THROUGH HIS OWN COUNSEL?  I

PDF created with pdfFactory trial version www.pdffactory.com

39

1    UNDERSTAND THE OBLIGATION TO MAKE THAT DETERMINATION IF IT'S

2    GOING TO SEE THE LIGHT OF DAY IN OPEN COURT.  YOU'RE SAYING I

3    GET INVOLVED AT A LEVEL THAT I TELL HIM "YES, YOU CAN TELL

4    MR. MAC DOUGALL THIS" OR "NO, YOU CAN'T"?

5         MR. HALPERN:  ABSOLUTELY.

6         THE COURT:  I DON'T KNOW.  I THINK THAT PUTS ME

7    INTO -- I'M SUPPOSED TO BE INDEPENDENT IN THESE PROCEEDINGS,

8    AND HERE I AM IN THE MOST INTIMATE DISCUSSIONS WITH A CRIMINAL

9    DEFENDANT TELLING HIM WHAT TO TELL HIS LAWYER?

10         MR. MAC DOUGALL:  WE'VE RUN THIS TRAP SORT OF

11    HALFWAY WITH THE AGENCY ALREADY.  I DON'T HAVE ANY DOUBT THAT

12    THE LAWYERS AND MY CLIENT WILL GET THE T.S. CLEARANCE IN THE

13    COURSE OF SIX OR EIGHT WEEKS.  THERE AGAIN, SCI'S, SPECIALLY

14    COMPARTMENTED INTELLIGENCE.  AND THERE IS A COUPLE OF THEM

15    THAT WE WILL IMMEDIATELY ASK TO GET INTO.

16         AT THAT POINT, THE AGENCY WILL JUST SAY "YES, YOU

17    MAY" OR "NO, YOU MAY NOT."  IN THE PROCESS OF TELLING US

18    WHETHER WE CAN, THEY'LL WANT DETAIL ON WHY WE WANT TO GO INTO

19    IT.  AT THAT POINT, WE'LL START TO BLEED THE DEFENSE THEORY TO

20    THE CIA.  AT THAT POINT, THE COURT WOULD HAVE TO BE INVOLVED.

21         THE COURT:  MR. MAC DOUGALL, WITHOUT MAKING A CALL,

22    CAN'T I JUST ISSUE AN ORDER TO THE CIA SAYING, "YOU'RE NOT TO

23    REVEAL THIS INFORMATION TO ANYONE, IN PARTICULAR, THE UNITED

24    STATES ATTORNEY THE DEFENSE THEORY INFORMATION"?  WHY CAN'T

25    YOU ORDER THE RESPONSIBLE PERSON MAKING THAT DETERMINATION NOT

PDF created with pdfFactory trial version www.pdffactory.com

40

1   TO DISSEMINATE IT? YOU DON'T HAVE A PROBLEM WITH THAT, DO

2   YOU? WHY WOULD YOU NEED TO KNOW --

3         MR. HALPERN: ABSOLUTELY. THEY MIGHT WANT MY INPUT

4   ON CERTAIN THINGS IN TERMS OF RELEVANCE AND MATERIALITY.

5         THE COURT: THEY DON'T GET THAT. THEY GET MY INPUT

6   ON THAT.

7         MR. HALPERN: TO QUOTE I KNOW ONE OF YOUR HONOR'S

8   PHRASES FROM JUDGE ENRIGHT, I DO THINK WE MAY BE MAKING AN

9   EASY ONE A HARD ONE.

10         NUMBER ONE, THERE ARE THESE COMPARTMENTS. THE

11   GOVERNMENT HAS TOLD DEFENSE COUNSEL WE'RE GOING TO SUPPORT

12   THEM IN GETTING READY FOR THESE COMPARTMENTS IF THEY'RE ALL

13   RELEVANT COMPARTMENTS. FROM OUR POINT OF VIEW, WE'RE

14   CERTAINLY GOING TO ARGUE IT SHOULD BE. THAT WILL TAKE CARE OF

15   THE ISSUE. WE WON'T HAVE TO ADDRESS IT. IF NOT, THEN WE CAN

16   COME UP WITH A BRIEF --

17         THE COURT: LET'S DO THIS, MR. MAC DOUGALL: FIRST,

18   I AGREE WITH MR. HALPERN. LET'S SEE IF IT BECOMES AN ISSUE.

19   IF IT BECOMES AN ISSUE, IT WOULD BE MY INCLINATION TO ISSUE AN

20   ORDER TO THE APPROPRIATE OFFICIAL WHO IS MAKING THE

21   DETERMINATION ABOUT WHETHER FOGGO CAN TELL YOU THESE THINGS

22   THAT -- IF WE GET A PROFFER FROM MR. MAC DOUGALL AS TO WHY HE

23   NEEDS THIS INFORMATION, WE'RE TO CONSIDER THAT ONLY IN

24   INDIVIDUAL DELIBERATIONS. YOU'RE NOT TO SHARE IT IN

25   PARTICULAR WITH THE ASSISTANT U.S. ATTORNEYS OR ANYBODY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    INVOLVED IN THE PROSECUTION OF THIS CASE.  I'LL ISSUE SUCH AN

