1                        UNITED STATES DISTRICT COURT
                     SOUTHERN DISTRICT OF CALIFORNIA

2

          HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING

3

4   UNITED STATES OF AMERICA,        )
                                )

5                PLAINTIFF,      )  CASE NO. 07CR00329-LAB
                                )       07CR00330-LAB

6       VS.                    )
                                )  SAN DIEGO, CALIFORNIA

7   KYLE DUSTIN FOGGO,  (1)       )  MAY 14, 2007
   BRENT ROGER WILKES, (2)       )  2:00 P.M.

8                                )
   BRENT ROGER WILKES, (1)       )

9   JOHN THOMAS MICHAEL,(2)       )
                                )

10          DEFENDANTS.     )
   ——————————————————————————————————)

11                      REPORTER'S TRANSCRIPT

12

13       07CR00329:    MOTION HEARING (1,2)
                      ARRAIGNMENT (1,2)

14       07CR00330:    MOTION HEARING (1,2)
                      ARRAIGNMENT (1,2)

15

16   APPEARANCES:
   FOR THE GOVERNMENT:        KAREN P. HEWITT, U.S. ATTORNEY
                             BY: PHILLIP L.B. HALPERN, ESQ.

17                              VALERIE CHU, ESQ.
                              JASON A. FORGE, ESQ.

18                         ASSISTANT U.S. ATTORNEYS
                         880 FRONT STREET

19                         SAN DIEGO, CA. 92101

20   FOR DEFENDANT FOGGO:       AKIN GUMP STRAUSS HAUER & FELD
                              BY:  MARK J. MAC DOUGALL, ESQ.

21                            ANDREW J. DOBER, ESQ.
                            PAUL BUTLER, ESQ.

22                       1333 NEW HAMPSHIRE AVE., N.W.
                       WASHINGTON, DC 20036-1564

23

24   FOR DEFENDANT WILKES:      GERAGOS & GERAGOS
                              BY:  MARK J. GERAGOS, ESQ.
                       350 SOUTH GRAND AVENUE, 39TH FL.

25                       LOS ANGELES, CA. 90071

2

1    CONTINUED APPEARANCES:

2    FOR DEFENDANT MICHAEL:        LAW OFFICES OF RAYMOND GRANGER
                                   BY:  RAYMOND R. GRANGER, ESQ.
3                                  757 THIRD AVENUE, 7TH FLOOR
                                   NEW YORK, NEW YORK 10017
4
                                            -AND-
5                                  FRANK AND MILCHEN
                                   BY:  HOWARD B. FRANK, ESQ.
6                                  136 REDWOOD STREET
                                   SAN DIEGO, CA 92103
7

8

9
     COURT REPORTER:              EVA OEMICK
10                                OFFICIAL COURT REPORTER
                                  UNITED STATES COURTHOUSE
11                                940 FRONT STREET, STE. 2190
                                  SAN DIEGO, CA 92101
12                                TEL: (619) 615-3103

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

3

1    **SAN DIEGO, CALIFORNIA - MONDAY, MAY 14, 2007 - 2:00 P.M.**

2            THE COURT:  CALLING NO. 13 ON THE CALENDAR, 07CR320,

3    UNITED STATES OF AMERICA VERSUS KYLE DUSTIN FOGGO AND BRENT

4    ROGER WILKES FOR MOTION HEARING AND ARRAIGNMENT ON THE

5    SUPERSEDING INDICTMENT;

6            NO. 14, 07CR00330, UNITED STATES OF AMERICA VERSUS

7    BRENT ROGER WILES AND JOHN THOMAS MICHAEL ON FOR MOTION

8    HEARING AND ALSO FOR ARRAIGNMENT ON THE SUPERSEDING

9    INDICTMENT.

10           IF COUNSEL COULD PLEASE STATE THEIR APPEARANCES FOR

11   THE RECORD.

12           MR. GERAGOS:  GOOD AFTERNOON, YOUR HONOR.

13           MARK GERAGOS FOR MR. WILKES, WHO'S PRESENT.

14           THE COURT:  GOOD AFTERNOON, MR. GERAGOS.

15           MR. GRANGER:  RAYMOND GRANGER, YOUR HONOR, GOOD

16   MORNING, HERE WITH MR. MICHAEL.

17           THE COURT:  MR. GRANGER, GOOD TO SEE YOU AGAIN.

18           MR. MAC DOUGALL:  GOOD AFTERNOON, YOUR HONOR.

19           MARK MAC DOUGALL FOR DEFENDANT KYLE DUSTIN FOGGO.

20   WITH ME IS MY PARTNER PAUL BUTTNER.  PRO HOC IS PENDING.  AND

21   ANDREW DOBER.

22           THE COURT:  GOOD AFTERNOON.

23           MR. FORGE:  GOOD AFTERNOON, YOUR HONOR.

24           JASON FORGE, PHIL HALPERN, AND VALERIE CHU FOR THE

25   UNITED STATES.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

4

1          THE COURT:  THE FIRST ORDER OF BUSINESS IS THE

2   SUPERSEDING INDICTMENT.

3          IS THERE A SUPERSEDING INDICTMENT THAT'S BEEN

4   RETURNED IN ONE OR BOTH OF THE CASES?

5          THE CLERK:  IN BOTH OF THE CASES.

6          MS. CHU:  YES.  THE GOVERNMENT MAKES A.

7          MS. CHU:  TO REPLACE THE SUPERSEDING INDICTMENT IN

8   07CR0330 WITH ONE THAT CORRECTS A CLERICAL ERROR IN THE ONE

9   THAT WAS ACTUALLY FILED.  THERE WAS AN INADVERTENT CARRIAGE

10  RETURN THAT RESULTED IN DIFFERENT NUMBERING BECAUSE OF THE

11  AUTOMATIC FORMATTING.  WE'VE CORRECTED THAT AND WOULD REQUEST

12  THAT THAT BE THE ONE THAT'S FILED AND THAT THE DEFENDANTS BE

13  ARRAIGNED UPON.

14         THE COURT:  THAT'S SIGNED BY A FOREPERSON OF THE

15  GRAND JURY?

16         MS. CHU:  YOUR HONOR, THE ORIGINAL WAS SIGNED.  THE

17  SUM AND SUBSTANCE ARE EXACTLY THE SAME.  IT SIMPLY CORRECTS A

18  CLERICAL OVERSIGHT.  I BELIEVE BOTH COUNSEL HAVE RECEIVED A

19  COPY OF IT.  I DON'T BELIEVE THERE'S ANY OBJECTION TO --

20         THE COURT:  IT'S SIMPLE ENOUGH, MR. MAC DOUGALL.

21         CAN YOU DO THAT, LEGALLY SPEAKING?  THE GRAND JURY

22  DIDN'T PASS ON THIS ONE WITH THE RIGHT NUMBER ON IT.

23         MR. MAC DOUGALL:  THIS IS THE FIRST I'VE HEARD OF

24  IT.  I WAS HANDED A COPY OF THE INDICTMENT.

25         MR. FORGE:  MR. MAC DOUGALL HAS NO DOG IN THIS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    FIGHT.

2            MS. CHU:  MR. GERAGOS AND MR. --

3            THE COURT:  IT USED TO BE EVEN THESE CLERICAL

4    THINGS, I THOUGHT, HAD TO BE RUN BACK IN THE FRONT OF THE

5    GRAND JURY.

6            IF I'M WRONG ABOUT THAT, MR. FORGE --

7            MR. FORGE:  WE CAN FILE A BRIEF MEMO.  I BELIEVE

8    THERE IS CASE LAW PRETTY CLEARLY ESTABLISHING THE ABILITY OF

9    THE COURT TO ACCEPT A CORRECTED INDICTMENT SUCH AS THIS.

10           THE COURT:  I KNOW I'VE INTERLINEATED ON OTHER

11   CHARGING PAPERS ON STIPULATION, BUT THE INDICTMENT REQUIREMENT

12   IS DIFFERENT.

13           MR. GERAGOS:  LAST TIME I LITIGATED THIS, WHICH IS

14   MANY YEARS, STATE LAW YOU CAN DO THE METHOD BY WHICH THEY WANT

15   TO PROCEED.  FEDERALLY, YOU CANNOT.  THAT'S MY LAST TAKE ON

16   THIS ISSUE.

17           THE COURT:  LET'S ARRAIGN HIM ON THE ONE THAT WAS

18   RETURNED BY THE GRAND JURY UNDERSTANDING THE GOVERNMENT'S

19   POSITION THAT THERE'S A CLERICAL ERROR.

20           IS THIS JUST MR. WILKES OR MR. WILKES AND

21   MR. MICHAEL?

22           MS. CHU:  BOTH DEFENDANTS.

23           MR. GRANGER:  WE RAN OUT OF ROOM TO THE RIGHT.

24           WOULD YOU PREFER WE GO OVER THERE?

25           THE COURT:  I DON'T WANT YOU TO HAVE TO STAND

PDF created with pdfFactory trial version www.pdffactory.com

6

1    THROUGH THE WHOLE HEARING.  EVERYBODY SPEAKS ENGLISH.  PULL

2    THAT CHAIR UP FROM BEHIND THE INTERPRETER'S BENCH.

3              WILL THERE BE ENOUGH CHAIRS, THEN?

4              MR. GRANGER:  YES.

5              THE COURT:  MR. FRANK, YOU DON'T MIND SITTING UP

6    THERE?

7              MR. FRANK:  I WILL SIT WHEREVER YOU WANT ME TO.

8              THE COURT:  MR. WILKES AND MR. MICHAEL, IF YOU'LL

9    STAND, THERE'S A SUPERSEDING INDICTMENT IN YOUR CASE.

10              MADAM CLERK.

11              THE CLERK:  BRENT MICHAEL WILKES, IS THAT YOUR TRUE

12   NAME?

13              DEFENDANT WILKES:  IT IS.

14              THE CLERK:  YOU'RE INFORMED THAT A SUPERSEDING

15   INDICTMENT HAS BEEN FILED CHARGING YOU WITH CONSPIRACY, HONEST

16   SERVICES WIRE FRAUD, BRIBERY OF A PUBLIC OFFICIAL,

17   MONEY-LAUNDERING, AIDING AND ABETTING, AND CRIMINAL

18   FORFEITURE.

19              COUNSEL, HAVE YOU RECEIVED A COPY AND WAIVE FURTHER

20   READING?

21              MR. GERAGOS:  YES.

22              THE CLERK:  JOHN THOMAS MICHAEL, IS THAT YOUR TRUE

23   NAME?

24              DEFENDANT MICHAEL:  YES.

25              THE CLERK:  YOU'RE INFORMED THAT A SUPERSEDING

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   INDICTMENT HAS BEEN FILED CHARGING YOU WITH CONSPIRACY,

2   MONEY-LAUNDERING, AIDING AND ABETTING, AND CRIMINAL

3   FORFEITURE.

4           COUNSEL, HAVE ALSO RECEIVED A COPY AND DO YOU WAIVE

5   FURTHER READING?

6           MR. GRANGER:  YES.

7           THE CLERK:  YOU ARE FURTHER INFORMED THAT YOU HAVE

8   THE RIGHT --

9           MR. FORGE:  I BELIEVE THERE'S ALSO AN ADDITIONAL

10  CHARGE FOR MR. MICHAEL, OBSTRUCTION OF JUSTICE.

11          THE COURT:  YES, THERE WAS.  I THINK IT'S THE LAST

12  COUNT IN THE INDICTMENT.

13          THE CLERK:  OBSTRUCTION OF JUSTICE.

14          COUNSEL, HAVE YOU RECEIVED A COPY AND DO YOU WAIVE

15  FURTHER READING?

16          MR. GERAGOS:  YES.

17          THE CLERK:  EACH OF YOU ARE FURTHER INFORMED THAT

18  YOU HAVE THE RIGHT TO BE REPRESENTED BY COUNSEL IN ALL STAGES

19  OF THE PROCEEDINGS BEFORE THE COURT; YOU HAVE THE RIGHT TO

20  REMAIN SILENT; YOU'RE ENTITLED TO A TRIAL BY JURY; YOU HAVE

21  THE RIGHT TO CONFRONT AND CROSS-EXAMINE ANY WITNESSES WHO

22  TESTIFY AGAINST YOU, AND YOU HAVE THE RIGHT TO HAVE WITNESSES

23  SUBPOENAED TO TESTIFY ON YOUR BEHALF.

24          HOW DO YOU PLEAD TO THE SUPERSEDING INDICTMENT.

25          AS TO MR. WILKES?

PDF created with pdfFactory trial version www.pdffactory.com

8

1          DEFENDANT WILKES:  NOT GUILTY.

2          THE CLERK:  AS TO MR. MICHAEL?

3          DEFENDANT MICHAEL:  NOT GUILTY.

4          THE COURT:  THE COURT ENTERS A NOT GUILTY PLEA ON

5    BEHALF OF BOTH MR. WILKES AND MR. MICHAEL IN THE

6    AFOREMENTIONED INDICTMENT.  ALL OTHER CONDITIONS OF BOND AS TO

7    EACH GENTLEMAN REMAIN THE SAME.  A NOT GUILTY PLEA IS ENTERED

8    AS TO ALL COUNTS AND FOR ALL PURPOSES.

9          MR. MICHAEL, YOU MAY SIT DOWN.

10          I THINK, MR. WILKES, YOU'RE CHARGED IN THE SECOND

11    SUPERSEDING INDICTMENT AS WELL.

12          MADAM CLERK.

13          MR. FOGGO, IF YOU AND MR. MAC DOUGALL WOULD STAND.

14          THE CLERK:  KYLE DUSTIN FOGGO, IS THAT YOUR TRUE

15    NAME?

16          DEFENDANT FOGGO:  YES.

17          THE CLERK:  BRENT MICHAEL WILKES, IS THAT YOUR TRUE

18    NAME?

19          DEFENDANT WILKES:  YES.

20          THE CLERK:  EACH OF YOU ARE INFORMED THAT A

21    SUPERSEDING INDICTMENT HAS BEEN FILED CHARGING YOU WITH

22    CONSPIRACY, HONEST SERVICES WIRE FRAUD, MONEY-LAUNDERING, AND

23    AIDING AND ABETTING.

24          COUNSEL, HAVE YOU EACH RECEIVED A COPY OF THE

25    SUPERSEDING INDICTMENT AND DO YOU WAIVE FURTHER READING?

PDF created with pdfFactory trial version www.pdffactory.com

1        MR. GERAGOS:  ON BEHALF OF MR. WILKES, I HAVE.

2        MR. MAC DOUGALL:  ON BEHALF OF MR. FOGGO, YES.

3        THE CLERK:  EACH OF YOU ARE FURTHER INFORMED THAT

4   YOU HAVE THE RIGHT TO BE REPRESENTED BY COUNSEL AT ALL STAGES

5   OF THE PROCEEDINGS BEFORE THE COURT; YOU HAVE THE RIGHT TO

6   REMAIN SILENT; YOU'RE ENTITLED TO A TRIAL BY JURY; YOU HAVE

7   THE RIGHT TO CONFRONT AND CROSS-EXAMINE ANY WITNESSES WHO

8   TESTIFY AGAINST YOU, AND YOU HAVE THE RIGHT TO HAVE WITNESSES

9   SUBPOENAED TO TESTIFY ON YOUR BEHALF.

10       HOW DO YOU PLEAD TO THE SUPERSEDING INDICTMENT.

11       AS TO MR. FOGGO?

12       DEFENDANT FOGGO:  NOT GUILTY.

13       THE CLERK:  AND AS TO MR. WILKES?

14       DEFENDANT WILKES:  I REMAIN NOT GUILTY.

15       THE COURT:  NOT GUILTY PLEAS ARE ENTERED ON BEHALF

16   OF BOTH DEFENDANTS.  THE SAME TERMS AND CONDITIONS PREVIOUSLY

17   SET APPLY TO THIS NEW INDICTMENT.  THEY'RE REPRESENTED BY

18   COUNSEL ON IT.  AND THE COURT ENTERS A NOT GUILTY PLEA AS TO

19   BOTH GENTLEMEN AS TO ALL CHARGES AND FOR ALL PURPOSES.

20       THANK YOU.

21       I'VE ORGANIZED THIS IN THIS FASHION:  MY INTENTION

22   IS TO GO FORWARD FIRST ON THE REQUEST ON BEHALF OF MR. WILKES

23   TO HAVE AN INVESTIGATION OF THE ALLEGED VIOLATION OF RULE 6,

24   THE LEAKING OF GRAND JURY MATERIAL.

25       MR. MAC DOUGALL HAS ALSO JOINED IN THAT, ALTHOUGH

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    THE RELIEF SOUGHT, I THINK, IS SOUGHT BY MR. WILKES, WHICH IS

2    THE COURT CONDUCT AN INVESTIGATION.  I'VE READ THE PAPERS ON

3    BOTH SIDES.

4         MR. GERAGOS, I THINK YOU PROBABLY HAVE THE LABORING

5    OAR ON THIS, SO I'M HAPPY TO HEAR FROM YOU.

6         MR. GERAGOS:  THIS LAMP OF YOURS IS VERY

7    DISTRACTING.

8         THE COURT:  I'VE BEEN TOLD THAT BEFORE.  AND I'VE

9    CHANGED THE BULB IN ONE OF THOSE FLUORESCENT ONES, AND IT

10   DOESN'T SEEM TO HELP.

11        MR. GERAGOS:  IT'S ACTUALLY WORSE THAN THE LAST

12   TIME.  I NORMALLY GET A HEADACHE WHEN I COME TO FEDERAL COURT.

13        THE COURT:  TRY NOT TO LOOK AT IT.

14        MR. GERAGOS:  I'LL DEFINITELY TRY.  I UNDERSTOOD IT

15   WAS A WAY TO CUT THE LAWYERS OFF SO THEY WOULDN'T TALK SO

16   MUCH.

17        I UNDERSTAND THAT AT THIS POINT IT'S THE

18   GOVERNMENT'S POSITION THAT THEY HAVE NOW REFERRED THIS OUT, SO

19   THERE'S AN INVESTIGATION PENDING.  BESIDES -- WELL, GIVEN KIND

20   OF THE HISTORY OF THIS AND WHAT I BELIEVE ACTUALLY TRANSPIRED,

21   I DON'T REALLY HAVE ANY PROBLEM WITH THE PARTICULAR ENTITY

22   INVESTIGATING THIS.  BECAUSE, AS THE COURT WELL KNOWS, IT'S MY

23   BELIEF THAT WHAT'S TRANSPIRED HERE IS A TURF BATTLE, IF YOU

24   WILL, OR KIND OF A SPITE BATTLE BETWEEN THE U.S. ATTORNEY'S

25   OFFICE HERE IN THIS DISTRICT AND WHAT'S GOING ON IN MAIN

PDF created with pdfFactory trial version www.pdffactory.com

1    JUSTICE OR WHAT'S BEEN GOING ON IN MAIN JUSTICE.

2            SO THAT I DON'T REALLY HAVE A PROBLEM WITH.  IN

3    FACT, I ASKED FOR A DISMISSAL OR, IN THE ALTERNATIVE, AN

4    INVESTIGATION TO GET US TO THE POINT WHERE I THINK A DISMISSAL

5    IS WARRANTED.

6            THE COURT LAST TIME, I THINK, ASKED MR. HALPERN TO

7    HANDICAP IT AND SAID, "LOOK, MR. HALPERN, YOU CAN HANDICAP

8    THIS.  UNLESS IT'S YOU, I'M NOT GOING TO GO DOWN THE ROAD OF A

9    DISMISSAL."  I THINK I INTERJECTED AT THAT POINT OR, IN THE

10   ALTERNATIVE, MS. LAM.

11           IT REMAINS MY BELIEF THAT THESE LEAKS WERE

12   ORCHESTRATED OUT OF THIS U.S. ATTORNEY'S OFFICE.  I SEE

13   NOTHING THAT THE GOVERNMENT HAS FILED WHICH DISSUADES ME FROM

14   THAT.  IN FACT, THE GOVERNMENT, THEIR POSITION IS,

15   INTERESTINGLY ENOUGH, "WELL, YOU DIDN'T NAME THE REPORTERS"

16   AND BASICALLY SAYING, "WELL, TELL US WHO THE REPORTERS ARE."

17           THAT'S ALMOST SILLY.  I'M SUPPOSED TO TELL THEM WHO

18   IT IS THEY LEAKED TO?  THEY ARE THE ONES WHO KNOW WHO THEY

19   LEAKED TO.  WHEN I SAY THAT, I'M NOT ACCUSING ANYONE

20   SPECIFICALLY AT THE TABLE, ALTHOUGH I DO BELIEVE THAT THE LEAK

21   CAME OUT OF THIS OFFICE.

22           WHAT THEY FAILED TO TALK ABOUT IN THEIR RESPONSE IS

23   I SENT A LETTER ON FEBRUARY 1ST.  AND IN THAT LETTER, I TALKED

24   ABOUT TWO SEPARATE INDICTMENTS.  I GOT IT WRONG AS TO THE

25   OTHER ONE.  I PUT THOMAS BECAUSE WHEN THE INFORMATION WAS

PDF created with pdfFactory trial version www.pdffactory.com

12

1    GIVEN TO ME, I WAS NOT FAMILIAR WITH THE CO-DEFENDANT IN THIS

2    AT ALL, NOR WAS MY CLIENT.  WE ASSUMED IT WAS A DIFFERENT

3    THOMAS, AND THAT'S WHAT I PUT IN THE LETTER.

4            HOW IN THE WORLD COULD I HAVE KNOWN OR ANYBODY BUT

5    THE GOVERNMENT HAVE KNOWN AT THAT POINT THAT THERE WERE TWO

6    SEPARATE INDICTMENTS AND SPECIFICALLY TO A GENTLEMAN NAMED

7    THOMAS.

8            SO CLEARLY, THIS CAME OUT OF OR WAS AN OUTGROWTH OF

9    WHAT I CALL OR WHAT THE U.S. SUPREME COURT HAS CALLED THE

10   PROSECUTION TEAM.  AS THIS COURT IS FAMILIAR WITH, THE U.S.

11   SUPREME COURT HAS SAID THAT IT DEEMS EITHER THE AGENTS OR

12   ANYBODY ELSE TO BE PART OF THE TEAM.  THERE'S SANCTIONS, GROSS

13   SANCTIONS, ANY TIME THERE'S A VIOLATION OF DUE PROCESS ON

14   BEHALF OF THE TEAM.

15           SO FOR THEM TO SAY, "WELL, IT'S NOT AS BAD" OR "WE

16   DON'T KNOW" OR "MAYBE WE DIDN'T QUITE UNDERSTAND" AND THEY

17   START TO TRY TO PARSE YOUR WORDS LAST TIME AND BASICALLY

18   RETRACT WHAT THEY SAID LAST TIME, I'M AT A LOSS.

19           I BELIEVE, ALSO, THAT ONE OF THEIR POINTS IS "WELL,

20   LOOK, JUDGE, LOOK, YOUR HONOR, THE WALL STREET JOURNAL

21   ARTICLE, MR. WILKES'S PRIOR LAWYER IS THE ONE WHO CONFIRMED

22   CO-CONSPIRATOR NO. 1."  WELL, THERE IS NO EVIDENCE TO SUPPORT

23   THAT.

24           IN FACT, IN THE ATTACHMENT ON PAGE 1, IT SAYS THE

25   TWO WHO ALLEGEDLY PLAYED THE BIGGEST ROLE OF CO-CONSPIRATORS 1

PDF created with pdfFactory trial version www.pdffactory.com

13

1    AND 2 HAD BEEN CONFIRMED BY JUSTICE DEPARTMENT OFFICIALS AND

2    DEFENSE LAWYERS TO BE MR. WILKES AND MR. WADE.  THAT'S AT THE

3    BOTTOM OF THE PAGE ON THE FILING BY THE GOVERNMENT -- OR

4    ACTUALLY BY OUR FILING AT THE BOTTOM OF THE PAGE.

5           IT WAS JUSTICE DEPARTMENT OFFICIALS WHO HAVE DONE

6    THIS, AND IT'S A CONCERTED CAMPAIGN TO DESTROY MY CLIENT PRIOR

7    TO GETTING HIM INTO THE COURTROOM.

8           THE PROBLEM WITH THEM NOW SAYING "OKAY.  THE WHOLE

9    QUESTION IS MOOT," THE WHOLE QUESTION IS NOT MOOT.  IT IS NOT

10   MOOT IN THIS SENSE.

11          THE COURT:  I AGREE IT'S NOT MOOT.  RULE 6 HAS A

12   SANCTIONS PROVISION, AND THE COURT'S CHARGED WITH DETERMINING

13   WHETHER THERE'S BEEN A VIOLATION.  AND, IF SO, WHETHER THE

14   SANCTION'S APPROPRIATE.

15          BUT MY QUESTION TO YOU IS WHY SHOULDN'T I DEFER, AS

16   HAS BEEN DONE IN MANY CASES, TO THE INVESTIGATION BEING

17   CONDUCTED BY INTERNAL AFFAIRS?

18          MR. GERAGOS:  THE OIG, I BELIEVE, IS WHAT THEY CALL

19   IT NOW.

20          MR. FORGE:  OFFICE OF INSPECTOR GENERAL.

21          THE COURT:  USED TO BE OPR.

22          MR. FORGE:  ACTUALLY, WHAT HAPPENS PROCEDURALLY IS

23   OIG FARMS IT OUT TO ANOTHER U.S. ATTORNEY'S OFFICE, WHO IN

24   THIS CASE WILL MAKE ALL THE --

25          THE COURT:  YOU REPRESENT THAT THAT TOOK PLACE AND

PDF created with pdfFactory trial version www.pdffactory.com

1   THAT A WRITTEN REPORT OF THE FINDINGS WILL BE GENERATED AS A

2   RESULT OF THAT?

3           MR. FORGE:  I DON'T KNOW IF A WRITTEN REPORT WILL BE

4   GENERATED.  BUT THE PROCEDURE HAS BEEN SET IN MOTION, AND THE

5   MATTER HAS BEEN FARMED OUT TO A U.S. ATTORNEY'S OFFICE.

6           THE COURT:  MR. GERAGOS, THAT BEING SO, THE QUESTION

7   I HAVE IS WHY DOESN'T IT MAKE SENSE FOR ME JUST TO DEFER IT TO

8   THE INVESTIGATORS FROM A DIFFERENT OFFICE WHO ARE LOOKING INTO

9   THAT AND REQUIRE THAT A WRITTEN REPORT BE FILED WITH THE COURT

10  SO I CAN TAKE SUCH APPROPRIATE ACTIONS AS IS INDICATED ONCE

11  THAT INVESTIGATION IS COMPLETED?

12          MR. GERAGOS:  I AM PERFECTLY FINE WITH IF THE COURT,

13  AS THE LAST LITTLE CAVEAT THAT YOU JUST DID, INSISTS THAT

14  THERE IS A WRITTEN REPORT.  I'M OKAY WITH DEFERRING TO THEM

15  BECAUSE, AS I WOULD INDICATE, NUMBER ONE -- THERE'S THE ISSUE

16  OF A DISMISSAL, NUMBER ONE.  NUMBER TWO, IF IT TURNS OUT THAT

17  IT'S AGENTS, CLEARLY THAT MATERIAL BECOMES IMPEACHMENT

18  MATERIAL.

19          THE COURT:  I AGREE.

20          MR. GERAGOS:  IN ADDITION TO THAT -- AND I MENTIONED

21  THIS IN THE LETTER.  I DIDN'T GET TO THIS POINT.  I'LL

22  FAST-FORWARD TO IT.

23          IF, IN FACT, ITS AGENTS WHO WERE INVOLVED IN THE

24  TAINTING OF SEARCHES, THEN THERE'S FURTHER MOTIONS THAT HAVE

25  TO BE DONE.  I WOULD ALSO ENCOURAGE -- I DON'T KNOW IF THE

PDF created with pdfFactory trial version www.pdffactory.com

1    COURT WANTS TO GO THIS FAR, BUT I WOULD ASK THAT SOME KIND OF

2    A WRITTEN REPORT OR PRELIMINARY REPORT BE GIVEN WITHIN SOME

3    CERTAIN AMOUNT OF TIME SO THAT WE DON'T LANGUISH.

4            THE COURT:  DO YOU HAVE ANY IDEA -- I ASSUME THAT

5    YOU'RE NOW DIVORCED FROM THE INVESTIGATION THAT'S UNDERWAY.

6    DO YOU HAVE ANY IDEA OF A TIMETABLE?  HAS IT ACTUALLY BEEN

7    ASSIGNED TO ANOTHER U.S. ATTORNEY'S OFFICE?

8            MR. FORGE:  YES, SIR, IT HAS BEEN ASSIGNED TO A U.S.

9    ATTORNEY'S OFFICE.  I DON'T, UNFORTUNATELY, HAVE AN IDEA OF

10   THE TIMETABLE FOR HOW LONG DOES IT TAKE.

11           BUT I WILL POINT OUT THAT OBVIOUSLY NONE OF THIS

12   CHANGES OUR OBLIGATIONS UNDER BRADY, GIGLIO, OR ANY OTHER

13   RULE 16 OBLIGATION.  IF ANYTHING ARISES -- AND TYPICALLY WHAT

14   HAPPENS IN THESE SCENARIOS AND WHAT WE WILL ENDEAVOR TO DO IN

15   THIS SITUATION IS PROVIDE THE U.S. ATTORNEY'S OFFICE THAT HAS

16   RECEIVED THIS MATTER WITH PROSECUTION MEMORANDA, THE

17   SUPERSEDING INDICTMENT, AND WHATEVER OTHER BACKUP INFORMATION

18   THEY NEED ON THE CASE, AND ADVISE THAT OFFICE THAT THEY SHOULD

19   CONSULT WITH THE COURT IF THERE ARE ANY ISSUES THAT THEY COME

20   ACROSS THEY THINK TRIGGER ANY DISCOVERY OBLIGATIONS UNDER

21   RULE 16.  THAT WAY MR. GERAGOS'S CONCERNS CAN BE MET.

22           THE COURT:  THERE'S A TIMELINESS ISSUE, MR. FORGE.

23   AND IT'S MY INTENTION, IF ALL THE MOTIONS ARE DISPOSED OF

24   TODAY, TO SET A TRIAL DATE IN THAT CASE.  I THINK MR. GERAGOS

25   IS RIGHT THAT IF IT TURNS OUT THAT IT'S A WITNESS THAT THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

16

1    GOVERNMENT INTENDS TO CALL, THAT THE WITNESS LEAKED THIS

2    INFORMATION, IT MAY BE INFORMATION THAT OUGHT TO BE GIVEN OVER

3    TO THE DEFENSE IN ADVANCE OF TRIAL.  IT'S IMPEACHMENT

4    MATERIAL.  IT SEEMS TO ME IT WOULD TEND TO SHOW BIAS, IF

5    NOTHING MORE.  I'M A LITTLE CONCERNED ABOUT THE TIMELINESS.

6              ANYTHING ELSE, MR. GERAGOS?

7              MR. GERAGOS:  NO.

8              THE COURT:  MR. MAC DOUGALL, DO YOU HAVE A POSITION

9    ON THIS?  I KNOW YOU'VE ALSO FILED -- YOU DIDN'T ASK FOR

10   SPECIFIC RELIEF.

11             MR. MAC DOUGALL:  YES, YOUR HONOR.  WE FILED A

12   NOTICE OF JOINDER TODAY, AND WE JOIN IN MR. GERAGOS'S MOTION.

13   OUR CONCERN, AS MR. GERAGOS'S, IS THE COURT RETAIN SUPERVISORY

14   AUTHORITY OVER THIS CASE.

15             THE COURT:  I INTEND TO DO THAT.

16             MR. MAC DOUGALL:  FOR OUR OFFICE, WE'RE PREPARED TO

17   COOPERATE WITH THE INSPECTOR GENERAL.  I HAVE EVIDENCE, AS

18   DOES MR. GERAGOS, OF THE LEAK AND WHERE IT CAME FROM AND WHERE

19   ITS CONTENT WAS.

20             THE COURT:  YOU DO?

21             MR. MAC DOUGALL:  YES, SIR.

22             THE COURT:  ANYTHING ELSE, MR. FORGE, ON THAT POINT?

23             MR. FORGE:  NO, YOUR HONOR.  I SHOULD ADD I'M

24   ASSUMING -- YOUR HONOR REFERRED TO A WRITTEN REPORT WE FILED

25   IN COURT -- THAT THAT WILL BE FILED UNDER SEAL.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  IT WILL BE.  MR. FOGGO IN HIS PAPERS

2     CITED IN RE: GRAND JURY PROCEEDING BALLAS, B-A-L-L-A-S, AT 62

3     FED. 3D 1175, A 9TH CIRCUIT CASE FROM 1995.

4          THERE, IN RESPONSE TO THE TYPE OF MOTION THAT'S BEEN

5     BROUGHT HERE FOR THE COURT TO INVESTIGATE ALLEGED LEAKS OF

6     GRAND JURY MATERIAL, THE 9TH CIRCUIT FOUND IT WAS SUFFICIENT

7     IF THE COURT DEFERRED TO A GOVERNMENT INDEPENDENT

8     INVESTIGATION OF THE LEAKS PROVIDED THAT THE RESULTING REPORT

9     BE FILED WITH THE DISTRICT COURT UNDER SEAL.  THAT'S AT PAGE

10    1179.

