```
 1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF CALIFORNIA
 2
                HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
 3

 4   UNITED STATES OF AMERICA,        )
                                      )
 5              PLAINTIFF,            )   CASE NO. 07CR00329-LAB
                                      )
 6        VS.                         )
                                      )   SAN DIEGO, CALIFORNIA
 7   KYLE DUSTIN FOGGO,  (1)          )   JULY 9, 2007
     BRENT ROGER WILKES, (2)          )   2:00 P.M.
 8                                    )
                                      )
 9              DEFENDANTS.           )
     ─────────────────────────────────)
10

11                     REPORTER'S TRANSCRIPT

12                        MOTION HEARING
                        STATUS CONFERENCE
13

14   APPEARANCES:
     FOR THE GOVERNMENT:           KAREN P. HEWITT, U.S. ATTORNEY
15                                 BY: PHILLIP L.B. HALPERN, ESQ.
                                       JASON A. FORGE, ESQ.
16                                     VALERIE CHU, ESQ.
                                   ASSISTANT U.S. ATTORNEYS
17                                 880 FRONT STREET
                                   SAN DIEGO, CA. 92101
18
     FOR DEFENDANT FOGGO:          AKIN GUMP STRAUSS HAUER & FELD
19   (TELEPHONIC)                  BY:  W. RANDOLPH TESLIK, ESQ.
                                        MARK MAC DOUGALL, ESQ.
20                                      PAUL BUTLER, ESQ.
                                   1333 NEW HAMPSHIRE AVE., N.W.
21                                 WASHINGTON, DC 20036-1564

22   FOR DEFENDANT WILKES:         GERAGOS & GERAGOS
                                   BY:  MARK J. GERAGOS, ESQ.
23                                 350 SOUTH GRAND AVENUE, 39TH FL.
                                   LOS ANGELES, CA. 90071
24

25
```

PDF created with pdfFactory trial version www.pdffactory.com

2

```
 1    CONTINUED APPEARANCES:

 2
      FOR DEFENDANT MICHAEL:        LAW OFFICES OF RAYMOND GRANGER
 3                                  BY:  RAYMOND R. GRANGER, ESQ.
                                    757 THIRD AVENUE, 7TH FLOOR
 4                                  NEW YORK, NY 10017

 5

 6

 7

 8    COURT REPORTER:              EVA OEMICK
                                   OFFICIAL COURT REPORTER
 9                                 UNITED STATES COURTHOUSE
                                   940 FRONT STREET, STE. 2190
10                                 SAN DIEGO, CA 92101
                                   TEL: (619) 615-3103
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

3

1        **SAN DIEGO, CALIFORNIA - MONDAY, JULY 9, 2007 - 2:00 P.M.**

2             THE CLERK:  CALLING NO. 17 ON THE CALENDAR,

3    07CR00329, UNITED STATES OF AMERICA VERSUS KYLE DUSTIN FOGGO

4    AND BRENT WILKES.

5             MR. GERAGOS:  GOOD AFTERNOON, YOUR HONOR.

6             MARK GERAGOS WITH MR. WILKES, WHO IS PRESENT.

7             THE COURT:  GOOD AFTERNOON.

8             MR. HALPERN:  PHIL HALPERN, JASON FORGE, AND VALERIE

9    CHU FOR THE GOVERNMENT.

10            MR. MAC DOUGALL:  GOOD AFTERNOON, YOUR HONOR.

11            MARK MAC DOUGALL IN WASHINGTON WITH RANDY TESLIK AND

12   PAUL BUTLER FOR DEFENDANT DUSTY FOGGO.  AND WE ARE GRATEFUL TO

13   THE COURT FOR INDULGING US TO BE ABLE TO APPEAR BY TELEPHONE.

14            THE COURT:  MR. MAC DOUGALL, GOOD AFTERNOON TO YOU

15   AND MR. FOGGO AND MR. TESLIK.

16            IF, AT ANY POINT, MR. MAC DOUGALL, YOU CAN'T HEAR

17   WHAT'S BEING SAID IN COURT, SPEAK UP RIGHT AWAY.  I'M GOING TO

18   HAVE EVERYBODY STAY CLOSE AND SPEAK INTO THE MICROPHONES.  BUT

19   IF THAT HAPPENS, JUST INTERRUPT US.  OKAY?

20            MR. MAC DOUGALL:  THANK YOU.

21            THE COURT:  HOLD ON.  WE'VE GOT MR. GRANGER.  WE'RE

22   GOING TO TRY TO GET HIM ON, TOO.

23            MR. GRANGER:  JUDGE, I'M ON.

24            THE COURT:  MR. GRANGER, DO YOU WANT TO STATE YOUR

25   APPEARANCE?

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

4

1          MR. GRANGER:  RAYMOND GRANGER, G-R-A-N-G-E-R,

2     COUNSEL FOR JOHN MICHAEL IN U.S. VERSUS WILKES AND MICHAEL.

3          THANK YOU FOR GIVING ME THE OPPORTUNITY TO LISTEN IN

4     TODAY.

5          THE COURT:  SAME THING, MR. GRANGER.  IF, AT ANY

6     POINT, YOU CAN'T HEAR SOMETHING, JUST SPEAK UP AND WE'LL GO

7     FROM THERE.

8          MR. WILKES, GOOD AFTERNOON.

9          MR. MAC DOUGALL, IS MR. FOGGO WITH YOU?

10         MR. MAC DOUGALL:  NO, YOUR HONOR, HE'S NOT.  MY

11    PARTNERS, RANDY TESLIK AND PAUL BUTLER, ARE HERE.

12         THE COURT:  YOU WAIVE HIS APPEARANCE FOR PURPOSES OF

13    THIS HEARING?

14         MR. MAC DOUGALL:  WE DO, YOUR HONOR.

15         THE COURT:  MY UNDERSTANDING IS THERE ARE TWO

16    MATTERS OF BUSINESS BEFORE THE COURT:  THERE'S A RENEWED

17    MOTION REGARDING THE INVESTIGATION INTO THE ALLEGED LEAK OF

18    INFORMATION BEFORE THE GRAND JURY.

19         MR. GERAGOS:  THAT'S CORRECT.  I DON'T KNOW IF I'D

20    CALL IT RENEWED.  I GUESS IT'S AN ONGOING REQUEST FOR A STATUS

21    CONFERENCE AS TO THAT.  I HAVEN'T HEARD A THING, AND I THINK

22    MR. MAC DOUGALL FILED IN HIS JOINDER THAT HE HASN'T BEEN

23    CONTACTED.

24         THE COURT:  HE DID.

25         THE OTHER MOTION THAT I'M AWARE OF IS A MOTION FOR

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1     THE COURT TO RECONSIDER THE DECISION NOT TO COMPEL MR. GERAGOS

2     TO GO THROUGH SOME KIND OF SECURITY CHECK.

3           LET ME DEAL FIRST WITH -- IS THAT RIGHT, THAT THOSE

4     ARE THE TWO MATTERS IN FRONT OF ME TODAY?

5           MR. GERAGOS:  THAT'S CORRECT.

6           THE COURT:  MR. MAC DOUGALL, MR. GRANGER, YOU AGREE

7     WITH THAT?

8           MR. GRANGER:  YES.

9           MR. MAC DOUGALL:  I DO.

10          THE COURT:  LET ME DEAL FIRST WITH THE MATTER OF

11    THE STATUS REGARDING THE GRAND JURY LEAK INVESTIGATION.

12          ON JUNE 14TH, THE COURT RECEIVED A LETTER FROM

13    CAROLYN DELANEY, WHO IS THE EXECUTIVE ASSISTANT UNITED STATES

14    ATTORNEY IN THE EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO.

15    I'LL MAKE A COPY OF THIS LETTER AVAILABLE TO ALL PARTIES.  BUT

16    THE LETTER IS ADDRESSED TO ME.  AND THE LETTER FOLLOWS A

17    PERSONAL CONVERSATION I HAD WITH MS. DELANEY, WHO CALLED ME.

18    AND I ASKED HER TO PLEASE PUT IN WRITING SO THAT I COULD GIVE

19    IT TO COUNSEL THE GIST AND SUBSTANCE OF THE INFORMATION THAT I

20    AM ABOUT TO READ TO YOU.

21          IT READS -- AGAIN, DATED JUNE 14TH, 2007.  IT READS

22    "RE: GRAND JURY LEAK INVESTIGATION IN RE: WILKES, ET AL.  DEAR

23    JUDGE BURNS:  ON MAY 30TH, 2007, I WAS APPOINTED AS A SPECIAL

24    ATTORNEY TO THE UNITED STATES ATTORNEY GENERAL PURSUANT TO

25    28 USC SECTION 515 WITH REGARDS TO THE ABOVE-CAPTIONED MATTER.

PDF created with pdfFactory trial version www.pdffactory.com

6

1    AFTER CAREFUL CONSIDERATION, IT IS THE DECISION OF THE

2    DEPARTMENT OF JUSTICE THAT NO FURTHER INVESTIGATION OF THIS

3    MATTER IS WARRANTED.  THIS DECISION WAS MADE AFTER AN ANALYSIS

4    OF THE ALLEGED LEAK AND WITH THE CONCURRENCE OF THE OFFICE OF

5    THE INSPECTOR GENERAL AND THE OFFICE OF PROFESSIONAL

6    RESPONSIBILITY.  PLEASE FEEL FREE TO CONTACT ME IF YOU HAVE

7    REQUIRE ANY FURTHER INFORMATION.  SINCERELY, CAROLYN DELANEY."

8            AS I SAID, I'LL MAKE A COPY OF THIS AVAILABLE TO ALL

9    COUNSEL.

10           MR. GERAGOS:  I DON'T KNOW WHAT KIND OF

11   INVESTIGATION WAS DONE.  NOBODY WAS CONTACTED.  THAT'S ONE OF

12   THE GREAT INVESTIGATIONS OF ALL TIME.  YOU APPOINT A U.S.

13   ATTORNEY WHO SAYS, "AFTER CONSIDERING THIS, WE'RE NOT GOING TO

14   DO AN INVESTIGATION."  AS I REMEMBER, THIS COURT, IN NO

15   UNCERTAIN TERMS, SAID YOU'RE THE ONE WHO INSTRUCTS THE GRAND

16   JURORS ABOUT SECRECY IN THIS DISTRICT.

17           IF THIS IS THE EXTENT OF THIS, I WOULD ONLY POINT

18   THE COURT TO AN INVESTIGATION WHICH I'M INTIMATELY FAMILIAR

19   WITH WHICH PRODUCED A CONVICTION IN THE NORTHERN DISTRICT

20   WHERE THE CENTRAL DISTRICT WAS APPOINTED FOR GRAND JURY LEAKS.

21   AND IT TURNED OUT THAT IT CAME OUT OF THE DEFENSE CAMP.

22           WELL, THEY CERTAINLY DIDN'T CLOSE IT WITHOUT CALLING

23   ANYBODY.  IF FACT, THEY DIDN'T REST UNTIL THEY THREATENED TO

24   PUT REPORTERS IN PRISON.  AND THEN WHEN THAT FAILED -- THAT

25   HAVING FAILED, THEY ROLLED OVER A P.I. ONTO THE DEFENSE LAWYER

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

7

1   AND ENTERED INTO A PLEA AGREEMENT, WHICH I BELIEVE JUDGE WHITE

2   WOULDN'T EVEN GO ALONG WITH BECAUSE HE FELT IT WAS SUCH AN

3   EGREGIOUS VIOLATION.

4           I ONLY AGREED BECAUSE I WAS TOLD AT THE TIME --

5   IT WAS REPRESENTED HERE IN COURT WHEN I WAS LAST STANDING HERE

6   THAT THIS WAS GOING TO BE A LEGITIMATE INVESTIGATION.  HOW ANY

7   INVESTIGATION COULD TAKE PLACE WITHOUT CONTACTING EITHER ME OR

8   MR. MAC DOUGALL TELLS YOU WHAT THE SCOPE OF IT WAS.

9           I KNOW -- I BELIEVE THE COURT WAS LOOKING AT ME AND

10  SAYING IN SEPTEMBER YOU PLANNED ON THIS CASE GOING TO TRIAL.

11  HOW THIS CASE IS GOING TO GO TO TRIAL WITHOUT THIS

12  INVESTIGATION BEING DONE IN SOME KIND OF A REASONABLE FASHION

13  IS BEYOND ME.  BUT I WOULD NOW REQUEST THAT THE COURT ALLOW US

14  TO HAVE A HEARING.  AND I WOULD LIKE TO -- IN CONJUNCTION

15  WITH, I ASSUME, MY CO-COUNSEL, I'D LIKE TO SUBPOENA THE

16  REPORTERS IN.  IT'S ALREADY BEEN RULED.  WE'VE GOT 9TH CIRCUIT

17  LAW THAT THEY'VE GOT NO SOURCE PROTECTION.  LET ME PUT THEM

18  UNDER OATH.  LET'S REMAND THEM INTO CUSTODY IF THEY'RE GOING

19  TO ALLEGE SOME KIND OF SOURCE PROTECTION.  LET'S THEN PUT THE

20  U.S. ATTORNEYS UNDER OATH AND THE AGENTS UNDER OATH.  LET'S DO

21  A LEGITIMATE INVESTIGATION.

22          WHAT THEY'RE BASICALLY TELLING YOU IS TO GO POUND

23  SAND.  AND I DON'T BELIEVE THAT GIVEN WHAT HAPPENED IN THIS

24  CASE, THAT THAT'S APPROPRIATE IN THE LEAST.  THIS COURT SAID,

25  IN DENYING THE MOTION TO DISMISS, THAT IT WAS -- AND I ONLY

PDF created with pdfFactory trial version www.pdffactory.com

8

1    AGREED BECAUSE I BELIEVED AT THE TIME THERE WAS GOING TO BE A

2    LEGITIMATE INVESTIGATION.  THERE CLEARLY HAS NOT BEEN ANY

3    INVESTIGATION.  NOTHING'S BEEN DONE.

4         AND I DON'T UNDERSTAND HOW WE'RE SUPPOSED TO GO TO

5    TRIAL IN 60 DAYS NOT HAVING GOTTEN TO THE BOTTOM OF THIS WHEN

6    I BELIEVE THE COURT AND I AGREED WHEN WE TALKED ABOUT THIS

7    LAST TIME THAT CLEARLY THIS WOULD GO BRADY IF NOT GIGLIO

8    MATERIAL, THAT IT'S IMPEACHMENT.

9         AND CLEARLY, IF IT EMANATED FROM THE U.S. ATTORNEY'S

10   OFFICE HERE IN THIS DISTRICT, THE COURT HAS INDICATED THAT MAY

11   BE THE GROUNDS FOR A DISMISSAL IN TERMS OF -- I THINK YOU HAD

12   SAID ALMOST SARCASTICALLY "YOU CAN HANDICAP THIS UNLESS IT

13   CAME FROM YOU OR ONE OF YOUR COLLEAGUES," AND I SAID, "OR

14   MS. LAM," THAT THIS WAS SOMETHING OF GREAT -- IMPORTANT GREAT

15   SERIOUSNESS.

16        I THINK THAT LETTER IS WORTH PROBABLY LESS THAN THE

17   STAMP IT WAS MAILED ON IN TERMS OF WHAT THIS INVESTIGATION

18   WAS.  THERE WAS NO INVESTIGATION WHATSOEVER.  THEY'RE THUMBING

19   THEIR NOSE AT THE COURT AND COUNSEL.

20        THE COURT:  YOU WERE NEVER INTERVIEWED, I TAKE IT,

21   MR. GERAGOS, BY MS. DELANEY?

22        MR. GERAGOS:  I WASN'T EVEN CONTACTED.  THAT'S WHY I

23   FILED THE MOTION THAT I WANTED A STATUS CONFERENCE BECAUSE I

24   DID NOT WANT TO BE HERE COME AUGUST WITH YOU TELLING ME --

25   SAYING, "JUDGE, I'VE GOT TRIAL IN A MONTH, AND I HAVEN'T HEARD

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

9

1   A THING."  I WANTED TO HEAR IT.  I WANTED TO KNOW WHAT IT WAS.

2   I HAVEN'T HEARD A THING.  MR. MAC DOUGALL FILED, I BELIEVE

3   UNDER PENALTY OF PERJURY, A DECLARATION SAYING THE SAME THING.

4   WE HAVEN'T HEARD ONE THING, NOT ONE IOTA.

5           THE COURT:  MR. MAC DOUGALL, DO YOU HAVE A POSITION

6   ON THIS?

7           MR. MAC DOUGALL:  I JOIN IN EVERYTHING THAT

8   MR. GERAGOS JUST SAID.  AS THE COURT HEARD -- AND I DON'T HAVE

9   THE DATES IN FRONT OF ME.  MR. FORGE, I BELIEVE, WAS VERY

10  VOCAL ABOUT HIS UPSET AND DISCUSSED THE FACT THAT REPORTERS

11  QUITE APPARENTLY HAD COPIES OF A DRAFT INDICTMENT PRIOR TO ITS

12  PRESENTATION TO THE GRAND JURY.  I HAVE NOT BEEN CONTACTED.

13  AND AS THE COURT IS AWARE, ON THE RECORD I OFFERED TO

14  COOPERATE IN ANY WAY I CAN WITH THAT INVESTIGATION.

15          I KNOW WHAT I KNOW, AND I KNOW WHAT I HAVE TO TELL

16  WHOEVER INVESTIGATES IT.  LIKE MR. GERAGOS, I DON'T THINK WE

17  CAN UNDERSTAND HOW MS. DELANEY COULD REACH THAT CONCLUSION

18  WITHOUT AT LEAST ASKING THE QUESTIONS OF THE PEOPLE WHO HAVE

19  INFORMATION.

20          THE COURT:  ANYONE ELSE?  MR. GRANGER, DO YOU HAVE

21  ANY POINT OF VIEW ON THIS?

22          MR. GRANGER:  IF I MAY, YOUR HONOR, YES.

23          I HAD PLANNED ONCE -- WHOEVER THE INVESTIGATOR WAS,

24  WHOEVER THAT PERSON WAS WHO THEN GOT IN CONTACT WITH

25  MR. GERAGOS AND MR. MAC DOUGALL, AT THAT POINT I WAS GOING TO

PDF created with pdfFactory trial version www.pdffactory.com

1   WRITE TO THAT PERSON AND TO ADVISE THIS INDIVIDUAL THAT WE

2   ALSO HAVE SOME INFORMATION RELEVANT TO THAT INVESTIGATION.

3   AND LIKE MR. MAC DOUGALL AND MR. GERAGOS, I WAS LEFT WITH THE

4   IMPRESSION THAT THE GOVERNMENT HAD PLEDGED THERE WOULD BE A

5   THOROUGH INVESTIGATION.  IT BOGGLES THE MIND THAT AN

6   INVESTIGATION COULD BE CLOSED BEFORE ANYONE WAS CONTACTED.

7            THE COURT:  MR. FORGE AND MR. HALPERN, YOU WANT TO

8   RESPOND?

9            MR. FORGE:  AS WE INFORMED THE COURT SOME TIME AGO,

10  OUR OFFICE HAS BEEN RECUSED FROM THIS MATTER, HOWEVER WE'RE

11  GOING TO CHARACTERIZE IT, FOR QUITE SOME TIME NOW.  SO NEITHER

12  MR. HALPERN NOR MYSELF NOR MS. CHU HAVE ANY INFORMATION TO

13  ADD.  AND FRANKLY, WE'RE NOT IN A POSITION WHERE WE'RE EVEN

14  ENTITLED TO KNOW.

15           THE LETTER YOU READ RIGHT NOW IN COURT IS

16  INFORMATION WE'RE RECEIVING AT THE SAME TIME AS DEFENSE

17  COUNSEL IS RECEIVING IT.  AND I THINK THAT'S THE ONLY

18  APPROPRIATE WAY FOR US TO BE ADVISED OF INFORMATION IN THIS

19  CASE AS DEFENSE COUNSEL IS RECEIVING IT BECAUSE WE ARE RECUSED

20  FROM THE MATTER.  THERE IS NOTHING WE CAN ADD TO THIS

21  DISCUSSION.

22           I WILL SAY IN TERMS OF THE TRIAL DATE, ONE HAS

23  ABSOLUTELY NOTHING TO DO WITH THE OTHER.  BECAUSE AS YOUR

24  HONOR IS AWARE, THERE'S A LEGION OF CASES HOLDING THAT THE

25  GOVERNMENT IS UNDER NO OBLIGATION TO INVESTIGATE IN ORDER TO

PDF created with pdfFactory trial version www.pdffactory.com

1    DISCOVER OR CREATE BRADY OR GIGLIO INFORMATION.  SO THEY'RE

2    TWO VERY SEPARATE ISSUES.

3         WE'RE RECUSED FROM THE FIRST, WHICH IS THE INQUIRY

4    INTO THE ALLEGED RULE 6(E) VIOLATIONS.  WE ARE VERY INTIMATELY

5    INVOLVED WITH THE SECOND, WHICH IS THE TRIAL DATE.  AND I

6    DON'T THINK THE TWO HAVE ANYTHING TO DO WITH EACH OTHER.

7         THE COURT:  IT'S A LITTLE MORE SPECIFIC THAN THAT,

8    THOUGH, MR. FORGE.  BECAUSE HERE YOU'VE ACKNOWLEDGED THAT

9    THERE WAS A GRAND JURY LEAK.  AND I THINK THE LAST TIME WE

10   WERE HERE, YOU ACKNOWLEDGED THAT IF THAT LEAK CAME FROM

11   SOMEONE WHO'S GOING TO BE A WITNESS IN THE CASE, THAT THAT

12   FACT OUGHT TO BE KNOWN BY THE DEFENSE COUNSEL BECAUSE IT MIGHT

13   GO TO BIAS OR MOTIVATION TO TESTIFY A PARTICULAR WAY, INTEREST

14   IN THE OUTCOME OF THE CASE.  IT'S SOMETHING, IN SHORT, THEY

15   COULD USE TO ATTEMPT TO IMPEACH THE WITNESS IF THE WITNESS

16   VIOLATED A LAW, A CONVENTION OF THE COURT, MAYBE YOUR

17   INSTRUCTIONS IN LEAKING THIS, ASSUMING THAT HAPPENED.

18        I KNOW THAT THAT PRESUMES THAT THE PERSON IS GOING

19   TO BE A WITNESS.  BUT IT'S MORE SPECIFIC THAN WHAT YOU POSIT,

20   OF HAVING TO GO OUT AND TRY TO COME UP WITH EXCULPATORY

21   MATERIAL GIVEN THAT YOU ACKNOWLEDGE THAT SOMEBODY TIPPED OFF

22   NEWSPAPERS IN ADVANCE THAT THERE WERE IMMINENT INDICTMENTS AND

23   SOME -- I KNOW IT'S DISPUTED, BUT SOME DETAILS ABOUT WHAT THE

24   INDICTMENT WOULD CONTAIN.

25        MR. FORGE:  AND I JUST WANT TO MAKE CLEAR THAT AS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

12

1    FAR AS THOSE DETAILS GO, THAT'S AN ALLEGATION THAT'S BEEN

2    CARRIED AND SUPPORTED ONLY BY MR. GERAGOS'S DECLARATION, WHICH

3    IS UNSUPPORTED BY REFERENCE TO THE SPECIFIC SOURCES.  AND THAT

4    WAS ACTUALLY A POINT OF THE GOVERNMENT'S PAPERS A COUPLE OF

5    MONTHS AGO THAT THE UNSUBSTANTIATED ALLEGATIONS REALLY DON'T

6    CARRY A WHOLE LOT OF WEIGHT.

7            IT IS A LITTLE BIT, I THINK, CONTRADICTORY TO BE

8    ARGUING ON THE ONE HAND "HEY, WE NEED A FULL-BLOWN

9    INVESTIGATION," BUT, ON THE OTHER HAND, FILING A DECLARATION

10   BASED ON DOUBLE-HEARSAY AND NOT IDENTIFYING THE SOURCES.  BUT

11   THAT'S FOR MR. GERAGOS TO DECIDE, AND THAT'S FOR YOUR HONOR

12   AND WHATEVER ENTITY INQUIRES INTO THIS MATTER TO DECIDE.

13           THE COURT:  DID YOU INFORM THE PEOPLE AT THE

14   DEPARTMENT OF JUSTICE THAT YOU REPRESENTED TO THE COURT IN THE

15   FACE OF THE MOTION TO DISMISS THAT AN INVESTIGATION WAS

16   UNDERWAY?

17           MR. FORGE:  YOUR HONOR, I PROVIDED THEM WITH A

18   COMPLETE TRANSCRIPT OF THE HEARINGS, INCLUDING THE EXCERPTS,

19   AND SPECIFICALLY THE PORTION OF THE HEARING IN WHICH YOUR

20   HONOR MADE CLEAR THAT -- AT THE LAST APPEARANCE, YOU MIGHT

21   RECALL THAT I SAID, "LOOK, I WANT TO MAKE SURE WE'RE NOT

22   GETTING CAUGHT UP IN SEMANTICS HERE.  THE MATTER HAS BEEN

23   ASSIGNED OUT.  WHETHER THEY CONSIDER IT A, QUOTE/UNQUOTE,

24   'INVESTIGATION' OR 'INQUIRY' IS UP FOR THEM TO DECIDE."

