```
 1                   UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF CALIFORNIA
 2
             HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
 3

 4   UNITED STATES OF AMERICA,        )
                                      )
 5                PLAINTIFF,          )  CASE NO. 07CR00329-LAB
                                      )             07CR00330-LAB
 6        VS.                         )
                                      )  SAN DIEGO, CALIFORNIA
 7   KYLE DUSTIN FOGGO,  (1)          )  AUGUST 8, 2007
     BRENT ROGER WILKES, (2)          )  10:00 A.M.
 8                                    )
     BRENT ROGER WILKES, (1)          )
 9   JOHN THOMAS MICHAEL,(2)          )
                                      )
10                DEFENDANTS.         )
     _____)
11

12                     REPORTER'S TRANSCRIPT

13                        MOTION HEARING
                       MISCELLANEOUS HEARING
14

15   APPEARANCES:
     FOR THE GOVERNMENT:         KAREN P. HEWITT, U.S. ATTORNEY
16                               BY: PHILLIP L.B. HALPERN, ESQ.
                                     JASON A. FORGE, ESQ.
17                                   VALERIE CHU, ESQ.
                                     SANJAY BHANDARI, ESQ.
18                               ASSISTANT U.S. ATTORNEYS
                                 880 FRONT STREET
19                               SAN DIEGO, CA. 92101

20   FOR DEFENDANT FOGGO:        AKIN GUMP STRAUSS HAUER & FELD
     (TELEPHONIC)                BY:  W. RANDOLPH TESLIK, ESQ.
21                                    MARK MAC DOUGALL, ESQ.
                                 1333 NEW HAMPSHIRE AVE., N.W.
22                               WASHINGTON, DC 20036-1564

23   FOR DEFENDANT WILKES:       GERAGOS & GERAGOS
                                 BY:  MARK J. GERAGOS, ESQ.
24                               350 SOUTH GRAND AVENUE, 39TH FL.
                                 LOS ANGELES, CA. 90071
25
```

2

1    CONTINUED APPEARANCES:

2

3    FOR DEFENDANT MICHAEL:        LAW OFFICES OF RAYMOND GRANGER
                                   BY:  RAYMOND R. GRANGER, ESQ.
4                                       RICHARD W. LEVITT, ESQ.
                                   757 THIRD AVENUE, 7TH FLOOR
5                                  NEW YORK, NY 10017

6

7

8

9    COURT REPORTER:              EVA OEMICK
                                  OFFICIAL COURT REPORTER
10                                UNITED STATES COURTHOUSE
                                  940 FRONT STREET, STE. 2190
11                                SAN DIEGO, CA 92101
                                  TEL: (619) 615-3103

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

3

1    SAN DIEGO, CALIFORNIA - WEDNESDAY, AUGUST 8, 2007 - 10:00 A.M.

2              THE CLERK:  CALLING NO. 1 ON THE CALENDAR, 07CR329,

3    UNITED STATES OF AMERICA VERSUS KYLE DUSTIN FOGGO AND BRENT

4    ROGER WILKES.

5              YOUR HONOR, WE HAVE COUNSEL IN THE OTHER CASE ON THE

6    LINE AS WELL IN 07CR330, UNITED STATES OF AMERICA VERSUS BRENT

7    ROGER WILKES AND JOHN THOMAS MICHAEL.

8              IF COUNSEL COULD PLEASE STATE THEIR APPEARANCES FOR

9    THE RECORD.

10             MR. HALPERN:  PHIL HALPERN, SANJAY BHANDARI, JASON

11   FORGE, AND VALERIE CHU FOR THE UNITED STATES.

12             MR. GERAGOS:  MARK GERAGOS, SPECIALLY APPEARING, I

13   SUPPOSE, WITH MR. WILKES, WHO I ASSUME IS IN THE COURTROOM.

14             THE COURT:  ACTUALLY, HE'S NOT.

15             HAVE YOU HEARD FROM HIM THIS MORNING?

16             MR. GERAGOS:  I HAVEN'T THIS MORNING.  HE WAS IN MY

17   OFFICE ALL DAY YESTERDAY.

18             MR. MAC DOUGALL:  MARK MAC DOUGALL (INAUDIBLE)--

19             THE COURT:  YOU NEED TO ADJUST THE SOUND ON YOUR

20   PHONE.  IT'S COMING OUT REAL, REAL LOUD HERE.

21             MR. MAC DOUGALL:  IS THAT BETTER?

22             THE COURT:  YES.

23             I WASN'T CLEAR.

24             IS MR. FOGGO WITH YOU?

25             MR. MAC DOUGALL:  HE'S NOT, YOUR HONOR.  HE'S

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    WORKING TODAY.

2            MR. GRANGER:  RAYMOND GRANGER FOR JOHN MICHAEL.

3            THE COURT:  GOOD MORNING, MR. GRANGER.

4            MR. GRANGER:  I BELIEVE MR. LEVITT IS ALSO ON THE

5    LINE.

6            MR. LEVITT:  I AM.  GOOD MORNING, YOUR HONOR.

7            THE COURT:  GOOD MORNING.

8            WELL, WE'RE IN A LITTLE BIT OF AN IMPASSE HERE WITH

9    MR. WILKES NOT BEING HERE.  HE MAY BE CAUGHT UP TRYING TO FIND

10   A PARKING SPACE.

11           MR. GERAGOS:  I COULD GIVE THE COURT A REPORT AS TO

12   WHAT I KNOW.

13           THE COURT:  THAT WOULD BE GOOD.

14           MR. GERAGOS:  I SPOKE TO A LAWYER WHO HE'S BEEN IN

15   CONTACT WITH.  I'VE ALSO SPOKEN TO THE FEDERAL DEFENDER, BOTH

16   YESTERDAY.  THE LAWYER THAT I SPOKE TO, IT LOOKS LIKE THEY'RE

17   ABOUT 95 PERCENT THERE.  HE EXPECTS THAT THEY CAN CONSUMMATE

18   THE RETAINER AGREEMENT WITHIN THE NEXT 24 TO 48 HOURS.  HE IS

19   AVAILABLE AS OF FRIDAY.

20           WHEN I CALLED YOUR CLERK YESTERDAY, SHE INFORMED ME

21   THAT THE COURT, I BELIEVE, IS DARK ON FRIDAY.  I COULD MAKE

22   ARRANGEMENTS FOR WHATEVER DATE.  IT IS A LOCAL LAWYER.  HE CAN

23   BE THERE ANYTIME THE COURT ORDERS HIM TO BE.  THEY'RE JUST IN

24   THE FINAL STAGES OF CONSUMMATING THE ARRANGEMENT.

25           THE COURT:  THAT'S VERY GOOD, MR. GERAGOS.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    ACTUALLY, THIS FRIDAY HAPPENED TO BE OUT.  WE'LL BE BACK

