```
 1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF CALIFORNIA
 2
              HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
 3

 4
     UNITED STATES OF AMERICA,        )
 5                                    )
                    PLAINTIFF,        )  CASE NO. 07CR00329-LAB
 6          VS.                       )
                                      )  SAN DIEGO, CALIFORNIA
 7                                    )  NOVEMBER 19, 2007
     KYLE DUSTIN FOGGO,               )  9:30 A.M.
 8   BRENT ROGER WILKES,              )
                                      )
 9                  DEFENDANT.        )
     _____)
10

11                        REPORTER'S TRANSCRIPT

12                          STATUS CONFERENCE

13   APPEARANCES:
     FOR THE GOVERNMENT:            KAREN P. HEWITT, U.S. ATTORNEY
14                                  BY: SANJAY BHANDARI, ESQ.
                                        VALERIE CHU, ESQ.
15                                      JASON A. FORGE, ESQ.
                                        PHILLIP LB HALPERNS, ESQ.
16                                  ASSISTANT U.S. ATTORNEYS
                                    880 FRONT STREET
17                                  SAN DIEGO, CA 92101

18   FOR DEFENDANT WILKES:          FEDERAL DEFENDERS, INC.
                                    BY:  REUBEN CAHN, ESQ.
19                                       SHEREEN CHARLICK, ESQ.
                                         STEPHEN BARTH, ESQ.
20                                  225 BROADWAY, STE. 900
                                    SAN DIEGO, CA 92101
21
     FOR DEFENDANT FOGGO:           AKIN GUMP STRAUSS HAUER & FELD
22                                  BY:  MARK J. MACDOUGALL, ESQ.
                                         ANDREW J. DOBER, ESQ.
23                                       PAUL BUTLER, ESQ.
                                         ELIZABETH TOBIO, ESQ.
24                                  1333 NEW HAMPSHIRE AVE., N.W.
                                    WASHINGTON, DC 20036-1564
25
```

1
2
3
4

```
COURT REPORTER:            EVA OEMICK
                           OFFICIAL COURT REPORTER
                           UNITED STATES COURTHOUSE
                           940 FRONT STREET, STE. 2190
                           SAN DIEGO, CA 92101
                           TEL: (619) 615-3103
```

5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

COMPUTER-AIDED TRANSCRIPTION

```
 1    SAN DIEGO, CALIFORNIA – MONDAY, NOVEMBER 19, 2007 – 9:30 A.M.
 2              THE COURT:  CALLING NO. 1 ON THE CALENDAR,
 3    07CR00329, UNITED STATES OF AMERICA VERSUS KYLE DUSTY FOGGO
 4    AND BRENT WILKES ON FOR STATUS CONFERENCE.
 5              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE
 6    RECORD.
 7              MR. BUTLER:  PAUL BUTLER, ANDREW DOBER, AND
 8    ELIZABETH TOBIO FOR MR. FOGGO.  AND MR. MAC DOUGALL SHOULD BE
 9    HERE ANY MINUTE.
10              MR. CAHN:  REUBEN CAHN AND SHEREEN CHARLICK AND
11    STEPHEN BARTH ON BEHALF OF BRENT WILKES.
12              MR. HALPERN:  PHIL HALPERN, JASON FORGE, SANJAY
13    BHANDARI, AND VALERIE CHU FOR THE GOVERNMENT.
14              THE COURT:  GOOD MORNING.
15              OUR COURT SECURITY OFFICER IS ALSO HERE THIS
16    MORNING.
17              MR. LONDERGAN:  GOOD MORNING, JUDGE.  JIM
18    LONDERGAN.
19              THE COURT:  MR. MAC DOUGALL JOINED YOU?
20              MR. BUTLER:  NOT YET.  WE CAN GO FORWARD.  PAUL
21    BUTLER HERE.
22              THE COURT:  WHO WANTS TO START?
23              MR. HALPERN:  WELL, YOUR HONOR, WE'RE HERE TO GET
24    DATES.  WE SPOKE ORIGINALLY OF THE SECTION 2 CONFERENCE DATE.
25    I'M NOT SURE THAT'S NECESSARY.  I THINK THE MAJOR DATE THAT WE
```

