```
 1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF CALIFORNIA
 2
               HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
 3

 4    UNITED STATES OF AMERICA,        )
                                       )
 5                   PLAINTIFF,        )   CASE NO. 07CR00329-LAB
                                       )             07CR00330-LAB
 6           VS.                       )
                                       )   SAN DIEGO, CALIFORNIA
 7                                     )   FEBRUARY 11, 2008
      BRENT ROGER WILKES,             )   9:30 A.M.
 8                                     )
                     DEFENDANT.        )
 9    _____)

10
                          REPORTER'S TRANSCRIPT
11                      ORDER TO SHOW CAUSE HEARING

12    APPEARANCES:
      FOR THE GOVERNMENT:         KAREN P. HEWITT, U.S. ATTORNEY
13                                BY:  VALERIE CHU, ESQ.
                                       JASON A. FORGE, ESQ.
14                                ASSISTANT U.S. ATTORNEYS
                                  880 FRONT STREET
15                                SAN DIEGO, CA 92101

16    FOR DEFENDANT WILKES:       FEDERAL DEFENDERS, INC.
                                  BY:  REUBEN C. CAHN, ESQ.
17                                     SHEREEN CHARLICK, ESQ.
                                  225 BROADWAY, STE. 900
18                                SAN DIEGO, CA 92101

19    FOR DEFENDANT FOGGO:        AKIN GUMP STRAUSS HAUER & FELD
      (TELEPHONIC APPEARANCE)     BY:  ANDREW J. DOBER, ESQ.
20                                1333 NEW HAMPSHIRE AVE., N.W.
                                  WASHINGTON, DC 20036-1564
21

22    COURT REPORTER:            EVA OEMICK
                                  OFFICIAL COURT REPORTER
23                                UNITED STATES COURTHOUSE
                                  940 FRONT STREET, STE. 2190
24                                SAN DIEGO, CA 92101
                                  TEL: (619) 615-3103
25
```