2    ORDER SO THAT YOU CAN GIVE THEM A LITTLE BIT ABOUT FEAR THAT

3    YOUR THEORIES WILL BE KNOWN.  I THINK THAT WILL SOLVE THE

4    PROBLEM.

5            MR. MAC DOUGALL:  I APPRECIATE THAT.  LET ME JUST

6    POINT OUT THE NEXT STEP.

7            IF I GET TURNED DOWN BY THE CIA -- HAVING BEEN DOWN

8    THIS ROAD BEFORE ON OTHER CASES, I BELIEVE THAT SOME OF THESE

9    REQUESTS WILL SEND THEM INTO ORBIT.  IF DENIED BY THE CIA, IS

10   IT ALL RIGHT FOR ME TO COME BACK TO COURT?

11           THE COURT:  I THINK THAT'S PROBABLY IT.  I THINK AT

12   THAT POINT, THEN, WHAT I WOULD DO IS LOOK AT YOUR PROFFER AND

13   CONSULT WITH MR. LONDERGAN WITH WHOEVER THE OFFICIAL IS AS TO

14   WHAT THE REASONS ARE FOR TURNING THAT REQUEST DOWN.  AND THEN

15   I'LL MAKE A RECORD ON IT AND EITHER UPHOLD THEIR JUDGMENT OR

16   TELL THEM TO GIVE YOU THE INFORMATION.

17           NOW, LET ME GET BACK TO THE ISSUE AT HAND.

18           MR. HALPERN, IT'S A LOT EASIER IF YOU SAY, WITH

19   RESPECT TO NON-CLASSIFIED INFORMATION, "I'M GOING TO GIVE THEM

20   THE WITNESS STATEMENTS AND LET THEM KNOW WHAT OUR THEORY IS

21   AND HOW WE'RE GOING TO PROVE" --

22           MR. HALPERN:  HOW ABOUT IF I SAY WHAT I DID ABOUT

23   20 MINUTES AGO?  LET ME -- I HEAR THE COURT.  LET ME JUST GO

24   BACK AND DISCUSS IT WITH COUNSEL.

25           THE COURT:  YOU WANT TO TABLE THIS, MR. MAC DOUGALL,

PDF created with pdfFactory trial version www.pdffactory.com

1    AS MR. GERAGOS HAS DONE, UNTIL THE 14TH AND SEE IF IT'S A

2    PROBLEM?  I HAVE A FEELING THE GOVERNMENT WILL TURN THIS STUFF

3    OVER TO YOU.

4          MR. MAC DOUGALL:  WE CAN CERTAINLY DO THAT.  I'D

5    JUST ASK THE COURT TO CONSIDER WITHIN THAT HAVING THE

6    GOVERNMENT DISCLOSE THE VARIOUS ACTORS IN THE INDICTMENT.

7          THE COURT:  I CHECKED "YES" BY A NUMBER OF THOSE

8    THINGS.  IT SEEMS TO ME YOU OUGHT TO DO THAT.

9          MR. HALPERN:  IT'S IN DISCOVERY.  WE'RE JUST TRYING

10   TO PROTECT IT FROM THE PUBLIC.

11         THE COURT:  GIVE IT OVER.  DO A PROTECTIVE ORDER IF

12   YOU WANT, AND THEIR QUESTIONS GET ANSWERED, AND THEY CAN BE

13   READY FOR TRIAL AT THE APPROPRIATE TIME.

14         ANYTHING ELSE THAT'S BEFORE ME?

15         MR. GERAGOS:  NO.

16         THE COURT:  THE 14TH, PLEASE FILE ALL YOUR MOTIONS,