11          AS I MENTIONED, RULE 6 AUTHORIZES SANCTIONS.

12    RULE 6(E)(3)(G)(7) CHARGES THE COURT WITH THE RESPONSIBILITY

13    OF MAINTAINING GRAND JURY SECRECY.  AS WE ALL KNOW, EVERYONE

14    IS TOLD -- EVERYONE ASSOCIATED WITH THE GRAND JURY PROCESS

15    SAVE WITNESSES, OF COURSE, IS TOLD THAT THESE PROCEEDINGS ARE

16    SECRET.

17          I HAPPEN TO IMPANEL THE GRAND JURIES HERE.  I DON'T

18    KNOW, MR. FORGE, IF YOU'VE BEEN PART OF THAT IMPANELMENT

19    PROCESS.  I THINK YOU HAVE.  BUT ONE OF THE THINGS THAT'S

20    STRESSED IS IT'S A VIOLATION OF LAW FOR GRAND JURORS TO REVEAL

21    ANY OF THE INFORMATION.

22          SO I THINK IT'S IMPORTANT FOR ME IN PARTICULAR, AS A

23    JUDGE CHARGED WITH IMPANELING GRAND JURIES, TO SEE TO IT THAT

24    WE POLICE THAT ADMONITION.  I INTEND TO DO THAT IN THIS CASE.

25          SO THE MOTION IS GRANTED TO THIS EXTENT:  GIVEN THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    GOVERNMENT'S REPRESENTATION THAT THERE IS AN ONGOING

2    INVESTIGATION, THE COURT IS GOING TO ORDER THAT A WRITTEN

3    REPORT OF THE FINDINGS OF THAT INVESTIGATION BE PRESENTED TO

4    ME UNDER SEAL AS SOON AS POSSIBLE.

5           I WOULD LIKE TO TALK TO WHOEVER IS CHARGED WITH THE

6    INVESTIGATION.  GIVEN MR. MAC DOUGALL'S REPRESENTATION TODAY

7    THAT HE HAS SOME SPECIFIC INFORMATION, BELIEVES OR THINKS HE

8    KNOWS WHO MAY BE RESPONSIBLE FOR THIS, MY INTEREST IS IN

9    GETTING TO THE HEART OF THE MATTER AS QUICKLY AS POSSIBLE SO

10   THAT THAT INFORMATION MAY BE AVAILABLE TO THE DEFENDANTS FOR

11   THEM TO USE IT AS THEY SEE FIT.

12          SO I'LL NOT AUTHORIZE AN INDEPENDENT INVESTIGATION.

13   I'M GOING TO RELY ON THE ONE THAT'S ALREADY UNDERWAY SUBJECT

14   TO THE PROVISO THAT I GET A COPY OF THAT REPORT.

15          MR. FORGE:  YOUR HONOR, THERE'S JUST ONE VERY SLIGHT

16   CLARIFICATION I WANT TO MAKE JUST SO WE'RE CLEAR.

17          THE MATTER'S BEEN REFERRED TO ANOTHER U.S.

18   ATTORNEY'S OFFICE.  WHETHER THEY CLASSIFY THAT AS AN

19   INVESTIGATION THAT'S ONGOING RIGHT NOW OR REVIEW FOR

20   INVESTIGATION MAY BE A MATTER OF SEMANTICS WITH THEM.  BUT I

21   WILL GET YOU A POINT OF CONTACT AND HAVE THEM --

22          THE COURT:  THAT MAKES A DIFFERENCE.  IF THERE'S AN

23   ONGOING INVESTIGATION, I'M CONTENT NOT TO DO ANYTHING MORE AT

24   THIS POINT.  I DON'T WANT A SIDESHOW AND A TRIAL WITHIN A

25   TRIAL.

PDF created with pdfFactory trial version www.pdffactory.com

1        IF THERE'S NOT AN INVESTIGATION, THEN, AS I SAID

2    BEFORE AND AS YOU ACKNOWLEDGE, THIS IS A SERIOUS BREACH OF THE

3    RULES.  AND I THINK GIVEN THE FACT THAT AT LEAST

4    MR. GERAGOS -- AND I'M SURE MR. MAC DOUGALL HAS JOINED IN THE

5    COMMENT -- KNOWS WHO WAS RESPONSIBLE FOR THIS AND IT MAY LEAD

6    TO IMPEACHMENT MATERIAL, I THINK BOTH COUNSEL MIGHT WANT TO

7    KNOW THAT BEFORE ANY TRIAL COMMENCES.

8        IF THERE'S NOT AN ONGOING INVESTIGATION, I WANT TO

9    KNOW THAT RIGHT AWAY BECAUSE THAT MAY CHANGE MY ATTITUDE.  I

10   STILL DON'T WANT ANY SIDESHOWS WITH TRIALS WITHIN TRIALS AND

11   INVESTIGATIONS GOING ON.  I'M CONTENT AT THIS POINT TO ASSUME

12   THAT THE GOVERNMENT IS CONCERNED ENOUGH ABOUT THIS THAT OIG IS

13   GOING TO CONDUCT AN INVESTIGATION AS YOU'VE BEEN TOLD.

14       MR. FORGE:  I'LL CLARIFY THAT.

15       IF THE ANSWER I RECEIVE BACK IS "NO, THERE REALLY

16   ISN'T AN INVESTIGATION.  THE MATTER WAS REFERRED TO THAT

17   OFFICE.  THAT OFFICE DOESN'T WARRANT AN INVESTIGATION," I WILL

18   CERTAINLY APPRISE THE COURT AND COUNSEL IMMEDIATELY.

19       THE COURT:  TELL THEM IF THAT'S THEIR ATTITUDE, I

20   VERY MUCH DISAGREE WITH THE CONCLUSION THAT IT DOESN'T WARRANT

21   AN INVESTIGATION.  WE'RE IN A FAIRLY UNIQUE POSTURE HERE WHERE

22   THE GOVERNMENT CONCEDES THAT THERE WAS A VIOLATION OF RULE 6.

23   SOMEBODY DID IT.

24       MR. FORGE:  I DO HAVE TO SAY THAT MY CONCESSION AT

25   THE LAST HEARING WAS BASED ON MR. GERAGOS'S REPRESENTATIONS.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  THE ARTICLES BEAR IT OUT, TOO,