25           YOU WERE VERY SPECIFIC IN YOUR RESPONSE.  YOU SAID,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

13

1    "I WANT YOU TO MAKE IT CLEAR TO THEM THAT YOU WANT THIS TO BE

2    INVESTIGATED OR YOU WILL BE VERY DISAPPOINTED," OR WORDS TO

3    THAT EFFECT, "IF IT'S NOT BEEN INVESTIGATED."  THAT SPECIFIC

4    LANGUAGE WAS PROVIDED TO THEM.  AND AGAIN, YOUR HONOR, SINCE

5    WE'RE RECUSED, ALL WE CAN DO IS PASS ON INFORMATION THAT

6    OCCURRED.  I DIDN'T KNOW THAT LETTER HAD BEEN RECEIVED BY YOUR

7    HONOR.

8          THE COURT:  SOMEBODY'S PUT YOU IN A BIND BECAUSE

9    WHEN YOU'RE IN A POSITION TO RESPOND TO THIS MOTION TO DISMISS

10   AND ONE OF THE RESPONSES IS "WELL, THIS IS BEING LOOKED AT.

11   THIS IS BEING LOOKED AT BY" --

12         WHAT DO THEY CALL OPR THESE DAYS?

13         MR. FORGE:  THE OFFICE OF PROFESSIONAL

14   RESPONSIBILITY.  THE OFFICE OF THE INSPECTOR GENERAL IS ALSO

15   INVOLVED.

16         THE COURT:  UNDER ORDINARY CIRCUMSTANCES, I THINK

17   THE SENSIBLE THING FOR A COURT TO DO IS TO SAY, "LOOK, THIS IS

18   BEING LOOKED AT BY A PUBLIC INTEGRITY SECTION OF THE

19   DEPARTMENT, AND I HAVE NO REASON TO QUESTION WHETHER A

20   THOROUGH INVESTIGATION WILL BE MADE.  I'M NOT GOING TO GET

21   SIDETRACKED WHEN WE HAVE A CASE TO TRY ON A SUBSIDIARY ISSUE

22   OF A GRAND JURY LEAK PROVIDED IT'S UNDER INVESTIGATION."

23         BUT THE CIRCUMSTANCES HAVE CHANGED DRAMATICALLY WITH

24   THIS LETTER.  I'M SURPRISED THAT THEY COULD CONCLUDE WITHOUT

25   TALKING TO EITHER MR. MAC DOUGALL OR MR. GERAGOS, WHO, AFTER

PDF created with pdfFactory trial version www.pdffactory.com

14

1    ALL, ARE PEOPLE THAT HAVE A HISTORICAL CONNECTION TO THIS NOT

2    JUST IN THE FACT THAT THEY REPRESENT PEOPLE CHARGED, BUT THEY

3    GOT CALLS.  THEY HAD THE CALLS WITH PEOPLE WHO APPARENTLY HAD

4    VERY SPECIFIC INFORMATION AND QUESTIONING THEM ABOUT THAT.

5         HOW IN THE WORLD COULD THE DEPARTMENT OF JUSTICE

6    CONCLUDE AN INVESTIGATION WITHOUT TALKING TO PERCIPIENT

7    WITNESSES?

8         MR. FORGE:  AGAIN, THIS IS NOTHING THAT I HAVE

9    KNOWLEDGE OF.  I CAN'T COMMENT ON IT.

10        THE COURT:  YES, BUT THEY'VE REALLY LEFT YOU IN A

11   BIND HERE, MR. FORGE.  BECAUSE, AS I SAID, THAT WAS THE REASON

12   THAT I SAID, "OKAY.  I'M NOT GOING TO GO ANY FURTHER WITH

13   THIS.  I'M GOING TO LET THIS PROCEED ON A SEPARATE TRACK

14   BECAUSE I'M ASSURED THAT IT'S BEING INVESTIGATED."

15        YOU KNOW, I HAD SOME -- AS A FORMER ASSISTANT UNITED

16   STATES ATTORNEY, I KNEW ABOUT OPR.  I WAS FAMILIAR WITH THEM

17   AND BELIEVED THAT CONSCIENTIOUSLY -- AND I GUESS I STILL DO --

18   THAT CONSCIENTIOUSLY THEY'LL LOOK AT ACCUSATIONS OF WRONGDOING

19   AND THOROUGHLY INVESTIGATE THEM AND NOT JUST GIVE SHORT SHRIFT

20   TO THESE THINGS, PARTICULARLY WHEN THEY'RE BACKED UP BY

21   DECLARATIONS OF COUNSEL WHO SAY, "WE HAVE FIRSTHAND KNOWLEDGE

22   THAT SOMETHING WENT AWRY HERE BECAUSE SOMEBODY CALLED US

23   BEFORE THE INDICTMENTS CAME DOWN AND WERE TALKING ABOUT VERY

24   SPECIFIC INFORMATION THAT, GUESS WHAT, LATER CAME DOWN IN AN

25   INDICTMENT."  THAT'S PRETTY SERIOUS STUFF.

PDF created with pdfFactory trial version www.pdffactory.com

1      MR. FORGE:  ALL THOSE ALLEGATIONS HAVE BEEN PASSED

2  ON TO THE OFFICE OF GENERAL COUNSEL.  BUT I WILL SAY, JUST TO

3  GO BACK TO YOUR POINT, YOUR HONOR, ABOUT THE MOTION TO DISMISS

4  THE INDICTMENT, NONE OF THESE ISSUES GO TO THE HEART OF THAT

5  MOTION, WHICH IS WHETHER THERE WAS MEANINGFUL PREJUDICE TO THE

6  DEFENDANTS.

7      THE COURT:  I UNDERSTAND.  I REMEMBER THE ARGUMENTS

8  THAT YOU MADE.  I THINK THERE IS A DISTINCTION.

9      MR. GERAGOS, I'M NOT SURE I WENT AS FAR AS YOU SAID

10  WHERE YOU HAD ME ALMOST INDICATING I WAS READY TO DISMISS EVEN

11  IF THIS WAS TRUE.  WHAT I WAS READY TO DO WAS TO GIVE YOU FULL

12  INFORMATION AS TO WHO MIGHT HAVE LEAKED THIS IN THE EVENT THAT

13  THEY'RE A WITNESS.  BECAUSE I THINK IT'S PROBATIVE EVIDENCE OF

14  THAT WITNESS'S BIAS OR MOTIVATION TO TESTIFY IN A PARTICULAR

15  WAY.  YOU'RE FAMILIAR WITH THE STANDARD INSTRUCTION I GIVE TO

16  JURIES.  "ASK YOURSELF IN JUDGING CREDIBILITY WHETHER SOMEBODY

17  HAS AN INTEREST IN THE OUTCOME OR SOME APPARENT BIAS OR

18  PREJUDICE."

19      IF THAT'S TRUE OF A WITNESS THAT THEY CALLED HERE,

20  THAT THE PERSON LEAKED INFORMATION KNOWING WHAT THE RULES

21  WERE, I CAN'T IMAGINE THAT I WOULDN'T LET YOU IMPEACH THEM

22  WITH THAT.  AND I CERTAINLY KNOW THIS.  THIS IS BEYOND ANY

23  QUESTION.  HE'S ENTITLED TO HAVE THE INFORMATION TO HE CAN

24  ARGUE TO ME AND MR. MAC DOUGALL CAN ARGUE TO ME THAT IT'S

25  PROPER IMPEACHMENT.  I THINK IT PROBABLY IS.

PDF created with pdfFactory trial version www.pdffactory.com

1        BUT WHERE DO WE GO WHEN IT'S NOT EVEN BEING LOOKED

2    INTO?  THERE'S NO ATTEMPT TO FIND OUT WHO THE LEAKER WAS AND

3    WHETHER THE LEAKER IS SOMEBODY THAT MAYBE YOU'RE GOING TO CALL

4    AS A WITNESS.

5        MR. GERAGOS:  I WAS GOING TO SUGGEST THAT YOU ALLOW

6    US TO HAVE A HEARING.  ALLOW ME TO SUBPOENA IN THIS WAY AND

7    THE U.S. ATTORNEY -- THEY CAN HAVE MS. DELANEY COME DOWN HERE

8    SINCE SHE DOESN'T HAVE ANYTHING BETTER TO DO SINCE SHE

9    APPARENTLY CAN'T INVESTIGATE ANYTHING.  LET HER COME SIT AT

10   COUNSEL TABLE, AND SHE CAN HELP DEFEND THE PROSECUTION.  I

11   WANT TO HAVE A HEARING WHERE I HAVE A MEANINGFUL ABILITY TO

12   BUT THE REPORTERS ON AND PUT THE OTHERS ON.  I'VE GOT A

13   TEMPLATE, WHICH IS WHAT THE CENTRAL DISTRICT DID.

14       THE COURT:  LET ME KEEP THIS IN SOME SEMBLANCE OF

15   CONTEXT THAT MAKES SOME SENSE TO ME IN LIGHT OF MY EXPERIENCE

16   IN THE REASONABLE INFERENCES I WOULD DRAW.

17       I READ THE DECLARATION.  I DON'T SEE A SCINTILLA OF

18   EVIDENCE -- THERE'S AN INFERENCE, BUT I DON'T SEE A SCINTILLA

19   OF EVIDENCE THAT MS. LAM IS THE PERSON WHO LEAKED THIS.  AND I

20   DON'T BELIEVE THAT FOR A SECOND HERE.

21       I THINK THE MORE LIKELY EXPLANATION IS IT'S SOMEBODY

22   ON THE PERIPHERY OF THIS THAT HAD SOME DETAILS.  I THINK

23   THAT'S PROBABLY WHAT HAPPENED.  THAT'S WHAT MY EXPERIENCE AND

24   COMMON SENSE TELLS ME.

25       I KNEW MS. LAM FOR YEARS.  BUT PUTTING ASIDE BY OWN

PDF created with pdfFactory trial version www.pdffactory.com

1    PERSONAL KNOWLEDGE AND RESPECT FOR HER INTEGRITY, JUST THE

2    IDEA THAT THAT WOULD SOMEHOW HELP HER SITUATION, I -- THE GIST

3    WAS IT WAS LEVERAGE TO KEEP HER JOB.  AND I DON'T --

4         MR. GERAGOS:  I WOULD HAVE SAID THE SAME THING PRIOR

5    TO THE LAST THREE MONTHS OF TESTIMONY THAT I'VE HEARD UP ON

6    CAPITOL HILL.  I DON'T THINK THAT THERE'S ANYTHING THAT YOU

7    CAN SAY -- NOT YOU, BUT THAT ONE CAN SAY THAT WOULD SURPRISE

8    ME COMING OUT OF THIS DEPARTMENT OF JUSTICE AT THIS POINT, AND

9    THERE'S NOTHING THAT WOULD SURPRISE ME COMING OUT OF THIS

10   ADMINISTRATION AT THIS POINT.

11        THE COURT:  MR. GERAGOS, THE SPECIFIC ALLEGATION YOU

12   MADE OR THE INFERENCE YOU'VE ASKED ME TO DRAW IS THAT MS. LAM

13   HERSELF LEAKED THE INFORMATION.

14        MR. GERAGOS:  SOMEBODY HAD THE ENTIRE INDICTMENT AND

15   READ THAT ENTIRE INDICTMENT AND REPRESENTED THAT THEY LOOKED

16   AT THE ENTIRE INDICTMENT AND HAD SPECIFICS.  AND THEY CAN KEEP

17   SAYING THAT I'M INFERRING IT IN MY DECLARATION.  I WROTE THEM

18   A LETTER BEFORE THE INDICTMENTS CAME DOWN IN DETAIL.

19        THE COURT:  IT'S NOT A QUESTION OF YOU INFERRING

20   THAT SOMEBODY CALLED YOU WITH SPECIFIC INFORMATION.  I ACCEPT

21   AND I THINK THE GOVERNMENT ACCEPTS THAT THAT'S TRUE.

22        THE QUESTION IS WHO'S LIKELY TO BE RESPONSIBLE FOR

23   THAT?  WHAT'S THE MOST REASONABLE THING?  NOW, I DON'T THINK

24   IT'S REASONABLE, JUST ON THE FACE OF IT, THAT I WOULD IMPUTE

25   THAT TO MS. LAM.  I THINK YOU KNOW AND MR. MAC DOUGALL MAY

PDF created with pdfFactory trial version www.pdffactory.com

18

1    KNOW THE WAY THAT CHARGES ARE DECIDED AT SUCH POINT THAT THE

2    GOVERNMENT DECIDES TO PRESENT A MATTER TO A GRAND JURY.  THEY

3    USUALLY CONVENE A GROUP OF SENIOR PROSECUTORS.  OFTENTIMES,

4    AGENTS ARE PART OF THAT GROUP.  AND THEY HAVE WHAT THEY CALL

5    AN INDICTMENT REVIEW MEETING.  THEY DISCUSS THE EVIDENCE.

6    THEY DISCUSS WHAT CHARGES ARE APPROPRIATE.  TO MY KNOWLEDGE

7    AND EXPERIENCE, EVERYBODY AT THAT MEETING HAS A COPY OF THE

8    PROPOSED CHARGES.

9            SO I DON'T KNOW HOW BIG THE GROUP WAS IN THIS CASE.

10   I DON'T KNOW WHO HAD ACCESS TO THE DRAFT OF THE INDICTMENT

11   BEFORE IT WAS PRESENTED TO THE GRAND JURY.  I TAKE YOUR POINT

12   MS. LAM WAS PROBABLY IN THAT MEETING.  I DON'T KNOW THAT FOR

13   SURE.  I'M ASSUMING ON A BIG CASE, THAT MS. LAM WOULD BE

14   CONSULTED AND PERSONALLY PARTICIPATE.  BUT AGAIN, I DON'T FOR

15   A SECOND THINK THAT IT'S A REASONABLE INFERENCE THAT IT WAS

16   CAROL LAM THAT LEAKED IT IN ORDER TO TRY TO SAVE HER JOB.

17           MR. GERAGOS:  I UNDERSTAND, BUT WHY AM I HAVING TO

18   DANCE AROUND IN THE SHADOWS?  THIS COURT MADE IT EXPRESSLY

19   CLEAR, EXPRESSLY CLEAR, THAT YOU WANT TO GET TO THE BOTTOM OF

20   IT.

21           THE COURT:  I DO.

22           MR. GERAGOS:  YOU DID SAY, AND I DON'T THINK I'M

23   MISQUOTING YOU -- I THINK YOU SAID TO THEM -- YOU CAN HANDICAP

24   THIS -- "UNLESS IT CAME FROM DIRECTLY IN THE OFFICE, I'M NOT

25   GOING TO GO DOWN THE DISMISSAL ROAD."  AND THEN SOMETHING TO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1  THE EFFECT ABOUT THAT WE WERE ENTITLED TO IT AS IMPEACHMENT

2  MATERIAL.

3          ALL I'M SAYING IS I DON'T TRUST AT THIS POINT

4  ANYTHING THAT COMES OUT OF THE DEPARTMENT OF JUSTICE.  CALL ME

5  PARANOID, BUT I DON'T THINK THAT THAT'S A -- THEY CAN CALL IT

6  THE DEPARTMENT OF INJUSTICE AT THIS POINT BASED ON EVERYTHING

7  THAT'S COMING OUT OF THERE.  I WOULD PREFER TO DO THE

8  INVESTIGATION HERE IN A COURTROOM WHERE PEOPLE ARE UNDER OATH,

9  WHERE I CAN SUBPOENA THEM, PUT THEM ON THE STAND, AND LET THEM

10  EITHER INVOKE OR NOT INVOKE.

11          THE COURT:  ANYTHING ELSE, MR. FORGE?

12          MR. FORGE:  I WOULD, AGAIN -- I THINK YOUR HONOR HAS

13  ATTEMPTED TO DO THIS AS WELL -- PUT THIS CONTEXT IN TERMS OF

14  THE ALLEGATIONS.  I'M NOT COMMENTING ON ANYTHING OTHER THAN

15  JUST THE SUBSTANCE OF THIS SITUATION IS ONE IN WHICH EVEN IF

16  YOU ACCEPT THE ALLEGATIONS AS BEING TRUE, THE INFORMATION THAT

17  THESE INDIVIDUALS WERE GOING TO BE INDICTED AND THE TYPES OF

18  CHARGES IS WHAT WAS ALLEGED TO HAVE BEEN LEAKED.  THAT

19  INFORMATION WAS MADE PUBLIC WITHIN A COUPLE OF WEEKS AFTER THE

20  ALLEGED LEAK.  SO WE REALLY DO HAVE TO PUT THIS IN CONTEXT.

21          I'M NOT TRYING TO FORGIVE OR EXCUSE ANYTHING.  I'M

22  NOT TRYING TO DEFEND WHAT HAS OR HAS NOT BEEN DONE IN RESPONSE

23  TO THAT.  BUT I REALLY THINK THAT IN TERMS OF THIS CASE, WE

24  NEED TO KEEP THAT IN MIND.

25          THE COURT:  I AGREE.

PDF created with pdfFactory trial version www.pdffactory.com

20

1          MR. MAC DOUGALL, ANYTHING MORE, OR MR. GRANGER?

2          MR. MAC DOUGALL:  NO.

3          MR. GRANGER:  BRIEFLY, JUDGE.

4          I DO THINK IT'S A BIT DISINGENUOUS FOR THE

5   GOVERNMENT TO THROW UP ITS COLLECTIVE HANDS AND SAY, "GEE, IT

6   JUST HAPPENED.  WITH RESPECT TO THE INTERNAL INVESTIGATION

7   BEING CLOSED, IT REALLY HAS NOTHING TO DO WITH US AND NOTHING

8   TO DO WITH THE TRIAL SCHEDULE."

9          IN FACT, I WOULD JUST REFER THE COURT'S ATTENTION TO

10  PAGES 17 AND 18 OF THE TRANSCRIPT OF THE APPEARANCE BACK IN

11  MAY WHEN YOUR HONOR SPECIFICALLY SAID THAT THE REASON YOU WERE

12  NOT GOING TO GO FORWARD WITH YOUR OWN INVESTIGATION WAS THE

13  REPRESENTATION BY THE GOVERNMENT, BY THE PROSECUTION TEAM IN

14  THIS CASE, THAT THERE WAS -- AND I'M QUOTING THEM -- "AN

15  ONGOING INVESTIGATION," CLOSED QUOTE.

16         SO IT WAS AT THE IMPLORING OF THE PROSECUTORS IN

17  THIS CASE THAT YOU DID NOT PROCEED WITH YOUR OWN HEARING THAT

18  PROBABLY COULD HAVE BEEN COMPLETED WELL BEFORE NOW.  AND NOW

19  TWO MONTHS BEFORE TRIAL, WE'RE TOLD THAT THE GOVERNMENT,

20  WITHOUT EVEN CONTACTING, OBVIOUSLY, RELEVANT WITNESSES HAS

21  CLOSED -- AGAIN, I DON'T EVEN KNOW IF YOU'D CALL IT AN

22  INVESTIGATION.  IT DOESN'T BECAUSE THIS INFORMATION IS

23  IMPORTANT.  THE COURT DEEMED IT VERY IMPORTANT AND ONLY

24  DEFERRED HOLDING ITS OWN HEARINGS BASED ON THE REPRESENTATION

25  TO THE COURT FROM THIS PROSECUTION TEAM THAT THERE WAS AN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    ONGOING INVESTIGATION.

2           THE COURT:  I AGREE, MR. GRANGER, WITH EVERYTHING

3    YOU SAID.  I THINK THE DEPARTMENT OF JUSTICE AND THE

4    COMPONENTS THAT WERE REFERRED THIS MATTER FOR INVESTIGATION

5    HAVE PUT THE PROSECUTORS HERE IN A REAL BIND.  THEY ARE

6    RECUSED.  I UNDERSTAND THAT.  BUT I'M ALSO TROUBLED, AS YOU

7    SAY, BY THE PROSECUTOR'S RESPONSE, WHICH IS TO THROW UP THEIR

8    COLLECTIVE HANDS AND SAY, "WE KNOW WE TOLD YOU THIS, BUT THE

9    OTHER GUYS ARE RESPONSIBLE FOR NOT IMPLEMENTING, AND THEY

10   DIDN'T IMPLEMENT."

11          MR. FORGE, IT IS VERY SURPRISING TO ME THAT AN

12   INVESTIGATION LIKE THIS WOULD BE CLOSED WITHOUT ANY ATTEMPT TO

13   INTERVIEW MR. GERAGOS OR MR. MAC DOUGALL.  THAT'S JUST

14   MIND-BOGGLING TO ME, PARTICULARLY WHEN THEY'RE THE TWO -- AND

15   I HAVE NO REASON TO SECOND-GUESS OR DISCOUNT THE

16   REPRESENTATIONS THAT WERE MADE.

17          THE INFERENCES THAT WERE DRAWN FROM THE FACTS THAT

18   WERE REPRESENTED TO ME, THAT'S SOMETHING ELSE.  I DON'T THINK

19   FOR A MINUTE, AS I SAID, THAT MS. LAM HAD ANYTHING TO DO WITH

20   LEAKING THIS TO TRY TO PRESERVE HER JOB.  I REALLY THINK THAT

21   THAT'S FAR-FETCHED.

22          WHAT DO I REALLY BELIEVE?  I THINK THAT PROBABLY

23   SOMEONE HAD ACCESS TO ONE OF THESE DRAFT INDICTMENTS

24   BEFOREHAND.  IT MIGHT HAVE BEEN SOMEBODY IN INDICTMENT REVIEW.

25   IT MIGHT HAVE BEEN SOMEBODY WHO WAS TOLD BY SOMEBODY IN THE

PDF created with pdfFactory trial version www.pdffactory.com

22

1     INDICTMENT REVIEW.  AND SOMEBODY CALLED A REPORTER WITH A

2     JUICY BIT OF NEWS AND FILLED THEM IN ON ENOUGH DETAIL THAT

3     THAT TRIGGERED THE CALL TO THESE GENTLEMEN.  IF THAT PERSON

4     WHO DID THAT IS A WITNESS, THEN I THINK THEY'RE ENTITLED TO

5     KNOW THAT.

6             HERE'S WHAT I'M GOING TO DO:  I DENY THE MOTION AT

7     THIS POINT TO DISMISS.  I CONFIRM THE DECISION TO DENY THAT

8     MOTION.  THE MOTION TO DISMISS FOR GRAND JURY VIOLATION IS

9     DENIED WITHOUT PREJUDICE.  I'M NOT GOING TO LET IT INTERFERE

10    WITH THE TRIAL DATE.

11            YOU'RE FREE, MR. GERAGOS, IN THE EVENT THAT

12    THERE IS A VERDICT IN THIS CASE ADVERSE TO YOUR CLIENT OR,

13    MR. MAC DOUGALL, ADVERSE TO YOUR CLIENT, TO RENEW THE MOTION.

14    AT THAT TIME, IF THERE HAS NOT BEEN AN INVESTIGATION BY THE

15    DEPARTMENT OF JUSTICE, THEN IT MIGHT WELL BE TIME FOR THE

16    COURT TO AUTHORIZE THE INVESTIGATION THAT MR. GERAGOS IS

17    TALKING ABOUT WHERE REPORTERS ARE CALLED IN.  I DON'T THINK