2    MONDAY.

3            I'M ASSUMING MONDAY MORNING IS A CONVENIENT TIME

4    FOR --

5            MR. GERAGOS:  THAT WOULD BE MY UNDERSTANDING.  HE

6    WAS OUT OF THE DISTRICT UNTIL FRIDAY.

7            THE COURT:  I'VE ALSO SPOKEN WITH REPRESENTATIVES OF

8    THE FEDERAL DEFENDERS OFFICE.  MR. WILKES, WHEN HE WAS HERE,

9    FILED A FINANCIAL AFFIDAVIT, WHICH I'VE REVIEWED.  AND UPON

10   REVIEW, I TOOK IT ON MYSELF TO CALL THE FEDERAL DEFENDERS

11   OFFICE AND SPOKE WITH THEIR SECOND IN COMMAND, MS. CHARLICK,

12   WHO'S HERE TODAY AS WELL.

13           IT DID APPEAR TO ME, BASED ON THE INFORMATION IN THE

14   FINANCIAL AFFIDAVIT, THAT MR. WILKES QUALIFIES FOR APPOINTED

15   COUNSEL.  THAT HAVING BEEN SAID, IF HE'S MADE OTHER

16   ARRANGEMENTS WITH SOMEONE, THAT'S HIS PREROGATIVE, OF COURSE.

17   BUT --

18           HERE HE IS.

19           GOOD MORNING, MR. WILKES.

20           DEFENDANT WILKES:  GOOD MORNING, YOUR HONOR.

21           SORRY.  I HAD A LITTLE CAR TROUBLE.

22           THE COURT:  I FIGURED.  MR. GERAGOS IS ON THE LINE.

23   HE TOLD ME THAT HE'D SPOKEN WITH YOU LAST NIGHT.  HE'S JUST

24   GIVEN ME AN UPDATE.

25           MR. GERAGOS:  I'LL REPEAT IT FOR HIS BENEFIT.  HE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

6

1    CAN ACKNOWLEDGE.

2            I BELIEVE THAT THE RETENTION AGREEMENT, THEY EXPECT

3    IT TO BE DONE WITHIN THE NEXT 24 HOURS OR SO.  AND THAT THE

4    LAWYER, WHO IS OUT OF THE DISTRICT TODAY, ASKED THAT I NOT

5    REVEAL WHO IT IS UNTIL THEY FINALIZE THE RETENTION, BUT THAT

6    HE'S AVAILABLE ON FRIDAY.  AND IF THE COURT WANTED MONDAY,

7    IT'S FINE.

8            THE COURT:  IS THAT ALL CORRECT, MR. WILKES?

9            DEFENDANT WILKES:  HE ACTUALLY WOULD HAVE BEEN HERE

10   TODAY, EXCEPT HE HAD AN EMERGENCY THAT TOOK HIM OUT OF THE

11   STATE.

12           THE COURT:  HERE'S WHAT I'D LIKE YOU TO DO,

13   MR. WILKES:  I'D LIKE YOU TO COME BACK WITH HIM.

14   UNFORTUNATELY, I'M GOING TO BE OUT ON FRIDAY.  I WOULD

15   OTHERWISE HAVE YOU COME IN AND LET HIM MAKE A GENERAL

16   APPEARANCE ON YOUR BEHALF AND ACKNOWLEDGE THAT HE'S

17   REPRESENTING YOU.

18           IS MONDAY AN EQUALLY CONVENIENT DATE FOR YOU AND FOR

19   THE LAWYER?  WE CAN DO IT IN THE MORNING AT 9:30.

20           DEFENDANT WILKES:  I'VE BEEN PUTTING OFF A LITTLE

21   TRIP I WAS GOING TO TAKE WITH MY KIDS OVER THE LAST FEW WEEKS

22   BECAUSE OF THE HEARINGS WE'VE BEEN HAVING.  I WAS GOING TO BE

23   GONE MONDAY AND TUESDAY.

24           THE COURT:  HOW ABOUT THIS:  CAN THE LAWYER COME IN

25   ON MONDAY AND ACKNOWLEDGE THAT HE'S GENERALLY APPEARING FOR

PDF created with pdfFactory trial version www.pdffactory.com

7

1    YOU?

2           DEFENDANT WILKES:  SURE.  I'LL HAVE TO CHECK ON THAT

3    BECAUSE WE CLEARED FRIDAY.

4           MR. GERAGOS:  I BELIEVE WHEN I TALKED TO MR. WILKES

5    AND YOUR HONOR, THAT HE WAS OKAY WITH NEXT WEEK.

6           DEFENDANT WILKES:  I THINK THAT'S WHAT HE SAID.

7           THE COURT:  YOU'LL COMMUNICATE WITH YOUR LAWYER, ASK

8    HIM TO BE HERE MONDAY AT 9:30.  AND I'LL NEED A WRITTEN

9    SUBSTITUTION OF COUNSEL WITH YOU SIGNING ON THAT.  IF YOU'LL

10   DO THAT, THEN I'LL EXCUSE YOUR APPEARANCE ON MONDAY SO YOU CAN

11   GO WITH YOUR CHILDREN.

12          DEFENDANT WILKES:  I COULD CALL IN IF THAT'S

13   HELPFUL.

14          THE COURT:  THAT PROBABLY WOULD BE HELPFUL.  THAT

15   WOULD PROBABLY BE THE BEST THING.  SO WHY DON'T YOU CALL IN AT

16   9:30 ON MONDAY, AND WE'LL HAVE THE LAWYER -- MAKE SURE YOU

17   TALK TO THE LAWYER.

18          DEFENDANT WILKES:  I WILL.

19          THE COURT:  IT'S A HE?

20          DEFENDANT WILKES:  YES.

21          THE COURT:  HE CAN MAKE A GENERAL APPEARANCE AT THAT

22   TIME ON YOUR BEHALF.

23          MR. GERAGOS:  YOUR HONOR, DO YOU WANT ME TO CALL IN

24   AS WELL?

25          THE COURT:  YOU'RE EXCUSED, MR. GERAGOS.  I

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    APPRECIATE YOUR HELP IN FACILITATING THE TRANSITION OF COUNSEL

2    SO FAR.  BUT I'LL NOT BURDEN YOU WITH CALLING IN ON MONDAY

3    GIVEN THE REPRESENTATIONS.

4            MR. GERAGOS:  THANK YOU, YOUR HONOR.

5            MR. FORGE:  I ASSUME THE REPRESENTATIONS ARE ALSO

6    WHOEVER THIS PERSON IS IS PREPARED TO GO TO TRIAL WHEN YOUR

7    HONOR DEEMS THIS CASE SHOULD GO TO TRIAL.

8            THE COURT:  WE'LL FIND THAT OUT.

9            JUST TO BE CLEAR, THIS IS A SUBSTITUTION ON THE

10   WILKES/FOGGO MATTER.  I'VE ALLUDED TO THE FACT THAT GIVEN THE

11   CHANGE OF COUNSEL, THAT THERE WAS PROBABLY GOING TO HAVE TO BE

12   AN ADJUSTMENT OF THE OCTOBER TRIAL DATE ON THAT DATE.  I'M

13   STILL HOPEFUL, MR. WILKES AND EVERYONE ELSE, THAT WE WILL GET

14   THAT CASE TRIED THIS YEAR.  I HATE TO PUSH IT INTO THE HOLIDAY

15   SEASON.  BUT IF THAT'S WHAT WE HAVE TO DO, THAT'S WHAT WE WILL

16   DO.

17           SO I'LL MAKE THAT INQUIRY, MR. FORGE, IF YOU REMIND

18   ME WHEN COUNSEL APPEARS ON MONDAY TO STAND IN AND MAKE A

19   GENERAL APPEARANCE FOR MR. WILKES.

20           MR. GRANGER:  THIS IS RAYMOND GRANGER.

21           AS LONG AS WE HAVE THE PARTIES PRESENT, CAN I RAISE

22   AN IMPORTANT ISSUE WITH RESPECT TO THE U.S. VERSUS WILKES AND

23   MICHAEL CASE?

24           THE COURT:  SURE.

25           MR. GRANGER:  IT HAS TO DO WITH TIMING AND PROCEDURE

PDF created with pdfFactory trial version www.pdffactory.com

1    RELATED TO THE GOVERNMENT'S DISCLOSURE RESPONSIBILITIES UNDER

2    BRADY VERSUS MARYLAND, GIGLIO VERSUS THE UNITED STATES, AND

3    THE JENCKS ACT.  AS TO USE ONE AND PERHAPS THE MOST IMPORTANT

4    EXAMPLE, I'M TALKING ABOUT MR. KONTOGIANNIS'S PLEA ELOCUTION.

5              AS YOUR HONOR KNOWS, WE'VE BEEN GIVEN ACCESS TO TOM

6    KONTOGIANNIS'S PLEA AGREEMENT.  AND IT'S QUITE CLEAR FROM THE

7    PLEA AGREEMENT, SINCE HE DOES NOT IMPLICATE MR. MICHAEL IN A

8    KNOWING CONSPIRACY WITH FORMER CONGRESSMAN CUNNINGHAM, THAT

9    THESE PORTIONS OF THAT AGREEMENT CONSTITUTE BRADY MATERIAL.

10   CERTAINLY, WE'RE ENTITLED TO IT UNDER 3500.

11             NOW, WITH RESPECT TO THE PLEA AGREEMENT, IT SEEMS TO

12   ME QUITE CLEAR THAT EITHER MR. KONTOGIANNIS'S PLEA ELOCUTION

13   WAS CONSISTENT WITH HIS PLEA AGREEMENT, IN WHICH CASE IT

14   CONTAINS AT LEAST SOME BRADY MATERIAL; OR IT WAS INCONSISTENT

15   WITH HIS PLEA AGREEMENT, IN WHICH CASE IT SHOULD BE PRODUCED

16   TO US UNDER GIGLIO.  IN ANY EVENT, IT CERTAINLY IS

17   DISCOVERABLE AND SHOULD BE PRODUCED UNDER THE JENCKS ACT.

18             AND YOU'LL RECALL, YOUR HONOR, THAT IT WAS BACK IN

19   MAY, MAY 14TH, TO BE EXACT, WHEN THE GOVERNMENT REPRESENTED

20   THAT WE WOULD GET ALL 3500 MATERIAL IN ITS POSSESSION IN A

21   WEEK AND A HALF AND THEN THE BALANCE ON A ROLLING BASIS.

22             NOW, IT'S QUITE CLEAR FROM THE SUPREME COURT THAT

23   DEFENSE COUNSEL MUST HAVE BRADY AND GIGLIO INFORMATION IN TIME

24   TO EFFECTIVELY USE AT A TRIAL.  THE 9TH CIRCUIT, IN THE

25   INTERLOCUTORY APPEAL THAT THE GOVERNMENT FILED UNDER CIPA, HAS

PDF created with pdfFactory trial version www.pdffactory.com

10

1   SET A SUPPLEMENTAL BRIEFING SCHEDULE, WHICH HAS A BRIEF BY

2   COPLEY PRESS DUE THIS MONDAY.  THE GOVERNMENT IS GOING TO GET

3   A WEEK TO RESPOND.  THE GOVERNMENT IS GOING TO GET FOUR DAYS

4   TO -- EXCUSE ME.  THE GOVERNMENT GETS A WEEK TO RESPOND, AND

5   THEN COPLEY PRESS GETS FOUR DAYS.  IT'S GOING TO BE ANOTHER

6   APPROXIMATELY TWO WEEKS BEFORE THE CASE IS EVEN UNDER

7   CONSIDERATION BY THE 9TH CIRCUIT.

8           I'LL ALSO MENTION WITH RESPECT TO THIS ISSUE, YOUR

9   HONOR, THAT IN THE COURSE OF YOUR REMOVAL OF MR. GERAGOS FROM

10  THE FOGGO/WILKES MATTER, YOUR HONOR MADE QUITE CLEAR THAT

11  BRADY AND GIGLIO ARE NOT TRUMPED BY CIPA.  AND AS I UNDERSTOOD

12  YOUR HONOR'S RULING, IT WAS BASED ON MR. WILKES'S RIGHT TO

13  EFFECTIVE REPRESENTATION OF COUNSEL.

14          SO I MENTION THAT BECAUSE EVEN UNDER THE COURT'S

15  PRIOR COMMENTS ON THE RELATED ISSUE, IT'S CLEAR THAT WE ARE

16  ENTITLED TO BRADY AND GIGLIO REGARDLESS OF WHETHER THE

17  GOVERNMENT IS INVOKING CIPA IN ANY CONTEXT.

18          NOW, THE RELATED ISSUE HAS TO DO WITH PROCEDURE.  I

19  DON'T UNDERSTAND HOW TOM KONTOGIANNIS'S PLEA ELOCUTION COULD

20  IMPLICATE CIPA.  I DON'T UNDERSTAND HOW WHEN SOMEONE GETS

21  BEFORE THE COURT AND SAYS "I WAIVE THIS RIGHT" OR "I WAIVE

22  THAT RIGHT.  I DO IT VOLUNTARILY.  AND HERE'S THE FACTUAL

23  BASIS FOR MY PLEA" -- I DON'T UNDERSTAND HOW, UNDER ANY

24  THEORY, WE'RE NOT ENTITLED TO THAT AND THAT ACCESS TO THOSE

25  MATERIALS SHOULD BE FILED WITH CIPA.  IN ANY EVENT, THAT'S THE

PDF created with pdfFactory trial version www.pdffactory.com

1    GOVERNMENT'S POSITION.

2              SO MY QUESTION IS IS THE GOVERNMENT SUGGESTING THAT

3    MR. WHITE, MR. FRANK, AND I HAVE TO GET CIPA SECURITY

4    CLEARANCES IN ORDER TO SEE MR. KONTOGIANNIS'S PLEA AGREEMENT?

5    AND IF THEY ARE, WHY (INAUDIBLE) THE COURT?  IF THEY'RE NOT

6    GOING TO TAKE THAT POSITION, MY QUESTION IS WHY NOT?  BECAUSE

7    UNLESS WE HAVE TO GET CIPA SECURITY CLEARANCES, THERE'S NO

8    REASON TO HOLD THOSE PORTIONS OF THE MINUTES CONTAINING

9    MR. KONTOGIANNIS'S PLEA ELOCUTION FROM DEFENDANT.

10             THE COURT:  MR. FORGE, YOU WANT TO REPLY?

11             MR. FORGE:  THANK YOU, YOUR HONOR.

12             FIRST OF ALL, OBVIOUSLY, THIS IS A MATTER THAT IS

13   MORE APPROPRIATELY HANDLED BY WAY OF A WRITTEN MOTION.  IN

14   LIGHT OF THE FACT THAT MR. GRANGER IS SO CLEARLY WRONG ON

15   CERTAIN ISSUES, I THINK THE COURT CAN DISPOSE OF CONCERNS HE

16   RAISED TODAY RIGHT NOW.

17             FIRST OF ALL, I DON'T THINK THAT MR. GRANGER'S

18   INTERPRETATION OF BRADY V. MILLS SQUARES WITH THE ACTUAL

19   LANGUAGE OF THE CASE.  I'VE NEVER SEEN A CASE IN WHICH ONE

20   INDIVIDUAL'S FACTUAL BASIS FOR A PLEA AGREEMENT WHICH

21   IMPLICATES MR. GRANGER'S CLIENT IN A WIDE-RANGING

22   MONEY-LAUNDERING SCHEME AND ALSO A WIDE-RANGING MORTGAGE AND

23   BANK FRAUD SCHEME CAN BE CONSTRUED AS BRADY.  I DISAGREE WITH

24   HIM THAT THAT FACTUAL BASIS IN A PLEA AGREEMENT CONSTITUTES

25   BRADY EVIDENCE, BRADY MATERIAL.

PDF created with pdfFactory trial version www.pdffactory.com

12

1          ASSUMING IT DOES, HOWEVER, HE HAS INFORMATION.

2     THEREFORE, HE HAS WHAT HE'S ENTITLED TO.  OF COURSE, AS YOUR

3     HONOR HAS ACKNOWLEDGED, THE JENCKS ACT DOES NOT REQUIRE

4     PRODUCTION UNTIL AFTER A WITNESS HAS BEEN CALLED TO TRIAL.  WE

5     HAVE DISCOVERED AND PROVIDED ALL OF THE JENCKS THAT WE HAVE

6     AVAILABLE TO PROVIDE TO DEFENSE COUNSEL.  AND ALTHOUGH

7     MR. KONTOGIANNIS CERTAINLY MADE STATEMENTS AT THAT GUILTY PLEA

8     PROCEEDING, WE HAVE NOT AND WE ARE NOT OBJECTING TO THE

9     DISCLOSURE OF THOSE STATEMENTS REGARDING THE FACTUAL BASIS FOR

10    HIS PLEA.

11          AS YOUR HONOR IS AWARE, WE HAVE, SINCE JUNE 22ND,

12    AGREED TO THE RELEASE OF OVER 85 PERCENT OF THE TRANSCRIPTS

13    THAT ARE AT ISSUE IN THAT APPEAL.  BUT MOST IMPORTANTLY, YOUR

14    HONOR IS AWARE OF ALL OF THE INFORMATION THAT IS CONTAINED IN

15    THAT GUILTY PLEA TRANSCRIPT.  SO THIS ISN'T EVEN A SITUATION

16    WHERE THE GOVERNMENT WOULD PRESENT TO THE COURT AND ASK THE

17    COURT TO PASS ON SOMETHING WHETHER IT NEEDS TO BE PRODUCED.

18    YOUR HONOR HAS IT.

19          SO YOUR HONOR CAN DETERMINE WHETHER UNDER BRADY

20    MR. MICHAEL IS ENTITLED TO IT.  UNDER GIGLIO AND THE JENCKS

21    ACT, HE'S NOT ENTITLED TO ANYTHING UNLESS AND UNTIL THE

22    WITNESS TESTIFIES.  SO THOSE ISSUES ARE MOOT.

23          I WOULD SUBMIT THAT THERE'S NOTHING IN THE PLEA

24    AGREEMENT AND NOTHING IN THE GUILTY PLEA COLLOQUY THAT

25    CONSTITUTES BRADY.  AND EVEN IF THERE WERE ANYTHING IN THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    GUILTY PLEA COLLOQUY, WE DON'T HAVE ANY OBJECTION TO THE

2    PRODUCTION OF IT.  AND IT'S CERTAINLY NOTHING THAT PUTS HIM AT

3    ANY DISADVANTAGE IF YOU WERE TO RECEIVE IT THE DAY BEFORE

4    TRIAL.

5            SO I DON'T THINK THAT THE CONCERN THAT THE

6    9TH CIRCUIT MIGHT NOT RESOLVE THIS ISSUE BEFORE THE END OF THE

7    MONTH IS A CONCERN AS TO THE TRIAL DATE.  THERE'S CERTAINLY

8    NOTHING IN THE FACTUAL BASIS IN THE ACTUAL GUILTY PLEA PORTION

9    OF THAT HEARING TRANSCRIPT THAT THE GOVERNMENT IS TRYING TO

10   KEEP UNDER SEAL.  IT'S SIMPLY THAT THE MORE THAN 85 PERCENT OF

11   THOSE TRANSCRIPTS WE'RE NOT OBJECTING TO HAS BECOME WRAPPED UP

12   WITH THE LESS THAN 15 PERCENT WE ARE OBJECTING TO BEING

13   UNSEALED.

14           NONE OF THE POINTS THAT MR. GRANGER RAISED, I THINK,

15   QUITE FRANKLY, SQUARE WITH THE CASES HE CITES OR WITH THE

16   FACTS OF THIS CASE.  YOUR HONOR IS AWARE OF ALL THE FACTS.  IF

17   THE COURT THINKS THAT YOU NEED BRIEFING ON THE ISSUE OR YOU'D

18   LIKE TO GIVE THE PARTIES AN OPPORTUNITY TO DO SO, WE'RE HAPPY

19   TO SUBMIT SOMETHING IN WRITING.  I'M COMFORTABLE WITH THE

20   COURT'S ORDERS AND THE SITUATION THAT THE COURT'S

21   KNOWLEDGEABLE.

22           MR. GRANGER:  MAY I RESPOND?

23           THE COURT:  LET ME GET A CLARIFICATION FROM

24   MR. FORGE.

25           IS THERE ANY PORTION OF THE GUILTY PLEA COLLOQUY

PDF created with pdfFactory trial version www.pdffactory.com

14

1    THAT YOU OBJECT TO PRODUCING?

2             MR. FORGE:  THERE'S NO PORTION OF THE GUILTY PLEA

3    COLLOQUY.  OBVIOUSLY, THERE ARE PORTIONS OF THE TRANSCRIPTS OF

4    THAT HEARING.  BUT NONE OF THOSE PORTIONS CONSTITUTES THE

5    GUILTY PLEA COLLOQUY.

6             THE COURT:  RIGHT.

7             WHY DON'T YOU PRODUCE THE GUILTY PLEA COLLOQUY TO

8    MR. GRANGER SO HE HAS IT?  THAT'S THE BASIS FOR THE MOTION

9    HERE.

10            MR. FORGE:  I WILL DO THAT JUST ON ONE CONDITION.  I

11   JUST WANT TO MAKE SURE IT'S OKAY WITH THE 9TH CIRCUIT.  I

12   THINK YOU CAN INTERPRET THEIR INITIAL STATE ORDER AS REQUIRING

13   THAT THAT REMAIN UNDER SEAL.  I'M QUITE CONFIDENT THAT ONCE

14   THEY REALIZE THE GOVERNMENT --

15            THE COURT:  I DIDN'T READ IT THAT WAY.  THE STAY

16   ORDER COMMANDED A STAY OF MY ORDER RELEASING ALL BUT THREE

17   PAGES OF IT.  WHAT YOU DO, YOU'RE IN CHARGE OF THE

18   INFORMATION.  YOU CAN WITHDRAW THE APPEAL AND SAY, "WE HAVE

19   CHANGED OUR MINDS AGAIN."  I DIDN'T SEE THAT DIRECTED AT YOU.

20   IT WAS DIRECTED AT THE COURT'S ORDER.

21            MR. FORGE:  I BELIEVE IT SAID THE TRANSCRIPTS ARE TO

22   REMAIN UNDER SEAL.  BUT I'LL REVISIT THAT ORDER.  CLEARLY,

23   WE'RE NOT WITHDRAWING OUR APPEAL.  OUR APPEAL IS NARROWER THAN

24   THE ENTIRETY OF ALL THE TRANSCRIPTS.  OUR APPEAL DOES NOT

25   OVERLAP THE ACTUAL GUILTY PLEA COLLOQUY.  SO ONE WAY OR THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

15

1    OTHER, I WILL DO WHAT I CAN TO CONFIRM THAT WE HAVE

2    AUTHORIZATION TO RELEASE THAT GUILTY PLEA COLLOQUY.

3         THE COURT:  AND ASSUMING THE 9TH CIRCUIT AGREES THAT

4    YOU HAVE THE PREROGATIVE TO DO THAT, YOU'LL GIVE MR. GRANGER A

5    COPY OF THE --

6         MR. GERAGOS:  AND MR. GERAGOS.

7         THE COURT:  AND MR. GERAGOS.

8         -- CHANGE OF PLEA?

9         MR. FORGE:  ABSOLUTELY.  IT'S MY UNDERSTANDING IF IT

10   WOULD BE UNSEALED, ALL THE PARTIES WOULD BE ENTITLED TO IT.

11        THE COURT:  MR. GRANGER, I'M HAPPY TO HEAR FROM YOU.

12   BUT I THINK THAT PROBABLY RESOLVES IT.  THEY'RE WILLING TO

13   GIVE IT OVER TO YOU PROVIDING THE 9TH CIRCUIT PERMITS THAT.

14   IF MR. FORGE IS RIGHT THAT THE STAY BLANKETS EVEN THEIR

15   PREROGATIVE AND DISCRETION TO TURN IT OVER, THEN IT SEEMS TO

16   ME IT'S A NECESSARY STEP FOR HIM TO GET PERMISSION FROM THAT

17   COURT.

18        HE'S RIGHT THAT IN OUR CIRCUIT AT LEAST THE

19   PRODUCTION OF JENCKS MATERIAL EVEN WHEN IT CONTAINS BRADY IS

20   PURSUANT TO THE JENCKS ACT, WHICH MEANS AFTER THE WITNESS

21   TESTIFIES.  BUT I DON'T THINK I HAVE TO RESOLVE ANY ISSUES --

22   JENCKS ISSUES IF THEY TELL YOU THEY'RE GOING TO GIVE IT OVER.

23        MR. GRANGER:  I HAVE TWO CONCERNS.

24        THE FIRST IS THAT WHEN THE GOVERNMENT TURNS AROUND

25   IN MAY AND SAYS "WE'RE GOING TO GIVE ALL THE JENCKS MATERIAL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   WE HAVE IN A WEEK AND A HALF," I EXPECT IT IN A WEEK AND A

2   HALF.  HERE IT IS AUGUST.  AND NOW THEY'RE SAYING "SURE, YOU

3   CAN HAVE IT" LIKE THIS ISN'T IMPORTANT TO THE DEFENSE.

4          SECONDLY, IT'S NEWS TO ME THAT THE GOVERNMENT HAS

5   CONSENTED TO THE RELEASE OF ANY PORTIONS OF THE TRANSCRIPT.

6   THIS IS THE FIRST TIME I OR MR. LEVITT IS HEARING THAT.  I'M

7   GLAD TO HEAR IT.  THAT'S QUITE A SIGNIFICANT CHANGE OF

8   POSITION.  I THINK IT HAS BEARING ON THE GOVERNMENT'S APPEAL

9   WITH THE CIRCUIT.  I DON'T UNDERSTAND HOW THEY INVOKE IN THE

10  FIRST PLACE.

11         THE COURT:  IT ACTUALLY ISN'T A CHANGE OF POSITION.

12  THIS WAS DISCUSSED IN THE LAST HEARING I HAD WITH THE

13  GOVERNMENT LAWYERS ON JUNE 29TH.  YOU MIGHT RECALL I MADE

14  REFERENCE TO THE AMOUNT OR THE NUMBER OF REDACTIONS, THE

15  AMOUNT OF REDACTED MATERIAL AND SAID IT LOOKED LIKE SOMEBODY

16  HAD USED WHITE-OUT TO GO OVER WHOLE PAGES.

17         OF COURSE, ALL OF THAT PRESUPPOSES THERE WAS A

18  PORTION OF IT THAT THEY DIDN'T OBJECT TO.  THAT IS INDEED THE

19  CASE.  I HAVEN'T GONE THROUGH AND TRIED TO QUANTIFY THAT.  I

20  DON'T KNOW WHETHER 15 PERCENT, 85 PERCENT ARE THE CORRECT

21  PORTIONS.

22         BUT IT SOUNDS LIKE THE ISSUE OF THE MOMENT IS YOUR

23  ACCESS AND MR. GERAGOS'S ACCESS TO MR. KONTOGIANNIS'S PLEA

24  COLLOQUY.  THEY SAY THEY'RE WILLING TO GIVE IT PROVIDED THE

25  9TH CIRCUIT PERMITS THEM TO DO SO.  SO I THINK THAT SOLVES THE

PDF created with pdfFactory trial version www.pdffactory.com

1   IMMEDIATE ISSUE.

2           MR. GRANGER:  IT DOES.  I'M JUST A LITTLE CONFUSED.

3   I WAS INVOLVED IN THE JUNE 29TH HEARING, AND I DID NOT

4   UNDERSTAND AT ANY TIME TO THE GOVERNMENT CONCEDING THAT ANY

5   PORTIONS OF THE TRANSCRIPT SHOULD BE RELEASED.  I'M NOT

6   COMPLAINING.  I'M GLAD TO HEAR IT.  BUT I THINK THE RECORD IS

7   A LITTLE BIT CONFUSED IN THAT REGARD.  I DO THINK IT'S VERY,

8   VERY IMPORTANT WITH RESPECT TO WHAT THE 9TH CIRCUIT IS DOING.

9   OF COURSE, WHAT THE 9TH CIRCUIT IS DOING HAS GREAT IMPORT WITH

10  RESPECT TO MR. MICHAEL.

11          THE GOVERNMENT, IT'S MY UNDERSTANDING, UNDER CIPA

12  GOT A STAY FROM THE -- WERE INVOKING CIPA, GOT A STAY FROM THE

13  CIRCUIT, AND WE HAVEN'T RECEIVED ANYTHING.  IF THE GOVERNMENT

14  IS SAYING THAT "WE'VE NEVER OBJECTED TO THE PLEA MINUTES BEING

15  RELEASED," A, THAT'S NEWS TO ME.  B, WHY DIDN'T THEY PRODUCE

16  IT BACK IN JUNE?

17          THE COURT:  I MAY BE MISRECOLLECTING, BUT I THOUGHT

18  IT WAS JUNE 29TH WHERE I REFERRED TO THE FACT THAT I DISAGREED

19  WITH THE NUMBER AND AMOUNT OF REDACTIONS THAT THE GOVERNMENT

20  PROPOSED.

21          MR. FORGE:  YOU'RE NOT MISRECOLLECTING.  YOU'RE

22  RECOLLECTING ACCURATELY.  THIS IS JUST ANOTHER

23  MISUNDERSTANDING THAT MR. GRANGER IS SUFFERING UNDER.

24          THE COURT:  MR. GRANGER, I THINK THE NUT OF DISPUTE

25  BETWEEN THE GOVERNMENT AND THIS COURT, AT LEAST, HAS TO DO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    WITH THINGS OTHER THAN THE CONTENT OF THE COLLOQUY,

2    MR. KONTOGIANNIS'S PLEA COLLOQUY.  IT HAS TO DO MORE GENERALLY

3    AS TO WHETHER THE REASONS THAT PROMPTED THE SECRECY IN THE

4    FIRST PLACE SHOULD BE DISCLOSED.

5              MAYBE THAT'S THE 15 PERCENT THAT MR. FORGE IS

6    TALKING ABOUT.  THAT DOES NOT IMPACT ON -- AS FAR AS I'M

7    CONCERNED, ON EITHER MR. WILKES'S FAIR TRIAL RIGHTS IN THE

8    WILKES/MICHAEL CASE, NOR MR. MICHAEL'S.

9              I HAVEN'T STUDIED THE PLEA COLLOQUY OF

10   MR. KONTOGIANNIS IN THIS CONTEXT.  I DON'T KNOW WHETHER

11   IT'S BRADY OR NOT.  AS I SAID, THE POINT IS THEY'RE WILLING

12   TO PRODUCE IT TO YOU PROVIDED THEY GET THE OKAY FROM THE

13   9TH CIRCUIT.