|   |   |
|---|---|
| 1 | HAVE TO CONFRONT WOULD BE THE DATE FOR THE SECTION 5 NOTICES, |
| 2 | WHICH WOULD HAVE TO BE FILED BY THE DEFENSE IF THEY INTEND TO |
| 3 | DISCLOSE ANY CLASSIFIED INFORMATION.  I'M NOT SURE WHETHER |
| 4 | THAT'S GOING TO BE A SINGLE FILING OR MULTIPLE FILINGS. |
| 5 | THAT'S SOMETHING THAT'S ENTIRELY IN THEIR BAILIWICK.  I |
| 6 | WOULDN'T WANT TO EVEN SUGGEST WHAT WOULD BE APPROPRIATE IN |
| 7 | THAT REGARD. |
| 8 |        MR. CAHN:  LET ME EXPLAIN OUR -- |
| 9 |        THE COURT:  MR. CAHN, GO AHEAD AND HAVE A SEAT AND |
| 10 | HOLD THIS MIKE UP CLOSER.  I WANT TO MAKE SURE THESE FOLKS -- |
| 11 |        MR. CAHN:  I'M NOT USED TO SPEAKING SITTING DOWN. |
| 12 |        JUDGE, OUR SITUATION IS DESPITE BEST EFFORTS, WE'VE |
| 13 | YET TO ACTUALLY BEEN ABLE TO VIEW THE CLASSIFIED MATERIAL |
| 14 | BEYOND THAT THAT WE SAW ON OUR TRIP TO WASHINGTON.  THE |
| 15 | GOVERNMENT DID ARRANGE FOR DELIVERY OF THE DISCOVERY IN THE |
| 16 | S.C.I.F. IN L.A.  THERE WAS A PROBLEM WITH THE PARTICULAR |
| 17 | PIECE OF SOFTWARE THAT'S NEEDED TO VIEW THE IMAGES THAT WE |
| 18 | NEED TO SEE.  AND AS A RESULT, IT WAS UNVIEWABLE.  THERE'S |
| 19 | ALSO SOME ADDITIONAL PIECES OF SOFTWARE. |
| 20 |        I'VE JUST SPOKEN WITH SETH HAGEMAN (PHONETIC).  IS |
| 21 | THAT THE CORRECT PRONUNCIATION?  WE'RE ARRANGING HOPEFULLY FOR |
| 22 | A DELIVERY -- THIS ALL HAS TO BE DONE IN PERSON -- NEXT WEEK |
| 23 | AT THE S.C.I.F IN L.A.  I'LL BE THERE TO MEET WHOEVER TRAVELS |
| 24 | WITH THE HARD DRIVE.  SO I IMAGINE THAT MR. BUTLER AND |
| 25 | MR. FOGGO'S OTHER LAWYER IS IN A MUCH BETTER POSITION TO TALK |

```
 1   ABOUT WHAT'S NEEDED TO GET TO THE SECTION 5 DATE.
 2            THE COURT:  MR. BUTLER.
 3            MR. BUTLER:  YES, YOUR HONOR.  I THINK WE'RE STILL
 4   SOMEWHAT HANDICAPPED HERE IN PROPOSING A SPECIFIC DATE.  WE
 5   HAD A MEETING WITH THE JUSTICE DEPARTMENT TAINTING COUNCIL
 6   THAT THE COURT PUT IN PLACE.  THAT WAS VERY HELPFUL.  THEY
 7   HAVE MADE A PROPOSAL BACK TO US CONCERNING THE GROUND RULES
 8   FOR US CONDUCTING WITNESS INTERVIEWS GOING FORWARD.  THAT
 9   LETTER WAS DELIVERED TO THE S.C.I.F THE END OF LAST WEEK.  AND
10   WE'VE GONE UP AND READ IT QUICKLY, BUT WE HAVE NOT HAD S.C.I.F
11   TIME TO GO IN AND GO OVER THE PROPOSAL AND FORMULATE OUR
12   RESPONSE TO IT.
13            IN ADDITION, WE HAVE JUST RECENTLY EXCHANGED SOME
14   CORRESPONDENCE WITH THE GOVERNMENT AND TALKED ABOUT SOME
15   ADDITIONAL DISCOVERY THAT'S GOING TO BE PROVIDED TO US.  SO WE
16   ARE STILL IN THE POSITION -- AND MR. MAC DOUGALL HAS JUST
17   JOINED US -- WHERE WE HAVE VERY LIMITED S.C.I.F. TIME.  WE ARE
18   STILL WORKING OUT GETTING ADDITIONAL DOCUMENT DISCOVERY.  WE
19   HAVE NOT YET SOLVED BUT HOPEFULLY WILL HAVE SUBSTANTIALLY
20   NARROWED THE ISSUE ON WHAT WE CAN AND TALK TO OUR WITNESSES
21   ABOUT.  AND WE HAD HOPED TO RAISE THOSE ISSUES WITH THE COURT
22   AT THE HEARING IN DECEMBER.
23            THE COURT:  WELL, THIS MAY COME AS A SURPRISE TO
24   THE GOVERNMENT, BUT MR. BUTLER AND MR. MAC DOUGALL, AS YOU
25   KNOW PROBABLY, MR. WILKES WAS CONVICTED AFTER A JURY TRIAL
```