1    **SAN DIEGO, CALIFORNIA — MONDAY, FEBRUARY 11, 2008 — 9:30 A.M.**

2            THE CLERK:  NO. 2, 07CR00329, UNITED STATES OF

3    AMERICA VERSUS ROGER BRENT WILKES;

4            NO. 3, 07CR00330, UNITED STATES OF AMERICA VERSUS

5    BRENT ROGER WILKES FOR ORDER TO SHOW CAUSE HEARING.

6            COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

7    RECORD.

8            MR. FORGE:  GOOD MORNING, YOUR HONOR.  JASON FORGE

9    AND VALERIE CHU FOR THE GOVERNMENT.

10           MR. CAHN:  GOOD MORNING, YOUR HONOR.  REUBEN CAHN

11   AND SHEREEN CHARLICK ON BEHALF OF MR. WILKES.

12           MR. DOBER:  GOOD MORNING, YOUR HONOR.  ANDREW DOBER

13   AND ELIZABETH TOBIO ON BEHALF OF MR. FOGGO.

14           THANK YOU FOR ALLOWING US TO APPEAR TELEPHONICALLY.

15           THE COURT:  YOU ARE WELCOME, MR. DOBER.

16           GOOD MORNING.

17           MR. CAHN, THE COURT RECEIVED FROM THE GOVERNMENT A

18   MOTION ASKING FOR THREE DIFFERENT THINGS: PRODUCTION OF

19   MR. WILKES'S FINANCIAL AFFIDAVIT, RESCISSION OF THE

20   APPOINTMENT OF COUNSEL, AND THEN REIMBURSEMENT TO THE UNITED

21   STATES FOR THE COST OF COUNSEL.

22           THE GOVERNMENT STAKES OUT A POSITION THAT MR. WILKES

23   IS NOT ENTITLED TO APPOINTED COUNSEL.  AND JUST THIS MORNING I

24   RECEIVED AN EX PARTE SUBMISSION THAT GOVERNMENT'S REQUESTED BE

25   FILED UNDER SEAL WHICH PUTS A LITTLE --

3

1          MS. CHU:  YOUR HONOR, TO BE CLEAR, THE MOTION FOR

2     DETERMINATION AS TO WHETHER IT SHOULD BE FILED UNDER SEAL, THE

3     GOVERNMENT DOESN'T BELIEVE THEY SHOULD BE, BUT IN AN ABUNDANCE

4     OF CAUTION, YOUR HONOR.

5          THE COURT:  ANYWAY, IT PUTS A LITTLE MORE FLESH ON

6     THE BONES WHY THEY BELIEVE MR. WILKES IS NOT ENTITLED TO

7     APPOINTED COUNSEL.  HAVE YOU SEEN A COPY OF THE --

8          MR. CAHN:  NO, YOUR HONOR.

9          THE COURT:  YOU MAY WANT TO TAKE JUST A MINUTE.  IT

10    IS JUST A SUMMARY DOCUMENT.  IT LISTS THE PAPERWORK APPARENTLY

11    THAT THE GOVERNMENT OBTAINED.

12         MS. CHU, YOU HAVE THESE DOCUMENTS?

13         MS. CHU:  YES, YOUR HONOR.

14         THE COURT:  UNITED STATES HAS THESE DOCUMENTS?

15         MS. CHU:  YES, YOUR HONOR.

16         THE COURT:  ON OF THE THINGS YOU MAKE REFERENCE TO

17    IS MR. WILKES'S FINANCIAL AFFIDAVIT.  DO YOU HAVE A COPY OF

18    THAT?

19         MS. CHU:  NO, YOUR HONOR.

20         THE COURT:  WHAT ON HERE IS IN THE POSSESSION OF THE

21    UNITED STATES?

22         MS. CHU:  YOUR HONOR, THE ENTRIES THAT ARE FOLLOWED

23    BY AN EXHIBIT AND A LETTER.

24         THE COURT:  LET ME GIVE YOU JUST A MINUTE, MR. CAHN,

25    TO LOOK AT THOSE THINGS.

4

1              MR. STEIGERWALT:  YOUR HONOR, BEGGING THE COURT'S

2     PARDON, WHILE MR. CAHN IS REVIEWING THIS --

3              MR. CAHN:  I AM SORRY.  IF WE COULD DEAL WITH THIS

4     FIRST.

5              THE COURT:  MR. STEIGERWALT.

6              MR. STEIGERWALT:  THANK YOU VERY MUCH.  KERRY

7     STEIGERWALT APPEARING AS COUNSEL ON BEHALF OF BASY & FRITZ.

8              BASY & FRITZ WERE SERVED A SUBPOENA DUCES TECUM BY

9     THE UNITED STATES GOVERNMENT ASKING FOR PRODUCTION OF THE

10    RECORDS, THE LIKE OF WHICH I THINK IS REFERENCED IN THE

11    DOCUMENT YOU JUST REFERRED TO.

12             I UNDERSTAND ALSO THAT THERE WAS A MOTION TO QUASH

13    BEING FILED OR ANTICIPATED BEING FILED AS REGARDING THOSE

14    RECORDS.  WHAT IS MY DESIRE IS TO PRESENT TO THE COURT THOSE

15    RECORDS, HAND THEM TO THE COURT, AND THEN EXCUSE MYSELF.

16             THE COURT:  THANK YOU, MR. STEIGERWALT.  WE WILL

17    ACCEPT THOSE AND LODGE WITH THE COURT.  THEY WON'T BE OPENED

18    UNTIL THE COURT MAKES AN ORDER AND YOU ARE EXCUSED.

19             MR. STEIGERWALT:  THANK YOU, YOUR HONOR.

20             MR. CAHN:  I REVIEWED IT, JUDGE.  I AM NOT SURE HOW

21    THE COURT WOULD LIKE TO PROCEED IN THIS MATTER.  IF YOU LIKE

22    ME TO ADDRESS THE MOTION AS A WHOLE OR ADDRESS THIS.

23             THE COURT:  HERE IS WHAT I HAVE IN MIND, MR. CAHN.

24             THE FIRST QUESTION IS WHETHER THE UNITED STATES IS

25    ENTITLED TO A COPY OF THE FINANCIAL AFFIDAVIT.  I THINK THEY

1   ARE AT THIS POINT.  WHEN MR. WILKES WAS PENDING TRIAL AND HIS

2   FINANCES WERE AT ISSUE, I DECLINED TO HAND IT OVER.  I ASSURED

3   MR. WILKES IT WOULD BE EVALUATED ONLY FOR PURPOSES OF

4   DETERMINING HIS ELIGIBILITY FOR APPOINTED COUNSEL.  THE TIME

5   HAS COME AND GONE.

6           FRANKLY, IN LOOKING AT THE FINANCIAL AFFIDAVIT THEN

7   AND NOW, THERE IS NOT A LOT THERE THAT ONE CAN SAY WOULD

8   INCRIMINATE HIM.  IT ESSENTIALLY ZEROS EVERYTHING OUT.

9           MR. CAHN:  JUDGE, LET ME BE CLEAR.

10          FIRST OF ALL, MR. WILKES IS STILL PENDING TRIAL,

11  STILL PENDING TRIAL IN THE 0329 CASE.  HE IS ALSO OBVIOUSLY

12  GOING TO APPEAL THE JUDGMENT IN THIS CASE.  HE HAS A

13  CONTINUING FIFTH AMENDMENT RIGHT THROUGH HIS SENTENCING HERE,

14  AND WE OBJECT TO THAT FOR THOSE REASONS.

15          WHEN MR. WILKES CAME IN HE HAD A FIFTH AMENDMENT

16  RIGHT TO TELL THE GOVERNMENT NOTHING AT ALL, NOTHING ABOUT HIS

17  FINANCES, NOTHING.  THE COURT RECOGNIZED THAT RIGHT, AND THE

18  COURT PROTECTED THAT RIGHT BY FILING THIS AFFIDAVIT UNDER SEAL

19  SO THAT MR. WILKES WOULD NOT BE FORCED TO CHOOSE BETWEEN HIS

20  FIFTH AMENDMENT RIGHT AND SIXTH AMENDMENT RIGHT TO COUNSEL.

21  THAT WAS APPROPRIATE.

22          THE SITUATION HAS NOT CHANGED TODAY.  IT HAS NOT

23  CHANGED.  AND AS I SAID, HE IS STILL PENDING ANOTHER TRIAL.

24  THE GOVERNMENT MAINTAINS THE POSITION AS SET OUT IN HIS PAPERS

25  THAT WERE FILED HERE LAST MONDAY -- I AM NOT SURE -- THAT

6

1    MR. WILKES IS ENGAGED IN A DECADE LONG PATTERN OF DEFRAUDING

2    THE GOVERNMENT.

3         OBVIOUSLY, FINANCES COULD WELL BE A PART OF ANY CASE

4    THAT THEY MAKE AGAINST HIM IN THE NEXT CASE.  THE GOVERNMENT

5    MADE ARGUMENTS IN THE LAST CASE IN REGARD TO HIS FINANCES.  TO

6    PROVIDE THEM WITH INFORMATION, NO MATTER HOW APPARENTLY

7    INNOCUOUS, RUN FROM MR. WILKES'S OWN LIPS FOR THE PURPOSE OF

8    PROTECTING HIS SIXTH AMENDMENT RIGHT TO COUNSEL IS SIMPLY

9    IMPROPER.

10        BEYOND THAT, I POINT THE COURT TO THE GUIDE ON

11   JUDICIARY POLICIES AND PROCEDURES WHICH IS SET OUT IN PART IN

12   OUR MOTION, OUR RESPONSE TO THEIR MOTION.  AND, OF COURSE, THE

13   COURT HAS IT AVAILABLE.  WHAT THAT SAYS IS THAT INFORMATION --

14   THE PROCESS OF APPOINTING COUNSEL IS NOT TO BE USED FOR

15   OBTAINING INFORMATION FOR ANY PURPOSES FOR THE PROSECUTION.

16   ANY INFORMATION OBTAINED IS SOLELY TO DETERMINE ELIGIBILITY

17   FOR COUNSEL.

18        NOW, THE GOVERNMENT HAS NO USE TO MAKE ITS

19   DETERMINATION FOR ELIGIBILITY TO COUNSEL, BECAUSE THEY HAVE NO

20   ROLE IN THE PROCESS.  THE GUIDE MAKES THAT CLEAR.  THE STATUTE

21   MAKES THAT CLEAR.  INDEED, TO ALLOW THE GOVERNMENT TO BE

22   INVOLVED IN THE PROCESS OF APPOINTMENT AND SELECTION OF

23   COUNSEL, AS THEY TRY TO INSERT THEMSELVES, WOULD BE INCREDIBLY

24   PERNICIOUS FOR THE REASONS WE SET OUT IN OUR RESPONSE.  SO

25   THERE IS FRANKLY NO LEGITIMATE REASON FOR THEM TO HAVE IT.

7

1          WHAT THEY WANT IT FOR IS APPARENTLY FOR SENTENCING

2     PURPOSES AND FOR OTHER PURPOSES, MAYBE THE PROSECUTION IN THE

3     NEXT CASE.  AND BEYOND THAT, THERE IS CONTINUING FIFTH

4     AMENDMENT RIGHT.  I POINT OUT THAT I BELIEVE THAT IN PART THIS

5     MOTION IS FILED SOLELY TO FORCE MR. WILKES TO PROVIDE

6     INFORMATION THAT THEY ARE OTHERWISE NOT ENTITLED TO.  I

7     BELIEVE THEY THOUGHT IN RESPONDING TO THEIR MOTION THAT

8     MR. WILKES WOULD GIVE THEM FINANCIAL INFORMATION TO WHICH THEY

9     WEREN'T ENTITLED.

10          I NOTE THAT IN REGARD TO THAT THERE ARE SUBPOENAS

11     ISSUED, BOTH APPARENTLY FROM THE GRAND JURY TO LAWYERS FOR

12     MR. WILKES AND MRS. WILKES, AND NOW FOR THIS HEARING TO OBTAIN

13     INFORMATION THAT THE GUIDE SAYS THAT THEY ARE NOT ENTITLED TO,

14     AND THOSE LAST SUBPOENAS WERE EVEN SERVED WITHOUT AN

15     APPROPRIATE COURT ORDER AS REQUIRED BY PRACTICE IN THIS COURT.

16          SO I BELIEVE THAT A GOOD PART OF THE REASON WHY WE

17     ARE EVEN HERE ABOUT THIS MOTION IS SO THAT THEY CAN GET

18     INFORMATION THAT THEY HAVE NO RIGHT TO AND SO THEY CAN USE IT

19     FOR THE PURPOSES THAT ARE IMPROPER.

20          THE COURT:  YOU HAVEN'T ADDRESSED, MR. CAHN, WHAT I

21     THINK, AS I READ THE PRIMARY THRUST OF THEIR MOTION, WHICH IS

22     THEY BELIEVE MR. WILKES DID NOT TELL THE TRUTH ON THE