17   MR. GRANGER, TO THE EXTENT THAT YOU CAN DO THAT.  MY

18   INCLINATION AT THIS POINT, AS I SAID, IS TO HAVE THE

19   WILKES/MICHAEL CASE PROCEED FIRST.  THE OTHER CASE IS GOING TO

20   BE COMPLICATED WITH EX PARTE MEETINGS WITH BOTH COUNSEL AND

21   THE DEFENDANTS TO TRY TO FLESH OUT WHETHER THE CLASSIFIED

22   INFORMATION IS NEEDED AND WHETHER THAT WILL BE TURNED OVER.

23   THE WILKES/MICHAEL CASE DOESN'T PRESENT THAT.  I'LL GIVE YOU

24   ENOUGH TIME TO PREPARE.

25         MR. GRANGER:  I APPRECIATE THAT.  WITH RESPECT TO

PDF created with pdfFactory trial version www.pdffactory.com

1    SCHEDULING, I WANTED TO MENTION ONE THING.  I KNOW THAT YOUR

2    HONOR WAS KIND ENOUGH TO SAY THAT BEFORE YOU SET THE TRIAL

3    DATE, YOU WERE GOING TO CONSULT WITH COUNSEL ON THEIR

4    SCHEDULES.

5         HOWEVER, YOU'RE OBVIOUSLY GOING TO BE PICKING A

6    POSSIBLE TRIAL DATE BEFORE THEN.  I'LL BE HERE WHEN YOU TELL

7    ME TO BE HERE.  I WANTED TO LET YOU KNOW NOW THAT AS WE SPEAK,

8    I DO HAVE PLANS TO BE OUT OF THE COUNTRY SEPTEMBER 3RD THROUGH

9    THE 10TH.  IF YOU TELL ME TO BE HERE ON THE 3RD, I'LL BE HERE

10   ON THE 3RD.

11        THE COURT:  YOU'LL BE DONE WITH THIS CASE BEFORE

12   SEPTEMBER 3RD.  IF IT GOES TO TRIAL, THE TRIAL WILL COMMENCE

13   BEFORE SEPTEMBER 3RD.

14        HOW LONG IS IT GOING TO TAKE TO PRESENT YOUR

15   CASE-IN-CHIEF IN WILKES/MICHAEL?

16        MR. HALPERN:  ABOUT FOUR WEEKS.

17        THE COURT:  I DON'T THINK IT'S GOING TO TAKE THAT

18   LONG.  COUNT ON ABOUT TWO WEEKS FOR THE GOVERNMENT'S

19   CASE-IN-CHIEF.  I'LL MAKE A NOTE OF THAT, MR. GRANGER.  I

20   WON'T JAM YOU ON THAT.

21        MR. GERAGOS:  THANK YOU.

22        THE COURT:  ARE YOU PREPARED TO FILE SUBSTANTIVE

23   MOTIONS, TOO, ON BEHALF OF MR. FOGGO ON THE 14TH?

24        MR. MAC DOUGALL:  WE ARE.  WE'LL HAVE THOSE FILED.

25                        --OOO--

PDF created with pdfFactory trial version www.pdffactory.com

44

1

2

3          I HEREBY CERTIFY THAT THE TESTIMONY

4          ADDUCED IN THE FOREGOING MATTER IS

5          A TRUE RECORD OF SAID PROCEEDINGS.

6

7          S/EVA OEMICK                    5-10-07

8          EVA OEMICK                      DATE
           OFFICIAL COURT REPORTER
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com