2    MR. FORGE.  I DON'T KNOW IF IT GOES AS FAR AS WHAT'S BEEN

3    REPRESENTED ABOUT LINE BY LINE OF INDICTMENTS.  BUT I'VE

4    LOOKED AT THE ATTACHED EXHIBITS, AND THERE ARE GOVERNMENT

5    OFFICIALS COMMENTING ON THE CONDITION OF ANONYMITY.  AND THE

6    REASON THEY DEMAND THAT, OF COURSE, IS THEY'RE SUBJECT TO

7    BEING HELD IN CONTEMPT FOR DOING EXACTLY WHAT THEY DID.

8          YOU READ THE TEA LEAVES AS I DID; RIGHT?

9          MR. FORGE:  AGAIN, YOUR HONOR, THESE ARE SERIOUS

10   ALLEGATIONS.  I THINK THAT THE INVESTIGATION SHOULD BE ALLOWED

11   TO TAKE ITS COURSE AND DO SO EXPEDITIOUSLY.

12         THE COURT:  I'M GOING TO ASSUME THAT THAT'S

13   UNDERWAY, AND I'M GOING TO REQUIRE THAT IT BE DONE

14   EXPEDITIOUSLY AND THAT I BE GIVEN A REPORT AS SOON AS

15   POSSIBLE.  MAYBE NOT THE COMPLETE REPORT.  BUT IF THE

16   INVESTIGATION CONCLUDES WHO'S RESPONSIBLE, I WANT TO KNOW THAT

17   SOONER THAN LATER.

18         ANYTHING ELSE ON THAT, MR. GERAGOS OR

19   MR. MAC DOUGALL?

20         MR. MAC DOUGALL:  YES, YOUR HONOR.  IF I MAY CLARIFY

21   ONE THING.

22         IT WASN'T MY INTENTION TO SUGGEST I KNEW WHO ON THE

23   GOVERNMENT SIDE WAS RESPONSIBLE FOR THE LEAK.  WHAT I WAS

24   INDICATING WAS THAT WE HAVE EVIDENCE AS TO WHEN THE LEAK

25   OCCURRED AND TO WHICH REPORTER IT WAS GIVEN AND WHAT THEY WERE

PDF created with pdfFactory trial version www.pdffactory.com

1    SAYING.

2              THE COURT:  I MISUNDERSTOOD YOU.  SOMEBODY CAN

3    CERTAINLY FOLLOW UP ON THAT.

4              I'M GOING TO JUMP AROUND HERE A BIT.

5              I HAVE READ AND CONSIDERED THE MOTION FOR SEVERANCE

6    AND TRANSFER OF VENUE TO THE EASTERN DISTRICT OF VIRGINIA

7    FILED ON BEHALF OF MR. FOGGO AND THE GOVERNMENT'S RESPONSE

8    THERETO.  AND THEN LATE LAST WEEK, I RECEIVED A REPLY AS WELL,

9    WHICH I'VE READ AND CONSIDERED.  A PORTION OF THIS HAS BEEN

10   KEPT UNDER SEAL.

11             AND WITHOUT GOING INTO WHAT THE SEALED PART WAS, IT

12   HAD TO DO WITH CONFIDENTIAL MATTERS HAVING TO DO WITH

13   MR. FOGGO AND HIS FAMILY FINANCES.  THAT WAS APPROPRIATE TO

14   SEAL AND TO KEEP SEALED.

15             I NEED A CLARIFICATION BEFORE I HEAR FROM

16   MR. MAC DOUGALL ON THIS.

17             MY UNDERSTANDING, MR. GERAGOS, IS THAT MR. WILKES

18   DOESN'T WANT TO BE TRIED IN THE EASTERN DISTRICT OF VIRGINIA.

19   HE'S NOT JOINING IN THIS MOTION TO TRANSFER VENUE THERE.

20             MR. GERAGOS:  WE DO NOT WANT TO GO TO THE EASTERN

21   DISTRICT OF VIRGINIA.  THAT'S, I GUESS, THE BOTTOM LINE.

22             THE COURT:  IT'S EITHER HERE OR THERE, ACCORDING TO

23   THE MOTION.

24             MR. GERAGOS:  THAT'S CORRECT.

25             THE COURT:  HE WOULD NOT CONSENT TO THE TRANSFER,

PDF created with pdfFactory trial version www.pdffactory.com

22

1    WOULD NOT WAIVE HIS RIGHT SO AS TO KEEP THE CASE TOGETHER IF

2    THAT WERE WARRANTED?

3              MR. GERAGOS:  WELL, IF THE COURT'S INCLINED TO

4    TRANSFER IT --

5              THE COURT:  I DON'T KNOW YET.  I WANT TO HEAR FROM

6    MR. MAC DOUGALL.  BUT I HAD THE IMPRESSION FROM READING THE

7    PAPERS THAT MR. WILKES SAYS, "I'VE LIVED IN SAN DIEGO.  I WANT

8    MY TRIAL HERE.  I'M HAPPY TO STAND TRIAL HERE.  I DON'T WANT

9    TO GO TO THE EASTERN DISTRICT OF VIRGINIA."

10             MR. GERAGOS:  THAT'S CORRECT.

11             THE COURT:  IS THAT YOUR POSITION, MR. WILKES?

12             DEFENDANT WILKES:  YES.

13             THE COURT:  MR. MAC DOUGALL, I'M HAPPY TO HEAR FROM

14   YOU ON BEHALF OF MR. FOGGO.

15             MR. MAC DOUGALL:  THANK YOU, YOUR HONOR.

16             YOUR HONOR, IN ALL THE BRIEFING THAT WAS DONE ON THE

17   MOTION TO CHANGE VENUE, THERE ARE FIVE WORDS IN RULE 21(B)

18   THAT STICK OUT.  I THINK THEY CONTROL EVERYTHING.  "IN THE

19   INTEREST OF JUSTICE."  AND THOSE WORDS LINK WHAT MR. FOGGO IS

20   ASKING FOR TO THE 6TH AMENDMENT AND TO EVERYTHING THAT IT

21   CONTAINS.

22             THE PLATT FACTORS ARE THERE TO ASSIST THE COURT IN

23   WEIGHING WHERE THE INTERESTS OF JUSTICE LIE.  AND, YOUR HONOR,

24   WE BELIEVE ANY FAIR READING OF THOSE FACTORS UNDER THESE

25   CIRCUMSTANCES MILITATE IN FAVOR OF A CHANGE OF VENUE.

PDF created with pdfFactory trial version www.pdffactory.com

1            THIS IS A VIRGINIA CASE, YOUR HONOR.  MR. FOGGO AND

2    HIS FAMILY LIVE IN VIRGINIA.  THE VICTIM, TO THE EXTENT

3    THERE'S ONE ALLEGED, IS THE CIA HEADQUARTERED IN LANGLEY,

4    VIRGINIA.  ALL OF MR. FOGGO'S CHARACTER WITNESSES ARE

5    RESIDENTS IN VIRGINIA.  MOST OF THE FACT WITNESSES, AS THE

6    AFFIDAVITS INDICATED, ARE THERE OR AT OVERSEAS LOCATIONS WITH

7    EAST COAST HOMES.  OUR EXPERT WITNESS, WHO IS A UNIQUELY

8    QUALIFIED INDIVIDUAL, IS RESIDENT IN WASHINGTON, D.C.

9            EVEN WHEN YOU REVIEW THE SUPERSEDING INDICTMENT

10   RETURNED ON FRIDAY, THE OVERWHELMING BALANCE OF OVERT ACTS

11   ALLEGED ARE IN EITHER WASHINGTON OR VIRGINIA.  BY OUR COUNT,

12   THERE ARE A TOTAL OF 30 OVERT ACTS IN VIRGINIA, FIVE IN THE

13   DISTRICT OF COLUMBIA, FIVE IN SAN DIEGO, 14 ARE NEUTRAL IN

14   THAT THEY DON'T SUGGEST A PARTICULAR LOCATION, AND ONE IS

15   OVERSEAS.

16           A TRIAL IN SAN DIEGO IS SOMETHING THAT MR. FOGGO --

17   IT'S A BURDEN THAT MR. FOGGO CAN'T BEAR.  AS THE COURT KNOWS

18   FROM SOME OF THE SEALED MATERIAL, HE AND HIS FAMILY LIVE ON A

19   SMALL GOVERNMENT PENSION.  WIFE, TWO KIDS, RENTED HOUSE.  HE

20   CAN'T AFFORD TO TRAVEL TO PRE-TRIAL HEARINGS.  HE TOOK A

21   6:00 A.M. FLIGHT THIS MORNING THROUGH NEW YORK TO BE

22   ARRAIGNED.  HE WILL TAKE A RED-EYE BACK TONIGHT TO AVOID THE

23   COST OF A HOTEL.

24           THE COURT:  I'M INCLINED TO EXCUSE HIM FROM MOST.

25   BECAUSE THERE WAS AN INDICTMENT THAT HE WAS TO BE ARRAIGNED

PDF created with pdfFactory trial version www.pdffactory.com

24

1   UPON TODAY, THAT MADE A DIFFERENCE.  I WOULDN'T UNNECESSARILY

2   HAVE HIM HERE.

3          MR. FOGGO, IF IT'S YOUR DECISION TO DEFER TO YOUR

4   LAWYERS AT MOTION HEARINGS, PRE-TRIAL HEARINGS, AND LET THEM

5   HANDLE THOSE THINGS, THEN I'M NOT GOING TO UNNECESSARILY DRAG

6   YOU TO SAN DIEGO.  BUT YOU NEEDED TO BE ARRAIGNED TODAY ON THE

7   NEW CHARGE RETURNED BY THE GRAND JURY.  YOU NEEDED TO

8   PERSONALLY ENTER A PLEA.

9          DEFENDANT FOGGO:  THANK YOU, YOUR HONOR.

10          MR. MAC DOUGALL:  I APPRECIATE THAT.  THE POINT I'M

11   MAKING IS THAT MR. FOGGO'S DEFENSE WILL BE IMPAIRED EVEN WITH

12   THE COURT'S GRANT OF THAT CONCESSION BECAUSE WE CAN ADVISE THE

13   CLIENT AND WE CAN ANTICIPATE WHAT'S GOING TO HAPPEN.  BUT OUR

14   ABILITY TO TURN TO A CLIENT AND SAY "WHAT DO YOU THINK?" OR

15   "WHAT ABOUT THAT?" -- AND ONCE WE GET INTO CIPA, THAT'S GOING

16   TO BE A CRITICAL ASPECT OF OUR ABILITY TO DO OUR JOB AND TO

17   DEFEND MR. FOGGO.

18          THE COURT:  LET ME ASK YOU ABOUT THAT,

19   MR. MAC DOUGALL.

20          ARE YOU PLANNING TO MAKE SUCH INSPECTION OF ANY

21   CLASSIFIED MATERIAL THAT YOU'LL MAKE AT OR NEAR YOUR OFFICES,

22   OR ARE YOU HAVING TO TRAVEL IN ORDER TO HAVE ACCESS TO THOSE?

23          MR. MAC DOUGALL:  THE POSITION THE GOVERNMENT'S

24   TAKEN IS THAT ALL INSPECTIONS OF EVIDENCE ARE TO TAKE PLACE IN

25   SAN DIEGO.  AND I CAN WALK FROM MY HOUSE TO CIA HEADQUARTERS

PDF created with pdfFactory trial version www.pdffactory.com

25

1    ON A NICE DAY.  THE IDEA THAT WE HAVE TO COME TO SAN DIEGO --

2    THE GOVERNMENT COULD HAVE HELPED ON THIS.  THEY COULD HAVE

3    OFFERED TO SET UP A SKIFF.  THERE ARE TWO EMPTY SKIFFS IN THE

4    COURTHOUSE IN ALEXANDRIA, VIRGINIA.  THEY HAVEN'T DONE THAT.

5    THAT'S JUST PLACING BURDENS ON A DEFENDANT THAT I THINK

6    RULE 21(B) IS INTENDED TO FOSTER, TO PROTECT.

7            THE COURT:  I UNDERSTAND MR. FOGGO IS REPRESENTED BY

8    PRIVATE COUNSEL.  I ALSO UNDERSTAND THAT YOU'RE SERVING PRO

9    BONO ON THIS CASE.

10           DO I HAVE ANY AUTHORITY TO USE THE RESOURCES OF THE

11   COURT TO HELP HIM HAVE WITNESSES TRAVEL HERE IN THE EVENT THE

12   MOTION IS DENIED, IN YOUR VIEW?

13           MR. MAC DOUGALL:  I THINK YOU DO.  I THINK THE

14   COURT, THROUGH ITS SUPERVISORY AUTHORITY, CAN DIRECT THE

15   RELEASE OF RESOURCES AS THE COURT SEES FIT.

16           THE COURT:  UNDER 3006(A), I THINK I HAVE THE RIGHT

17   TO MAKE PROVISIONAL EXPENDITURES, INCLUDING APPOINTMENT OF

18   COUNSEL AND TRAVEL AUTHORIZATIONS FOR DEFENSE WITNESSES AND

19   ALL.  IF THAT'S ONE OF THE CONCERNS, THAT COULD BE MITIGATED

20   TO A GREAT EXTENT WITH RESPECT TO THESE TEN CHARACTER

21   WITNESSES THAT YOU ENVISION, FOR EXAMPLE.

22           MR. FORGE, WHAT ABOUT MR. MAC DOUGALL'S POINT HERE?

23   WHY ISN'T IT THE CASE THAT THE SECOND SET OF MATERIALS

24   COULDN'T BE SET UP ON A SKIFF SOMEWHERE CLOSE BY SO HE DOESN'T

25   HAVE TO FLY TO SAN DIEGO TO REVIEW THE MATERIALS?

PDF created with pdfFactory trial version www.pdffactory.com

26

1          MR. FORGE:  MR. HALPERN'S GOING TO ADDRESS THAT.

2          MR. HALPERN:  IF I MAY.

3          MR. HALPERN:  THIS IS ONE WHERE THE GOVERNMENT DOES

4    NOT NECESSARILY -- TYPICALLY, THE REVIEWING IS DONE IN THE

5    DISTRICT OF THE TRIAL.  I BELIEVE THAT'S FOR THE EASE OF THE

6    COURT AND THE EASE OF THE COURT SECURITY OFFICER.  THE

7    GOVERNMENT, OF COURSE, SUPPORTS THAT VIEW.  NOT UNTIL THIS

8    HEARING WAS THERE ANY REQUEST MADE TO ME, THAT I'M AWARE, THAT

9    WE SET THEM UP IN ALEXANDRIA, VIRGINIA.

10         I THINK YOU SHOULD DISCUSS IT WITH MR. LONDERGAN TO

11   SEE EXACTLY WHAT IS THE MOST APPROPRIATE AVENUE FOR THE COURT

12   SECURITY OFFICER.  BUT AS FAR AS WE'RE CONCERNED --

13         THE COURT:  MR. LONDERGAN IS BASED IN D.C., TOO.

14         I KNOW YOU FLY AROUND TO DIFFERENT PLACES,

15   MR. LONDERGAN, BUT YOUR HOME BASE IS D.C., IS IT NOT?

16         MR. LONDERGAN:  THE JOB WORKS OUT OF D.C.  I'VE

17   SPENT SIX WEEKS IN CALIFORNIA ON ANOTHER TRIAL.

18         THE COURT:  WHAT ABOUT THE FEASIBILITY OF SETTING UP

19   A SECOND SITE, A SECOND SECURE SITE, FOR THE CONVENIENCE OF

20   COUNSEL SO THAT IN REVIEWING THIS -- AND I ANTICIPATE THAT

21   THERE'S GOING TO BE A LOT OF BACK-AND-FORTH ON THIS CLASSIFIED

22   INFORMATION.  COULD WE SET UP A SECOND SITE AND HAVE A SECOND

23   SET OF MATERIALS THAT MIRRORS THE SET HERE IN SAN DIEGO

24   AVAILABLE FOR MR. MAC DOUGALL AND CO-COUNSEL AND MR. FOGGO TO

25   LOOK AT IN D.C.?

PDF created with pdfFactory trial version www.pdffactory.com

1         MR. LONDERGAN:  THERE ARE COMPLICATIONS WHICH ARISE.

2  ONE IS IF THERE ARE SKIFFS AVAILABLE, SMALL SKIFFS AVAILABLE,

3  IN ALEXANDRIA, VIRGINIA, THOSE SKIFFS TYPICALLY ARE HELD WITH

4  THE CASE AND WITH THE VENUE IN ALEXANDRIA, VIRGINIA.  THE

5  REVIEW OF THE MATERIAL -- THERE ARE A COUPLE OF CD'S WHICH, AS

6  A COURTESY ON A TEMPORARY BASIS, ARE IN D.C., WHICH ONCE

7  COUNSEL HAS ACHIEVED THIS SECURITY CLEARANCE, WHICH SOME OF

8  THEM HAVE, ARE AVAILABLE.

9         THE COURT:  IN D.C.?

10         MR. LONDERGAN:  YES, JUST ON A TEMPORARY BASIS.

11  IT'S NOT DEDICATED SPACE.  WHAT TYPICALLY HAPPENS IS THERE'S A

12  VOLUMINOUS AMOUNT OF MATERIALS TO BE REVIEWED, WHICH RESULTS

13  IN CLASSIFIED FILES.  AND THE HIGHEST SECURITY IS TO HAVE ALL

14  OF THIS DONE IN ONE LOCATION.  THERE IS ALREADY A CURRENT

15  ORDER FOR VENUE AND FILING IN SAN DIEGO.

16         THE COURT:  ALL RIGHT.  GO AHEAD.

17         MR. MAC DOUGALL:  YOUR HONOR, ON THE QUESTION OF

18  CLASSIFIED MATERIALS, THE SUPERSEDING INDICTMENT OPENS UP TWO

19  ENTIRELY NEW AREAS.  AND THE GOVERNMENT'S CONTENTION HAS BEEN

20  "WELL, WE'RE ABLE TO TRY THIS CASE WITH UNCLASSIFIED OR JUST

21  MATERIAL CLASSIFIED SECRETS."  THEY MAY BE ABLE TO PROSECUTE

22  WITH THAT.

23         WHAT WE NEED TO DEFEND OUR CASE IS MUCH BROADER.

24  THE REQUESTS THAT ARE GOING TO BE SUBMITTED WHENEVER THE COURT

25  HEARS THIS CASE ARE GOING TO BE SUBSTANTIAL, AND THEY'RE GOING

PDF created with pdfFactory trial version www.pdffactory.com

28

1    TO REQUIRE SIGNIFICANT RESEARCH AT LANGLEY, AND THEY'RE GOING

2    TO REQUIRE, IF THE COURT SO RULES, THAT THAT INFORMATION AT

3    LEAST BE AVAILABLE FOR THE COURT TO REVIEW AND FOR DEFENSE

4    COUNSEL.

5           WITH REGARD TO THE CONVENIENCE OF THE COURT AND THE

6    EFFICIENCY, WE'RE VERY SENSITIVE TO THAT.  BUT AT THE END OF

7    THE DAY, I DON'T BELIEVE IT'S GOING TO BE PRACTICALLY POSSIBLE

8    TO TRY MR. WILKES AN MR. FOGGO TOGETHER.

9           MR. GERAGOS, AS IS HIS RIGHT, HAS TAKEN THE POSITION

10   THAT HE IS NOT GOING TO UNDERGO A SECURITY BACKGROUND CHECK.

11   IF THAT'S THE CASE -- HE'S CERTAINLY, I THINK, WITHIN HIS

12   RIGHTS TO DO THAT -- I DON'T KNOW HOW YOU PRACTICALLY TRY A

13   CASE WHERE IF I'M CROSS-EXAMINING A WITNESS, I SHOW THE

14   WITNESS A DOCUMENT, IT GOES TO THE BENCH, IT GOES TO THE JURY,

15   MR. WILKES'S COUNSEL CAN'T SEE IT.  SO FROM A PRACTICAL

16   STANDPOINT, ONCE WE REACH THE POINT WHERE IT'S TIME FOR TRIAL,

17   I DON'T KNOW HOW WE PROCEED.

18          THE COURT:  I WOULDN'T ANTICIPATE WE'D GET INTO THAT

19   SITUATION BECAUSE OF THE SECRET PROCEDURES THAT REQUIRE

20   ADVANCE SCREENING OF THE MATERIAL.  I'D THINK ANYTHING AIRED

21   IN OPEN COURT WOULD BE PRE-SCREENED SUCH THAT EVEN IF

22   MR. GERAGOS PERSISTS IN NOT WANTING TO HAVE A BACKGROUND

23   INVESTIGATION, HE'LL BE ABLE TO SEE AND HEAR ANYTHING THAT

24   HAPPENS IN OPEN COURT.

25          THE SANITIZING IS DONE BEFORE THE MATTER HITS THE

PDF created with pdfFactory trial version www.pdffactory.com

1    LIGHT OF THE DAY IN COURT; RIGHT?

2            MR. MAC DOUGALL:  I AGREE.  BUT INVARIABLY, THE

3    ISSUE HAS CERTAINLY REACHED BENCH CONFERENCES.  MR. GERAGOS,

4    UNDER THOSE CIRCUMSTANCES, WOULD HAVE TO ABSENT HIMSELF FROM

5    THE BENCH OR WAIT OUTSIDE.  AGAIN, I DON'T KNOW HOW

6    PRACTICALLY THAT RESULTS IN A TRIAL THAT WOULD NOT HAVE TO BE

7    DONE A SECOND TIME.

8            THE PLATT FACTORS -- AND COURT AFTER COURT HAVE

9    POINTED THIS OUT -- THEY'RE FACT-DRIVEN.  THEY DON'T PERMIT

10   BALD ASSERTIONS.  AND WE'VE DONE THE BEST WE CAN TO PUT FACTS

11   AND PUT EVIDENCE IN FRONT OF THE COURT THAT WOULD ALLOW THE

12   COURT TO FIND THAT THE CHANGE IN VENUE MOTION IS WELL-FOUNDED.

13           THE GOVERNMENT IN RESPONSE HAS GIVEN US NOTHING.

14   THEY'VE FILED A BRIEF THAT ESSENTIALLY SAID, "WE DON'T AGREE."

15   AND, YOUR HONOR, I THINK UNDER THOSE CIRCUMSTANCES, THE FACTS

16   THAT WE PUT IN FRONT OF THE COURT HAVE TO BE ACCEPTED AS TRUE.

17   THEY HAVEN'T BEEN CHALLENGED, AND THEY HAVEN'T BEEN

18   QUESTIONED.  JUST AS THE DEFENSE IS NOT ALLOWED TO MAKE BALD

19   ASSERTIONS, I'D SUGGEST THE GOVERNMENT IS NOT EITHER.

20           THE GOVERNMENT HAS UNLIMITED RESOURCES.  THEY HAVE

21   MANY FINE ASSISTANTS BOTH HERE IN SAN DIEGO AND IN ALEXANDRIA

22   AND NORFOLK.  AS I TOLD MY COLLEAGUE BEFORE WE CAME IN, THE

23   HARDEST PART OF ARGUING THIS MOTION WOULD BE THAT WE'RE ASKING

24   THIS COURT TO ABSENT ITSELF BECAUSE I DO WANT TO TELL YOU NO

25   MATTER HOW YOU RULE, THAT WE HAVE BEEN TREATED -- WE'RE

PDF created with pdfFactory trial version www.pdffactory.com

1    STRANGERS HERE.  WE'VE BEEN TREATED EXTRAORDINARILY WELL BY

2    ALL YOUR STAFF AND YOURSELF.

3         BUT THE FACT IS THAT MR. FOGGO SPENT 27 YEARS

4    SERVING THIS COUNTRY AND FOUR YEARS WITH A CITY.  AND THAT'S

5    THE REASON HE LIVES THE WAY HE LIVES NOW.  HE HAS NO

6    RESOURCES.  WE'RE DOING THE BEST WE CAN.  WE THINK THAT THE

7    CIRCUMSTANCES REQUIRE A CHANGE OF VENUE.

8         THE COURT:  I SENSE, MR. MAC DOUGALL, THAT YOU'RE

9    NOT GOING TO LOSE THESE PROSECUTORS EVEN IF I GRANT THE MOTION

10   TO CHANGE VENUE.

11        I HAVE A FEELING THEY'RE GOING TO GO WITH THE CASE,

12   DON'T YOU?

13        MR. MAC DOUGALL:  THAT WOULD BE FINE WITH US EITHER

14   WAY.

15        THE COURT:  THANK YOU.

16        MR. HALPERN.

17        MR. HALPERN:  YOUR HONOR, I DON'T HAVE ANY QUARREL

18   WITH MR. MAC DOUGALL AS FAR AS THE RULE 21(B) STANDARDS AND

19   THE FACT THAT THE COURT HAS TO SEE WHAT'S IN THE INTEREST OF

20   JUSTICE.

21        I ALSO HAVE NO QUARREL WITH THE FACT THAT FROM HIS

22   POINT OF VIEW, IT CLEARLY IS IN HIS CLIENT'S INTEREST TO HAVE

23   IT IN VIRGINIA.  BUT THE COURT PUT ITS FINGER EXACTLY ON THE

24   PROBLEM.

25        AS LONG AS WE HAVE TWO DEFENDANTS HERE, WE HAVE TO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   LOOK AT THE INTEREST OF EVERY PARTY.  THAT'S EXACTLY WHAT THE

2   CASE LAW SUGGESTS.  EVERY SUPREME COURT CASE THAT HAS TALKED

3   ABOUT THIS SO FAR AND ALL THE OTHER CASES LOOK AT NOT ONLY THE

4   INTERESTS OF THE DEFENDANT, BUT THE INTERESTS OF ALL THE

5   DEFENDANTS, THE INTERESTS OF THE COURT, AND THE INTERESTS OF

6   THE GOVERNMENT.

7   WHEN YOU WEIGH ALL OF THOSE FACTORS, IT'S CLEAR.

8   AND I THINK THIS IS UNCONTROVERTED THAT THE INTERESTS

9   SUGGESTED SHOULD BE IN SAN DIEGO.  WITH DUE DEFERENCE TO

10   MR. MAC DOUGALL AND THE FACT THAT THE GOVERNMENT HASN'T

11   RESPONDED BACK AND JUST BALD ASSERTIONS, THAT'S JUST NOT

12   CORRECT.  WE LOOKED AT EXACTLY WHAT THEY FORWARDED TO THE

13   GOVERNMENT.

14   THE FACT OF THE MATTER IS WE DIDN'T PUT IN A 50-PAGE

15   TRANSCRIPT AND 30 OR 40 PAGES OF EXPEDIA PRINTOUTS.  WE LOOKED

16   AT EXACTLY WHAT IS BEING CHARGED HERE, WHAT'S IN THE

17   INDICTMENT IN THIS CASE.  HE SAYS, LOOKING AT THE OVERT ACTS,

18   THE OVERT ACTS SUPPORT THE FACT THAT THE LOCUS WOULD BE

19   VIRGINIA.

20   AS WE POINTED OUT IN OUR FILING, ALL BUT 13 OF THE

21   44 OVERT ACTS HAVE DIRECT CONNECTION TO SAN DIEGO.  WHEN WE

22   LOOK AT THE SUPERSEDING INDICTMENT, WHICH HAS 101 OVERT ACTS,

23   I BELIEVE, YOUR HONOR.  OVERWHELMINGLY, PERHAPS 75 OR 80

24   PERCENT OF THOSE ARE, IN FACT, DIRECTLY CENTERED IN SAN DIEGO

25   WITH EITHER WIRES GOING TO OR FROM ELECTRONIC COMMUNICATION OR

PDF created with pdfFactory trial version www.pdffactory.com

32

1   THE VERY LOCUS, THE CONSPIRACY, THE MONEY GOING TO SAN DIEGO.

2           AND THAT IS BECAUSE, IN PART AND PARCEL, THE CASE

3   ORIGINATED OUT OF SAN DIEGO.  IT ORIGINATED OUT OF AN

4   AGREEMENT BETWEEN MR. WILKES AND FOGGO THAT WOULD BENEFIT BOTH

5   OF THEM IN SAN DIEGO.  AND THAT'S INESCAPABLE.  INDEED,

6   THROUGH MUCH OF THE CONSPIRACY, MR. FOGGO WASN'T EVEN LOCATED

7   IN VIRGINIA, BUT WAS STATIONED ABROAD.

8           SO WHEN WE LOOK AT ALL OF THE ACTS HE TALKS ABOUT,

9   YOU CAN SEE RIGHT FROM THE INDICTMENT THIS IS A MATTER OF A

10  DECLARATION.  IT'S CLEAR FROM THE DISCOVERY THAT HAS BEEN

11  GIVEN OUT AND IT'S CLEAR FROM THE INDICTMENT, THE ACTUAL

12  LANGUAGE, THAT THE CENTER IS IN SAN DIEGO.

13          NOW, AGAIN, THE COURT WAS CONCERNED AND ASKED

14  MR. GERAGOS A QUESTION.  IT WAS A VERY IMPORTANT QUESTION

15  BECAUSE IF, IN FACT, THE SEVERANCE IS GRANTED, THAT DOES

16  CHANGE SOMEWHAT THE EQUATION.

17          IN MY OPINION, IT DOESN'T SUGGEST AUTOMATICALLY A

18  DIFFERENT RESULT, BUT IT DOES SAY THAT THE COURT HAS TO

19  MEASURE IT DIFFERENTLY.  WE BELIEVE A SEVERANCE IS NOT LIKELY

20  IN THIS CASE.  INDEED, THEY DIDN'T EVEN MAKE A FORMAL MOTION

21  FOR SEVERANCE OTHER THAN USING THE 21(B) REQUIREMENT THAT

22  OBVIOUSLY IF THE COURT TRANSFERS VENUE AS TO ONLY ONE

23  DEFENDANT, IT, IN FACT, WORKS AS SEVERANCE.  THAT'S CLEARLY

24  RIGHT.  WE DON'T QUARREL WITH THAT.  WE DON'T QUARREL WITH THE

25  LAW THAT SUGGESTS THAT.  IT'S SIMPLY A LOGICAL CONCLUSION.

PDF created with pdfFactory trial version www.pdffactory.com

33

1          BUT IF YOU LOOK AT WHETHER MR. FOGGO MERITS A

2    SEVERANCE, WE THINK THE ANSWER TO THAT IS CLEAR, SO CLEAR THEY

3    DIDN'T EVEN BRING A SEPARATE SEVERANCE MOTION, WHICH, IF THEY

4    FEEL IS APPROPRIATE AFTER LOOKING AT THE SUPERSEDING

5    INDICTMENT, THEY CAN BRING.  BUT ON ITS FACE, IT DOESN'T RISE

6    TO A SEVERANCE.  AS LONG AS WE'RE DEALT THE CARDS WE HAVE NOW,

7    IT'S CLEAR THAT THE APPROPRIATE VENUE FOR THIS CASE SHOULD BE

8    IN SAN DIEGO.

9          THE COURT:  THEY TAKE THE POSITION IN THEIR REPLY TO

10   YOUR OPPOSITION THAT A SEVERANCE AS A CONSEQUENCE OF THIS IS

11   NOT A FACTOR FOR ME TO CONSIDER IN EVALUATING PLATT FACTORS IN

12   21(B).

13          DO YOU AGREE WITH THAT?

14          MR. HALPERN:  NO, I DON'T AT ALL.  IN FACT, THEY

15   SAID IN THEIR BRIEF THAT THE GOVERNMENT CITES NO AUTHORITY TO

16   THE CONTRARY.  I DON'T THINK THAT'S TRUE.  I THINK WHEN WE

17   LOOK AT THE CORE PRINCIPLES IN UNITED STATES VERSUS NATIONAL

18   CITY LINE, 334 U.S. 573, UNITED STATES VERSUS JOHNSON, 323

19   U.S. 273, WE SEE SUPREME COURT CASES THAT TALK ABOUT BALANCING

20   THE INCONVENIENCE OF ALL THE PARTIES.

21          AND IF YOU WANT TO SEE A CASE RIGHT UP FRONT WE

22   CITED, UNITED STATES VERSUS ZYLSTRA, Z-Y-L-S-T-R-A, 713 AT 2D,

23   1332 AT 1336, THERE WE SEE A CIRCUIT COURT CASE DIRECTLY

24   LOOKING AT COURT RESOURCES AND LOOKING AT WHAT THE HARDSHIP

25   WOULD BE ON THE COURT IF, IN FACT, A SEVERANCE IS GRANTED AND

PDF created with pdfFactory trial version www.pdffactory.com

34

1    WE HAD TO BURDEN THE COURT SYSTEM WITH HAVING TWO SEPARATE

2    TRIALS.

3         I DISAGREE PROFOUNDLY WITH THE SUGGESTION THAT WE

4    DIDN'T CONSIDER THAT, AND I DISAGREE WITH THE INTERPRETATION

5    OF THE LAW, WHICH ALL OF THE CASES LOOK AT IT AND DO A

6    BALANCING OF INCONVENIENCE, WHICH I MIGHT SAY, YOUR HONOR, IS

7    A VERY SELECT VIEW BECAUSE MOST OF THE CASES THAT EVEN REPORT

8    DECISIONS ARE ONES WHERE A COURT FEELS IT'S WORTHWHILE,

9    BECAUSE A SEVERANCE HAS BEEN GRANTED AND A TRANSFER HAS BEEN

10   GIVEN, TO PUBLISH AN OPINION.

11        MOST OF THE TIME, WE DON'T EVEN HAVE PUBLISHED

12   OPINIONS IN THIS AREA.  BUT YET EVEN IN THOSE SELECT CASES, WE

13   SAY THE COURT'S LOOKING AT THIS BALANCING OF INCONVENIENCE.

14        THE COURT:  THANK YOU.

15        ANYTHING ELSE, MR. MAC DOUGALL?

16        MR. MAC DOUGALL:  JUST A COUPLE, YOUR HONOR.

17        LIKE THE GOVERNMENT'S LAWYERS, ALL OF OUR TIME IS

18   IMPORTANT TO US.  BUT LIKE THE COURT AND LIKE MANY OF MY

19   COLLEAGUES, I SAT AT THAT TABLE FOR A FEW YEARS, TOO.  AND TO

20   QUOTE HYMAN ROTH IN GODFATHER II, "THIS IS THE LIFE WE HAVE

21   CHOSEN."  IF WE DECIDE TO DO THIS FOR A LIVING, AS WE ALL DO,

22   THERE ARE BURDENS THAT ARE PLACED UPON US.  SOMETIMES

23   TRAVELING IS PART OF THAT BURDEN.

24        I'D ASK THE COURT TO CONSIDER U.S. V. FERGUSON,

25   WHICH IS AN EASTERN DISTRICT OF VIRGINIA CASE, WHERE THE

PDF created with pdfFactory trial version www.pdffactory.com

1    GOVERNMENT ASSERTED THAT VENUE WAS PROPER IN VIRGINIA BECAUSE

2    THE SEC FILING SERVER WAS IN VIRGINIA.  AND WHAT JUDGE LEE

3    WROTE WAS AN ELECTRONIC IMPULSE WITHOUT MORE WILL NOT RESULT

4    IN VENUE.

5          AT THAT'S WHAT THE GOVERNMENT'S SAYING.  "WELL,

6    THERE ARE E-MAILS.  THERE ARE WIRE TRANSFERS INTO THIS

7    DISTRICT.  THAT'S ENOUGH."  THAT HAS NOTHING TO DO WITH THE

8    GRAVITY OF THE CASE.  THE GRAVITY OF THE CASE, THE VICTIM OF

9    THE ALLEGED CASE AND EVERYONE PARTICIPATING IN IT, FOR THE

10   MOST PART, RESIDES IN VIRGINIA.  RULE 21(B) ALLOWS THE COURT

11   TO GRANT SEVERANCE WITHOUT A SEPARATE MOTION WHERE A CHANGE OF

12   VENUE IS PROPER.

13         MR. HALPERN:  I JUST DISAGREE AND COULDN'T MORE

14   DISAGREE ON THE FACTS.  WE'RE NOT TALKING ABOUT SIMPLY

15   ELECTRONIC IMPULSES HERE.  IF YOU LOOK AT THE ADDITIONAL OVERT

16   ACTS THAT ARE ADDED, THEY SHOW A SEPARATE SCHEME WHERE

17   MR. FOGGO AND MR. WILKES ATTEMPTED TO GET A CONTRACT WORTH

18   OVER $100 MILLION FROM THE GOVERNMENT THAT'S PART AND PARCEL

19   OF THAT ENTIRE SCHEME, WAS CENTERED IN SAN DIEGO, AND BEGAN IN

20   DECEMBER OF 2004.  AND 90 PERCENT OF IT, ALL BUT FOUR WEEKS OF

21   IT, TOOK PLACE IN THIS DISTRICT.

22         THIS IS THE VERY DISTRICT MR. FOGGO WANTED TO RETURN

23   TO WHEN HE LEFT THE CIA.  THE EVIDENCE IN THE INDICTMENT AND

24   IN TRIAL WILL SHOW THAT HE HAD AN OFFICE RESERVED HERE.  IT'S

25   FAR MORE THAN SIMPLY AN ELECTRONIC IMPULSE.

PDF created with pdfFactory trial version www.pdffactory.com

36

1              THE COURT:  BOTH PARTIES HAVE CITED THE COURT TO THE

2     PLATT CASE, 376 U.S. 43.  I'VE CONSIDERED THE PLATT FACTORS

3     EXTENSIVELY LAST WEEK AND OVER THE WEEKEND REREADING THEM AND

4     RECONSIDERING THE FACTORS IN LIGHT OF THE PROFFERS IN THE

5     DECLARATIONS I'VE RECEIVED.

6              I FIND THE PLATT FACTORS TO BE FAIRLY CLOSELY

7     BALANCED.  IT'S TRUE MR. FOGGO IS LOCATED ON THE EAST COAST,

8     THAT A TRIAL IN THE EASTERN DISTRICT OF VIRGINIA WOULD

9     CERTAINLY BE MORE CONVENIENT FOR HIM.

10             I FIND, GIVEN THE INFORMATION THAT WAS SUBMITTED TO

11    ME UNDER SEAL, THAT HE COULD BETTER AFFORD TO DEFEND HIMSELF

12    AND PUT IN THE TIME WERE THE VENUE OF THE CASE IN THE EASTERN

13    DISTRICT OF VIRGINIA.

14             ON THE NEXT ISSUE, THE LOCATION OF POSSIBLE

15    WITNESSES, THIS IS EVENLY BALANCED.  WHILE MR. FOGGO'S

16    IDENTIFIED WITNESSES THAT WOULD HAVE TO TRAVEL TO THE WEST

17    COAST, SPECIFICALLY CHARACTER WITNESSES WHO HAVE BEEN

18    IDENTIFIED, THE BULK OF THE GOVERNMENT'S WITNESSES ARE HERE.

19    THEY'RE PEOPLE THAT HAVE INVESTIGATED THE CASE WHILE IT WAS

20    BEING LOOKED AT HERE.  THEY'RE AGENTS, LAW ENFORCEMENT.  THEY

21    MAY WELL BE ALSO PEOPLE WITH FINANCIAL INSTITUTIONS, PEOPLE

22    WHO HAVE TO LAY THE FOUNDATION FOR SOME OF THE ALLEGATIONS OR

23    THE PHYSICAL EVIDENCE THAT WAS IMPLICATED BY THE ALLEGATIONS

24    IN THE OVERT ACT.

25             AGAIN, WITH RESPECT TO LOCATION OF THE EVENTS LIKELY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    TO BE AN ISSUE, I FIND THIS EVENLY BALANCED.  IT'S AN EASY

2    THING TO COUNT UP NUMBERS ON OVERT ACTS ON EITHER SIDE.  I

3    LOOK BEYOND THAT NOT JUST QUANTITATIVELY COUNTING UP THE OVERT

4    ACTS IN SAN DIEGO VIS-A-VIS IN WASHINGTON, D.C.  I LOOK

5    QUALITATIVELY ALSO AT WHAT I THOUGHT WAS THE GIST OF THE

6    INDICTMENT AND THE GIST OF THE ACCUSATIONS AGAINST MR. FOGGO.

7    I FIND THOSE TO BE IN BALANCE.

8          MANY OF THE THINGS THAT ARE AT THE HEART OF THE

9    GOVERNMENT'S CASE ARE ALLEGED TO HAVE OCCURRED HERE IN

10   SAN DIEGO.  IF ANYTHING, THAT FACTOR TILTS SLIGHTLY IN FAVOR

11   OF MAINTAINING THE CASE HERE.

12         LOCATION OF THE DOCUMENTS AND RECORDS, THIS FAVORS

13   MR. FOGGO TO BE SURE AT THIS POINT.

14         MR. LONDERGAN, MY HOPE IS THAT WITH RESPECT TO ALL

15   BUT PERHAPS THE MOST CLASSIFIED TOP SECRET MATERIALS, THAT A

16   SECOND SET OF MATERIALS COULD BE GENERATED AND MAINTAINED AT A

17   SKIFF SO IT'S CONVENIENT FOR MR. FOGGO AND HIS COUNSEL TO

18   REVIEW.

19         I KNOW THAT THAT MAYBE HAS NOT BEEN DONE IN OTHER

20   CASES.  I KNOW IT'S BEING DONE ON A TEMPORARY BASIS NOW.  BUT

21   I'M INFORMED BY MR. MAC DOUGALL THAT THERE IS SKIFF SPACE

22   AVAILABLE.  I KNOW THAT THAT'S EARMARKED OR DESIGNATED FOR

23   CASES ARISING IN THE EASTERN DISTRICT OF VIRGINIA.  AND THERE

24   WILL BE A LOT OF THEM, I SUSPECT.

25         BUT UNTIL SUCH TIME THAT THE SPACE IS SPOKEN FOR, I

PDF created with pdfFactory trial version www.pdffactory.com

DON'T UNDERSTAND WHY YOU COULDN'T USE IT SUBJECT TO THE CAVEAT
THAT TRULY CLASSIFIED STUFF THAT THEY DON'T WANT TO MAKE TWO
COPIES OF CAN BE HERE.  WITH RESPECT TO THAT, THEY'LL JUST
HAVE TO TRAVEL HERE.  SO I THINK SOME ACCOMMODATION CAN BE
MADE THERE.

DISRUPTION OF THE DEFENDANT'S BUSINESS UNLESS THE
CASE IS TRANSFERRED OR HIS ABILITY TO SUPPORT HIMSELF AND HIS
FAMILY, MY INTENTION IS TO EXCUSE MR. FOGGO FROM ALL OTHER
MATTERS EXCEPTING THE TRIAL.  IN PARTICULAR, HE CAN BE
AVAILABLE BY TELEPHONIC CONFERENCE.  I ENVISION THAT THERE
WILL BE PROCEEDINGS WHERE I AM IN CAMERA WITH MR. MAC DOUGALL
AND OTHER COUNSEL FOR MR. FOGGO WHERE WE GO OVER CIPA.  I HAVE
A COURT REPORTER WHO HAS UNDERGONE TOP SECRET CLEARANCE.  SHE
CAN BE PARTY TO THOSE PROCEEDINGS IN CHAMBERS.  SHE CAN TAKE
DOWN EVERYTHING THAT'S SAID.  AND MR. FOGGO WILL BE AVAILABLE
BY TELEPHONE.  SO AGAIN, I FIND THAT THAT FACTOR CAN BE
MITIGATED.

NOW, THE QUESTION MIGHT BE "WELL, WAIT A MINUTE.
WHY ARE YOU LOOKING FOR WAYS TO KEEP IT HERE?"  THE REASON IS
I AGREE WITH MR. HALPERN'S POINTS.  SEVERAL OF THESE FACTORS
IMPLICATE THE INTEREST OF JUSTICE OVERALL.  LOOK AT THE
COURT'S DOCKET, FOR EXAMPLE, VERSUS THE EASTERN DISTRICT OF
VIRGINIA.  RELATIVE ACCESSIBILITY OF PLACE AND TRIAL, LOCATION
OF COUNSEL, THEY'RE ALL UNDER THE RUBRIC OF INTEREST OF
JUSTICE.