18    THAT THAT'S NECESSARY AT THIS POINT.

19            I MAKE THAT DECISION BECAUSE I'VE LOOKED AT THE

20    ARGUMENT ABOUT PREJUDICE JUMPING AHEAD.  IT'S FAIRLY APPARENT,

21    AT LEAST IN MR. WILKES'S CASE, THAT THERE WAS SOME

22    IDENTIFICATION OF MR. WILKES, PERHAPS BY HIM OR PEOPLE

23    ASSOCIATED WITH HIM, AS SOMEONE WHO WAS IMPLICATED IN THE

24    CUNNINGHAM CASE WELL BEFORE THIS STORY WAS REPORTED ABOUT AN

25    IMMINENT INDICTMENT.

PDF created with pdfFactory trial version www.pdffactory.com

23

1        NOW, THAT DOESN'T COVER THE RULE 6 VIOLATION.  I

2   UNDERSTAND THAT.  BUT IT GOES TO THE ISSUE OF PREJUDICE AND

3   WHAT THE REMEDY MIGHT BE IF WE GET TO THE BOTTOM OF IT AND

4   FIND OUT THAT SOMEBODY LEAKED THAT.

5        IN LARGE PART, THE LIKELIHOOD OF CHARGES AGAINST

6   MR. WILKES BEING REFERENCED BY THE UNITED STATES, THE SPECTER

7   OF THAT, AT LEAST, WAS ALREADY OUT THERE.  AND TO SOME EXTENT,

8   IT WAS OUT THERE BECAUSE MR. WILKES OR REPRESENTATIVES

9   SPEAKING ON HIS BEHALF SAID, "ALL RIGHT.  I'M CO-CONSPIRATOR

10  NO. 3."  OR "I ACKNOWLEDGE THAT THEY'RE TALKING ABOUT ME.  I

11  DIDN'T DO ANY OF THIS, BUT I ACKNOWLEDGE THAT THEY'RE TALKING

12  ABOUT ME."

13       SO HIS IDENTITY AS SOMEONE WHO WAS SUSPECTED OR

14  IMPLICATED IN THIS WAS OUT THERE.  THE QUESTION, I SUPPOSE, IS

15  DID IT PREJUDICE HIM OR WILL IT PREJUDICE HIM TO AN EXTENT

16  THAT IMPAIRS HIS RIGHT TO GET A FAIR TRIAL HERE?  WE'RE GOING

17  TO GO THROUGH A VOIR DIRE.  I'LL HAVE AN OPPORTUNITY TO ASSESS

18  THAT WHEN WE TALK TO THE PROSPECTIVE JURORS.  I'VE SET A

19  TIMETABLE ALREADY FOR QUESTIONNAIRES THAT CAN BE SENT OUT TO A

20  POOL OF PEOPLE.  WE'LL HAVE ANOTHER ASSESSMENT WHEN PEOPLE

21  RESPOND TO THAT.  ALL OF THAT WILL INFORM THE DECISION ON

22  PREJUDICE.  I FIND THAT CAN'T BE MADE NOW EVEN IF WE DO GET

23  THE BOTTOM OF THIS.

24       IN THE EVENT THAT MR. WILKES AND MR. FOGGO ARE

25  ACQUITTED OF THE CHARGES, THEN IT MAYBE BECOMES MOOT, MAYBE IT

PDF created with pdfFactory trial version www.pdffactory.com

24

1   DOESN'T.  MAYBE THE COURT PURSUES IT ON ITS OWN.

2           I HAVE TO TELL YOU, MR. FORGE, I KNOW IT'S NO DOING

3   ON YOUR PART, BUT I'M VERY DISSATISFIED WITH THIS.  A

4   DEPARTMENT THAT PRIDES ITSELF ON THOROUGH INVESTIGATIONS, THIS

5   HAS GOT TO BE AN ABERRATION.  AS I SAID, I JUST CAN'T

6   UNDERSTAND HOW THEY CAN CLOSE AN INVESTIGATION WITHOUT AT

7   LEAST TALKING TO COUNSEL.  THAT WASN'T A HERCULEAN TASK.  PICK

8   UP THE PHONE AND CALL MR. GERAGOS AND SAY, "WHAT WERE YOU

9   TOLD?  WHAT WAS THE GIST OF THIS?"  OR "CALL MR. MAC DOUGALL

10  AND ASK HIM."  OR MR. GRANGER EVEN SAYS, "I WAS WAITING.  I

11  HAD INFORMATION, TOO."

12          I'M NOT LAYING THAT ON YOU, BUT THE BUCK STOPS WITH

13  YOU TODAY.  YOU'RE THE REPRESENTATIVE OF THE DEPARTMENT OF

14  JUSTICE, YOU AND MS. CHU AND MR. HALPERN.  SO I THINK YOU'VE

15  GOT TO TAKE SOME OF THIS THIS AFTERNOON.

16          BUT THE MOTION'S DENIED WITHOUT PREJUDICE.  I'M

17  GOING TO ORDER, MR. FORGE, THAT YOU ASK EACH ONE OF YOUR

18  WITNESSES THAT YOU INTEND TO CALL WHETHER THEY WERE

19  RESPONSIBLE FOR THIS.  AND IF YOU GET AN AFFIRMATIVE ANSWER,

20  YOU'RE TO TURN THAT OVER IMMEDIATELY.  BUT YOU'RE SPECIFICALLY

21  TO INQUIRE OF EACH AND EVERY WITNESS YOU INTEND TO CALL

22  WHETHER THEY WERE THE RESPONSIBLE PARTIES FOR THIS.  AND IF IT

23  COMES TO YOU EITHER IN THAT FORM OR ANY OTHER FORM, WHO MIGHT

24  HAVE BEEN RESPONSIBLE FOR THIS, I WANT YOU TO NOTIFY

25  MR. GERAGOS AND MR. MAC DOUGALL RIGHT AWAY AND THE COURT.

PDF created with pdfFactory trial version www.pdffactory.com

1          I CONSIDER IT, IN THE CASE OF A WITNESS WHO WOULD

2     TESTIFY FOR THE GOVERNMENT, EXCULPATORY EVIDENCE.  I THINK IT

3     IS CLEARLY IMPEACHMENT EVIDENCE.  I THINK IT GOES BY BIAS AND

4     MOTIVATION TO TESTIFY IN A PARTICULAR WAY.  FRANKLY, I THINK

5     ALL THE DEFENSE COUNSEL COULD MAKE A FIELD DAY WITH THAT, WITH

6     A PARTICULAR WITNESS WHO ADMITTED THAT THEY VIOLATED THE RULE

7     AND LEAKED THIS INFORMATION.  SO I'M GOING TO REQUIRE THAT YOU

8     DO THAT INDEPENDENT OF ANYTHING ELSE THAT HAPPENS.

9          MR. GERAGOS, YOU CAN RENEW THE MOTION.  IN THE EVENT

10    THAT THERE'S A GUILTY VERDICT IN THIS CASE, WE'LL MAYBE HAVE

11    THE HEARING THAT YOU'VE TALKED ABOUT.  AND IF I DETERMINE AT

12    THE END OF THAT HEARING THAT THERE WAS PREJUDICE TO YOUR

13    CLIENT, THEN I HAVE THE POWER AND THE AUTHORITY AND THE

14    JUSTIFICATION TO SET ASIDE THE VERDICT AND TO DISMISS THE

15    INDICTMENT.  BUT I'M NOT GOING TO LET IT, AT THIS POINT,

16    INTERFERE WITH THE TRIAL DATE THAT WE HAVE SET.

17          I THINK I'VE GIVEN YOU ALL THE PROTECTION I CAN GIVE

18    YOU AT THIS POINT, WHICH IS TO ORDER THE PROSECUTORS TO ASK

19    SPECIFICALLY OF THE WITNESSES THAT THEY INTEND TO CALL WHETHER

20    THEY WERE THE RESPONSIBLE PARTIES.

21          MR. GERAGOS:  COULD THEY ALSO PLAY ROUND ROBIN AND

22    ASK EACH OTHER IF THEY WERE THE RESPONSIBLE PARTIES?

23          THE COURT:  WELL, I'M ASSUMING -- I HAVE

24    REPRESENTATIONS FROM LAWYERS THAT ARE VERY EXPERIENCED, HAVE

25    BEEN HERE FOR A LONG TIME, JUST AS I TRUST YOU AND THE

PDF created with pdfFactory trial version www.pdffactory.com

1    REPRESENTATIONS I GOT IN THE DECLARATION ABOUT WHAT WAS SAID

2    BY THE REPORTERS.

3          AND MR. MAC DOUGALL, I'M GOING TO ASSUME THAT

4    THEY'RE NOT SITTING HERE AS A GUILTY PARTY LETTING ME GO

5    THROUGH THIS EXERCISE IN FUTILITY.  I WOULD BE VERY UPSET IF

6    THAT WAS THE CASE.  I DON'T BELIEVE THAT TO BE SO.  I'VE KNOWN

7    THESE LAWYERS FOR A LONG TIME.  THEY'RE PEOPLE OF INTEGRITY

8    JUST AS YOU ARE, AND JUST AS MR. MAC DOUGALL IS.

9          MR. GERAGOS:  THE ONE ISSUE THAT THE COURT HAS NOT

10   ADDRESSED, THOUGH, IN TERMS OF PREJUDICE IS THAT ONE OF THE

11   BASES FOR THE MOTION TO DISMISS WAS SPECIFICALLY THAT BY

12   PUBLICIZING THIS AND LEAKING THIS WEEKS, IF NOT MONTHS, IN

13   ADVANCE OF THE INDICTMENTS, THAT THAT CAUSED AN ATMOSPHERE OR

14   CREATED AN ATMOSPHERE WHERE THE GRAND JURY FELT OBLIGED TO

15   INDICT.  SO WAITING UNTIL AFTER THERE'S A TRIAL, I DON'T

16   BELIEVE THAT WE GRAPPLE WITH THAT ISSUE.

17         THE COURT:  I'LL STILL BE ABLE TO ASSESS THAT,

18   MR. GERAGOS.  THAT'S ANOTHER ONE OF THE INFERENCES THAT I

19   STRUGGLE WITH.  AS I SAID, FOR THE LAST SEVERAL YEARS, I'VE

20   BEEN THE PERSON THAT IMPANELS THE GRAND JURY.  IF YOU COULD

21   GET A COPY OF THE TRANSCRIPT, YOU'D SEE HOW CLEAR I MAKE IT TO

22   THEM THAT THEY MUST ASSESS PROBABLE CAUSE, THEY SHOULDN'T BE

23   STAMPEDED INTO ANYTHING, THAT THEIR ROLE AND THEIR OBLIGATION

24   OF CONSCIENTIOUS IS THE SAME AS THAT OF THE TRIAL JURY.  THAT

25   IF THEY'RE NOT CONVINCED THERE'S PROBABLE CAUSE, THEY SHOULD

PDF created with pdfFactory trial version www.pdffactory.com

27

1    NOT INDICT.

2              I GO OVER THE HOST OF HORRIBLES WITH THEM THAT

3    OCCURS WHEN SOMEONE IS WRONGLY CHARGED; THAT IT RUINS THEIR

4    REPUTATION, THAT ACCUSATIONS ARE EASY TO MAKE AND HARD TO

5    DEFEND AGAINST.  MR. WILKES HAS TAKEN THAT POSITION IN THIS

6    CASE.  "WHAT DO I DO?  HOW DO I GET MY REPUTATION BACK?"

7    BELIEVE ME, I GO OVER ALL OF THAT WITH THE GRAND JURY.  I TELL

8    THEM THAT A PUBLIC CHARGE AGAINST A PERSON CAN BE THE DEATH OF

9    A CAREER.  IT CAN CAUSE FAMILY PROBLEMS.  IT CAN DO ALL THE

10   THINGS THAT YOU AND I AND THE PROSECUTORS AND MR. WILKES KNOW.

11             SO HAVING GIVEN THE GRAND JURY, LIKELY THE GRAND

12   JURY THAT HEARD THIS CASE, THAT ADMONITION, I'M NOT PREPARED

13   AT THIS POINT TO JUMP TO THE CONCLUSION THAT THEY IGNORED IT

14   AND WERE STAMPEDED BY PUBLIC PRESSURE OR ANYTHING ELSE.

15             I REALLY STRESS TO GRAND JURORS WHEN IMPANELING THEM

16   THAT THEY HAVE TO ACT INDEPENDENTLY OF THE GOVERNMENT, AND

17   THEY HAVE TO REACH A CONSCIENTIOUS DECISION THAT A CRIME WAS

18   COMMITTED AND THE PERSON WHO'S PROPOSED FOR INDICTMENT

19   COMMITTED IT.

20             AGAIN, I HAVEN'T FAILED TO CONSIDER THAT.  THAT'S ON

21   MY MIND.  IT'S AN UNLIKELY INFERENCE IN THIS CASE AND ONE THAT

22   DOESN'T, IN MY JUDGMENT, JUSTIFY POSTPONING THE TRIAL.  SO THE

23   MOTION IS DENIED WITHOUT PREJUDICE.  YOU MAY RE-BRING THE

24   MOTION AT SUCH TIME THAT IT'S APPROPRIATE, AND I'LL RECONSIDER

25   IT.

PDF created with pdfFactory trial version www.pdffactory.com

28

1          MR. GRANGER:  YOUR HONOR, THIS IS RAYMOND GRANGER.

2          YOU HAD INDICATED TO THE GOVERNMENT TO ASK THEIR

3     WITNESSES ABOUT KNOWLEDGE OF THE LEAKS.  AND ANYTHING THEY

4     FIND OUT IN THAT REGARD, GOVERNMENT COUNSEL HAS TO NOTIFY

5     MR. MAC DOUGALL AND MR. GERAGOS.

6          CAN YOU ADD ME TO THAT LIST?

7          THE COURT:  I WILL.  I'M SORRY.  THAT WAS JUST AN

8     OVERSIGHT ON MY PART.

9          MR. GRANGER AND ALL DEFENSE COUNSEL, OF COURSE.

10          MR. GRANGER:  THANK YOU, JUDGE.

11          THE COURT:  YOU'RE WELCOME.

12          MR. MAC DOUGALL:  AS I HEARD, THE COURT'S ORDERED

13     MR. FORGE TO INQUIRE AS TO EVERY PROSPECTIVE WITNESS WHETHER

14     HE OR SHE WAS THE SOURCE OF THE LEAK.  I'D LIKE TO ASK IF THE

15     COURT CAN CONSIDER EXPANDING THAT AND ASK IF THEY HAVE

16     KNOWLEDGE OF THE SOURCE OF THE LEAK.  OBVIOUSLY, IF THE

17     GOVERNMENT IS GOING TO PUT UP CASE AGENT NO. 1 AND HE HAS NO

18     KNOWLEDGE OF THE LEAK, BUT KNOWS THAT CASE AGENT NO. 2 SITTING

19     ACROSS THE CUBICLE FROM HIM WAS THE ONE WHO DID IT --

20          THE COURT:  THAT'S A FAIR REQUEST.  I'LL EXPAND IT

21     TO INCLUDE THAT, MR. FORGE, WHEN YOU MAKE YOUR INQUIRIES.

22     OBVIOUSLY, IF, AT ANY POINT, YOU OR MS. CHU OR MR. HALPERN

23     BECOME AWARE OF WHO DID THIS, THEN I WANT TO KNOW RIGHT AWAY.

24     AND MR. MAC DOUGALL POSITS THE SITUATION WHERE MAYBE YOU DON'T

25     CALL A WITNESS BECAUSE -- WE'RE NOT GOING TO GET TO THAT, I'M

PDF created with pdfFactory trial version www.pdffactory.com

29

1  SURE.  AT SUCH POINT THAT YOU HAVE A STRONG SUSPICION THAT

2  SOMEONE LEAKED THIS, I WOULD WANT YOU TO CALL ME AND SCHEDULE

3  AN EX PARTE MEETING AND TELL ME WHAT YOU'VE HAD.  AND THAT MAY

4  CHANGE THE TIMING OF WHEN I WOULD GO FORWARD WITH THIS,

5  PARTICULARLY IF IT'S SOMEBODY WHO IS A PROSPECTIVE WITNESS IN

6  THE CASE.  I DON'T FORECLOSE THAT THE DEFENDANTS MAY WANT TO

7  CALL THIS PERSON AFFIRMATIVELY.

8        SO IT, AT ANY POINT, THAT YOU KNOW OR YOU STRONGLY

9  SUSPECT WHO WAS RESPONSIBLE FOR THIS, I EXPECT YOU TO TELL ME.

10  AND, IN TURN, I'LL PASS THE INFORMATION ON TO ALL DEFENSE

11  COUNSEL.

12        MR. FORGE:  I'VE BEEN NODDING ALONG WITH WHAT YOU'RE

13  SAYING FOR THE RECORD.  I UNDERSTAND WHAT YOU'RE SAYING, AND

14  WE'LL FOLLOW YOUR HONOR'S DIRECTIONS TO THE LETTER.

15        THE COURT:  THANK YOU.

16        NOW, MR. GERAGOS, LET ME TURN TO THE OTHER ISSUE,

17  WHICH LARGELY CONCERNS YOU.  THE GOVERNMENT'S ASKED ME TO

18  RECONSIDER.

19        AND MR. WILKES, WHY DON'T YOU HAVE A SEAT.  I DON'T

20  WANT YOU TO HAVE TO STAND UP THE WHOLE TIME.  YOU CAN SIT

21  RIGHT THERE BEHIND YOUR COUNSEL.

22        MR. WILKES:  THANK YOU, YOUR HONOR.

23        THE COURT:  I'VE GOTTEN A MOTION TO RECONSIDER

24  WHETHER THE APPROPRIATE THING IN THIS CASE IS TO TAKE A

25  WAIVER.  I'VE TAKEN A WAIVER FROM MR. WILKES.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

30

1          JUST TO RECAP BRIEFLY, I'VE EXPLAINED TO HIM THAT

2     THERE IS INFORMATION, NUMBER ONE, THAT THE GOVERNMENT

3     CONSIDERS CLASSIFIED; NUMBER TWO, THAT THE GOVERNMENT

4     CONSIDERS MATERIAL TO THEIR PROOF OF THE ALLEGATIONS IN THIS

5     CASE.  THEY DON'T WANT TO TURN THAT MATERIAL OVER BECAUSE OF

6     ITS CLASSIFIED NATURE WITHOUT COUNSEL, ALL COUNSEL WHO HAVE

7     ACCESS TO IT GOING THROUGH A SECURITY CHECK.

8          I'VE ADMITTED, MR. GERAGOS, THE FIRST TIME YOU WERE

9     HERE I HAVE A LITTLE PROBLEM WITH THAT, YOU KNOW.  THAT'S WHAT

10    THE BALKAN NATIONS DID FOR A LONG TIME, I THINK.  THE

11    GOVERNMENT WAS IN CHARGE OF APPOINTING WHO REPRESENTED PEOPLE.

12    I DON'T LIKE THAT.  THERE'S SOMETHING ABOUT IT.  I'M NOT THE

13    GREATEST CIVIL LIBERATARIAN AROUND, BUT THAT BOTHERS MY

14    SENSES, TOO; THAT THE UNITED STATES, EITHER THE PROSECUTOR OR

15    THE COURT, WOULD BE INVOLVED.

16          THIS FELLOW HAS MADE A CHOICE AS TO WHO HIS COUNSEL

17    IS, AND HE WANTS YOU ON THE CASE.  AND HE'S A SMART,

18    SOPHISTICATED GUY.  HE UNDERSTANDS FROM MY ADMONITION TO HIM

19    LAST TIME WHAT THE EFFECT WOULD BE IF YOU DID NOT GO THROUGH

20    THIS BACKGROUND SCREENING.

21          BUT I WANT TO TALK TO YOU A LITTLE BIT MORE ABOUT

22    THIS BECAUSE I THINK YOU OUGHT TO HAVE SOME OF THE

23    INFORMATION.  I WANT TO REVEAL TO YOU THAT IN CONNECTION WITH

24    THIS, THE PROSECUTOR HAS ASKED TO SEE ME EX PARTE AND IN

25    CAMERA BECAUSE I HAVE NOT SEEN ANY OF THE INFORMATION EITHER.

PDF created with pdfFactory trial version www.pdffactory.com

1  I UNDERSTAND AT SOME POINT IT'S GOING TO BE MY OBLIGATION IF

2  THERE'S A NEED TO PUT ON SOME OF THE INFORMATION THAT'S

3  CATEGORIZED AS CLASSIFIED, THAT I'LL HAVE TO MAKE RULINGS ON

4  IT.

5        BUT I THINK THEY, IN GOOD FAITH, THOUGHT THAT "LOOK,

6  JUDGE, YOU DON'T UNDERSTAND THE CONTEXT OF THIS UNTIL YOU SEE

7  SOME OF THE" -- I HESITATE TO USE THIS WORD -- "NITTY-GRITTY."

8  I'VE USED IT BEFORE WITH THESE PROSECUTORS, AND IT'S COME BACK

9  TO BITE ME.  BUT THEY WANTED ME TO ACTUALLY SEE SOME OF THIS

10  AND TO GET A FIRSTHAND PERSPECTIVE ON WHY YOU WOULD WANT TO

11  HAVE THE INFORMATION, WHY MR. WILKES WOULD WANT TO HAVE THIS

12  INFORMATION.

13        I KNOW YOU'VE SAID TO ME AND MR. WILKES HAS SAID TO

14  ME "I KNOW THE INFORMATION ALREADY."  I'M NOT SURE THAT THAT'S

15  TRUE.  I'M NOT SURE THAT YOU HAVE A COMPREHENSIVE IDEA OF THE

16  INFORMATION.  FOR EXAMPLE, THERE MAY HAVE BEEN THINGS THAT

17  HAPPENED THAT TRIGGERED OTHER THINGS THAT MR. WILKES WAS

18  UNAWARE OF THAT ARE PART OF THE INFORMATION.  I MEAN, YOU CAN

19  CONCEIVE THAT SCENARIO.

20        NOW, THE PROBLEM I HAVE IS THAT THE GOVERNMENT HAS

21  TAKEN THE POSITION -- THEY'VE ASKED ME TO SORT OF IMPOSE THIS

22  ON YOU INDEPENDENT OF THEIR INVOLVEMENT.  I'M RELUCTANT TO DO

23  THAT.

24        I THINK THERE'S A PROBLEM WITH THAT, MR. HALPERN.

25  EVEN IF THE COURT WERE TO ORDER IT, THE COURT SECURITY

PDF created with pdfFactory trial version www.pdffactory.com

1    OFFICER, MR. LONDERGAN, IS HERE TODAY.  IN PREPARATION FOR

2    THIS HEARING, I ASKED HIM TO MAKE INQUIRIES.  I SAID, "WHAT IF

3    I WERE TO ORDER THIS AND THE UNITED STATES PROSECUTORS WEREN'T

4    TO HAVE ANY INVOLVEMENT IN THIS AT ALL?  COULD IT HAPPEN?"

5          HIS ANSWER TO ME WAS "NO."  THE PEOPLE THAT DO THESE

6    INVESTIGATIONS WILL NOT DO THEM WITHOUT THE CONSENT OF THE

7    PERSON THAT'S BEING SCRUTINIZED.  AND FURTHERMORE, THE NATURE

8    OF THE INVESTIGATION, THE CLEARANCE THAT'S NECESSARY, REQUIRES

9    FIRSTHAND INFORMATION FROM THE PERSON: MR. GERAGOS.  I JUST

10   MET HIM PERSONALLY IN THIS LAST YEAR.  I DON'T KNOW ENOUGH TO

11   TELL THEM THE STUFF THEY NEED TO KNOW TO DO THIS TOP SECRET

12   SECURITY CLEARANCE.

13         BUT I'VE SEEN -- I'VE NOW REVIEWED, I THINK, JUST

14   ABOUT EVERY CASE, EVERY PUBLISHED CASE, DISTRICT COURT CASE

15   AND COURT OF APPEALS CASE.  THERE IS AUTHORITY, MR. GERAGOS,

16   THAT I COULD IMPOSE THIS.  AND I COULD IMPOSE THIS AT THE COST

17   OF RELIEVING YOU IF YOU DIDN'T GO ALONG WITH IT.  THERE IS

18   AUTHORITY.  IN FACT, I THINK THAT THAT'S PROBABLY THE MAJORITY

19   POSITION.  JUDGE SAND OUT OF SOUTHERN DISTRICT OF NEW YORK HAS

20   WRITTEN A FREQUENTLY CITED OPINION THAT SAYS THE COURT HAS THE