14             WHICH I ASSUME YOU'LL SEEK TODAY?

15             MR. FORGE:  ABSOLUTELY, YOUR HONOR.

16             THE COURT:  I THINK THAT SOLVES THAT.  IT WILL BE

17   FORTHCOMING TO BOTH YOU AND MR. GERAGOS.  I ASSUME YOU'LL HAVE

18   IT LONG BEFORE THE TRIAL STARTS.

19             OKAY.  ONE OTHER MATTER THAT I'M AWARE OF ON THE

20   WILKES/MICHAEL CASE.  I RECEIVED THE JOINT JURY QUESTIONNAIRE,

21   THE JOINTLY SUBMITTED JURY QUESTIONNAIRE.  AND THEN IN

22   ADDITION --

23             TISH, WILL YOU GRAB MY -- I LEFT IT IN MY BLUE

24   SATCHEL THAT I CARRY.  CAN YOU BRING THAT GROUP OF PAPERS.

25             MR. GRANGER, IN ADDITION, I GOT SOME ADDITIONAL

PDF created with pdfFactory trial version www.pdffactory.com

19

1    PROPOSED VOIR DIRE QUESTIONS FROM YOU --

2            MR. GRANGER:  YES, YOUR HONOR.

3            THE COURT:  -- THAT YOU THINK OUGHT TO BE IN THE

4    QUESTIONNAIRE.  I'M PREPARED TO MAKE A RULING AND GET THAT OUT

5    THIS WEEK.  MY COURT CLERK HAS GONE TO GRAB IT.  I LEFT IT

6    ACCIDENTALLY IN THE SATCHEL.  SO GIVE ME JUST A MINUTE.

7            WHILE SHE'S GONE, LET ME SWITCH GEARS FOR JUST A

8    MINUTE.

9            MR. MAC DOUGALL, YOU'RE GOING TO BE OUT HERE ON THE

10   WEST COAST NEXT WEEK?

11           MR. MAC DOUGALL:  YES, YOUR HONOR.

12           THE COURT:  AND IS IT CONVENIENT ON WEDNESDAY OF

13   NEXT WEEK THAT I MEET WITH YOU?

14           MR. MAC DOUGALL:  YES, YOUR HONOR.  I HAD PLANNED

15   FOR THAT DAY.

16           THE COURT:  I THINK I WAS GIVEN TIME WEDNESDAY AT

17   10:00.

18           IS THAT A CONVENIENT TIME?

19           MR. MAC DOUGALL:  YES, SIR.  THAT'S FINE WITH US.

20   THANK YOU.

21           THE COURT:  I HAVE ADDITIONAL PROPOSED QUESTIONS

22   FROM MR. GRANGER.  LET ME GO OVER THE ONES I AGREE WITH AND

23   WILL INCLUDE, MR. GRANGER.

24           QUESTION 2 ASKS PROSPECTIVE JURORS WHETHER THEY HAVE

25   A RESIDENTIAL MORTGAGE TO LIST THE ENTITY, ENTITIES, OR

PDF created with pdfFactory trial version www.pdffactory.com

1      INDIVIDUAL WHO OWN THE MORTGAGE.

2              MR. FORGE, IS THERE AN OBJECTION TO THAT?  I THINK

3      GIVEN THE IMPLICATIONS OF A MORTGAGE IN THE UNDERLYING CASE,

4      THAT THAT MIGHT INFORM THE INTELLIGENT EXERCISE OF A CHALLENGE

5      FOR CAUSE, PEREMPTORY CHALLENGE.

6              MR. FORGE:  THE PRELIMINARY QUESTION, THERE'S NO

7      OBJECTION.  WHAT YOU'LL SEE AS A CONSISTENT THEME THROUGHOUT

8      THE QUESTIONS -- AND THIS IS WHY WE COULDN'T AGREE ON THE

9      PROPOSED QUESTIONS -- IS THAT THEY TEND TO BE QUITE PERSONAL.

10     I DON'T SEE WHY IDENTIFYING --

11             I THINK IT WAS THE PERSON WHO OWNED THE MORTGAGE?

12             THE COURT:  "LIST THE ENTITY OR ENTITIES OR

13     INDIVIDUAL WHO OWN THE MORTGAGE."

14             MR. FORGE:  RIGHT.

15             THE COURT:  I CAN UNDERSTAND PERHAPS IF THE SAME

16     ENTITY OR ENTITIES THAT MR. MICHAEL WORKS FOR --

17             MR. FORGE:  WE HAVE ACTUALLY A LONG LIST -- IN THE

18     QUESTIONNAIRE THE PARTIES AGREED UPON, WE HAVE A LONG LIST OF

19     ENTITIES, WHICH WOULD INCLUDE ANY OF THE ONES THAT MR. MICHAEL

20     SUGGESTED.  I'M NOT GOING TO MAKE A BIG ISSUE OUT OF IT.  IF

21     YOUR HONOR THINKS IT'S OKAY AND NOT TOO PERSONAL, THAT'S

22     FINE.

23             MR. GRANGER:  WITH RESPECT TO INDIVIDUALS, THE

24     REASON WE MENTION THAT IS SOMETIMES PRIVATE INDIVIDUALS DO

25     GIVE MORTGAGES.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I'M GOING TO ADD NO. 2 ON.

2          "NO INCOME CHECK LOAN," I'M INCLINED TO ADD THAT ON

3     AS WELL.

4          "DOES SOMEBODY WORK IN THE MORTGAGE INDUSTRY IN YOUR

5     FAMILY?"  THAT'S NO. 4.  I'M PREPARED TO ADD THAT.

6          NO. 5 IS A GENERAL QUESTION ASKING WHETHER SOMEONE

7     WOULD TILT ONE WAY OR THE OTHER BASED ON FAMILIARITY OR

8     AFFILIATION WITH THE FBI, U.S. ATTORNEY'S OFFICE, CIA, SO ON

9     AND SO FORTH.  I'M INCLINED TO GIVE THAT.

10         6, I'M NOT INCLINED TO GIVE THAT.  IT WILL BE

11    COVERED BY THE GENERAL VOIR DIRE, MR. GRANGER.

12         MR. GRANGER:  YES, JUDGE.

13         THE COURT:  I DO GO OVER THAT WITH THE PROSPECTIVE

14    JUROR IN EVERY CASE.  SO I'LL NOT GIVE 6.

15         7, SAME THING.  I'LL TELL THEM THE PRESUMPTION OF

16    INNOCENCE IN THE GENERAL VOIR DIRE.

17         8, SAME THING.  I COVER THAT PRINCIPLE IN THE

18    GENERAL VOIR DIRE.

19         9, I'M NOT INCLINED TO GIVE THAT, MR. GRANGER,

20    UNLESS YOU CAN CONVINCE ME THAT THERE'S SOMETHING PROBATIVE

21    THAT WOULD INFORM YOUR EXERCISE OF PEREMPTORY CHALLENGES OR

22    CHALLENGES FOR CAUSE.

23         MR. GRANGER:  JUDGE, UNFORTUNATELY, BECAUSE OF

24    LITERALLY A RARE EVENT OF A TORNADO IN BROOKLYN THIS MORNING,

25    I'M NOT AT MY OFFICE.

PDF created with pdfFactory trial version www.pdffactory.com

22

1          THE COURT:  THIS IS "IF YOU SERVE AS A JUROR IN THIS

2     CASE, HOW WOULD YOU ANTICIPATE BEING TREATED BY YOUR FAMILY,

3     FRIENDS, AND ACQUAINTANCES IF THE DEFENDANT IS ACQUITTED?"

4          HERE'S WHAT I HAVE IN MIND, MR. GRANGER:  I'M GOING

5     TO PERMIT IT IF THERE'S A REQUEST FOR SOME ATTORNEY-CONDUCTED

6     VOIR DIRE.  IT CERTAINLY IS A THEME THAT YOU MAY WANT TO HIT

7     ON DURING YOUR TIME.  BUT I'M NOT INCLINED TO SEND IT OUT IN

8     THE GENERAL QUESTIONNAIRE.

9          MR. GRANGER:  OKAY, JUDGE.

10          THE COURT:  9 WILL NOT BE INCLUDED.

11          10 IS A FOLLOW-UP ON 9 SAYING, "WOULD SUCH A

12     PROSPECT AFFECT YOUR ABILITY TO BE IMPARTIAL?"  THAT WILL NOT

13     BE GIVEN.

14          11 IS A SIMILAR FOLLOW-UP:  "IF YOU SERVE AS A JUROR

15     IN THIS CASE, HOW DO YOU ANTICIPATE BEING TREATED BY YOUR

16     FAMILY IF THE DEFENDANT IS FOUND GUILTY?"

17          12, ALSO, "WOULD THAT AFFECT YOUR ABILITY TO BE

18     FAIR?" THAT WILL NOT BE INCLUDED IN THE QUESTIONNAIRE EITHER.

19          I SKIPPED OVER NO. 1.  LET ME GO BACK TO THAT.

20          YOU ASK -- THIS IS WHERE I DO HAVE SOME CONCERN,

21     MR. GRANGER, NUMBER ONE, BECAUSE IT'S PERSONAL -- VERY

22     PERSONAL INFORMATION.

23          NUMBER TWO, I DON'T WANT TO GIVE ANYBODY THE

24     IMPRESSION THAT THERE'S A ECONOMIC LITMUS TEST FOR SERVING AS

25     A JUROR ON THE CASE.  YOU ASK "WHAT'S YOUR ANNUAL INCOME?  IF

PDF created with pdfFactory trial version www.pdffactory.com

1    YOUR SPOUSE IS EMPLOYED, PLEASE INDICATE YOUR SPOUSE'S

2    INCOME."  AND THEN THERE'S CHECK BOXES; LESS THAN 25,000, 25-

3    TO 49-, 50- TO 99-, 100- AND MORE.

4           I'M REAL CONCERNED ABOUT THIS, MR. GRANGER.  AS I

5    SAID, A PROSPECTIVE JUROR LOOKING AT THAT MIGHT SAY, "WELL,

6    WHAT DOES THIS MEAN, I HAVE TO MAKE A CERTAIN AMOUNT OF MONEY

7    TO SERVE ON THE JURY?"

8           I UNDERSTAND THAT'S PROBABLY NOT YOUR INTENT.  I'M

9    JUST WORRIED THAT THAT'S HOW IT WOULD BE TAKEN BY SOMEBODY

10   OPENING AN ENVELOPE AND READING SOMETHING FROM THE COURT.  I

11   CERTAINLY DON'T WANT TO GIVE THAT IMPRESSION.

12          MR. GRANGER:  I CERTAINLY APPRECIATE YOUR CONCERN.

13   MY INTENT IS CERTAINLY NOT TO PRY INTO PERSONAL MATTERS.

14          HERE'S MY THINKING ON THAT:  THERE ARE GOING TO BE

15   AMOUNTS DISCUSSED AT TRIAL, INCOMES OF PEOPLE IN THE MORTGAGE

16   INDUSTRY.  I DON'T KNOW.  IT COULD ALSO IMPACT MR. WILKES'S

17   ASPECTS OF DEFENSE IN THAT REGARD.  OBVIOUSLY, MR. GERAGOS HAS

18   ADDRESSED THAT AND FEELS IT'S NECESSARY.

19          MY CONCERN IS SIMPLY THAT IT MAY BE A BIAS TO SOME

20   JURORS WITH RESPECT TO INDIVIDUALS WHO PERHAPS MAKE A LOT MORE

21   MONEY THAN THEM.

22          THE COURT:  I THINK, AGAIN, THIS IS THE TYPE OF

23   THING THAT MAY BE MOST APPROPRIATE FOR YOU TO FOLLOW UP IN

24   YOUR GENERAL VOIR DIRE SESSION.

25          MR. GRANGER:  THAT'S FINE, JUDGE.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I'M DISINCLINED TO HAVE THEM CHECK A BOX

2   AND GIVE ANYBODY THE IMPRESSION THAT WHAT THEY CHECK ON THAT

3   BOX AS FAR AS INCOME IS CONCERNED CONDITIONS WHETHER THEY CAN

4   SIT ON A JURY OR NOT.  THERE'S A WAY SIMILAR TO THE WAY YOU

5   JUST EXPLAINED IT TO ME WHERE YOU CAN PHRASE IT SORT OF

6   GENERICALLY WHERE WE DON'T HAVE TO FIND OUT EXACTLY WHAT THEY

7   MAKE.  JUST ASK THEM IF THERE IS ANY KIND OF ENVY OR

8   RESENTMENT TOWARD HIGHER-PAID PEOPLE.

9          SO 1 WILL NOT BE INCLUDED.

10          SO I THINK THAT RESOLVES THE QUESTIONNAIRE.

11          DO YOU HAVE THAT ON SOME KIND OF DISK OR FORMAT?

12          MR. GRANGER:  YES.  I CAN SEND IT TO YOU

13   ELECTRONICALLY IF YOU'D LIKE.

14          THE COURT:  MR. FORGE, DO YOU?

15          MR. FORGE:  I DO.

16          THE COURT:  WHAT I'D LIKE YOU TO DO, THEN, IS

17   INCORPORATE THOSE QUESTIONS THAT I'VE PERMITTED.

18          DID YOU NOTE THOSE?

19          MR. FORGE:  2 THROUGH 5.

20          THE COURT:  IF YOU'LL INCORPORATE THOSE INTO THE

21   EXISTING QUESTIONNAIRE AND THEN GET THAT BACK TO ME, WE'LL

22   SEND IT OUT BEFORE THE END OF THIS WEEK.

23          MR. FORGE:  WE'LL DO THAT, YOUR HONOR.

24          THE COURT:  ARE THERE ANY OTHER ISSUES AFFECTING

25   MR. WILKES AND MR. MICHAEL THAT THE COURT NEEDS TO RESOLVE

PDF created with pdfFactory trial version www.pdffactory.com

25

1    THIS MORNING?

2              MR. GERAGOS:  NOT ON BEHALF OF MR. WILKES.

3              MR. GRANGER:  ON BEHALF OF MR. MICHAEL, NO, YOUR

4    HONOR, UNLESS THERE'S SOMETHING THAT MR. LEVITT, WHO'S IN A

5    DIFFERENT LOCATION, FEELS SHOULD BE ADDRESSED.

6              MR. LEVITT:  NO.

7              THE COURT:  LET ME TURN MY ATTENTION, THEN, TO

8    MR. FOGGO AND MR. WILKES.

9              MR. LONDERGAN, GOOD MORNING.  THANK YOU FOR COMING.

10             MR. LONDERGAN:  GOOD MORNING, JUDGE.

11             THE COURT:  I HAVE UNDERSTOOD THIS MORNING THAT WITH

12   REGARD TO MY COURT REPORTER AND CLERK, THAT THEY HAVE BEEN

13   CLEARED.

14             IS THAT CORRECT INFORMATION?

15             MR. LONDERGAN:  YES, YOUR HONOR.  I NEED TO BRIEF

16   THEM AND SIGN THEM UP BEFORE ANYTHING CLASSIFIED.  I WILL DO

17   SO HERE IN SAN DIEGO.

18             THE COURT:  WE'LL NEED, OBVIOUSLY, SOME ASSISTANCE

19   FROM YOU IN TRYING TO EXPEDITE THE CLEARANCE FOR MR. WILKES'S

20   COUNSEL IF IT HAPPENS AS IT'S SUPPOSED TO ON MONDAY WHERE THAT

21   COUNSEL APPEARS AND MAKES A GENERAL APPEARANCE.

22             MR. GERAGOS OR MR. WILKES, DO YOU KNOW OFFHAND

23   WHETHER THIS PERSON HAS ANY TYPE OF PREVIOUS CLEARANCE?

24             DEFENDANT WILKES:  I DON'T BELIEVE SO.

25             MR. GERAGOS:  I DON'T BELIEVE SO.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdffactory trial version www.pdffactory.com