|    |    |
|----|----|
| 1  | HERE.  AND THERE IS A MOTION PENDING IN HIS CASE SET FOR |
| 2  | DECEMBER 11TH.  IT'S A MOTION THAT I RESERVED ON THAT WAS |
| 3  | BROUGHT BY BOTH MR. MAC DOUGALL AND MR. GERAGOS TO DISMISS THE |
| 4  | INDICTMENTS.  WE'LL TAKE TESTIMONY IN THAT AND SEE WHERE THAT |
| 5  | LEADS. |
| 6  | BUT ONE OF THE THINGS I TOLD MR. GERAGOS AND |
| 7  | MR. WILKES AT THE TIME WAS I THOUGHT THEY'D HAVE THE LABORING |
| 8  | OAR TO SHOW PREJUDICE AND THEREBY JUSTIFY THE REMEDY OF |
| 9  | DISMISSAL.  AS YOU MAY KNOW, THE GOVERNMENT'S RESPONDED -- AND |
| 10 | I DON'T THINK IT'S CONTESTED -- THAT AT SOME POINT AFTER THE |
| 11 | CUNNINGHAM INDICTMENT WAS RETURNED, MR. WILKES IDENTIFIED |
| 12 | HIMSELF AS ONE OF THE ANONYMOUS CO-CONSPIRATORS.  HE CAME OUT |
| 13 | AND VOLUNTARILY SELF-IDENTIFIED AS CO-CONSPIRATOR 1, I THINK. |
| 14 | SO IT'S VERY DIFFICULT UNDER THOSE CIRCUMSTANCES, I THINK, FOR |
| 15 | HIM TO SAY THAT HE WAS PREJUDICED.  BUT I WANT TO WAIT AND SEE |
| 16 | WHERE THAT LEADS. |
| 17 | BUT ONE OF THE OTHER THINGS THAT I TOLD MR. WILKES |
| 18 | WAS IT'S ORDINARILY MY PRACTICE, CERTAINLY AFTER A JURY TRIAL |
| 19 | IF A PERSON IS CONVICTED OF A SERIOUS FELONY AND THE BURDEN |
| 20 | SHIFTS UNDER 3143, TO REMAND THAT PERSON TO CUSTODY.  I DIDN'T |
| 21 | DO IT BECAUSE ORDINARILY A MOTION LIKE THE ONE I'VE JUST |
| 22 | SPOKEN OF WOULD HAVE BEEN HANDLED BEFORE THE TIME OF TRIAL, |
| 23 | AND I DIDN'T WANT TO GIVE ANYONE THE IMPRESSION THAT I |
| 24 | PREJUDGED THE OUTCOME OF THAT.  I HAVE NOT.  I WANT TO WAIT |
| 25 | AND HEAR WHAT THE EVIDENCE IS. |