23     FINANCIAL AFFIDAVIT.

24          IT IS NOT USED FOR SENTENCING.  IT IS NOT TO INSERT

25     THEMSELVES, I DON'T THINK, IN THE APPOINTMENT PROCESS.  IT IS

1    SAYING, "LOOK, JUDGE, YOU HAVE RECOGNIZED THAT LIMITATIONS ON

2    THE COURT TO CONDUCT ITS OWN INVESTIGATION," AND I HAVE DONE

3    SO IN CONNECTION WITH THE GRAND JURY LEAK.  "WE THINK THAT A

4    FRAUD HAS BEEN PERPETRATED ON THE COURT.  WE THINK THAT

5    MR. WILKES HAS CONVINCED YOU THAT HE IS ELIGIBLE FOR APPOINTED

6    COUNSEL WHEN IN TRUTH AND IN FACT HE IS NOT, AND WE HAVE

7    EVIDENCE TO THAT EFFECT."

8         THAT'S A DIFFERENT PURPOSE FROM THE TWO THAT YOU

9    ASCRIBE TO THEM, AND I THINK THAT'S A PROPER PURPOSE FOR THE

10   GOVERNMENT TO BRING FORWARD TO THE COURT.

11        MR. CAHN:  JUDGE, I DISAGREE.  LET ME MAKE CLEAR

12   WHAT THE GUIDE SAYS, WHAT THE STATUTE SETS OUT.  IT IS FOR THE

13   COURT TO MAKE INQUIRY AND MAKE FACTUAL DETERMINATION.  IT'S

14   NOT FOR THE GOVERNMENT.

15        IF THE COURT BELIEVES THAT THERE IS A PROBLEM WITH

16   THE AFFIDAVIT, THE COURT IS FREE TO REQUEST AN INQUIRY.  BUT

17   THE FACT OF THE MATTER IS, AND ONE WE HAVEN'T MENTIONED, IS

18   THE COURT HAS IN ITS POSSESSION AN EX PARTE UNDER SEAL

19   AFFIDAVIT FROM MARK SCHULER SETTING OUT THE MANNER IN WHICH

20   ALL ASSETS THAT WERE DISPOSED OF PURSUANT TO SUPERIOR COURT

21   ORDERS TO LIQUIDATE LONG PRE-EXISTING DEBTS.

22        THE COURT:  THAT'S TROUBLESOME TO ME, THOUGH.  I

23   HAVE TO TELL YOU THAT'S TROUBLESOME.  WAS THAT SERVED ON THE

24   UNITED STATES AS WELL?

25        MR. CAHN:  NO, IT WAS NOT SERVED ON THE UNITED

1    STATES.  AND THE REASON IS BY GIVING IT TO THEM, THEY

2    ACCOMPLISHED THEIR IMPROPER MEANS OF OBTAINING INFORMATION TO

3    WHICH THEY ARE NOT ENTITLED.

4            THE COURT:  NOT BEING SPECIFIC, I HAVE TO TELL YOU I

5    HAVE READ MR. SCHULER'S AFFIDAVIT, AND I DISAGREE WITH THE

6    THRUST THAT OTHER EXPENSES CAN BE PAID OUT OF COMMUNITY ASSETS

7    AND WE JUST IGNORE HIS NEED FOR COUNSEL; THAT THE TAXPAYER

8    WILL PAY THAT WHILE ALL THESE OTHER THINGS GO ON.  I DISAGREE

9    WITH THAT.  IF THAT'S MR. SCHULER'S THESIS, I REJECT IT OUT OF

10   HAND.

11           MR. CAHN:  IT IS NOT MR. SCHULER'S THESIS.  IT'S

12   CALIFORNIA LAW.  CALIFORNIA JUDGES ARE ENTITLED IN DETERMINING

13   A SETTLEMENT OF COMMUNITY PROPERTY TO ORDER PARTIES TO PAY

14   CERTAIN DEBTS.

15           THE COURT:  I DISAGREE WAS THEIR PRIORITIZATION,

16   THEN, MR. CAHN, AND I AM NOT BOUND BY WHAT THEY DO.  I AM

17   MAKING AN INDEPENDENT JUDGMENT HERE.

18           LOOK, TAKE IT OUT OF THE CONTEXT OF MR. WILKES.  NO

19   ONE HAS A RIGHT, FOR EXAMPLE, TO FUND A COLLEGE TRUST FUND FOR

20   CHILDREN'S EDUCATION WHEN THEY ARE ON THE PUBLIC DOLE FOR A

21   LAWYER OVER HERE.  I DON'T BELIEVE THAT.  I THINK THAT'S

22   INSANE TO SUGGEST THAT IN GOING ON WITH BUSINESS AS USUAL

23   WHILE THE TAXPAYER PICKS UP THE COST OF YOUR LAWYER.  THAT IS

24   NOT RIGHT, AND I DISAGREE WITH IT.  AND TO THE EXTENT I HAVE

25   AUTHORITY OVER MAKING APPOINTMENTS THAT IMPLICATE TAXPAYER

10

1  FUNDS, I AM NOT GOING TO APPROVE THAT.

2           MR. CAHN:  YOUR HONOR, THIS ISN'T BUSINESS AS USUAL.

3  WHEN YOU START TALKING ABOUT SPECIFICS, I AM ONCE AGAIN PUT IN

4  A POSITION OF TRYING TO RESPOND WITHOUT GETTING INTO IT.

5           THE COURT:  I SAID IN A HYPOTHETICAL CASE, AND I

6  MEANT THAT.  TAKING MR. WILKES OUT IT, I DISAGREE WITH

7  SOMETHING LIKE FUNDING A COLLEGE TRUST FUND.

8           MR. CAHN:  JUDGE, AS EXPLAINED, THAT IS NOT WHAT

9  HAPPENED HERE.  AND ONE OF THE THINGS THE GOVERNMENT IS TRYING

10  TO DO HERE IS TRYING TO SAY THAT THE GOVERNMENT HAS PRIORITY

11  OVER ALL ASSETS THAT MIGHT BE IN THE COMMUNITY REGARDLESS OF

12  PRE-EXISTING DEBT, REGARDLESS OF THE LONG-STANDING NATURE OF

13  THOSE OBLIGATIONS, REGARDLESS OF COURT ORDERS TO PAY THOSE

14  DEBTS IMMEDIATELY.  THAT'S SIMPLY NOT THE LAW.  THE GUIDE SETS

15  OUT THE NET FINANCIAL CONDITION OF THE INDIVIDUAL WHO IS BEING

16  CONSIDERED FOR APPOINTMENT OF COUNSEL THAT THE COURT IS TO

17  CONSIDER.

18           THE COURT IS TO LOOK AT THEIR OVERALL FINANCIAL

19  SITUATION, AND THAT IS A BALANCING OF DEBT, ASSETS, INCOME

20  AVAILABLE TO SUPPORT BOTH THE PERSON SEEKING APPOINTMENT AND

21  THEIR DEPENDENTS DURING THE PENDENCY OF THE CASE AND WITH DUE

22  ATTENTION TO THE FINANCIAL OBLIGATIONS IMPOSED BY THE COURT

23  FOR BOND PURPOSES.

24           THE FACT OF THE MATTER IS THAT ANY DEBT THAT

25  MR. WILKES HAS PAID WERE OBLIGATIONS OF LONG PREDATED EVEN ANY

1    INDICTMENT IN THIS CASE.  THEY WERE OWED.  THEY WERE PAYABLE.

2    THEY HAVE BEEN PAID ACCORDING TO COURT ORDER.  SOMETIMES

3    AGAINST MR. WILKES'S WILL WHERE HE WOULD RATHER TRY TO

4    NEGOTIATE LOWER AMOUNTS.

5           SO THIS IS NOT A SITUATION WHERE SOMEBODY HAS GONE

6    ABOUT THEIR BUSINESS AND DISTRIBUTED ASSETS ACCORDING TO THEIR

7    OWN DESIRES WHILE AVOIDING PAYING FOR COUNSEL.  LET ME COME

8    BACK TO HOW WE STARTED THIS WHOLE PROCESS.

9           I REMIND THE COURT THAT MR. WILKES DID NOT COME TO

10   THIS COURT REQUESTING APPOINTMENT OF COUNSEL.  MR. WILKES DID

11   NOT WANT APPOINTED COUNSEL.  HE PARTICULARLY DID NOT WANT THE

12   PUBLIC DEFENDER.  HE DID NOT WANT ANY COUNSEL WHO WAS BEING

13   PAID BY THE GOVERNMENT WHO DISTROYED HIS BUSINESS, TAKING AWAY

14   HIS LIVELIHOOD AND IS TRYING TO TAKE AWAY HIS FREEDOM BECAUSE

15   THE GOVERNMENT MOVED TO STRIKE HIS RETAINED COUNSEL THAT WE

16   FIND YOURSELF IN THIS SITUATION.

17          THE COURT:  I AM NOT SURE, MR. CAHN, THAT'S

18   COMPLETELY ACCURATE.  I DON'T KNOW THAT THE GOVERNMENT MOVED

19   TO STRIKE MR. GERAGOS.  THE PROBLEM WAS MR. GERAGOS WOULD NOT

20   SUBMIT TO A REQUIRED BACKGROUND CHECK, AND I HAD A NUMBER OF

21   HEARINGS.  I IMPLORED HIM TO DO SO.  THEREAFTER, I GAVE

22   MR. WILKES I THINK FOUR TO SIX WEEKS TO FIND DIFFERENT

23   COUNSEL.

24          HE SHOWED UP WITH MR. IREDALE AT ONE POINT.  I WAS

25   HOPEFUL THAT MR. IREDALE WAS GOING TO BE ON THE CASE.  THE

1   GOVERNMENT WASN'T AGITATING ON THAT SCORE.  IT WAS

2   MR. GERAGOS'S REFUSAL TO GO ALONG WITH THE PROCEDURES THAT ARE

3   ATTENDANT TO THE CLASSIFIED PROTECTION ACT THAT LED TO THE

4   FEDERAL DEFENDERS OFFICE BEING APPOINTED IN THIS CASE.

5           MR. CAHN:  JUDGE, AS I READ THE PLEADINGS, THE

6   GOVERNMENT MOVED TO HAVE MR. GERAGOS DISQUALIFIED BECAUSE HE

7   COULDN'T RECEIVE DISCOVERY IN LIGHT OF THE PROCEDURES.

8           THE COURT:  WELL, WOULDN'T RECEIVE DISCOVERY,

9   REFUSED TO GO THROUGH THE --

10          MR. CAHN:  REFUSED TO GO THROUGH THE SECURITY.

11          THE COURT:  RIGHT.

12          MR. CAHN:  IT WAS GOVERNMENT'S CHOICE.  MR. WILKES

13  DIDN'T COME IN SAYING, "YOUR HONOR, I NEED COUNSEL.  I HAVE NO

14  ASSETS."  IT WAS A SITUATION THRUST UPON HIM.  NOW THE

15  GOVERNMENT IS NOW -- I THINK IT IS IRONIC, TO SAY THE LEAST,

16  FOR THE GOVERNMENT NOW COMES BEFORE THE COURT AND SAY, "HE

17  NEVER SHOULD HAVE GOTTEN COUNSEL.  HE SHOULD HAVE RETAINED

18  COUNSEL."

19          THE COURT:  THERE IS A MORE IMMEDIATE PROBLEM,

20  MR. CAHN.  THERE IS A DISCREPANCY BETWEEN -- AND I'LL LEAVE IT

21  AT THAT, BUT THERE IS A DISCREPANCY BETWEEN THE INFORMATION

22  PROVIDED IN THE FINANCIAL AFFIDAVIT AND WHAT THE GOVERNMENT

23  NOW PRESENTS TO BE A TRUE FACT.  I THINK IT IS INCUMBENT UPON

24  THE COURT TO DETERMINE WHAT'S TRUE.

25          MR. CAHN:  THAT'S FINE, YOUR HONOR, BUT IT SHOULDN'T

13

1    BE DONE IN AN OPEN PROCEEDING BEFORE THE GOVERNMENT.  IT'S

2    ONCE AGAIN, THEY ARE ATTEMPTING TO OBTAIN INFORMATION THAT I

3    DON'T BELIEVE THEY HAVE ANY RIGHT TO.  AS I SAID, I BELIEVE

4    THERE HAS BEEN AN ABUSE OF THE GRAND JURY PROCESS AND

5    SUBPOENAS SERVED TO GET THE INFORMATION THAT THEY HAVE GOTTEN.

6    I BELIEVE THIS PARTICULAR PROCEEDING IS AN ABUSE ON THEIR PART

7    TRYING TO GET INFORMATION TO WHICH THEY ARE NOT ENTITLED.

8         WE WILL BE HAPPY TO EXPLAIN IN CAMERA THE NATURE OF

9    THE ASSETS, THE NATURE OF ANY DISTRIBUTION OF THE ASSETS, AND

10   WHAT THE MEANING OF THE AFFIDAVIT IS AND HOW THE AFFIDAVIT WAS

11   FILLED OUT AND PREPARED.  BUT NONE OF THIS SHOULD COME BEFORE

12   THE GOVERNMENT.

13        MR. WILKES SHOULDN'T BE PLACED IN A POSITION OF

14   HAVING TO LITIGATE OF YET ANOTHER FRONT WHEN THEY PUT HIM IN

15   THIS POSITION IN THE FIRST PLACE.

16        THE COURT:  MR. FORGE, YOU SPEAK FOR THE UNITED