PDF created with pdfFactory trial version www.pdffactory.com

39

1          WHAT STRIKES ME AS POTENTIALLY A TERRIBLE WASTE

2     WOULD BE TO TRY THIS CASE TWICE ON BOTH COASTS, ONCE ON THE

3     EAST COAST WITH THE SAME EVIDENCE AND ONCE ON THE WEST COAST.

4     I WOULD FEEL DIFFERENTLY ABOUT THIS, MR. MAC DOUGALL, IF

5     MR. WILKES HAD JOINED IN THE MOTION AND SAID "NOTWITHSTANDING

6     THAT I LIVE HERE IN SAN DIEGO AND I WANT A JURY FROM WHERE I

7     LIVE TO TRY MY CASE, I'M WILLING TO GO THERE," I WOULD FEEL

8     DIFFERENTLY ABOUT IT THEN.  THEN I THINK THE BALANCE OF

9     EQUITIES WOULD TILT TOWARDS MOVING THE CASE THERE.

10          BUT THAT'S NOT HIS POSITION.  AND THE EFFECT OF

11     GRANTING THIS MOTION IS, IN EFFECT, A GRANT OF SEVERANCE AND

12     TO REQUIRE THE GOVERNMENT TO TRY THIS CASE TWICE ON TWO

13     DIFFERENT COASTS WITH WHAT I ASSUME WILL BE ESSENTIALLY THE

14     SAME EVIDENCE.  AND I THINK THAT RAISES LOGISTICAL CONCERNS IN

15     ITS OWN RIGHT.  WHICH TRIAL GOES FIRST, MR. WILKES OR

16     MR. FOGGO?  IF I START -- I ANTICIPATE THAT IF WE GO FIRST

17     WITH MR. WILKES HERE, WERE I TO GO DOWN THAT PATH, THAT YOU

18     WOULD WANT TO BE HERE FOR MOST OF THAT TRIAL ANYWAY.  AND

19     COUNSEL WOULD.  MAYBE MR. FOGGO WOULD WANT TO BE HERE.  BUT

20     CERTAINLY YOU WOULD.  AS A MATTER OF PREPARATION, YOU'D WANT

21     TO HEAR HOW THESE WITNESSES ARE COMING ACROSS AND MAKE YOUR

22     OWN NOTES.

23          SO I DON'T KNOW THAT I CAN AVOID THE VERY CONCERN

24     THAT SEEMS TO BE AT THE HEART OF THE 21(B) MOTION, WHICH IS TO

25     TRY TO SAVE SOME MONEY, SAVE SOME RESOURCES, AND MAKE IT MORE

PDF created with pdfFactory trial version www.pdffactory.com

40

1    CONVENIENT FOR HIM.  BECAUSE IN THE END, THERE WOULD STILL BE

2    A TRIAL HERE.

3              EXPENSE TO THE PARTIES, I'VE LOOKED AGAIN AT

4    3006(A).  I THINK THAT CAN BE MITIGATED AS WELL.  HE HASN'T

5    FILLED OUT A FINANCIAL DECLARATION UNDER OATH WITH ME.  I HAVE

6    DECLARATIONS THAT ATTEST TO HIS FINANCIAL CONDITION.  IF YOU

7    WANT TO MAKE AN EX PARTE APPLICATION AND FILL OUT A FINANCIAL

8    DECLARATION UNDER OATH, I'LL CONSIDER AT LEAST FUNDING THE

9    TRANSPORTATION OF WITNESSES HERE FOR THE DEFENSE UNDER

10   3006(A).  I MAKE NO HARD-AND-FAST PROMISE AT THIS POINT, BUT

11   I'LL LOOK AT THE FINANCIAL INFORMATION.  IF IT SEEMS TO ME

12   THAT IT'S WARRANTED, THEN THE COURT CAN MITIGATE THE COST OF

13   THAT EXPENSE BEING BORNE BY MR. FOGGO OR INDEED BY THE

14   WITNESSES THEMSELVES.  SO I DO FIND THAT THERE'S A WORK-AROUND

15   FOR THAT FACTOR.

16             THE LOCATION OF COUNSEL, YOU SAID IT BEST.  THIS IS

17   THE JOB THAT YOU'VE CHOSEN, MR. MAC DOUGALL.  I'M NOT GOING TO

18   PIN YOU DOWN, BUT I SAW YOU AT LEAST NODDING UNDERSTANDINGLY

19   WHEN I SAID AS A GOOD TRIAL LAWYER, YOU'RE PROBABLY GOING TO

20   WANT TO BE HERE.  THIS CASE IS LIKELY TO GO BEFORE THE OTHER

21   ONE WERE I TO GRANT A SEVERANCE, AND YOU'D BE HERE ANYWAY.

22   YOU'D BE HERE TAKING NOTES AND WATCHING AND PREPARING FOR

23   MR. FOGGO'S DEFENSE IN A SEPARATE TRIAL.

24             I HAVE THE STATISTICS ON THE DOCKET CONDITIONS OF

25   EACH DISTRICT INVOLVED.  THEY ARE VERY, VERY CLOSE.  AT THE

PDF created with pdfFactory trial version www.pdffactory.com

41

1    END OF THE DAY, I JUST CAN'T FIND THAT IT'S IN THE INTEREST OF

2    JUSTICE TO SEVER THIS CASE AND TO HAVE SEPARATE TRIALS OF THE

3    SAME MATTER ON ALTERNATIVE COASTS, EAST AND WEST.  SO SUBJECT

4    TO THE MITIGATIONS THAT I'VE SUGGESTED AND INTEND TO TAKE, THE

5    MOTION IS DENIED.  THE TRIAL WILL PROCEED HERE.

6            IF YOU WANT TO FILE AN AFFIDAVIT UNDER SEAL, GIVE ME

7    A FINANCIAL AFFIDAVIT, THEN I'LL BEGIN CONSIDERING THAT.  IF

8    MR. FOGGO WANTS TO WAIVE HIS PRESENCE IN ADDITIONAL HEARINGS,

9    THEN ARRANGEMENTS FOR CIPA REVIEW CAN BE DONE TELEPHONICALLY

10   WITH HIM.  HE MAY HAVE TO HAVE SOME SPECIAL PLACE TO GET ON

11   THE PHONE TO TALK ABOUT THIS.  I DON'T FORECLOSE THAT.  BUT AT

12   LEAST HE WOULDN'T HAVE TO FLY OUT AT 6:00 IN THE MORNING TO BE

13   HERE FOR A HEARING.

14           WITH THOSE PROVISOS, THE MOTION IS DENIED.

15           MR. MAC DOUGALL:  THANK YOU, YOUR HONOR.

16           THE COURT:  ONE OTHER THING.  I NEGLECTED TO MENTION

17   THIS, BUT THIS ALSO INFORMED MY THINKING.

18           MR. HALPERN POINTS OUT THERE WAS NOT AN ALTERNATIVE

19   BASIS FOR SEVERANCE ARGUED IN THIS CASE.  I DID CONSIDER THAT,

20   TOO.  IF THERE'S SOME OTHER REASON THAT THIS CASE WOULD

21   OTHERWISE BE SEVERED, THAT WOULD MAKE IT EASY.  BUT I HAVEN'T

22   SEEN IT YET.  I'M NOT FORECLOSING THAT THERE MIGHT BE A MOTION

23   FOR SEVERANCE AT SOME POINT.  THAT WOULD CHANGE THE EQUATION,

24   CERTAINLY.  IF MR. FOGGO'S CASE WERE TO BE SEVERED FROM

25   MR. WILKES, THEN I WOULD RECONSIDER IT.  SO LET ME MODIFY MY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

42

1    RULING.  IT'S DENIED WITHOUT PREJUDICE.

2              MR. GERAGOS, WE'RE GOING TO TURN TO WHETHER YOU WANT

3    TO BE EVALUATED BY THE FBI AND HAVE A TOP SECRET CLEARANCE.

4              MR. GERAGOS:  THE COURT HAS ALREADY ANTICIPATED WHEN

5    IT SAID WITHOUT PREJUDICE AS TO MR. MAC DOUGALL'S MOTION

6    BECAUSE I THINK CLEARLY THERE WILL BE A MOTION, A SEVERANCE

7    MOTION, PRECISELY BECAUSE OF THE DISPARATE POSITIONS OF

8    MR. FOGGO AND MR. WILKES.  I WENT BACK AS I WAS COMING DOWN ON

9    THE TRAIN TODAY AND READ THE TRANSCRIPT FROM THE FIRST HEARING

10   HERE, AND MR. -- I HOPE I PRONOUNCE THIS CORRECT -- BHANDARI

11   WAS ADDRESSING THE COURT.  AND IN THE TRANSCRIPT AT PAGE 6, HE

12   SAID, "NOW WE THINK THAT THE TRIAL CAN PROCEED ENTIRELY USING

13   UNCLASSIFIED INFORMATION."  THAT WAS THE REPRESENTATION THAT

14   WAS MADE TO THIS COURT.

15             THAT WAS, BY THE WAY, AT THE SAME TIME THAT I WAS

16   SAYING BASED ON THE INDICTMENTS IN THE FIRST, I DID NOT THINK

17   THAT IT WAS FACTUALLY TOO COMPLEX TO RUSH TO TRIAL ON THE ONE,

18   BUT THAT I THOUGHT ON THE INDICTMENT INVOLVING MR. FOGGO, THAT

19   BASED ON WHAT I SAW AND BASED ON THE FACT THAT THEY SAID THEY

20   CAN PROCEED WITH UNCLASSIFIED INFORMATION, THAT WE CAN GO

21   FORWARD.

22             I STILL AM MAINTAINING THE POSITION I AM NOT GOING

23   TO, ABSENT TYING ME DOWN AND DOING SOMETHING ELSE, I DO NOT

24   PLAN TO UNDERGO ANY KIND OF A PROCESS BY WHICH MY ADVERSARY IN

25   AN ADVERSARIAL SYSTEM IS GOING TO DETERMINE WHETHER OR NOT I

PDF created with pdfFactory trial version www.pdffactory.com

43

1    CAN REPRESENT MY CLIENT.  THERE'S ONLY ONE BODY THAT CAN

2    DETERMINE WHETHER I REPRESENT MY CLIENT, AND THAT'S THE

3    CALIFORNIA SUPREME COURT.  AND AS LONG AS I'M IN GOOD STANDING

4    WITH THE CALIFORNIA SUPREME COURT, PERIOD, END OF STORY.  THEY

5    DON'T HAVE THE ABILITY TO SAY "YES, YOU CAN" OR "NO, YOU

6    CAN'T."

7            THEY ALSO ARE TAKING THE POSITION THAT I MUST SEE

8    THIS OR THAT MY CLIENT MUST WAIVE MY OWN COMPETENCY BY NOT

9    GOING TO GET THAT INFORMATION.  MR. FORGE, I BELIEVE,

10   INDICATED EARLIER TODAY IN REGARDS TO THE OTHER MOTION HAVING

11   TO DO WITH THE LEAKS NOTWITHSTANDING ANYTHING THAT THEY DO --

12   I THINK HIS QUOTE WAS NOTWITHSTANDING ANYTHING THAT'S TURNED

13   UP BY THE OTHER U.S. ATTORNEY'S OFFICE OR WHOEVER IT IS THAT

14   DOES THE INVESTIGATION, THEY STILL HAVE THEIR BRADY AND GIGLIO

15   OBLIGATIONS.  THAT SOUNDS FAMILIAR BECAUSE THAT'S WHAT I WAS

16   SAYING THE LAST TIME WE WERE HERE.

17           IF THEY WANT TO WADE THROUGH THREE TERABYTES OR

18   WHATEVER IT IS OF USELESS INFORMATION THAT THEY CLAIM IS

19   CLASSIFIED OR TOP SECRET, THAT'S FINE AND DANDY.  JUST GIVE ME

20   WHATEVER IS APPARENTLY BRADY OR GIGLIO.

21           BASED ON THEIR INDICTMENT, BASED ON EVEN THE

22   SUPERSEDING INDICTMENT, I BELIEVE THAT WE CAN GO FORWARD,

23   MR. WILKES AND I, SUBJECT TO A COUPLE OF OTHER -- TO THE TRIAL

24   SCHEDULE, WITH THAT CASE RELATIVELY QUICKLY WHEREAS I DO NOT

25   BELIEVE -- THAT'S WHY I COME FULL CIRCLE WHEN YOU SAID DENIED

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

44

1    WITHOUT PREJUDICE.  I DON'T BELIEVE THAT MR. MAC DOUGALL IS IN

2    A POSITION TO DO SO.  WE ARE AT COMPLETE OPPOSITE ENDS OF THE

3    SPECTRUM.

4         MR. WILKES -- APPARENTLY, IT WAS GOOD ENOUGH FOR THE

5    GOVERNMENT TO AWARD HIM HUNDREDS OF MILLIONS OF DOLLARS IN

6    CONTRACTS WITHOUT A SECURITY CLEARANCE.  BUT IF YOU WANT TO GO

7    TO TRIAL, YOUR LAWYER HAS GOT TO GET A SECURITY CLEARANCE.

8    THERE'S SOMETHING THAT'S ABSURD ABOUT THAT.

9         THE IDEA THAT SOMEHOW I'M SUPPOSED TO GO AND DELAY

10   THAT PORTION OF THAT INDICTMENT WHILE WE GO THROUGH ALL OF THE

11   CIPA AND ALL THIS OTHER NONSENSE -- I CALL IT NONSENSE

12   RESPECTIVELY.  I UNDERSTAND THAT THE GOVERNMENT'S POSITION IS

13   "LOOK, YOU KNOW, THERE ISN'T ANY OTHER COURT THAT'S EVER

14   DECLARED THIS UNCONSTITUTIONAL."  THAT IS CORRECT.  IN LOOKING

15   AT THE ARGUMENTS, I DO NOT BELIEVE THAT ANYBODY HAS RAISED

16   PRECISELY THE SAME ARGUMENTS THAT WE HAVE RAISED HERE.

17        THE COURT:  REALLY?  IT SEEMED TO TRACK THE

18   ARGUMENTS THAT WERE MADE IN THE NGUYEN HO LEE CASE.  I WENT

19   OVER THAT AGAIN OVER THE WEEKEND.  IT SEEMS TO ME THAT THE

20   DISTRICT JUDGE IN THAT CASE ANSWERED ALL OF THE ARGUMENTS THAT

21   ARE MADE BY YOU ON BEHALF OF MR. WILKES WITH RESPECT TO

22   SECTION 5 AND SECTION 6 OF CIPA DUE PROCESS.

23        LET ME TELL YOU WHERE I'M AT.  I DON'T THINK I HAVE

24   ANY AUTHORITY TO ORDER YOU TO GO THROUGH A CLEARANCE THAT YOU

25   DON'T INTEND TO GO THROUGH.  I SUPPOSE I HAVE AUTHORITY TO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

45

1    FIND THAT YOU HAVE A CONFLICT BECAUSE YOU WON'T GO THROUGH IT

2    AND TO REMOVE YOU, BUT I LOOKED AT THE WHEAT CASE OVER THE

3    WEEKEND AND LAST WEEK.

4            I, FRANKLY, DON'T THINK THIS IS AT ALL CLOSE TO

5    WHEAT WHERE THE APPEARANCE -- FROM A PUBLIC STANDPOINT, THAT

6    THE APPEARANCE OF JUSTICE WAS BEING COMPROMISED.

7            THE PERSON, IT SEEMS TO ME -- IF THERE'S GOING TO BE

8    ANY DAMAGE DONE FROM YOUR REFUSAL TO UNDERGO THE SECURITY

9    CLEARANCE AND THEREBY NOT GET THE CLASSIFIED INFORMATION, THE

10   DAMAGE IS DONE TO MR. WILKES.  IF HE'S CONTENT -- AND I WANT

11   TO TALK TO HIM PERSONALLY ABOUT THIS.  BUT IF HE'S CONTENT AND

12   HE FEELS THAT RELYING ON YOUR INFORMATION THAT YOU CAN DEFEND

13   HIM ON THIS CHARGE WITHOUT REGARD TO THAT INFORMATION, THEN

14   I'M NOT IN A POSITION TO DECLARE THAT THERE'S SOME KIND OF

15   CONFLICT THAT WOULD CAUSE YOU TO BE OFF THE CASE, MR. GERAGOS.

16           BUT I DO THINK -- I THINK MR. FORGE POINTED THIS OUT

17   IN HIS PAPERS.  THIS IS A WAIVER THAT BORDERS ON WAIVING SOME

18   FUNDAMENTAL RIGHTS ON MR. WILKES'S PART.  MR. MAC DOUGALL

19   BROUGHT UP A SCENARIO THAT MAY OCCUR.  IT MAY COME UP IN THE

20   COURSE OF THE TRIAL THAT SOME CLARIFICATION IS NECESSARY AS TO

21   CLASSIFIED MATERIAL.  AND YOU -- NEITHER YOU NOR HE COULD BE A

22   PARTY TO THAT CONVERSATION JUST AS YOU'LL NOT BE A PARTY TO

23   THE CONVERSATIONS I HAVE WITH MR. MAC DOUGALL AND OTHER

24   COUNSEL FOR MR. FOGGO.

25           BUT I WANT TO MAKE SURE THAT MR. WILKES HAS A FULL

PDF created with pdfFactory trial version www.pdffactory.com

46

1    UNDERSTANDING OF THAT, THAT HE'S DISCUSSED IT FULLY WITH YOU,

2    AND THAT HE BUYS ONTO THOSE CONSEQUENCES.  IT SEEMS TO ME THE

3    CONSEQUENCES ARE THESE:  IF YOU DON'T HAVE TO UNDERGO A

4    SECURITY CLEARANCE -- I'M LOATHED TO IMPOSE THAT ON SOMEBODY

5    ANYWAY.  THAT DOESN'T SEEM LIKE SOMETHING THAT ANY AGENT OF

6    THE UNITED STATES GOVERNMENT IN ANY BRANCH OUGHT TO BE DOING

7    TO SOMEBODY.  THAT'S SOMETHING THAT MAYBE COMMUNIST BLOCK

8    NATIONS DO TO PEOPLE.  SO I'M NOT --

9         MR. GERAGOS:  THAT'S THE SAME REACTION THAT I HAD.

10        THE COURT:  I'M NOT ONBOARD ON THAT.

11        BUT, AT THE SAME TIME, THERE'S A CONSEQUENCE.  THE

12   CONSEQUENCE IS YOU DON'T GET THE CLASSIFIED INFORMATION, AND

13   YOU DON'T GET TO REFER TO THE CLASSIFIED INFORMATION, YOU

14   DON'T, HOWEVER YOU MAY HAVE LEARNED IT.  BECAUSE AT THE END OF

15   THE DAY, THESE CIPA PROTECTIONS ARE REALLY DOUBLE-EDGED

16   SWORDS.  AND ONE OF THE THINGS THEY'RE DESIGNED TO PREVENT IS

17   THE DISSEMINATION OF INFORMATION THAT'S CONSIDERED CLASSIFIED

18   IN OPEN COURT.  AND REGARDLESS OF WHERE YOU OR MR. WILKES MAY

19   HAVE LEARNED IT, I CAN'T HAVE THAT HAPPENING.

20        SO IT'S NOT GOING TO BE BARRING THE DOOR AS TO

21   EVERYTHING YOU CAN GET INTO.  THERE MAY BE INSTANCES WHERE I'M

22   GOING TO FORBID YOU FROM GETTING INTO SOMETHING IF THERE'S AN

23   OBJECTION AND IT TURNS OUT TO BE CLASSIFIED INFORMATION.  AND

24   I DON'T THINK I CAN KNOW THAT UNTIL THE TIME.  I THINK I MAY

25   HEAR AN OBJECTION.  THE GOVERNMENT IS GOING TO HAVE TO BE ON

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    THEIR TOES AT THE TIME.