21   AUTHORITY TO DO THIS.

22         AT FIRST I THOUGHT I'D MADE A MISTAKE BY SAYING THAT

23   THIS WAS A PREREQUISITE TO YOU GETTING THE MATERIAL.  BECAUSE

24   THE REGULATIONS THEMSELVES THAT WERE PROMULGATED BY CHIEF

25   JUSTICE BURGER ARE NOT PART OF CIPA EXPRESSLY.  AS I LOOKED

PDF created with pdfFactory trial version www.pdffactory.com

1    CAREFULLY AT THE CASES THAT I LOOKED AT, I LOOKED AT

2    SUBSECTION 9 OF THE CLASSIFIED INFORMATION PROTECTION ACT AT

3    THE TIME THE STATUTE WAS ENACTED DELEGATED TO THE THEN CHIEF

4    JUSTICE THE RESPONSIBILITY OF PROMULGATING REGULATIONS THAT

5    WOULD IMPLEMENT THE PROVISIONS.  AND ONE OF THE REGULATIONS

6    THAT CAME AS A RESULT OF THAT WAS THIS IDEA THAT PEOPLE OUGHT

7    TO BE CLEARED BEFORE THEY HAVE ACCESS TO THIS DEFENSE COUNSEL.

8         NOW, WHAT THE CASES HAVE MADE CLEAR TO ME IS THAT

9    IT'S NOT AN ABSOLUTE REQUIREMENT.  AND THERE ARE SOME CASES --

10   I FOUND TWO -- WHERE THE JUDGES REFUSED, FOR THE REASONS THAT

11   YOU'VE RAISED, TO IMPOSE THAT ON DEFENSE COUNSEL.  THEY SAID,

12   "THE 6TH AMENDMENT GIVES MR. WILKES IN THIS CASE THE RIGHT TO

13   CHOOSE HIS OWN COUNSEL."  HE'S DONE SO.  I'M NOT GOING TO

14   INTERFERE WITH THAT.

15        IT'S NOT CLEAR TO ME WHETHER WAIVERS WERE TAKEN IN

16   THOSE CASES AS I DID IN THIS CASE.  I THINK THAT WAS AN EXTRA

17   LAYER OF PRECAUTION.  BUT THE CIRCUMSTANCES HAVE CHANGED A

18   LITTLE BIT.  I HAVE SEEN AN EXCERPT OF THE MATERIAL THAT THEY

19   HAVE.  AND I THINK, GIVEN THE NATURE OF THE CHARGES, THAT YOU

20   OUGHT TO SEE THAT MATERIAL.  YOU REALLY OUGHT TO.

21        I HOPE I CAN PREVAIL UPON YOU, WITHOUT REGARD TO THE

22   PROSECUTORS OF THE UNITED STATES AT ALL, TO COOPERATE WITH THE

23   COURT SECURITY OFFICER AND THE COURT ONLY IN PROVIDING SOME

24   INFORMATION THAT WOULD, I THINK, SATISFY BASELINE.

25        NOW, LET ME SAY THIS:  I HAVE NO REASON TO QUESTION

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    YOUR BACKGROUND WHATEVER.  YOU'RE AN OFFICER OF THE COURT.  I

2    RESPECT YOU.  I RESPECT THE REPRESENTATIONS THAT ARE MADE.  I

3    UNDERSTAND THAT IT'S NOT AT THAT LEVEL.  I DON'T THINK ANY OF

4    THIS IS PERSONAL.  IT'S INSTITUTIONAL.

5         MR. GERAGOS:  THAT'S EXACTLY RIGHT.  IT'S

6    INSTITUTIONAL.  I JUST AM NOT GOING TO, UNDER ANY

7    CIRCUMSTANCES, SUBMIT MYSELF TO A SECURITY CLEARANCE IN ORDER

8    TO DEFEND A CLIENT IN A UNITED STATES DISTRICT COURT.  THEY

9    HAVE TO PRESENT THE EVIDENCE TO A JURY.  I'LL JUST GO BACK TO

10   IT.  WHATEVER THEY'VE SHOWN YOU, IF IT'S EXCULPATORY, THEY'VE

11   GOT TO GIVE IT.  IF IT'S NOT EXCULPATORY AND IT'S

12   INCRIMINATORY, THEY'VE GOT TO PUT IT IN FRONT OF THE JURY.

13        AND I HATE TO BE SO SIMPLISTIC ABOUT IT.  I KNOW

14   THEY'VE LIKENED IT TO ME USING THE TERM "TRUMP" AS A CARD GAME

15   OR WHATEVER ELSE.  BUT I'M NOT -- ESPECIALLY -- I MEAN,

16   THERE'S A CERTAIN DEGREE OF IRONY THAT WE'RE HERE TODAY AND WE

17   CAN'T -- THE DEPARTMENT OF JUSTICE BASICALLY SWOOPED THIS

18   THING UNDER THE BUS IN TERMS OF THIS INVESTIGATION, IF YOU

19   WANT TO CALL IT AN INVESTIGATION.  IT'S REALLY AN ABOMINATION.

20        THEY DIDN'T DO ANYTHING ABOUT IT.  THEY LEAKED.

21   THEY DESTROYED -- THEY SAY THERE'S NO PREJUDICE.  I'LL TELL

22   YOU, THEY PREJUDICED MY CLIENT TO THE TUNE OF $3 MILLION BY

23   FORCING HIM OUT OF THE SALE BECAUSE THEY LEAKED THIS

24   INFORMATION.  I THINK THAT THAT WAS ONE OF THE MAIN REASONS

25   THEY DID IT.  I STILL THINK THAT ONE OF THE REASONS THEY DID

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

35

1    IT WAS TO GET THIS GRAND JURY TO INDICT WHETHER THE COURT

2    THINKS THAT'S A REASONABLE INFERENCE OR NOT.

3            I STILL THINK THAT IT WAS -- AS I SIT HERE TODAY,

4    THAT IT WAS LEAKED DELIBERATELY AS A LEVERAGING POSITION.  I

5    UNDERSTAND REASONABLE MINDS CAN DIFFER.  BUT WHAT THE -- THE

6    BEAUTY OF -- THE IRONY OF THIS IS THAT "OKAY.  TRUST YOUR

7    GOVERNMENT"?  I DON'T TRUST MY GOVERNMENT.  I DON'T TRUST THIS

8    JUSTICE DEPARTMENT.  AND THERE'S NOTHING -- I UNDERSTAND THAT

9    THEY CAN COME IN EX PARTE ALL THEY WANT.

10            I TRULY APPRECIATE EVERYTHING THE COURT HAS SAID

11   ABOUT MY INTEGRITY, BUT IT REALLY ISN'T MY INTEGRITY THAT I'M

12   WORRIED ABOUT.  I AM NOT HERE AS AN ADJUNCT TO THE DEPARTMENT

13   OF JUSTICE.  I DON'T TRUST THE DEPARTMENT OF JUSTICE, AND I

14   DON'T CARE ABOUT ANYTHING THAT THEY WANT TO PUT ME THROUGH.

15   I'M HERE TO DEFEND MY CLIENT.  I'VE GOT LOYALTY TO ONE GUY AND

16   ONE GUY ONLY.  THAT'S BRENT WILKES.

17            THE COURT:  THE IRONY WASN'T LOST ON ME THAT, ON THE

18   ONE HAND, WE'RE TALKING ABOUT LEAKING OF INFORMATION BY

19   SOMEBODY WHO HAD ACCESS TO IT ON THE GOVERNMENT'S SIDE; AND,

20   ON THE OTHER HAND, I'M INSISTING THAT YOU GO THROUGH A

21   BACKGROUND CHECK SO THAT YOU CAN BE TRUSTED WITH INFORMATION.

22            MR. GERAGOS:  RIGHT.  IN FACT, I'LL MAKE YOU A DEAL.

23   IF YOU WANT TO LET ME HAVE A HEARING PRE-TRIAL WHERE I CAN PUT

24   ALL OF THEM UNDER OATH, INCLUDING THEIR CASE AGENTS, AND THEY

25   CAN GET UP HERE AND YOU LET ME DO THE SAME HEARING WITH THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

36

1     REPORTERS, I WILL THEN RECONSIDER -- AND I'LL TALK TO MY

2     CLIENT -- I'LL RECONSIDER GETTING THE SECURITY CLEARANCE IF I

3     CAN GO AND HAVE MY HEARING ON THEIR LEAK.  IF THEY WANT ME TO

4     GO THROUGH THE SECURITY CLEARANCE, I WANT THEM TO GO THROUGH A

5     SECURITY CLEARANCE.

6             THE COURT:  THAT'S NOT MUCH OF A DEAL.

7             I'M BARGAINING FOR RECONSIDERATION?

8             MR. GERAGOS:  NO.  IF YOU TELL ME YOU'LL GIVE ME THE

9     HEARING, THEN I'LL GO OUT AND I'LL SACRIFICE MY PERSONAL

10    BELIEFS HERE.  AND IF YOU GIVE ME THE HEARING PRE-TRIAL, I'LL

11    GO THROUGH THE SECURITY CLEARANCE.

12            MR. HALPERN:  YOUR HONOR, THAT'S A DEAL THAT I THINK

13    WE'RE ALMOST WILLING TO TAKE, AT LEAST THE LAST ONE, IN THE

14    SENSE THAT I DON'T BELIEVE MR. GERAGOS SHOULD HAVE TO UNDERGO

15    SECURITY CLEARANCE THAT THE GOVERNMENT DIDN'T UNDERGO.  SO ALL

16    WE'RE REALLY ASKING IS THAT HE UNDERGO THE SAME SECURITY THAT

17    MYSELF, MR. FORGE, AND MR. --

18            MR. GERAGOS:  AS LONG AS WE CAN AUGMENT IT BY

19    PUTTING THEIR AGENTS UP HERE AND THEIR FORMER HEAD OF THEIR

20    OFFICE SO THAT I CAN ASK THEM UNDER OATH IF THEY'RE THE ONES

21    WHO LEAKED IT.  IF THEY WANT TO MAKE THAT TRADE, THEN THERE

22    WILL NO LONGER BE THE IRONY.  I'M WILLING TO THROW MYSELF

23    UNDER THE BUS IF THEY'RE WILLING TO THROW THEMSELVES UNDER THE

24    BUS.  I DON'T THINK THEY'LL TAKE ME UP ON IT BECAUSE I THINK

25    THAT THEY KNOW IT CAME FROM THE INNER CIRCLE.

PDF created with pdfFactory trial version www.pdffactory.com

1        SO I'M WILLING TO DO IT.  I'M WILLING TO TURN AROUND

2   NOW.  I'LL GO THROUGH THE SECURITY CLEARANCE AS LONG AS I GET

3   A PRE-TRIAL HEARING.

4        THE COURT:  DO YOU HAVE AN IDEA, DO YOU KNOW FROM

5   EXPERIENCE, MR. GERAGOS, WHAT IS INVOLVED IN ONE OF THESE

6   SECURITY CLEARANCES?

7        MR. GERAGOS:  I DO IN TERMS OF TALKING TO OTHERS

8   WHO'VE GONE THROUGH IT, YES.

9        THE COURT:  WHAT'S YOUR UNDERSTANDING OF WHAT'S DONE

10  ONCE ONE SUBMITS TO A SECURITY CLEARANCE?

11       MR. GERAGOS:  IT DEPENDS ON THE LEVEL.  AND IT IS MY

12  UNDERSTANDING THAT FOR THIS CASE, IT'S NOT THE MOST ONEROUS

13  THING.  IT'S NO -- I SUPPOSE IT WOULD PROBABLY TAKE MORE TIME,

14  HOWEVER, THAN A PRE-TRIAL HEARING ON WHETHER OR NOT -- WHO IT

15  WAS THAT LEAKED THIS STUFF.

16       THE COURT:  MY UNDERSTANDING IS THE LEVEL OF

17  CLEARANCE THAT YOU'RE SEEKING IS TOP SECRET?

18       MR. HALPERN:  WELL, IT IS, YOUR HONOR, ALTHOUGH I

19  DON'T THINK IT IS AN ONEROUS BURDEN.  ONCE AGAIN, THE COURT

20  NEEDS TO KNOW THAT THIS WOULD BE A SECURITY CLEARANCE NOT DONE

21  BY THE GOVERNMENT, PER SE, BUT BY MR. LONDERGAN UNDER HIS

22  DIRECTION AND THE COURT'S DIRECTION.

23       THE COURT:  HE'S IN A BIND, THOUGH, MR. HALPERN,

24  BECAUSE THE PREMISE OF YOUR MOTION WAS THAT I COULD SOMEHOW

25  ORDER THIS INDEPENDENT.  MR. LONDERGAN SHARED WITH ME AN

PDF created with pdfFactory trial version www.pdffactory.com

38

1    E-MAIL HE GOT FROM THE FBI WHEN HE MADE AN INQUIRY ON MY

2    INQUIRY UPON READING THE MOTION WHETHER THIS COULD BE DONE.

3              MR. LONDERGAN, IF YOU'LL STEP UP TO THE LECTERN FOR

4    JUST A SECOND.  I KNOW YOU HAVE IT ON YOUR BLACKBERRY, BUT IF

5    YOU COULD SUM UP WHAT YOU WERE TOLD.

6              MR. LONDERGAN:  YES, YOUR HONOR.  THERE'S NO

7    SHORTCUT IN TERMS OF OBTAINING A SECURITY CLEARANCE THROUGH A

8    BACKGROUND INVESTIGATION.  NO INVESTIGATING AGENCY CAN CONDUCT

9    A BACKGROUND INVESTIGATION WITHOUT THE WAIVER FORMS BEING

10   COMPLETED.  THAT'S THE APPLICATION FORM AND THE WAIVER FORMS.

11   THE WAIVER FORMS, FOR EXAMPLE, ARE A TAX CHECK WAIVER AND ALSO

12   WAIVERS SO THAT PEOPLE CAN BE APPROACHED ON BEHALF OF THE

13   APPLICANT FOR THE CLEARANCE.

14             THE COURT:  AND IF I WERE TO ORDER THAT, IF I WERE

15   TO ORDER THAT INDEPENDENT OF MR. GERAGOS'S COOPERATION, IS

16   YOUR UNDERSTANDING THAT THE AGENCY WOULD GO FORWARD OR WOULD

17   RESIST THE ORDER AND NOT GO FORWARD?

18             MR. LONDERGAN:  YOUR HONOR, THERE'S NO INVESTIGATING

19   AGENCY THAT WE KNOW OF WHO WOULD BE ABLE TO CONDUCT A

20   BACKGROUND INVESTIGATION IN THAT WAY.

21             THE COURT:  THEY NOT ONLY DON'T WANT TO DO IT, BUT

22   THEY COULDN'T DO IT WITHOUT INFORMATION FROM MR. GERAGOS, IS

23   WHAT I'VE UNDERSTOOD YOU TO SAY.

24             MR. LONDERGAN:  AND IN ANY CASE, ANY SUPERFLUOUS

25   CHECKS WOULD NOT BE SUFFICIENT TO PROVIDE SUFFICIENT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

39

1    INFORMATION TO THE ADJUDICATION OF A NATIONAL SECURITY

2    CLEARANCE AT THE HIGHEST POSSIBLE LEVELS.

3          THE COURT:  SO IT SEEMS TO ME, GIVEN THAT

4    INFORMATION, MR. HALPERN, WHAT I WOULD HAVE TO DO IS ISSUE AN

5    ORDER DIRECTLY TO MR. GERAGOS TO CONSENT; FILL OUT THESE

6    FORMS, CONSENT, COOPERATE WITH THE INVESTIGATORS.  AND I

7    CAN'T -- ONE OF THE PREMISES WAS -- YOU GAVE ME A NUMBER OF

8    POSSIBLE SOLUTIONS, THAT I COULD DO THIS SOMEHOW INDEPENDENTLY

9    OF HIM WHERE HE WAS NOT COERCED INTO COOPERATING WITH THIS.  I

10    THINK GIVEN WHAT MR. LONDERGAN FOUND OUT, THAT THAT'S A

11    NON-STARTER.  I CAN'T DO THAT.

12          MR. HALPERN:  I TAKE IT FROM MR. LONDERGAN'S

13    RESPONSE THAT THAT MAY BE ACCURATE.  I WOULD SAY, YOUR HONOR,

14    THAT WHAT THE GOVERNMENT WAS ATTEMPTING TO DO WAS TO CONVINCE

15    MR. GERAGOS THAT OUR OFFICE, CLEARLY THE PEOPLE PROSECUTING

16    HIM, HAD NO DOG IN THIS FIGHT.

17          THERE ARE A NUMBER OF IRONIES HERE.  ONE OF THE

18    IRONIES UNDERLYING ALL OF THIS IS THAT THIS IS NOT THE

19    GOVERNMENT TRYING TO KEEP INFORMATION AWAY FROM THE DEFENSE.

20    THIS IS THE EXACT OPPOSITE SITUATION.  THE SHOE'S ON THE OTHER

21    FOOT NOW IN TERMS OF THIS ISSUE.  WE'RE TRYING TO GIVE

22    INFORMATION TO MR. GERAGOS.  AND WE'RE TRYING TO DO IT IN A

23    WAY THAT, A, ALLOWS HIM TO DEFEND HIS CLIENT THOROUGHLY AND

24    VIGOROUSLY; AND IN A WAY THAT DOESN'T END UP RECUSING HIM OR

25    ENDING HIS DISQUALIFICATION.

PDF created with pdfFactory trial version www.pdffactory.com

40

1          THE GOVERNMENT RESPECTS MR. GERAGOS.  WE THINK HE'S

2     BEEN HONORABLE IN MAKING HIS ARGUMENT EVEN IF IT'S WRONG.  BUT

3     CLEARLY, IT'S AN HONORABLE ARGUMENT.  AND WE'RE TRYING TO COME

4     UP WITH A WAY TO ENSURE THAT HE IS ABLE TO REPRESENT

5     MR. WILKES, BUT IN A WAY THAT, IN FACT, WILL NOT RESULT IN

6     REVERSIBLE ERROR OR A CLAIM OF UNQUALIFIED COUNSEL.

7          IN THAT REGARD, WE'RE SIMPLY ASKING THAT HE SUBMIT

8     TO THE SAME PROCEDURE THAT MR. MAC DOUGALL AND EVERYBODY ON

9     MR. MAC DOUGALL'S STAFF SUBMITTED TO, WHICH, AGAIN, I DO NOT

10    BELIEVE -- THEY CAN ADDRESS IT THEMSELVES -- WAS SUCH AND

11    ONEROUS TASK THAT IT WAS SOMETHING THAT MR. GERAGOS SHOULD

12    FIND REPELLANT.

13         AND IT IS A SIMPLE DECISION.  THIS HAS BEEN

14    DIFFICULT, YOUR HONOR, IN THE SENSE THAT WE DON'T WANT TO

15    IMPOSE ANY OBLIGATION UPON HIM.  BUT WE'RE STUCK HERE.

16    THERE'S NO ISSUE HERE.  WE'VE GOT BRADY MATERIAL THAT SHOULD

17    GO OVER THAT'S CLASSIFIED.  THE ONLY WAY WE CAN TURN IT OVER

18    IS IF HE SUBMITS TO THE SAME CLEARANCE AS EVERYBODY ELSE

19    HAVING TO DO WITH THIS CASE, EVERY GOVERNMENT PROSECUTOR AND

20    AGENT --

21         THE COURT:  I'M NOT SURE I AGREE WITH THAT CLAIM.

22    THAT'S WHERE I PART COMPANY WITH THE UNITED STATES.  BRADY IS

23    A CONSTITUTIONAL DUE PROCESS OBLIGATION.  AND WHAT YOU'RE

24    TALKING ABOUT HERE IS A STATUTE THAT REGULATES THE MANNER OF

25    PRODUCTION OF MATERIAL THAT HAS TO BE PRODUCED.  IT STRIKES ME

PDF created with pdfFactory trial version www.pdffactory.com

1    AS WRONG, MR. HALPERN, TO SAY THAT THE STATUTE CAN TRUMP THIS

2    CONSTITUTIONAL OBLIGATION TO TURN OVER EXCULPATORY MATERIAL.

3          MR. HALPERN:  I COMPLETELY AGREE IT CANNOT TRUMP IT.

4    ALL THE STATUTE CAN DO -- WE'RE TALKING ABOUT -- AGAIN, YOUR

5    HONOR, I DON'T WANT TO BLOW IT UP TO MORE THAN IT IS.  IT'S A

6    CONGRESSIONALLY APPROVED STATUTE THAT HAS GIVEN A FRAMEWORK IN

7    CONJUNCTION WITH THE UNITED STATES SUPREME COURT THAT SAYS,

8    "OKAY, GOVERNMENT, THERE'S NO TRUMPING.  YOU'VE GOT TO GIVE

9    THEM BRADY.  YOU'VE GOT TO GIVE THEM JENCKS, ET CETERA.  BUT

10    YOU'RE ALLOWED TO DO IT IN THIS FASHION.  THIS PROTECTS THE

11    DEFENDANT'S RIGHTS."

12          NOW, THE COURTS HAVE APPROVED THAT.  THEY SAID IT'S

13    APPROPRIATE.  AND AS I LOOK AT THE CASES -- AND AGAIN, THERE

14    ARE ABOUT A HALF A DOZEN CASES -- THEY ALL SUPPORT THE

15    GOVERNMENT'S ABILITY TO DO THIS UNDER THE FRAMEWORKS WE'RE

16    ASKING FOR IT.

17          THE COURT:  I'M NOT SUGGESTING THAT YOU HAVE TO GIVE

18    RAW INFORMATION THAT YOU CONSIDER TO BE CLASSIFIED AND BRADY.

19    BUT I AM SUGGESTING IF YOU SEE SOMETHING THAT LOOKS LIKE IT'S

20    EXCULPATORY OR IT WOULD PROVE TO BE IMPEACHING EVIDENCE

21    AGAINST A WITNESS OR THE GOVERNMENT'S CASE, THAT IN THE FORM

22    THAT CIPA REQUIRES AND PERMITS YOU TO TURN IT OVER, THAT IT

23    WOULD BE SANITIZED AND TURNED OVER SO THAT COUNSEL WOULD AT

24    LEAST HAVE THE GIST OF IT, BE ABLE TO MAKE USE OF IT.

25          I THINK THAT'S A -- I DON'T WANT TO USE THE WORD

PDF created with pdfFactory trial version www.pdffactory.com

42

1    "TRUMP" ANYMORE BECAUSE I SAW THAT YOU WERE TALKING ABOUT CARD

2    GAMES, AND I DON'T WANT TO GET INTO THAT.  BUT I THINK IT'S A

3    STAND-ALONE OBLIGATION THAT YOU HAVE.

4            AND IF YOU SAY "LOOK, WE'RE BEING BUFFETED BY TWO

5    OBLIGATIONS:  THE OBLIGATION TO GIVE OVER THIS EXCULPATORY

6    MATERIAL AND THE FACT THAT IT'S CLASSIFIED AND SUBJECT TO A

7    STATUTE.  SO WE'RE GOING TO GIVE IT OVER.  WE'RE GOING TO GIVE

8    IT OVER IN ITS SANITIZED FORM THAT DOESN'T GIVE UP THE GHOST,

9    BUT WE'RE GOING TO GIVE IT OVER," IS THAT THE GOVERNMENT'S

10   POSITION?  DO YOU INTEND TO DO THAT IRRESPECTIVE OF WHETHER

11   MR. GERAGOS SUBMITS TO THIS?

12           MR. HALPERN:  YOUR HONOR, OUR POSITION, IT HAS BEEN

13   IN THE PLEADINGS AND IT REMAINS THAT WE HAVE SEVERAL OPTIONS.

14           ONE, WE WERE HOPING WE COULD GET A CLEARANCE WHICH

15   MR. GERAGOS COULD LIVE WITH.  BUT IF MR. LONDERGAN CAN'T

16   ARRANGE THAT, WE UNDERSTAND IT.

17           BUT ABSENT THAT, THE ONLY OTHER PROCEDURE WE

18   HAVE THAT CIPA RECOGNIZES IS THE SECTION 4 PROCEDURE, WHICH,

19   IN FACT, IS WHAT YOU'RE TALKING ABOUT.  AND WE BRIEFED THIS