1          THE COURT:  WE'LL NEED TO EXPEDITE THAT,

2     MR. LONDERGAN.  OBVIOUSLY, COUNSEL FOR MR. FOGGO ARE MONTHS

3     AHEAD AT THIS POINT OF SOMEBODY COMING INTO THE CASE.  IN THAT

4     REGARD, I DID RECEIVE ANOTHER REQUEST FROM MR. MAC DOUGALL

5     ABOUT THE AVAILABILITY OF A FACILITY, A S.C.I.F., IF YOU WILL,

6     IN THE EAST COAST AREA.

7          FIRST LET ME PREFACE WHAT I'M ABOUT TO SAY BY

8     TELLING YOU THAT I DON'T KNOW IF THEY COPIED YOU ON THE

9     LETTER, BUT THEY'RE VERY APPRECIATIVE OF ALL YOUR EFFORTS SO

10    FAR.  THEY UNDERSTAND THAT YOU'VE WORKED VERY DILIGENTLY TO

11    TRY TO GIVE THEM ACCESS ON THE EAST COAST SO THEY DIDN'T HAVE

12    TO FLY OUT HERE EVERY TIME THEY WANTED TO LOOK AT THE

13    MATERIALS.

14          AS WE GET CLOSER, I THINK, TO THAT TIME WHEN THE

15    CASE IS GOING TO BE TRIED, IN PARTICULAR THE COURT'S GOING TO

16    HAVE TO MAKE DETERMINATIONS PURSUANT TO THE CLASSIFIED

17    INFORMATION PROTECTION ACT, I THINK THEIR NEED FOR ACCESS FOR

18    LONGER PERIODS OF TIME HAS INCREASED.  AND SO THEY'VE ASKED ME

19    IN A LETTER IF WE COULD REDOUBLE OUR EFFORTS TO FIND THEM

20    SPACE SOMEWHERE ON THE EAST COAST.

21          AS YOU KNOW, I DID CALL THE EASTERN DISTRICT OF

22    VIRGINIA.  I TALKED TO THE CHIEF JUDGE THERE AS WELL AS JUDGE

23    FRANKLIN AND WAS INFORMED THAT THERE WAS NO S.C.I.F. SPACE

24    THERE, NOR IN WASHINGTON, D.C.  COUNSEL FOR MR. FOGGO TELL ME

25    THAT THERE ARE A NUMBER OF OTHER LOCATIONS, INCLUDING

PDF created with pdfFactory trial version www.pdffactory.com

1    EXTRA-JUDICIAL LOCATIONS; DEPARTMENT OF DEFENSE, FOR EXAMPLE,

2    AND OTHER PLACES.

3          DO YOU HAVE CONTACT WITH PEOPLE IN OTHER AGENCIES

4    OUTSIDE THE JUSTICE SYSTEM WHERE YOU MIGHT BE ABLE TO ARRANGE

5    S.C.I.F. SPACE FOR MR. FOGGO'S COUNSEL?

6          MR. LONDERGAN:  ONLY IN CRIMINAL LITIGATION WHERE

7    ONE OF THOSE AGENCIES IS A PARTY TO THE LITIGATION.  FOR

8    EXAMPLE, IF THE DEFENSE DEPARTMENT, SAY THE DEPARTMENT OF THE

9    AIR FORCE -- IF THEY HAVE A CLASSIFIED PROGRAM WHICH IS

10   S.C.I.F. REQUIRED, THEN IF THERE'S NO S.C.I.F. AVAILABLE IN

11   THE COURTHOUSE, THEY CAN ASK THEIR REPRESENTATIVE IF THEY HAVE

12   ANYTHING AVAILABLE THAT DEFENSE COUNSEL COULD USE FOR THE

13   DURATION OF THIS LITIGATION.  IN THIS INSTANCE, AS FAR AS I

14   KNOW, IT'S PRIMARILY ONE AGENCY'S MATERIAL AND THAT AGENCY NOT

15   BEING ANY PART OF THE DEFENSE DEPARTMENT.

16         HIS SITUATION IN WASHINGTON HAS NOT CHANGED IN TERMS

17   OF S.C.I.F. AVAILABILITY.  THE S.C.I.F. THAT IS BEING USED NOW

18   IS A S.C.I.F. CONFERENCE ROOM AND IS BEING PROVIDED ON A

19   COURTESY BASIS, WHICH IS A TEMPORARY BASIS.  IT'S BEING USED

20   BY NOT ONLY THE FOGGO LEGAL TEAM, BUT BY TWO OTHER LEGAL

21   TEAMS.

22         FOR EXAMPLE, NEXT WEEK THERE WAS A REQUEST THAT CAME

23   IN FROM THE FOGGO TEAM TO USE THE S.C.I.F. DURING NEXT WEEK A

24   COUPLE OF DAYS.  AND THERE HAD ALREADY BEEN BOOKED FOR THE

25   ENTIRE FIVE DAYS ONE OF THE OTHER LEGAL TEAMS.  SUBSEQUENT TO

PDF created with pdfFactory trial version www.pdffactory.com

1    ADVISING THE FOGGO LEGAL TEAM THAT THE S.C.I.F. WAS

2    UNAVAILABLE, I THEN FOUND OUT THAT THE OTHER LEGAL TEAM IS

3    GOING TO NEED TO NOT USE THE S.C.I.F. NEXT WEEK BECAUSE

4    THERE'S A HIGHER REQUIREMENT FOR INSPECTOR GENERAL USE OF THE

5    OWNERS OF THE S.C.I.F.  SO IT'S A TENUOUS SITUATION.

6          WE HAVE BEEN ABLE TO PROVIDE ACCESS -- FOR EXAMPLE,

7    THE WEEK AFTER NEXT, THE FOGGO LEGAL TEAM WILL BE USING THE

8    S.C.I.F. FOR THREE DAYS.  IN THE PAST, THERE WAS ONE DAY WHICH

9    WAS REQUESTED BY THE FOGGO LEGAL TEAM WHICH WE WERE NOT ABLE

10   TO ACCOMMODATE.

11          SO IT'S NOT THE SAME THING AS HAVING A DEDICATED

12   S.C.I.F. FOR THAT PARTICULAR LEGAL TEAM.  THE SITUATION IN

13   SAN DIEGO IS SUCH THAT THE CLERK OF THE COURT'S OFFICE, THE

14   PERSON IN CHARGE OF OPERATIONS FOR THAT OFFICE, ADVISED ME

15   THAT HE HAS RECEIVED FUNDING VIA COURT MECHANISMS TO PROVIDE

16   THE ROOM FOR A S.C.I.F. IN SAN DIEGO.  AND WE'RE IN THE

17   PROCESS OF WAITING FOR A COST ESTIMATE ON MODIFICATION OF THAT

18   ROOM, WHICH THEN WOULD BE USED AS A JOINT S.C.I.F. FOR THE

19   FOGGO AND WILKES TEAM.

20          THIS TYPE OF SITUATION, A JOINT S.C.I.F., HAS BEEN

21   USED IN THE PAST FOR MULTIPLE DEFENDANT CASES, AS MANY AS

22   FIVE.  AND IT WOULD BE ON AGREEMENT BETWEEN THE TWO DEFENSE

23   TEAMS WHO WOULD BE USING THE S.C.I.F. AND WHEN.

24          THE COURT:  I THINK THAT WILL WORK FOR MR. WILKES

25   WHOSE COUNSEL, I'M ASSUMING, IS GOING TO BE LOCAL.  THE

PDF created with pdfFactory trial version www.pdffactory.com

1    PROBLEM REMAINS -- I THINK MR. MAC DOUGALL AND THE OTHERS ARE

2    TRYING TO DEFRAY COSTS OF FLYING ACROSS THE UNITED STATES JUST

3    TO REVIEW MATERIALS AND INCUR HOTEL COSTS WHEN THAT REVIEW

4    TAKES SEVERAL DAYS.

5            MR. GERAGOS:  MAY I BE EXCUSED?  I HAVE AN URGENT

6    SITUATION I NEED TO ATTEND TO.

7            THE COURT:  YES, MR. GERAGOS, YOU CERTAINLY MAY.

8            MR. GERAGOS:  THANK YOU.

9            MR. MAC DOUGALL:  YOUR HONOR, IF I COULD BE HEARD

10   FOR A MOMENT (INAUDIBLE).

11           THE COURT:  MR. MAC DOUGALL, AGAIN, IF YOU COULD

12   TURN DOWN THE VOLUME A LITTLE BIT.  FOR WHATEVER REASON, IT'S

13   COMING ACROSS REAL LOUD AND IT'S BREAKING UP A LITTLE.

14           MR. GRANGER:  THIS IS RAYMOND GRANGER.

15           WOULD YOU MIND IF MR. LEVITT AND I -- SINCE THE

16   ISSUES YOU'RE GOING TO DISCUSS NOW DON'T AFFECT MR. MICHAEL,

17   WOULD YOUR HONOR MIND IF WE GET OFF THE LINE?

18           THE COURT:  NO.  YOU'RE ALSO EXCUSED.  THANK YOU,

19   MR. GRANGER AND MR. LEVITT.

20           MR. MAC DOUGALL:  IS THAT BETTER?

21           THE COURT:  THAT IS A LITTLE BIT BETTER.  IT'S A

22   SPEAKER PHONE.  THAT'S THE PROBLEM.

23           MR. MAC DOUGALL:  I'M ON A HAND-HELD.

24           THE COURT:  YOU'RE ON A HAND-HELD?

25           MR. MAC DOUGALL:  YES.  YOUR HONOR, I THINK

PDF created with pdfFactory trial version www.pdffactory.com

1    MR. DOBER IS ON SPEAKER PHONE.  THAT MAY BE THE FEEDBACK WE'RE

2    GETTING.

3             THE COURT:  MR. DOBER, MAYBE YOU CAN TURN THAT DOWN

4    JUST A LITTLE BIT.  I'M HEARING MR. MAC DOUGALL BETTER NOW.

5             GO AHEAD, MR. MAC DOUGALL.

6             MR. MAC DOUGALL:  YOUR HONOR, WITH RESPECT TO THE

7    S.C.I.F. ISSUE, AS MR. LONDERGAN POINTED OUT, WE ARE HAVING

8    DIFFICULTY THROUGH NO FAULT OF HIS OF HIS OFFICE IN OBTAINING

9    ACCESS.

10            ANOTHER ASPECT OF THE PROBLEM IS WE HAVE

11   WITNESSES -- AGENCY WITNESSES WHO HAVE AGREED TO SPEAK WITH

12   US.  BUT BECAUSE OF THE NATURE OF THE INTERVIEWS, THOSE

13   DISCUSSIONS CAN ONLY TAKE PLACE AT THE S.C.I.F.  SEVERAL OF

14   THEM ARE CURRENT AGENCY EMPLOYEES AT LANGLEY.  THE CIA HAS

15   TOLD US FLATLY THAT WE MAY NOT INTERVIEW THEM AT S.C.I.F. BASE

16   AT LANGLEY, WHICH IS EXTENSIVE.

17            SO THERE'S NOT GOING TO BE ANY AVAILABILITY OF

18   S.C.I.F. SPACE IN THE WASHINGTON AREA.  WE'RE GOING TO BE

19   ESSENTIALLY PRECLUDED FROM INTERVIEWING CIA WITNESSES -- AND

20   THAT'S THE BULK OF OUR CASE -- EXCEPT TO THE EXTENT THAT

21   THERE'S AVAILABILITY IN WASHINGTON.

22            AS MR. LONDERGAN POINTED OUT, THE AGENCY WHOSE

23   INFORMATION IS AT ISSUE GENERALLY HAS THE INFORMAL ROLE OF

24   FINDING S.C.I.F. SPACE.  IN THIS CASE, IT'S THE CIA.  THE

25   EXTENT OF THAT, THAT'S NOT ONLY AT AGENCY FACILITIES, BUT ALSO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

31

1   THROUGH CONTRACTORS WHO HAVE PERIODICALLY BEEN ENGAGED TO

2   PROVIDE SERVICES.

3           SO THERE'S A GREAT DEAL OF REAL ESTATE, IF YOU WILL,

4   THAT HAS BEEN CONSTRUCTED AND BUILT OUT TO CONFORM TO S.C.I.F.

5   REQUIREMENTS IN THE WASHINGTON AREA.  I'M QUITE CERTAIN THAT

6   ALL OF IT IS NOT IN USE ON A CONTINUING BASIS.  IT'S JUST A

7   QUESTION OF SOMEONE -- AND I THINK THAT SOMEONE WOULD BE

8   SOMEONE WITH THE CIA -- WHO HAS INVENTORY OF THAT SPACE TO GO

9   DOWN AND SEE WHAT'S AVAILABLE.

10          THE COURT:  MR. FORGE, CAN YOU SPEAK TO THAT?  I

11  KNOW THAT THE CIA REPRESENTATIVE IS HERE AGAIN TODAY.

12          MR. FORGE:  I CANNOT PERSONALLY, BUT YOU ARE

13  CORRECT.  MR. MC PHERSON IS HERE FROM THE OFFICE OF GENERAL

14  COUNSEL.

15          THE COURT:  GOOD MORNING, MR. MC PHERSON.

16          MR. MC PHERSON:  GOOD MORNING, YOUR HONOR.

17          THE COURT:  THIS IS THE DILEMMA:  I JUST THINK IT

18  WOULD BE TERRIBLY WASTEFUL -- WELL, FIRST OF ALL, IMPRACTICAL

19  IN THE LAST CONTEXT THAT MR. MAC DOUGALL SPOKE OF.  I DON'T

20  KNOW HOW HE'S GOING TO GET A WITNESS ALL THE WAY TO SAN DIEGO

21  SO THEY CAN GO INTO A S.C.I.F. AND HE CAN INTERVIEW THEM.

22  THAT NECESSARILY NEEDS TO BE DONE SOMEWHERE IN THE WASHINGTON,

23  D.C. AREA.  THEY'RE PREPARED TO DO IT, MR. FOGGO'S COUNSEL

24  ARE.

25          WE'VE HAD A DEVIL OF A TIME FINDING SPACE.  I MADE

PDF created with pdfFactory trial version www.pdffactory.com

1    TWO DIFFERENT CALLS TO THE DISTRICT COURT IN D.C. AND TO THE

2    DISTRICT COURT IN THE EASTERN DISTRICT OF VIRGINIA AND

3    EXPLAINED PASSIONATELY AND URGENTLY WHAT THE NEED WAS, BUT WAS

4    TOLD THERE JUST WASN'T ANYTHING AVAILABLE.

5              MY SENSE OF THINGS -- AND I MAY BE WRONG ABOUT THIS.

6    I MAY BE ALL WET.  MY SENSE OF THINGS IS THAT THE CIA

7    INTERFACES WITH A LOT OF DIFFERENT AGENCIES.  SO THIS IDEA

8    THAT "WELL, IT DOESN'T AFFECT OUR AGENCY AT ALL, SO WE'RE NOT

9    GOING TO PROVIDE OUR S.C.I.F." MAY NOT WITHSTAND SCRUTINY IN

10   THIS PARTICULAR CASE.

11             WHAT I'M ASKING IS YOU USE YOUR GOOD OFFICES TO FIND

12   SOME S.C.I.F. SPACE SO THAT AS THIS CASE GETS CLOSER FOR

13   TRIAL, THESE FELLOWS CAN INTERVIEW WITNESSES AS THEY DEEM TO

14   BE NECESSARY WITNESSES AND THAT THEY CAN -- IT APPEARS THE

15   DOCUMENT REVIEW IS GOING OKAY THANKS TO MR. LONDERGAN AND THE

16   AVAILABILITY ON AN INFORMAL BASIS OF THE S.C.I.F. HE HAS.  BUT

17   I REALLY THINK THERE'S GOING TO BE A NEED PROBABLY FOR THEM TO

18   FIND SOME SPACE WHERE THEY CAN INTERVIEW SOME PEOPLE.

19             CAN YOU HELP OUT WITH THAT?

20             MR. MC PHERSON:  YOUR HONOR, I'M NOT A FACILITY

21   MANAGEMENT EXPERT AT THE CIA.  I ONLY KNOW FROM MY OWN

22   EXPERIENCE THAT CONFERENCE ROOMS OR OPEN SPACES ARE IN SHORT

23   SUPPLY.  WE LABOR UNDER A SEVERE SHORTAGE OF THAT AS WELL.  WE

24   HAVE TO RESERVE CONFERENCE ROOMS FOR AN HOUR SEVERAL WEEKS IN

25   ADVANCE.

PDF created with pdfFactory trial version www.pdffactory.com

1          SO I'M NOT AWARE OF ANY SPACE THAT WE COULD LEAVE

2     DEDICATED TO A LITIGATION WAR ROOM SORT OF THING WHERE THEY

3     PUT THEIR STUFF OUT AND LEAVE IT OUT THERE FOR WEEKS ON END.

4     I CAN CERTAINLY MAKE INQUIRIES IN THAT REGARD.

5          THE COURT:  MR. MAC DOUGALL, THE POINT OF THIS IS TO

6     GET SOME SPACE WHERE YOU CAN CONDUCT SOME INTERVIEWS, WHAT,

7     SEVERAL HOURS LONG MAYBE?

8          MR. MAC DOUGALL:  YES, YOUR HONOR.  THE CIA

9     EMPLOYEES TO TAKE LEAVE TO COME MEET WITH US, IT'S BEEN

10    DIFFICULT EVEN IN WASHINGTON.  AND, IN FACT, UNDER THE RULES

11    THAT WE'RE ALL LIVING UNDER, IN ORDER FOR TWO OR THREE PEOPLE

12    TO EVEN TALK TO EACH OTHER ABOUT THE SUBJECT MATTER, WE'RE

13    REQUIRED TO BE IN A S.C.I.F.  SO IT'S MAKING IT VERY DIFFICULT

14    FOR US TO BEGIN TO PREPARE OUR CASE.

15         ONE THING I HAVEN'T DISCUSSED WITH MY CLIENT IS

16    GIVEN THE AMOUNT OF MONEY THAT WE'RE GOING TO BE SPENDING TO

17    GO BACK AND FORTH TO SAN DIEGO IF WE CAN'T RESOLVE THIS, IF

18    THERE'S A CONTRACTOR OUT THERE THAT WOULD RENT US SPACE, IT

19    MAY WELL BE MORE ECONOMICAL TO PAY SOMEBODY TO GIVE US

20    S.C.I.F. SPACE IN THE FORM OF A PRIVATE CONTRACTOR THAN TO BE

21    HAVING LAWYERS GOING BACK AND FORTH TO CALIFORNIA.

22         THE COURT:  IT SOUNDS LIKE THERE IS SOME

23    ARRANGEMENTS THAT ARE IN PROCESS HERE OR ARE FORTHCOMING FOR

24    S.C.I.F. SPACE HERE.

25         MR. LONDERGAN, YOU DIDN'T GIVE ME A TIME ON THE

PDF created with pdfFactory trial version www.pdffactory.com

34