1         BUT I DID TELL MR. WILKES THIS:  I SAID, "ASSUMING
2    THAT THE MOTION IS DENIED, YOU SHOULD HAVE YOUR AFFAIRS IN
3    ORDER AND BE PREPARED TO BEGIN SERVING ANY CUSTODIAL TERM THAT
4    IS IMPOSED IN JANUARY WHEN YOU'RE SENTENCED."  AT THE TIME,
5    MR. CAHN WAS PRESENT AND MR. GERAGOS, AND THEY WANTED TO SPEAK
6    TO THAT.
7         BUT HERE IS THE POINT OF MY REVEALING ALL THAT TO
8    YOU:  THAT HAS CAUSED ME TO RECONSIDER THE MOTION THAT WAS
9    MADE EARLY ON TO TRANSFER THIS CASE TO THE EASTERN DISTRICT OF
10   VIRGINIA.  IF IT TURNS OUT THAT MR. WILKES IS IN CUSTODY AS OF
11   JANUARY, THEN WE DON'T HAVE A VICINAGE PROBLEM ANYMORE WITH
12   HIM HAVING A RIGHT TO BE TRIED HERE IN SAN DIEGO.
13        I'VE LOOKED OVER THE INDICTMENT.  I'VE LOOKED OVER
14   THE MOTION AGAIN.  IT APPEARS TO ME THAT ALMOST ALL OF THE
15   OPERATIVE EVENTS IN THE WILKES/FOGGO MATTER OCCURRED IN THE
16   EASTERN DISTRICT OF VIRGINIA.  AS I SAID AT THE TIME, THE
17   SALIENT FACTOR THAT PREVENTED ME FROM GRANTING THAT MOTION WAS
18   THAT IT WOULD HAVE FORCED A SEVERANCE OF MR. WILKES AND
19   MR. FOGGO.  WELL, IF IT TURNS OUT AS OF JANUARY THAT
20   MR. WILKES IS IN CUSTODY, THEN THERE WON'T BE A SEVERANCE.  HE
21   CAN BE TRIED IN THE EASTERN DISTRICT OF VIRGINIA JUST AS WELL.
22        SO I'M GOING TO INVITE COUNSEL TO BRING A MOTION FOR
23   RECONSIDERATION OF THAT MOTION TO TRANSFER.  I'M INCLINED TO
24   BELIEVE THAT IF MR. WILKES IS IN CUSTODY AND THERE IS NO RIGHT
25   TO BE TRIED HERE IN THE SOUTHERN DISTRICT OF CALIFORNIA, THAT