17   STATES THIS MORNING?

18        MS. CHU:  I DO, YOUR HONOR.

19        I WAS PREPARED TO LAY OUT IN SUPPORT OF GOVERNMENT'S

20   ALLEGATIONS IN ITS MOTION A NUMBER OF THE FACTS HERE.  I AM

21   GETTING FROM THE COURT THAT MIGHT NOT BE APPROPRIATE AT THIS

22   TIME.

23        THE COURT:  WELL, LOOK, WE ARE MAKING THIS A LITTLE

24   MORE COMPLICATED THAN IT NEEDS TO BE.  OBVIOUSLY, FOR ONE TO

25   QUALIFY FOR COURT-APPOINTED COUNSEL MEANS THAT HE OR SHE DOES

14

1    NOT HAVE THE ASSETS TO OBTAIN COUNSEL ON HIS OR HER OWN.

2    THAT'S THE PREMISE FOR APPOINTMENT OF COUNSEL.  THE

3    DETERMINATION OF FINANCIAL NEED AND INABILITY TO PAY.

4         YOU UNDERSTOOD THAT I HAD CROSSED THAT THRESHOLD AND

5    MADE THOSE DETERMINATIONS AS TO MR. WILKES.  I NOW GET THE

6    IMPRESSION FROM YOUR FILING THAT CONTRADICTS THOSE PREMISES

7    THAT YOU ARE SCRATCHING YOUR HEAD, IN ESSENCE, SAYING HOW CAN

8    THIS BE?  WE ARE AWARE OF THOSE ASSETS, AND WHAT'S UP WITH

9    THIS?  HOW COULD THE COURT GRANTED HIM APPOINTED COUNSEL WHEN

10   HE GOT THESE ASSETS THAT ARE AVAILABLE?  DIDN'T MAKE SENSE.

11   THAT'S THE GIST OF WHAT I READ IN YOUR SUBMISSION.

12        IS THAT THE POSITION OF THE UNITED STATES?

13        MS. CHU:  YES, YOUR HONOR.  I WOULD SUBMIT THAT THE

14   DOCUMENTS SUBMITTED TODAY SUPPORT THE MOTION AND ALLEGATIONS

15   WE MADE, YOUR HONOR, AND AN OPPORTUNITY TO REVIEW THOSE.  IT

16   WAS MY INTENTION TO SORT OF WALK THROUGH THOSE AND ADDRESS

17   SOME OF THE LEGAL POINTS RAISED BY MR. CAHN IN THEIR FILING AS

18   TO WHETHER CERTAIN THINGS SHOULD NOT BE OR SHOULD NOT BE

19   CONSIDERED A CERTAIN WAY.

20        BUT, YOUR HONOR, THE COUPLE OF POINTS RAISED, AT

21   LEAST AS FAR AS HOW WOULD YOU PROCEED, WHETHER IN OPEN COURT

22   OR OTHERWISE.  COURTS HAVE DEALT WITH THESE CONCERNS, YOUR

23   HONOR, THAT ALL THE CASES CITED BY THE GOVERNMENT IN ITS BRIEF

24   DISCUSS WHETHER OR NOT AN EX PARTE PROCEEDING, WHETHER OR NOT

25   AN ADVERSARY PROCESS THAT'S APPROPRIATE.  I THINK THOSE SORT

1   OF ADDRESS THE STANDING ISSUE, WHETHER OR NOT THE GOVERNMENT

2   HAS A RIGHT TO PARTICIPATE IN IT.

3           CERTAINLY, YOUR HONOR, EVEN BY THE TIME COUNSEL WAS

4   APPOINTED, IF THE GOVERNMENT COMES UP WITH OTHER INFORMATION

5   WE ARE INVITED TO PRESENT THAT HERE.  I BELIEVE THAT HAS BEEN

6   THE CASE.  THE UNITED STATES IN THE HARRIS COURT SPECIFICALLY

7   SAID THAT THE ADVERSARY PROCESS IS IMPORTANT.  OTHER PARTS OF

8   THE CJA RULE INDICATE THAT CERTAIN REPRESENTATIONS SHOULD BE

9   AN ADVERSARIAL PROCESS AND SOMETHING SHOULD BE SUBMITTED EX

10  PARTE.  IT CLEARLY SAYS THAT RIGHT THERE IN THE LANGUAGE IN

11  THE CJA PROVISION.  THIS IS NOT ONE OF THEM.  THE HARRIS COURT

12  TOOK THAT TO MEAN IN SOME WAYS THAT THE GOVERNMENT MAY BE

13  HELPFUL.  NOW, IT IS ALL LEFT IN THE DISCRETION OF THE COURT

14  TO HANDLE IT HOW IT SO CHOOSES.

15          COURTS HAVE CONSIDERED A NUMBER OF DIFFERENT

16  OPTIONS.  FIRST, TO CONDUCT IN AN EX PARTE MATTER LIKE

17  MR. CAHN INDICATES.  SECOND, GRANT THE COURT USE IMMUNITY FOR

18  ANY PROCEEDING OR STATEMENTS MADE IN THE COURSE OF

19  SPECIFICALLY A PROCEEDING REGARDING ELIGIBILITY OF COUNSEL.

20  SO NOT USE ANY STATEMENTS IN ANY FURTHER LITIGATION, AND

21  THIRD -- THIS IS AN OPTION WE HAVE DISCUSSED, MY COLLEAGUE AND

22  I -- HAVING A TAINT TEAM, HAVING SOMEONE ELSE LOOK AT THE

23  FINANCIAL STATEMENT, COMPARE.  YOUR HONOR, GOVERNMENT IS

24  CHARGED WITH INVESTIGATING AND PROSECUTING CRIMES, INCLUDING

25  PERJURY AND FALSE STATEMENTS.

16

1        SO, YOUR HONOR, I BELIEVE THAT THE GOVERNMENT DOES

2   HAVE A ROLE IN IT.  THE SPECIFIC PARAMETERS OF THIS CAN BE UP

3   TO YOUR HONOR, BUT WE CAN TEST ANY OF THE IMPROPER USES THAT

4   MR. CAHN HAS ALLEGED WE WANT TO MAKE OUT OF THIS INFORMATION.

5   WE BELIEVE THAT IT'S IMPORTANT THAT YOUR HONOR MAKE THE

6   DETERMINATION ON WHETHER THE CLERK, THE PUBLIC TREASURY SHOULD

7   BE REIMBURSED.  AND THAT'S WHERE WE ARE NOW.

8        IN LIGHT OF THE FACT THAT MR. WILKES DID HAVE

9   ASSISTANCE OF APPOINTED COUNSEL, WHETHER OR NOT FUNDS ARE

10  AVAILABLE THAT SHOULD BE MADE AVAILABLE TO HIM ON THE

11  REIMBURSEMENT FOR THE COST OF THOSE COUNSEL.

12        THE COURT:  I WANT TO JUMP AHEAD, MS. CHU.

13        PENDING BEFORE THE COURT IN THE WILKES/FOGGO CASE IS

14  A RENEWED APPLICATION TO TRANSFER.  AND THE APPLICATION NOW

15  SEEKS TRANSFER NOT TO THE EASTERN DISTRICT OF VIRGINIA AS HAS

16  BEEN THE REQUEST IN THE PAST, BUT RATHER TO THE DISTRICT COURT

17  IN WASHINGTON, D.C.

18        WHAT'S NOTABLE AND DIFFERENT FROM THE PREVIOUS

19  APPLICATION IS THAT MR. WILKES HAS NOW ACQUIESCED TO SUCH A

20  TRANSFER TO THE D.C. COURT.  I AM TOLD IN THE SUPPORTING

21  PAPERWORK THAT THE D.C. COURT IS ONLY EIGHT MILES AWAY FROM

22  THE EASTERN DISTRICT COURT, AND FOR ALL THE REASONS THAT I

23  HAVE ARTICULATED IN THE PAST, MAKES SENSE TO ME THAT THAT CASE

24  GOES.

25        I HAVEN'T RULED ON IT YET.  IT IS NOT IN FRONT OF ME

17

1   TODAY, BUT IT TANGENTIALLY AFFECTS ONE OF THE ARGUMENTS MADE

2   HERE WHICH IS WHAT USE CAN BE PUT TO THIS INFORMATION.  IF

3   THAT CASE GOES TO D.C., IF IT IS TRANSFERRED TO D.C., YOU KNOW

4   WILL THAT BE HANDED OVER TO NEW PROSECUTORS IN WASHINGTON.

5   D.C.?

6           MR. FORGE:  YOUR HONOR, I CAN ADDRESS THE COURT'S

7   QUESTIONS ALONG THOSE LINES.  NO, IT WOULD NOT BE HANDED OVER.

8   WE WOULD STAY ON THE CASE.  AS MS. CHU INTIMATED, WE HAVE NO

9   PROBLEM WITH A TAINT TEAM TO HANDLE THIS ISSUE.

10          THE COURT:  I DON'T FAVOR THAT, FRANKLY.  I THINK

11  THROUGH PROTECTIVE ORDER AND USE IMMUNITY MR. WILKES GETS THE

12  PROTECTION THAT HE IS ENTITLED TO.

13          IT WOULD BE MY INTENTION TO IN THE EVENT THAT THE

14  FINANCIAL AFFIDAVIT IS PROVIDED TO THE UNITED STATES TO RULE

15  THAT NO USE COULD BE PUT TO THAT EXCEPT TO CONTEST HIS

16  ELIGIBILITY FOR COUNSEL.  NO OTHER USE; COULDN'T COME UP, AND

17  THE GOVERNMENT WOULD CARRY THE BURDEN OF SHOWING THAT ANYTHING

18  THAT'S ALLEGED TO HAVE BEEN DERIVED FROM THIS WAS NOT DERIVED

19  FROM THIS.  AND I WOULD ENTER A PROTECTIVE ORDER TO THAT

20  EFFECT.

21          SO IT IS VERY CLEAR THAT THE ONLY PURPOSE IS THAT

22  THE REASON I FEEL THAT THAT'S NECESSARY IS, AS I HAVE ALLUDED

23  TO, IS I DON'T HAVE ANY POWER I DON'T THINK AND NO ABILITY TO

24  CONDUCT AN INDEPENDENT INVESTIGATION ON THESE THINGS.  I AM

25  NOT GOING TO CALL WITNESSES AND TRY TO GET TO THE BOTTOM OF

18

1   WHAT MR. WILKES'S TRUE ASSETS ARE.

2           I HAVE READ THE AFFIDAVIT WHICH MR. CAHN ALLUDED TO.

3   I DISAGREE WITH WHAT I PERCEIVED AS THE PREMISES OF THE

4   AFFIDAVIT THAT THESE OTHER PAYMENTS GET TO BE PAID AND THAT HE

5   CAN HAVE APPOINTED COUNSEL.  I DISAGREE WITH THAT.  I DON'T

6   CARE HOW MANY STATE COURT JUDGES RULE THAT WAY, MR. CAHN.

7   THAT DOESN'T AFFECT WHAT HAPPENS HERE.  YOU CAN'T IGNORE OTHER

8   OBLIGATIONS AND IN THE PRIORITY, THE PECKING ORDER OF THINGS,

9   I WOULD THINK DEFENDING HIM ON A VERY SERIOUS CRIMINAL CHARGE

10  WOULD BE AT THE TOP OF THE LIST IN FRONT OF THE ORDINARY

11  INCIDENTS OF LIFE.  SO I REJECT THAT OUT OF HAND.

12          I AM INCLINED TO RELEASE THE FINANCIAL AFFIDAVIT TO

13  THE UNITED STATES.  THE ORDER THAT THE DOCUMENTS THAT YOU HAVE

14  ALLUDED TO WILL BE FILED UNDER SEAL.  I AM NOT INCLINED,

15  MS. CHU, TO CONDUCT ANY KIND OF EX PARTE PROCEEDINGS EXCLUDING

16  THE PUBLIC.  I THINK THE PROCEEDINGS ON THIS THING OUGHT TO BE

17  IN THE OPEN.  AND I HAVE THE POWER TO PROTECT HIS PRIVACY AND

18  HIS FINANCIAL INFORMATION BY ALLOWING THINGS TO BE FILED EX

19  PARTY THAT ARE NOT EXPOSED TO THE PUBLIC.  BUT THE HEARING

20  WHETHER THE GOVERNMENT CAN ESTABLISH THAT HE HAS FINANCIAL

21  MEANS, HAS HAD FINANCIAL MEANS, I THINK THAT OUGHT TO BE A

22  PUBLIC HEARING.

23          SO, MR. CAHN, THAT'S WHAT I AM INCLINED TO DO.  I

24  WOULD LET YOU SPEAK ONE MORE TIME.  FINAL WORD, BILL O'REILLY

25  SAYS.  WE'LL GIVE YOU THE LAST WORD.

19

1          MR. CAHN:  JUDGE, I DON'T THINK THERE IS ADEQUATE

2     PROTECTION.  THERE IS TWO PROBLEMS WITH THIS.

3          FIRST, WE ARE GONE TO END UP HAVING A KASTIGAR

4     HEARING.  IT IS GOING TO BE A MESS.  MR. WILKES FACING A

5     CHARGE THAT HE HAS ALREADY BEEN CONVICTED IN FRONT OF THIS

6     COURT ON, AN APPEAL OF THAT, AND NOW A DIFFICULT TRIAL IN

7     ANOTHER DISTRICT QUITE POSSIBLY ON THE OTHER MATTER SHOULD NOT

8     BE FORCED TO LITIGATE ON ANOTHER FRONT AT THIS TIME.