2          MY INCLINATION IS INSOFAR AS YOUR MOTION SAYS "YOU

3    CAN'T FORCE ME TO UNDERGO THE SECURITY CLEARANCE," I AGREE

4    WITH.  I GRANT THE MOTION.  I THINK SOME INQUIRY OF MR. WILKES

5    IS IN ORDER TO MAKE SURE THAT HE, AS A NON-LAWYER, UNDERSTANDS

6    ALL OF THE CONSEQUENCES OF THAT DECISION.

7          BUT I'VE LOOKED AT THE PROVISIONS OF CIPA.  AND AS

8    YOU ACKNOWLEDGE, NO COURT HAS FOUND IT TO BE UNCONSTITUTIONAL.

9    I DON'T FIND THAT THE MINIMAL RESPONSIBILITY THAT YOU HAVE IS

10   UNCONSTITUTIONAL OR WOULD RENDER THOSE EITHER ON THEIR FACE OR

11   AS APPLIED TO MR. WILKES UNCONSTITUTIONAL.

12         I'M PREPARED TO MAKE FURTHER FINDINGS ON THAT.  I'VE

13   LOOKED AT IT.  I'VE RECONSIDERED THE ARGUMENTS.  THE GREAT

14   WEIGHT OF THE AUTHORITY, OF COURSE, IS IN FAVOR OF FINDING

15   BOTH SECTION 5 AND 6, WHICH ARE THE TWO SECTIONS IMPLICATED

16   HERE, CONSTITUTIONAL.

17         AND THE DESCRIPTION.  ALL YOU'RE CALLED UPON TO DO

18   IF YOU WENT THROUGH THIS PROCEDURE IS TO GIVE ME A BRIEF

19   EXPLANATION OF WHAT MATERIAL YOU WANT AND WHY IT'S RELEVANT.

20   YOU DON'T HAVE TO TELL ME WHETHER MR. WILKES IS GOING TO

21   TESTIFY OR FROM WHICH WITNESS YOU INTEND TO ELICIT IT OR HOW

22   YOU INTEND TO USE IT.  MAYBE YOU NEED TO TELL ME THAT.  YOU

23   CERTAINLY DON'T NEED TO TELL THE GOVERNMENT THAT.  ALL THEY

24   HAVE IS THE NAKED INFORMATION THAT YOU'RE ASKING FOR.  IT

25   WOULD BE LEFT FOR THEM TO TRY TO FIGURE IT OUT.

PDF created with pdfFactory trial version www.pdffactory.com

48

1        IN THAT REGARD, I THINK WHAT'S AT ISSUE HERE IS NOT

2   MUCH DIFFERENT -- THIS ISN'T LIKE THE BROOKS CASE.  THIS IS

3   MORE LIKE TAYLOR VERSUS ILLINOIS AND LIKE THE WILLIAMS

4   CASE WHERE THERE'S A NOTICE OF ALIBI.  FEDERAL CODE, OF

5   COURSE, IS REPLETE WITH INSTANCES WHERE A DEFENDANT HAS TO

6   REVEAL SOMETHING ABOUT HIS DEFENSE IN ORDER TO AVAIL HIMSELF

7   OF CERTAIN DEFENSES.  NOTICE OF ALIBI.  THERE'S RECIPROCAL

8   DISCOVERY OBLIGATIONS.

9        AND IT SEEMS TO ME THAT, IF ANYTHING, THIS

10  REQUIREMENT THAT YOU BRIEFLY DESCRIBE, THE RELEVANCY OF THIS

11  IS PROBABLY MORE BENIGN THAN WHAT YOU HAVE TO DO IN OTHER

12  INSTANCES TO MOUNT CERTAIN OTHER DEFENSES.  SO I DON'T FIND A

13  CONSTITUTIONAL PROBLEM WITH IT.  I'LL BE MORE SPECIFIC IN MY

14  FINDINGS.

15       DO YOU HAVE ANY OBJECTION TO ME MAKING INQUIRY OF

16  MR. WILKES ABOUT THE LIKELY CONSEQUENCES OF YOU NOT GOING

17  THROUGH THIS --

18       MR. GERAGOS:  I DON'T HAVE ANY OBJECTION TO YOU

19  MAKING AN INQUIRY AS TO WHETHER OR NOT HE'S DISCUSSED IT.  I

20  WOULD HAVE AN OBJECTION AS TO ANYTHING THAT'S IN THE FORM OF A

21  WAIVER OF ANY KIND; WHETHER HE'S DISCUSSED IT, WHETHER IT'S

22  KNOWING, WHETHER HE'S GOING FORWARD.  BUT I DON'T WANT IT TO

23  BE CONSTRUED AS SOME USE OF A WAIVER BECAUSE THEN I THINK THAT

24  INTRUDES ON THE ATTORNEY-CLIENT RELATIONSHIP.

25       THE COURT:  I WANT TO MAKE SURE THAT HE UNDERSTANDS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

49

1   WHAT THE CONSEQUENCE IS OF YOU CHOOSING NOT TO GO THROUGH A

2   SECURITY CLEARANCE AND THE FACT THAT THAT IS GOING TO PREVENT

3   HIM FROM HAVING CERTAIN INFORMATION AVAILABLE TO YOU AND TO

4   HIM.

5          MR. GERAGOS:  I UNDERSTAND THAT.  I THINK JUST IN

6   FINAL, BASED UPON THAT, IF THE COURT DOES WHAT IT'S

7   TENTATIVELY AGREED TO DO, THEN I WOULD ORALLY AT LEAST NOTICE

8   THAT WE WILL DO A MOTION FOR SEVERANCE BASED UPON THAT AND

9   WHAT I BELIEVE IS THE COMPLETELY DISPARATE SITUATIONS THAT WE

10  ARE IN AS OPPOSED TO MR. FOGGO.

11         THE COURT:  THERE IS NOTHING THAT FORECLOSES YOU

12  FROM BRINGING THAT.

13         MR. WILKES, LET ME TURN MY ATTENTION TO YOU.  YOU'VE

14  DISCUSSED THIS MATTER WITH MR. GERAGOS.

15         DEFENDANT WILKES:  I HAVE.

16         THE COURT:  SO YOU HAVE AN UNDERSTANDING.  THIS

17  STATUTE IS DESIGNED TO PREVENT THE DISSEMINATION OF CLASSIFIED

18  MATERIAL.  AND ORDINARILY, SOMEONE TO WHOM THAT MATERIAL IS

19  GIVEN OVER HAS TO GO THROUGH A SECURITY CLEARANCE, AND THEN

20  THERE ARE RULES.  YOU'VE HEARD ABOUT THE SKIFF AND ALL THE

21  SECURITY MEASURES THAT ARE TAKEN THAT INDEED MY STAFF IS

22  UNDERGOING, BACKGROUND CHECKS, SO THAT THEY CAN HAVE THE

23  APPROPRIATE CLEARANCES SO THAT THEY CAN BE PARTY TO THIS.

24         HERE'S THE CONSEQUENCE OF MR. GERAGOS NOT GOING

25  THROUGH THIS:  YOU DON'T GET THE INFORMATION.  I'M NOT GOING

PDF created with pdfFactory trial version www.pdffactory.com

1   TO TURN IT OVER TO YOU.  AND IF YOU INDEPENDENTLY HAVE ACCESS

2   TO SOME OF THAT INFORMATION OR HAVE IN THE PAST, MR. GERAGOS

3   MIGHT BE FORECLOSED AT TRIAL FROM GETTING INTO IT IF THERE'S

4   AN OBJECTION FROM THE GOVERNMENT THAT THIS IS CLASSIFIED.  AND

5   THAT'S GOING TO CUT OFF CERTAIN LINES OF DEFENSE TO YOU AND

6   THAT MR. GERAGOS MAY WANT TO PURSUE, BUT CAN'T.

7           I DON'T KNOW IF YOU WANT TO CALL IT A WAIVER, BUT I

8   WANT YOU TO TELL ME WHETHER YOU UNDERSTAND THAT'S THE

9   CONSEQUENCE OF MR. GERAGOS'S AND YOUR DECISION THAT HE NOT

10  UNDERGO A BACKGROUND CHECK.

11          DEFENDANT WILKES:  I UNDERSTAND.  I'M NOT AGREEING

12  TO A WAIVER AT THIS POINT.  I DO UNDERSTAND THE IMPLICATIONS.

13  I DO UNDERSTAND WHAT CLASSIFIED DATA IS AND HOW IT'S

14  DISSEMINATED.  I, TOO, HAVE HAD EMPLOYEES WITH CLEARANCES.

15  I'VE HAD SKIFFS IN MY FACILITIES.  I'M AWARE OF IT.  HAVING

16  SAID THAT, WITH ALL THESE CLASSIFIED EMPLOYEES AND SKIFFS, I

17  HAVE NEVER HAD A SINGLE PAGE OF CLASSIFIED INFORMATION IN ANY

18  OF MY FACILITIES.

19          THE COURT:  HERE IT'S ANTICIPATED THERE IS GOING TO

20  BE CLASSIFIED INFORMATION.  FROM EVERYTHING I KNOW -- AND I

21  HAVEN'T SEEN A PIECE OF IT EITHER.  BUT FROM EVERYTHING I

22  KNOW, THE GOVERNMENT AND I THINK MR. FOGGO, AT LEAST,

23  ANTICIPATE THAT SOME OF THAT INFORMATION IS OR MAY BE RELEVANT

24  TO THE DEFENSE AGAINST THE CHARGES HERE.  AND YOU WILL NOT GET

25  THAT INFORMATION.  YOU'LL BE FOREGOING RECEIPT OF THAT

PDF created with pdfFactory trial version www.pdffactory.com

51

1    INFORMATION FROM THE UNITED STATES BECAUSE YOU'RE NOT GOING

2    THROUGH THE CIPA PROCEDURE.

3             DO YOU UNDERSTAND THAT?

4             DEFENDANT WILKES:  YES.

5             MR. GERAGOS:  MAY I ADD THAT TO THE EXTENT, HOWEVER,

6    THAT IT REMAINS GIGLIO OR BRADY, I DO NOT THINK THAT CIPA

7    TRUMPS THAT.

8             THE COURT:  I AGREE WITH YOU.  THEIR OBLIGATIONS

9    REMAIN UNDER BRADY AND GIGLIO.  WE'RE TALKING ABOUT

10   INFORMATION THAT THEY HAVE SOME DISCRETION TO TURN OVER OR NOT

11   THAT HAPPENS TO BE CLASSIFIED THAT WOULD BE SUBJECT TO THESE

12   PROCEDURES.  THAT'S WHAT WE'RE TALKING ABOUT.

13            AND MR. GERAGOS, I'M GOING TO MAKE IT VERY CLEAR.

14   YOU'RE NOT AND MR. WILKES IS NOT, BY ANSWERING THESE

15   QUESTIONS, WAIVING ANY ASSERTION THAT YOU'VE MADE REGARDING

16   THE CONSTITUTIONALITY OF THESE PROVISIONS.  MY POINT IS I WANT

17   TO MAKE SURE MR. WILKES UNDERSTANDS THAT THERE WILL BE OR MAY

18   BE CONSEQUENCES TO THE DECISION, THAT YOU WON'T BE GETTING

19   FULL INFORMATION THAT YOU MIGHT OTHERWISE GET FROM THE UNITED

20   STATES.

21            IT COULD HAPPEN, MR. WILKES, THAT SOME OF THIS

22   STUFF -- ALTHOUGH I KNOW YOU THINK YOU KNOW IT, SOME OF THIS

23   STUFF THAT MAY COME UP YOU MAY NOT HAVE ANTICIPATED.  IT MAY

24   CATCH YOU BY SURPRISE, AND THAT MAY BE DETRIMENTAL TO YOU.

25            DO YOU UNDERSTAND THAT THAT'S ONE OF THE

PDF created with pdfFactory trial version www.pdffactory.com

52

1    POSSIBILITIES HERE?

2              DEFENDANT WILKES:  YES, I UNDERSTAND EXACTLY THAT.

3    I THINK THERE'S A REVERSE SIDE OF THAT AS WELL THAT I PREFER

4    NOT TO DISCUSS HERE.

5              THE COURT:  THAT'S FINE.  YOU DON'T NEED TO TELL ME

6    WHAT YOU'RE THINKING, JUST THAT YOU UNDERSTAND THAT THAT'S

7    WHAT THE CONSEQUENCES ARE.

8              MR. FORGE, IS THERE ANOTHER INQUIRY THAT YOU THINK I

9    NEED TO MAKE WITH MR. WILKES, OR MS. CHU?

10             MS. CHU:  IF I MAY, YOUR HONOR.

11             THE GOVERNMENT DOES NOT AT ALL WANT TO INFRINGE UPON

12   MR. WILKES'S RIGHT TO COUNSEL.  HE CERTAINLY HAS A RIGHT TO

13   THE ASSISTANCE OF COUNSEL.  BUT I WOULD SUBMIT THAT HE DOESN'T

14   HAVE A RIGHT TO ESSENTIALLY WHAT WOULD BE INEFFECTIVE

15   ASSISTANCE OF COUNSEL.  THE GOVERNMENT HAS GRAVE CONCERNS

16   ABOUT THAT IN THIS CASE.

17             THE COURT:  HERE'S THE PROBLEM I HAVE:  THE POWER OR

18   DISCRETION OF THE COURT TO INTERVENE AND ESSENTIALLY TAKE

19   MR. GERAGOS OFF THIS CASE, AS I UNDERSTAND, IS LIMITED TO

20   THOSE INSTANCES WHERE THERE WOULD BE AN APPEARANCE OF

21   INJUSTICE TO THE PUBLIC AT LARGE.

22             THAT WAS THE CASE IN WHEAT.  THE GUY WANTED

23   MR. IREDALE AS HIS COUNSEL.  HE DIDN'T CARE, BUT THE COURT

24   DETERMINED THAT IT JUST LOOKED BAD.  HERE I DON'T THINK THE

25   GENERAL INTEREST OR APPEARANCE OF JUSTICE IS IMPLICATED.  IT

PDF created with pdfFactory trial version www.pdffactory.com

1    MAY BE A BAD DEAL FOR MR. WILKES, BUT HE'S ACKNOWLEDGED THAT

2    HE UNDERSTANDS THAT THERE MAY BE SOME CONSEQUENCES, IT MAY BE

3    A BAD DEAL.

4              AND WHAT HE'S TELLING ME AND THE POSITION I HAVE

5    FROM MR. WILKES AND MR. GERAGOS IS I'M WILLING TO ACCEPT THAT

6    "I WANT MR. GERAGOS DEFENDING ME." AND I DON'T SEE, MS. CHU,

7    HOW THAT OTHERWISE DETRACTS FROM THE GENERAL APPEARANCE OF

8    JUSTICE HERE. THEY SEEM VERY CONFIDENT TO ME THAT THEY KNOW

9    HOW THEY'RE GOING TO DEFEND THIS CASE AND THAT IT ISN'T

10   NECESSARILY DEPENDENT UPON THE RECEIPT OF CERTAIN CLASSIFIED

11   INFORMATION.

12             SO I'M NOT IN A POSITION WHERE I CAN SAY, "WELL,

13   NECESSARILY, MR. GERAGOS IS GOING TO RENDER INCOMPETENT

14   REPRESENTATION." I DON'T THINK THAT'S THE CASE HERE.

15             MS. CHU: THE APPROPRIATE INQUIRY WOULD BE

16   WHETHER -- YOUR HONOR, I THINK IT ESPECIALLY IS A WAIVER OF

17   THE RIGHT TO PROCEED WITH COUNSEL WHO WOULD HAVE CLEARANCE.

18   THAT WAIVER HAS TO BE KNOWING, INTELLIGENT, AND VOLUNTARY.

19             IF HE DOESN'T KNOW WHAT HE IS ACTUALLY GIVING UP

20   BECAUSE HE HASN'T HAD AN OPPORTUNITY TO REVIEW THAT TO

21   DETERMINE WHETHER OR NOT IT'S SOMETHING MATERIAL TO THE

22   DEFENSE, THEN, YOUR HONOR, THE WAIVER WOULD BE DIFFICULT TO --

23             THE COURT: IT WOULD BE IMPOSSIBLE. THERE'S A

24   PROBLEM WITH WHAT YOU SAY. IF I REQUIRE THEM TO KNOW WHAT THE

25   INFORMATION IS BEFORE HE DECIDES WHETHER HE WANTS TO WAIVE IT,

PDF created with pdfFactory trial version www.pdffactory.com

54

1    THEN MR. GERAGOS IS NECESSARILY OFF THE CASE.  SO I CAN'T DO

2    THAT.

3          HE'S GOT A PRETTY GOOD IDEA.  YOU'VE TOLD HIM YOU'VE

4    GOT AMMUNITION THAT'S CLASSIFIED AND YOU INTEND TO SHOOT WITH

5    IT.  HE SAYS, "FIRE AWAY.  I'M READY TO DEFEND.  I DON'T NEED

6    TO KNOW IN ADVANCE WHAT IT IS."

7          MS. CHU:  THAT'S WHY WE PROPOSED THE PROCEDURES

8    OUTLINE IN OUR PAPERS IN TERMS OF HAVING THE COURT REVIEW SOME

9    OF THIS INFORMATION.  IF THERE'S SIGNIFICANT RIGHTS, THEN HE'S

10   GIVING UP THE OPPORTUNITY TO LATER CLAIM THAT HE SHOULD HAVE

11   HAD MORE INFORMATION.

12         THE COURT:  TELL ME WHERE IT GOES.  I LOOK AT IT AND

13   I SAY, "THIS LOOKS LIKE PRETTY POTENT STUFF.  I'D BETTER,"

14   WHAT, "GO OVER IT WITH MR. WILKES"?  I CAN'T DO THAT.  I DON'T

15   KNOW WHERE THAT LEADS.  IF IT'S CLASSIFIED AND HIS LAWYER

16   HASN'T AGREED TO A PROCEDURE WHERE HE CAN HAVE ACCESS TO

17   CLASSIFIED INFORMATION, HOW DO I SHARE IT WITH MR. WILKES?

18         AND I WOULDN'T BRING HIM IN WITHOUT HIS COUNSEL

19   BEING PRESENT.  I'M SURE MR. GERAGOS WOULD OBJECT.  HE DOESN'T

20   WANT A MEETING WITH ME AND HAVING ME TRY TO TALK HIM OUT OF

21   MR. GERAGOS'S --

22         MR. CHU:  CERTAINLY, YOUR HONOR, HE CAN RETAIN

23   COUNSEL OF HIS CHOICE, BUT THAT RIGHT IS LIMITED.  IF IT'S

24   GOING TO BE ESSENTIAL BECAUSE YOUR HONOR FINDS THAT THE

25   INFORMATION IS, IN FACT, MATERIAL, THAT IT'S SOMETHING THAT HE

PDF created with pdfFactory trial version www.pdffactory.com

1   SHOULD KNOW AND IT'S IMPORTANT TO HIS DEFENSE, THEN I THINK WE

2   HAVE A PROBLEM THERE THAT COUNSEL OF HIS CHOICE MAY NOT BE

3   EFFECTIVE FOR HIM.

4           THE COURT:  MS. CHU, LET ME STOP YOU THERE.  THAT'S

5   A POINT WORTH FURTHER DISCUSSION.

6           MR. GERAGOS REPRESENTED EARLY ON, AND I THINK HE

7   CONFIRMED IT TODAY, THAT HE THINKS HE KNOWS A LOT OF THE

8   INFORMATION THAT IS OSTENSIBLY CLASSIFIED.  HE MAY BE WRONG ON

9   THAT, BUT HE THINKS HE KNOWS IT ALREADY.

10          HOW DO I PROBE THAT WITH MR. WILKES OR MR. GERAGOS?

11  I SUPPOSE I COULD HINT AROUND AND SEE IF THEY HAD AN

12  UNDERSTANDING LOOK WHEN I SAID THINGS.  I DON'T KNOW.  I DON'T

13  KNOW HOW WE COULD GET INTO IT.

14          MS. CHU:  YOUR HONOR, I DON'T THINK THE PROBING

15  WOULD BE AS TO WHAT MR. GERAGOS KNOWS OR DOESN'T KNOW OR WHAT

16  CLASSIFIED INFORMATION HAS ALREADY GOTTEN TO HIM.  THE

17  PROCEDURE THE GOVERNMENT PROPOSED WAS TO LAY OUT FOR THE COURT

18  THE CLASSIFIED INFORMATION THAT WE'VE DESIGNATED AS

19  APPROPRIATELY PRODUCED IN DISCOVERY, WHICH, BY DEFINITION, BY

20  THE FACT THAT WE'RE PRODUCING IT, THE GOVERNMENT THINKS COULD

21  BE POSSIBLY MATERIAL TO THE DEFENSE.

22          YOUR HONOR HAS BECOME FAMILIAR WITH THE SUPERSEDING

23  INDICTMENT, WHICH DOES CHARGE AS SOME OF THE ACTS THEREIN

24  DISCLOSURE -- INAPPROPRIATE DISCLOSURE OF CLASSIFIED

25  INFORMATION.  IT'S CLEAR THAT CLASSIFIED INFORMATION MAY

PDF created with pdfFactory trial version www.pdffactory.com

1    BECOME AT ISSUE HERE.  SO THE PROCEDURE --

2           THE COURT:  WHAT'S STEP 2?  YOU SHOW IT TO ME, AND I

3    MAKE A JUDGMENT ON WHETHER I THINK IT'S REALLY IMPORTANT TO

4    THE DEFENSE.  AND WHAT'S STEP 2?

5           MS. CHU:  THAT'S THE CASE.  THERE IS THE CASES --

6    THERE IS INFORMATION THAT'S MATERIAL TO THE DEFENSE.  AND IT

7    WOULD SEEM TO BE INEFFECTIVE IF THAT DEFENDANT DOESN'T HAVE

8    ACCESS TO THAT MATERIAL.

9           THE COURT:  HOW DO I DETERMINE WHETHER THEY ALREADY

10   KNOW IT?  MR. GERAGOS HAS SAID IN THE PAST THAT "SOME OF THIS

11   IS THINGS THAT THE GOVERNMENT DOESN'T THINK WE KNOW.  WE

12   ALREADY KNOW."  HOW DO I MAKE THAT DETERMINATION?

13          MR. GERAGOS:  I WOULD LIKE TO INTERJECT.  I MAY BE

14   MISSING SOMETHING.

15          IF IT'S MATERIAL TO THE DEFENSE, I'M INTERPRETING IT

16   AS BRADY.  IF IT'S BRADY, THEY HAVE TO TURN IT OVER.  IF IT'S

17   NOT MATERIAL TO THE DEFENSE, MEANING IT'S NOT BRADY, AND THEY

18   THINK IT'S KRYPTONITE AND THEY'RE GOING TO PUT IT IN FRONT OF

19   THE JURY, IF THE JURY GETS IT, I GET IT.  SO EITHER WAY, IF

20   IT'S SOMETHING THAT'S RELEVANT, IT'S EITHER HELPFUL TO ME AND

21   THEY HAVE TO TURN IT OVER OR IT'S HARMFUL TO ME AND THEY'RE

22   GOING TO PUT IT IN FRONT OF THE JURY.

23          THE COURT:  IT'S BROADER THAN THAT, MR. GERAGOS.

24   THEY HAVE TO TURN OVER MATERIAL EVIDENCE ON HOW THEY'RE GOING

25   TO PROVE THEIR CASE AND ESSENTIALLY GIVE YOU AND MR. WILKES A

PDF created with pdfFactory trial version www.pdffactory.com

1    ROAD MAP.  AND I THINK WHAT MS. CHU IS SAYING IS SOME OF THIS

2    FALLS INTO THAT CATEGORY WHERE YOU'RE GOING TO BE CAUGHT A

3    LITTLE BIT OFF GUARD, SHE THINKS.  NOW, I DON'T KNOW HOW SHE

4    KNOWS THAT, AND I DON'T KNOW WHAT TO MAKE OF IT.

5            MR. GERAGOS:  I'VE PRACTICED IN DISTRICTS WHERE YOU

6    DON'T GET THE MATERIAL UNTIL AFTER DIRECT.  IT'S CERTAINLY NOT

7    GOING TO -- ANYTHING THAT THEY PLAN ON BRINGING IN HERE AND

8    PUTTING IN FRONT OF THE JURY I'M GOING TO GET IN THE DISTRICTS

9    WHERE THEY HAVE STRICT COMPLIANCE WITH THE ACT.

10           SO IT'S NO DIFFERENT.  THAT'S WHY I DON'T KNOW WHAT

11   THEIR PROTESTATION IS.  IF THEY'VE GOT IT, THEN BRING IT ON.

12           THE COURT:  YOU'RE GOING TO GET SOME FORM OF IT, BUT

13   YOU MAY NOT HAVE IT IN ITS ENTIRE CONTEXT.  WE BOTH KNOW THAT.

14   THEY MAY USE THE FIRST PARAGRAPH OF A REPORT.  AND YOU MAY

15   SAY, "WAIT A MINUTE.  I'VE SEEN THE WHOLE THING.  THE

16   FOLLOWING THREE PARAGRAPHS REALLY INFORM AND CHANGE THE

17   MEANING OF THAT."  YOU'RE NOT GOING TO HAVE THAT OPPORTUNITY

18   HERE BECAUSE THE DOCUMENT'S NOT GOING TO BE HANDED OVER TO YOU

19   IF IT'S DETERMINED TO BE CLASSIFIED.  CERTAINLY, YOU CAN GO

20   WITH WHAT THEY PRESENT IN A PUBLIC FORUM."

21           MR. GERAGOS:  WHATEVER THEY WANT TO PRESENT IN FRONT

22   OF THE JURY WITH A WITNESS ON THE WITNESS STAND, I'M OKAY WITH

23   THAT.

24           MS. CHU:  YOUR HONOR, WE TALKED A LITTLE BIT BEFORE

25   ABOUT HOW BRADY AND GIGLIO CAN'T TRUMP -- CIPA DOESN'T TRUMP

PDF created with pdfFactory trial version www.pdffactory.com

58

1    THOSE THINGS, BUT THAT'S PRECISELY WHAT THE CONCERN IS.   THAT

2    IF <u>BRADY</u> OR <u>GIGLIO</u> -- THAT MATERIAL DOES -- IS CLASSIFIED,

3    THEN THERE'S A LIMITATION ON WHAT WE CAN DISCLOSE BECAUSE CIPA

4    PROVIDES THE PROCEDURES TO DISCLOSE THAT INFORMATION.   THE

5    AGENTS HAVE EXPLORED IT PRE-TRIAL.   AND FINALLY AT THE TIME

6    THAT IT REACHES TRIAL, IT REACHES A JURY, IT REACHES A PUBLIC

7    FORUM, THOSE DETERMINATIONS WILL HAVE BEEN MADE.   THAT'S

8    EXACTLY IN PLACE.

9            YOUR HONOR, THERE IS A LIMITATION ON DISCLOSURE OF

10   <u>BRADY</u> AND THOSE TYPES OF THINGS, MATERIAL INFORMATION, BECAUSE

11   THERE IS POTENTIALLY CLASSIFIED MATERIAL THAT IS IMPLICATED

12   THERE.   AND THAT'S WHY CIPA IS SO SUPPORTED, AND THAT'S WHY

13   THIS PROCEDURE IS SET IN PLACE SO THAT WHEN IT GETS TO TRIAL,

14   THEY'LL HAVE ALL THAT CLEAN UP, EVERYONE KNOWS WHAT THE

15   LIMITATIONS AND THE RESTRICTION ARE, AND SO THAT THE DEFENSE

16   CAN REVIEW THE ENTIRETY OF THAT INFORMATION TO DETERMINE

17   WHETHER THEY NEED TO MAKE A CIPA MOTION PRE-TRIAL TO BRING

18   MORE OF THAT INFORMATION IN BECAUSE THEY FEEL IT'S NECESSARY

19   TO THE DEFENSE.

20            THE COURT:   IT'S YOUR POSITION THAT IF SOMETHING'S

21   CLASSIFIED AND ALSO <u>BRADY</u>, IT DOESN'T GET TURNED OVER?

22            MS. CHU:   YOUR HONOR, YES.   IF HE DOESN'T HAVE THE

23   CLEARANCE AND IT'S CLASSIFIED, HE DOESN'T GET IT.   THAT'S THE

24   PROVISION.

25            MR. GERAGOS:   ON ITS FACE, IT'S UNCONSTITUTIONAL.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I HAVEN'T SEEN ANY AUTHORITY TO SUPPORT

2     THAT PROPOSITION.  I WOULD THINK THAT IF IT'S BRADY -- AND

3     PARTICULARLY IN THE SENSE IT'S EXCULPATORY, THAT YOUR

4     OBLIGATION WOULD BE TO TURN THAT INFORMATION OVER.

5          NOW, MAYBE CIPA GIVES US SOME LATITUDE AND YOU CAN

6     SANITIZE IT IN SOME WAY.  BUT I WOULD THINK THE ESSENCE OF THE

7     MATERIAL HAS TO BE TURNED OVER.  I HAVEN'T SEEN ANYTHING IN

8     YOUR PAPERS THAT SAYS CIPA EXEMPTS YOU FROM BRADY AND GIGLIO

9     OBLIGATIONS.

10          MR. FORGE:  WE DIDN'T FULLY EXPLORE THE

11     EFFECTIVENESS OF COUNSEL ISSUE IN THE PAPERS.  BUT ONE POINT

12     WE WANT TO MAKE IS, AS YOUR HONOR'S AWARE AND MR. GERAGOS IS

13     AWARE, BRADY IS OFTEN IN THE EYES OF THE BEHOLDER.  WHAT MIGHT

14     BE BRADY TO MR. GERAGOS MAY NOT BE TO US.  OUR DISCLOSURES

15     UNDER THE BRADY RUBRIC IS OFTEN MUCH BROADER THAN WHAT'S

16     REQUIRED UNDER THE CASE LAW.

17          THE COURT:  YOU'RE PREPARED TO MAKE BRADY

18     DISCLOSURES AS YOU RECOGNIZE THEM IRRESPECTIVE OF WHETHER IT'S

19     CLASSIFIED INFORMATION?

20          MR. FORGE:  NO, YOUR HONOR.  BECAUSE I DO BELIEVE

21     BRADY REQUIRES THEM TO HAVE THE OPPORTUNITY.  WE ARE

22     PRESENTING THEM WITH THE OPPORTUNITY.

23          THE COURT:  WHAT IF IT'S APPARENT TO YOU WITHOUT ANY

24     INPUT FROM DEFENSE COUNSEL THAT SOMETHING'S EXCULPATORY?

25     YOU'RE SAYING YOU'RE NOT GOING TO TURN IT OVER?

PDF created with pdfFactory trial version www.pdffactory.com

60

1          MR. FORGE:  I'M SAYING IF IT'S APPARENT TO US AND

2     IT'S CLASSIFIED AND WE CAN'T SANITIZE IT -- WE CAN SANITIZE IT

3     AS BEST WE CAN, BUT THAT MIGHT DILUTE THE MEANING OF IT TO THE

4     POINT WHERE MR. GERAGOS MIGHT NOT SEE WHAT HE NEEDS TO SEE.

5     WE DON'T HAVE THE RIGHT TO HAVE INSIGHTS INTO HIS DEFENSE.

6     I'M NOT TRYING TO GET THAT INSIGHT.

7          THE PROBLEM THAT IS BEING CREATED HERE IS THAT WHILE

8     HE'S TRYING TO PROTECT HIS DEFENSE FROM US, HE'S REQUIRING US

9     TO KNOW THE DEFENSE IN ORDER TO DETERMINE WHAT IS OR IS NOT

10     MATERIAL TO THAT DEFENSE AND WHAT COULD BE SANITIZED IN A WAY

11     TO STILL MAKE A --

12          THE COURT:  I DON'T HEAR HIM SAYING THAT.  I HEAR

13     HIM SAYING THAT WITH RESPECT TO THINGS THAT ARE APPARENTLY

14     EXCULPATORY AND APPARENTLY IMPEACHING, IF YOU RECOGNIZE THAT

15     WITHOUT ANY INPUT FROM HIM, YOU HAVE AN OBLIGATION TO TURN

16     THOSE THINGS OVER.

17          THERE'S A PROCEDURE UNDER OUR STANDARD DISCOVERY

18     RULES.  IF YOU'RE AT ALL IN QUESTION ABOUT IT, PRESENT IT TO

19     ME UNDER RULE 12, AND I'LL TELL YOU "YEAH, I THINK THIS IS,

20     AND I THINK THIS OUGHT TO GO OVER."  I DON'T KNOW WHY WE

21     COULDN'T USE THE NORMAL CONVENTIONS THAT WE USE IN OTHER

22     CASES.

23          MR. FORGE:  NEITHER MS. CHU NOR I MEANT TO SUGGEST

24     THAT THESE ARE DETERMINATIONS WE WOULD MAKE EXCLUSIVELY ON OUR

25     OWN WITHOUT ANY NOTICE TO THE COURT.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

61

1          THE COURT:  HELP ME WITH THIS.

2          MS. CHU TOOK ME TO THE FIRST STEP, WHICH IS "BEFORE

3     YOU CAN ACCEPT THIS CONCESSION FROM MR. WILKES AND MR. GERAGOS

4     THAT HE DOESN'T NEED TO HAVE A SECURITY CLEARANCE, YOU, JUDGE,

5     SHOULD LOOK AT THE INFORMATION AND MAKE SOME DETERMINATION."

6     WHAT'S STEP 2?  WHERE DO I GO WITH THAT --

7          MR. FORGE:  WELL, I THINK STEP 2 --

8          THE COURT:  -- IF HE'S STANDING STEADFAST AND HE

9     DOESN'T WANT TO HAVE THIS?

10          MR. FORGE:  I THINK STEP 2 FALLS INTO A <u>WHEAT</u>

11     SITUATION.  IT'S NOT IN THE PUBLIC EYE.  IT'S JUST AN ACTUAL

12     CONFLICT.  IF YOUR HONOR LOOKS AT THIS INFORMATION -- AND HERE

13     WE HAVE A PRIMA FACIE CASE THAT'S GOING TO ARISE WHEN YOU

14     JUXTAPOSE MR. MAC DOUGALL'S REPRESENTATIONS WITH MR. GERAGOS'S

15     POSITION.  MR. MAC DOUGALL REPRESENTS THAT THERE ARE TOP

16     SECRET DOCUMENTS THAT ARE ESSENTIAL TO MR. FOGGO'S DEFENSE.

17     NOW, THEIR DEFENSES ARE SOMEWHAT HAND IN HAND.

18          THE COURT:  I DON'T KNOW THAT, DO YOU?

19          MR. FORGE:  NO.  I DON'T HAVE THE INSIGHT INTO THEIR

20     DEFENSES, AND I'M NOT TRYING TO GET THAT INSIGHT.  WHAT I'M

21     SAYING IS MR. MAC DOUGALL HAS AT LEAST RAISED THE NOTION THAT

22     THERE ARE CLASSIFIED DOCUMENTS, HIGHLY CLASSIFIED DOCUMENTS,

23     THAT ARE MATERIAL TO A DEFENSE IN THIS CASE.

24          AND TO PICK UP WHERE MS. CHU LEFT OFF, IF, UPON

25     REVIEWING THOSE DOCUMENTS, YOUR HONOR AGREES AND SAYS "THIS IS

PDF created with pdfFactory trial version www.pdffactory.com

62

1   MATERIAL.  IT MIGHT NOT BE CONVINCING, IT MIGHT NOT RAISE A

2   REASONABLE DOUBT, BUT UNDER THE LEGAL STANDARDS IT IS

3   MATERIAL," IN ORDER TO RENDER EFFECTIVE ASSISTANCE, AN

4   ATTORNEY WOULD HAVE TO HAVE ACCESS TO THIS INFORMATION TO AT

5   LEAST CONSIDER ITS USE.

6         NOW, AT THAT POINT IS STEP 2 THAT YOUR HONOR IS

7   INQUIRING ABOUT.  AT THAT POINT, I BELIEVE YOU WOULD HAVE AN

8   ACTUAL CONFLICT.  NOT AN APPARENT CONFLICT.  I THINK YOU WOULD

9   HAVE AN ACTUAL CONFLICT BECAUSE WE WOULD HAVE AN ATTORNEY WHO,

10  FOR HIS OWN REASONS -- AND I'M NOT QUESTIONING THE MERITS OF

11  THOSE REASONS OR THE SINCERITY OF MR. GERAGOS'S CONVICTION --

12  FOR HIS OWN PERSONAL REASONS, HE'S DECLINING TO GET SECURITY

13  CLEARANCE.

14        AGAIN, THIS IS NOT AN ISSUE OF DISCLOSURE.  THIS IS

15  JUST AN ISSUE OF SECURITY CLEARANCE.  FOR HIS OWN PERSONAL

16  REASONS, HE'S CHOOSING NOT TO GET SECURITY CLEARANCE.  HE IS

17  MAKING A PERSONAL DECISION THAT IS IN CONFLICT WITH HIS

18  REPRESENTATION OF HIS CLIENT.

19        THE STEP 2, YOUR HONOR, THAT'S WHERE WE HAVE A

20  CONFLICT.  AND THAT'S WHERE YOUR HONOR COULD

21  DECLARE MR. GERAGOS UNQUALIFIED TO REPRESENT MR. WILKES.

22        THE COURT:  THE AUTHORITY I HAVE UNDER WHEAT, IT

23  SEEMS TO ME, IMPACTS THE APPEARANCE OF JUSTICE FROM A PUBLIC

24  STANDPOINT.  AND I DON'T SEE THAT HAPPENING HERE EVEN IF WHAT

25  YOU SAY COMES TRUE.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

63

1          WHAT I SEE IS MR. WILKES MAY BE IN THE DOGHOUSE --

2    HE MAY BE BECAUSE HE DOESN'T HAVE THIS INFORMATION.  BUT HE

3    TOLD ME IN A NUMBER OF ITERATIONS NOW THAT HE UNDERSTANDS THAT

4    THAT'S ONE OF THE POTENTIAL CONSEQUENCES GOING INTO THIS.

5          HOW DO I IMPOSE ON HIM SOME DIFFERENT LAWYER FROM

6    THE ONE THAT HE'S CHOSEN WHEN I DON'T FIND IT GENERALLY

7    APPEARS TO BE A CONFLICT.  IT'S PECULIAR TO HIM AND HIS

8    LAWYER, BUT EVERYONE KNOWS WHAT'S HAPPENING HERE.  HE'S GIVING

9    UP HIS RIGHT TO HAVE THIS CLASSIFIED INFORMATION, AND THEY'RE

10   WILLING TO GO FORWARD.  AND I CAN IMAGINE THAT MAYBE IN THE

11   ORDER OF THINGS, IF THE CASE IS JOINTLY TRIED, MR. GERAGOS

12   WILL TELL MR. MAC DOUGALL "YOU CROSS-EXAMINE FIRST, AND I'LL

13   LISTEN AND TAKE NOTES BEFORE I GO."

14          MR. FORGE:  THAT'S FINE.  BUT TO GO BACK TO THE

15   ITERATIONS TO WHICH YOUR HONOR REFERRED, WE NEED TO HEAR THAT

16   MAGIC WORD.  WE NEED TO HEAR "WAIVER."  THIS DOES HAVE TO BE,

17   AS MS. CHU POINTED OUT, A KNOWING, VOLUNTARY, AND INTELLIGENT

18   WAIVER.

19          THE COURT:  TELL ME SPECIFICALLY WHAT HE'D BE

20   WAIVING, JUST HIS RIGHT TO THAT MATERIAL?

21          MR. FORGE:  THAT'S RIGHT.  HE'S WAIVING HIS RIGHT

22   AND HIS RIGHT TO HAVE COUNSEL HAVE ACCESS TO THOSE MATERIALS,

23   AND THAT ACCESS WOULD PROVIDE THEM WITH THE ABILITY TO SEE

24   WHETHER THERE'S INFORMATION THAT'S HELPFUL IN CROSS-EXAMINING

25   WITNESSES OR PUTTING ON THEIR OWN DEFENSE OR IN ANY OTHER WAY

PDF created with pdfFactory trial version www.pdffactory.com

64

1    DEFENDING THE CASE.

2            THE COURT:  I THINK HE'S GOT A POINT, MR. GERAGOS.

3    EVERYTHING IS ABOUT KNOWING, VOLUNTARY, AND INTELLIGENT

4    WAIVERS.  AND THEY'VE LAID IT OUT, AND I THINK EVERYBODY

5    UNDERSTANDS WHAT'S AT ISSUE HERE, MR. WILKES.

6            ESSENTIALLY, UNDERSTANDING THESE DIRE CONSEQUENCES

7    THAT THE PROSECUTOR HAS ALLUDED TO AND THAT I'VE TALKED ABOUT,

8    YOU KNOW THAT THOSE CONSEQUENCE POTENTIALLY AWAIT YOU AND

9    YOU'RE WILLING TO ABIDE THOSE CONSEQUENCES AND GIVE UP YOUR

10   RIGHT TO HAVE ACCESS TO THIS MATERIAL AND HAVE MR. GERAGOS

11   HAVE ACCESS TO THIS MATERIAL?

12           MR. GERAGOS:  WE ABSOLUTELY, CATEGORICALLY DO NOT

13   GIVE UP OUR RIGHT TO BRADY AND GIGLIO.

14           THE COURT:  I UNDERSTAND.

15           MR. GERAGOS:  I DON'T THINK THEY DO.  EVERYTHING I'D

16   HEARD BETWEEN THE TWO OF THEM BACK AND FORTH, I DIDN'T GET

17   THAT IMPRESSION.  I DON'T THINK THEY UNDERSTAND THAT BRADY

18   TRUMPS CIPA AND GIGLIO TRUMPS CIPA.

19           THE COURT:  THAT'S MY VIEW AS WELL.  HERE'S WHAT

20   MR. FORGE IS SAYING:  SOMETIMES -- AND THE LEGERS CASE, AS YOU

21   KNOW, SPOKE TO THIS, MR. GERAGOS.  SOMETIMES THEY CAN'T

22   ENTIRELY KNOW WHAT THEIR PERSPECTIVE IS IN THE CASE OR WHAT

23   YOUR DEFENSE IS GOING TO BE OR HOW YOU'RE GOING TO DEFEND IT.

24   AND IF THEY KNEW THAT, THAT MIGHT CONDITION HOW THEY USE

25   CERTAIN INFORMATION OR WHETHER IT WAS EXCULPATORY.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          BECAUSE YOU WON'T GO THROUGH THIS AND MAKE REQUESTS

2    OF THEM, THEN THEY'RE NOT GOING TO BE ABLE TO LOOK AT IT IN A

3    LIGHT THAT YOU DIRECT THEM TO.  THEY'RE NOT GOING TO BE ABLE

4    TO LOOK AT IT THAT WAY.  I AGREE WITH YOU.  TO THE EXTENT THAT

5    THINGS ARE APPARENT OR SHOULD BE APPARENT ON THEIR FACE THAT

6    THEY'RE EXCULPATORY OR THAT THEY IMPEACH WITNESSES, THAT THEIR

7    CONSTITUTIONAL OBLIGATIONS TRUMP THE STATUTORY PROVISIONS OF

8    CIPA, AND THEY HAVE TO GIVE THAT OVER.

9          IF THERE'S ANY QUESTION ABOUT IT REGARDING THE STEPS

10   OR PROCEDURES, THEY'LL PRESENT IT TO ME.  AND I'LL LOOK AT IT,

11   AND I'LL MAKE THE DETERMINATION AND THEN TURN OVER WHAT IS

12   RELEVANT.

13         THAT NOTWITHSTANDING, WHAT I THINK MR. WILKES NEEDS

14   TO SAY IS "I UNDERSTAND THE CONSEQUENCES OF PROCEEDING IN THE

15   MANNER THAT MY LAWYER SUGGESTS.  I'M WILLING TO DO THAT, AND

16   I'M WILLING TO GIVE UP ANY RIGHTS I MAY HAVE UNDER CIPA TO

17   OTHERWISE HAVE ACCESS TO CLASSIFIED MATERIAL THAT'S NOT BRADY

18   AND NOT GIGLIO."

19         MR. GERAGOS:  I WOULD AGREE THAT HE CAN GO FORWARD

20   AND SAY THAT HE GIVES UP ANY RIGHTS UNDER CIPA BECAUSE WE FIND

21   CIPA EVEN MORE SO, AS ARTICULATED HERE TODAY, TO BE, ON ITS

22   FACE, UNCONSTITUTIONAL.  SO TO THAT EXTENT, I'D SAY THAT.

23         THE COURT:  I THINK THAT'S IT, MR. FORGE.  IF HE

24   GIVES UP HIS RIGHTS UNDER CIPA TO THE PRODUCTION OF THIS

25   MATERIAL -- AND HE UNDERSTANDS NOW THAT YOU'RE NOT GOING TO

PDF created with pdfFactory trial version www.pdffactory.com

1    HAVE THE BENEFIT OF HIS PERSPECTIVE ON HOW THIS MAY BE

2    RELEVANT -- YOU'RE GOING TO BE LEFT TO YOUR OWN DEVICES TO

3    DETERMINE WHAT IS APPARENTLY EXCULPATORY, AND ANY QUESTIONS

4    WILL BE RUN THROUGH ME, AND I'LL MAKE A DETERMINATION TO TURN

5    IT OVER.

6              BUT I THINK IF HE HAVE WAIVES HIS RIGHT TO

7    PRODUCTION UNDER CIPA THAT HE'D OTHERWISE HAVE, THAT THAT'S A

8    SUFFICIENT WAIVER, DON'T YOU?

9              MR. FORGE:  I DON'T.  I THINK IT'S SOMETHING THAT WE

10   CAN ADDRESS.

11             THE COURT:  WHAT ELSE DO YOU THINK HE NEEDS TO

12   WAIVE?

13             MR. FORGE:  I THINK THIS BRADY/GIGLIO ISSUE IS FAR

14   MORE COMPLICATED THAN WE CAN ADDRESS AT THIS TIME.  I'M

15   SHOOTING FROM THE HIP HERE.  BECAUSE WHEN YOU THINK ABOUT WHAT

16   CIPA -- THE IMPETUS FOR CIPA, THE IMPETUS FOR CIPA WAS TO

17   AVOID SITUATIONS WHERE A DEFENDANT WANTS TO RAISE CLASSIFIED

18   INFORMATION OR SAYS HE NEEDS ACCESS TO CLASSIFIED INFORMATION.

19   AND WHEN FORCED TO MAKE THAT CHOICE WITHOUT ANY PROTECTIONS

20   THE GOVERNMENT CAN'T PROCEED.

21             IT'S ESSENTIALLY A GRAY MAIL SITUATION WHERE THEY'RE

22   SAYING, "YOU STILL HAVE TO GIVE US EVERYTHING.  YOU HAVE TO

23   GIVE US ALL THE BRADY AND ALL THE GIGLIO, BUT WE'RE NOT GOING

24   TO CONFORM WITH THE STATUTE THAT WAS SPECIFICALLY ENACTED TO

25   ENABLE YOU TO DO THAT WHILE PRESERVING THESE MATTERS THAT ARE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    IN THE NATIONAL SECURITY."