20   BECAUSE WE DO THINK IT IS AN OPTION.

21           BUT AGAIN, WHEN I SAY THIS, IN OUR PAPERS WE MADE IT

22   CLEAR THIS IS AN OPTION THAT IS FRAUGHT WITH PERIL FOR A

23   NUMBER OF REASONS.

24           NUMBER ONE, JUST AT THE OUTSET, IT WILL REQUIRE US

25   TO LOOK AT WHAT IS IN THE NEIGHBORHOOD OF 17,000 PAGES.  IT'S

PDF created with pdfFactory trial version www.pdffactory.com

43

1   ABOUT -- A LITTLE UNDER 3,000 DOCUMENTS.  WE CAN DO THAT.  BUT

2   WE HAVE TO DO IT LINE BY LINE, ITEM BY ITEM, AND MAKE

3   SUBSTITUTIONS.  I INQUIRED AS TO HOW LONG THAT WOULD BE.

4   AGAIN, DEFENSE ATTORNEYS ARE FOND OF THINKING, AT ANY RATE,

5   EVERYBODY THAT DOESN'T WORK FOR THE GOVERNMENT IS FOND OF

6   THINKING THAT THE GOVERNMENT HAS UNLIMITED RESOURCES.

7            I CAN TELL YOU, YOUR HONOR, THERE ARE EXTREMELY FEW

8   PEOPLE WHO ARE CAPABLE OF DOING A CLASSIFICATION REVIEW, BOTH

9   BECAUSE THEY HAVE THE CLEARANCE AND THE AUTHORITY TO DO SO,

10  SITTING WITH THE CIA.  THESE INDIVIDUALS WHO DO HAVE THE

11  ABILITY TO DO THIS ARE WORKING ON NUMEROUS REQUESTS, NOT JUST

12  THIS CASE.  TO PRODUCE THE INFORMATION IN A MANNER THAT WE CAN

13  PRESENT TO THE COURT WILL TAKE IN THE NEIGHBORHOOD OF SIX

14  MONTHS BECAUSE WE HAVE TO DO IT LINE BY LINE, ITEM BY ITEM.

15           THE COURT:  YOU'RE TALKING JUST EXCULPATORY

16  INFORMATION?  BECAUSE THAT'S ALL I'M TALKING ABOUT AT THIS

17  POINT.  IF MR. GERAGOS PERSISTS IN REFUSING TO GO THROUGH

18  THIS, I THINK MR. WILKES UNDERSTANDS THE CONSEQUENCE OF THAT

19  IS HE'S NOT GOING TO GET THE INCULPATORY INFORMATION.  AND HE

20  MAY BE SURPRISED THAT THERE'S SOME THINGS OUT THERE THAT HURT

21  HIS CASE THAT HE HAD A CHANCE TO KNOW BEFOREHAND AND WAIVED

22  THAT OPPORTUNITY.  SO I'M NOT TALKING ABOUT THAT.  I'M TALKING

23  STRICTLY ABOUT EXCULPATORY MATERIAL WHERE I THINK YOU HAVE A

24  STAND-ALONE OBLIGATION TO GIVE THAT OVER.

25           MR. HALPERN:  TO GIVE YOU AN IDEA, EVERY SINGLE

PDF created with pdfFactory trial version www.pdffactory.com

44

1    WITNESS REPORT WE HAVE COULD BE CLASSIFIED LIKE THAT.  AND THE

2    REASON IT IS, YOUR HONOR, IS BECAUSE IN THE FORM THAT WE WILL

3    TURN IT OVER, HE WILL NOT EVEN BE ABLE TO RECOGNIZE THE PERSON

4    WHO'S MAKING THE STATEMENTS BECAUSE THEY'RE GOING TO BE

5    CLASSIFIED.  THEY INVOLVED INDIVIDUALS WHO MAY BE UNDERCOVER

6    OR HAVE BEEN UNDERCOVER.  HE WILL BE UNABLE TO DO ANY TYPE OF

7    BACKGROUND REVIEW ON THESE PEOPLE BECAUSE HE WON'T EVEN KNOW

8    WHO THEY ARE.

9         THE COURT:  MAYBE HE WILL.  HE EXPRESSED CONFIDENCE

10   THAT HE KNEW THE INFORMATION ALREADY AT THE FIRST HEARING.

11        MR. HALPERN:  YOUR HONOR, FOR THIS TO BE AT ALL

12   EFFECTIVE -- AND AGAIN, I'M NOT SAYING OF THE 17,000, MAYBE

13   THERE AREN'T SOME PAGES THEY'RE AWARE OF.  BUT THERE ARE

14   CLEARLY THOUSANDS OF PAGES THAT WE CAN'T BE IN THE POSITION OF

15   SAYING, "HE DOESN'T NEED TO THIS, THE DEFENDANT.  HE DOESN'T

16   NEED TO KNOW THAT."

17        AT A MINIMUM, WHAT IS CONTEMPLATED BY SECTION 4,

18   MAKE NO MISTAKE ABOUT IT, IS WE MAKE THESE SUBSTITUTIONS.  WE

19   GIVE THESE DOCUMENTS TO THE COURT.  AND SAY IT GOES FROM

20   17,000 OR WHAT MIGHT BE PROBABLY 19,000 PAGES DOWN TO -- SAY

21   WE GIVE OVER 75 PERCENT.  BUT WE'VE GOT 5,000 PAGES WITH

22   SUBSTITUTIONS.  WE STILL HAVE TO GIVE THAT TO THE COURT.  AND

23   THE COURT HAS TO PASS ITEM BY ITEM ON EACH ONE; IS THIS AN

24   ADEQUATE SUBSTITUTION.

25        "MR. HALPERN, YOU'RE ONLY SAYING HERE THAT IT WAS

PDF created with pdfFactory trial version www.pdffactory.com

1    SOMETIME IN THE FALL OF 2006.  WHY CAN'T YOU GIVE THEM A DATE?

2    WHAT ABOUT THIS PERSON'S NAME?  THIS PERSON IS GOING TO BE A

3    WITNESS."

4           BECAUSE IT'S INTEGRAL TO SAFEGUARD HIS RIGHTS.  AND

5    WHAT HE'S ASKING US TO DO NOW IS TO INVOLVE THE COURT IN

6    PROTECTING HIS RIGHTS, WHEREAS ALWAYS -- AND THE CASES ARE

7    QUITE SPECIFIC ON IT IN THE 9TH CIRCUIT AS WELL AS EVERY

8    CIRCUIT.  OUR OBLIGATION IS TO GIVE THIS MATERIAL TO

9    MR. GERAGOS SO HE CAN DETERMINE WHAT IS CONSISTENT WITH HIS

10   DEFENSE.

11          I DON'T EVEN KNOW HIS DEFENSE, AND YET I'M SUPPOSED

12   TO DECIDE WHAT PIECES OF MATERIAL TO SUBSTITUTE AND HOW TO

13   SUBSTITUTE THEM FOR THE COURT.  I CAN'T ADVISE YOU

14   APPROPRIATELY WITHOUT INPUT FROM MR. GERAGOS IN THIS PROCESS.

15   AND BECAUSE OF THAT, THE ONLY CASES THAT HAVE GONE THIS

16   ROUTE -- AND MOST RECENTLY THE CLAY DECISION, A 9TH CIRCUIT

17   DECISION, DEALING WITH ONE SUBSTITUTION, WENT UP TO THE

18   9TH CIRCUIT.  THE GOVERNMENT ARGUED ONE WAY.  THE 9TH CIRCUIT

19   SAID THAT THE SUBSTITUTION FORCED BY THE COURT ON THE

20   GOVERNMENT WAS APPROPRIATE.

21          SO THE COURT WINS AND THE DEFENDANT WINS, ALTHOUGH

22   WITH THAT ONE SUBSTITUTION THE GOVERNMENT OBJECTED, I'M SURE

23   IT DELAYED THE TRIAL SIX OR NINE MONTHS.  THIS IS A WAY THAT

24   IF WE DO TRY TO TAKE OUR FACTS, WE'RE REALLY TRYING TO DRIVE A

25   SQUARE PEG THROUGH A ROUND HOLE IN SECTION 4, WHICH WAS

PDF created with pdfFactory trial version www.pdffactory.com

46

1   DESIGNED NOT TO RELIEVE THE BURDEN ON DEFENSE COUNSEL TO LOOK

2   AT THIS AND NOT TO PLACE THE BURDEN ON THE COURT TO DETERMINE

3   WHAT IS AN ACCURATE SUBSTITUTION WITHOUT ANY INFORMATION FROM

4   DEFENSE COUNSEL, BUT TO ALLOW THE GOVERNMENT IN REALLY RARE

5   CASES TO COME TO THE COURT AND SAY, "LOOK, WE DON'T WANT TO

6   GIVE THIS TO THEM."  THEN WE'RE GOING TO SECTION 4.  "HERE'S

7   OUR SUBSTITUTION.  THIS IS SO CLASSIFIED, WE CAN'T EVEN GIVE

8   IT TO THEM."

9           THAT'S THE PURPOSE OF SECTION 4, NOT TO ALLOW

10   MR. GERAGOS TO HAVE US WINNOW AWAY WHAT WE THINK SHOULD BE

11   BRADY OR SHOULDN'T BE BRADY.  CLEARLY, YOUR HONOR, IT WOULD

12   MAKE OUR ABILITY TO PROSECUTE THE CASE FAR MORE EASY.  YOU

13   DON'T OFTEN SEE GOVERNMENT PROSECUTORS ARGUING TO GIVE

14   MATERIAL TO THE DEFENSE.  I'D LIKE TO DO IT.  I'D LIKE TO

15   THINK WE'RE DOING IT FOR ONE REASON AND ONE REASON ALONE:

16   BECAUSE IT'S APPROPRIATE.

17           BUT IN THAT FRAMEWORK -- I CAN'T HELP FORGET THAT --

18   WHAT WE WANT HERE IS A FAIR TRIAL WITH A FAIR VERDICT THAT

19   COULD BE UPHELD ON APPEAL.  I DON'T WANT TO TRY TO URGE ON THE

20   COURT A COURSE OF CONDUCT WHICH, AFTER WE HAVE GO THROUGH IT,

21   IS GOING TO RESULT IN APPEALS EITHER INTERIM BY SECTION 78 OR,

22   WORSE THAN THAT, IF WE DO GET A CONVICTION, TO HAVE THAT

23   CONVICTION OVERTURNED.  IT IS BECAUSE OF THAT THAT I CANNOT

24   URGE A SECTION 4 PROCEEDING ON IT.

25           I THINK MR. GERAGOS NEEDS TO LOOK AT THIS

PDF created with pdfFactory trial version www.pdffactory.com

47

1    INFORMATION.  AND I SEE REALLY NO WAY AROUND -- THE COURT

2    REALLY WANTS TO UNDERGO A LONG TORTUROUS SECTION 4 --

3              THE COURT:  NO, I DON'T WANT TO DO THAT.  BUT YOU'VE

4    TAKEN THE POSITION THAT AN ABSOLUTE PREREQUISITE IS THAT HE

5    SUBMIT TO THIS BACKGROUND --

6              MR. HALPERN:  WELL, THAT'S NOT MY POSITION, YOUR

7    HONOR.  IT WAS MY HOPE AND I WAS UNDER THE UNDERSTANDING,

8    CERTAINLY, WHEN IT WAS SUGGESTED THAT THERE WERE WAYS

9    CLEARANCE COULD BE DONE WITH -- USING MR. LONDERGAN AND THE

10   COURT.  WHAT'S IMPERATIVE IS THAT MR. LONDERGAN, WHO IS

11   INDEPENDENT, CAN INFORM THE COURT THAT MR. GERAGOS IS AN

12   APPROPRIATE INDIVIDUAL TO RECEIVE THIS INFORMATION.  HE'S

13   CONVINCED THAT WE CAN GIVE IT TO HIM WITHOUT RUNNING A RISK

14   THAT WE OTHERWISE ARE NOT OBLIGATED TO RUN.

15             THAT'S ALL I'M SAYING.  THAT HAS TO BE DONE.  AND IF

16   MR. LONDERGAN CAN'T DO IT, WE CERTAINTY CAN'T ALLOW

17   MR. GERAGOS TO TAKE CLASSIFIED INFORMATION.  BECAUSE WE GIVE

18   IT TO MR. LONDERGAN, AND MR. LONDERGAN GIVES IT TO

19   MR. GERAGOS.

20             THE COURT:  THE CASE THAT YOU'VE CITED TO ME, JUDGE

21   SAND'S OPINION, HE OPTS TO DO IT IN U.S.A. VERSUS BIN LADEN.

22   BUT HE ALSO MAKES IT CLEAR THAT IT'S NOT ABSOLUTELY REQUIRED

23   IN EVERY CASE THAT THAT BE DONE.

24             MR. GERAGOS:  THIS IS THE ONE CASE WHERE MY

25   CLIENT --

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

48

1          THE COURT:  THERE'S ACTUALLY MORE THAN ONE.  HE

2     CITES TO CONTRARY AUTHORITY WHERE JUDGES HAVE SAID, "NO, I'M

3     NOT GOING TO ORDER IT."  AND THE CASES APPARENTLY HAVE GONE

4     FORWARD.

5          MR. HALPERN:  ALL OF THOSE CASES, YOUR HONOR --

6     REALLY THE ONLY ONE THAT I SEE THAT'S REALLY ON POINT IS

7     JOLIFF.  AND IN THAT CASE, JOLIFF, ONCE AGAIN, WAS HAPPY

8     SIMPLY HAVING THE GOVERNMENT PROSECUTOR GO TO THE COURT

9     SECURITY OFFICER AND MAKE SURE IT WAS OKAY TO TURN OVER THE

10    INFORMATION.  IT MIGHT NOT HAVE BEEN HIGHLY CLASSIFIED.

11         THE COURT SECURITY OFFICER IN THAT CASE MIGHT HAVE

12    SAID, "I SATISFIED MYSELF."  MAYBE "I'VE LOOKED -- I'VE RUN

13    SOME INDICES.  THERE'S NO CRIMINAL RECORD.  HE'S NOT

14    DISBARRED."  THAT'S FINE.

15         THE COURT:  HE CAN'T EVEN DETERMINE CRIMINAL RECORD,

16    THOUGH.  MR. LONDERGAN TELLS ME THAT HE HAS NO ACCESS TO THESE

17    DATABASES JUST BECAUSE HE'S DESIGNATED AS COURT SECURITY

18    OFFICER.  HE NECESSARILY HAS TO RELY ON LAW ENFORCEMENT.  AND

19    YOU AND I KNOW THAT ACCESS TO THOSE DATABASES NOW IS VERY

20    CLOSELY REGULATED.  YOU'VE GOT TO SIGN ON AND SIGN OFF.

21    THERE'S A RECORD OF WHO WAS ON AND OFF AT THE VARIOUS TIMES.

22         MR. LONDERGAN, LET ME COME BACK TO YOU.  IS THERE

23    SOME WAY THAT WE CAN CHECK OUT MR. GERAGOS WITHOUT HIS

24    COOPERATION WHERE YOU WOULD FEEL CONFIDENT TELLING THE COURT

25    IT'S FINE TO HAVE THE GOVERNMENT TURN THIS INFORMATION OVER TO

PDF created with pdfFactory trial version www.pdffactory.com

49

1    HIM?  CAN YOU THINK OF ANY ALTERNATIVE TO COMPELLING HIM TO

2    COOPERATE?

3            MR. LONDERGAN:  UNFORTUNATELY, YOUR HONOR, THERE IS

4    NOTHING I'M AWARE OF.

5            THE COURT:  IS THE NATURE OF THE INFORMATION OF

6    WHICH YOU'RE AWARE IN THIS CASE SUCH THAT YOU WOULD SAY, "WE

7    NEED TO HAVE THESE BACKGROUND CHECKS RUN"?

8            MR. LONDERGAN:  ABSOLUTELY, POSITIVELY.  THIS IS IT.

9            THE COURT:  MR. GERAGOS, WE'RE BACK TO YOU.

10           MR. GERAGOS:  WE'RE BACK TO THE SITUATION, JUDGE.  I

11   HAVE A CLIENT WHO NEVER OBTAINED A SECURITY CLEARANCE.  I'M

12   NOT IN MR. FOGGO OR MR. MAC DOUGALL'S SITUATION.  I UNDERSTAND

13   IF I WAS REPRESENTING MR. FOGGO, OBVIOUSLY, WHEN I UNDERTAKE

14   TO REPRESENT SOMEBODY WHO WAS THE DEPUTY DIRECTOR IN CHARGE OF

15   THE DAILY OPERATIONS OF THE CIA, I'D HAVE TO BE CLUELESS NOT

16   TO DO IT.

17           THE COURT:  HOLD ON ONE SECOND.  TRUST ME FOR A

18   SECOND.  BECAUSE, AS I TOLD YOU, THEY CAME DOWN AND MADE AN

19   EX PARTE PRESENTATION TO GIVE ME SOME CONTEXT.  I UNDERSTAND

20   THE DISTINCTION BETWEEN WHAT MR. WILKES HAS DONE FOR A LIVING

21   UP TO THIS POINT AND WHAT MR. FOGGO HAS DONE.  I GET THAT.

22   BUT WHAT I'M TELLING YOU IS BASED ON WHAT I WAS SHOWN IN

23   CONTEXT, THERE'S SOME INFORMATION THAT MR. WILKES OUGHT TO

24   KNOW THAT I DON'T THINK HE KNOWS.  I DON'T.

25           MR. GERAGOS:  THEN THEY OUGHT TO TURN IT OVER.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  THEY CAN'T.

2          MR. GERAGOS:  YES, THEY CAN.  I'M TELLING YOU THAT I

3   THINK THEY CAN.  I THINK THIS IS NOTHING MORE THAN A BACK-DOOR

4   WAY FOR THEM TO MANAGE THE INFORMATION.  I DON'T BUY THAT.

5   THEY CAN TURN IT OVER.  IF THEY CAN'T TURN IT OVER, THEY KNOW

6   WHAT THEIR OPTIONS ARE.  THEY OBVIOUSLY HAD INFORMATION TO GO

7   TO THE GRAND JURY TO GET AN INDICTMENT.  SO THEY HAD TO PUT

8   SOMETHING IN FRONT OF THE GRAND JURY.

9          THEY ALSO, UNDER CIPA, HAVE TO HAVE THE ABILITY TO

10  PUT STUFF IN FRONT OF A PETIT JURY.  SO IF THEY'VE GOT THAT

11  INFORMATION, TURN IT OVER AND LET ME SEE IT, WHICH THEY

12  HAVEN'T DONE.  IF THEY'VE GOT EXCULPATORY THAT THE COURT

13  THINKS I OUGHT TO SEE, THEN TURN IT OVER SO I CAN SEE IT.  BUT

14  I DON'T HAVE TO GO THROUGH -- JUMP THROUGH HOOPS ADMINISTERED

15  BY THE DEPARTMENT OF JUSTICE OF THE FBI OR ANY OF THE OTHER

16  ALPHABET SOUPS ADMINISTERED UNDER THE HOMELAND SECURITY IN

17  ORDER TO GET THE INFORMATION TO DEFEND A CLIENT WHO'S HERE IN

18  A COURTROOM.

19          I JUST GOT BACK FROM MOLDAVIA.  FOR A MINUTE HERE, I

20  BLINKED MY EYES AND THOUGHT I WAS IN MOLDAVIA LISTENING TO THE

21  GOVERNMENT TELL ME THAT I'VE GOT TO UNDERGO SOME KIND OF

22  RIGOROUS OR ONEROUS BACKGROUND CHECK.

23          THE COURT:  IT'S REALLY NOT LIKE THAT.  I'VE BEEN

24  THROUGH A BUNCH OF THEM, AND THEY'RE NOT THAT RIGOROUS.

25          MR. GERAGOS:  IN PRINCIPLE, I DON'T THINK THAT A

PDF created with pdfFactory trial version www.pdffactory.com

1  LAWYER IN CALIFORNIA WHEN HE'S DEFENDING A CLIENT SHOULD HAVE

2  TO GO THROUGH A BACKGROUND CHECK TO GET DISCOVERY.

3        MR. HALPERN:  HE DOESN'T.  THAT'S THE BOTTOM LINE ON

4  ALL OF THIS.  HE DOES NOT.  NOBODY IS FORCING HIM TO BE HERE.

5  WE WANT HIM TO BE HERE.  WE'RE NOT LOOKING FOR ANOTHER CLIENT

6  {SIC}.

7        BUT I HAVE TO SAY, YOUR HONOR, THE FACT IS WHEN

8  PEOPLE LOOK AT THIS CASE, THEY'RE GOING TO BE ABLE TO TAKE

9  THIS TRANSCRIPT AND SEE THAT THIS IS THE PERFECT DEFINITION OF

10  BRADY.  I'M NOT IMPUTING BAD FAITH.  AGAIN, PLEASE,

11  MR. GERAGOS SHOULD UNDERSTAND THAT.  HE'S TAKING A PRINCIPLE

12  POSITION.  I'M NOT SAYING HE'S DOING THIS FOR A NEFARIOUS

13  MOTIVE.

14        BUT THE FACT IS HE IS ATTEMPTING TO GET THE

15  GOVERNMENT TO GIVE HIM CLASSIFIED INFORMATION IN A MANNER

16  OUTSIDE OF CIPA TO FORCE OUR HAND.  WE CAN'T DO IT.  AND THE

17  HARDER HE POUNDS THE TABLE, ALTHOUGH I MUST SAY TO THE EXTENT

18  HE'S WILLING TO HORSE TRADE, I THINK HE UNDERCUTS HIS

19  PRINCIPLES.  BUT THAT ASIDE --

20        THE COURT:  I'M NOT WILLING TO HORSE TRADE.

21        MR. HALPERN:  SO THE POINT IS THE HARDER HE POUNDS

22  THE TABLE AND STANDS ON HIS PRINCIPLES, THE MORE HE'S SIMPLY

23  MAKING CLEAR THAT HE WANTS THE GOVERNMENT TO TURN OVER WHAT IS

24  HIGHLY CLASSIFIED INFORMATION IN A MANNER THAT, AGAIN -- IT'S

25  NOT GOING TO HARM HIM.  HE JUST WANTS IT REVEALED.  HE WANTS

PDF created with pdfFactory trial version www.pdffactory.com

52

1    TO PUT US IN THE POSITION OF SAYING, "THAT'S IT.  WE THROW UP

2    OUT HANDS.  WE'RE GIVING UP."  AND BEFORE CIPA, WE WOULD HAVE

3    HAD TO GIVE UP.

4         BUT NOW WE DON'T.  WE HAVE AN APPROVAL PROCEDURE.

5    AND IT'S HIS CHOICE, REALLY, IF HE WANTS TO LIVE WITH IT.  THE

6    GOVERNMENT HAS NO CHOICE.

7         THE COURT:  I DON'T HAVE AN ALTERNATIVE HERE TO

8    APPOINT SECOND COUNSEL OR ASK MR. GERAGOS TO DESIGNATE ONE OF

9    HIS ASSOCIATES AS THE CIPA CONTACT PERSON WHO WOULD UNDERGO

10   THE -- I'M NOT SURE HE WILL.  I DON'T HAVE THAT --

11        MR. GERAGOS:  I CAN SAY I WOULD NOT.  NOBODY THAT'S

12   WORKING FOR ME IS GOING TO UNDERGO IT.

13        THE COURT:  I DON'T KNOW THAT THAT WOULD GET US

14   ANYWHERE ANYWAY BECAUSE ULTIMATELY, YOU'D HAVE TO KNOW THE

15   INFORMATION.  AND TO GET THE INFORMATION, THEY WANT YOU TO GO

16   THROUGH THIS CLEARANCE.

17        MR. HALPERN:  WHAT'S UNFORTUNATE -- I WISH, YOUR

18   HONOR -- BECAUSE AGAIN, I'M MAKING THIS STATEMENT AS A MARK OF

19   GOOD FAITH IN THAT WE DON'T WANT TO CROSS MR. WILKES'S RIGHT

20   TO COUNSEL OF CHOICE.  WE DON'T.  I WOULD BE WILLING EVEN TO

21   HAVE AN EXPEDITED APPEAL.  I THOUGHT PERHAPS A MANDAMUS MIGHT

22   BE APPROPRIATE.  I LOOKED INTO THE LAW.  AND CLEARLY, HE HAS

23   NO RIGHT TO MANDAMUS.  IF THE COURT WAS TO REMOVE HIM BECAUSE

24   HE WOULDN'T, THERE IS NO RIGHT OF MANDAMUS.  HOWEVER, IF THE

25   GOVERNMENT DOESN'T OBJECT TO IT AND THE COURT INDICATES IT

PDF created with pdfFactory trial version www.pdffactory.com