1    ARRANGEMENTS.  YOU SAID MONEY HAS BEEN AUTHORIZED AND SOME

2    THOUGHT HAS BEEN GIVEN TO A DEDICATED S.C.I.F. HERE?

3              MR. LONDERGAN:  IN SAN DIEGO, YOUR HONOR.

4              THE COURT:  WHAT'S THE TIMELINE?

5              MR. LONDERGAN:  WE DON'T HAVE A TIMELINE YET.  WE'RE

6    WAITING ON A COST ESTIMATE.  AND ONCE THE COST ESTIMATE IS

7    FINALIZED BY GSA, THEN IT GOES INTO WASHINGTON FOR APPROVAL.

8    SUBSEQUENT TO THAT APPROVAL, PART OF THE COST ESTIMATE SHOULD

9    INCLUDE THE BUILD-OUT TIME FOR THE FACILITY.

10             THE COURT:  WELL, THAT SEEMS LIKE IT'S GOING TO TAKE

11   MONTHS.

12             THERE IS A CURRENT S.C.I.F. HERE; RIGHT?

13             MR. LONDERGAN:  I'D HAVE TO --

14             MR. FORGE:  THERE'S A S.C.I.F. IN OUR OFFICE SPACE,

15   AND I BELIEVE THE FBI HAS ONE AS WELL.

16             THE COURT:  ARE THOSE AVAILABLE FOR USE ON THIS

17   CASE?

18             MR. FORGE:  WE WOULD NOT BE ALLOWED TO -- I'LL CHECK

19   TO MAKE SURE WITH OUR SECURITY PEOPLE, BUT I DON'T THINK WE

20   WOULD BE PERMITTED TO ALLOW DEFENSE COUNSEL INTO THAT ROOM

21   WITHOUT ANYBODY FROM THE GOVERNMENT PRESENT.  I'D BE REALLY

22   SURPRISED IF WE'RE ABLE TO DO THAT BECAUSE THERE'S OBVIOUSLY,

23   BY DEFINITION, ALL KINDS OF SENSITIVE INFORMATION IN THERE.

24             THE COURT:  WE'RE GOING TO HAVE A DEVIL OF A TIME

25   BRINGING THIS CASE TO TRIAL THIS YEAR IF WE'RE LOGISTICALLY

PDF created with pdfFactory trial version www.pdffactory.com

1   PRECLUDED.  THE IDEA THAT THE FUNDS HAVE TO BE APPROVED AND

2   THE BUILD-OUT HAS TO OCCUR, IT WOULD BE WHIMSICAL TO SAY WE'RE

3   GOING TO TRY THIS CASE THIS YEAR IF THAT'S THE CASE.

4          WE'VE GOT A FELLOW THAT'S GOING TO COME INTO THE

5   CASE ON MONDAY, AND HE'S GOING TO WANT IMMEDIATE ACCESS.  BUT

6   IF THERE'S NO PLACE FOR HIM TO HAVE ACCESS, I DON'T KNOW HOW

7   WE'RE GOING TO POSSIBLY BE IN A POSITION WHERE MR. WILKES'S

8   NEW COUNSEL CAN BE READY, FOR EXAMPLE.

9          MR. FORGE:  YOUR HONOR, I OBVIOUSLY CAN'T SOLVE THAT

10  PROBLEM.  I CERTAINLY APPRECIATE MR. MAC DOUGALL'S PROBLEM.  I

11  UNDERSTAND THE COURT'S CONCERN.

12          THE REASON WHY I STOOD UP IS REGARDING THE TIMING

13  ISSUE, IS IT POSSIBLE, IF THE COURT CAN INQUIRE OF

14  MR. MAC DOUGALL, UNDERSTANDING THE DIFFICULTIES THEY'RE HAVING

15  ARRANGING FOR S.C.I.F. SPACE, WE'VE TALKED PREVIOUSLY ABOUT

16  THE SECTION 5 NOTICE.

17          THE ONLY REASON I'M ASKING IT NOW AS OPPOSED TO WHEN

18  MR. WILKES'S COUNSEL APPEARS IS IT MIGHT BE HELPFUL IN ORDER

19  TO CONFIRM MR. WILKES'S COUNSEL IS GOING TO BE AVAILABLE ON

20  THE DATES THAT MR. FOGGO'S COUNSEL IS FORESEEING BEING

21  PREPARED TO GO FORWARD AND THE COURT IS PREPARED TO GO FORWARD

22  -- IF WE'RE TALKING ABOUT SOMETHING IN THE NEXT COUPLE WEEKS,

23  WHICH IS NOT WHAT I'M GATHERING FROM MR. MAC DOUGALL'S

24  COMMENTS IN TERMS OF THEIR SECTION 5 NOTICE, THAT MIGHT BE A

25  PROBLEM.  IF IT'S GOING TO BE LATER, THEN THAT'S SOMETHING I

PDF created with pdfFactory trial version www.pdffactory.com

1    WOULD ASSUME MR. WILKES'S PROSPECTIVE COUNSEL IS GOING TO WANT

2    TO TAKE INTO CONSIDERATION IN MAKING HIS DECISION.

3              THE COURT:  MR. MAC DOUGALL, DO YOU WANT TO SPEAK TO

4    THAT?

5              I HAVE A GENERAL IMPRESSION, MR. FORGE, BEFORE

6    MR. MAC DOUGALL RESPONDS, THAT THESE SECTION 5 NOTICES ARE

7    GOING TO BE ON A ROLLING BASIS.  BECAUSE NECESSARILY UNTIL HE

8    CAN TALK TO PEOPLE AND KNOW EXACTLY WHAT HE'S GOT, HE CAN'T

9    MAKE AN ASSESSMENT OF WHAT HE NEEDS.

10             BUT MR. MAC DOUGALL, IF YOU WANT TO RESPOND, YOU

11   MAY.

12             MR. MAC DOUGALL:  YES, YOUR HONOR.  THE COURT IS

13   CORRECT.  WITHOUT GOING INTO DETAIL, THE COURT IS AWARE OF THE

14   MATTERS WE'VE RAISED AND THE POSITION THAT THE AGENCY HAS

15   TAKEN, THE CIA, WITH RESPECT TO CLEARANCES AND CERTAIN THINGS

16   WE NEED TO EVEN TALK TO SOME WITNESSES WHO ARE PREPARED TO

17   TALK TO US.  WE UNDERSTAND THERE IS A DESIRE TO MOVE THIS

18   THING FORWARD AND BEGIN THE CIPA PROCESS.  BUT UNTIL WE'VE

19   BEEN CLEARED INTO THOSE AREAS THAT ALLOW US TO TALK TO THE

20   WITNESSES WHO WILL PERMIT US TO FIRM UP OUR CIPA REQUESTS, I

21   DON'T KNOW HOW WE CAN FORECAST THAT THOSE WILL BE GRANTED.

22             THE COURT:  WELL, MR. MC PHERSON, WE'RE BACK TO YOU,

23   I THINK.  YOU'RE THE IMMEDIATE CONTACT TO THE AGENCY.  WE NEED

24   SOME HELP ON THIS.  I'M ASSUMING THAT LIKE THE DEFENDANTS, THE

25   AGENCY HAS AN INTEREST IN SEEING THIS MATTER RESOLVED AS

PDF created with pdfFactory trial version www.pdffactory.com

1    PROMPTLY AS JUSTICE PERMITS.  TO DO THAT, WE'RE GOING TO NEED

2    SOME S.C.I.F. SPACE.

3             AND I KNOW THAT IT WOULD PROBABLY BE IMPOSSIBLE TO

4    ASK YOU TO SPEAK FOR THEM.  BUT IF YOU COULD AT LEAST TELL ME

5    YOU'RE GOING TO GO BACK AND PRESENT THE PROBLEM TO THEM AND

6    ASK WHOEVER IS IN CHARGE OF SUCH THINGS TO TAKE ANOTHER LOOK

7    AT THIS AND SEE IF THEY CAN FIND SOME DEDICATED SPACE THAT

8    THEY CAN RESERVE FOR THIS CASE OR PREVAIL UPON SOMEONE,

9    ANOTHER AGENCY, WITH WHOM THEY MAY HAVE A GOOD RELATIONSHIP TO

10   LET US USE A S.C.I.F. THAT'S NOT BEING USED, SOMETHING LIKE

11   THAT.

12            MR. MC PHERSON:  I CAN CERTAINLY UNDERTAKE

13   INQUIRIES, YOUR HONOR.  I JUST CAN'T MAKE ANY REPRESENTATIONS

14   THAT I'LL BE ABLE TO SATISFY YOUR CONCERN.

15            THE COURT:  MR. LONDERGAN, YOU'VE BEEN VERY

16   HARD-WORKING ON THIS.  I APPRECIATE ALL YOUR EFFORTS.  I'M

17   GOING TO ASK YOU ALSO IF YOU WOULD REDOUBLE YOUR EFFORTS AND

18   MAYBE CALL IN SOME OLD FAVORS.  YOU'VE BEEN AT THIS FOR A

19   WHILE.

20            THE REPRESENTATION MR. MAC DOUGALL MAKES -- AND IT'S

21   BASED ON, I'M ASSUMING, ANECDOTAL INFORMATION THEY HAVE --

22   THAT THERE ARE S.C.I.F.'S THAT THEY BELIEVE ARE NOT BEING USED

23   AT THE PRESENT TIME, THAT'S WHAT THE SHAME WOULD BE; IF WE

24   HAVE ONE MAINTAINED BY SOME AGENCY OF GOVERNMENT AND

25   PRESUMABLY FUNDED BY TAXPAYER MONEY WHICH WE NEED FOR THIS

PDF created with pdfFactory trial version www.pdffactory.com

38

1    CASE TO MOVE ALONG.  I'D RATHER HAVE THEM LET GO OF THE

2    PROTOCOLS AND LET THESE FELLOWS USE THAT SPACE SO THEY CAN BE

3    READY TO TRY THIS CASE.  AGAIN, I'M NOT BLAMING THIS ON YOU.

4    I KNOW IT'S LARGELY OUT OF YOUR CONTROL AND YOU HAVE TO USE

5    YOUR BEST DIPLOMATIC EFFORTS TO EVEN MAKE INQUIRIES ABOUT

6    THIS.  BUT I'D ASK THAT YOU DO SO.

7          MR. LONDERGAN:  YOUR HONOR, MY TWO COLLEAGUES WHO

8    ARE ALSO NAMED IN THIS LITIGATION, FOGGO LITIGATION, I'VE

9    DISCUSSED THIS WITH THEM.  AND THEIR QUESTION IS IF

10   MR. MAC DOUGALL CAN BE SPECIFIC IN TERMS OF WHAT S.C.I.F.'S

11   AND WHAT LOCATIONS AND TO WHOM THEY BELONG, WE'D BE HAPPY TO

12   APPROACH THAT PARTICULAR FUNCTION OF GOVERNMENT.

13         THE COURT:  CAN YOU DO THAT, MR. MAC DOUGALL?

14   YOU'VE ALLUDED IN A COUPLE OF LETTERS I'VE RECEIVED FROM YOU

15   THAT YOU'RE AWARE THAT THERE IS -- AT LEAST YOU BELIEVE OR

16   HAVE BEEN TOLD THAT THERE'S S.C.I.F. SPACE AVAILABLE IN AND

17   AROUND D.C., EASTERN DISTRICT OF VIRGINIA.  CAN YOU MAYBE GIVE

18   MR. LONDERGAN SOME MORE SPECIFIC INFORMATION SO WE CAN FOLLOW

19   UP ON THAT?

20         MR. MAC DOUGALL:  WE CAN'T, YOUR HONOR.  THOSE

21   STATEMENTS ARE BASED UPON THE FACT WELL KNOWN IN THE COMMUNITY

22   THAT GOVERNMENT CONTRACTORS THAT REGULARLY RECEIVE TOP SECRET

23   SECURITY CLEARANCES IN ORDER TO DO THEIR WORK HAVE CERTIFIED

24   S.C.I.F.'S IN THEIR OFFICES.  SOMEWHERE WITHIN THE DEFENSE

25   DEPARTMENT PROBABLY, PERHAPS THE GSA, THERE'S AN OFFICE THAT

PDF created with pdfFactory trial version www.pdffactory.com

1    GOES AROUND AND CERTIFIES THAT THERE'S A STEEL PLATE AND IT'S

2    THE RIGHT GAUGE AND THERE'S A LOCK ON THE DOOR TO THEIR

3    SPECIFICATION.  THAT'S THE LIST THAT WE NEED.

4            WE DON'T WANT TO LEAN ON MR. LONDERGAN.  WE WILL GO

5    OUT -- IF WE HAVE A LIST OF CONTACTS, WE'LL GO OUT AND KNOCK

6    AT THEIR DOORS AND SEE UNDER WHAT TERMS WE COULD USE THOSE.

7    SO I DON'T HAVE A NAME OF CONTACTS THERE.  I CAN COME UP WITH

8    THE FEW THAT I'M SURE HAVE S.C.I.F. SPACE.  BUT THEY'VE GOT TO

9    GET INVENTORY IN THE GSA, IN THE DEFENSE DEPARTMENT, AND

10   PROBABLY THE JUSTICE DEPARTMENT OF S.C.I.F. CERTIFIED SPACE.

11           THE COURT:  THAT'S A GOOD POINT, MR. LONDERGAN.

12           IS THERE SUCH A LIST OR INVENTORY?

13           MR. LONDERGAN:  YOUR HONOR, IF THERE'S A LIST, IT

14   WOULD RELATE ONLY TO JUSTICE S.C.I.F.'S AND NOT THE CONTRACTOR

15   S.C.I.F.'S.

16           THE COURT:  WHAT ABOUT THE GSA?  APPARENTLY, THERE'S

17   SOME APPROVAL PROCESS THAT FACILITIES HAVE TO GO THROUGH.  I

18   WOULD THINK SOMEWHERE IN GOVERNMENT WE'VE GOT A MASTER LIST OF

19   THESE --

20           MR. LONDERGAN:  THE GSA IS NOT IN ANY KIND OF

21   APPROVAL LOOP IN TERMS OF S.C.I.F.'S, ALTHOUGH GSA HAS DONE --

22   HAS BEEN ABLE TO PROVIDE SPACE AND/OR BUILD OUT S.C.I.F.'S TO

23   GOVERNMENT REQUIREMENTS.

24           THE COURT:  WHO IS IN THE APPROVAL LOOP?  DOES IT

25   VARY FROM AGENCY TO AGENCY?

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

40

1           MR. LONDERGAN:  IT WOULD.  AND IT DEPENDS ON WHAT

2   PARTICULAR COMPARTMENTED MATERIAL WOULD BE ADDRESSED.

3           THE COURT:  DO YOU HAVE ANY CONTACTS OUTSIDE THE

4   JUSTICE DEPARTMENT AGENCIES?

5           MR. LONDERGAN:  NO, YOUR HONOR.  THAT'S WHY I MADE

6   THE EXAMPLE OF THE AIR FORCE ON A PARTICULAR LITIGATION.

7           THE COURT:  DO YOU KNOW OF OR DO YOU HAVE

8   COUNTERPARTS THAT HAVE CONTACTS OUTSIDE OF THE JUSTICE

9   DEPARTMENT?

10          MR. LONDERGAN:  MY TWO COLLEAGUES ON THE FOGGO CASE

11  HAVE WORKED MULTIPLE LITIGATIONS WITH OTHER AGENCIES OVER MANY

12  YEARS.  THEY JUST CAME UP EMPTY ON THE QUESTION.

13          THE COURT:  THEY LOOKED, TOO.

14          AND YOU'RE SAYING, NO, THERE WAS NO ROOM AT THE END,

15  HUH?

16          MR. LONDERGAN:  WE HAVE KNOWLEDGE OF NO S.C.I.F.

17  AVAILABLE, AND WE DON'T KNOW OF ANY OTHER PLACES TO LOOK THAT

18  WE HAVE NOT ALREADY LOOKED.  IF MR. MAC DOUGALL WANTED TO

19  HIMSELF OR HIS FIRM CONTACT A GOVERNMENT CONTRACTOR AND

20  APPROACH IT THAT WAY.  BUT I DON'T THINK WE SHOULD BE IN A

21  POSITION WHERE WE SHOULD BE APPROACHING CONTRACTORS AND ASKING

22  IF THEY HAVE S.C.I.F.'S  WERE I A CONTRACTOR, I DON'T THINK

23  I'D WANT TO GIVE THAT INFORMATION OUT.

24          THE COURT:  MR. MAC DOUGALL, I'LL CONTINUE TO PURSUE

25  THIS.  BUT I THINK WE PROBABLY NEED SOME MORE SPECIFIC

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

41

1    INFORMATION FROM YOU.  TO THE EXTENT YOU CAN GET IT OR HAVE

2    IT, IF YOU COULD FUNNEL THAT EITHER TO ME OR MR. LONDERGAN,

3    WE'LL FOLLOW UP ON THAT.  I'M ANXIOUS TO SECURE A FACILITY

4    WHERE YOU CAN CONDUCT THESE INTERVIEWS AND MOVE ON WITH YOUR

5    CASE PREPARATION.  AND I'LL DO WHATEVER I'M ABLE TO DO TO HELP

6    FACILITATE THAT.

7                MR. MAC DOUGALL:  YOUR HONOR, I THINK YOUR REQUEST

8    TO MR. MC PHERSON WOULD BE VERY HELPFUL.

9                THE COURT:  MR. MC PHERSON, BEFORE I LEAVE THAT

10   SUBJECT, IS THERE ANYTHING THAT YOU'RE AWARE OF -- IS THERE

11   ANY AVAILABILITY LOCALLY THAT THE AGENCY HAS, A S.C.I.F.

12   FACILITY?  BECAUSE I'M WORRIED NOW.  WE'VE GOT A FELLOW

13   COMING IN ON MONDAY THAT'S GOING TO UNDERTAKE TO REPRESENT

14   MR. WILKES.  I'M SURE HE'S GOING TO WANT TO LOOK AT THIS

15   MATERIAL QUICKLY.  I'M BEING TOLD THAT THERE'S NO PLACE

16   AVAILABLE HERE LOCALLY EITHER.

17               MR. MC PHERSON:  THERE'S A SHORTAGE WHERE THE AGENCY

18   IS ATTEMPTING TO LEASE OTHER FACILITIES BECAUSE THEY'RE

19   OVERSTAFFED IN THE EXISTING FACILITIES.  SO I'M NOT AWARE OF

20   ANY SWING SPACE OR SLACK SPACE THAT COULD BE DEDICATED TO THAT

21   USE.

22               MR. HALPERN:  IF I MAY, YOUR HONOR, AS FAR AS

23   MR. WILKES'S COUNSEL, I'M UNDER THE IMPRESSION THAT THERE IS A

24   FACILITY IN LOS ANGELES.

25               MR. MAC DOUGALL:  I'M HAVING A LITTLE DIFFICULTY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    HEARING.