1  THE CASE OUGHT TO BE APPROPRIATELY TRIED IN THE EASTERN
2  DISTRICT OF VIRGINIA.
3         90 PERCENT OF THE WITNESSES, AS I CAN TELL, ARE IN
4  THE EASTERN DISTRICT OF VIRGINIA.  THE CASE AROSE THERE.  MANY
5  OF THE OPERATIVE ALLEGATIONS OCCURRED THERE.  I'M NOT TRYING
6  TO SHIRK RESPONSIBILITIES.  I TRIED THE FIRST CASE.  I'M
7  PREPARED TO TRY MR. MICHAEL'S CASE, WHICH IS THE FOLLOW-UP
8  CASE.  BUT I THINK I SAID AT THE TIME BEFORE ANY OF THE CASES
9  HAD BEEN TRIED BUT FOR THE FACT THAT IT WOULD HAVE FORCED THE
10 SEVERANCE OF DEFENDANTS, IT SEEMED TO ME AN APPROPRIATE CASE
11 TO TRANSFER TO THE EASTERN DISTRICT.
12        SO I'M INVITING, I GUESS, MR. MAC DOUGALL,
13 MR. BUTLER, MR. CAHN, AND MR. HALPERN, GOVERNMENT COUNSEL,
14 REBRIEFING ON THAT AND RECONSIDERATION.  BUT I'M SERIOUSLY
15 CONSIDERING DOING THAT IF IT TURNS OUT MR. WILKES IS IN
16 CUSTODY.
17        SO THAT BEING THE CASE, MAYBE WE'RE A LITTLE
18 PREMATURE TO TALK ABOUT SCHEDULING FURTHER DATES HERE.
19        ANY THOUGHTS OR COMMENTS?
20        MR. CAHN:  WELL, A COUPLE OF QUICK COMMENTS.  I'M
21 NOT SURE HOW RELEVANT THEY ARE TO WHAT YOUR CONSIDERATIONS
22 ARE.
23        I WILL ADVISE THE COURT THAT WE HAVE DISCUSSED THE
24 MATTER WITH MR. MAC DOUGALL AND MR. BUTLER AT SOME LENGTH.  IT
25 HAD BEEN OUR INTENTION TO WITHDRAW MR. WILKES'S OBJECTION TO A

```
 1   TRANSFER OF THE CASE TO THE EASTERN DISTRICT OF VIRGINIA.  I
 2   HAD NOT UNDERSTOOD THAT THE COURT WOULD TRANSFER THE ENTIRE
 3   CASE.  I HAD ASSUMED THAT IT WOULD BE SIMPLY A MATTER OF
 4   TRYING THE CASE THERE.  I'M NOT SURE THAT CHANGES ANYTHING
 5   WITH REGARD TO MR. WILKES'S POSITION OR WHERE IS THE
 6   APPROPRIATE PLACE TO TRY THE CASE.
 7              THE COURT:  HOW WOULD THAT WORK, THOUGH?  IF I WERE
 8   THE TRIAL JUDGE ON THE CASE, I THINK I'D WANT TO MONITOR THE
 9   PRE-TRIAL ACTIVITIES AND PARTICULARLY THE DISCOVERY.  IF THE
10   CASE WAS GIVEN OVER TO ME, MR. CAHN, I WOULDN'T WANT TO BE
11   STUCK WITH SOMEONE ELSE'S RULINGS ON WHAT WAS RELEVANT AND
12   WHAT'S NOT.
13              MR. CAHN:  NO.  I ASSUME THE COURT WOULD HANDLE ALL
14   THOSE MATTERS AS THOUGH -- PART OF THE REASON WE WERE JOINING
15   WOULD BE ON THE BASIS OF THE PRE-TRIAL PUBLICITY, INCLUDING
16   THE PUBLICITY THAT TOOK PLACE DURING THE COURSE OF THE TRIAL
17   THAT YOU JUST PRESIDED OVER.  SO I HAD ASSUMED THAT THE COURT
18   WOULD HANDLE IT IN THE SAME MANNER AS ANOTHER CASE THAT WAS
19   TRANSFERRED FOR PURPOSES OF ADVERSE PUBLICITY, HANDLING ALL
20   THE PRE-TRIAL MATTERS HERE AND THEN WE'D SIMPLY MOVE
21   EVERYTHING TO WASHINGTON OR VIRGINIA FOR ACTUAL TRIAL OF THE
22   CASE.  OBVIOUSLY, I'M NOT A JUDICIAL OFFICER.  I'VE GOT FAR
23   LESS EXPERIENCE WITH THE ISSUE OF ACTUALLY DEALING WITH THE
24   MOVING OF CASES ACROSS DISTRICTS.
25              THE COURT:  TELL ME WHAT YOU CONTEMPLATED, THAT ALL
```