9          THE CJA ACT SETS OUT THE APPROPRIATE WAY TO ADDRESS

10    THIS, WHICH IS AT THE END OF THE CASE TO LOOK AT THE MATTER,

11    AND IF THERE IS A NEED FOR RE-DETERMINATION AND DETERMINATION

12    THAT ASSETS WERE AVAILABLE TO ORDER PAYMENT AT THAT TIME.

13    THAT'S THE TIME TO DEAL WITH THIS.

14         SO TO FORCE MR. WILKES TO NOW GET INTO ANOTHER SET

15    OF LITIGATION, IT ONCE AGAINST JUST DEPRIVES HIM OF THE RIGHT

16    TO PROPERLY DEFEND HIMSELF.  ULTIMATELY, THAT'S WHAT THIS IS

17    ABOUT.  GOVERNMENT DOESN'T WANT A FAIR FIGHT HERE.  THAT'S WHY

18    THE GOVERNMENT OBJECTED TO PUBLIC DEFENDER BEING APPOINTED,

19    WANTED A CJA ATTORNEY APPOINTED, AND THAT'S WHY THEY ARE NOW

20    MOVING TO KICK US OFF THE CASE SO MR. WILKES WILL NOT BE IN A

21    POSITION TO DEFEND HIMSELF AND TO ALLOW THEM TO FURTHER BURDEN

22    HIS REPRESENTATION BY REQUIRING THIS LITIGATION IS JUST WRONG.

23    IT IS NOT FAIR.

24         BEYOND THAT, YOUR HONOR, IF YOUR HONOR IS GOING TO

25    DISAGREE AND ISSUE AN ORDER, I'D ASK THAT IT BE STAYED SO WE

20

1    CAN TAKE AN EMERGENCY APPEAL.

2              THE COURT:  I'LL CERTAINLY GIVE YOU THAT RELIEF.  I

3    DISAGREE WITH YOUR LAST STATEMENT THAT THAT'S THEIR PURPOSE.

4    THERE IS NOTHING INDICATED IN THE PAPERWORK THAT SUGGESTS TO

5    ME THAT THAT'S THEIR PURPOSE AT ALL.

6              MS. CHU IS CORRECT THAT AT THE TIME I APPOINTED

7    COUNSEL, IT WAS OVER MR. FORGE'S OBJECTION.  AND MR. FORGE

8    LODGED THE OBJECTION AT THE TIME BASED ON HIS UNDERSTANDING OF

9    MR. WILKES'S WHEREWITHAL AND HIS ASSETS AND SAID, "HOW CAN

10   THIS BE?  HOW CAN YOU MAKE A FINDING?  WHAT'S IN THAT

11   FINANCIAL AFFIDAVIT THAT CONVINCES ME THAT HE IS ENTITLED TO

12   APPOINTED COUNSEL, BECAUSE WE HAVE A VERY DIFFERENT VIEW."

13             AND AT THE TIME I MADE THE PROVISIONAL APPOINTMENT

14   PURSUANT TO 3006A.  MS. CHU IS EXACTLY RIGHT.  I TOLD THE

15   GOVERNMENT, "IF YOU HAVE INFORMATION THAT'S CONTRARY TO WHAT

16   YOU THINK IS IN THIS AFFIDAVIT, THEN YOU MAY PRESENT TO IT ME

17   AT SOME POINT."

18             WHAT I DISAGREE WITH, MR. CAHN, IS THAT IN THE FACE

19   OF WHAT APPEARED TO ME TO BE CREDIBLE ACCUSATIONS THAT I JUST

20   IGNORE THOSE OR DEFER THEM UNTIL THE END OF ALL THE LEGAL

21   TROUBLE.  IF A FRAUD HAS BEEN PERPETRATED UPON THE COURT -- I

22   AM NOT SAYING THAT THAT'S HAPPENED YET, BECAUSE I DON'T HAVE

23   EVIDENCE.  I HAVE ALLEGATIONS.  BUT IF A FRAUD HAS BEEN

24   PERPETRATED ON THE COURT, THEN I THINK IT'S INCUMBENT UPON ME

25   TO DISCOVER THAT OR TAKE STEPS TO DISCOVER THAT IMMEDIATELY,

21

1    NOT TO DEFER IT TO ANOTHER DAY.

2            BECAUSE FRANKLY, IT AFFECTS MANY OF THE DECISIONS

3    THAT I MAKE.  IT AFFECTS WHETHER MR. WILKES REMAINS OUT ON

4    BAIL.  IF IT IS TRUE THAT HE HANDED ME A FINANCIAL AFFIDAVIT

5    WITH FALSE INFORMATION IN IT AND TRIED TO PULL ONE OVER ON ME,

6    THEN I AM NOT GOING TO TRUST HIS JUDGMENT AND HIS WORD ON

7    OTHER THINGS.

8            IT IMPLICATES MANY OF THE DECISIONS THAT I HAVE MADE

9    THAT ARE STILL IN PLAY IN THIS CASE.  I DON'T HAVE THE POWER

10   TO INVESTIGATE THESE THINGS MYSELF NOR THE INCLINATION.  I

11   THINK THE GOVERNMENT IS THE APPROPRIATE ARM.  THE INFORMATION

12   CONTAINED IN THEIR MOTION IS SUFFICIENTLY SPECIFIC.  I DON'T

13   SEE IT AS SOME KIND OF FISHING EXPEDITION.  I'M GOING TO LIMIT

14   THE USE TO WHICH THEY CAN PUT THE FINANCIAL AFFIDAVIT TO

15   STRICTLY ARGUING WHETHER HE IS ELIGIBLE OR NOT ELIGIBLE OR WAS

16   ELIGIBLE OR WAS NOT ELIGIBLE.  ANY FURTHER USE IS PROHIBITED

17   BY THE UNITED STATES.

18           AND FRANKLY, THERE IS ANOTHER ASPECT OF THIS.  YOU

19   AND I HAVE SEEN THE FINANCIAL AFFIDAVIT.  THEY HAVEN'T.  IF I

20   WERE CONVINCED THAT THERE WAS A REASONABLE POSSIBILITY OF

21   SELF-INCRIMINATION FROM THAT, I MIGHT FEEL DIFFERENTLY.  BUT

22   LOOKING AT THIS THING, I JUST DON'T SEE ANY REASONABLE

23   POSSIBILITY OF SELF-INCRIMINATION FROM WHAT'S ON THE

24   THREE-PAGE FINANCIAL AFFIDAVIT, THE AFFIDAVIT ITSELF AND THE

25   SCHEDULE ATTACHED.

22

1      THERE IS NOTHING THAT JUMPS OUT AT ME.  THERE IS

2   NOTHING THERE AS I LOOK AT IT WHERE I SAY, "WELL, THE

3   GOVERNMENT COULD PUT THIS TO ADVERSE USE AGAINST MR. WILKES."

4   AND MIND YOU, I SAT THROUGH THE TRIAL OF MR. WILKES OF THE

5   PRIMARY CHARGE, AND I AM WELL FAMILIAR WITH WHAT THE

6   ALLEGATION ARE ON THE WILKES/FOGGO CASE.  SO I MAKE THAT

7   STATEMENT MINDFUL OF BOTH CASES.  AND HAVING EXAMINED THE

8   FINANCIAL AFFIDAVIT, I DON'T THINK THERE IS A REALISTIC

9   PROBABILITY OF SELF-INCRIMINATION THAT RISES FROM THIS.

10      I DIDN'T KNOW THAT UNTIL AFTER THE TRIAL HAD TAKEN

11   PLACE.  BUT I LOOKED AT THIS NOW AND I AM CONVINCED THAT THERE

12   JUST IS NOT MUCH HERE.  THE ONLY SIGNIFICANCE THIS IS GOING TO

13   HAVE IS THAT THERE IS FALSE INFORMATION ON THIS.  AND IF THERE

14   IS FALSE INFORMATION, THEN I WANT TO KNOW IT NOW.  I DON'T

15   WANT TO KNOW IT AFTER SENTENCING OR AFTER THE WILKES/FOGGO

16   CASE HAS COME TO SOME DISPOSITION.

17      SO THE MOTION OF THE UNITED STATES FOR PRODUCTION OF

18   MR. WILKES'S FINANCIAL AFFIDAVIT IS GRANTED.  AGAIN, WITH THE

19   PROTECTIVE ORDER THAT IS TO BE USED ONLY FOR THE PURPOSE OF

20   CONTESTING HIS ELIGIBILITY.

21      I BASED THE DECISION ON THE REPRESENTATIONS MADE BY

22   THE UNITED STATES THAT THEY BELIEVE THEY HAVE MATERIAL

23   INFORMATION THAT CONTRADICTS ANY SUCH ELIGIBILITY.  NO USE MAY

24   BE MADE OF THIS IN THIS IN EITHER THIS CASE AT SENTENCING OR

25   ANY OTHER USE IN THE WILKES/FOGGO CASE.  AND IF THERE IS AN

23

1    ISSUE ABOUT THAT, THEN IN MY VIEW MR. WILKES IS ENTITLED TO A

2    HEARING, AND THE BURDEN WOULD BE ON THE UNITED STATES TO SHOW

3    THAT INFORMATION THAT MR. WILKES BELIEVES IS IN FACT DERIVED

4    FROM THE FINANCIAL AFFIDAVIT WAS IN FACT DERIVED OTHERWISE.

5         I WILL STAY THE ORDER UNTIL FRIDAY.  YOU CAN FILE

6    YOUR EMERGENCY WRIT, BUT I AM GOING TO TURN THIS OVER.  I AM

7    GOING TO SET IT FOR AN ADDITIONAL HEARING.  ACTUALLY, WHAT

8    I'LL DO IS WAIT.  AFTER THEY SEE THIS, IF THEY BELIEVE THAT

9    THERE IS MATERIAL MISINFORMATION THAT THE UNITED STATES MADE,

10   BRING THAT BACK TO MY ATTENTION.  BUT THEY HAVE SET FORTH TO

11   MY SATISFACTION ENOUGH CONTRARY INFORMATION, MR. CAHN, THAT I

12   THINK SOME ADDITIONAL INQUIRY IS APPROPRIATE.

13        AS I SAID, THIS JUST ISN'T A QUESTION WHETHER YOU

14   REMAIN ON AS COUNSEL OR WHETHER HE IS ENTITLED TO COUNSEL.

15   IT'S FRANKLY, IF I HAVE BEEN LIED TO, I WANT TO KNOW THAT.  I

16   WANT TO KNOW THAT NOW, BECAUSE IT AFFECTS A WHOLE RANGE OF

17   OTHER DECISIONS THAT I HAVE TO MAKE WITH RESPECT TO

18   MR. WILKES.

19        SO THE MOTION IS GRANTED.  STAY UNTIL NOON ON FRIDAY

20   UNLESS A FURTHER STAY IS ORDERED BY THE UNITED STATES COURT OF

21   APPEALS.  THE GOVERNMENT CAN PICK UP A COPY OF THE FINANCIAL

22   AFFIDAVIT ON FRIDAY AT NOON.

23        MR. CAHN:  THERE ARE TWO OTHER MATTERS THAT I HAVE A

24   REQUEST FOR FURTHER ADDITIONAL PROTECTIVE ORDER, WHICH IS THE

25   GOVERNMENT MAY HAVE COPIES OF ANY INFORMATION THAT IT RECEIVES

24

1    AND TO RETURN THOSE MATERIALS BACK OVER TO THE COURT.

2                THE COURT:  THAT'S GRANTED.

3                MR. CAHN:  SECOND, WE HAVE PENDING ALSO MOTIONS TO

4    QUASH SUBPOENAS THAT WERE SERVED WHICH WERE CLEARLY CONTRARY

5    TO THE GUIDES ON JUDICIARY POLICIES AND PROCEDURES.  THE

6    GOVERNMENT IS NOT SUPPOSED TO USE THE APPOINTMENT ISSUES TO

7    SEEK FURTHER INFORMATION.  IF THEY GET IT INDEPENDENTLY, THEY

8    ARE ALLOWED TO PRESENT IT TO THE COURT.  THEY ARE NOW SEEKING

9    FURTHER INFORMATION TO SUBPOENA.  AND IN ADDITION, THOSE

10   SUBPOENAS WERE ALL SERVED WITHOUT ANY ORDER.

11               THE COURT:  IS THIS INFORMATION?

12               MR. CAHN:  THAT'S BOTH MR. STEIGERWALT'S -- WELL, I

13   GUESS IT COMES FROM MR. FRITZ IS HIS NAME, MR. STEIGERWALT'S

14   CLIENT.  AND THEN I ALSO HAVE WITH ME A SEALED ENVELOPE FROM

15   MR. WILKES'S ATTORNEY WHO THEY HAVE SERVED AS WELL.  THEY HAVE

16   ALSO OBVIOUSLY SERVED OTHER SUBPOENAS THAT GAVE THEM SOME

17   INFORMATION.

18               THE COURT:  WHAT TYPE OF SUBPOENA, MR. CAHN?  WAS IT

19   A RULE 17 SUBPOENA OR WAS IT A RULE 17 SUBPOENA?

20               MR. CAHN:  THIS SUBPOENA THAT I AM TALKING ABOUT

21   RIGHT HERE, THE ONES TO HIS LAWYER AND TO MR. FRITZ ARE RULE

22   17(C) SUBPOENAS THAT WERE ISSUED WITHOUT ORDER OF THE COURT.