2              SO I DON'T THINK THAT IT IS AS SIMPLE -- BRADY AND

3    GIGLIO ARE OBVIOUSLY SEMINAL CASES.  THEY INVOLVE THE

4    DEFENDANT'S DUE PROCESS RIGHTS.  WE RESPECT THEM.  WE WILL

5    ADHERE TO THEIR TEACHINGS.  BUT IT IS NOT AS SIMPLE AS SIMPLY

6    SAYING THAT THESE ARE SEMINAL CASES; AND THEREFORE, THEY TRUMP

7    EVERYTHING ELSE.

8              CIPA WAS DESIGNED IN ORDER TO BALANCE RIGHTS UNDER

9    BRADY, UNDER GIGLIO, AND UNDER OTHER CASES WITH THE

10   GOVERNMENT'S RIGHT TO PRESERVE THE CLASSIFIED STATUS OF

11   INFORMATION AS IMPORTANT TO OUR NATIONAL SECURITY.

12             SO I JUST DON'T THINK IT'S AS SIMPLE AS ONE TRUMPING

13   THE OTHER.  I THINK THAT WE HAVE A SYSTEM SET IN PLACE THAT

14   PERMITS MR. GERAGOS AND HIS CLIENT ACCESS TO THIS INFORMATION.

15   THEY ARE OPTING OUT OF THAT SYSTEM.  BY OPTING OUT OF THAT

16   SYSTEM, I THINK THE CONSEQUENCES ARE MUCH GREATER THAN WHAT

17   THEY'RE WILLING TO WAIVE AT THIS POINT.

18             THE COURT:  WELL, I DISAGREE WITH THAT CONSTRUCTION

19   OF IT.  I THINK THE CONSTITUTIONAL OBLIGATIONS UNDER THOSE TWO

20   CASES TO PROVIDE THE DEFENDANT WITH EXCULPATORY OR IMPEACHMENT

21   MATERIAL TRUMP ANY STATUTORY PROVISIONS.  CONGRESS WOULDN'T

22   HAVE BEEN AUTHORIZED TO SAY THAT BRADY IS DISPENSED WITH UNDER

23   THESE CIRCUMSTANCES.

24             NOW, IT MAY BE, MR. FORGE, THAT THERE'S A WAY TO

25   GIVE THE MATERIAL OVER AND NOT GIVE UP THE GHOST IN TERMS OF

PDF created with pdfFactory trial version www.pdffactory.com

68

1  CLASSIFIED INFORMATION.  AND THAT MAY BE YOUR OBLIGATION IN

2  THIS CASE TO DO THAT.  BUT I CAN'T IMAGINE A SCENARIO WHERE

3  I'D ASK MR. WILKES TO WAIVE HIS BRADY AND GIGLIO RIGHTS TO

4  THIS EXTENT:  HE UNDERSTANDS THAT WITHOUT THE BENEFIT OF HIS

5  THEORY OR HIS LAWYER'S THEORY PROPOUNDING SPECIFIC QUESTIONS

6  TO YOU, THAT YOU MAY NOT HAVE AN UNDERSTANDING OF CERTAIN

7  MATERIAL THAT COULD BE DEEMED EXCULPATORY BY THEM AND, IN

8  FACT, IS.  WE'RE NOT TALKING ABOUT THAT.  WE'RE TALKING ABOUT

9  STAND-ALONE EXCULPATORY OR IMPEACHMENT MATERIAL.  AND IF YOU

10 RECOGNIZE IT AS SUCH, I THINK YOU'VE GOT TO GIVE IT OVER.

11         NOW, WHETHER THERE'S SOME PERMUTATION OR YOU CHANGE

12 IT A LITTLE BIT OR YOU CHANGE THE DAY THAT YOU SUBMIT IT TO ME

13 AND SAY "FOR THESE REASONS, HERE'S THE GIST OF IT.  BUT WE

14 DON'T WANT THE PARTICULARS," WE'LL LEAVE THAT FOR ANOTHER DAY.

15         I'M SATISFIED THAT IF HE WAIVES HIS RIGHTS UNDER

16 CIPA FOR THE RECEIPT OF CLASSIFIED INFORMATION, BUT STANDS ON

17 HIS RIGHT TO RECEIVE EXCULPATORY AND IMPEACHING MATERIAL, THAT

18 THAT'S SUFFICIENT FOR TODAY.

19         MR. WILKES, YOU PAID ATTENTION TO THE WHOLE

20 DISCUSSION.

21         YOU UNDERSTAND EVERYTHING THAT'S BEEN DISCUSSED?

22         DEFENDANT WILKES:  FOR THE MOST PART, YES.

23         THE COURT:  IS THERE ANY PART YOU NEED ME TO CLARIFY

24 BEFORE YOU MAKE THE DECISION TO GIVE UP YOUR RIGHTS UNDER CIPA

25 TO THE PRODUCTION OF INFORMATION?

PDF created with pdfFactory trial version www.pdffactory.com

1        DEFENDANT WILKES:  NO.  I'M COMFORTABLE WITH THAT

2   WAIVER.  IT JUST APPEARS TO ME AS A NON-LAWYER THAT WE'RE

3   DEFINING A SLIVER OF SPACE HERE.  I HAVE THE RIGHT TO THE

4   INFORMATION I NEED.

5        THE COURT:  I'M NOT GOING TO LET THAT HAPPEN.  THESE

6   PROSECUTORS ARE VERY EXPERIENCED AND VERY HONEST.  IF THEY SEE

7   SOMETHING THAT IS EXCULPATORY THAT TENDS TO POINT IN THE

8   DIRECTION OTHER THAN WHAT THE ACCUSATIONS ARE, THEY'RE LEGALLY

9   OBLIGATED.  I'M CONFIDENT THAT THEY WILL TURN THAT OVER TO YOU

10  ANYWAY.

11       SO ALL WE'RE TALKING ABOUT TODAY, MR. WILKES, IS THE

12  CIPA PROVISIONS.  THAT IF MR. GERAGOS GOES THROUGH THE

13  CLEARANCE PROCEDURES, HE WOULD BE ENTITLED TO CERTAIN

14  INFORMATION.  IF HE'S NOT GOING TO DO THAT, THE CONSEQUENCE IS

15  YOU'RE NOT GOING TO GET THE BULK OF THE INFORMATION THAT THEY

16  DEEM CLASSIFIED.  BUT YOU RESERVE YOUR RIGHT TO EXCULPATORY

17  AND IMPEACHING MATERIAL.

18       IS THAT ACCEPTABLE TO YOU AND DO YOU GIVE UP YOUR

19  RIGHT TO PRODUCTION OF MATERIAL UNDER CIPA?

20       DEFENDANT WILKES:  IT IS.

21       THE COURT:  MR. FORGE, ANYTHING ELSE YOU THINK I

22  NEED TO TAKE FROM HIM IN TERMS OF A WAIVER?  I THINK HE GETS

23  IT.  WE'VE COVERED IT UNTIL THE COWS COME HOME.

24       MR. FORGE:  NOT AT THIS TIME.  WE WILL ADDRESS IT

25  WITH THE COURT IN WRITING.

PDF created with pdfFactory trial version www.pdffactory.com

70

1          THE COURT:  OKAY.  I REITERATE THE GOVERNMENT HAS

2     STAND-ALONE BRADY AND GIGLIO RESPONSIBILITIES.  IF THERE'S

3     SOME QUESTION ABOUT HOW YOU HAVE TO DISCHARGE THOSE THAT

4     IMPLICATES CLASSIFIED INFORMATION, THAT YOU SHOULD PUT IT TO

5     ME UNDER THE AUSPICES OF RULE 12, AND I'LL GO OVER IT WITH

6     YOU.  BUT AT THE END OF THE DAY, HE'S ENTITLED TO EXCULPATORY

7     AND IMPEACHING MATERIAL.

8          AND I DON'T FIND, MS. CHU, THAT I HAVE GROUNDS FOR

9     REMOVING MR. GERAGOS AT THIS POINT.  I FIND THAT MR. WILKES

10    UNDERSTANDS FULLY THE CONSEQUENCE OF MR. GERAGOS DECLINING TO

11    GO THROUGH THE PROCESS AND THAT HE HAS WAIVED HIS RIGHT TO

12    PRODUCTION OF INFORMATION PURSUANT TO CIPA, WHICH HE GETS TO

13    DO.  IT WOULD BE UNPRECEDENTED IF THERE WAS SOMETHING THAT HE

14    COULDN'T WAIVE HIS RIGHT TO -- IT'S UNWAIVERABLE, AT LEAST IN

15    THE CONTEXT OF A CASE LIKE THIS.

16         NOW, MR. GERAGOS, DO YOU WANT TO SAY ANYTHING MORE

17    ABOUT THESE PROVISIONS, OR ARE YOU SATISFIED WITH YOUR PAPERS?

18         MR. GERAGOS:  I'M SATISFIED WITH THE PAPERS AND THE

19    COLLOQUY THAT'S TAKEN PLACE SUBSEQUENT TO THAT.

20         THE COURT:  LET ME MAKE MY RULINGS, THEN, WITH

21    RESPECT TO THE SPECIFIC MOTIONS THAT YOU'VE MADE.

22         YOU'VE ARGUED IN SUPPORT OF DECLARING CIPA

23    UNCONSTITUTIONAL, THAT IT VIOLATES MR. WILKES'S RIGHTS UNDER

24    THE 5TH AND 6TH AMENDMENTS.  THAT'S THE GENERAL ARGUMENT.

25         IN PARTICULAR, YOU'VE ARGUED THAT THE NOTICE AND

PDF created with pdfFactory trial version www.pdffactory.com

71

1    HEARING REQUIREMENTS SET FORTH IN SECTION 5, WHICH REQUIRES

2    YOU TO GIVE A BRIEF EXPLANATION OF THE MATERIAL YOU WANT AND

3    WHY IT'S RELEVANT, AND THEN SECTION 6, WHICH I'LL TALK ABOUT

4    MORE LATER, COMPELS MR. WILKES TO NOTIFY THE PROSECUTION AND

5    IMPAIRS HIS RIGHT TO TESTIFY.

6         AS I MENTIONED, I'VE RELIED, IN GREAT PART, ON THE

7    DISTRICT COURT DECISION IN UNITED STATES VERSUS NGUYEN HO LEE

8    AT 90 FED. 2D 1324.  I THINK IT DOES ADDRESS THE VERY

9    ARGUMENTS THAT HAVE BEEN RAISED BY MR. WILKES IN THIS CASE.

10        I'VE ALSO RELIED ON THE DECISION OF THE UNITED

11   STATES COURT OF APPEALS FOR THE SECOND CIRCUIT IN U.S. VERSUS

12   WILSON IN GENERALLY UPHOLDING CIPA AGAINST THE CONSTITUTIONAL

13   CHALLENGE THAT IT VIOLATES THE PRIVILEGE AGAINST

14   SELF-INCRIMINATION AND THE DEFENDANT'S 6TH AMENDMENT RIGHT.

15        HERE, AS I SAID, MR. GERAGOS, YOU'VE RELIED ON

16   BROOKS VERSUS TENNESSEE.  IN THAT CASE, THE SUPREME COURT

17   STRUCK DOWN THE STATUTE THAT REQUIRES THE DEFENDANT TO TESTIFY

18   FIRST OR NOT AT ALL.

19        I THINK THAT THIS CASE IS CLOSER TO TAYLOR VERSUS

20   ILLINOIS AND WILLIAMS VERSUS FLORIDA.

21        IN TAYLOR VERSUS ILLINOIS, THERE WAS A WITNESS

22   NOTIFICATION -- A DEFENSE WITNESS NOTIFICATION STATUTE THAT

23   WAS CHALLENGED.  THE SUPREME COURT UPHELD THAT.

24        SIMILARLY, IN WILLIAMS VERSUS FLORIDA, THERE WAS A

25   NOTICE OF ALIBI STATUTE.  AND THE SUPREME COURT UPHELD THAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

72

1    AGAINST SIMILAR CHALLENGES TO THOSE MADE IN THIS CASE.

2         THE GOVERNMENT POINTS OUT -- AND I PREVIOUSLY

3    ALLUDED TO THIS -- THERE ARE NUMEROUS SECTIONS OF THE UNITED

4    STATES CODE THAT CURRENTLY REQUIRE A SIMILAR NOTICE ON THE

5    PART OF A DEFENDANT IN ORDER TO MOUNT CERTAIN DEFENSES.

6         I'M TRYING TO FIND THE SECTION.  WHERE WERE THOSE

7    LISTED, MR. FORGE, YOUR EXAMPLES?

8         MR. FORGE:  ONE MOMENT.  I THINK MS. CHU HAS THOSE.

9         MS. CHU:  STARTING AT SECTION 3, PAGES 8, 9, AND

10   FOLLOWING WHERE IT DISCUSSES -- AND THE TOP ON 10 THAT

11   DISCUSSES THE NUMBER OF EVIDENTIARY AND PROCEDURAL

12   REQUIREMENTS FOR PRE-TRIAL DISCLOSURE.

13        THE COURT:  THAT'S RIGHT.  I FOUND IT NOW AT THE TOP

14   OF 10.

15        THE CODIFICATIONS IN THE FEDERAL RULES AND IN THE

16   CASE LAW, JUST BY WAY OF EXAMPLE, ARE THESE:  THE DEFENDANT

17   HAS TO GIVE NOTICE UNDER 12.2 OF AN INSANITY DEFENSE OR IS

18   FORECLOSED FROM RAISING SUCH A DEFENSE.  LIKEWISE, UNDER 12.3,

19   A PUBLIC AUTHORITY DEFENSE OR THE CONSEQUENCE IS FORECLOSED

20   FROM RAISING SUCH A DEFENSE.  PURSUANT TO RULE 16, MEDICAL AND

21   SCIENTIFIC TESTS MUST BE DISCLOSED IN ADVANCE.

22        I ONCE HAD A CASE IN THIS VERY COURTROOM WHERE GAMES

23   WERE PLAYED AND MATERIAL WAS NOT TURNED OVER AND IT WAS BARRED

24   EVEN THOUGH IT WAS A VITAL PART OF THE DEFENSE.  IT WAS UPHELD

25   BY THE 9TH CIRCUIT BECAUSE OF A VIOLATION OF THESE VERY RULES.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          ALL OF THESE RULES HAVE BEEN FOUND TO IMPINGE, TO

2     SOME EXTENT, ON THE ABSOLUTE OF FREE REIGN OF A DEFENDANT TO

3     DECIDE WHETHER TO TESTIFY AND WHAT DEFENSE TO MOUNT, BUT NOT

4     UNCONSTITUTIONALLY SO.

5          AND I FIND THE CIPA PROVISIONS, WHICH, AS I'VE

6     MENTIONED, ARE WORDED IN SUCH A WAY THAT THEY DO NOT REQUIRE A

7     DEFENDANT TO NOTIFY EITHER THE COURT OR THE GOVERNMENT WHETHER

8     HE INTENDS TO TESTIFY OR WHAT THE SUBJECT MATTER OF THE

9     TESTIMONY WILL BE, NOR HOW HE INTENDS TO USE THE INFORMATION

10    AS IMPERMISSIBLE INFRINGEMENTS ON THE DEFENDANT'S 5TH OR

11    6TH AMENDMENT RIGHTS.

12          I THINK AS I READ CIPA AND COMPARE IT TO THESE OTHER

13    PROVISIONS WHICH REQUIRE SOME NOTIFICATION OF INFORMATION THAT

14    THERE IS STILL SIGNIFICANT CONTROL ON THE PART OF THE DEFENSE

15    AS TO HOW THE DEFENSE WILL BE PRESENTED.

16          SO THE MERE IDENTIFICATION OF MATERIAL THAT THE

17    DEFENSE BELIEVES TO BE RELEVANT OR COULD BE RELEVANT OR MIGHT

18    BE USED IN SOME WAY I DON'T THINK UNCONSTITUTIONALLY IMPINGES

19    ON MR. WILKES'S 5TH OR 6TH AMENDMENT RIGHTS.

20          I DO THINK THAT AN IMPORTANT INTEREST IS SERVED.

21    YOU GENERALLY CAN'T HAVE A BURDEN ON A DEFENDANT'S 5TH OR

22    6TH AMENDMENT RIGHTS TO ANY EXTENT UNLESS IT'S OFFSET BY SOME

23    COMPELLING INTEREST.  HERE THE COMPELLING INTEREST IS

24    EVIDENCE; THE GOVERNMENT'S INTEREST IN MAINTAINING CLASSIFIED

25    INFORMATION AND ALL THAT THAT IMPLICATES, INCLUDING IN THIS

PDF created with pdfFactory trial version www.pdffactory.com

74

1    CASE, I'M TOLD, NATIONAL SECURITY.  AND I THINK THAT'S A

2    SIGNIFICANT COUNTERVAILING INTEREST THAT JUSTIFIES THE SLIGHT

3    IMPINGEMENT ON ANY DEFENDANT'S ABILITY TO DEFEND HIMSELF

4    AGAINST CHARGES SUCH AS THE ONES FILED IN THIS CASE.

5           NEITHER DO I FIND THAT MR. WILKES'S RIGHT TO BE

6    CONFRONTED BY WITNESSES AGAINST HIM AND TO CROSS-EXAMINE THOSE

7    WITNESSES ARE UNCONSTITUTIONALLY BURDENED BY THIS.  AS I SAID,

8    THE PROCEDURES ARE MAINLY BENIGN.  AND, IN FACT, AS I LOOKED

9    AT THIS, MY TENDENCY AS DEFENSE COUNSEL -- I'M NOT TELLING YOU

10   HOW TO TRY THIS CASE -- WOULD BE TO BE OVER-INCLUSIVE, SAY, "I

11   WANT ALL OF THIS.  I THINK ALL OF THIS IS RELEVANT."  MAYBE

12   SOME OF IT'S NOT, AND MAYBE YOU'D HAVE A HARD TIME CONVINCING

13   ME OF THAT.  BUT AT LEAST YOU MIGHT THROW OFF THE OPPONENT,

14   AND THE OPPONENT WOULDN'T HAVE AN IDEA OF WHERE YOU'RE GOING

15   TO GO WITH INFORMATION BECAUSE YOU'RE OVERLY INCLUSIVE IN THE

16   REQUEST AND THE MATERIALITY.

17          SO, I MEAN, I THINK THERE'S SUBSTANTIAL LEEWAY FOR

18   DEFENSE COUNSEL TO PROTECT THEIR CLIENT'S 6TH AMENDMENT

19   INTEREST, 5TH AMENDMENT INTEREST.  AND CIPA PROVIDES THAT.  AT

20   THE END OF THE DAY, YOU STILL HAVE TO CONVINCE ME THAT THIS

21   INFORMATION WAS MATERIAL.  BUT IT MAY BE MATERIAL, AND YOU MAY

22   NOT INTEND TO USE IT AT ALL.  OR IT MAY GO IN A COMPLETELY

23   DIFFERENT DIRECTION FROM THE DEFENSE THAT YOU CHOOSE TO MOUNT.

24          SO, AS I SAID, I ADOPT AS MY OWN THE REASONING IN

25   THE NGUYEN HO LEE CASE.  I FIND THAT THAT CASE ANSWERS THE

PDF created with pdfFactory trial version www.pdffactory.com

75

1    OBJECTIONS THAT HAVE BEEN RAISED BY MR. WILKES IN THIS CASE.

2         IN SUM, I FIND THAT CIPA IS AND REMAINS

3    CONSTITUTIONAL IN THAT REGARD.  IT'S NOTHING NEW.  I DIDN'T

4    DRAW A WRITTEN ORDER BECAUSE SO MANY HAVE BEEN WRITTEN ON THIS

5    SUBJECT THAT I'D SIMPLY BE REITERATING THE VIEWS OF OTHER

6    JUDGES THAT HAVE LOOKED AT THIS.

7         THE MOTION TO DECLARE CIPA AS UNCONSTITUTIONAL IS

8    DENIED.  MR. WILKES'S WAIVER OF ENTITLEMENT TO INFORMATION

9    PURSUANT TO CIPA AS A STATUTE IS ACCEPTED.

10        THERE'S THE ISSUE ABOUT PROTECTIVE ORDERS,

11   MR. MAC DOUGALL.  I'M PREPARED TO HEAR FURTHER FROM YOU IF YOU

12   WANT ME TO GO OVER THAT NOW.  I CAN TELL YOU TENTATIVELY AS TO

13   THE FIRST PROTECTIVE ORDER THAT'S BEEN SUBMITTED, MY

14   INCLINATION IS TO ACCEPT IT WITH THE EXCEPTION OF LINE 13,

15   WHICH I WOULD MODIFY PURSUANT TO THE GOVERNMENT'S SUGGESTION.

16   YOUR PROTECTIVE ORDER IS "NOTWITHSTANDING ANY OTHER PROVISION

17   OF LAW OR AGREEMENT."

18        THE GOVERNMENT SUGGESTED A MODIFICATION DELETING

19   "NOTWITHSTANDING ANY OTHER PROVISION OF LAW" AND SUBSTITUTING

20   IN PLACE THEREOF "IN ACCORDANCE WITH THE CLASSIFIED

21   INFORMATION PROCEDURES ACT AND THE CITATION TO THAT ACT."

22        IS THAT ACCEPTABLE?

23        MR. DOBER:  YOUR HONOR, THAT'S ACCEPTABLE.

24        THE COURT:  WITH THAT MODIFICATION, THEN, MR. DOBER,

25   IF YOU'LL REDRAFT IT, I'LL BE HAPPY TO SIGN OFF ON THE FIRST

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    SUGGESTED PROTECTIVE ORDER.

2              MS. CHU:  I BELIEVE THE GOVERNMENT ATTACHED AS

3    EXHIBIT A TO THE MOTION JUST SUCH A DRAFT.

4              THE COURT:  OKAY.  THEN NO NEED.  I'LL SIGN THEIR A.

5              HAVE YOU LOOKED AT IT?

6              MR. DOBER:  YES.

7              THE COURT:  A WILL BE THE PROTECTIVE ORDER SIGNED BY

8    THE COURT.

9              TURNING TO THE SECOND OFFERED PROTECTIVE ORDER,

10   AGAIN, I'M INCLINED TO ACCEPT THIS AND TO SIGN IT EXCEPT

11   PAGE 3, LINES 8 THROUGH 11 -- NO -- PAGE 2, LINES 8 THROUGH

12   11.  I'M INCLINED TO STRIKE THAT PROVISION ABOUT WITHIN

13   20 DAYS, THE GENERAL COUNSEL SHALL PRODUCE TO MR. FOGGO'S

14   COUNSEL THE NAMES OF PEOPLE THAT WILL BE AUTHORIZED.

15             AND FURTHERMORE, SO THAT THERE'S NO QUESTION ABOUT

16   THE MEANING OF CIA ADMINISTRATION, I INTEND TO PUT IN EITHER

17   PARENTHETICALLY OR ADDING ON CIA ADMINISTRATION MEANS THE CIA

18   OFFICIAL OR OFFICIALS RESPONSIBLE FOR AUTHORIZING CONTACT

19   PURSUANT TO THE 2(E) REGULATIONS.

20             IS THAT AGREEABLE?

21             MS. CHU:  THE GOVERNMENT OBJECTS TO THIS PARTICULAR

22   SECOND ORDER FOR THE REASONS SET FORTH IN OUR PAPERS.  THEY

23   HAVE A PROCEDURE SET IN PLACE.  I'M INFORMED THAT FOR 20-ODD

24   YEARS, THIS IS THE PROCEDURE THAT'S IN PLACE.  THEY HAVE

25   COMPLIED WITH IT.  IT HASN'T BEEN MODIFIED.

PDF created with pdfFactory trial version www.pdffactory.com

77

1          THE COURT:  WHAT'S THE OBJECTION, THEN, TO ME

2     PUTTING THE COURT'S IMPRIMATUR ON IT AND SAYING, THEN, "DON'T

3     DO THIS BECAUSE YOU'RE SUBJECT TO CONTEMPT SANCTIONS IN

4     ADDITION TO WHATEVER SANCTION THAT THE CIA WOULD IMPOSE UPON

5     YOU"?

6          I MEAN, THIS IS, AFTER ALL, A JUDICIAL PROCEDURE.

7     AND ONE OF THEIR CONCERNS IS THAT WHOEVER GETS THE REQUEST

8     FROM THEM DOESN'T PICK UP THE PHONE AND SAY, "HEY, MS. CHU,

9     LET ME TELL YOU WHAT THEY'RE ASKING FOR."

10         SO WHY SHOULDN'T I ALSO ENDEAVOR TO POLICE THAT THAT

11    DOESN'T HAPPEN?  BY SAYING THAT, I DON'T HAVE ANY REASON TO

12    BELIEVE IT'S GOING TO HAPPEN.  I ACCEPT THAT THOSE ARE THE

13    PROCEDURES.  WHERE THIS IS DIFFERENT, THIS ISN'T A REQUEST

14    MADE INDEPENDENT OF THE JUDICIAL SYSTEM.  THIS IS A REQUEST

15    BEING MADE PURSUANT TO AN ACTIVE CASE.

16         MS. CHU:  CERTAINLY, YOUR HONOR.  WE DID DISCUSS

17    THOSE WITH THE REPRESENTATIVES OF THE OFFICE OF GENERAL

18    COUNSEL, WHO ARE PRESENT HERE FOR THE HEARING TODAY.

19         THE COURT:  WHO IS THE GENTLEMAN?

20         IS THAT AGREEABLE TO YOU?  I DON'T SECOND-GUESS THAT

21    YOU'RE GOING TO HAVE FIDELITY TO THESE PROCEDURES, BUT THIS

22    ARISES IN A DIFFERENT CONTEXT THAN YOU MAY SEE A REQUEST.  I

23    UNDERSTAND SOMEBODY MAY -- THERE MAY NOT BE A COURT CASE

24    PENDING.  SOMEBODY MAY WANT INFORMATION.  YOU MAY GET IT TO

25    THEM.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          HERE THEIR CONCERN IS OBVIOUS.  THEY DON'T WANT THE