1    MIGHT WISH IT, PERHAPS THE 9TH CIRCUIT WOULD HEAR IT.

2            THE COURT:  WHY WOULDN'T THERE BE A RIGHT OF

3    MANDAMUS?  IF I REMOVE MR. GERAGOS, HOW CAN MR. WILKES EVER

4    HAVE THAT AIRED AND SAY -- DOES HE HAVE TO WAIT UNTIL HE'S

5    MAYBE CONVICTED?

6            MR. HALPERN:  THAT WAS EXACTLY MY POSITION.

7            MR. GERAGOS:  WHY CAN'T THEY JUST APPEAL WHEN YOU

8    DENIED THEIR MOTION?

9            MR. HALPERN:  UNFORTUNATELY, THERE IS -- WELL, THAT

10   IS A POSSIBILITY.

11           MR. GERAGOS:  WHY DON'T YOU JUST DENY THEIR MOTION

12   AND LET THEM APPEAL?

13           MR. HALPERN:  THERE ARE TWO WAYS TO DO THIS, YOUR

14   HONOR:  THE GOVERNMENT IS NOT GOING TO TURN THIS OVER.  WE

15   BELIEVE THE CASE LAW IS SQUARELY ON OUR SIDE.

16           MR. GERAGOS:  LET'S LET THE 9TH CIRCUIT RULE.

17           MR. HALPERN:  I WOULD INVITE THE COURT TO --

18           THE COURT:  DO YOU KNOW HOW MANY WRITS I HAVE UP

19   THERE RIGHT NOW?

20           MR. GERAGOS:  THEN WHAT'S ONE MORE?

21           MR. HALPERN:  THAT'S THE ONLY PROBLEM WITH IT.  I'M

22   NOT GOING TO INVITE THE COURT, AS AN OFFICER OF THE COURT, TO

23   TAKE A POSITION THAT I THINK WILL BE REVERSED.  ALTHOUGH I

24   HAVE NO PROBLEM.  IF THE COURT WANTS TO DO IT THAT WAY, THAT'S

25   FINE.  IF THE GOVERNMENT'S WRONG, WE TURN IT OVER.

PDF created with pdfFactory trial version www.pdffactory.com

54

1          BUT I DO THINK THE CASE LAW IS FAIRLY STRONG.  I

2     DIDN'T FIND TWO CASES.  I FOUND ONE CASE GOING THE OTHER WAY.

3     BUT, AS I SAID, THE ONLY REASON THE CASE WENT THE OTHER WAY IS

4     THE BECAUSE THE GOVERNMENT DIDN'T OBJECT.  THE GOVERNMENT

5     WASN'T PUSHING THAT ISSUE.  SO IT WAS CLEARLY DICTA IN THE

6     JOLIFF CASE.

7          I DO THINK THAT IF THE COURT WANTED TO SEEK

8     MANDAMUS, IT WOULD BE -- HAVE MR. GERAGOS SEEK MANDAMUS, IT'S

9     REASONABLE.  BUT I HAVE TO TELL YOU IT'S DISCRETIONARY.  IT'S

10    A SUPREME COURT CASE, WHICH I CAN GIVE THE COURT, DIRECTLY ON

11    POINT WHICH SAYS THE WAY TO VINDICATE THE RIGHT TO HAVE

12    COUNSEL REMOVED, HAVE NEW COUNSEL COME IN, AND IF THERE'S A

13    GUILTY VERDICT, THEN THEY CAN EXAMINE THE ISSUE.

14          THE COURT:  WHAT DO YOU MEAN THAT ITS DISCRETIONARY?

15    THEY MIGHT TAKE IT?

16          MR. HALPERN:  THE 9TH CIRCUIT ALWAYS HAS THE RIGHT

17    TO TAKE MANDAMUS IF THEY DESIRE TO TAKE IT.  BUT THEY MIGHT

18    FIND IT'S NOT MANDATORY.  IT'S OUTSIDE THEIR DISCRETION.  SO

19    THAT ALSO PUTS THE COURT IN A DIFFICULT POSITION.  I'M NOT

20    GOING TO TRY TO INTERPRET WHETHER THE 9TH CIRCUIT WOULD TAKE A

21    DISCRETIONARY MANDAMUS EVEN WITH THE COURT URGING IT AND THE

22    GOVERNMENT SAYING IT DIDN'T OBJECT.  BUT THOSE ARE THE ONLY

23    TWO POSSIBILITIES, YOUR HONOR, THAT WE SEE AT THIS POINT.

24          THE COURT:  MR. GERAGOS, ANYTHING MORE?

25          MR. GERAGOS:  NO.  I SUBMIT IT.

PDF created with pdfFactory trial version www.pdffactory.com

55

1          THE COURT:  WE READ THE <u>WHEAT</u> CASE.  IN THE PAST, I

2     THOUGHT AND I CONTINUE TO THINK THAT THERE'S SOME DISTINCTIONS

3     BETWEEN THE SITUATION WHICH THE COURT IS PRESENTED HERE AND

4     WHAT WE SPEAK TO.  <u>WHEAT</u> INVOLVES A HOST OF CONFLICTS WITH A

5     LAWYER ATTEMPTING TO REPRESENT CO-DEFENDANTS ON A CASE AND

6     WHERE THE LAWYER WOULD NECESSARILY HAVE TO REFRAIN FROM

7     CROSS-EXAMINING WHAT WERE REPRESENTED AS PROSPECTIVE WITNESSES

8     BECAUSE HE'D BEEN IN A LAWYER-CLIENT RELATIONSHIP WITH THOSE

9     WITNESSES BEFORE.

10          I REMEMBER THIS CASE WHEN IT HAPPENED.  I WAS HERE.

11     JUDGE IRVING REMOVED MR. IREDALE FINDING THAT IT WOULD PUT THE

12     DEFENDANT THAT HE WAS REPRESENTING IN A REAL BIND BECAUSE HE

13     HAD HIS HANDS TIED BEHIND HIS BACK.  HIS ETHICAL

14     RESPONSIBILITIES AS AN ATTORNEY TO THE FORMER CLIENTS WOULD

15     PREVENT HIM FROM REVEALING ANYTHING HE LEARNED IN THE COURSE

16     OF PRESENTING THEM.  AND JUDGE IRVING BELIEVED THAT THAT WOULD

17     IMPAIR HIS REPRESENTATION OF MR. WHEAT, THE CURRENT CLIENT.

18          SO THERE ARE DIFFERENCES HERE.  YOU'RE NOT

19     CONFLICTED IN THAT RESPECT, MR. GERAGOS.  BUT THE EFFECT OF

20     THIS, I THINK, PUTS YOU IN A CONFLICT SITUATION THAT IS

21     SOMEWHAT AKIN TO THAT.  AS I SAID, IT'S NOT JUST SPECULATION

22     ON MY PART AT THIS POINT BECAUSE I'VE BEEN SHOWN SOME OF THE

23     ACTUAL DOCUMENTATION.  AT FIRST WHEN WE HAD OUR HEARING, I

24     THOUGHT "WELL, YOU KNOW, YOU REPRESENT TO ME THAT YOU KNOW THE

25     INFORMATION."  MR. WILKES, HE'S THE OBJECT OF ATTENTION HERE.

PDF created with pdfFactory trial version www.pdffactory.com

1   HE WAS INVOLVED IN THE FIRSTHAND DEALINGS.  HE'S PRESUMABLY

2   TOLD YOU.  YOU'VE INTERVIEWED HIM ABOUT THE CASE.

3           SO I KNOW -- I ACCEPT THAT YOU BELIEVE YOU KNOW WHAT

4   THE INFORMATION IS AND THAT NOTHING'S GOING TO COME AS A

5   SURPRISE.  I'VE ALSO CONSIDERED THE POSSIBILITY THAT YOU COULD

6   DRIFT IN THE TAILWIND OF MR. FOGGO ON THE CASE AND LET HIS

7   LAWYERS GO FIRST.  AND YOU'RE A VERY SHARP GUY.  YOU CAN

8   PROBABLY PICK UP THE GIST OF THINGS SO THAT MR. WILKES

9   WOULDN'T BE PREJUDICED BY NOT HAVING THE INFORMATION.  THAT

10  ALSO INFORMED MY THINKING AT ONE POINT.

11          THEN THE GOVERNMENT CAME AND PRESENTED ME SOME OF

12  THE INFORMATION, JUST TO GIVE ME SOME CONTEXT.  IT WAS

13  INTERESTING.  ONE OF THE CASES THAT I READ ON CIPA WHERE A

14  DISTRICT JUDGE MADE A DECISION THIS COULDN'T POSSIBLY AFFECT

15  THE GOVERNMENT'S NATIONAL SECURITY INTERESTS, THE COURT OF

16  APPEALS SAID, "AH, AH, AH, AH.  NOT SO QUICKLY.  WHAT A

17  DISTRICT JUDGE THINKS IS NOT GOING TO AFFECT SECURITY INTEREST

18  IS NOT THE MOST INFORMED POSITION.  THE SECURITY PEOPLE ARE IN

19  THE BEST POSITION TO KNOW THAT."

20          AND SO, TOO, IT WAS HERE.  I THOUGHT "WELL, ALL

21  RIGHT.  I'VE GOT AN EXPERIENCED LAWYER WHO'S THOROUGHLY

22  INTERVIEWED HIS CLIENT.  HIS CLIENT THINKS HE KNOWS WHAT

23  THEY'RE TALKING ABOUT."  I KNOW WE'RE ALL TALKING IN VERY

24  GENERIC TERMS HERE.  "AND HE'S PREPARED TO GO FORWARD.  AND

25  I'VE EXPLAINED IT TO THIS SOPHISTICATED CLIENT THAT THE EFFECT

PDF created with pdfFactory trial version www.pdffactory.com

1    OF THIS IS 'YOU DON'T GET CERTAIN DISCOVERY THAT YOU'RE

2    ENTITLED TO.'"

3           NOW, AT THE TIME, AS I SAID, I THOUGHT -- AND THIS

4    WAS SIMPLISTIC I SEE NOW IN RETROSPECT.  BUT I THOUGHT "OKAY.

5    THEY HAVE AN OBLIGATION UNDER THE CONSTITUTION TO GIVE YOU

6    EXCULPATORY AND IMPEACHMENT MATERIAL.  AND SO DISCHARGE THAT

7    OBLIGATION.  AND IF MR. WILKES, KNOWING THE CONSEQUENCES, THAT

8    HE'S NOT GOING TO GET THE INCULPATORY MATERIAL, WANTS TO FACE

9    THAT, HE'S GOT A RIGHT."  I'M BUFFETED, OF COURSE, BY THE FACT

10   THAT HE'S GOT A RIGHT TO COUNSEL OF HIS CHOICE.  AND THERE'S A

11   STRONG PRESUMPTION THAT HE OUGHT TO BE ABLE TO HAVE YOU AS HIS

12   COUNSEL.

13          BUT NOW HAVING LOOKED AT THE INFORMATION, HAVING

14   CONSIDERED THE ARGUMENTS, I JUST DON'T SEE A WAY THAT THIS CAN

15   WORK.  THE GOVERNMENT WOULD HAVE TO GO OVER ALL THESE PAGES,

16   WHICH, IN THE FIRST INSTANCE, OUGHT TO BE YOUR RESPONSIBILITY.

17   AND THEN THE ISSUE OUGHT TO BE JOINED AND PRESENTED TO ME AS

18   TO HOW THIS CAN BE PRESENTED.  I NEED THE BENEFIT OF YOUR

19   INPUT AS TO WHY SOME OF THIS MIGHT BE EXCULPATORY THAT WOULD

20   ESCAPE THE GOVERNMENT'S ATTENTION AND MY OWN.  AND I WON'T

21   HAVE THAT IF YOU DON'T SUBMIT TO THIS CLEARANCE.  I WON'T HAVE

22   THAT.

23          I CAN'T IMAGINE DELAYING THIS WILKES/FOGGO CASE FOR

24   SIX MONTHS.  AS YOU KNOW, BECAUSE YOU'VE BEEN HERE ALL

25   AFTERNOON, THIS IS A VERY BUSY DISTRICT; I DARE SAY BUSIER

PDF created with pdfFactory trial version www.pdffactory.com

58

1   THAN LOS ANGELES WITH ALL THE JUDGES THEY HAVE THERE OR

2   MOLDAVIA OR ANY OF THE OTHER PLACES THAT YOU'VE BEEN.  WE'RE

3   VERY BUSY HERE.  AND YOU HEARD ME SETTING TRIAL DATES LIKE

4   THIS.

5           THE IDEA THAT I COULD SIT DOWN FOR HOURS AND HOURS

6   AND HOURS WITH THE GOVERNMENT AND GO OVER THIS AND HASSLE

7   MR. FORGE AND MR. HALPERN SAYING "BE A LITTLE MORE

8   FORTHCOMING.  I THINK MR. GERAGOS NEEDS A LITTLE BIT MORE,"

9   IT'S NOT THAT I'M NOT WILLING TO DO THAT OR UP TO THE TASK.  I

10  DON'T HAVE THE TIME TO DO THAT.  I'M NOT SURE I'D BE VERY GOOD

11  AT IT BECAUSE I DON'T KNOW EXACTLY THE PARAMETERS OF

12  MR. WILKES'S DEFENSE.

13          WHEAT DOES POINT OUT THAT IF I HAVE A CONCERN ABOUT

14  THE REPRESENTATION OF COUNSEL -- AND HERE, LET ME BE VERY,

15  VERY CLEAR.  YOU'RE A FINE, FINE LAWYER WITH A DISTINGUISHED

16  REPUTATION.  I CAN'T IMAGINE BEING REPRESENTED BY A MORE

17  QUALIFIED PERSON WERE I MR. WILKES.  BUT THE EFFECT OF THIS

18  IS -- THE EFFECT OF YOUR REFUSAL TO GO THROUGH THIS PROCEDURE,

19  PRINCIPLE -- AND I ACKNOWLEDGE THAT, PRINCIPLE -- IS THAT IT

20  HAMPERS YOU.  IT HAMPERS YOU IN YOUR REPRESENTATION OF HIM,

21  AND IT IMPOSES WHAT I REGARD AS AN UNDUE BURDEN ON THE COURT

22  AND THE PROSECUTORS TO IDENTIFY INFORMATION THAT MIGHT BE

23  EXCULPATORY AND THEN TO SANITIZE THAT IN A WAY THAT WOULD BE

24  USEFUL TO YOU.  WITHOUT YOUR INPUT, I CAN'T IMAGINE HOW I

25  WOULD DO THAT.

PDF created with pdfFactory trial version www.pdffactory.com

59

1        AND IT PUTS ME, AS YOU CAN IMAGINE, IN A POSITION OF

2   NOT BEING A NEUTRAL FACT-FINDER ANYMORE, BUT BEING AN ADVOCATE

3   FOR MR. WILKES IN SAYING, "YOU NEED MORE, MR. HALPERN.   YOU

4   NEED TO PUT MORE IN THESE SUMMARIES."

5        MR. GERAGOS:   ONLY IF YOU BUY INTO THEIR ARGUMENT

6   THAT BRADY HAS SOMEHOW AND GIGLIO HAS BEEN REPEALED BY CIPA.

7        THE COURT:   THEY HAVE AN OBLIGATION -- THEY'VE MADE

8   THIS DISTINCTION, WHICH I ACCEPT:   THEY HAVE AN OBLIGATION TO

9   TURN THAT OVER TO YOU.   THAT'S NOT IN QUESTION HERE.   AND I

10  FIND THAT EVEN IF I WERE TO APPROVE YOUR CONTINUED

11  REPRESENTATION OF MR. WILKES AND IMPOSE THIS ON THEM, THEN

12  WE'D HAVE TO GO THROUGH THIS VERY ONEROUS PROCEDURE THAT

13  MR. HALPERN OUTLINED, THIS HOST OF HORRIBLES, WHICH I CAN'T

14  DO.   I JUST CAN'T.

15       IF THE 9TH CIRCUIT WANTS TO SEND A JUDGE DOWN AND

16  LET HIM TAKE LEAVE OF HIS APPELLATE DUTIES TO DO THIS FOR A

17  COUPLE OF MONTHS, THEN GREAT.   WE'LL POSTPONE THE WILKES/FOGGO

18  CASE SO THAT THAT CAN BE DONE.   I CAN'T.   I'M NOT SURE ANY

19  JUDGE CAN WITHOUT INPUT FROM YOU AS TO EXACTLY WHAT'S

20  EXCULPATORY.

21       SO THAT'S THE PROBLEM THAT I HAVE.   THEY CERTAINLY

22  HAVE THE OBLIGATION TO TURN IT OVER TO YOU.   BUT THIS

23  REGULATION, THIS CIPA, REGULATES THE MANNER IN WHICH IT'S

24  TURNED OVER TO YOU.   IT'S A GIVEN THAT IT HAS TO BE TURNED

25  OVER.   IT'S JUST A QUESTION ABOUT THE MANNER.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

60

1        NOW, IN THE FIRST INSTANCE, IF YOU SUBMIT TO THIS

2    PROCEDURE, YOU'LL BE ABLE TO SEE THIS RAW DATA AND TO BE ABLE

3    TO ARGUE THE APPROPRIATE MANNER OF PRODUCTION.  AND REALLY, IN

4    THE FIRST INSTANCE, MR. GERAGOS, THAT'S YOUR TASK AS HIS

5    LAWYER; TO ADVOCATE FOR HIM ON WHAT'S EXCULPATORY AND WHAT THE

6    LIMITATIONS --

7        MR. GERAGOS:  IT'S THEIR TASK TO TURN IT OVER.  IT'S

8    NOT MY TASK TO JUMP THROUGH HOOPS.  THAT'S THE DIFFERENCE.  I

9    UNDERSTAND WHAT THE COURT IS SAYING.  I'M NOT HERE TO TRY TO

10   BURDEN THE COURT WITH ANY ADDITIONAL DUTIES OR INFORMATION OR

11   ANYTHING ELSE.  BUT THE FACT IS THAT AS I SIT HERE THIS

12   AFTERNOON, IT'S ALMOST LIKE WE'RE IN THE TWILIGHT ZONE.

13       THE COURT:  I KNOW.

14       MR. GERAGOS:  SECRET STAR CHAMBER PROCEEDINGS THAT I

15   DON'T KNOW ABOUT.  THEY GO TO THE JUDGE.  THE JUDGE TELLS ME

16   "I THINK YOU OUGHT TO GET THE SECRET HANDSHAKE."  AND THEN AT

17   THE SAME TIME, THEY ARE LEAKING INFORMATION ON RULE 60.  AND I

18   CAN'T HAVE A HEARING.  WE HAVE TO WAIT UNTIL HE'S CONVICTED,

19   AND AFTERWARDS WE CAN TALK ABOUT IT.  IT'S REALLY A BIZARRE

20   SITUATION.

21       THE COURT:  HOLD ON A SECOND.

22       MR. HALPERN:  MR. GERAGOS MAY HAVE THE WRONG IDEA.

23   WE DID -- WE GAVE CERTAIN EXHIBITS TO THE COURT.  WE ALERTED

24   SPECIFICALLY IN OUR BRIEF WE WERE GOING TO DO THAT FOR THIS

25   EXACT PURPOSE.  SO THIS WAS NOT DONE BEHIND ANYBODY'S BACK.

PDF created with pdfFactory trial version www.pdffactory.com

1        THE COURT:  I'M SURE YOU MISSPOKE.  BUT THE IDEA OF

2   ME BEING INVOLVED IN SOME KIND OF STAR CHAMBER AND -- I

3   WOULDN'T HAVE INVOLVED MYSELF IN THAT, MR. GERAGOS.  I REALLY

4   WOULDN'T.

5        MR. GERAGOS:  I UNDERSTAND, BUT I STILL --

6   THERE'S -- THE IDEA OF DOING THESE TWO PROCEEDINGS BOOK-ENDED

7   IN THE SAME HEARING AND THAT SOMEHOW MY CLIENT CAN BE FORCED

8   TO LOSE HIS LAWYER AT THE SAME TIME THAT THE GOVERNMENT CAN

9   VIOLATE THE LAW -- AND WE KNOW THEY'VE DONE IT -- AND THERE'S

10  NO REMEDY FOR THAT, THAT HE'S GOT TO LOSE HIS LAWYER

11  PRE-TRIAL, THAT'S SOMETHING THAT JUST -- I'M NOT GOING ALONG

12  WITH IT.  I WON'T BE A PARTY TO IT.

13       THE COURT:  I DON'T LIKE THE EFFECT OF THIS EITHER.

14  IT RUBS AGAINST MY GRAIN.  BUT THERE ARE A NUMBER OF IMPORTANT

15  CONSIDERATIONS HERE.  THERE IS NO QUESTION IN MY MIND, HAVING

16  SEEN THE EXCERPTS THAT THEY'VE SHOWN ME, THAT THEY'RE NOT

17  RESORTING TO THIS CLASSIFICATION TITLE IN A REACTIONARY WAY.

18  THE INFORMATION TRULY IS CLASSIFIED, AND IT OUGHT NOT TO BE

19  DISSEMINATED.  AND I'M SURE AT SUCH POINT YOU HAVE ACCESS TO

20  IT, YOU'LL UNDERSTAND WHY IT'S BEEN GIVEN THAT DESIGNATION.

21       AS I SAID, THE CONTEXT WAS VERY IMPORTANT FOR ME

22  SEEING THIS THING, I THINK, IN THE CORRECT LIGHT.  BUT NOW

23  THAT I'VE DONE THAT, I HONESTLY THINK THAT YOU NEED TO

24  COOPERATE WITH THIS INVESTIGATION, LAY THE PRINCIPLE ASIDE FOR

25  PURPOSES OF REPRESENTING MR. WILKES ON THIS CASE.  I'M HAPPY

PDF created with pdfFactory trial version www.pdffactory.com

1    TO HAVE YOU ON THIS FOGGO CASE WITH MR. WILKES.  I REALLY AM.

2              BUT I DON'T SEE ANY WAY AROUND IT, MR. GERAGOS.  I

3    DON'T SEE HOW YOU CAN CONTINUE WITHOUT ACCESS TO THE

4    INFORMATION.  YOU'RE ENTITLED TO IT, BUT IT'S JUST THE MANNER

5    IN WHICH IT'S TURNED OVER TO YOU.  AND THAT'S NOT A DIFFICULT

6    PRINCIPLE.  THE JENCKS ACT IN SOME DISTRICTS IS INVOKED ALL

7    THE TIME.  YOU'RE ENTITLED TO IT, BUT IT'S JUST A QUESTION OF

8    THE MANNER AND THE TIMING.

9              MR. GERAGOS:  I GET IT, AND I DON'T HAVE TO DO

10   ANYTHING.  AND THE PROBLEM IS IF MORE LAWYERS HAD JUST STOOD

11   UP AND SAID "I'M NOT GOING TO GO ALONG WITH THIS, AND I'M NOT

12   GOING TO DO IT, AND I'M NOT GOING TO DO IT FOR A GUY WHO

13   DOESN'T HAVE A SECURITY CLEARANCE," FRANKLY WE WOULD BRING

14   THIS TO A HALT.

15             I'M TELLING YOU I'M NOT GOING TO DO IT.  AND I WILL

16   ALSO TELL THE COURT I'M JOINTLY REPRESENTING HIM, GLOBALLY

17   REPRESENTING HIM.  IF I'M OFF OF FOGGO, I'M OFF OF THE OTHER

18   CASE AS WELL.

19             THE COURT:  THAT'S ACTUALLY FOR ME TO DECIDE.

20   THERE'S NO IMPLICATION OF CLASSIFIED INFORMATION IN THE OTHER

21   CASE.  SO NO, I WOULD NOT RELIEVE YOU.  YOU'VE MADE A GENERAL

22   APPEARANCE.  I'VE COUNTED ON THAT.  I'VE SET A TRIAL DATE IN

23   THAT CASE.  YOU'RE NOT GOING TO BE RELIEVED ON THAT.  WHATEVER

24   YOUR ARRANGEMENTS ARE WITH MR. WILKES, THAT'S BETWEEN YOU AND

25   HIM.  BUT THIS ISSUE AFFECTS ONLY YOUR REPRESENTATION OF HIM

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

63