2         THE COURT:  MR. HALPERN IS SPEAKING.  I'LL HAVE HIM

3    START AGAIN.

4         MR. HALPERN:  YOUR HONOR, IT'S MY IMPRESSION THAT

5    THERE IS S.C.I.F. SPACE IN LOS ANGELES THAT CAN BE USED BY

6    MR. WILKES'S COUNSEL PENDING THE BUILD-OUT OF THE ONE IN

7    SAN DIEGO.  SO THAT SHOULD NOT BE A PROBLEM.

8         THE COURT:  IT'S A LITTLE BIT OF A PROBLEM IF HE'S

9    GOT TO DRIVE TO LOS ANGELES TO DO PREPARATION ON A SAN DIEGO

10   CASE.

11        DO YOU HAVE ANY BETTER ESTIMATE, MR. HALPERN, OF HOW

12   LONG IT'S GOING TO TAKE TO GET THIS BUILD-OUT DONE HERE AND

13   READY TO GO?

14        MR. HALPERN:  I SPOKE TO THE HEAD OF GSA YESTERDAY,

15   YOUR HONOR.  IT LOOKS LIKE THEY'RE JUST WAITING FOR THE FINAL

16   APPROVAL.

17        THE COURT:  HOW LONG WILL IT TAKE ONCE THEY GET

18   THAT?

19        MR. HALPERN:  I CAN CHECK AND GET BACK TO THE COURT

20   WITH A REALISTIC ESTIMATE.  RIGHT NOW I'D JUST BE GUESSING.

21        THE COURT:  MR. MAC DOUGALL, THAT MAY BE SOME ANSWER

22   AS WELL.  IF IT HAPPENS QUICKER THAN MY EXPERIENCE WOULD TELL

23   ME, THEN YOU MAY HAVE TO GO TO PLAN B THAT YOU ARTICULATED.

24   IF WE HAVE DEDICATED SPACE OUT HERE, YOU MAY HAVE TO COME OUT

25   FOR PERIODS OF TIME AND LOOK AT IT HERE.  I KNOW THAT'S NOT

PDF created with pdfFactory trial version www.pdffactory.com

43

1    YOUR FIRST CHOICE, NOR IS IT MINE.  I'D LIKE TO FIND SPACE FOR

2    YOU THERE TO CONTINUE OUR PREPARATION ON THE CASE ON

3    MR. FOGGO'S BEHALF.

4         BUT THIS IS A PROBLEM THAT ALL COUNSEL SHOULD GIVE

5    GREATER THOUGHT TO AND ENERGY IN SOLVING BECAUSE I WANT TO GET

6    THIS CASE PROMPTLY TRIED.  ALL OF THAT PRESUPPOSES ACCESS TO

7    INFORMATION.  AND IF WE DON'T HAVE A FACILITY WHERE DEFENSE

8    COUNSEL CAN HAVE ACCESS TO INFORMATION, THEN IT'S GOING TO

9    THROW A MONKEY WRENCH INTO THE TRIAL SCHEDULE OF THIS CASE.

10        MR. MAC DOUGALL:  YOUR HONOR, MARK MAC DOUGALL.

11        IF I CAN INTERPOSE ONE MORE REQUEST FOR

12   MR. MC PHERSON.

13        IF I UNDERSTOOD CORRECTLY, MR. MC PHERSON SAID THAT

14   THE AGENCY WAS ATTEMPTING TO LEASE ADDITIONAL S.C.I.F. SPACE.

15   IF HE COULD POSSIBLY SHARE WITH US THE SOURCE OR THE

16   IDENTITIES OF LESSORS, WE'D BE HAPPY TO APPROACH THEM

17   OURSELVES AND SEE IF WE CAN FIND SPACE IN WASHINGTON.

18        THE COURT:  CAN YOU DO THAT, MR. MC PHERSON?  CAN

19   YOU CHECK AND MAYBE GET BACK TO MR. MAC DOUGALL JUST WITH

20   RESPECT TO LEADS FOR SUCH SPACE?

21        MR. MC PHERSON:  I'M TALKING ABOUT A CONSTRUCTION --

22   LONG-TERM CONSTRUCTION LEASING PLAN, WHICH I DON'T BEGIN TO

23   UNDERSTAND THE DETAILS OF.

24        THE COURT:  DO YOU KNOW OF ANY AVAILABILITY OF

25   SPACE -- AND I'M NOT -- BY "AVAILABILITY," I DON'T MEAN

PDF created with pdfFactory trial version www.pdffactory.com

44

1    IMMEDIATELY AVAILABLE.  BUT DO YOU KNOW OF ANY EXISTING

2    FACILITIES CLOSER THAN LOS ANGELES THAT THE CIA USES OR HAS

3    ACCESS TO?

4         MR. MC PHERSON:  WE HAVE ONLY OUR OWN CONTROLLED

5    FACILITIES AND OUR HEADQUARTERS IN THE NORTHERN VIRGINIA AREA.

6    FOR ALL THE CRIMINAL CASES, PRIMARILY ON ESPIONAGE AND

7    TERRORISM IN THE EASTERN DISTRICT OF VIRGINIA AND D.C., WE

8    RELY ON THE DEPARTMENT OF JUSTICE TO FIND SPACE FOR DEFENSE

9    COUNSEL.  IN THIS CASE, THERE'S A HEAVY DOCKET OF ESPIONAGE

10   AND TERRORISM CASES RIGHT NOW.

11        THE COURT:  WHO'S IN CHARGE, MR. HALPERN, AT THE

12   DEPARTMENT OF JUSTICE OF THESE SPACES?

13        MR. HALPERN:  YOUR HONOR, I WOULDN'T KNOW WHO THE

14   TEAM OFFICIAL AT THE DEPARTMENT IS.  I THINK MR. LONDERGAN

15   MIGHT BE AWARE OF THAT.

16        THE COURT:  DO YOU KNOW, MR. LONDERGAN, WHO THE

17   CONTACT PERSON IS FOR THESE SPACES AT THE DEPARTMENT OF

18   JUSTICE?

19        MR. LONDERGAN:  YOUR HONOR, IT'S THE ROUTE THAT

20   WE'VE ALREADY TRAVELED IN TERMS OF EXPLORING FOR THE

21   AVAILABILITY OF S.C.I.F.'S AND S.C.I.F. SPACE IN WASHINGTON,

22   D.C. FOR THESE PARTICULAR LITIGATIONS.

23        THE COURT:  YOU MEAN YOU'VE TALKED TO THIS PERSON AT

24   THE DEPARTMENT?

25        MR. LONDERGAN:  YES.  THE PERSON, I THINK, IS OUR

PDF created with pdfFactory trial version www.pdffactory.com

45

1    OFFICE.  SO IT'S MYSELF AND MY OTHER COLLEAGUES WHO ARE ON THE

2    FOGGO LITIGATION.  ONE OF THE THREE OF US HAS DONE EXCLUSIVE

3    LITIGATION -- CRIMINAL LITIGATION PRIMARILY IN EASTERN

4    VIRGINIA AND ALSO IN WASHINGTON, D.C. AND KNOWS EVERY S.C.I.F.

5    THAT'S EVER BEEN BUILT THERE FOR THE PAST 15, 20 YEARS.

6            THE COURT:  WELL, IT SEEMS TO ME OF THE PROBLEMS

7    THAT WE'VE ENCOUNTERED ON THIS CASE, THIS IS THE MOST

8    IMMEDIATE AND THE ONE THAT NEEDS TO HAVE AN ANSWER OR A

9    SOLUTION RIGHT AWAY.

10           ANY TIMETABLE I WOULD SET IN THIS CASE GOING FORWARD

11   WOULD PRESUME THAT COUNSEL HAS ACCESS TO WITNESSES AND

12   INFORMATION SO THEY CAN BE READY.  OTHERWISE, I CAN'T SET A

13   TRIAL.

14           MR. MAC DOUGALL:  YOUR HONOR --

15           THE COURT:  YOU'RE CUTTING OUT A LITTLE BIT.

16           MR. MAC DOUGALL:  I'M SORRY.

17           YOUR HONOR, IF WE COULD POSSIBLY ASK THE COURT TO

18   ASK MR. MC PHERSON IF THE WITNESSES THAT HAVE BEEN CLEARED

19   THROUGH THE TOUHY PROCESS OR THE CIA EMPLOYEES, IF WE COULD BE

20   PERMITTED TO INTERVIEW THEM AT LANGLEY SO THEY DON'T HAVE TO

21   LEAVE THEIR JOBS AND EITHER TRAVEL TO WASHINGTON OR TO SAN

22   DIEGO, THAT WOULD BE OF SOME CONSIDERABLE HELP TO US.  IT'S A

23   SHORT-TERM SOLUTION, BUT IT WOULD CERTAINLY EASE THE BURDEN ON

24   THOSE EMPLOYEES.  I CAN'T IMAGINE IT WOULD BE MORE THAN A FEW

25   HOURS THAT WOULD BE INVOLVED.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  THE VOLUME IS VERY, VERY HIGH.  IT'S

2     HARD TO HEAR.  I WAS ABLE TO UNDERSTAND MOST OF IT.

3          MR. MC PHERSON, THE REQUEST IS APPARENTLY THE AGENCY

4     HAS AGREED TO ALLOW COUNSEL TO INTERVIEW CERTAIN WITNESSES

5     THAT THEY DESIRE TO INTERVIEW.

6          CAN YOU MAKE AN INQUIRY WHETHER THEY CAN GET SPACE

7     TO DO THAT AT LANGLEY?  THEY'LL TRAVEL THERE IF THEY CAN BE

8     GIVEN A ROOM AND A SCHEDULE TO MEET WITH THESE FOLKS.  I KNOW,

9     AGAIN, YOU CAN'T MAKE A COMMITMENT TO DO THAT, BUT IT WOULD

10    SURE HELP OUT.

11         THE ALTERNATIVE IS WE TRY TO FIND A S.C.I.F. SPACE

12    SOMEWHERE IN THE D.C. AREA OR THEY HAVE TO COME, I SUPPOSE, TO

13    MR. LONDERGAN'S OFFICE THAT'S ALREADY BEING USED BY OTHERS OR

14    THEY HAVE TO WAIT AND THEN FACE THE POSSIBILITY OF THE FLYING

15    OUT HERE TO CONDUCT AN INTERVIEW.  NONE OF THAT MAKES MUCH

16    SENSE TO ME.

17         MR. MC PHERSON:  I DON'T UNDERSTAND THAT TO BE THE

18    PROBLEM.  RIGHT NOW IT'S UP TO THE WITNESSES WHETHER TO MEET

19    WITH DEFENSE COUNSEL.  THOSE WHO'VE CHOSEN TO DO SO ARE FREE

20    TO TRAVEL DOWNTOWN AND MEET WITH MR. MAC DOUGALL AND THE

21    ENTIRE TEAM IN THE SPACE PROVIDED BY MR. LONDERGAN.  I

22    UNDERSTAND THAT'S ALREADY BEEN GOING ON.

23         I UNDERSTAND THE DIFFICULTY IS THAT SPACE, THOUGH,

24    IS NOT DEDICATED.  SO THEY CAN'T CAMP OUT THERE, LEAVE ALL

25    THEIR DOCUMENTS OUT OVERNIGHT, AND THAT SORT OF THING.  SO I

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    UNDERSTAND THE PROBLEM TO BE THE AVAILABILITY OF WITNESSES.