1  OF US WOULD GO WITH THE CASE AND WE'D JUST MOVE THE VENUE OF
2  THE CASE?
3           MR. CAHN:  I ASSUME IT'S NOT GOING TO BE A LONG
4  CASE, A FEW WEEKS, AND THAT WE'D SIMPLY MOVE AND TRY THE CASE
5  THERE FOR VENUE PURPOSES.
6           THE COURT:  WHEN THE MOTION WAS BROUGHT, MY
7  UNDERSTANDING WAS THEY WANTED ME TO SEND IT LOCK, STOCK, AND
8  BARREL TO EASTERN DISTRICT OF VIRGINIA.  THAT WAS PART OF THE
9  PITCH, THAT THEY'RE USED TO HANDLING MATTERS LIKE THIS.  THEY
10 HAVE A NUMBER OF CASES THAT INVOLVE THE CLASSIFIED INFORMATION
11 PROTECTION ACT AND THAT THE JUDGES THERE ARE FAMILIAR WITH
12 THAT.  ALL OF THAT IMPLIED TO ME IT WOULD GO TO A DIFFERENT
13 JUDGE.
14          MR. CAHN:  PERHAPS WE CAN HAVE SOME CHANCE TO TALK
15 ABOUT THIS FURTHER, DO A LITTLE BIT OF RESEARCH ON THE WAY
16 THESE MATTERS ARE USUALLY HANDLED AND POSSIBLY PRESENT
17 SOMETHING TO THE COURT ON DECEMBER 11TH.
18          THE COURT:  OKAY.
19          MR. HALPERN:  THAT WOULD BE FINE WITH THE
20 GOVERNMENT.  I WAS UNDER THE SAME IMPRESSION THE COURT WAS,
21 YOUR HONOR, IN TERMS OF THE ADVISABILITY IN TERMS OF SENDING
22 THE CASE OUT, IF WE NEED TO DO IT WHOLE OR NOT AT ALL.  IT
23 APPEARS WHAT DEFENSE COUNSEL IS SUGGESTING IS NOT A FISH NOR
24 FOWL IN THIS AREA.  PERHAPS WE'RE ONLY GETTING THE WORST OF
25 ALL WORLDS THEN, ESPECIALLY IN TERMS OF SENDING OUT AN ENTIRE

```
                                                                      11
```