23   I BELIEVE THERE WERE OTHER SUBPOENAS ISSUED.  I DON'T KNOW

24   SINCE I HAVE NOT SEEN THEM FOR CERTAIN WHETHER THEY WERE GRAND

25   JURY OR RULE 17 SUBPOENAS.  THE GOVERNMENT, I AM SURE, CAN

1    COMMENT ON THAT.

2            THE COURT:  DID YOU FOLLOW THE RULE 17 PROCEDURE AND

3    THE LOCAL RULE HERE, MR. FORGE?

4            MR. FORGE:  YES, YOUR HONOR.  IT'S MY UNDERSTANDING

5    FROM RULE 17 FROM THE LOCAL RULES IS THAT WE ONLY NEED TO SEEK

6    LEAVE OF THE COURT IF WE ASK IN THE SUBPOENA FOR DOCUMENTS TO

7    BE RETURNED PRIOR TO THE HEARING.  WE ASKED THAT THE DOCUMENTS

8    BE BROUGHT TO THE HEARING.  AND IT'S MY READING OF BOTH THE

9    RULES AND THE LOCAL RULES THAT WE DON'T HAVE TO SEEK LEAVE OF

10   COURT TO DO THAT.

11           THE COURT:  DOESN'T THE RULE REQUIRE NOTICE TO THE

12   OTHER SIDE SO THAT THEY CAN OBJECT TO THE ISSUANCE OF THE

13   SUBPOENA IN THE FIRST INSTANCE IF THEY THINK IT'S

14   INAPPROPRIATE.

15           MR. FORGE:  I DON'T THINK SO, YOUR HONOR.

16           AGAIN, THIS IS NOT A SITUATION THAT ARISES IN -- THE

17   DEFENSE OFTEN ISSUES SUBPOENAS REQUESTING THE INFORMATION

18   BEFORE A HEARING OR BEFORE TRIAL.

19           THE COURT:  MAYBE I AM CONFUSED ABOUT THIS.  IS

20   THERE A LOCAL RULE ON THIS?

21           MR. CAHN:  YOUR HONOR, MY UNDERSTANDING IS THAT THE

22   PRACTICE IN THIS DISTRICT IS TO REQUIRE AN ORDER OF THE COURT

23   ALWAYS.  IN FACT, OUR OFFICE HAS GOTTEN GRIEF FROM THE

24   GOVERNMENT FREQUENTLY WHEN WE SOUGHT TO APPLY LITERAL

25   INTERPRETATION OF THE RULE, AND IN FACT HAVE RECEIVED

1    REPUTES FROM THE COURT AT TIMES.  IF THE GOVERNMENT WANTS TO

2    MAINTAIN THIS POSITION THROUGHOUT LITIGATION AND THE COURT

3    WANTS TO ACCEPT IT, WE WILL FOLLOW IT.  THAT STILL DOESN'T

4    DEAL WITH MY OTHER OBJECTION TO THE SUBPOENAS WHICH IS THEY

5    ARE SIMPLY INAPPROPRIATE UNDER THE GUIDE.

6          THE COURT:  DO WE HAVE -- I WILL DEAL WITH THAT,

7    MR. CAHN.  DOES SOMEBODY HAVE A COPY OF THE LOCAL RULE,

8    COUNTERPART TO RULE 17?

9          MR. CAHN:  I DON'T HAVE IT WITH ME, YOUR HONOR.  I

10   APOLOGIZE.

11         THE COURT:  MY RECOLLECTION, MR. FORGE -- AT THE

12   HISTORY, MR. CAHN, IS RIGHT.  I KNOW THAT THE GOVERNMENT YELPS

13   SOMETIMES WHEN THESE RULE 17 SUBPOENAS ROLL IN SAYING, WE

14   SHOULD HAVE BEEN NOTIFIED.  WE HAVE AN OPPORTUNITY UNDER THE

15   LOCAL RULES TO COME IN AND OBJECT TO THE ISSUANCE OF A

16   SUBPOENA IN THE FIRST INSTANCE, NOT TO HAVE ALL THE STUFF

17   PRODUCED HERE IN COURT.  ARE YOU FAMILIAR WITH THAT?

18         MR. FORGE:  I AM FAMILIAR WITH IT, YOUR HONOR, BUT I

19   BELIEVE THAT COMES UP IN THE CONTEXT PARTIES SEEKING

20   INFORMATION PRIOR TO THE DAY OF THE HEARING OR PRIOR TO TRIAL.

21   I HAVE EXPERIENCED IT MYSELF.  THERE ARE INSTANCES IN WHICH

22   COUNSEL USED THE RULE 17 SUBPOENA AS A DISCOVERY DEVICE OR

23   TRIAL PREPARATION DEVICE.

24         THE COURT:  THIS IS DIFFERENT.  I UNDERSTAND THAT

25   CONCERN.  THIS IS A CONCERN ABOUT NOTICE IN ADVANCE OF THE

1    SUBPOENA GOING OUT.  THAT'S WHY WHEN I FREQUENTLY GET EX PARTE

2    APPLICATIONS FROM THE FEDERAL DEFENDERS SAYING, "WE DON'T WANT

3    TO GIVE NOTICE.  WE WANT LEAVE FROM THE REQUIREMENT TO GIVE

4    NOTICE, BECAUSE THIS PERTAINS TO THE DEFENDANT, AND WE DON'T

5    WANT TO TIP OUR HANDS."  AND ALL THAT WOULD BE UNNECESSARY IF

6    THEY COULD DO IT WITHOUT THE NEED FOR NOTICE.

7           MR. FORGE:  I THINK THAT ARISES TYPICALLY IN THE

8    17(B) CONTEXT WHEN YOU ARE TALKING ABOUT A NEED WHEN THE

9    DEFENSE ONLY HAS TO INVOKE THE COURT'S AUTHORITY BECAUSE THEY

10   NEED PAYMENT FOR WITNESS FEES OR TRAVEL FEES.  SO IN THAT

11   CONTEXT THE COURTS HAVE SAID THE ONLY REASON THEY HAVE TO

12   INVOKE THE COURT'S AUTHORITY IS BECAUSE THEY CAN'T AFFORD TO

13   DO IT ON THEIR OWN.  THEY OTHERWISE COULD.  IN THOSE

14   INSTANCES, YES, THEY CAN DO IT ON AN EX PARTE BASIS.

15          THE COURT:  MY ASSUMPTION IS BASED ON THE

16   INFORMATION YOU WROTE IN THE MOTION THAT YOU ALREADY HAVE

17   SUBSTANTIAL INFORMATION THAT YOU BELIEVE CONTRADICTS THE

18   APPLICATION THAT MR. WILKES IS IMPECUNIOUS AND NEEDED

19   COURT-APPOINTED COUNSEL IRRESPECTIVE OF WHAT'S CONTAINED IN

20   THESE DOCUMENTS.  IS THAT TRUE?

21          MR. FORGE:  THAT IS TRUE, YOUR HONOR.  I THINK THE

22   KEY, AS INDICATED IN OUR PAPERS -- ONE OF THE KEYS IS THIS

23   AGREEMENT THAT WAS ENTERED INTO BETWEEN MR. WILKES AND HIS

24   WIFE.  AND THAT AGREEMENT WE DO NOT HAVE.  AND THE OTHER KEY

25   IS TO SEE WHERE THIS MONEY WENT.

28

1          AS YOUR HONOR WILL SEE FROM THE SUBPOENAS, THEY

2     SPECIFICALLY REQUESTED A NON-PRIVILEGED INFORMATION.  AS YOUR

3     HONOR AND MR. CAHN ARE WELL AWARE, INFORMATION REGARDING

4     FINANCES BETWEEN ATTORNEYS AND CLIENTS IS NOT PRIVILEGED.  AND

5     THAT'S REALLY THE GIST OF WHAT WE ARE SEEKING HERE.

6          THE COURT:  MR. CAHN, I AM GOING TO ORDER THAT THE

7     DOCUMENTS BE LODGED WITH THE COURT.  I AM NOT GOING TO TURN

8     THEM OVER TO ANYONE PENDING YOUR APPEAL TO THE NINTH CIRCUIT.

9     IT ALL MAY BE MOOTED IF THE NINTH CIRCUIT SAYS, "NO, THEY

10    SHOULDN'T HAVE THE FINANCIAL AFFIDAVIT TO BEGIN WITH."

11    NECESSARILY, THEY DON'T GET THE OTHER INFORMATION IF THEY ARE

12    NOT TO HAVE A PART IN THIS DETERMINATION AT ALL.

13         I WILL RESERVE ON YOUR ARGUMENT THAT THEY HAVE NO

14    RIGHT TO THIS UNDER THE CJA PROCESS AND THAT THEY HAVE MISUSED

15    THE RULE 17(B) SUBPOENA.  I DON'T THINK THEY HAVE, FRANKLY.

16    MR. FORGE HAS CLEARED IT UP FOR ME.  THE REASON I GET THOSE EX

17    PARTE APPLICATIONS IS THAT FEDERAL DEFENDERS FREQUENTLY

18    REPRESENTS PEOPLE WHERE YOU NEED COURT FUNDS TO OBTAIN THIS

19    SUBPOENA OR --

20         MR. CAHN:  MAY I RESPOND ON THAT POINT?

21         THE COURT:  SURE.

22         MR. CAHN:  I DISAGREE WITH MR. FORGE.  THE FACT OF

23    THE MATTER IS WE DO FILE 17(B) MOTIONS AND WE NEED TO BRING

24    PEOPLE TO HAVE TO PAY THEIR EXPENSES.  WE FILE 17(C) MOTIONS,

25    NOT BECAUSE OF A NEED TO PAY EXPENSES, BECAUSE THERE IS RARELY

1    THE NEED TO PAY EXPENSES FOR THE PRODUCTION OF DOCUMENTS.

2    USUALLY OUR OFFICE PAYS THEM IN ACCORDANCE WITH THE GUIDELINES

3    IN OUR OFFICE.

4           RATHER, WE FILE THEM BECAUSE IT IS THE PRACTICE OF

5    THIS COURT -- MEANING THE SOUTHERN DISTRICT OF CALIFORNIA, NOT

6    YOU IN PARTICULAR, YOUR HONOR -- TO REQUIRE THAT THERE BE AN

7    ORDER.  IN PARTICULAR, THE RULE 17(C) SAYS THE COURT MAY

8    DIRECT THE WITNESS TO PRODUCE THE DESIGNATED ITEMS IN COURT

9    BEFORE TRIAL OR BEFORE THEY ARE OFFERED IN EVIDENCE.  AND IT

10   GOES ON TO SAY THAT THE COURT MAY ORDER THE PRODUCTION OF THE

11   DOCUMENTS.

12          SO IT IS HARD TO RECONCILE THE IDEA THAT THERE IS NO

13   NECESSITY OF A COURT ORDER.  I HAVE ARGUED IT BEFORE.  I HAVE

14   LOST BEFORE.  I FIND IT VERY INTERESTING THAT THE GOVERNMENT

15   IS NOW TAKING THIS POSITION.  AS I SAID, WHEN THEY YELPED

16   BEFORE, AS THE COURT PUT IT, ABOUT US ISSUING 17(C) SUBPOENAS,