2     PROSECUTION TO KNOW WHAT THEY'RE ASKING ABOUT.  THE

3     PROSECUTION IS NOT ENTITLED TO THAT, AND I DON'T THINK THEY'RE

4     GOING TO CALL YOU AND ASK YOU FOR THAT.  I UNDERSTAND THAT'S

5     PART OF YOUR REGULATIONS AND MANNER OF DOING BUSINESS, BUT

6     WHAT THE HECK?

7          IF I SAY, "IT'S ALSO ORDERED BY THE COURT.  AND IF

8     ANYBODY VIOLATES THOSE CIA REGULATIONS AND DOES DISCLOSE TO

9     THE GOVERNMENT, THEY FACE THE SANCTION OF CONTEMPT FROM THIS

10    COURT," DO YOU HAVE A PROBLEM WITH THAT?

11         MR. MC PHERSON:  NO, YOUR HONOR.

12         JOHN MC PHERSON FROM THE CIA OFFICE OF GENERAL

13    COUNSEL.

14         I HAVE NO OBJECTION.  IT IS A RATHER ROUTINE REQUEST

15    THAT WE RECEIVE ALL THE TIME.  I WOULD HOPE IT WOULD BE

16    HANDLED ROUTINELY AND NOT TRY TO DRAFT SOME EQUIVALENT RULE 60

17    PROCEDURES ON THERE TO TIE --

18         THE COURT:  I DON'T INTEND TO DO THAT.  IN FACT, AS

19    I SAID, I INTEND TO STRIKE OUT THE PROVISION WHERE YOU HAVE TO

20    NOTIFY ME OR THEM OF WHO IS IN THE CHAIN OF COMMAND IN MAKING

21    THESE DECISIONS.  I DON'T THINK YOU HAVE TO DO THAT.  AND I AM

22    GOING TO NARROW THE DEFINITION OF THE CIA AS THE

23    DECISION-MAKERS ON THESE REQUESTS.  THAT'S ONLY COMMON SENSE.

24         AT THE END OF THE DAY, IT HAS TO BE ENFORCEABLE BY

25    COURT RULES AS WELL AS CIA RULES BECAUSE WE'VE HAD SOME

PDF created with pdfFactory trial version www.pdffactory.com

1    PROBLEMS ALREADY, AS YOU HEARD, MR. MC PHERSON, ON INFORMATION

2    GETTING OUT THAT OUGHT NOT TO GET OUT.  I'M INCLINED TO DO

3    THAT.

4            YOU DON'T HAVE A PROBLEM WITH THAT?

5            MR. MC PHERSON:  I DON'T HAVE A PROBLEM WITH THAT.

6            THE COURT:  WILL THAT DO, THEN, MR. DOBER?

7            MR. DOBER:  YES, YOUR HONOR.

8            THE COURT:  YOU WANT TO REDRAFT THIS ORDER, THEN?

9            MR. DOBER:  YES.

10           THE COURT:  LET ME TELL YOU WHAT I WANT YOU TO

11   ELIMINATE.

12           PAGE 2, LINE 8 THROUGH 11 ARE TO BE ELIMINATED.  AND

13   THEN ON PAGE 1, "IT IS HEREBY ORDERED THAT THE CIA

14   ADMINISTRATION," AND I WANT YOU TO PUT IN A PARENTHETICAL.

15   "(THAT IS, CIA OFFICIALS RESPONSIBLE FOR AUTHORIZING CONTACT

16   PURSUANT TO THE 2(E) REGULATIONS)," END QUOTE AND CLOSED

17   PARENTHESES.  WITH THAT, I'LL SIGN THAT SECOND PROTECTIVE

18   ORDER.

19           LET ME TURN TO THE THIRD ONE.

20           THIS IS ESSENTIALLY A REITERATION OF THE REQUEST

21   THAT I MAKE THE OBLIGATIONS RECIPROCAL.  I'M NOT INCLINED TO

22   DO THAT, MR. DOBER.  I'M HAPPY TO HEAR FROM YOU.  HERE'S WHAT

23   LED ME.

24           FIRST, I WAS INCLINED TO SAY, "OKAY.  THAT'S FINE.

25   LET'S DO IT."  BUT I WAS PERSUADED, AFTER LISTENING TO THE

PDF created with pdfFactory trial version www.pdffactory.com

1   COURT SECURITY OFFICER AS WELL AS GOVERNMENT COUNSEL, THEY

2   HAVE THE INTEREST IN THE FIRST INSTANCE WITH RESPECT TO

3   CLASSIFIED INFORMATION.  THEY'RE THE ONES THAT DETERMINE THAT

4   IT'S CLASSIFIED.  SO IT'S A LITTLE SUPERFLUOUS FOR ME TO SAY,

5   "OH, BY THE WAY, DON'T RELEASE ANY CLASSIFIED INFORMATION OR

6   YOU'RE GOING TO BE SANCTIONED BY THE COURT."  THEY'RE GOING TO

7   HAVE HELL TO PAY AT A MUCH HIGHER LEVEL IF THEY DO THAT.

8           MR. DOBER:  YOUR HONOR, TWO POINTS IN RESPONSE TO

9   THAT.

10          FIRST, IN TERMS OF THE DETERMINATION OF THE

11  CLASSIFICATION OF THE DOCUMENTS, I DO THINK THERE'S A

12  DIFFERENCE HERE BETWEEN THE GOVERNMENT AGENCY, THE DEPARTMENT

13  OF JUSTICE, AND THE CENTRAL INTELLIGENCE AGENCY.  THE

14  EXECUTIVE ORDER THAT'S IN PLACE AND THAT HAS BEEN IN PLACE

15  VESTS INDIVIDUAL AGENCIES WITH THE AUTHORITY TO INITIAL

16  CLASSIFICATION DECISIONS.

17          SO IT'S NOT THE DEPARTMENT OF JUSTICE MAKING THE

18  CLASSIFICATION DECISIONS.  IT'S THE CIA MAKING

19  CLASSIFICATIONS.  AND WE'RE SAYING THE DEPARTMENT OF JUSTICE

20  SHOULD HAVE TO LIVE BY THE SAME CLASSIFICATIONS THAT THE CIA

21  DOES, JUST AS WE SHOULD.

22          THE COURT:  DOESN'T CIPA SORT OF SUPPLANT ALL THIS

23  AND REQUIRE EXACTLY WHAT YOU'RE SAYING?  I'M TOLD THEY HAVE

24  EVERYTHING IN A SKIFF AND THAT -- CERTAIN MATERIALS WEREN'T

25  TURNED OVER TO ME UNTIL I HAD A SKIFF IN PLACE, TOO.  THEY

PDF created with pdfFactory trial version www.pdffactory.com

1   WERE RETAINED, I THINK IN ONE INSTANCE, BY MR. HALPERN.

2   WASN'T THERE ONE OF THE DECLARATIONS IN THIS CASE THAT YOU HAD

3   TO HANG ONTO BECAUSE I DIDN'T HAVE SECURE FACILITIES?

4           MR. HALPERN:  YES.  WE KEPT THEM IN A LOCKED SAFE IN

5   A SKIFF.

6           THE COURT:  SO IT JUST SEEMS TO ME THAT I'M KIND OF

7   BUTTING IN, MR. DOBER, WHERE THERE'S NO NEED FOR ME TO BUTT

8   IN.

9           MR. DOBER:  WELL, YOUR HONOR, WE SUBMIT THAT WE

10  THOUGHT THAT CIPA DID APPLY TO BOTH SIDES.  BUT WHAT WE HEARD

11  IN THE EARLIER HEARING IS THAT CIPA ITSELF DOESN'T APPLY AND

12  THAT THE COURT HAS THE AUTHORITY TO SUPPLY OTHER MEASURES.

13  AND THAT'S WHAT THIS WAS INTENDED TO ADDRESS; TO SAY, "YOU SET

14  THE RULES.  NOW YOU PLAY WITH THEM.  YOU DON'T PICK UP THE

15  PHONE -- WE CAN'T PICK UP THE PHONE AND TALK ABOUT CLASSIFIED

16  INFORMATION.  YOU DON'T PICK UP THE PHONE AND TALK ABOUT

17  CLASSIFIED INFORMATION."

18          THE SPECIFIC CONCERN THAT WAS ARTICULATED IN THE

19  HEARING WAS PLACING DOCUMENTS WITHIN -- THAT THEY HAVE

20  NUMEROUS GOVERNMENT FACILITIES.  THAT ORDER WAS SPECIFICALLY

21  DRAFTED TO ALLOW THEM TO VIEW DOCUMENTS AT OTHER GOVERNMENT

22  FACILITIES THAT MEET THE REGULATIONS.  IT'S NOT JUST A SECURE

23  AREA THAT'S SERVED BY THE COURT SECURITY OFFICER.  IT TAKES

24  THE COURT SECURITY OFFICER OUT OF THE EQUATION FOR THEM.  AND

25  FOR THOSE REASONS, WE THINK IT'S APPROPRIATE.

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. HALPERN:  AGAIN, MR. DOBER JUST MISSED THE

2     ENTIRE POINT.  WE DON'T NEED A COURT SECURITY OFFICER.  WE

3     ALREADY HAVE A COURT SECURITY OFFICER.  THERE'S SOMEBODY

4     DESIGNATED IN OUR OFFICE TO SERVE THAT EXACT FUNCTION.  HE

5     MAINTAINS CONTROL OVER THE SKIFF.  HE MAKES SURE EVERYTHING IS

6     KEPT IN THE RIGHT FRAMEWORK.  WHAT HE'S SUGGESTING IS THE

7     DUPLICATIVE FRAMEWORK THAT CLEARLY HAS NO PURPOSE WHATSOEVER

8     IN THIS CONTEXT.

9          THE COURT:  I AGREE.  I CONFIRM AND AFFIRM MY

10    ORIGINAL DECISION.  THE THIRD PROTECTIVE ORDER WILL NOT ISSUE.

11         NOW, BEFORE WE LEAVE THIS SUBJECT ENTIRELY,

12    MR. LONDERGAN, I'M REALLY INTERESTED IN A DETERMINATION OF

13    WHETHER THERE MIGHT BE ANOTHER SKIFF AVAILABLE AND WHETHER WE

14    CAN MAKE A SECOND COPY OF THIS TO BE PLACED IN A SKIFF IN THE

15    EASTERN DISTRICT OF VIRGINIA OR SOMEWHERE CLOSE BY.

16         WILL YOU LOOK INTO THAT AND REPORT BACK TO ME?

17         MR. LONDERGAN:  YES, YOUR HONOR.

18         THE COURT:  I TAKE YOUR POINT THAT THERE MAY BE SOME

19    MATERIAL THAT'S SO CLASSIFIED THAT THEY ONLY WANT ONE COPY

20    AND ONE COPY ONLY.  AND IF THAT'S THE CASE, THEN MAYBE

21    MR. MAC DOUGALL AND CO-COUNSEL MAY HAVE TO TRAVEL HERE TO LOOK

22    AT IT.  BUT IF IT'S NOT THE CASE FOR THE GREAT BULK OF IT AND

23    NO ONE HAS HEARTBURN OVER HAVING A SECOND COPY KEPT IN A

24    SECURE FACILITY, A FULLY SECURE FACILITY, TO FACILITATE REVIEW

25    BY COUNSEL AND FOR THEIR CONVENIENCE, THEN I'D APPRECIATE YOU

PDF created with pdfFactory trial version www.pdffactory.com

1    DOING THAT.  THAT WAS PART OF WHAT INFORMED MY DECISION ON THE

2    DENIAL OF THE MOTION FOR VENUE TRANSFER.

3            MR. LONDERGAN:  LOOKING DOWN THE ROAD A PIECE, THE

4    COMPLICATION COMES WHEN IT'S NOT BEEN FILED CLASSIFIED.  THE

5    CLASSIFIED FILINGS OF VENUE IS HERE AND FILINGS ARE HERE.

6    WHEN IT COMES TO THAT PARTICULAR POINT, THEN THE FILES WOULD

7    NEED TO BE PREPARED HERE.

8            THE COURT:  WELL, WE'LL CROSS THAT BRIDGE.

9            YOU'VE TOLD ME NOW IN THE INTERIM THAT SOME ACCESS

10   HAS BEEN AVAILABLE TO MR. FOGGO'S COUNSEL THROUGH YOUR OWN

11   EFFORTS ON THESE CD'S THAT HAVE BEEN PREPARED THUS FAR?

12           MR. LONDERGAN:  YES, YOUR HONOR.  THERE'S A SEALED

13   PACKAGE WHICH CONTAINS SOME DISKS WITH CLASSIFIED INFORMATION

14   WHICH HAS BEEN AVAILABLE IN A SKIFF FOR THE CLEARED MEMBERS OF

15   THE FOGGO DEFENSE TEAM TO REVIEW.

16           THE COURT:  TO THE EXTENT THAT WE CAN EXPAND THAT

17   ARRANGEMENT SO AS TO AVOID UNWARRANTED UNNECESSARY TRAVEL

18   HERE, I WOULD APPRECIATE IT.  MAYBE YOU CAN KEEP ME INFORMED

19   AS TO WHAT EFFORTS CAN BE MADE OR MAYBE IT'S IMPOSSIBLE

20   IN SOME INSTANCES.

21           MR. LONDERGAN:  YES, SIR.

22           THE COURT:  LET ME TURN NOW BACK TO THE CASE

23   INVOLVING MR. WILKES AND MR. MICHAEL.  WE'VE JUMPED AROUND.

24           MR. GRANGER, YOU HAVE A MOTION TO CONTINUE THE

25   MOTION HEARING.  I UNDERSTAND YOU'RE RECENTLY TO THE CASE.

PDF created with pdfFactory trial version www.pdffactory.com

1        I'M INCLINED TO GIVE YOU TIME TO GET UP TO SPEED AND

2   FILE APPROPRIATE MOTIONS AS IT AFFECTS MR. MICHAEL, BUT I'M

3   ALSO INTENT ON SETTING A TRIAL DATE IN THE CASE TODAY NOT NEXT

4   MONTH, BUT THE MONTH AFTER.  BUT I HAVE IN MIND THAT THE

5   WILKES/MICHAEL CASE WILL GO FIRST.  I HAVE IN MIND THAT WE'RE

6   GOING TO TRY THAT CASE MID-AUGUST.  SO WITH THAT IN MIND, I'M

7   HAPPY TO HEAR FROM YOU.

8        MR. GRANGER:  YOUR HONOR, JUST A FEW PRELIMINARY

9   MATTERS.  I WANT TO ECHO MR. MAC DOUGALL'S SENTIMENT.  WE

10  APPRECIATE HOW WE OUT-OF-TOWNERS HAVE BEEN TREATED.

11       YOUR HONOR, I DO WANT TO POINT OUT WITH RESPECT TO

12  MY MOTION THAT THE GOVERNMENT DID NOT OPPOSE THE SECOND BASIS

13  FOR MY MOTION THAT UNLESS MORE TIME IS GRANTED, MR. MICHAEL'S

14  COUNSEL CANNOT EFFECTIVELY PREPARE FOR TRIAL.  AND I

15  EMPHASIZE -- I DON'T WANT TO REPEAT ALL THE DETAILS IN MY

16  PAPERS -- THE AMOUNT OF DISCOVERY IS TRULY EXTRAORDINARY.  AND

17  IF THE PAPER AND, FOR LACK OF A BETTER WORD, "ELECTRONIC"

18  PAPER WEREN'T VOLUMINOUS ENOUGH, IF YOU INCLUDE CPU'S AND HARD

19  DISKS, I'M LOOKING AT SOME 150 COMPUTERS.

20       THERE ARE SPECIFIC STRATEGIC REASONS WHY IT'S

21  IMPORTANT FOR ME TO GO THROUGH AS MUCH OF THAT AS POSSIBLE.  I

22  COULD EXPLAIN THAT TO YOUR HONOR IN LITERALLY LESS THAN A

23  MINUTE.  I JUST WOULDN'T WANT TO DO THAT IN OPEN COURT.  I'D

24  BE HAPPY TO DO THAT IN A BRIEF SEALED PROCEEDING.

25       THE COURT:  ACTUALLY, IT'S EVIDENT TO ME WHY YOU'D

PDF created with pdfFactory trial version www.pdffactory.com

1    WANT TO DO THAT.  I UNDERSTAND THAT YOU WANT TO BE UP TO SPEED

2    WITH ALL ASPECTS OF THE DISCOVERY.

3            BUT WHAT I'M TALKING ABOUT IS A TRIAL DATE THREE

4    MONTHS FROM NOW.  ROUGHLY THREE MONTHS.  I'M TALKING ABOUT THE

5    SECOND WEEK OF AUGUST.  SO JUNE, JULY, AND THEN INTO AUGUST.

6            MR. GRANGER:  THE INFORMATION IS THAT VOLUMINOUS.

7            I ALSO WANTED TO MAKE A COMMENT WITH RESPECT TO

8    SOMETHING THAT WAS SAID IN THE GOVERNMENT'S MOTION THAT I

9    THINK IS WORTH BRINGING TO THE COURT'S ATTENTION.

10           AT PAGE 5 OF THE GOVERNMENT'S MOTION PAPERS -- AND I

11   DON'T KNOW IF THIS IS PLAYING ANY ROLE IN HOW YOUR HONOR IS

12   EVALUATING THIS ISSUE, BUT THERE'S A REFERENCE ON

13   APPROXIMATELY LINES 18 TO 19 -- AND I'LL READ FROM THE

14   GOVERNMENT'S PAPERS -- "DEFENDANT'S NEW COUNSEL URGED THE

15   GOVERNMENT TO DELAY THE PURSUIT OF SPECIFICALLY GOING INTO ANY

16   CHARGES."  THAT'S NOT TRUE.  NEITHER I NOR MR. LEVITT NOR

17   MR. FRANK EVER REQUESTED ANY DELAY IN THE SUPERSEDING CHARGES.

18   I DON'T DISPUTE THE GOVERNMENT'S ACCOUNT THAT PRIOR COUNSEL

19   MIGHT HAVE DISCUSSED THAT, BUT I DID NOT.  AND I DO WANT TO

20   POINT THAT OUT.  I DON'T THINK THAT SHOULD HAVE BEEN IN THERE.

21           THE COURT:  NO, THAT HAD NO EFFECT ON MY JUDGMENT OF

22   WHAT WOULD BE AN APPROPRIATE TIME FOR THE CASE TO PROCEED.

23           MR. GRANGER:  THANK YOU, JUDGE.

24           WITH RESPECT TO THE OBTAINING OF INFORMATION, I'LL

25   GIVE YOU AN EXAMPLE OF SOME OF THE DIFFICULTIES WE'RE HAVING.

PDF created with pdfFactory trial version www.pdffactory.com

1           THE DAY AFTER THE APRIL 2ND HEARING, YOUR HONOR, I

2    SPENT THE DAY GOING THROUGH INFORMATION AT THE U.S. ATTORNEY'S

3    OFFICE HERE.  UNFORTUNATELY, THERE WAS SOME MIX-UP, AND I WAS

4    NOT ABLE TO SEE ANY DOCUMENTS AT THE FBI OFFICES.

5           IT TOOK APPROXIMATELY A MONTH FOR THE GOVERNMENT TO

6    GET THOSE MATERIALS COPIED TO ME.  I DON'T CRITICIZE THE

7    GOVERNMENT FOR THAT.  IT WAS NOT EASY TO DO, ESPECIALLY THE

8    ELECTRONIC MATERIALS.  BUT IT TOOK A MONTH TO SIMPLY GET THE

9    INFORMATION WE HAD CALLED FOR, I THINK APPROXIMATELY 13 BOXES.

10          TOMORROW, I'VE MADE ARRANGEMENTS.  THE FBI HAS BEEN

11   EXTREMELY HELPFUL.  I APPRECIATE IT.  THEY'RE GOING TO PULL

12   DOCUMENTS THAT WE HAD DESIGNATED FROM VARIOUS SEARCH WARRANT

13   RETURNS, AND THEY'VE TOLD ME THAT THEY'RE SPREAD OUT AMONG

14   SOME 150 BOXES.  WE'VE GOT TO GO THROUGH IT.

15          WE TRIED TO GET A COMMERCIAL COPYING SERVICE IN TO

16   LOOK THROUGH IT AND COPY THEM.  WE SENT THEM THE MATERIALS.

17   THEY PROMPTLY CALLED US BACK AND SAID, "WE CAN'T GIVE -- IT

18   WOULD BE AN EXTRAORDINARY EFFORT ON OUR PART AND VERY

19   EXPENSIVE FOR YOU IF WE HAVE TO GO ON SITE AND TRY TO FIND

20   THESE DOCUMENTS."  SO WE'VE MADE ARRANGEMENTS TO COME OUT AND

21   DO THAT OURSELVES.

22          YOU MAY RECALL AT THE APRIL 2ND HEARING, YOUR HONOR

23   SUGGESTED TO THE GOVERNMENT TO MOVE THINGS ALONG THAT THE

24   GOVERNMENT CONSIDER EARLY DISCLOSURE OF 3500 MATERIALS.

25   MR. HALPERN SAID HE WOULD TAKE THAT UNDER ADVISEMENT.  THREE

PDF created with pdfFactory trial version www.pdffactory.com

87

1    DAYS LATER, WE GOT A LETTER FROM THE GOVERNMENT SAYING, "WE'RE

2    GOING TO DO THAT.  WE'RE GOING TO PRODUCE 3500 MATERIAL ON A

3    ROLLING BASIS OVER" -- I BELIEVE THE TIME FRAME WAS THE NEXT

4    TWO WEEKS.  AT THE TIME THAT REPRESENTATION HAD BEEN MADE, WE

5    HAD THE GRAND JURY TRANSCRIPT OF MR. MICHAEL'S TESTIMONY, AND

6    WE HAD THE SEARCH WARRANTS AFFIDAVITS.

7              WE HAVEN'T GOTTEN ANYTHING SINCE.  I DON'T KNOW WHY

8    THAT'S THE CASE, BUT WE HAVEN'T GOTTEN ANYTHING.  I MENTION

9    THAT BECAUSE SIMPLY THE PRODUCTION OF MATERIALS SEEMS TO BE

10   TAKING ITS OWN COURSE.

11             I WILL BE HERE WHENEVER YOUR HONOR TELLS ME TO TRY

12   THIS CASE, BUT I ALSO MENTIONED THAT A MID-AUGUST TRIAL MEANS

13   I'M NOT -- I HAD PLANS TO BE OUT OF THE COUNTRY.  I'LL CANCEL

14   THEM IF I HAVE TO.

15             THE COURT:  WHEN DO YOU PLAN TO BE OUT OF THE

16   COUNTRY?

17             MR. GRANGER:  SEPTEMBER 3RD THROUGH SEPTEMBER 10TH.

18   I KNOW THAT MY LOCAL COUNSEL'S NOT AVAILABLE TO ME JULY 25TH

19   THROUGH ABOUT THE FIRST WEEK IN AUGUST.  AND NORMALLY, THREE

20   MONTHS TO PREPARE WOULD BE A LONG TIME, YOUR HONOR.  I ASSURE

21   YOU WE ARE WORKING VERY, VERY HARD.  BUT THERE IS JUST A

22   VOLUMINOUS AMOUNT OF MATERIAL.

23             THE COURT:  IS THERE A PROSPECT, MR. GRANGER, YOU

24   COULD -- I DON'T WANT YOU TO -- IF YOU PAID FOR A VACATION OR

25   SOMETHING LIKE THAT, I DON'T WANT YOU TO LOSE IT ALTOGETHER.

PDF created with pdfFactory trial version www.pdffactory.com

1   IS THERE A PROSPECT THAT POSSIBLY YOU COULD MOVE YOUR

2   SEPTEMBER 3RD THROUGH 10TH PLANS?  CAN YOU MOVE THOSE BACK?

3          MR. GRANGER:  THERE'S ABOUT 25 OTHER PEOPLE

4   INVOLVED, LITERALLY.

5          THE COURT:  MR. GERAGOS, I KNOW YOU'RE GOING TO BE

6   IN TRIAL.

7          MR. GERAGOS:  THE TRIAL THAT WAS SCHEDULED IN THE

8   EASTERN DISTRICT OF PENNSYLVANIA WAS MOVED FROM JUNE 11TH --

9   I WAS JUST THERE LAST WEEK.  JUDGE KAUFFMAN MOVED IT TO JULY

10  9TH.  I THEN RECEIVED -- WHEN I WAS OUT OF THE COUNTRY

11  ACTUALLY IN CONNECTION WITH THAT CASE SETTING UP RULE 15'S, I

12  RECEIVED A CALL SAYING THAT IT WAS BEING MOVED TO JULY 16TH.

13  AND THE TERM THEY USED IS THAT "YOU'VE BEEN ATTACHED," WHICH

14  THEY APPARENTLY USE IN THAT DISTRICT WITH GREAT FREQUENCY.

15         THAT CASE REQUIRES ME TO GO TO MOLDOVO, ROMANIA AND

16  POTENTIALLY CUBA IN ORDER TO DO THE RULE 15 DEPOSITIONS PRIOR

17  TO THAT TRIAL.  I HAVE TWO OTHER TRIALS TO DO BEFORE THEN.  SO

18  I'M LOCKED UP LITERALLY THROUGH MID- TO END OF AUGUST, AND

19  THAT'S PUSHING ALL THE VARIOUS STATE CASES ASIDE.

20         THE COURT:  I'M TALKING ABOUT MID- TO LATE AUGUST.

21  I UNDERSTAND YOU'RE GOING TO BE MOVING FROM ONE TRIAL TO THE

22  OTHER.  FRANKLY, I DON'T KNOW HOW YOU'RE GOING TO GET

23  GOVERNMENT LICENSES TO GO OVER TO SOME OF THOSE PLACES IN

24  CONNECTION WITH YOUR JULY 16TH TRIAL DATE.

25         MR. GERAGOS:  NEITHER DO I, AND THAT'S ONE OF THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   REASONS THAT WE HAVE A PENDING MOTION TO DISMISS IN THAT

2   JURISDICTION AS WELL.

3           THE COURT:  BUT IT SOUNDS LIKE MAYBE LATER AUGUST

4   WOULD WORK FOR YOU.  I'D LIKE TO ACCOMMODATE MR. GRANGER.

5           LET ME TELL THE PROBLEM THAT I AM FACED WITH.  AND

6   IT'S NOT YOUR PROBLEM.  IT'S MINE.  BUT I HAVE TO ACCOMMODATE

7   IT.

8           I HAVE THIS CASE, AND THEN I'LL HAVE MR. WILKES AND

9   MR. FOGGO'S CASE TO FOLLOW.  THAT'S MY INTENTION.  THEN I HAVE

10  ANOTHER LARGE CASE THAT STARTS IN JANUARY THAT'S BEEN PRE-SET.

11  AND I'VE REMINDED THE LAWYERS AT EACH JUNCTURE WE'RE GOING IN

12  JANUARY.  IT'S, AT THIS POINT, A DEATH PENALTY CASE.

13          SO I'VE GOT TO GET THESE CASES TRIED SOMETIME

14  BETWEEN NOW AND DECEMBER.

15          MR. GRANGER:  IS AN OCTOBER OR NOVEMBER DATE

16  POSSIBLE?

17          THE COURT:  I THINK THAT'S TOO LATE.  THAT WOULD NOT

18  GIVE ME ENOUGH TIME, I DON'T THINK.  I'VE LOOKED AT THE

19  INDICTMENTS IN BOTH CASES.  I DON'T THINK THAT WOULD GIVE ME

20  ENOUGH TIME TO GET BOTH CASES TRIED BY THE END OF THE YEAR.

21  THAT'S MY FIRM INTENTION TO DO THAT.

22          NOW, CAN I ADJUST THIS A LITTLE BIT?  CAN I PUT IT

23  AFTER YOU GET BACK ON SEPTEMBER 10TH?  I DON'T KNOW IF YOU

24  WANT TO COME RIGHT BACK FROM VACATION AND GO INTO TRIAL.

25  MAYBE YOU CAN TAKE SOME STUFF WITH YOU.

PDF created with pdfFactory trial version www.pdffactory.com

1        BUT WE'VE GOT TO GET A JUMP ON THIS,        MR.

2   GRANGER, RIGHT AWAY AFTER YOU GET BACK IF I GO OUT THAT FAR.

3   AND MR. GERAGOS HERE, HE'S SIGNING UP FOR NEW STUFF ALL THE

4   TIME.  SO I WANT TO GET MY ATTACHMENT CLAWS INTO HIM, TOO.

5   THAT'S GOING TO GET NAILED DOWN TODAY.

6        MR. GERAGOS:  I'M LOOKING HARD FOR SEPTEMBER.

7        THE COURT:  YOU NEED TO TELL ANY SUBSEQUENT JUDGE

8   "LOOK, I'M GOING TO BE IN CONTEMPT IF I DON'T SHOW UP ON THIS

9   DATE."  THIS IS A FIRM DATE THAT I'VE AGREED TO, AND THE JUDGE

10  IS RESOLUTE ABOUT THIS.

11       MR. GERAGOS:  THAT'S FINE.

12       THE COURT:  WELL, WITH THAT SAID, MR. GRANGER, I'LL

13  ACCOMMODATE YOU.

14       WHAT IF WE'RE TO START THE 18TH?  THAT WILL GIVE YOU

15  A WEEK TO CATCH YOUR BREATH.

16       MR. GRANGER:  I'LL BE HERE.

17       THE COURT:  MR. GERAGOS, THE 18TH OF SEPTEMBER?

18       MR. GERAGOS:  YES, SIR.

19       THE COURT:  THIS ISN'T LIKE STATE COURT.  AS YOU

20  KNOW, THERE'S NO TRIAL CALL.  WE GO ON THE 18TH.

21       MR. GRANGER:  JUDGE, COULD WE INQUIRE AS TO WHEN WE

22  MIGHT BE GETTING THAT 3500 MATERIAL?

23       THE COURT:  MR. HALPERN, HOW ABOUT THAT?  I SAW SOME

24  CORRESPONDENCE WHERE YOU WERE JOCKEYING BACK AND FORTH ABOUT

25  RECIPROCAL DISCOVERY, BUT I DON'T THINK IT WAS WITH

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    MR. GRANGER, WAS IT?

2              MR. FORGE:  NO, I DON'T THINK IT WAS, YOUR HONOR.

3              YOUR HONOR, WE WILL -- GIVEN COUNSEL'S COMMITMENT TO

4    GO TO TRIAL ON SEPTEMBER 18TH, THAT WAS OUR CONCERN.  OUR

5    CONCERN WAS THAT WE ARE GOING TO CONTINUE TO PUSH THIS THING

6    OUT.  GIVEN COUNSEL'S COMMITMENT TO BE READY TO GO ON THE

7    18TH, WE WILL PROVIDE EXPANSIVE JENCKS PRODUCTION.