1    ON THE WILKES/FOGGO CASE.

2           LOOK, AGAIN, I WANT TO MAKE ONE MORE RUN AT THIS

3    WITH YOU.  I WOULD NOT HAVE THE GOVERNMENT INVOLVED IN ANY

4    ASPECT OF THIS.  IT WOULD BE BETWEEN YOU AND ME AND

5    MR. LONDERGAN.  AND I FULLY SUSPECT WITHIN --

6           WHAT'S THE PERIOD OF TIME, THE QUICKEST THAT THIS

7    COULD BE DONE, MR. LONDERGAN?

8           I JUST WANT YOU TO KNOW THE INFORMATION WHETHER OR

9    NOT YOU CHANGE YOUR POSITION OR NOT, MR. GERAGOS.

10          WHAT'S THE QUICKEST WE COULD DO THIS IF WE ASKED FOR

11   IT TO BE DONE EXPEDITED?

12          MR. LONDERGAN:  AFTER RECEIVING THE SATISFACTORILY

13   COMPLETED FORMS, ON AN INTERIM BASIS TO AWARD THE CLEARANCES

14   INITIALLY, IT WOULD BE 45 DAYS.

15          THE COURT:  WOULD THEY PUT THIS TO THE TOP OF THE

16   LIST IF I TOLD THEM I WANTED IT ON THE TOP OF THE LIST?  I

17   UNDERSTAND I'M NO MORE IMPORTANT AND THAT THERE'S OTHER

18   WAITING CASES GOING ON.  THIS, AFTER ALL, IS A MOTION FOR

19   RECONSIDERATION.  I'VE CHANGED MY POSITION ON THIS.  THAT'S MY

20   BAD.  BUT I'D ASK THEM TO TAKE THAT INTO CONSIDERATION SO THAT

21   HE COULD GET ACCESS TO THIS IN TIME TO USE IT AND BE PREPARED.

22          MR. LONDERGAN:  YOUR HONOR, WE'D ASK FOR PRIORITY IN

23   TERMS OF HANDLING.  AND AS LONG AS THERE WEREN'T ANY GLITCHES

24   THAT AROSE IN TERMS OF INFORMATION OBTAINED DURING THE

25   INVESTIGATION, FOR EXAMPLE, THE FOGGO PORTION OF THE

PDF created with pdfFactory trial version www.pdffactory.com

64

1    LITIGATION, CLEARANCES HAVE BEEN AWARDED IN A VERY RAPID WAY.

2          THE COURT:  MR. GERAGOS, THE ASSURANCE I CAN GIVE

3    YOU IS THAT THIS WOULD BE BETWEEN YOU AND ME AND THE COURT

4    SECURITY OFFICER, WHO'S NOT AN ARM OF THE GOVERNMENT.  I THINK

5    I CLARIFIED THAT AT ONE OF THE FIRST HEARINGS.  HE REPORTS TO

6    ME.  HE DOESN'T REPORT TO THEM.  NONE OF THE INFORMATION WOULD

7    BE DISSEMINATED TO THEM.  THEY WOULD HAVE NO SAY WHATEVER ON

8    WHETHER YOU REMAIN ON THE CASE OR NOT PENDING THE RESULTS OF

9    THAT.  I HAVE EVERY REASON TO SUSPECT THAT IT WILL COME BACK

10   SAYING, "NO PROBLEM."  AND ALL OF THIS EXERCISE WOULD HAVE

11   BEEN AN ACADEMIC, THEORETICAL EXERCISE.

12         NOW, I DON'T SAY THAT TO UNDERCUT THE PRINCIPLE THAT

13   YOU'RE DEFENDING HERE.  I UNDERSTAND THAT.  BUT I'D ASK YOU TO

14   RECONSIDER WITH THAT UNDERSTANDING.  IT'S BETWEEN YOU AND ME

15   AND MR. LONDERGAN AND WOULDN'T GO ANY FURTHER.

16         THE SPECTER THAT YOU'VE RAISED OF THE GOVERNMENT

17   TRYING TO CONTROL WHO REPRESENTS MR. WILKES, I'M INDEPENDENT

18   OF THEM.  I WORK FOR THE SAME U.S. GOVERNMENT, BUT A VERY

19   DIFFERENT BRANCH.  I'M INDEPENDENT.  I'VE SHOWN MY

20   INDEPENDENCE.  AND THAT'S WHY I'VE GOT THREE WRITS PENDING

21   AGAINST ME RIGHT NOW, TWO BY THE UNITED STATES.  TWO BY THE

22   UNITED STATES BECAUSE I REFUSED TO GO ALONG WITH SOME OF THE

23   STUFF THAT I THINK IS WRONG AND THEY'RE TRYING TO KEEP SECRET.

24   WE'LL LEAVE THAT FOR ANOTHER DAY.

25         SO I TELL YOU THAT IN THE HOPE THAT I CAN MAYBE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

65

1   IMPRESS UPON YOU THAT I'M NOT AN ARM OF THE PROSECUTION AT ALL

2   HERE.  I'M GOING TO LOOK AT THIS FAIRLY JUST IN TERMS OF

3   CLASSIFIED INFORMATION AND THE NEED TO KEEP THAT VERY

4   CLASSIFIED INFORMATION WITHIN CONTROLLED PARAMETERS.

5   OTHERWISE, WE'RE ALL AT A LOSS.  AS AMERICANS, MR. WILKES AND

6   YOU AND I ARE ALL AT A LOSS IF THAT GETS OUT.  SO THAT'S THE

7   CONCERN THAT'S BUFFETING ME.

8          MR. GERAGOS:  LOOK, JUDGE, THIS HAS NOTHING TO DO

9   WITH YOU.  IT'S THE IDEA THAT SOMEHOW I'M STANDING IN A

10  COURTROOM AND THEY'RE WORRIED -- THIS DEPARTMENT OF JUSTICE IS

11  WORRIED ABOUT CLASSIFIED INFORMATION BEING LEAKED AS PRESIDENT

12  BUSH IS PARDONING SCOOTER LIBBY FOR LEAKING CLASSIFIED

13  INFORMATION IS LAUGHABLE.  THIS WHOLE THING IS JUST LAUGHABLE.

14         I'M NOT, UNDER ANY CIRCUMSTANCES, GOING TO SUBMIT TO

15  A CLASSIFICATION PROGRAM THAT THE WHITE HOUSE VIOLATES ON A

16  DAILY BASIS.  IT'S A JOKE.  THEY USE THE CLASSIFICATION

17  PROGRAM FOR POLITICAL PURPOSES, AND THEY DO IT WILLY-NILLY.

18  AND THEY THUMB THEIR NOSE AT THE JUSTICE SYSTEM AND OTHER

19  U.S DISTRICT COURT JUDGES AS THEY DID IN THIS MOST RECENT

20  CASE.

21         THE COURT:  YOU'RE MAKING A POLITICAL STATEMENT NOW,

22  MR. GERAGOS.

23         MR. GERAGOS:  IT IS A POLITICAL STATEMENT.  THE

24  POLITICAL STATEMENT INFORMS THE PRINCIPLE AND THE FACT THAT I

25  AM A LAWYER.  AND I DON'T BELIEVE THAT THE 6TH AMENDMENT OR

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    ANYTHING ABOUT THE CODES IN THIS STATE REQUIRES THAT I DO

2    ANYTHING OTHER THAN STAY IN GOOD STANDING WITH THE STATE BAR

3    AND THAT THE ONLY PERSON WHO CAN DETERMINE WHETHER I CAN --

4    SUBJECT TO, OBVIOUSLY, GOOD BEHAVIOR IN FRONT OF THE COURT,

5    THE ONLY PERSON THAT CAN DETERMINE THE BODY IS THE CALIFORNIA

6    SUPREME COURT.

7             THE COURT:  THIS REQUIREMENT IS NOT PECULIAR TO YOU.

8    IT'S BEEN IN EFFECT LONG BEFORE PRESIDENT BUSH TOOK OFFICE.

9    IT'S BEEN IN EFFECT THROUGH VARIOUS ADMINISTRATIONS,

10   REPUBLICAN AND DEMOCRAT.

11            MR. GERAGOS:  THE PROBLEM IS IS THAT THIS

12   ADMINISTRATION HAS USED IT IN WAYS IT'S NEVER BEEN USED

13   BEFORE.

14            THE COURT:  IT'S NEUTRAL TO YOU, AND THE ASSURANCE

15   OF ITS NEUTRALITY IS THAT I AND THE COURT SECURITY OFFICER ARE

16   THE ONES MAKING THE DECISION.  IT'S NEUTRAL TO MR. WILKES.

17   IT'S NOT PECULIAR TO EITHER OF THEM.  IT'S NOT SOMETHING THAT

18   WE DEVISED YESTERDAY TO IMPOSE ON YOU OR MAKE LIFE DIFFICULT

19   FOR YOU OR MR. WILKES IN DEFENDING THIS CASE.  THEY'RE

20   LONGSTANDING.  THE REGULATIONS WERE WRITTEN THREE CHIEF

21   JUSTICES AGO.

22            MR. GERAGOS:  I DON'T THINK IT'S PECULIAR TO ME.  I

23   CERTAINLY DON'T THINK IT'S ENDEMIC TO THIS PARTICULAR CASE OR

24   ANYTHING ELSE.  AS I SAID, I BELIEVE THAT NO DEFENSE LAWYER

25   WHOSE CLIENT HASN'T GONE UNDER THE SCRUTINY OF A SECURITY

PDF created with pdfFactory trial version www.pdffactory.com

67

1    CLEARANCE HIMSELF HAS ANY BUSINESS GOING UNDER A SECURITY

2    CLEARANCE SO THAT THE GOVERNMENT CAN GIVE HIM CLASSIFIED

3    INFORMATION.  I JUST DON'T BELIEVE THAT THAT'S SOMETHING THAT

4    IS REQUIRED.

5            THE COURT:  YOU'RE GOING TO HAVE A CHANCE TO TEST

6    THE PROPOSITION.  I'M WITH YOU IN SPIRIT.  I DON'T LIKE IT,

7    BUT I UNDERSTAND IT.  I UNDERSTAND THE NEED FOR IT AND THE

8    OVERLAY BECAUSE THE INFORMATION TRULY HERE IS CLASSIFIED.

9            LET ME SAY THIS:  IF I THOUGHT FOR A SECOND THAT ANY

10   OF THIS WAS PRETEXTUAL, THAT THERE WAS AN EFFORT TO

11   OVER-CLASSIFY INFORMATION, THEN I WOULDN'T BE ONBOARD.  THEN

12   I'D GO THE OTHER WAY ON THIS.

13           BUT HAVING SEEN THE EXCERPT THAT I SAW, I'M

14   ABSOLUTELY CONVINCED THAT THERE IS A NEED ON THE PART OF THE

15   UNITED STATES TO PROTECT THIS INFORMATION.  THAT NEED WAS

16   SPOKEN OF BY MR. LONDERGAN, WHO IS ALSO FAMILIAR WITH THE

17   INFORMATION.  AND HE'S INSISTENT THAT PEOPLE HAVING ACCESS TO

18   IT HAVE THIS CLEARANCE, NOT AS A REPRESENTATIVE OF THE

19   PROSECUTORS OR ANY OTHER PARTIES.  HE'S LOOKED AT IT.  HE'S

20   LOOKING AT IT AS SOMEONE WHO'S CONCERNED WITH CLASSIFIED

21   INFORMATION AND KEEPING IT CLASSIFIED AND PROTECTING SECRETS

22   THAT ARE IMPORTANT TO THE UNITED STATES.

23           THE COURT ALSO HAS THAT CONCERN HERE.  I UNDERSTAND

24   THE STRONG PRESUMPTION IN FAVOR OF MR. WILKES'S RIGHT TO HAVE

25   HIS OWN COUNSEL.  HOWEVER, I DON'T SEE ANY WORKABLE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    ALTERNATIVE IF MR. GERAGOS IS UNWILLING TO GO THROUGH THE

2    PROCEDURE EXCEPT TO FIND THAT HE HAS A CONFLICT.

3           AS I SAID, THE IDEA OF ME TRYING TO PARSE 17,000

4    PAGES OF MATERIAL, HAVING ME TRY TO ACT AS DEFENSE COUNSEL FOR

5    MR. WILKES AND DETERMINE EXACTLY WHAT'S EXCULPATORY AND WHAT'S

6    IMPEACHMENT MATERIAL IS A POSITION THAT I DON'T WANT TO PUT

7    MYSELF IN AND, AS THE TRIAL JUDGE IN THIS CASE, I SHOULDN'T BE

8    IN.  INSTEAD, I SHOULD BE IN A POSITION OF DECIDING BASED ON

9    ARGUMENTS FROM THE PROSECUTORS ON THE ONE SIDE AND COUNSEL FOR

10   MR. WILKES ON THE OTHER.

11          AND THE EFFECT OF YOU REFUSING TO GO THROUGH THIS,

12   EVEN ON PRINCIPLE GROUNDS, IS I'M DENIED THAT.  I DON'T HAVE

13   THE OPPORTUNITY TO MAKE A RULING.  INSTEAD, I HAVE TO SORT OF

14   SHIFT INTO AN ADVERSARIAL GEAR AND MAKE THE ARGUMENTS FOR YOU.

15   THAT'S AN INAPPROPRIATE POSITION FOR ME TO BE IN, AND I REFUSE

16   TO BE IN IT.

17          RELUCTANTLY, MR. GERAGOS, I'M GOING TO ORDER THAT

18   YOU ARE REMOVED FROM MR. WILKES'S CASE IN UNITED STATES VERSUS

19   WILKES AND FOGGO.  I'M RELUCTANT ABOUT THAT.  TO THE EXTENT

20   THAT THE GOVERNMENT IS WRONG, MR. HALPERN IS WRONG ABOUT A

21   RIGHT TO A WRIT TO MANDAMUS, I ENCOURAGE YOU TO FILE THAT

22   RIGHT AWAY AND SEE IF THREE SMARTER PEOPLE ON THE 9TH CIRCUIT

23   COURT OF APPEALS MAY DISAGREE WITH ME ON THIS.

24          I THINK THE RECORD IS COMPLETE AS TO WHAT MY REASONS

25   WERE, ALL THE CONSIDERATIONS THAT I MADE.  BUT IT WON'T WORK

PDF created with pdfFactory trial version www.pdffactory.com

1    WITH YOU NOT HAVING ACCESS TO THIS AND THE ABILITY TO IDENTIFY

2    WHAT IS EXCULPATORY, WHAT IS IMPEACHMENT.  TO URGE ME ON WHAT

3    THE PROPER MODIFICATIONS ARE, SANITIZING OF MATERIAL, I NEED

4    THAT INPUT FROM SOMEBODY ON BEHALF OF THE DEFENDANTS.

5            SO MR. WILKES, I'M RELIEVING MR. GERAGOS ON THE

6    FOGGO CASE, WHICH IS NOT SET UNTIL OCTOBER.  I'M GOING TO SET

7    A STATUS CONFERENCE.

8            TISH, DO YOU HAVE A DATE ROUGHLY TWO WEEKS OUT?

9            THE CLERK:  JULY 23RD.

10           THE COURT:  MR. WILKES, IS JULY 23RD A CONVENIENT

11   DATE FOR YOU TO COME BACK AND INFORM ME OF NEW COUNSEL AND

12   MAKE AN APPEARANCE WITH NEW COUNSEL ON THE FOGGO CASE?

13   MR. GERAGOS REMAINS, AS I SAID --

14           MR. GERAGOS:  HE'S ALREADY TOLD ME, YOUR HONOR, THAT

15   HE WANTS ONE COUNSEL TO REPRESENT HIM ON BOTH.

16           THE COURT:  THAT MAY BE, BUT YOU'VE ENTERED A

17   GENERAL APPEARANCE ON THAT CASE.  I'VE SET A TRIAL DATE.  SO

18   MR. WILKES MAY NOT BE IN A POSITION TO DICTATE THAT.

19           DEFENDANT WILKES:  THERE ARE COMPLICATED FINANCIAL

20   REASONS FOR THAT.  AND OVER THE LAST 23 MONTHS THROUGH LEAKS

21   AND OTHER PROBLEMS THAT HAVE BEEN DEBATED IN THE PRESS, I'VE

22   BEEN STRIPPED OF MY BUSINESS AND, THEREFORE, MY INCOME, MY

23   REPUTATION AND, THEREFORE, MANY OF THE RELATIONSHIPS THAT I

24   HAD TO HELP SUPPORT THIS, MY EMPLOYEE BASE, PEOPLE WITH

25   INSTITUTIONAL MEMORY THAT COULD HELP DEVELOP THE DEFENSE

PDF created with pdfFactory trial version www.pdffactory.com

1    AGAINST WHAT I THINK ARE ABSURD ALLEGATIONS AGAINST ME.

2              SO THE FACT THAT NOW I'M BEING STRIPPED OF MY LAWYER

3    IN THIS IS JUST THE NEXT AFFRONT.  AND I DON'T EVEN KNOW HOW

4    TO REACT TO IT.  WE HAVE WORKED VERY HARD OVER THE LAST

5    23 MONTHS, SOMETIMES WITH GOOD HELP AND SOMETIMES EARLY ON

6    WITH SOME VERY BAD HELP.  AND I'M AT A POINT NOW WHERE MY

7    RESOURCES ARE STRETCHED BEYOND THE POINT OF BREAKING.  I DON'T

8    HAVE A WAY TO ACCOMPLISH HIRING ANOTHER LAWYER.

9              THE COURT:  DO YOU BELIEVE, MR. GERAGOS, THAT HE

10   MIGHT QUALIFY, GIVEN HIS CURRENT SITUATION, FOR APPOINTED

11   COUNSEL?

12             MR. GERAGOS:  NO.

13             THE COURT:  WELL, MR. GERAGOS KNOWS WHAT THE

14   STANDARDS ARE FOR ME TO APPOINT COUNSEL FOR YOU.  WE HAVE A

15   LOT OF QUALIFIED COUNSEL WHO COULD BE APPOINTED.  BUT I'LL

16   TAKE HIS WORD THAT YOU DON'T QUALIFY FOR THAT.

17             I UNDERSTAND EVERYTHING YOU'VE SAID, MR. WILKES.  I

18   DON'T MAKE THIS DECISION HAPPILY.  I'M VERY RELUCTANT TO DO

19   THIS.

20             MR. GERAGOS:  COULD I ASK THAT THE COURT, INSTEAD OF

21   THE JULY 23RD DATE, GIVE ME A DATE THE FIRST WEEK OF AUGUST SO

22   THAT I'M DONE WITH MY PHILADELPHIA CASE?  BECAUSE I'M GOING TO

23   MAKE A FORMAL MOTION IN THE INTERIM, IF WE DECIDE NOT TO GO TO

24   THE 9TH CIRCUIT, TO BE RELIEVED ON THE OTHER CASE FOR VARIOUS

25   REASONS.  AND I'LL PROBABLY FILE THAT EX PARTE AND UNDER

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    SEAL.

2              THE COURT:  WELL --

3              MR. GERAGOS:  THERE IS NO WAY FOR ME TO ARTICULATE

4    IT WITHOUT BETRAYING ATTORNEY-CLIENT.

5              THE COURT:  I'LL CERTAINLY PERMIT YOU TO DO THAT,

6    MR. GERAGOS.  I'M RELUCTANT TO PUT THIS OUT TOO FAR BECAUSE BY

7    PUTTING IT OUT FAR, IT MIGHT FORCE THE VERY OUTCOME THAT I'M

8    TRYING TO AVOID HERE.

9              MR. GERAGOS:  I UNDERSTAND THAT, BUT I START NEXT

10   MONDAY IN PHILADELPHIA IN FROM OF JUDGE KAUFMAN.  HE'S ORDERED

11   100 JURORS.

12             THE COURT:  WHAT IF YOU MAKE YOUR SUBMISSION AND --

13   YOU KNOW, WE'RE THREE HOURS BEHIND THEM -- MR. MAC DOUGALL

14   HERE AND THE OTHERS ARE AVAILABLE BY PHONE?  CAN YOU BE

15   AVAILABLE BY PHONE?

16             MR. GERAGOS:  SURE.

17             THE COURT:  DO YOU EXPECT THAT YOU'LL STILL BE IN

18   PHILADELPHIA ON JULY 23RD?

19             MR. GERAGOS:  ABSOLUTELY.  IT'S A THREE-WEEK

20   ESTIMATE.

21             THE COURT:  I'LL SET IT FOR 3:00, WHICH WILL BE

22   6:00.

23             YOU'LL BE OUT OF COURT BY THEN?

24             MR. GERAGOS:  YES, SIR.

25             THE COURT:  MR. WILKES, I WANT YOU TO BE PERSONALLY

PDF created with pdfFactory trial version www.pdffactory.com

1   PRESENT WITH COUNSEL AT THAT TIME, JULY 23RD.

2           DON'T MISUNDERSTAND.  I'VE HEARD WHAT YOU'VE SAID.

3   I'M MINDFUL OF THAT.  I'M SYMPATHETIC.  MY URGING TO YOU AND

4   MR. GERAGOS AT THIS POINT IS THAT YOU TAKE A WRIT OF MANDATE,

5   YOU ASK FOR AN EMERGENCY PETITION IN FRONT OF THE COURT OF

6   APPEALS TO RESTORE THE STATUS QUO.  IF I'M WRONG ABOUT THIS,

7   THEN THEY'LL TELL ME.  BUT I HAVE MISGIVINGS.  I DON'T THINK

8   THERE'S ANY WAY PRACTICALLY THAT YOU CAN GO TO TRIAL WITHOUT

9   KNOWING THIS INFORMATION.

10          I DON'T KNOW WHAT IS HELPFUL TO YOU IN YOUR DEFENSE,

11  AND I'M NOT YOUR ADVOCATE.  I DON'T WANT TO BE PUT IN A

12  POSITION OF DOING THAT.  MY JUDGMENT'S INFORMED WHEN I GET

13  INFORMATION FROM BOTH SIDES.  AND WITHOUT HAVING SOMEBODY WITH

14  ACCESS TO THIS INFORMATION ON YOUR SIDE, I'M LOST.

15          SO I FEEL MY HAND IS FORCED HERE.  I UNDERSTAND YOUR

16  LAWYER'S PRINCIPLE POSITION.  I UNDERSTAND IT COMPLETELY.

17          MR. GERAGOS, I'D ASK YOU TO RECONSIDER.  IF YOU DO,

18  YOU CAN LET ME KNOW.  BUT OTHERWISE, JULY 23RD AT 3:00 FOR

19  MR. WILKES TO COME IN WITH NEW COUNSEL ON THE WILKES/FOGGO

20  CASE.  MR. GERAGOS REMAINS COUNSEL OF RECORD ON

21  WILKES-MICHAEL.  THAT CASE IS GOING ON THE DATE ASSIGNED.

22          UNLESS I'M CONVINCED BY A VERY PERSUASIVE SHOWING,

23  MR. GERAGOS, YOU'RE GOING TO BE HERE AND BE READY TO GO TO

24  TRIAL ON THAT DATE IN SEPTEMBER.

25          ANYTHING ELSE, MR. MAC DOUGALL OR MR. GRANGER?

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. TESLIK:  THIS IS RANDY TESLIK, MR. MAC DOUGALL'S

2   PARTNER.

3          WE HAVE ONE MATTER THAT'S SOMEWHAT RELATED TO THE

4   COLLOQUY THAT THE COURT JUST HAD.

5          LAST WEEK, JULY 3RD, A MEMBER OF OUR TEAM MET WITH

6   MR. MC PHERSON, WHO'S THE DEPUTY GENERAL COUNSEL OF THE CIA.

7   YOUR HONOR, MOST OF US HAVE BEEN CLEARED AT THE TOP SECRET

8   LEVEL, BUT THERE ARE ADDITIONAL CLEARANCES THAT ARE REQUIRED

9   ABOVE THE TOP SECRET LEVEL FOR MUCH OF THE INFORMATION THAT WE

10  BELIEVE IS RELEVANT IN THIS CASE.  THOSE ARE CALLED

11  COMPARTMENTS.  AND IN ORDER FOR US TO BE CLEARED IN THE

12  COMPARTMENTS, WE HAVE TO MAKE FURTHER REQUESTS TO THE CIA ONCE

13  WE IDENTIFY A PARTICULAR COMPARTMENT AFTER EITHER REVIEWING