2    WITNESSES ARE CERTAINLY FREE TO TRAVEL DOWNTOWN.  IT'S LESS

3    THAN TEN MILES AWAY.  THEY CAN MEET WITH MR. MAC DOUGALL

4    ANYTIME THAT ROOM IS AVAILABLE.  THERE ARE SCHEDULING ISSUES,

5    BUT THEY HAVE AVAILABLE -- I UNDERSTAND THEIR CONCERN TO BE

6    THEY CAN'T LEAVE IT DEDICATED TO THEIR LITIGATION PILES AND

7    THINGS THEY'D LIKE TO REVIEW.  I DON'T THINK IT'S A WITNESS

8    ISSUE.  I THINK IT'S A DOCUMENT ISSUE.

9         MR. MAC DOUGALL:  YOUR HONOR, THE QUESTION IS WE

10   HAVE WITNESSES WHO ARE CIA EMPLOYEES AT LANGLEY.  THEY'RE

11   WILLING TO TALK TO US.  WE WANT TO TALK TO THEM.  IT'S AN

12   IMPOSITION FOR THEM TO HAVE TO TRAVEL DOWNTOWN.  THE CIA HAS

13   ITS OWN S.C.I.F. RESOURCES.  I REQUESTED OF MR. MC PHERSON

14   "COULD WE HAVE A CONFERENCE ROOM FOR TWO HOURS AT THE EXISTING

15   CIA BUILDING IN LANGLEY?  WE'LL DO IT AT A TIME THAT'S

16   CONVENIENT FOR BOTH THE WITNESSES AND FOR THE SPACE AT

17   LANGLEY.  WE COULD DO THAT."  WHEN WE MADE THAT REQUEST, WE

18   WERE TOLD, NO.

19        THE COURT:  MR. MC PHERSON, I'M ASKING THAT YOU MAKE

20   THAT REQUEST.  IT SEEMS REASONABLE TO ME.

21        LOOK, I CAN'T BE THE ONLY ONE WITH THE BURDEN OF

22   FINDING A SUITABLE ARRANGEMENT -- MAKING SUITABLE ARRANGEMENTS

23   FOR THEM TO BE PREPARED FOR TRIAL.  THE GOVERNMENT HAS TO

24   UNDERTAKE PART OF THIS.  THE CIA, WHOSE INTEREST IS APPARENTLY

25   BEING VINDICATED IN THIS PROSECUTION, NEEDS TO LEND A HAND AS

PDF created with pdfFactory trial version www.pdffactory.com

48

1    WELL.

2              YOU'VE BEEN VERY COOPERATIVE, MR. MC PHERSON.  I

3    UNDERSTAND THE CONSTRAINTS THAT YOU ARE UNDER.  YOU CAN'T

4    SPEAK FOR THE AGENCY WITHOUT GETTING SOMEONE THERE TO CHECK

5    OFF.  BUT IT'S AN AGENCY THAT'S ABOUT SECRECY.  THEY HAVE A

6    LOT OF AVAILABLE SECRET ROOMS THERE THAT MEET THE CRITERIA

7    THAT ARE REQUIRED FOR A CASE LIKE THIS.  IT SEEMS LIKE A

8    FAIRLY SIMPLE THING FOR SOMEONE TO SAY, "ALL RIGHT.  WE'LL

9    PICK A TIME IN ONE OF THESE MANY ROOMS WE HAVE THAT'S

10   CONVENIENT FOR US."

11             THE DEFENSE CONCEDES MR. FOGGO WILL NOT BE PRESENT.

12   HE WON'T HAVE TO COME ONTO THE GROUNDS THERE.  THEY'LL GO AND

13   TRAVEL THERE AND MEET WITH WITNESSES WHO, AFTER ALL, WORK

14   THERE.  THAT SEEMS EMINENTLY REASONABLE TO ME.

15             WILL YOU RUN THAT REQUEST UP THE FLAG POLE FOR ME?

16             MR. MC PHERSON:  I'LL BE GLAD TO, YOUR HONOR.  BUT I

17   JUST WANT TO RESTATE NOW THE IMPOSITION THAT MR. MAC DOUGALL

18   DESCRIBES IS THAT IT'S AN IMPOSITION FOR CIA EMPLOYEES TO

19   TRAVEL FROM LANGLEY, VIRGINIA LESS THAN TEN MILES TO DOWNTOWN

20   WASHINGTON, D.C.  IF THAT'S THE PROBLEM THAT WE'RE TRYING TO

21   SOLVE --

22             THE COURT:  THAT IS.  THERE'S A NUMBER -- IT'S

23   MULTIPLIED BY WHATEVER NUMBER OF WITNESSES HE HAS THAT HAVE

24   INDICATED A WILLINGNESS TO SPEAK AND WHOSE DUTY STATION IS AT

25   LANGLEY.  IT WOULD SEEM TO ME THE CIA WOULD SAY, "YEAH, THIS

PDF created with pdfFactory trial version www.pdffactory.com

1    IS BETTER.  WE WON'T INCONVENIENCE OUR EMPLOYEES WHO, AFTER

2    ALL, HAVE TO TAKE LEAVE TIME TO COME DOWN TO TALK TO THEM.

3    THEY'LL COME HERE, WE'LL MAKE A ROOM AVAILABLE, AND LET THESE

4    FELLOWS INTERVIEW THESE WILLING WITNESSES."

5            AGAIN, I'M APPROACHING THIS WITH THE BELIEF THAT

6    BOTH THE GOVERNMENT, THE U.S. ATTORNEY'S OFFICE, AND THE CIA

7    WANTS TO MAKE THIS PROCESS GO QUICKLY.  SO YES, THAT'S THE

8    ISSUE.  IF YOU'LL RUN THAT UP THE FLAG POLE, I'D APPRECIATE

9    THAT.

10           MR. MC PHERSON:  I WILL, YOUR HONOR.

11           THE COURT:  MR. MAC DOUGALL, IS THERE ANYTHING ELSE?

12           MR. MAC DOUGALL:  I'LL ASK IF MR. TESLIK HAS

13   ANYTHING.

14           MR. TESLIK:  THIS IS RANDY TESLIK.

15           I'D LIKE TO ADD ONE FACT.

16           AM I COMING THROUGH?

17           THE COURT:  YES, YOU ARE, BETTER.

18           MR. TESLIK:  I'D LIKE TO JUST ADD ONE FACT.

19           IT'S OUR UNDERSTANDING THAT THE CIA MADE A S.C.I.F.

20   SPACE AVAILABLE TO THE FBI WHEN IT WAS INVESTIGATING THIS

21   CASE.  THEY INTERVIEWED SOME OF THE SAME WITNESSES WHO WE'RE

22   SEEKING TO INTERVIEW.  SO WE THINK THAT WHILE ACCOMMODATIONS

23   COULD BE MADE TO THE GOVERNMENT, IT WOULD ONLY BE FAIR AND

24   REASONABLE THAT THE SAME ACCOMMODATIONS BE MADE FOR THE

25   DEFENSE.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I'VE ASKED FOR THAT, MR. TESLIK, AND I

2     HOPE MR. MC PHERSON UNDERSTANDS THAT I WANT HIM TO MAKE THAT

3     INQUIRY AND MAKE IT AN INQUIRY ON BEHALF OF THE COURT.  THIS

4     REALLY IS A DISTRACTION AT THIS POINT.  IT OUGHT TO BE

5     SOMETHING THAT'S SOLVED IN THE FIRST INSTANCE, I WOULD THINK,

6     BY THE GOVERNMENT WHO HAS CONTROL OF THESE FACILITIES.  BUT

7     I'VE DONE WHAT I CAN DO AT THIS POINT.

8          ANYTHING ELSE FROM ANY DEFENSE COUNSEL?

9          MR. MAC DOUGALL:  NO, YOUR HONOR.

10          THE COURT:  MR. LONDERGAN HAS ONE MORE MATTER.

11          GO AHEAD, MR. LONDERGAN.

12          MR. LONDERGAN:  YOUR HONOR, IF I MAY.

13          BEFORE ANY INTERVIEWS TAKE PLACE DOWNTOWN IN THE

14     S.C.I.F. CONFERENCE ROOM, WE NEED TO BE ADVISED OF THE

15     SECURITY CLEARANCE STATUS OF THAT PARTICULAR INDIVIDUAL.

16          THE COURT:  OF THE WITNESS?

17          MR. LONDERGAN:  YES.

18          TO DATE, AS FAR AS I KNOW, WE'VE NEVER BEEN ADVISED

19     OF SECURITY CLEARANCE STATUS OF ANY OF THE POTENTIAL

20     WITNESSES.  ERGO, AS FAR AS I KNOW, NO POTENTIAL WITNESSES

21     HAVE BEEN INTERVIEWED IN THAT ROOM FROM THE AGENCY.

22          THE COURT:  MR. HALPERN, WILL YOU LOOK INTO THIS?

23     THIS IS GOING TO BE A BIG PROBLEM.  IT SEEMS TO ME TO BE AN

24     UNNECESSARY PROBLEM.  THE AGENCY'S OF GOVERNMENT, PARTICULARLY

25     THOSE UNDER THE UMBRELLA OF JUSTICE DEPARTMENT, NEED TO

PDF created with pdfFactory trial version www.pdffactory.com

1      COOPERATE A LITTLE BIT SO WE CAN GET THIS GOING.  THIS IS A

2      SILLY THING FOR US TO BE AT AN IMPASSE ON.

3              MR. HALPERN:  YOUR HONOR, I'LL LOOK INTO IT.  WE'RE

4      GOING TO BE BACK HERE ON AUGUST 13TH AT 9:30.  I'LL REPORT TO

5      THE COURT AT THAT TIME.

6              THE COURT:  WELL, I'M HOPING WITH THOSE ASSURANCES

7      WE CAN SOLVE THIS PROBLEM AND KEEP MOVING FORWARD.

8              ANYTHING ELSE FROM ANY COUNSEL?

9              WE'RE IN RECESS.

10             HOLD ON.

11             MR. FORGE:  MR. MC PHERSON ASKED ME TO INQUIRE OF

12     YOUR HONOR IS THERE -- WE'RE NOT PARTIES TO OR AT LEAST NOT

13     INCLUDED TO WHATEVER PROTECTIVE ORDER ISSUES THERE MAY BE

14     SIMMERING BETWEEN COUNSEL FOR MR. FOGGO AND THE OFFICE OF

15     GENERAL COUNSEL OF THE CIA.  OBVIOUSLY, MR. MC PHERSON IS

16     HERE.  WE'RE HAPPY TO STEP OUT OR IF YOU NEED TO GO TO

17     CHAMBERS OR NEED TO GO TO THE S.C.I.F.

18             THE COURT:  I DON'T NEED TO BE VERY SPECIFIC.

19             MR. MC PHERSON, THERE'S BEEN REPRESENTATIONS -- I'M

20     NOT SURE WHETHER IT WAS BY YOU OR SOMEONE ELSE -- THAT CERTAIN

21     MATERIALS WOULD BE FORTHCOMING, CERTAIN PERMISSIONS WOULD BE

22     GRANTED.  THEY'VE BEEN DELAYED FOR ONE REASON OR ANOTHER.

23     THEY'RE OUTLINED IN A LETTER, A COPY OF WHICH MAY HAVE COME TO

24     YOU.  IT WAS DIRECTED TO ME.  IT OUTLINED THE PROBLEM.

25             AGAIN, I WANT THIS THING TO WORK SMOOTHLY, THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    PREPARATION PART.  THE CONFLICTS I'M AWARE ARE GOING TO COME