11   PROSECUTION TEAM AND ALL OUR AGENTS AS OPPOSED TO JUST SENDING

2   EVERYTHING OUT AND LETTING THEM HANDLE IT FROM THIS POINT ON.

3   IN TERMS OF SECTIONS 5 AND 6, WHICH IS THE MEAT OF THIS, WE

4   HAVEN'T EVEN EMBARKED ON THAT.  WE'RE STILL IN THE DISCOVERY

5   STAGE.

6              THE COURT:  THAT'S THE PART THAT CONCERNS ME.

7   I'M WILLING TO BE PERSUADED THAT THIS IS THE WRONG VIEW.  BUT

8   THOSE DETERMINATIONS CALL UPON ME TO SAY "YES, I DO THINK THIS

9   IS RELEVANT TO THE DEFENSE" AND SANITIZE THE INFORMATION OR

10  COME UP WITH SOME MECHANISM OR "NO, I DON'T THINK THEY'RE

11  RELEVANT, AND THE CLASSIFIED NATURE IS GOING TO TRUMP YOUR

12  PERCEIVED NEED TO PUT THAT INFORMATION ON."

13             THOSE ARE PECULIAR JUDGMENTS THAT SOMEONE TRYING THE

14  CASE OUGHT TO MAKE.  IF THE CASE WERE HANDED OVER TO ME AND I

15  WAS STUCK WITH THOSE JUDGMENTS MADE BY SOMEBODY ELSE, I'M NOT

16  SURE I'D BE VERY COMFORTABLE WITH THAT.

17             I HAVEN'T BEEN HERE AND DONE THAT BEFORE EITHER,

18  MR. CAHN.  SO IF YOU CAN PERSUADE ME THAT IT'S INDICATED THAT

19  I SHOULD MAKE THOSE DECISIONS AND THEN SEND THE WHOLE THING OR

20  PERHAPS TRAVEL WITH THE CASE, I'LL CERTAINLY BE WILLING TO

21  CONSIDER THAT.  I DON'T KNOW WHAT WOULD BECOME OF THE CALENDAR

22  HERE.  WE'RE VERY, VERY BUSY.

23             SO MY THOUGHT IS THAT BEFORE WE DO A LOT OF

24  PREPARATION ABOUT SETTING SECTION 5 DATES, THAT MAYBE WE OUGHT

25  TO DISCUSS THAT.  DECEMBER 11TH IS NOW SET FOR THE HEARING ON

```
 1    THE ALLEGED GRAND JURY LEAKS.  IT MIGHT BE WELL IF THAT
 2    HEARING HAS BEEN COMPLETED BEFORE WE REVISIT THIS ISSUE.  SO
 3    IF IT'S NOT A PROBLEM THAT CREATES A CONFLICT FOR SOMEBODY
 4    WITH HOLIDAY PLANS, PERHAPS WE OUGHT TO PUT THE NEXT
 5    CONFERENCE IN WILKES/FOGGO OVER FOR THE WEEK AFTER,
 6    DECEMBER 18TH, FOR EXAMPLE.  BY THEN I ASSUME THE HEARING WILL
 7    HAVE TAKEN PLACE AND WE'LL HAVE SOME RESULT FROM THE HEARING
 8    THAT I DEFERRED AND I'VE REFERRED TO ALREADY.
 9              MR. CAHN:  9:00?
10              THE COURT:  YES, 9:00.
11              MR. MAC DOUGALL, WELCOME.
12              MR. MAC DOUGALL:  THANK YOU.  I APOLOGIZE FOR BEING
13    LATE.  WE HAD GOTTEN A MESSAGE THAT THE HEARING WAS BEING
14    DEFERRED FOR A FEW MINUTES.
15              THE COURT:  IS THAT AGREEABLE TO YOU, IF WE PUT THIS
16    OFF?  MY INTENTION WOULD BE TO CONDUCT IT THE SAME WAY.  THOSE
17    THAT ARE HERE IN SAN DIEGO COULD ATTEND IN PERSON, AND YOU AND
18    YOUR PARTNERS CAN ATTEND BY TELEPHONE.
19              MR. MAC DOUGALL:  THANK YOU.  WE MAY ACTUALLY BE
20    THERE FOR THAT GIVEN WHAT'S LIKELY TO BE ON THE DOCKET.  YOU
21    HAD ONCE THREATENED US WITH A TRIAL AT CHRISTMAS, SO A HEARING
22    AT CHRISTMAS WILL BE EASY.
23              THE COURT:  WELL, LET ME DO THIS, THEN:  I INVITE
24    ANY FURTHER BRIEFING ON THE ISSUE OF WHETHER THE TRANSFER OF
25    THE CASE TO THE EASTERN DISTRICT OF VIRGINIA SHOULD BE
```

13

1    RECONSIDERED AT THIS POINT GIVEN THE CHANGE OF CIRCUMSTANCES
2    SINCE THE TIME I INITIALLY RULED ON THAT.  AND IF I'M
3    PERSUADED THAT IT OUGHT TO BE, THEN I THINK THAT THESE MATTERS
4    OUGHT TO BE HANDLED BY THE ASSIGNED TRIAL JUDGE.
5             MR. CAHN, I'LL LOOK IN PARTICULAR FOR YOUR BRIEFING
6    ON WHETHER I SHOULD STAY WITH THE CASE OR WHETHER THAT'S THE
7    NORMAL PRACTICE OR WHETHER THE CASE JUST GOES AND A NEW JUDGE
8    IS ASSIGNED.  AND WE CAN GO FROM THERE IN SETTING APPROPRIATE
9    DATES FOR THE RESOLUTION OF DISPUTED DISCOVERY ISSUES.
10            AGREEABLE?
11            MR. CAHN:  YES, YOUR HONOR.
12            THE COURT:  IS THAT AGREEABLE, MR. MAC DOUGALL, ON
13   BEHALF OF MR. FOGGO?
14            MR. MAC DOUGALL:  YES.
15            THE COURT:  ON BEHALF OF THE UNITED STATES,
16   MR. HALPERN?
17            MR. HALPERN:  YES.
18            THE COURT:  DECEMBER 18TH AT 9:00.  I APOLOGIZE FOR
19   THE DELAY THIS MORNING.
20            MR. MAC DOUGALL:  THANK YOU, YOUR HONOR.
21            MR. HALPERN:  THANK YOU, YOUR HONOR.
22                            --OOO--
23
24
25

```
                                                              14

 1
 2
 3              I HEREBY CERTIFY THAT THE TESTIMONY
 4           ADDUCED IN THE FOREGOING MATTER IS
 5           A TRUE RECORD OF SAID PROCEEDINGS.
 6
 7           S/EVA OEMICK                    4-24-08
 8           EVA OEMICK                      DATE
             OFFICIAL COURT REPORTER
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

COMPUTER-AIDED TRANSCRIPTION