17   EVEN FOR THE TIME OF HEARING AND TRIAL WITHOUT COURT ORDER.

18          SO I WOULD DISAGREE WITH MR. FORGE'S INTERPRETATION

19   OF WHAT OUR POLICIES AND OUR PROCEDURES ARE AND HOW THINGS ARE

20   CONDUCTED IN THIS COURT.  I WOULD SAY IF THAT'S THE POSITION

21   OF THE GOVERNMENT, I'D APPRECIATE IT IF IT'D BE THE POSITION

22   OF THE GOVERNMENT IN ALL CASES FROM NOW ON AND NOT SIMPLY HERE

23   WHERE IT IS CONVENIENT WHERE THEY HAVE ISSUED THE SUBPOENAS

24   WITHOUT COURT ORDER.

25          THE COURT:  I'LL RESERVE ON THE QUESTION OF WHETHER

1    NOTICE IS REQUIRED, WHETHER A COURT ORDER IS REQUIRED PRIOR TO

2    THE ISSUANCE OF THE SUBPOENA AND ALSO ON WHETHER THE SUBPOENA

3    IS PROPER PURSUANT TO CJA POLICY.

4          MR. CAHN:  IF I MAY LODGE THESE.  IT IS TABLED AND A

5    SEALED ENVELOPE CONTAINED A NOTEBOOK THAT CONTAINS PAPERS THAT

6    MR. SCHULER, THE ATTORNEY FOR MR. WILKES IN THE SEPARATION

7    MATTER, IS DETERMINED TO BE RESPONSIVE TO THE SUBPOENA.

8          THE COURT:  MADAM CLERK, THOSE WILL BE LODGED WITH

9    THE COURT.  THEY ARE TO REMAIN SEALED AS IS, THIS PACKAGE THAT

10   MR. STEIGERWALT PRESENTED, PENDING THE HEARING.  YOU MAY

11   SUBMIT THIS.  MY CLERK WAS ABLE TO GET ME A COPY OF THE LOCAL

12   RULE 17.1.

13         LET ME READ YOU WHAT 17.1(B) SAYS.  THIS IS WHERE I

14   WAS RECOLLECTING ABOUT THE NOTICE PROVISION.  LOCAL RULE

15   17.1(B) READS AS FOLLOWS:  "NO SUBPOENA IN A CRIMINAL CASE MAY

16   REQUIRE THE PRODUCTION OF BOOKS, PAPERS, DOCUMENTS OR OTHER

17   OBJECTS -- THIS IS WHAT MR. CAHN TALKED ABOUT -- "AT A DATE OR

18   TIME OR PLACE OTHER THAN THE DATE AND TIME AND PLACE AT WHICH

19   THE TRIAL HEARING AND PROCEEDING AT WHICH THESE ITEMS ARE TO

20   BE OFFERED INTO EVIDENCE IS SCHEDULED TO TAKE PLACE, UNLESS

21   THE COURT HAS ENTERED AN ORDER UNDER RULE 17(C) AUTHORIZING

22   DIFFERENT PRODUCTION."

23         THEN IT GOES ON:  "MOTIONS FOR THE ISSUANCE OF A

24   SUBPOENA UNDER 17(C) SHALL BE MADE TO THE MAGISTRATE JUDGE

25   ASSIGNED TO CRIMINAL DUTY AT THE TIME OF THE FILING OF THE

31

1    MOTION AND SHALL BE RETURNABLE NO LESS THAN SEVEN DAYS FROM

2    THE FILING OF THE MOTION EXCEPT FOR GOOD CAUSE SHOWN.  ALL

3    MOTIONS OR SUBPOENA DUCES TECUM UNDER 17(C) SHALL BE SERVED ON

4    ALL PARTIES TO THE ACTION WHO MAY FILE AN OPPOSITION OR

5    RESPONSE NOT LESS THAN THREE DAYS PRIOR TO THE RETURN DATE OF

6    THE MOTION."

7              IT IS UNCLEAR TO ME WHETHER THAT PERTAINS ONLY TO A

8    REQUEST TO PRODUCE DOCUMENTS AT A DIFFERENT TIME OR GENERALLY

9    UNDER RULE 17 SUBPOENA, DO YOU HAVE TO GIVE NOTICE AND ALLOW

10   OPPORTUNITY FOR RESPONSE AND OPPOSITION.

11             MR. FORGE:  MY INTERPRETATION IS THE FORMER, YOUR

12   HONOR.  IT HAS ALWAYS BEEN MY READING THAT IT'S ONLY WHEN YOU

13   INVOKE THE OPPORTUNITY OR WHEN YOU PURSUE THE OPPORTUNITY TO

14   RECEIVE THE DOCUMENTS IN ADVANCE OF THE HEARING OR THE TRIAL

15   AND ONLY UNDER THE CIRCUMSTANCES.  THE OTHER LANGUAGE SUPPORTS

16   THAT BECAUSE WHEN IT SAYS THEY CAN'T BE RETURNED MORE THAN

17   SEVEN DAYS IN ADVANCE, THAT IMPLIED WE ARE TALKING ABOUT SOME

18   DATE OTHER THAN A FIXED DATE.

19             THE COURT:  I THINK THAT'S PROBABLY RIGHT.  I CAN'T

20   IMAGINE THAT BY LOCAL RULE OR FIAT WE COULD EXPAND ON RULE 17

21   WHICH IS THAT THE CONGRESSIONALLY APPROVED RULE OF CRIMINAL

22   PROCEDURE.  I DON'T THINK WE HAVE THE AUTHORITY TO SAY WE ARE

23   GOING TO MAKE THAT EVEN MORE EXACTING THAN CONGRESS HAS MADE

24   IT.  AND SO I THINK THAT'S PROBABLY RIGHT.  THAT WAS THE

25   SOURCE OF CONFUSION FOR ME.

32

1          I THINK THE NOTICE HAS TO BE GIVEN AND THE

2     OPPORTUNITY TO OPPOSE IF YOU ARE ASKING FOR SOME SPECIAL

3     DISPENSATION UNDER THE RULE; THAT IS, EARLY PRODUCTION TO YOUR

4     LAW OFFICE SO YOU CAN USE THE MATERIALS TO PREPARE, FOR

5     EXAMPLE.

6          DO YOU AGREE WITH THAT, MR. CAHN?  THAT'S THE NOTICE

7     LAW THAT 17.1 OF OUR LOCAL RULE GIVES.

8          MR. CAHN:  YOUR HONOR, MY PROBLEM IS THAT THE RULE

9     IS AMBIGUOUS AND HAS BEEN INTERPRETED AGAINST US IN NUMEROUS

10    SITUATIONS OVER NUMEROUS YEARS.  I AM LOATHED TO NOW SAY THAT

11    SUDDENLY THE GOVERNMENT IS SEEKING TO USE THE SUBPOENA POWER

12    OF THE COURT TO OBTAIN DOCUMENTS THAT SHOULD BE INTERPRETED A

13    DIFFERENT WAY.

14         AGAIN, MY POSITION WOULD BE IN LIGHT OF THE WAY IT

15    HAS BEEN INTERPRETED, THE GOVERNMENT'S SUBPOENA HERE WAS

16    IMPROPER.  BUT IF THIS IS GOING TO BE THE RULE, THEN IT NEEDS

17    TO BE THE RULE FROM NOW ON AND THE GOVERNMENT NEEDS TO STOP

18    OPPOSING THOSE SUBPOENAS FROM US.

19         THE COURT:  I'LL RESERVE ON THAT.  I WILL MAKE NO

20    FINAL RULING ON THAT.  THAT MAY BE A SUBJECT THAT REQUIRES

21    SOME FURTHER BRIEFING AND ARGUMENT BEFORE I MAKE A FILING

22    RULE.

23         YOU HAVE THE COURT'S ORDER, THEN.  I AM GOING TO --

24    SUBJECT TO THE RESTRICTIONS THAT I HAVE SET FORTH, THE

25    FINANCIAL AFFIDAVIT WILL BE PRODUCIBLE COME FRIDAY AT NOON

1    UNLESS THERE IS AN INTERVENING STAY GRANTED BY THE NINTH

2    CIRCUIT COURT OF APPEALS.

3         MS. CHU:  YOUR HONOR, IF I MAY REQUEST CLARIFICATION

4    ON A COUPLE OF THINGS.  FIRST, JUST TO CLARIFY THAT THE USE

5    IMMUNITY THE COURT IS GRANTING IS 6002 IMMUNITY.  THAT DOESN'T

6    INCLUDE FALSE STATEMENTS.

7         THE COURT:  NO.  I MEAN, YES.  THAT'S THE BIGGEST

8    CONCERN I HAVE.  IF WHAT YOU ARE TELLING ME IN THE MOTION IS

9    TRUE, THEN WHAT'S IN THE FINANCIAL AFFIDAVIT IS NOT TRUE.  AND

10   THIS IS WHERE I PART COMPANY WITH MR. CAHN.

11        I THINK IT IS INCUMBENT UPON THE COURT TO MAKE A

12   DETERMINATION OF THAT NOW, NOT MONTHS OR WEEKS FROM NOW, BUT

13   NOW.  AS I SAID, IT IMPLICATES OTHER ASPECTS OF THE CASE AND

14   CONDITIONS, MY THINKING ON SOME OF THESE THINGS.  IF IT IS

15   TRUE THAT I HAVE BEEN LIED TO, I DON'T LIKE THAT.

16        MS. CHU:  YOUR HONOR, JUST TO ALSO FOLLOW UP.  YOUR

17   HONOR SET TODAY AS A HEARING ON AN ORDER TO SHOW CAUSE

18   INDICATING THAT IF THE GOVERNMENT'S ALLEGATIONS WERE PROVEN AT

19   THE TIME THE ORDER SHOULD ISSUE.  AND IN THIS CASE THE

20   GOVERNMENT DID MAKE THREE MOTIONS.  ONE, FOR PRODUCTION OF THE

21   FINANCIAL AFFIDAVIT.  THAT WOULD HELP TO CLARIFY IN TERMS OF

22   FALSE STATEMENTS AND THINGS LIKE THAT, BUT TWO OTHER MATTERS

23   AS WELL.

24        THE COURT:  I CAN'T RULE ON THOSE YET, MS. CHU.

25   THOSE ARE THE SUBJECT OF CONTESTED HEARING.

1          MS. CHU:  YOUR HONOR, THE GOVERNMENT IS PREPARED TO

2     SUBSTANTIATE THAT AND IT HAS A SUBMISSION TO THE COURT.

3          THE COURT:  INDEPENDENT OF RECEIPT OF THE FINANCIAL

4     AFFIDAVIT?

5          MS. CHU:  YES, YOUR HONOR.  I WOULD SUBMIT THAT NO

6     CONTRARY INFORMATION OTHER THAN THE DECLARATION WHICH THE

7     COURT HAS ALREADY CONSIDERED AND REJECTED AS A BASIS FOR --

8          THE COURT:  WHY HAVE WE GONE THROUGH 45 MINUTES OF

9     ARGUING ABOUT THIS THINGS IF YOU ARE PREPARED TO GO FORWARD