8              THE COURT:  RIGHT NOW?  YOU'LL START RIGHT AWAY?

9              MR. FORGE:  WE'LL DO IT 70 DAYS IN ADVANCE.

10             WHAT DOES THAT WORK OUT TO BE?

11             THE COURT:  I DON'T KNOW.

12             WHY DON'T YOU GIVE IT TO THEM NOW SO THEY CAN

13   PREPARE?  IF IT'S NOT STUFF THAT IMPLICATES WITNESS SECURITY,

14   MR. FORGE, YOU KNOW, I DON'T GET THAT.  I UNDERSTAND YOU HAVE

15   THE RIGHT UNDER THE RULE.  THIS FELLOW IS GOING TO HAVE TO

16   WORK LIKE A BANSHEE TO BE PREPARED.  HE'S LATE INTO THE CASE.

17   SO GIVE HIM THE STUFF OVER.

18             MR. FORGE:  I THINK WE'RE TALKING -- JUNE 1ST WOULD

19   BE EVEN MORE THAN 70 DAYS.  WE'RE ONLY TWO WEEKS BEFORE THAT.

20   SO --

21             THE COURT:  SO GIVE HIM THE STUFF TOMORROW.

22             MR. FORGE:  WE'LL TURN IT OVER.  WITH THE COURT'S

23   CONTEMPT ORDER HANGING OVER ANYBODY'S HEAD --

24             THE COURT:  IT'S NOT THAT.  LOOK, FIRST OF ALL, I

25   UNDERSTAND I HAVE NO AUTHORITY TO ORDER YOU TO DO IT.  BUT

PDF created with pdfFactory trial version www.pdffactory.com

92

1   HAVING SAID THAT, ALL THREE OF YOU ARE VERY EXPERIENCED.  AND

2   THE CONVENTION IN THIS DISTRICT HAS NOT BEEN TO HANG ONTO

3   WITNESS STATEMENTS UNTIL AFTER THE WITNESS HAS TESTIFIED ON

4   DIRECT.  IT HASN'T BEEN LIKE THAT FOR A LONG TIME.

5           ARE THERE SITUATIONS WHERE THAT'S CALLED FOR?  SURE.

6   I'VE HAD SITUATIONS LIKE THAT WHEN I WAS A LAWYER WHERE

7   SOMEBODY'S SAFETY WAS IMPLICATED, AND I DIDN'T WANT TO

8   JEOPARDIZE THAT.  I HAVEN'T HEARD ANY OF THAT HERE.  I

9   UNDERSTAND IT'S A BIG CASE, BUT LET THEM BE PREPARED FOR THIS.

10          MR. FORGE:  WE'LL PROVIDE IT.

11          JUST SO YOU KNOW, JUST SO YOU DON'T THINK I'M

12  STICKING TO A RULE WITHOUT -- OR A POLICY WITHOUT ANY THINKING

13  BEHIND IT, THERE ARE OBSTRUCTION CHARGES HERE.  THERE ARE

14  OTHER PEOPLE THAT WERE ALLEGEDLY INVOLVED BY MR. MICHAEL IN

15  TERMS OF HIS OBSTRUCTION.  SO IT'S NOT AS IF THIS IS JUST A

16  STRAIGHTFORWARD CASE WHERE THERE'S NO CONCERN WHATSOEVER THAT

17  DOCUMENTS AND WITNESSES --

18          THE COURT:  I THINK MR. MICHAEL WELL KNOWS NOW THE

19  LAST THING HE OUGHT TO BE DOING IS ANYTHING THAT ANYBODY COULD

20  POSSIBLY CHARACTERIZE AS POTENTIALLY AN OBSTRUCTION OF

21  JUSTICE.  GIVE HIM THE STUFF OVER.  MR. GERAGOS, TOO.  BECAUSE

22  HE'S GOING TO BE READY ON THE 18TH JUST LIKE MR. GRANGER.

23          MR. FRANK, YOU'LL BE BACK THEN?

24          MR. FRANK:  YES.

25          THE COURT:  THAT CASE IS SET.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1        IS THERE ANYTHING ELSE I NEED TO DO ON IT?  YOU WANT

2   MEET TO SET AN INTERMEDIATE DATE FOR HEARING ANY MOTIONS THAT

3   YOU THINK ARE APPROPRIATE OR OUGHT TO BE BROUGHT ONCE YOU

4   BECOME MORE FAMILIAR WITH THE ENTIRETY OF THE DISCOVERY?

5        MR. GRANGER:  NOT AT THIS TIME, JUDGE.  WE'LL

6   ADDRESS THAT IN OUR PAPERS.

7        NOT TO BE TOO PICKY, I THINK I UNDERSTOOD

8   MR. FORGE'S POSITION TO EVOLVE FROM THE BEGINNING OF HIS

9   COMMENTS.  WE'RE GOING TO GET -- I THINK WE WENT FROM

10  EXPANSIVE 3500 TO COMPLETE?

11       MR. FORGE:  WE WILL PROVIDE MORE THAN THEY'RE

12  ENTITLED UNDER THE JENCKS ACT.  YOUR HONOR IS VERY FAMILIAR

13  WITH THE DEFINITION OF WITNESS STATEMENTS UNDER THE JENCKS

14  ACT.  I'M SURE MR. GRANGER IS AS WELL.  WE'LL GIVE THEM MORE

15  THAN WHAT THEY'RE ENTITLED TO.

16       THE COURT:  IF THE DISTINCTION IS ON WITNESS NOTES,

17  AGENTS' NOTES, I DON'T REQUIRE THEM TO TURN THAT OVER.

18  FREQUENTLY, THOSE NOTES ARE A MIX OF IMPRESSIONS AND VERBATIM

19  STATEMENTS AND THE LIKE.  THAT'S WHAT I'M TALKING ABOUT.

20  ANYTHING THAT'S MADE ITS WAY INTO A FORMAL REPORT THAT

21  CONTAINS WITNESS STATEMENTS, I WANTS YOU AND MR. GERAGOS TO

22  HAVE THAT.

23       BY THE END OF THIS WEEK?

24       MR. FORGE:  WE'LL CERTAINLY START PRODUCING THAT BY

25  THE END OF THIS WEEK.  THEY'LL HAVE EVERYTHING THAT WE HAVE

PDF created with pdfFactory trial version www.pdffactory.com

94

1    WITHIN THE NEXT WEEK AND A HALF.

2              THE COURT:  THAT'S PRETTY FIRM, MR. GRANGER.  WITHIN

3    A WEEK AND HALF, YOU'LL HAVE THE INDICATED JENCKS MATERIAL.

4              MR. GERAGOS:  ELECTRONICALLY?

5              MR. FORGE:  I CAN'T SAY WHETHER IT'S ALL GOING TO BE

6    ELECTRONIC OR NOT.  MR. GERAGOS WOULD LIKE ME TO HAND-DELIVER

7    IT.  THAT MIGHT BE A PROBLEM.

8              MR. GERAGOS:  I'LL COME AND PICK IT UP IF IT'S

9    ELECTRONIC.

10             MR. FORGE:  WE'LL GIVE IT TO THEM.  IF WE HAVE IT

11   AVAILABLE IN ELECTRONIC FORMAT, THEY'LL GET IT IN ELECTRONIC

12   FORMAT.

13             THE COURT:  YOU MIGHT HAVE TO SEND IT TO CUBA.

14             MR. GRANGER:  LASTLY, JUDGE, TO THE EXTENT ANY NEW

15   3500 MATERIAL IS GENERATED, THAT THE GOVERNMENT TRY AS SOON AS

16   POSSIBLE --

17             THE COURT:  YOU'LL DO THAT; RIGHT?  YOU'LL ACCEDE TO

18   A ROLLING OBLIGATION?

19             MR. FORGE:  ABSOLUTELY.

20             THE COURT:  LET ME SET A MOTIONS IN LIMINE DATE AS

21   WELL.

22             DO YOU ANTICIPATE THAT THERE ARE GOING TO BE COMPLEX

23   MOTIONS IN LIMINE IN THIS CASE?

24             MR. FORGE:  NO, I DON'T THINK THERE ARE MANY

25   COMPLICATED ISSUES.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

95

1          THE COURT:  I'LL TELL YOU WHAT, I'LL SET IT -- I'M

2     JAMMED HERE A LITTLE BIT.  I'D ORDINARILY SET IT THE DAY

3     BEFORE, MR. GRANGER.  I DON'T WANT TO SET IT ON THE 10TH

4     BECAUSE THAT'S WHEN YOU'RE COMING BACK.  I CAN SET IT ON THE

5     14TH.

6          DO YOU INTEND TO BE IN TOWN THE WEEKEND BEFORE THE

7     TRIAL WOULD START?  OR I'LL PUT IT ON MONDAY THE 17TH UNLESS

8     YOU DON'T THINK THAT WILL LEAVE ENOUGH TIME.

9          MR. GRANGER:  MAY I HAVE ONE MOMENT, YOUR HONOR?

10               THE COURT:  SURE.

11          (PAUSE IN PROCEEDINGS)

12          MR. GRANGER:  YOUR INCLINATION WAS THE 14TH?

13          THE COURT:  I CAN DO THAT.  THAT'S A FRIDAY.  THAT

14     PRESUMES THAT YOU'LL COME INTO TOWN THE WEEKEND BEFORE THE

15     TRIAL STARTS, AND I CAN HEAR MOTIONS IN LIMINE ON THE 14TH.

16     OTHERWISE, I'LL CLEAR THE AFTERNOON OF THE 17TH, WHICH WOULD

17     BE MONDAY AFTERNOON.  I'LL HEAR AND DECIDE MOTIONS IN LIMINE

18     ON MONDAY AFTERNOON.  WE'LL START WITH JURY SELECTION ON THE

19     MORNING OF THE 18TH.

20          MR. GRANGER:  WE CAN HAVE THE 17TH.

21          THE COURT:  AT 2:00.  KEEP THAT CALENDAR CLEAR THAT

22     DAY.

23          MR. FORGE, HOW LONG DO YOU ANTICIPATE IT'S GOING TO

24     TAKE YOU TO PUT YOUR CASE-IN-CHIEF ON?

25          MR. GERAGOS:  LAST TIME, THEY SAID FOUR WEEKS.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I'VE LOOKED AT THE ALLEGATIONS.

2          MR. FORGE:  I THINK WE CAN PUT OUR CASE ON IN THREE

3     WEEKS.

4          THE COURT:  TWO, YOU SAID?

5          MR. FORGE:  I DIDN'T SAY FOUR.  I SAID THREE.

6          THE COURT:  WELL, OKAY.  THAT WOULD BE THE OUTSIDE,

7     I WOULD THINK.

8          MR. FORGE:  WE'RE PRETTY EFFICIENT.  THAT WILL BE

9     THE OUTSIDES.  OF COURSE, IT DEPENDS ON THE

10    CROSS-EXAMINATIONS.  I KNOW COUNSEL HERE WILL PROBABLY HAVE

11    LENGTHY CROSS-EXAMINATIONS.  SO IT COULD BE --

12         THE COURT:  WELL, WE HAVE EXPERIENCED LAWYERS WHO

13    I'M SURE WILL CUT TO THE CHASE.  I'M GOING TO ANTICIPATE

14    PROBABLY TWO, TWO AND A HALF WEEKS FOR THE GOVERNMENT'S

15    CASE-IN-CHIEF.

16         NOW, ONE LAST QUESTION.  THIS CASE HAS HAD SOME

17    PUBLIC ATTENTION HERE IN SAN DIEGO.  IF THERE IS ANY REQUEST

18    FOR ANY KIND OF PRE-SCREENING OF THE JURY, I WANT THAT TO BE

19    FILED WELL IN ADVANCE SO THAT I CAN ACT ON THAT AND, IF

20    APPROPRIATE, TAKE MEASURES THAT ARE REQUESTED.  BY NO LATER

21    THAN JULY 16TH, I WANT ANYONE WHO'S SO INCLINED TO FILE A

22    MOTION ON WHAT PROCEDURES, IF ANY, MIGHT BE APPROPRIATE WITH

23    RESPECT TO JURY SELECTION HERE.  SPECIFICALLY, MR. GERAGOS AND

24    MR. GRANGER, IF YOU ENVISION SOME KIND OF JURY QUESTIONNAIRE.

25         MR. GERAGOS:  I DO.

PDF created with pdfFactory trial version www.pdffactory.com

1        THE COURT:  THAT NEEDS TO BE FILED WITH ME SO THAT

2    WE CAN GET IT OUT AND HAVE A PANEL READY TO GO, PRE-SCREENED,

3    AND HAVE TIME TO GET THE RESPONSES BACK AND GO OVER THEM WITH

4    COUNSEL.

5        NOW, LET ME -- BEFORE WE END, MR. MAC DOUGALL, MY

6    INCLINATION IS TO HAVE THIS CASE TRAIL, THE FIRST ONE, THE

7    WILKES/MICHAEL CASE, AND TRY THIS CASE ON THE HEELS OF THE

8    OTHER ONE.  MAYBE A WEEK BREAK, SOMETHING LIKE THAT.

9        I UNDERSTAND WE'RE GOING TO HAVE SOME OTHER WORK TO

10   DO IN BETWEEN NOW AND THEN, IN PARTICULAR THE CIPA

11   DETERMINATIONS AND THAT THERE WAS AN INDICATION THAT THERE

12   WILL BE A MOTION FOR SEVERANCE.  I'M NOT GOING TO FORECLOSE

13   ANY OF THAT.

14       I WANT TO GIVE YOU A TENTATIVE IDEA THAT MY PLAN IS

15   WITHIN A WEEK OF COMPLETING THE TRIAL IN MR. WILKES'S AND

16   MR. MICHAEL'S CASE, IT BE WOULD MY INTENTION TO IMPANEL A JURY

17   I'M ASSUMING NOW SOMETIME MID-OCTOBER AND TRY THE SECOND CASE

18   INVOLVING MR. FOGGO.

19       DO YOU HAVE ANY PRELIMINARY THOUGHTS ON THAT?

20       MR. MAC DOUGALL:  I AGREE WITH THE COURT THAT THERE

21   ARE LIKELY TO BE ISSUES INVOLVING CIPA, PARTICULARLY GIVEN THE

22   NEW ALLEGATIONS IN THE SUPERSEDING INDICTMENT.

23       IN THAT REGARD, YOUR HONOR, YOU MADE SOME REFERENCE

24   TO CORRESPONDENCE BACK AND FORTH.  I DON'T HAVE THE

25   TRANSCRIPT, SO THIS IS GOING TO BE ORAL HISTORY.

PDF created with pdfFactory trial version www.pdffactory.com

1    WHEN WE WERE HERE APRIL 2ND, MY RECOLLECTION, AS WE

2 WERE ARGUING THE RULE 16 MOTION AND THE MOTION FOR A BILL OF

3 PARTICULARS, THAT IN CONSIDERATION OF MR. GERAGOS AND I

4 WITHDRAWING OUR MOTIONS, THAT THE GOVERNMENT AGREED,

5 MR. HALPERN, SUBJECT TO CONSULTATION WITH HIS COLLEAGUES, TO

6 DO EARLY PRODUCTION OF JENCKS, BRADY, GIGLIO, AND SO FORTH.  I

7 WON'T BORE THE COURT WITH THE SERIES OF LETTERS THAT WENT BACK

8 AND FORTH, BUT --

9    THE COURT:  I SAW ONE OR TWO.

10    THEY WANT YOU TO RECIPROCATE?

11    MR. MAC DOUGALL:  YES.  AND I RESPONDED TO THAT AND

12 SAID, "WE HEREBY RECIPROCATE, BUT WE DON'T HAVE," AND WE

13 TRUTHFULLY DO NOT HAVE, "ANY RULE 16(B) MATERIAL AT THIS

14 POINT."  OBVIOUSLY, IT'S A ROLLING OBLIGATION AS WE ACQUIRE IT

15 TO TURN IT OVER.

16    I GOT A LETTER ON FRIDAY SAYING, "THANK YOU.  THAT'S

17 VERY NICE.  BUT WE'LL GIVE IT TO YOU 70 DAYS IN ADVANCE OF

18 TRIAL."

19    THE COURT:  MR. HALPERN?

20    MR. FORGE:  SAME ISSUE, YOUR HONOR.  IF THEY COMMIT

21 TO A TRIAL DATE, THEN FINE, WE'LL TURN IT OVER.  BUT UNTIL WE

22 GET A FIRM COMMITMENT FROM COUNSEL THEY WILL BE AVAILABLE AND

23 READY TO PROCEED TO TRIAL --

24    THE COURT:  I HAVE SET THIS FIRST CASE NOW,

25 MR. MAC DOUGALL, FOR SEPTEMBER 18TH.  LET'S ASSUME THAT IT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   TAKES A MONTH.  I WOULD BE PREPARED TO START ON THE SECOND

2   CASE ON OR ABOUT OCTOBER 16TH.

3            HAVE YOU HAD A CHANCE TO LOOK AT YOUR SCHEDULE AND

4   WILL YOU BE AVAILABLE ASSUMING ALL THE OTHER WORK GETS DONE

5   BETWEEN NOW AND THEN, THE CIPA DETERMINATIONS THE COURT RULES

6   ON AND ANY OTHER MOTIONS?

7            MR. FORGE:  I'LL CHECK WITH CO-COUNSEL.

8            THE COURT:  TAKE A MINUTE AND CHECK.  I THINK

9   MR. DOBER IS SHOOTING YOU A NOTE.

10                  (PAUSE IN PROCEEDINGS)

11           MR. MAC DOUGALL:  THAT DATE IS NOT A PROBLEM.

12  HOWEVER, AS THE COURT POINTED OUT, THERE'S A BIG BUT.  WE

13  HAVEN'T EVEN RECEIVED OUR TOP SECRET CLEARANCES YET.  ONE OF

14  MY COLLEAGUES HAS ONE FROM A PRIOR JOB THAT'S ALLOWED HIM TO

15  DO A LITTLE BIT MORE IN TERMS OF TALKING TO MR. FOGGO.

16           ALL MY NEIGHBORS HAVE BEEN TALKED TO.  MY 7TH GRADE

17  ENGLISH TEACHER CALLED ME AND SAID, "WHAT DID YOU DO?  THE FBI

18  IS KNOCKING ON MY DOOR."  THAT PROCESS IS OUT OF OUR HANDS.

19  AND WE REALLY -- I'M BEING ABSOLUTELY CANDID WITH THE COURT.

20  WE HAVEN'T BEEN ABLE TO TALK TO MR. FOGGO ABOUT THE GUTS OF

21  THIS CASE YET.  WITHOUT THINGS LIKE JENCKS MATERIAL BEING

22  FORTHCOMING, WE'RE GOING TO HAVE TO RE-URGE OUR MOTIONS AGAIN.

23  I'M JUST AFRAID THAT WHATEVER COMMITMENT WE MAKE IS GOING

24  TO --

25           THE COURT:  ISN'T PART OF THAT HEALED BY MY GRANTING

PDF created with pdfFactory trial version www.pdffactory.com

1    YOUR SECOND PROTECTIVE ORDER?  I'VE TAKEN THE POSITION THAT

2    I'M NOT GOING TO TRY AND POLICE YOUR DISCUSSIONS WITH

3    MR. FOGGO, THAT THAT'S BETWEEN YOU AND HIM.  AND WHATEVER

4    CONTRACT OBLIGATIONS HE HAS WITH THE CIA MAY BIND HIM,

5    ALTHOUGH I THINK HE GETS TO DEFEND HIMSELF AGAINST A CRIMINAL

6    CHARGE BY DISCUSSING RELEVANT MATTERS WITH HIS OWN LAWYERS.

7             SO I DON'T UNDERSTAND HOW ANY OF THAT IS AN

8    IMPEDIMENT PREPARING AT THIS POINT.  I DO UNDERSTAND THAT

9    UNTIL YOU GET THAT CLEARANCE, YOU'RE NOT GOING TO HAVE FULL

10   ACCESS TO ALL THE RELEVANT MATERIALS.

11            BUT MR. LONDERGAN, THAT'S FORTHCOMING, ISN'T IT?

12   AREN'T THEY WORKING ON THOSE CLEARANCES FOR MR. FOGGO'S

13   DEFENSE TEAM?

14            MR. LONDERGAN:  YES, YOUR HONOR.

15            THE COURT:  CAN YOU ASK THEM TO HURRY IT UP?  I MEAN

16   THAT RESPECTFULLY, BUT WE NOW HAVE A TRIAL DATE.  I DON'T WANT

17   THE TAIL TO WAG THE DOG AND HAVE SOMEBODY COME IN AND SAY, "WE

18   HAVEN'T BEEN ABLE TO TALK TO HIS 4TH GRADE ENGLISH TEACHER, SO

19   YOU'RE GOING TO HAVE TO WAIT ON THIS."

20            MR. GERAGOS:  COULD I WEIGH IN ON THIS?

21            THE COURT:  YES.

22            MR. GERAGOS:  HOW MUCH TIME WERE YOU EXPECTING TO

23   GIVE US BETWEEN THE TWO TRIALS?

24            THE COURT:  WELL, THAT WILL DEPEND ON WHAT THE

25   DEFENSE IS.  THEY'RE TELLING ME TWO, TWO AND A HALF WEEKS.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   WE'RE GOING TO START SEPTEMBER 18TH.  THAT MEANS WE WOULD

2   CONCLUDE THE GOVERNMENT'S CASE AROUND THE BEGINNING OF

3   OCTOBER.  AND I DON'T KNOW AT THIS POINT WHETHER THE DEFENSE

4   WILL PUT ON ANY CASE.  IF IT DOESN'T, THEN WE HAVE ABOUT TWO

5   WEEKS, MR. GERAGOS.  BUT I'M PUTTING AN ATTACHMENT ON YOU FOR

6   THAT TIME, ALSO.

7             MR. GERAGOS:  I DON'T EVER MIND BEING IN SAN DIEGO

8   AT THAT TIME OF YEAR.

9             IS THERE A WAY WE CAN GET A LITTLE MORE TIME BETWEEN

10  THE TWO TRIALS?

11            THE COURT:  OCTOBER 23RD?

12            MR. HALPERN:  THAT'S WHAT I WAS GOING TO SUGGEST.  I

13  THINK THAT WORKS WITH THE COURT'S SCHEDULE BECAUSE THIS TRIAL

14  IS A BIT SHORTER.  I CERTAINLY THINK WE CAN PUT ON OUR CASE IN

15  TWO WEEKS.

16            THE COURT:  THE WILKES/MICHAEL CASE?

17            MR. HALPERN:  NO.  THE WILKES/FOGGO CASE.  THAT'S

18  THE SHORTER TRIAL.

19            THE COURT:  THE 23RD, MR. GERAGOS?  THAT WILL GIVE

20  YOU SOME BREATHING OPPORTUNITY.

21            MR. GERAGOS:  YES.

22            THE COURT:  WILL THAT WORK FOR YOU, MR. MAC DOUGALL?

23            MR. MAC DOUGALL:  YES.

24            THE COURT:  I'LL DO MY BEST, AND YOU CAN FILE ANY

25  EX PARTE REQUESTS THAT YOU THINK ARE APPROPRIATE TO HELP

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   EXPEDITE THIS.  THE GOVERNMENT NOW TELLS ME THAT THEY'RE GOING

2   TO HONOR THE COMMITMENT THAT THEY'VE MADE TO OTHER COUNSEL TO

3   GIVE YOU THE JENCKS MATERIAL.  SO I THINK YOU SHOULD BE UP TO

4   SPEED.

5               .

6               MR. HALPERN:  ABSOLUTELY, YOUR HONOR.  IT MAY ONLY

7   BE THE CLASSIFIED NATURE OF THE JENCKS.  WE HAVE ALREADY

8   PROVIDED MATERIAL TO THE OFFICE OF GENERAL COUNSEL THAT HAS TO

9   BE REVIEWED.  BUT SUBJECT TO THAT --

10               THE COURT:  WE MADE THAT DISTINCTION LAST TIME.  I

11   THINK MR. MAC DOUGALL UNDERSTANDS THAT.  ALL EXCEPT THE

12   CLASSIFIED MATERIAL WILL BE TURNED OVER TO YOU STARTING

13   IMMEDIATELY AND FULL PRODUCTION WITHIN A WEEK AND A HALF.

14               MR. HALPERN:  JUST SO THERE'S NO CONFUSION HERE --

15   AND THIS IS PART OF THE PROBLEM THAT MR. WILKES FACES.  I

16   WOULD SAY 99 PERCENT OF THE JENCKS WILL BE CLASSIFIED.  THAT'S

17   JUST HOW IT IS.  THERE WILL SOME THAT'S NOT.  AND BECAUSE YOU

18   WANT IT, AS SOON AS THAT CLEARANCE IS IN PLACE, WE'RE READY TO

19   PRODUCE IT.

20               THE COURT:  MR. HALPERN, GIVE EVERYTHING YOU CAN

21   EXCEPT THE CLASSIFIED INFORMATION.

22               IS THERE A WAY THAT YOU CAN PRODUCE THE CLASSIFIED

23   JENCKS TO HIS COLLEAGUE WHO ALREADY HAS THE CLEARANCE?

24               MR. HALPERN:  ABSOLUTELY.

25               MR. MAC DOUGALL:  WE'RE ALL CLEARED TO THE SECRET

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    LEVEL.

2              THE COURT:  YOU CAN MAKE ACCOMMODATIONS, THEN,

3    MR. MAC DOUGALL, WITH YOUR COLLEAGUE WHO HAS APPROPRIATE

4    CLEARANCE, AND THEY'LL TURN OVER FOR HIM TO REVIEW WHATEVER IS

5    CLASSIFIED AT THIS POINT.

6              LET ME THEN SET THAT AT THIS POINT AS A FIRM TRIAL

7    DATE ON THE WILKES/FOGGO MATTER.

8              THE TRIAL WILL BEGIN ON THE 23RD OF OCTOBER.

9              NOW, MR. MAC DOUGALL, I PUT TO YOU AND MR. GERAGOS

10   THE SAME QUESTION.

11             YOU WANT AN EARLY IN LIMINE HEARING OR IS IT

12   SUFFICIENT THAT I HEAR IN LIMINE MOTIONS ON THE 22ND, THE

13   MONDAY BEFORE THE TRIAL STARTS?

14             MR. GERAGOS:  THE 22ND IS FINE.

15             THE COURT:  IS THAT GOOD WITH YOU?

16             MR. MAC DOUGALL:  YES.

17             THE COURT:  HERE'S WHAT I'M GOING TO ASK YOU TO DO,

18   MR. MAC DOUGALL:  I'M GOING TO ASK YOU TO OBSERVE, ON BEHALF

19   OF MR. FOGGO, THE SAME DEADLINE THAT I SET FOR PRESENTING ME

20   WITH ANY SPECIAL REQUESTS AFFECTING THE JURY.  I SET THE 16TH

21   OF JULY.  IF YOU HAVE IN MIND THE QUESTIONNAIRE OR ANY OTHER

22   OUT-OF-THE-ORDINARY JURY PROCEDURES, YOU'LL FILE YOUR BRIEF

23   WITH ME ON THE 16TH, ON OR BEFORE JULY 16TH.

24             SO MOTIONS IN LIMINE ON MR. FOGGO'S CASE WILL BE

25   HEARD THE 22ND AT 2:00.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          AND MR. WILKES'S SECOND CASE THE 22ND AT 2:00.

2          TISH, KEEP THAT CALENDAR CLEAR THAT AFTERNOON EXCEPT

3   FOR THOSE MATTERS AS WELL.

4          JURY TRIAL BEGINS FOR MR. WILKES AND MR. FOGGO ON

5   THE 23RD AT 9:00 A.M.

6          ARE THERE ANY OTHER MATTERS THAT I HAVEN'T DECIDED

7   THAT I NEED TO?

8          MR. MAC DOUGALL:  NO.  I WOULD JUST ASK AND I GUESS

9   FOREWARN YOU THAT IF WE HAVEN'T HEARD ABOUT THE SECURITY

10  CLEARANCES VERY SOON, WE MAY BE BACK IN COURT BECAUSE WE MAY

11  BE RUNNING OUT OF RUNWAY VERY QUICKLY.

12         THE COURT:  CALL ME -- YOU'RE AUTHORIZED,

13  NOTWITHSTANDING MY STANDING ORDER IN CRIMINAL CASES, TO CALL

14  ME DIRECTLY.  I'LL GET THE REPORTER.  WE'LL HAVE AN EX PARTE

15  CONFERENCE.  I'LL PROBABLY BRING IN THE COURT SECURITY

16  OFFICER, WHO'S ON TOP OF THAT AND MOVING THAT ALONG.

17         MR. LONDERGAN, WHATEVER YOU CAN DO IN THESE SEVERAL

18  AREAS ABOUT MAKING ACCESS TO THE MATERIAL MORE CONVENIENT AND

19  GETTING THEIR CLEARANCES, I'D APPRECIATE IT.

20         MR. LONDERGAN:  YES, YOUR HONOR.

21         THE COURT:  ANYTHING ELSE FROM ANYONE?

22         MR. GERAGOS:  MY ONLY QUESTION IS I UNDERSTAND THE

23  FIRM TRIAL DATE.  I UNDERSTAND THE ORDERS AND EVERYTHING ELSE.

24         BUT WHAT IF WE DON'T HAVE OUR INVESTIGATION DONE AS

25  TO THE LEAKS?

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1        THE COURT:  WE'LL CROSS THAT BRIDGE WHEN WE COME TO

2    IT.  I ASKED MR. FORGE TO HAVE THE PEOPLE CALL ME.  I'M GOING

3    TO -- MY PHILOSOPHY IS, MR. GERAGOS, IT'S BETTER NOW TO DEAL

4    WITH A FIRM TRIAL DATE SO THAT WHOEVER CALLS, I CAN SAY,

5    "LOOK, I'VE GOT TRIAL DATES SET, AND YOU NEED TO GET TO THE

6    BOTTOM OF THIS.  BECAUSE IF THERE'S ANY EXCULPATORY MATERIAL,

7    I NEED TO PRESENT IT TO DEFENSE COUNSEL BEFORE THE FIRST

8    WITNESS IS CALLED."  SO I'LL STAY ON TOP OF THAT.

9        MR. FORGE, PLEASE GET AHOLD OF WHOEVER IT IS AND

10   HAVE THEM CONTACT ME SO I CAN TELL THEM ABOUT THESE DATES.

11        MR. FORGE:  I WILL.

12        THE COURT:  THANK YOU ALL.

13        WE'RE IN RECESS.

14                    --O0--

15

16

17            I HEREBY CERTIFY THAT THE TESTIMONY

18            ADDUCED IN THE FOREGOING MATTER IS

19            A TRUE RECORD OF SAID PROCEEDINGS.

20

21            S/EVA OEMICK                5-21-07

22            EVA OEMICK                  DATE
             OFFICIAL COURT REPORTER

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com