14  DOCUMENTS OR CONSULTING WITH MR. FOGGO.

15         AND LAST WEEK, WE MADE SUCH A REQUEST FOR A

16  PARTICULAR COMPARTMENT, AND WE WERE DENIED THAT REQUEST.  THE

17  CIA ASKED US TO MAKE A PROFFER OF WHY THAT PARTICULAR

18  COMPARTMENT OR INFORMATION RELATING TO THAT COMPARTMENT WAS

19  MATERIAL TO MR. FOGGO'S DEFENSE, WHICH WE WERE PREPARED TO DO

20  ON THE CONDITION THAT THAT INFORMATION, OUR PROFFER,

21  ESSENTIALLY, KIND OF THE ROADMAP TO OUR DEFENSE, NOT BEING

22  DISCLOSED TO MEMBERS OF THE AGENCY WHO ARE WORKING WITH THE

23  PROSECUTION TEAM OR THE PROSECUTION TEAM ITSELF.

24         THE CIA DENIED THAT REQUEST AND TOLD US THAT IF WE

25  WERE TO MAKE SUCH A PROFFER, THAT THE CIA WOULD SHARE THAT

PDF created with pdfFactory trial version www.pdffactory.com

74

1    PROFFER WITH THE PROSECUTION TEAM.  I THINK THAT THAT'S

2    COMPLETELY CONTRARY TO MR. FOGGO'S RIGHT TO COUNSEL.

3            THE COURT:  IT'S CONTRARY TO THE ORDER THAT I ISSUED

4    EARLIER IN THIS CASE THAT THAT NOT HAPPEN.

5            MR. GERAGOS:  THAT'S PRECISELY WHY I MADE MY

6    OBJECTION.  I THANK CO-COUNSEL FOR BRINGING THAT UP.

7            THE COURT:  THERE'S RECOURSE.  THE PROOF'S IN THE

8    PUDDING HERE.  THEY COME TO ME, AND I'M GOING TO TELL THEM

9    THEY CAN'T DO THAT.

10            MR. GERAGOS:  WHO ARE YOU GOING TO BELIEVE?  YOU

11    CAN'T ORDER THE CIA TO DO ANYTHING.  I UNDERSTAND YOU CAN MAKE

12    THE ORDER, BUT WHO'S GOING TO ENFORCE IT?

13            THE COURT:  WE'LL SEE.

14            MR. HALPERN:  IF I MIGHT, ALSO, MR. TESLIK DIDN'T

15    BRING THAT UP TO THE GOVERNMENT YET.  I CAN SEE WHY IT MIGHT

16    HAVE BEEN SENSITIVE IN THAT HE DIDN'T.  BUT ASSUMING THIS

17    FALLS WITHIN YOUR HONOR'S TUHEY ORDER, THIS IS SOMETHING THAT

18    WE MIGHT BE ABLE TO IRON OUT BECAUSE I DON'T REALLY THINK IT

19    IS A PROBLEM.

20            THE COURT:  MR. TESLIK, HER'S WHAT I'M GOING TO DO:

21    I'LL ALLOW MR. HALPERN AND MR. FORGE TO CALL BACK THERE AND

22    REMIND THE CIA OFFICIALS THAT I'VE ENTERED AN ORDER THAT

23    ANYTIME YOU MAKE A PROFFER, THAT THAT INFORMATION IS TO BE

24    KEPT CONFIDENTIAL AND NOT TO BE GIVEN OVER TO ANY MEMBER OF

25    THE PROSECUTION TEAM OR ANY COMPONENT OF THE UNITED STATES

PDF created with pdfFactory trial version www.pdffactory.com

1    JUSTICE DEPARTMENT OR U.S. ATTORNEY'S OFFICE.

2           I DID ORDER THAT, MR. HALPERN, AT THE EARLIER

3    OCCASION WHEN THIS CAME UP.  I DON'T THINK IN ORDER TO GET

4    INFORMATION THAT'S RELEVANT, THAT THEY NEED TO TELL YOU WHAT

5    THE REASON IS THAT THEY THINK IT'S RELEVANT.  I DON'T THINK

6    YOU WANT THAT.

7           MR. HALPERN:  AGAIN, YOUR HONOR, NOT WHEN IT FALLS

8    WITHIN THE COURT'S LAST TUHEY RULING.  IF THIS IS SOMETHING

9    BROADER REQUIRING THEM TO GET INFORMATION THAT IS NOT RELEVANT

10   TO THE CASE THAT IS CLASSIFIED, THAT IS SOMETHING THAT THE

11   COURT WOULD HAVE TO INVOLVE ITSELF WITH.  MY UNDERSTANDING IS

12   THEY HAVE ALL THE CLEARANCES THAT WE HAVE.  SO THEY HAVE

13   ACCESS TO ALL --

14          THE COURT:  HE'S TELLING ME THAT THERE'S A LEVEL OR

15   A COMPARTMENT HIGHER THAN TOP SECRET AND THAT THIS IMPLICATES

16   THAT.  BUT THE POINT I MADE WAS THAT YOU'RE NOT ENTITLED TO

17   KNOW WHY THEY THINK CERTAIN INFORMATION MAY BE RELEVANT.  I

18   SAID THAT THEY WOULD MAKE THEIR PROFFER TO THE CIA, AND THE

19   CIA WOULD EVALUATE THAT AND ACT ON THAT.  AND THEY HAVE

20   RECOURSE TO COME BACK TO ME IF THEY THINK THAT IT'S BEEN

21   WRONGLY DENIED.  BUT THE PROSECUTORS HERE OUGHT NOT TO BE IN

22   THAT EQUATION.

23          MR. HALPERN:  YOUR HONOR, I UNDERSTAND.  AS I SAID,

24   BECAUSE I HAVEN'T BEEN INVOLVED IN THIS AT ALL, I'M SOMEWHAT

25   AT A LOSS.  HOWEVER, JOHN MC PHERSON, WHO IS WITH THE GENERAL

PDF created with pdfFactory trial version www.pdffactory.com

1    COUNSEL'S OFFICE OF THE CIA, IS HERE.  HE MIGHT BE ABLE TO

2    SHED SOME LIGHT ON IT.

3              THE COURT:  MR. MC PHERSON, I'M HAPPY TO HEAR FROM

4    YOU.  IF YOU RECALL IT DIFFERENTLY -- I THINK I WAS FAIRLY

5    CLEAR.

6              MR. MC PHERSON:  NO.  YOU RECALL IT CORRECTLY.

7              GOOD AFTERNOON.  JOHN MC PHERSON FROM GENERAL

8    COUNSEL'S OFFICE, CIA.

9              I DID MEET WITH MR. MAC DOUGALL AND MR. BUTLER LAST

10   WEEK IN CONNECTION WITH THEIR REQUEST FOR ONE SPECIFIC PROGRAM

11   THEY MENTIONED, AND THEY CONTEMPLATED OTHERS WHICH THEY DID

12   NOT SPECIFY.  THEY GAVE ME A RATHER -- I WOULD SAY AN OBLIQUE

13   REFERENCE TO WHY THEY THOUGHT IT WOULD BE RELEVANT TO LEARN

14   THAT INFORMATION.  THE REPRESENTATION I MADE, I SAID I WAS NOT

15   SATISFIED.  I WOULD RECOMMEND TO HOMELAND SECURITY OFFICIALS

16   THAT THEY NOT GRANT ACCESS ON THAT BASIS BECAUSE IT DID NOT

17   APPEAR RELEVANT TO THE CASE.

18             I SAID THE PROSECUTION MAY HAVE A DIFFERENT VIEW,

19   BUT I'M MINDFUL OF THE PROTECTIVE ORDER.  WE'RE TO HAVE NO

20   CONVERSATIONS WITH THEM.  MR. MAC DOUGALL OFFERED TO MAKE A

21   MORE EXTENSIVE PROFFER WITH THE UNDERSTANDING, THEN, THAT WE

22   STILL WOULD MAKE NO COMMUNICATIONS WITH THE GOVERNMENT.

23             ON THAT BASIS, WE HAVE DISCUSSED, ALTHOUGH I'M STILL

24   NOT SATISFIED FOR THE BASIS OF WHAT WAS THEIR RECOURSE, AND

25   THEY TALKED ABOUT APPROACHING THE BENCH EX PARTE.  I WAS

PDF created with pdfFactory trial version www.pdffactory.com

1   CONCERNED AT THAT POINT ABOUT WE HAD BEEN HANDICAPPED.  THE

2   UNITED STATES IS THE REPRESENTATIVE OF THE CIA.  I WAS NOT

3   WILLING TO HEAR A MORE EXTENSIVE PROFFER FROM THEM ON THAT

4   BASIS.

5        SO MY PRELIMINARY ANSWER WAS "NO, I'M NOT WILLING TO

6   HANDICAP OUR OWN REPRESENTATION IN THAT REGARD.  I WILL DENY

7   THAT REQUEST BECAUSE IT'S NOT APPARENT TO ME ON ITS FACE."

8        THE COURT:  HERE'S HOW I WANT TO DEAL WITH THAT:  I

9   WANT YOU TO RECONSIDER.  AND IF YOU NEED MORE DETAILS FROM

10  THEM, THEN TELL THEM WHERE YOU THINK IT'S DEFICIENT AND WHERE

11  YOU THINK THEY NEED MORE DETAILS.

12       IN NO EVENT IS ANY INFORMATION PROFFERED TO YOU TO

13  BE TURNED OVER TO THE PROSECUTORS OR DISCLOSED TO THE

14  PROSECUTORS IN THIS CASE OR THE DEPARTMENT OF JUSTICE.  IF A

15  DISPUTE PERSISTS AFTER THEY MAKE A MORE DETAILED PROFFER, THEN

16  WE'LL ARRANGE FOR AN EX PARTE HEARING WHERE YOU CAN BE PRESENT

17  AS THE CIA REPRESENTATIVE, AND I'LL HEAR FROM THEM.  WE CAN DO

18  THIS TELEPHONICALLY.  I'LL MAKE A JUDGMENT ABOUT WHETHER THE

19  AGENCY SHOULD GIVE IT OVER OR NOT.

20       IF PART OF THAT IS THAT YOU HAVE TO MEET WITH ME

21  EX PARTE TO GO OVER THIS BEFORE YOU DISCLOSE IT, THEN I WILL

22  BE HAPPY TO DO THAT.  BUT WE'VE GOT TO KEEP THE PROSECUTORS

23  OUT OF THE LOOP.  THIS TURNS THE JUSTICE SYSTEM AND THE

24  ADVERSARIAL SYSTEM ON ITS HEAD IF THEY KNOW WHAT'S BEING

25  PROFFERED AS MATERIAL BY THE DEFENSE.  THEY DON'T GET TO KNOW

PDF created with pdfFactory trial version www.pdffactory.com

1    THAT.

2             SO I'M SENSITIVE TO THE NATURE OF THE INFORMATION.

3    IF YOU THINK THERE'S THINGS I NEED TO KNOW ABOUT THIS BEFORE I

4    MAKE A RULING ON THIS, I'LL BE HAPPY ON A RECORD, A SEALED

5    RECORD, TO MEET WITH YOU AND TO GET YOUR PERSPECTIVE ON THAT.

6    MY INCLINATION IS THAT IT OUGHT TO GO FORWARD FIRST WITH THEM

7    GIVING YOU A LITTLE MORE DETAIL AND HAVING YOU RECONSIDER IT.

8    AS I SAID, IF A DISPUTE PERSISTS, THEN YOU AS A REPRESENTATIVE

9    OF THE CIA AND THEY AS MR. FOGGO'S REPRESENTATIVE CAN COME

10   BACK TO ME.

11            IS THAT AGREEABLE?

12            MR. MC PHERSON:  THE PROBLEM WITH THAT, YOUR HONOR,

13   IS I'M NOT TRIAL COUNSEL.  ONLY FAMILIAR TRIAL COUNSEL WOULD

14   BE ABLE TO EXPLAIN TO THE COURT WHY THE DEFENSE PROFFER DOES

15   NOT RELATE TO THE CHARGES OR ARE NOT A LEGITIMATE DEFENSE.

16            THE COURT:  I UNDERSTAND.  I THINK I AM.  I THINK I

17   HAVE ENOUGH BACKGROUND AT THIS POINT THAT I CAN UNDERSTAND

18   WHETHER THIS IS RELEVANT AND WHETHER THEY OUGHT TO HAVE ACCESS

19   TO IT.  THE THING THAT YOU SUGGEST IS THAT WE CLUE THE

20   GOVERNMENT IN ON WHY THEY THINK IT'S RELEVANT.  THAT'S NOT

21   GOING TO WORK.

22            MR. MC PHERSON:  I JUST WANT TO BE CLEAR, THIS IS

23   NOT IN THE CONTEXT OF A DISCOVERY REQUEST.  THIS IS FOR A

24   TUHEY REQUEST FOR VOLUNTARY INTERVIEWS OF WITNESSES.  SO THESE

25   WITNESSES ARE INFORMED BY THE CIA WHAT CLASSIFIED INFORMATION

PDF created with pdfFactory trial version www.pdffactory.com

1    THEY'RE AUTHORIZED TO DISCLOSE TO THIRD PARTIES.

2              MR. TESLIK:  THIS IS RANDY TESLIK.

3              I THINK THAT THE COMPARTMENT THAT WE'VE ASKED TO BE

4    READ INTO IS NECESSARY FOR MORE THAN THE TUHEY PURPOSES; THAT

5    IS, THE PURPOSES OF INTERVIEWING WITNESSES.  IT INVOLVES

6    POTENTIAL DOCUMENTS THAT WE'LL BE SEEKING.  WE'VE ALREADY

7    SOUGHT SUCH DOCUMENTS THAT WE BELIEVE ARE RELEVANT TO CERTAIN

8    OF THESE COMPARTMENTS.

9              OUR CLIENT WAS, BY VIRTUE OF HIS POSITION, CLEARED

10   INTO NUMEROUS COMPARTMENTS.  SO I JUST WANT TO MAKE SURE THAT

11   THE COURT AND MR. MC PHERSON UNDERSTAND THAT WHILE WE

12   REQUESTED ONE SUCH COMPARTMENT LAST WEEK, THERE ARE GOING TO

13   BE NUMEROUS OTHER COMPARTMENTS THAT WE'RE GOING TO

14   SPECIFICALLY ASK TO BE READ INTO FOR GENERAL PURPOSES IN THIS

15   CASE, NOT JUST FOR TUHEY PURPOSES.

16             THE COURT:  MR. FORGE, DO YOU HAVE ANY POSITION ON

17   THIS?

18             MR. FORGE:  NO.  WE'RE NOT INFORMED OF IT.  I WOULD

19   SIMPLY SAY REGARDING MR. TESLIK'S REFERENCE TO DOCUMENTS

20   THEY'RE GOING TO BE REQUESTING, OBVIOUSLY THEIR ONLY RIGHTS

21   TO, QUOTE/UNQUOTE, "REQUEST DOCUMENTS" WOULD BE THROUGH A

22   COURT-ORDERED SUBPOENA THAT THEY WOULD HAVE TO APPLY FOR

23   THROUGH THE COURT.  AND THAT, OBVIOUSLY, IS SUBJECT TO A

24   POSSIBLE MOTION TO QUASH FROM THE GOVERNMENT.

25             BUT IN TERMS OF THIS ISSUE, WE DON'T HAVE ANY

PDF created with pdfFactory trial version www.pdffactory.com

1   INFORMATION.  AND WE DON'T WANT IT.  ALTHOUGH OBVIOUSLY, YOUR

2   HONOR, IF YOUR HONOR FEELS THAT IT WOULD BE HELPFUL TO HAVE

3   SOMEBODY FROM THE PROSECUTION SIDE, WE COULD IN OUR OFFICE

4   ARRANGE TO HAVE A TEAM BECOME FAMILIARIZED WITH THE FACTS OF

5   THE CASE AND BE FAMILIARIZED ENOUGH TO AT LEAST SERVE AS

6   ADVOCATES, BUT BE WALLED OFF FROM THE PROSECUTION TEAM.

7          THE COURT:  I DON'T THINK I'M GOING TO DO THAT AT

8   THIS POINT.

9          MR. TESLIK, I AGREE WITH THE DISTINCTION THAT

10  MR. FORGE HAS MADE.  THE PRODUCTION OF CLASSIFIED DOCUMENTS IS

11  TO PROCEED THROUGH THE CLASSIFIED INFORMATION PROTECTION ACT.

12  SO THAT'S WHERE YOU MAKE YOUR APPLICATION.  COME BACK TO ME IF

13  THERE'S A DISPUTE ABOUT THAT.

14         WITH REGARD TO INTERVIEWING WITNESSES, I'M GOING TO

15  ADHERE TO WHAT I SUGGESTED TO MR. MC PHERSON AT THE BEGINNING.

16  I WANT YOU TO MAKE A MORE DETAILED PROFFER, TRY TO CONVINCE

17  HIM WHY YOU THINK IT'S MATERIAL THAT YOU HAVE ACCESS TO THESE

18  WITNESSES.  IF THE DISPUTE PERSISTS, THEN CALL AND LET ME

19  KNOW, MR. TESLIK, AND I'LL ARRANGE AN EX PARTE ON THE RECORD,

20  BUT AN IN CAMERA HEARING TO HEAR THE DISPUTE AND TO MAKE SUCH

21  DECISIONS AS I'M ABLE TO MAKE.

22         MR. MC PHERSON, AS I SAID, IF YOU THINK THAT AS PART

23  OF THAT I NEED TO SPEAK PERSONALLY AND PRIVATELY WITH YOU, YOU

24  HAVE REASONS WHY YOU CAN'T DISCLOSE IT, THAT YOU CAN'T EVEN

25  TELL THEM, THEN I CONTEMPLATE THAT THAT WOULD BE PART OF THE

PDF created with pdfFactory trial version www.pdffactory.com

1    PROCEDURE AS WELL.  I'M VERY, VERY MINDFUL ABOUT THE SENSITIVE

2    NATURE OF THIS INFORMATION.  I'M NOT INCLINED TO GIVE IT OVER

3    TO ANYBODY IF IT IMPERILS THE SAFETY OF THE UNITED STATES.

4    THAT'S THE WAY WE'RE GOING TO GO WITH THAT.

5            ANYTHING ELSE, MR. TESLIK?

6            MR. TESLIK:  NOT AT THIS TIME, YOUR HONOR.

7            MR. MC PHERSON:  I JUST WANT TO MAKE CLEAR FOR THE

8    RECORD WE INTERPOSE NO OBJECTION TO PRE-TRIAL REVIEWS OF

9    WITNESSES.  THIS IS ONLY ONE OF THE BOUNDS OF THE WITNESSES'

10   TESTIMONY AS IT RELATES TO CERTAIN COMPARTMENT PROGRAMS.

11           SECOND, I'VE HAD NO COMMUNICATIONS WITH THE

12   PROSECUTION OFFICE.

13           THE COURT:  I KNEW THAT.  I KNEW YOU WOULD COMPLY

14   WITH THAT.

15           MR. GRANGER, ANYTHING MORE?

16           MR. GRANGER:  ONE MATTER, JUDGE, THAT ACTUALLY

17   RELATES TO WILKES/MICHAEL RATHER THAN FOGGO/WILKES.

18           IT'S A MINOR MATTER, IF I MAY.

19           THE COURT:  OKAY.

20           MR. GRANGER:  JUDGE, YOU HAVE SET A DEADLINE FOR

21   NEXT MONDAY FOR MYSELF AND COUNSEL FOR MR. WILKES REGARDING

22   POSSIBLE JURY QUESTIONS RELATED TO PUBLICITY.

23           IN LIGHT OF THE FACT THAT WE'RE DEALING NOW WITH

24   POSSIBLE INTERVENTION IN THE GOVERNMENT'S INTERLOCUTORY APPEAL

25   IN THE 9TH CIRCUIT, COULD WE PUSH THAT BACK A WEEK?

PDF created with pdfFactory trial version www.pdffactory.com

1            THE COURT:  ANOTHER WEEK BEFORE YOU SUBMIT YOUR

2   QUESTIONNAIRES?

3            MR. GRANGER:  YES.

4            THE COURT:  SURE.  THIS IS ON THE WILKES/MICHAEL

5   CASE.  YOU HAVE ANOTHER WEEK FOR THAT.

6            MR. GERAGOS:  I THOUGHT THE DEADLINE WAS THE 14TH.

7            MR. HALPERN:  THE 16TH.

8            THE COURT:  SO YOU WANT A WEEK BEYOND THE 16TH?  IS

9   THAT WHAT YOU'RE ASKING FOR, MR. GRANGER?

10           MR. GRANGER:  IF I MAY, YOUR HONOR, YES.

11           THE COURT:  HOW ABOUT THE 23RD?  THAT'S THE DATE FOR

12   OTHER PROCEEDINGS IN THIS CASE.

13           MR. MAC DOUGALL:  MARK MAC DOUGALL.

14           I'D REQUEST TO BE INCLUDED IN THAT.

15           THE COURT:  SURE.  THE REQUEST WILL APPLY TO THE

16   WILKES/FOGGO CASE AS WELL.

17           AS A PRACTICAL MATTER, IF NOTHING HAPPENS AND THIS

18   ORDER TAKES EFFECT, THEN I'M GOING TO HAVE TO EXTEND THAT DATE

19   ANYWAY BECAUSE NEW COUNSEL IS GOING TO HAVE TO COME IN AND BE

20   READY TO PROMULGATE QUESTIONS IN A QUESTIONNAIRE AND GET THEM

21   TO ME.

22           ANYTHING ELSE?

23           MR. GERAGOS:  NOTHING FOR MR. WILKES, YOUR HONOR.

24           MR. HALPERN:  YOUR HONOR, I HAVE NO DESIRE TO MAKE

25   THESE PROCEEDINGS ANY LONGER THAN THEY ARE, BUT I DO THINK WE

PDF created with pdfFactory trial version www.pdffactory.com

1    NEED TO DISCUSS, AT LEAST TO GET SOME KIND OF PRELIMINARY

2    SCHEDULE IF WE WANT TO TRY TO MAKE THIS TRIAL DATE, WHAT WOULD

3    BE AN APPROPRIATE CIPA SECTION 5, CIPA SECTION 6(A), 6(C)

4    SCHEDULE.  THE FIRST HURDLE IS A SECTION 5 --

5            THE COURT:  LOOK, I UNDERSTAND ALL THAT.  I THINK

6    IT'S PREMATURE IN LIGHT OF THE RULING THAT I MADE TODAY.  I

7    DON'T HAVE DELUSIONS.  AS MUCH AS I LIKE TO TRY TO HOLD TRIAL

8    DATES, I DON'T HAVE ILLUSIONS THAT NEW COUNSEL COMING IN ON

9    THE 23RD IS GOING TO BE PREPARED IN OCTOBER FOR THE

10   WILKES/FOGGO CASE.  YOU'VE TOLD ME 17,000 PAGES.  SO IT RUNS

11   AGAINST MY GRAIN, BUT I MAY HAVE TO POSTPONE THAT CASE.  AND

12   I'LL GET TO THAT ON THE 23RD WHEN WE DECIDE.

13           BESIDES, MAYBE MR. GERAGOS WILL HAVE A CHANGE OF

14   HEART AND CALL ME AND SAY, "JUDGE, GO AHEAD.  CHECK ME OUT.

15   YOU'RE NOT GOING TO FIND ANYTHING.  I'M STAYING ON THESE

16   CASES."  I HOPE THAT HAPPENS.

17           MR. GERAGOS:  AND I HOPE THE COURT HAS A CHANGE OF

18   HEART AND SAYS, "YOU KNOW WHAT, MR. GERAGOS, I'D LIKE TO GET

19   TO THE BOTTOM OF WHO LEAKED THIS INFORMATION OUT OF THE GRAND

20   JURY."

21           THE COURT:  THANK YOU VERY MUCH.

22                    --OOO--

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

84

1

2

3          I HEREBY CERTIFY THAT THE TESTIMONY

4          ADDUCED IN THE FOREGOING MATTER IS

5          A TRUE RECORD OF SAID PROCEEDINGS.

6

7          S/EVA OEMICK                    7-30-07

8          EVA OEMICK                      DATE
           OFFICIAL COURT REPORTER

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com