2    UP DURING THE COURSE OF TRIAL IN THE CASE.  BUT I WANT TO GET

3    US THERE.  I WANT TO GET US TO THE DOORSTEP SO THAT THE

4    DIFFERENCES BETWEEN THE PARTIES CAN BE AIRED OUT AND THE JURY

5    WILL COME TO A DECISION ON THIS.

6         THEY'RE HAVING SOME PROBLEMS -- MR. MAC DOUGALL, ON

7    BEHALF OF MR. FOGGO AND THE DEFENSE TEAM FOR MR. FOGGO, ARE

8    HAVING SOME PROBLEMS FOLLOWING THROUGH OR HAVING THE CIA

9    FOLLOW THROUGH ON CERTAIN REPRESENTATIONS.  IT'S SLOW GOING IN

10   THEIR -- MY IMPRESSION IS THAT THEY'RE SAYING, "LOOK, THIS

11   ISN'T GOING TO BE A PROBLEM.  GIVE US TIME TO WORK ON IT.  LET

12   ME MAKE THE INQUIRIES."  AND THEN IT SEEMS THAT SOMEBODY IS

13   MUDDLING IT LATER ON THAT'S NOT A PARTY TO THESE PROCEEDINGS

14   IN SAYING "WELL, NO, I DIDN'T AGREE TO THAT.  WHY HAS THAT

15   BEEN AGREED TO?" AND SECOND-GUESSING ALL THE PROGRESS THAT'S

16   BEEN MADE.

17        MR. MC PHERSON:  I THINK THAT'S A

18   MISCHARACTERIZATION OF THE RECORD, YOUR HONOR.  I WANT TO

19   POINT OUT, FIRST OF ALL, IF MR. MAC DOUGALL HAS FILED ANYTHING

20   WITH THE COURT, THE CIA HAS NOT HAD ACCESS TO IT.  SO WHETHER

21   IT'S ON THE LAW OR IT'S ON THE FACTS RELATED TO THIS DISPUTE,

22   I'M SHADOW-BOXING BECAUSE I HAVE NOTHING TO RESPOND TO HERE.

23        WE DID FILE A STATUS REPORT WITH THE COURT LAST WEEK

24   WITH A COPY OF MY 1 AUGUST 2007 LETTER.  THERE IS NO DELAY

25   HERE.  THE AGENCY HAS MADE A DECISION ON MR. FOGGO'S TOUHY

PDF created with pdfFactory trial version www.pdffactory.com

1    REQUEST.  I CAN'T GO INTO THE DETAIL HERE BECAUSE IT'S COVERED

2    BY THE COURT'S PROTECTIVE ORDER.  BUT IN SUMMARY, IN THE

3    STATUS REPORT, I REPORTED THAT THE AGENCY HAD GRANTED THE

4    REQUEST IN PART AND DENIED THE REQUEST IN PART.

5            THERE IS NO DELAY.  IF MR. MAC DOUGALL AND MR. FOGGO

6    ARE DISSATISFIED WITH THAT RESPONSE, THE SUPREME COURT AND

7    9TH CIRCUIT LAW IS CLEAR ON THIS ISSUE.  THEY CAN INSTITUTE A

8    CIVIL ACTION UNDER THE ADMINISTRATIVE PROCEDURES ACT.  THAT'S

9    THEIR CHOICE.  IF THEY DON'T WANT TO GO THAT ROUTE AND THEY

10   WANT TO BRING THE ISSUE TO A HEAD SOONER AND NOT FILE AN APA

11   ACTION, THEY CAN MAKE A PROGRESS DISCOVERY DEMAND UPON THE

12   GOVERNMENT.

13           BUT RIGHT NOW THROUGH THE COURT'S PROTECTIVE ORDER,

14   THE GOVERNMENT, THROUGH THE U.S. ATTORNEY'S OFFICE, IS NOT A

15   PARTY TO THESE PROCEEDINGS AND IS NOT IN A POSITION TO

16   RESPOND.  SO THE BALL IS IN DEFENSE COUNSELS' COURT WHETHER

17   THEY CHOOSE TO CHALLENGE THE AGENCY'S TOUHY DECISION UNDER

18   PROPER ADMINISTRATIVE PROCEDURES ACT, A CIVIL ACTION, WHICH

19   THIS COURT OR ANY COURT OF COMPETENT JURISDICTION COULD REVIEW

20   OR ARBITRATE OR THEY CAN BRING THE ISSUE TO A HEAD THROUGH A

21   DISCOVERY DEMAND OR THROUGH THE CIPA PROCEEDINGS.

22           MR. MAC DOUGALL:  YOUR HONOR, IF I MAY, IF THE COURT

23   WANTS TO HEAR AND IS OPEN, I'LL BE VERY LIMITED IN MY

24   RESPONSE.

25           I DO HAVE THE VOLUME DOWN AS LOW AS IT WILL GO.

PDF created with pdfFactory trial version www.pdffactory.com

54

1          YOUR HONOR, IN ORDER FOR US TO PREPARE OUR CASE, WE

2     HAVE TO BE ABLE TO INTERVIEW WITNESSES WHO ARE WILLING TO TALK

3     TO US.  THOSE WITNESSES HAVE SECURITY CLEARANCES IN THE

4     SPECIFIC COMPARTMENTS.  LAWYERS AND SUPPORT STAFF HAVE BEEN

5     GIVEN TOP SECRET SECURITY CLEARANCES.  ALL WE ASK FOR IS

6     ACCESS TO SPECIFIC COMPARTMENTS SO THAT WE CAN INTERVIEW

7     WITNESSES WHO ARE WILLING TO SPEAK TO US WHO CAN'T SPEAK TO US

8     UNTIL WE'RE CLEARED INTO THOSE COMPARTMENTS.

9          THE ADMINISTRATIVE PROCEDURES ACT HAS NOTHING TO DO

10    WITH THIS.  THIS IS NOT A DISCOVERY REQUEST.  IT'S SIMPLY A

11    REQUEST TO BE LET INTO A COMPARTMENT SO WHEN WE SIT DOWN WITH

12    WITNESS X AND BEGIN ASKING WITNESS X QUESTIONS, THE WITNESS

13    WILL ASK US IF WE'RE CLEARED INTO A COMPARTMENT, AND WE HAVE

14    TO BE ABLE TO SAY "YES" AND CONFIRM THAT WITH MR. LONDERGAN.

15    THE CIA HAS NOT GIVEN US ACCESS TO THE COMPARTMENT.  THAT'S

16    THE PROBLEM.

17          MR. MC PHERSON:  THERE'S NOT MUCH MORE I CAN SAY ON

18    THE RECORD HERE EXCEPT WE GRANTED THE REQUEST IN PART.  IF

19    YOU'LL REFER TO MY LETTER, YOUR HONOR, YOU'LL SEE WHICH PARTS

20    WE GRANTED, WHICH PARTS WE HAVE DENIED.  YOU'LL SEE THE BASIS

21    FOR THAT DECISION.  YOU'LL SEE THAT THE LAW IS CLEAR THAT IF

22    THEY'RE DISSATISFIED WITH THAT DECISION, THEY CAN SEEK A

23    JUDICIAL REVIEW THROUGH THE ADMINISTRATIVE PROCEDURES ACT, IN

24    WHICH CASE THIS COURT OR ANY COURT REVIEWING THE ACTION WILL

25    HAVE A LEGAL STANDARD OF REVIEW UNDER SECTION 706 OF THE APA

PDF created with pdfFactory trial version www.pdffactory.com

1  TO SEE IF IT'S ABUSED ITS DISCRETION BY ACTING ARBITRARILY AND

2  CAPRICIOUSLY.

3          BUT IT'S NOT A DISCOVERY DEMAND.  IT'S NOT A

4  SUBPOENA.  IT'S A TENTATIVE UNDER THE TOUHY REGULATIONS.  IT'S

5  A PROPER EXERCISE OF THE AGENCY'S DISCRETION.  THE AGENCY IS

6  TAKING INTO ACCOUNT THE INDICTMENT IN THIS CASE.  THE

7  DISCOVERY THAT THE GOVERNMENT HAS IDENTIFIED SHOULD BE

8  PROVIDED TO THE DEFENSE.  IT'S EXERCISED ITS DISCRETION TO

9  DETERMINE WHETHER THIS INFORMATION IS THE SUBJECT OF A PROPER

10  TOUHY DEMAND.  AND WE'VE GRANTED THAT IN LARGE PART AND DENIED

11  IT IN NARROW PART.  THE DEFENSE MAY DISPUTE THAT.  THERE'S AN

12  APPROPRIATE MECHANISM TO CHALLENGE THAT.  THAT'S THROUGH THE

13  APA.

14          MR. MAC DOUGALL:  WELL --

15          THE COURT:  MR. MAC DOUGALL, YOU SENT ME A LETTER ON

16  JULY 30TH THAT LISTED TWO ISSUES, ONE OF WHICH I'VE ADDRESSED,

17  WHICH IS THE S.C.I.F. ACCESS ISSUES.  I HAVE NOT ADDRESSED THE

18  OTHER ISSUE, WHICH I THINK WE'VE PROBABLY SAID ENOUGH AT THIS

19  POINT ABOUT THAT.  BUT THERE WAS A PORTION OF YOUR LETTER ON

20  PAGE 2 HAVING TO DO WITH THE COURT'S PROTECTIVE ORDER ABOUT

21  HOW THEORIES AND OFFERS OF PROOF WOULD NOT BE TRANSMITTED.

22          HAS THAT BEEN RESOLVED?

23          MR. MAC DOUGALL:  WELL, I DON'T BELIEVE IT HAS.

24  SPECIFICALLY AT THE HEARING LAST WEEK, A DAY LATER WE

25  RECEIVED WHAT MR. LONDERGAN'S OFFICE PROMISED, WHICH HE

PDF created with pdfFactory trial version www.pdffactory.com

1    SUBSEQUENTLY FILED WITH THE COURT.  WE UNDERSTAND HIS NOTICE

2    CORRECTLY DID NOT BIND THE GOVERNMENT.  THAT LETTER

3    ARTICULATES HIS DEGREE OF THE APA BEING THE SOLUTION HERE.

4    AND ESSENTIALLY IF MR. MC PHERSON HAS HIS WAY, WE WILL HAVE TO

5    FILE A SEPARATE LAWSUIT IN ORDER TO TALK TO WITNESSES AND HAVE

6    THAT LAWSUIT ADJUDICATED THROUGH APPEAL, WHICH WOULD GROSSLY

7    STALL THE PROCESS OF TRYING THIS CASE ANYTIME SOON.

8          I'M WOULDN'T GIVE THE GOVERNMENT ANY FURTHER DETAIL

9    BECAUSE OF THE DEFENSE THEORIES THAT ARE INVOLVED.  BUT IF

10    MR. MC PHERSON, BY ADMINISTRATIVE ACTION, PURPORTS TO GAG

11    WITNESSES AND WITNESSES WHO ARE PREPARED TO TALK WITH US, I

12    DON'T KNOW IF THAT CAN STAND UNDER ANY SCRUTINY.  I THINK WE

13    COULD LITIGATE THAT THROUGH A CIVIL LAWSUIT IN ORDER TO TALK

14    TO WILLING WITNESSES.

15          THE COURT:  THIS IS --

16          MR. MC PHERSON:  THE LAW PROVIDES AN ALTERNATE

17    METHOD TO RESOLUTION, AND THAT IS TO MAKE A PROPER DISCOVERY

18    DEMAND WITH NOTICE TO THE GOVERNMENT AND LET THE COURT RESOLVE

19    IT UNDER RULE 16 AND THE OTHER RULES OF CRIMINAL PROCEDURE AND

20    THE GOVERNMENT'S DISCOVERY OBLIGATIONS.  BUT THE DEFENSE CAN'T

21    HAVE THEIR CAKE AND EAT IT, TOO, AND HAVE THIS RESOLVED --

22    ATTEMPT TO HAVE IT RESOLVED BY THE COURT ON AN AD HOC BASIS AS

23    IF IT RELATES TO SOME ADEQUATE REPRESENTATION FOR MATERIAL FOR

24    THE DEFENSE STANDARD BY NOT INCLUDING THE GOVERNMENT IN THE

25    PROCEEDINGS.  IT'S THEIR CHOICE WHETHER TO PROCEED UNDER THE

PDF created with pdfFactory trial version www.pdffactory.com

 1    TOUHY OR THE FEDERAL RULES.

 2            THE COURT:  IT'S NOT THAT SIMPLE, WITH ALL DUE

 3    RESPECT.  IT JUST ISN'T THAT SIMPLE.  THEY HAVE TO ARTICULATE

 4    IN ORDER TO GET ACCESS TO THE INFORMATION WHAT THEIR THEORY OF

 5    RELEVANCE IS SO THAT YOU CAN EVALUATE THAT AND MAKE SURE THAT

 6    IT'S NOT JUST A FLIGHT OF FANCY ON THEIR PART.  THEY DON'T

 7    WANT THAT INFORMATION ON THEORY OF RELEVANCE MADE KNOWN TO

 8    GOVERNMENT PROSECUTORS.

 9            I THOUGHT WE'D COVERED THIS GROUND.  I THOUGHT THAT

10    WE HAD ERECTED A WALL WHERE CIA THROUGH ITS COUNSEL WOULD SAY,

11    "OKAY.  THIS ISN'T JUST A FRIVOLOUS REQUEST.  IT SOUNDS -- WE

12    UNDERSTAND WHY THEY MIGHT WANT THIS INFORMATION.  SO WE'LL

13    TREAT THE REQUEST RESPECTFULLY AND SERIOUSLY AND MAKE A

14    DECISION ON THE MERITS."

15            NONE OF THAT INVOLVES CONSULTATION WITH GOVERNMENT

16    COUNSEL TO SEE IF THEY AGREE WITH IT.  THAT'S THE PROBLEM THAT

17    I'M HAVING.

18            MR. MC PHERSON:  THAT'S EXACTLY WHAT THE AGENCY HAS

19    DONE.

20            SO THE QUESTION BEFORE THE COURT IS AFTER THAT IS

21    DONE AND THERE'S STILL A DISAGREEMENT BETWEEN THE CIA AND

22    MR. FOGGO, HOW DOES THAT GET RESOLVED?

23            THE COURT:  WELL, THEN I AGREE WITH YOU.  THAT GETS

24    RESOLVED THROUGH YOUR ADMINISTRATIVE PROCEEDINGS.

25            MR. MC PHERSON:  IT'S DONE.  WE'VE SAID, "HERE'S OUR

PDF created with pdfFactory trial version www.pdffactory.com

58

1    DECISION.  YOUR REQUEST IS GRANTED LARGELY IN PART AND DENIED

2    IN NARROW PART."  THAT'S THE HEART OF THE DISPUTE.

3          HOW DOES THAT GET JUDICIALLY RESOLVED?  DOES IT GET

4    RESOLVED THROUGH RULE 16 WHERE IT'S NOT A PROPER DISCOVERY

5    REQUEST OR DOES IT GET RESOLVED THROUGH THE TOUHY PROCEDURES,

6    WHICH ARE LEGALLY BINDING REGULATIONS, PROPERLY PASSED UNDER 5

7    U.S. CODE 301?

8          THE COURT:  MY SENSE IS THROUGH THE LATTER.  THAT'S

9    THE WAY IT HAS TO BE BECAUSE I CAN'T HAVE A ONE-SIDED

10   DISCOVERY DISPUTE WHERE THE GOVERNMENT DOESN'T KNOW WHAT'S

11   GOING ON.  SO THAT NECESSARILY MEANS THEY'RE GOING TO HAVE TO

12   GO THROUGH THE ADMINISTRATIVE PROCEDURE.  THEY DISAGREE WITH

13   THAT.  BUT THE IMPRESSION I GOT FROM THE LETTER --

14         WERE YOU COPIED ON THE LETTER?

15         MR. MC PHERSON:  THE LETTER FROM MR. MAC DOUGALL?

16         THE COURT:  YES.

17         MR. MC PHERSON:  NO, YOUR HONOR.  I HAVE NOT SEEN

18   IT.

19         THE COURT:  MR. MAC DOUGALL, THESE ARE MATTERS --

20         MR. MC PHERSON:  WHICH IS PART OF THE PROBLEM HERE.

21   FIRST THE GOVERNMENT IS CARVED OUT FROM THE DISCOVERY DEMAND.

22   NOW THE CIA IS CARVED OUT FROM THE DISCOVERY DEMAND.  SO WE'RE

23   BOTH SHADOW-BOXING.

24         THE COURT:  IT'S NOT MY INTENT TO HAVE YOU CARVED

25   OUT ON THIS SINCE YOU SPEAK FOR THE AGENCY HERE IN THIS COURT.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

59

1          MR. MAC DOUGALL, IS THIS A MATTER THAT'S MORE
2     APPROPRIATELY COVERED ON WEDNESDAY, IN YOUR JUDGMENT?
3          MR. MAC DOUGALL: YES, YOUR HONOR. AND I THINK
4     THROUGH THE COURT CLERK, WE HAD ARRANGED FOR AN EX PARTE
5     CONFERENCE AT THIS HEARING.
6          THE COURT: OKAY. SHOULD WE HAVE COUNSEL FOR THE
7     CIA HERE, IN YOUR JUDGMENT?
8          MR. MAC DOUGALL: I DON'T THINK WE HAVE ANY
9     OBJECTION TO THAT, YOUR HONOR, AS LONG AS IT'S DONE IN
10    CHAMBERS OR IN AN ANONYMOUS FORM.
11         THE COURT: ARE YOU AVAILABLE ON WEDNESDAY AT 10:00?
12         MR. MC PHERSON: I'M AVAILABLE, YOUR HONOR. BUT I
13    WOULD SUGGEST THERE'S NO REASON WHY THE LEGAL ISSUES CAN'T BE
14    BRIEFED AND PUBLICLY FILED.
15         MR. MAC DOUGALL: YOUR HONOR, AS I'VE SAID, WE
16    DISAGREE FUNDAMENTALLY AT EVERY LEVEL WITH MR. MC PHERSON'S
17    PREMISE OF FILING AN AGENCY ACTION. THIS IS SIMPLY A QUESTION
18    FOR THE PEOPLE ON THE DEFENSE SIDE WHO HAVE TOP SECRET
19    SECURITY CLEARANCES ARE ABLE TO TALK TO AGENCY EMPLOYEES WHO
20    ALSO HAVE TOP SECRET SECURITY CLEARANCES ABOUT SPECIFIC
21    ISSUES.
22         I DON'T BELIEVE THERE'S ANY PRECEDENT TO THAT FACT
23    HAVING BEEN ADJUDICATED. WE HAVE TO GO THROUGH THIS WITH
24    THESE WITNESSES BECAUSE, AS THE COURT KNOWS FROM HAVING BEEN A
25    PROSECUTOR AND PRACTICING, AFTER YOU INTERVIEW ONE WITNESS,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    YOU FIND THERE ARE THINGS THAT YOU WANT TO KNOW FROM ANOTHER

2    WITNESS.  THE PROSPECT OF FILING ADMINISTRATIVE PROCEDURE ACT

3    ACTIONS OVER AND OVER AGAIN IS UNIMAGINABLE.  WE'RE NOT

4    TALKING ABOUT DISCLOSURE AND INFORMATION OTHER THAN A

5    CONVERSATION WITH A WITNESS.  I THINK THE CIA HAS TO DO THAT.

6          THE COURT:  I'LL -- MR. MAC DOUGALL, I THINK I'LL

7    HEAR FROM YOU FURTHER ON THAT EX PARTE ON WEDNESDAY.  I'M

8    BUFFETED, I HAVE TO TELL YOU, A LITTLE BIT BECAUSE IF THERE IS

9    A DISPUTE, I'M BEING TOLD TODAY THAT THEY'VE MADE A FINAL

10   DECISION AFTER CONSIDERATION OF YOUR OPINION.  THEY'RE TRYING

11   TO BE FAITHFUL TO THE ORDER I'VE GIVEN THEM NOT TO DISCUSS ANY

12   OF THE PROFFERS WITH THE U.S. PROSECUTORS.

13         AND THEY'RE NOT IN A POSITION, AT LEAST IN FRONT OF

14   ME, TO COME IN AND ARGUE ABOUT ISSUES THAT MIGHT AFFECT THE

15   PROSECUTOR'S INTEREST IN THE CASE.  THEY CERTAINLY ARE IN A

16   POSITION TO TELL ME WHY, FROM AN INSTITUTIONAL STANDPOINT, THE

17   CIA DOESN'T WANT TO TURN OVER CERTAIN INFORMATION.

18         BUT I'M NOT SURE I'M THE RIGHT FORUM FOR THAT.  IT

19   SOUNDS LIKE TO ME THERE'S ALREADY A PROCEDURE SET UP FOR THAT

20   WHEN THERE'S DISAGREEMENT WITH THE AGENCY DECISION AND THAT

21   THAT'S NOT WITHIN MY PORTFOLIO.  I'LL HEAR FURTHER FROM YOU ON

22   WEDNESDAY.

23         MAYBE, MR. MC PHERSON, YOU'LL BE AVAILABLE

24   TELEPHONICALLY.  I DON'T WANT TO TROUBLE YOU TO --

25         MR. MC PHERSON:  I'LL BE AVAILABLE, YOUR HONOR.

PDF created with pdfFactory trial version www.pdffactory.com

1         THE COURT:  OKAY.

2         MR. FORGE:  I APOLOGIZE FOR BELABORING THIS, BUT

3    THERE'S A COUPLE POINTS THAT ARE MAKING US A LITTLE

4    UNCOMFORTABLE.

5         NUMBER ONE, WE DO HAVE A LOCAL RULE PROHIBITING

6    SENDING LETTERS TO THE COURT.  AND ALSO, THERE ARE RULES

7    GOVERNING EX PARTE COMMUNICATIONS.  I THINK IT'S ONLY

8    APPROPRIATE THAT -- AND WE HAVE IN CAMERA FILINGS IN MANY

9    CASES HERE.  BUT THERE SHOULD BE A FORMAL FILING.  THESE ARE

10   ISSUES THAT COULD ARISE ON APPEAL.  AND I'M VERY UNCOMFORTABLE

11   HEARING THAT DESPITE THE PROTECTIONS YOUR HONOR SET UP, THE

12   CIA IS NOT EVEN BEING INCLUDED ON THESE COMMUNICATIONS.

13        AND RATHER THAN LETTING THIS GO ANY FURTHER, I WOULD

14   ASK THE COURT TO REMIND MR. MAC DOUGALL OF THE LOCAL RULES.

15   HE'S MAKING ACTUAL LEGAL FILINGS.

16        THE COURT:  THE SITUATION IS DELICATE, THOUGH,

17   BECAUSE HE'S IN A POSITION WHERE HE DOESN'T WANT TO TELL YOU

18   AND THE OTHER PROSECUTORS WHAT HIS OFFERS OF PROOF ARE.

19   THAT'S COVERED BY THE PROTECTIVE ORDER.  HIS VIEW IS -- AND I

20   DON'T KNOW WHETHER THIS IS CORRECT OR NOT.  HIS VIEW IS THAT

21   PERMISSION TO INTERVIEW SOME OF THESE FOLKS WHERE HE BELIEVES

22   HE HAS A VALID REASON TO DO SO IS BEING ARBITRARILY DENIED.

23        NOW, I WOULD SAY THIS, MR. MAC DOUGALL:  I THINK

24   CORRESPONDENCE LIKE THAT I GOT ON JULY 30TH OUGHT TO AT LEAST

25   BE COPIED TO CIA COUNSEL.  BECAUSE THE AGREEMENT WE HAVE AND

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1  THEY'RE ABIDING BY IS THAT THEY'RE NOT GOING TO TURN OVER ANY

2  OF YOUR THEORIES TO GOVERNMENT PROSECUTORS.  THEY AT LEAST

3  OUGHT TO BE IN THE LOOP WHEN THERE'S A DISPUTE LIKE THIS.  IT

4  SORT OF LEAVES PEOPLE FLAT-FOOTED WHEN THEY HEAR ABOUT IT FOR

5  THE FIRST TIME.

6         SO IF SOMETHING LIKE THIS ARISES, AT A MINIMUM, I

7  THINK, WHEN YOU SEND ME CORRESPONDENCE HAVING TO DO WITH THIS,

8  YOU SHOULD COPY CIA COUNSEL.  IT WILL BE UNDER THE

9  UNDERSTANDING THAT THAT INFORMATION CONTAINED IN ANY OF THESE

10 DISPUTES IS NOT TO BE TURNED OVER TO THE U.S. PROSECUTORS.

11         MR. FORGE:  YOUR HONOR, WHAT I WOULD REQUEST IS THAT

12 IT BE DONE BY WAY OF COURT FILING.  IT CAN BE FILED IN CAMERA

13 EX PARTE.  BUT I THINK, AS WE'VE DEMONSTRATED HERE TODAY, A

14 LARGE PORTION OF THE DISCUSSION CAN BE MADE AVAILABLE TO THE

15 PUBLIC AND CAN BE MADE AVAILABLE TO THE GOVERNMENT.  I HAVE NO

16 PROBLEM FOLLOWING THE PROCEDURE THAT'S FOLLOWED IN A LOT OF

17 THE CASES.

18         THE COURT:  WHO'S GOING TO SPEAK, THOUGH?  MY

19 DISCOMFORT WITH THAT IS I'M TOLD THERE'S AN ADMINISTRATIVE

20 PROCEEDING THAT IS DESIGNED TO HANDLE THESE KINDS OF DISPUTES;

21 THAT IS, WHERE SOMEBODY SAYS TO THE AGENCY "I NEED TO HAVE

22 ACCESS TO THIS."

23         THE AGENCY SAYS "NO.  WE HAVE GOOD REASON NOT TO

24 GIVE IT OVER" NOT HAVING TO DO ANYTHING WITH A CRIMINAL CASE,

25 HAVING TO DO WITH AGENCY-PECULIAR CONCERNS.  THAT'S NOT IN MY

PDF created with pdfFactory trial version www.pdffactory.com

1    PORTFOLIO TO DECIDE.  IT SOUNDS LIKE THERE'S AN ADMINISTRATIVE

2    PROCEEDING AND THAT IT'S BEEN LAID OUT HERE AND THEY HAVE TO

3    GO THROUGH THAT.

4            I'M RELUCTANT FOR THAT REASON TO SAY, "FILE IT HERE

5    IN THIS COURT.  BRING IT TO ME."  IT'S NOT PART -- IT'S NOT MY

6    BUSINESS.

7            MR. FORGE:  I UNDERSTAND THAT.  WHAT I'M SAYING IS

8    THE DISPUTE THAT GETS US TO THAT POINT COULD BE FILED IN THIS

9    COURT AND COULD BE MADE AVAILABLE TO THE PUBLIC, AND THE

10   PARTIES' RESPECTIVE POSITIONS REGARDING THAT AS BEING THE

11   AVENUE FOR RESOLUTION COULD BE MADE AVAILABLE TO THE PUBLIC

12   AND ARGUED IN OPEN COURT.

13           BECAUSE I CERTAINLY TRUST MR. MC PHERSON'S

14   EXPERTISE IN THIS AREA, BUT I DIDN'T HEAR AN AGREEMENT FROM

15   MR. MAC DOUGALL ON THAT ISSUE.  IN FACT, I THOUGHT HE WAS

16   DISAGREEING WITH THE POINT.  SO THAT'S WHAT I'M TRYING TO GET

17   AT, IS THESE ARE ISSUES THAT SHOULD BE FILED PUBLICLY AND

18   SHOULD BE LITIGATED PUBLICLY.

19           AND BEYOND THAT, GOING BACK TO YOUR HONOR'S POINT AS

20   FAR AS REVEALING THE DEFENSE STRATEGIES, JUST TO PUT

21   EVERYTHING IN PERSPECTIVE, UNDER CIPA, WHICH WOULD CERTAINLY

22   APPLY HERE TO WHAT THEY'RE TALKING ABOUT, CLASSIFIED

23   INFORMATION, THE DEFENSE CANNOT USE ANY OF THIS INFORMATION

24   UNTIL THEY GO THROUGH THE SPECIFIC STEPS SET FORTH IN CIPA.

25   AND THAT REQUIRES NOT JUST NOTICE UNDER SECTION 5, BUT ALSO

PDF created with pdfFactory trial version www.pdffactory.com

64

1    CARRYING THEIR BURDEN OF PROVING RELEVANCE UNDER SECTION 6.

2    AND THOSE ARE PROCEEDINGS THAT THE GOVERNMENT ABSOLUTELY

3    PARTICIPATES IN.

4            THE COURT:  I UNDERSTAND.  WE'RE AT A PRELIMINARY

5    POINT, THOUGH.  THEY'RE TRYING TO DECIDE WHAT THEY HAVE.

6    THEY'VE GOT SOME LEADS THAT THEY THINK MAY BE RELEVANT, MAY

7    SUPPORT SOME THEORY OF THE DEFENSE.  THEY DON'T HAVE TO TELL

8    YOU ABOUT ANY OF THAT.  IT'S TANTAMOUNT TO THEM TELLING YOU

9    WHAT THEIR THINKING PROCESS IS AS TO HOW THEY'RE GOING TO

10   DEFEND THIS FELLOW.

11           ONCE THAT CRYSTALLIZES AND THEY SAY "YES, WE BELIEVE

12   SOME OF THE CLASSIFIED INFORMATION IS RELEVANT TO OUR

13   DEFENSE," THEN I AGREE WITH YOU, MR. FORGE, YOU HAVE A RIGHT

14   TO COME IN UNDER THE CLASSIFIED INFORMATION PROTECTION ACT AND

15   SAY, "WELL, WE DISAGREE WITH THAT OR IT NEEDS TO BE SANITIZED

16   IN A PARTICULAR WAY BEFORE IT'S AIRED PUBLICLY."

17           WE'RE NOT TO THAT POINT.  WE'RE TALKING ABOUT

18   THEY'RE REALLY AT AN INVESTIGATIVE STAGE.  THEY'RE GETTING RAW

19   INFORMATION FROM WITNESSES AND SEEING IF IT PANS OUT AS THEY

20   THINK AND WHETHER IT HAS ANY RELEVANCE TO THEIR THEORY OF THE

21   DEFENSE.  THAT'S THE PART WHERE I DON'T THINK THEY HAVE TO

22   GIVE YOU ANY IDEA OF WHICH WAY THEY'RE GOING AND WHAT THEIR

23   THINKING IS AT THIS POINT.

24           I AGREE WITH YOU.  ONCE IT CRYSTALLIZES AND THEY SAY

25   "WE WANT TO USE THIS.  IT HAPPENS TO BE CLASSIFIED

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    INFORMATION," THEN YOU HAVE A SAY IN THAT MATTER.  WE'RE NOT

2    THERE YET.

3            MR. FORGE:  THE FINAL POINT I WANTED TO MAKE IS THE

4    ISSUE IS NOT AS SIMPLE AS MR. MAC DOUGALL PUT IT IN THAT HE

5    HAS TOP SECRET CLEARANCE, THE WITNESS HAS TOP SECRET

6    CLEARANCE.  "THEREFORE, LET'S JUST GET TOGETHER AND TALK.".

7            I THINK THE UNDERTONE OF ALL OF THIS IS THAT THERE

8    ARE DIFFERENT LEVELS OF COMPARTMENT CLEARANCES AND DIFFERENT

9    TYPES OF COMPARTMENT CLEARANCES.  AND JUST BECAUSE TWO

10   INDIVIDUALS HAVE TOP SECRET SCI CLEARANCE DOES NOT MEAN THEY

11   HAVE BEEN CLEARED INTO ALL THE DIFFERENT COMPARTMENTS.  IT'S

12   NOT AS SIMPLE AS MR. MAC DOUGALL IS PUTTING IT.

13           MR. MAC DOUGALL:  YOUR HONOR --

14           THE COURT:  YES.

15           MR. MAC DOUGALL:  -- IN THE SUPERSEDING INDICTMENT

16   IN THIS CASE, THEY FOCUS ON CERTAIN TRANSACTIONS, CERTAIN

17   CONTRACTS.  THOSE TRANSACTIONS AND THOSE CONTRACTS ARE IN

18   EXTREMELY SENSITIVE AREAS.  IT'S THE UNITED STATES' POSITION

19   THAT NOTWITHSTANDING THAT, WE'RE NOT ALLOWED TO INQUIRE, WE'RE

20   NOT ALLOWED TO HAVE PERSONAL KNOWLEDGE OF THOSE CONTRACTS AND

21   TRANSACTIONS.  THIS IS BEYOND THE SCOPE OF ARGUMENT, YOUR

22   HONOR.  AS THE COURT SAID, WE'RE AT THE PRELIMINARY STAGE.

23           THE COURT:  I'LL TAKE THIS MATTER UP FURTHER ON

24   WEDNESDAY.  CIA COUNSEL WILL BE AVAILABLE BY TELEPHONE AS

25   WELL.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

66

1          OKAY.  ANYTHING ELSE?

2          MR. HALPERN:  NOT FROM THE GOVERNMENT.

3          THE COURT:  WE'RE IN RECESS.

4          MR. MAC DOUGALL:  THANK YOU, YOUR HONOR.

5                         --OOO--

6

7

8               I HEREBY CERTIFY THAT THE TESTIMONY

9               ADDUCED IN THE FOREGOING MATTER IS

10              A TRUE RECORD OF SAID PROCEEDINGS.

11

12              S/EVA OEMICK                8-10-07

13              EVA OEMICK                  DATE
                OFFICIAL COURT REPORTER

14

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com