10    AND PROVE THAT IT CONTAINS FALSITIES WITHOUT --

11         MS. CHU:  YOUR HONOR, I HAVEN'T SEEN IT.  ALL I CAN

12    DO IS DEMONSTRATE WHAT WE BELIEVE TO BE HIS FINANCIAL

13    CIRCUMSTANCES, BUT AS I PREFACED MY STATEMENTS THIS MORNING, I

14    AM PREPARED TO GO INTO FACTS.  IF THERE IS A CONCERN ABOUT

15    THAT, THAT WE SHOULD DISCUSS IN TERMS OF THE PROTOCOL AS FAR

16    AS CONDUCTING PROCEEDINGS.  I AM PREPARED TO GO FORWARD ON

17    THAT, YOUR HONOR, THAT --

18         THE COURT:  DO YOU NEED THE INFORMATION THAT'S

19    CONTAINED IN THE ENVELOPES CONTAINING SUBPOENAED RECORDS?

20         MS. CHU:  YOUR HONOR, AS MR. FORGE INDICATED, THOSE

21    WOULD HELP COMPLETE THE PICTURE, BUT GOVERNMENT IS COMFORTABLE

22    TO PRESENT YOUR HONOR WITH ALL THE INFORMATION THAT YOU NEED

23    TO MAKE A DETERMINATION AND FOR ME TO FULLY SUBSTANTIATE THAT

24    HAS NOT BEEN DISPUTED OR CONTESTED.

25         FURTHER, IT IS THE DEFENDANT'S BURDEN, YOUR HONOR,

35

1    AND THE ORDER TO SHOW CAUSE INDICATED THAT IF GOVERNMENT

2    ALLEGATIONS WERE PROVEN THEN --

3              THE COURT:  YOU HAVE THE INITIAL BURDEN WITH COMING

4    FORWARD WITH EVIDENCE.  I AM ASSUMING THAT SENIOR PROSECUTORS

5    FROM THE U.S. ATTORNEY'S OFFICE WHO WRITE THINGS AND MOTIONS

6    HAVE A GOOD-FAITH BASIS FOR TELLING ME THAT.  THAT WAS THE

7    PREDICATE, AND I QUALIFIED IT BY SAYING THE UNITED STATES HAS

8    ALLEGATIONS WHICH, IF TRUE -- IF TRUE -- MIGHT JUSTIFY THE

9    RELIEF THEY ARE SEEKING.

10             THAT ALL PRESUPPOSES THAT WE HAVE A HEARING AND THAT

11   THE INFORMATION BE SUBJECT TO CROSS-EXAMINATION.  MR. WILKES

12   WOULD HAVE A RIGHT TO BE CONFRONTED BY THE INFORMATION.  IF

13   YOU SAY YOU ARE READY TO GO FORWARD WITH THAT INFORMATION

14   TODAY, MS. CHU, YOU ARE RIGHT.  I SCHEDULED THE HEARING ON ALL

15   THREE BASES, AND IF WE CAN DO THIS INDEPENDENT OF THE

16   FINANCIAL AFFIDAVIT, THEN YOU HAVE LEAVE OF COURT TO GO

17   FORWARD TODAY.

18             MS. CHU:  I AM PREPARED, YOUR HONOR.

19             THE COURT:  ALL RIGHT.

20             MS. CHU:  JUST TO BE CLEAR, SO I DON'T STEP ON ANY

21   TOES BEFORE I EVEN START, MY INTENTION WAS TO DISCUSS SPECIFIC

22   FACTS THAT WE BELIEVE ARE RELEVANT AND ACCURATE AS TO

23   MR. WILKES IN OPEN COURT.

24             THE COURT:  THINGS THAT YOU HAVE LEARNED OTHER THAN

25   BY SUBPOENAS THAT HAVE BEEN ISSUED?  THE MATERIAL YOU ARE

36

1    ABOUT TO DISCUSS IS NOT WHAT'S IMPLICATED IN THE MOTION,

2    BECAUSE THEY HAVE CONTESTED YOUR RIGHT TO OBTAIN THIS

3    INFORMATION BY SUBPOENA.

4            IF YOU ARE TELLING ME THAT YOU HAVE SENT AGENTS OUT

5    INTO THE FIELD AND THEY HAVE DONE PROPERTY CHECKS AND THEY

6    HAVE CHECKED ON EQUITY OR YOU HAVE OTHERWISE BY PUBLIC RECORDS

7    GOTTEN INFORMATION THAT YOU BELIEVE CONTRADICTS, MS. CHU?

8            MR. FORGE:  YOUR HONOR, MAY WE HAVE JUST ONE MOMENT?

9            THE COURT:  YES.

10           MS. CHU:  YOUR HONOR, AFTER CONSULTING, WE ARE

11   PREPARED AND IT MAKES SENSE TO RESOLVE ANY OTHER ISSUES

12   REGARDING THE SUBPOENAS --

13           THE COURT:  FIRST?

14           MS. CHU:  RIGHT.  I JUST WANT TO CLARIFY THE

15   APPOINTMENT HAS LIMITED -- HAS EXPIRED AS FAR AS FEDERAL

16   DEFENDERS ON THE 330 CASE.  YOUR HONOR GRANTED A LIMITED

17   APPOINTMENT.

18           THE COURT:  THAT'S CORRECT.  I HAD THEM ASSISTING

19   MR. GERAGOS BECAUSE HE WAS OUT-OF-TOWN COUNSEL, AND THERE WAS

20   ACTUALLY SOME --

21           MS. CHU:  YOUR HONOR, I BELIEVE THERE WERE

22   LEGITIMATE GROUNDS THAT WERE EXPLAINED.

23           THE COURT:  THERE WAS CONNECTION BETWEEN THE CASES.

24           MS. CHU:  CLASSIFIED INFORMATION.  THAT HAS ENDED.

25   NO FURTHER INVOLVEMENT IN SENTENCING OR PAPERWORK OR NEW TRIAL

37

1    MOTION AND SO ON AND SO FORTH.

2            THE COURT:  THIS RULING THAT I MADE IMPLICATES BOTH

3    CASES, BECAUSE YOU ARE SEEKING TO HAVE MR. WILKES PAY BACK

4    MONEY THAT'S BEEN EXPENDED FOR THE 303 CASE.

5            MS. CHU:  YES, YOUR HONOR.

6            THE COURT:  SO IT IS STILL IN PLAY THAT WAY.  BUT

7    THIS IS, AS I UNDERSTAND THE MOTION, IT HAD BOTH CASE NUMBERS

8    IN AND IT'S PROSPECTIVE IN THE SENSE THAT YOU WANT TO

9    DISQUALIFY THE FEDERAL DEFENDERS OFFICE FROM REPRESENTING ON

10   THE WILKES/FOGGO CASE.  TRUE?

11           MS. CHU:  YES, YOUR HONOR.

12           MR. CAHN:  I JUST WANT TO SAY ONE THING ABOUT THIS.

13   I AM NOT PARTICULARLY CONCERNED ABOUT THEIR REQUEST, BUT I

14   WANT TO POINT OUT THIS SHOWS EXACTLY WHAT THIS IS ABOUT.  THEY

15   WANT TO INSERT THEMSELVES IN BETWEEN MR. WILKES AND HIS

16   COUNSEL.  THEY WANT TO MICRO-MANAGE THE WAY COUNSEL LITIGATES

17   THOSE CASES.  IT'S WRONG.  THEY HAVE GOT NO ROLE IN THAT

18   REGARD.  THEY SHOULDN'T EVEN BE TAKING ABOUT IT.

19           THE COURT:  I AM NOT GOING TO PERMIT THAT, MR. CAHN.

20   I WOULDN'T HAVE APPOINTED YOU AND MS. CHARLICK IN THE

21   BEGINNING IF I WAS DEFERENTIAL TO THE GOVERNMENT IN THAT

22   REGARD.

23           I AGREE WITH YOU.  THEY HAVE NO SAY ON WHO

24   REPRESENTS MR. WILKES.  I APPOINTED VERY FINE LAWYERS FOR YOU,

25   MR. WILKES.  I KNOW YOU HAD A CONCERN ABOUT BEING REPRESENTED

COMPUTER-AIDED TRANSCRIPTION

38

1   BY PUBLIC LAWYERS.  THESE ARE TWO OF THE BEST LAWYERS THAT

2   PRACTICE IN THE DISTRICT.  THE GOVERNMENT DOESN'T INFLUENCE

3   THAT CHOICE.  I, LIKE MR. CAHN, REJECT THAT.  I AM NOT GOING

4   TO ALLOW THEM TO INSERT THEMSELVES IN THAT.

5          AS FAR AS I AM CONCERNED, THE ONLY AREA OF INQUIRY

6   IS WHETHER YOU TOLD ME THE TRUTH ON THE FINANCIAL AFFIDAVIT.

7   IF YOU DID, YOU HAVE GOT NO WORRIES.  IF YOU DIDN'T, THEN WE

8   HAVE GOT PROBLEMS.  WE WILL LEAVE THAT FOR ANOTHER DAY.

9          I HAVE ALLEGATIONS BUT NO EVIDENCE.  COME FRIDAY, IF

10  THERE IS NO WRIT GRANTED BY THE NINTH CIRCUIT TO LOOK AT THIS,

11  THEN YOU MAY SCHEDULE THIS FOR ANOTHER HEARING, AND I WILL

12  LOOK AT IT AT THAT TIME.  I THINK THAT'S IT FOR NOW.

13         MR. DOBER, ANYTHING ON BEHALF OF MR. FOGGO?

14         MR. DOBER:  NO, YOUR HONOR.

15         THE COURT:  THANK YOU.

16         MR. DOBER:  THANK YOU.

17         THE COURT:  WHEN IS THE RENEWED MOTION TO TRANSFER

18  ON?

19         MR. FORGE:  WE INTEND TO FILE A RESPONSE THIS WEEK,

20  AND I THINK IT WILL ADDRESS EVERYBODY'S CONCERNED INTEREST.

21         THE COURT:  WHAT DOES THAT MEAN?  YOU ARE

22  ACQUIESCING, TOO?

23         MR. FORGE:  I DON'T KNOW.  WE HAVEN'T FILED A

24  POSITION YET, YOUR HONOR, BUT I THINK WE WILL ADDRESS

25  EVERYBODY'S CONCERNS.

COMPUTER-AIDED TRANSCRIPTION

1          MS. CHU:  THANK YOU, YOUR HONOR.

2                        --OOO--

3

4

5          I HEREBY CERTIFY THAT THE TESTIMONY

6          ADDUCED IN THE FOREGOING MATTER IS

7          A TRUE RECORD OF SAID PROCEEDINGS.

8

9          S/EVA OEMICK                2-12-08

10         EVA OEMICK                      DATE
           OFFICIAL COURT REPORTER

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25