```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF CALIFORNIA

            HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING


UNITED STATES OF AMERICA,         )
                                  )
            PLAINTIFF,            )  CASE NO. 07CR00329-LAB
                                  )
      VS.                         )
                                  )  SAN DIEGO, CALIFORNIA
KYLE DUSTIN FOGGO, (1)            )  FEBRUARY 14, 2007
BRENT ROGER WILKES,(2)            )  9:30 A.M.
                                  )
            DEFENDANTS.           )
_____)


                        REPORTER'S TRANSCRIPT

                         INITIAL APPEARANCE
                         BOND HEARING
                         ATTORNEY APPOINTMENT HEARING
                         ARRAIGNMENT


APPEARANCES:
FOR THE GOVERNMENT:          CAROL C. LAM, U.S. ATTORNEY
                             BY:  SANJAY BHANDARI, ESQ.
                                  PHILLIP L.B. HALPERN, ESQ.
                                  JASON A. FORGE, ESQ.
                             ASSISTANT U.S. ATTORNEYS
                             880 FRONT STREET
                             SAN DIEGO, CA. 92101

FOR DEFENDANT (1):           AKIN GUMP STRAUSS HAUER & FELD
                             BY:  MARK J. MACDOUGALL, ESQ.
                                  ANDREW J. DOBER, ESQ.
                             1333 NEW HAMPSHIRE AVE., N.W.
                             WASHINGTON, DC 20036-1564

FOR DEFENDANT (2):           GERAGOS & GERAGOS
                             BY:  MARK J. GERAGOS, ESQ.
                                  GEORGE W. BUEHLER, ESQ.
                             350 SOUTH GRAND AVENUE, 39TH FL.
                             LOS ANGELES, CA. 90071
```

```
 1 | CONTINUED APPEARANCES:
 2 | COURT REPORTER:              EVA OEMICK
                                  OFFICIAL COURT REPORTER
 3 |                              UNITED STATES COURTHOUSE
                                  940 FRONT STREET, STE. 2190
 4 |                              SAN DIEGO, CA. 92101
                                  TEL: (619) 615-3103
 5 |
 6 |
 7 |
 8 |
 9 |
10 |
11 |
12 |
13 |
14 |
15 |
16 |
17 |
18 |
19 |
20 |
21 |
22 |
23 |
24 |
25 |
```

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    **SAN DIEGO, CALIFORNIA-WEDNESDAY, FEBRUARY 14, 2007-9:30 A.M.**

2    THE CLERK:  CALLING NO. 1 ON THE CALENDAR,

3    07CR00329, UNITED STATES OF AMERICA VERSUS KYLE DUSTIN FOGGO

4    AND BRENT ROGER WILKES ON FOR ARRAIGNMENT ON THE INDICTMENT.

5    COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

6    RECORD.

7    MR. BHANDARI:  GOOD MORNING, YOUR HONOR.

8    SANJAY BHANDARI, PHIL HALPERN, AND JASON FORGE FOR

9    THE UNITED STATES.

10   THE COURT:  GOOD MORNING.

11   MR. MACDOUGALL:  GOOD MORNING, YOUR HONOR.  MARK MAC

12   DOUGALL AND ANDREW DOBER FOR DEFENDANT DUSTIN FOGGO.

13   MR. GERAGOS:  MARK GERAGOS AND GEORGE BUHLER FOR

14   MR. WILKES.

15   THE COURT:  GOOD MORNING.

16   THE CLERK:  KYLE DUSTIN FOGGO, IS THAT YOUR TRUE

17   NAME?

18   DEFENDANT FOGGO:  YES.

19   THE CLERK:  BRENT ROGER WILKES, IS THAT YOUR TRUE

20   NAME?

21   DEFENDANT WILKES:  YES.

22   THE CLERK:  EACH OF YOU ARE INFORMED THAT AN

23   INDICTMENT HAS BEEN FILED CHARGING YOU WITH CONSPIRACY, HONEST

24   SERVICES, WIRE FRAUD, MONEY-LAUNDERING, AND AIDING AND

25   ABETTING.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

4

1    COUNSEL, HAVE YOU RECEIVED A COPY AND DO YOU WAIVE
2    READING?
3            MR. MAC DOUGALL:  YES.
4            MR. GERAGOS:  YES.
5            THE COURT:  YOU ARE FURTHER INFORMED THAT YOU HAVE
6    THE RIGHT TO BE REPRESENTED BY COUNSEL AT ALL STAGES OF THE
7    PROCEEDINGS BEFORE THE COURT.  YOU HAVE THE RIGHT TO REMAIN
8    SILENT.  YOU'RE ENTITLED TO TRIAL BY JURY.  YOU HAVE A RIGHT
9    TO CONFRONT WITNESSES WHO TESTIFY.
10           HOW DO YOU EACH PLEAD TO THE INDICTMENT?
11           THE COURT:  FIRST AS TO MR. FOGGO.
12           DEFENDANT FOGGO:  NOT GUILTY, YOUR HONOR.
13           THE COURT:  AND MR. WILKES?
14           DEFENDANT WILKES:  NOT GUILTY, YOUR HONOR.
15           THE COURT:  THE ORDER IS THAT A NOT GUILTY PLEAS ARE
16   TO BE ENTERED ON BEHALF OF BOTH DEFENDANTS.
17           LET ME INQUIRE, MR. MAC DOUGALL, ARE YOU MAKING A
18   GENERAL APPEARANCE TODAY ON BEHALF MR. FOGGO?
19           MR. MAC DOUGALL:  YES, YOUR HONOR.
20           THE COURT:  MR. GERAGOS, ON BEHALF OF MR. WILKES,
21   ARE YOU MAKING A GENERAL APPEARANCE?
22           MR. GERAGOS:  I AM, YOUR HONOR.
23           THE COURT:  THE COURT RECOGNIZES, THEN, GENERAL
24   APPEARANCES BY BOTH COUNSEL ON BEHALF OF THESE TWO DEFENDANTS.
25           THE USUAL PROCEDURE IS TO SET A MOTION HEARING AND

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1  TRIAL-SETTING DATE SEVEN WEEKS OUT, BUT I'M WILLING TO BE
2  INFORMED BY COUNSEL THAT THIS CASE IS UNUSUAL OR DIFFERENT AND
3  THAT A DIFFERENT DATE SHOULD BE SET.
4              I SHOULD ASK, MR. HALPERN, CAN YOU TELL ME SOMETHING
5  ABOUT THE COMPLEXITY OF THE CASE AND THE AMOUNT OF DISCOVERY
6  OR HOW SOON IT WILL BE OUT?
7              MR. HALPERN:  YOUR HONOR, DISCOVERY IS READY TO GO,
8  IN MOST PART, AT THIS POINT.  I'VE ALREADY SPOKEN WITH COUNSEL
9  AND INFORMED THEM THAT THEY SHOULD CONTACT OUR PARALEGAL.
10 WE'RE PREPARED TO START ROLLING IT OUT THIS WEEK.
11             IT IS VOLUMINOUS IN TERMS OF THE ACTUAL DOCUMENTS,
12 MOSTLY BECAUSE THERE'S MUCH EVIDENCE OBTAINED FROM SERVERS.
13 THESE SERVERS HAVE TERABYTES OF DATA.  THAT DOESN'T MEAN THAT
14 THE AMOUNT OF DATA ON THOSE SERVERS ONCE THEY LOOK AT IT IS
15 GOING TO BE VOLUMINOUS, BUT AT LEAST IN THE BEGINNING IT IS A
16 VOLUMINOUS AMOUNT.
17             WE WILL ATTEMPT TO CATEGORIZE THE INDIVIDUAL DATA
18 THAT THEY WILL BE EXAMINING SO THAT THEY WILL BE ABLE TO GO TO
19 THE AREAS WHERE THEY THINK THERE IS DATA THAT MAY BE USEFUL IN
20 THEIR DEFENSE.  WE'LL TRY TO POINT THEM WHENEVER WE CAN TO
21 THAT SO THEY CAN GET THROUGH THIS IN A QUICK AND EASY FASHION.
22             FACTUALLY, WE DON'T BELIEVE THE CASE IS PARTICULARLY
23 COMPLEX IN TERMS OF THE CONTRACTS THAT ARE INVOLVED HERE, AT
24 LEAST IN TERMS OF WHAT THIS COURT IS USED TO AND WHAT THE
25 GOVERNMENT PRESENTS IN TERMS OF WHITE COLLAR CASES.

PDF created with pdfFactory trial version www.pdffactory.com

1      THE COURT: I'M NOT TRYING TO TRAP YOU WITH THIS
2 QUESTION BECAUSE I KNOW THIS TERM HAS DIFFERENT MEANINGS TO
3 DIFFERENT PEOPLE, BUT IS THIS AN OPEN FILE DISCOVERY CASE AS
4 FAR AS THE GOVERNMENT IS CONCERNED?
5      MR. HALPERN: WELL, NO. IT WOULDN'T BE AN OPEN FILE
6 DISCOVERY CASE. IN FACT, THERE ARE UNUSUAL DISCOVERY PROBLEMS
7 IN THIS CASE OR ISSUES THAT I THINK MR. BHANDARI IS PREPARED
8 TO ADDRESS AT THIS POINT.
9      THE COURT: MR. BHANDARI.
10     MR. BHANDARI: YOUR HONOR, I SUPPOSE WHAT
11 MR. HALPERN WAS ALLUDING TO WAS THE EXISTENCE OF CLASSIFIED
12 INFORMATION THAT WOULD BE RELATED TO THE CRIMINAL CONDUCT
13 HERE. THE PROBLEM IS OBVIOUS. THE DEFENDANT WAS A
14 HIGH-RANKING OFFICIAL AT THE CENTRAL INTELLIGENCE AGENCY. HIS
15 OVERSEAS LOCATION WHERE HE WAS IS A CLASSIFIED MATTER. SO
16 CLASSIFIED -- THERE ARE CLASSIFIED INFORMATION PROBLEMS WITH
17 RESPECT TO A NUMBER OF THE TRANSACTIONS AND EVENTS THAT WE
18 WILL BE PRESENTING AS PROOF AT TRIAL.
19     NOW, WE THINK THAT THE TRIAL CAN PROCEED ENTIRELY
20 USING UNCLASSIFIED INFORMATION. BUT SIMPLY BY VIRTUE OF THE
21 CONTEXT IN WHICH THE CRIMINAL ACTIVITY OCCURRED, THERE WILL
22 NEED TO BE A COURT SECURITY OFFICER APPOINTED, IN OUR VIEW.
23 THAT WAS A MOTION WE FILED THIS MORNING FOR YOUR HONOR TO
24 CONSIDER THE NOMINEES THAT THE DEPARTMENT OF JUSTICE HAS
25 SUPPLIED AS COURT SECURITY OFFICERS.

PDF created with pdfFactory trial version www.pdffactory.com

1         THE COURT:  PRESUMABLY, THE CONCERN IS THAT AS TO
2    MR. WILKES -- MR. FOGGO KNOWS WHERE HE WAS ASSIGNED.  SO IT'S
3    NOT A QUESTION OF REVEALING TO HIM WHERE HE WAS AT VARIOUS
4    TIMES.
5         IS THAT WHAT YOUR CONCERN IS?
6         MR. BHANDARI:  YOUR HONOR, WITHIN ONE WEEK, WE
7    ANTICIPATE FILING WITH YOUR HONOR A BRIEF THAT WILL TAKE YOUR
8    HONOR THROUGH THE UNDERLYING CRIMINAL CONDUCT, ALL THE
9    UNDERLYING FACTS, AND ALSO ALERT YOUR HONOR TO THE CLASSIFIED
10   ISSUE.  IT'S NOT SIMPLY WHERE MR. FOGGO WAS.  THERE ARE OTHER
11   ISSUES.
12        THE COURT:  MR. MACDOUGALL, DO YOU HAVE A POSITION
13   ON THE DATE THAT'S BEEN SET FOR PRE-TRIAL MOTIONS?
14        MR. MACDOUGALL:  WE WILL BE FILING A MOTION SEEKING
15   ACCESS TO A VARIETY OF CLASSIFIED MATERIALS UNDER CIPA, AND
16   THAT PROCESS, AS THE COURT IS AWARE, IS A LENGTHY PROCESS AND
17   ONE FOR WHICH THERE IS A LIMITED AMOUNT OF CASE LAW.
18        WITH THAT, YOUR HONOR, I THINK SEVEN WEEKS MIGHT BE
19   A BIT TOO SOON.
20        THE COURT:  WHAT IF WE WERE JUST TO SET THE
21   DISCOVERY MOTION OUT SEVEN WEEKS, AND I'LL SET IT THE NEXT DAY
22   FOR ANY OTHER SUBSTANTIVE PRE-TRIAL MOTIONS.
23        MR. MACDOUGALL:  THAT WILL WORK.
24        THE COURT:  YOU'RE IN AGREEMENT WITH THAT,
25   MR. GERAGOS?

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

8

1  MR. GERAGOS: I HATE TO BE A FLY IN THE OINTMENT.
2  I'VE ONLY GOT A BRIEF FAMILIARITY WITH THE INDICTMENT HAVING
3  PULLED IT UP ON THE UNION-TRIBUNE WEBSITE AND TAKING A LOOK AT
4  IT YESTERDAY.
5  IN TAKING A LOOK AT IT, IT LOOKS FAIRLY SIMPLE TO
6  ME. TO SOME DEGREE, I UNDERSTAND FROM THEIR STANDPOINT WHY
7  THEY NEED TO GO THE ROUTE THEY DO.
8  FROM OUR STANDPOINT, I'VE GOT TWO INDICTMENTS HERE.
9  THE OTHER ONE APPEARS TO ME -- I DON'T WANT TO GET AHEAD OF
10 OURSELVES, BUT THE OTHER ONE APPEARS TO ME TO BE ONE THAT'S
11 UNUSUALLY COMPLEX JUST IN TERMS OF THE SHEER FACTUAL
12 INVESTIGATION THAT WILL NEED TO BE DONE.
13 THIS ONE, FROM MY CLIENT'S STANDPOINT, I'VE
14 SERIOUSLY CONTEMPLATED ASKING THE COURT TO PUT US ON A FAST
15 TRACK. I THINK WE MIGHT VERY WELL WANT TO TRY THIS CASE
16 WITHIN THE STATUTORY PERIOD.
17 THE COURT: WELL, MY USUAL PRACTICE IS TO SET
18 MOTIONS SEVEN WEEKS OUT IN ALL CASES. WHAT I'LL DO IN THIS
19 CASE, GIVEN THE REPRESENTATIONS FROM THE UNITED STATES AND
20 MR. MACDOUGALL'S INCLINATION TO FILE SPECIAL DISCOVERY
21 MOTIONS, IS SET THE DISCOVERY MOTION OUT SEVEN WEEKS IN THIS
22 CASE. AND I'LL ENTERTAIN FURTHER ARGUMENT FROM YOU LATER ON
23 WHEN THE CASE OUGHT TO BE TRIED ON THIS PARTICULAR INDICTMENT.
24 TISH, IF YOU CAN GIVE ALL COUNSEL A DATE SEVEN WEEKS
25 OUT FOR DISCOVERY, PLEASE.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

```
 1             THE CLERK:  APRIL 2ND AT 2:00.
 2             THE COURT:  IS THAT A CONVENIENT DATE AND TIME FOR
 3   COUNSEL, APRIL 2ND, 2:00?
 4             MR. GERAGOS:  YES.
 5             MR. MACDOUGALL:  YES, YOUR HONOR.
 6             THE COURT:  NOW, LET ME TURN TO THE CONDITIONS OF
 7   RELEASE.
 8             MR. HALPERN, MR. FORGE, MR. BHANDARI, DOES THE
 9   GOVERNMENT HAVE A POSITION REGARDING CONDITIONS OF RELEASE AS
10   TO MR. WILKES?
11             MR. HALPERN:  WE DO.  I'VE DISCUSSED IT WITH THE
12   DEFENSE COUNSEL.  WE BELIEVE THAT A $2 MILLION BOND WOULD BE
13   ADEQUATE IN THIS CASE.  IT WOULD BE SECURED BY REAL PROPERTY.
14   I BELIEVE THAT THE REAL PROPERTY CONSISTS OF THE DEFENDANT'S
15   HOUSE AS WELL AS THE HOUSES OF TWO OF HIS BROTHERS.  THE
16   EQUITY IN THOSE HOUSES WOULD APPROACH THAT 1.5 MILLION.  THE
17   REST COULD BE SECURED ON BOND.  WE DO ALSO BELIEVE HE SHOULD
18   RELINQUISH HIS PASSPORT, AND THE COURT SHOULD LOOK INTO THE
19   OTHER NORMAL CONDITIONS.
20             THE COURT:  MR. GERAGOS, IS THAT AN AGREEMENT
21   BETWEEN THE PARTIES?
22             MR. GERAGOS:  THAT IS.  MR. HALPERN AND I WORKED ON
23   THAT THIS MORNING.
24             THE COURT:  MR. WILKES, THE COURT SETS ON THIS CASE
25   THE FOLLOWING CONDITIONS OF RELEASE:  YOU'RE TO POST A SURETY
```

PDF created with pdfFactory trial version www.pdffactory.com

1  BOND SECURED BY PROPERTY IN THE AMOUNT OF $2 MILLION.
2             DO YOU HAVE AN ACTIVE PASSPORT?
3             DEFENDANT WILKES:  NO.
4             THE COURT:  YOU'RE NOT TO LEAVE THE UNITED STATES.
5             THERE'S NO REASON WHY HE CAN'T BE FREE TO TRAVEL IN
6  THE UNITED STATES, IS THERE?
7             MR. HALPERN:  ABSOLUTELY NOT.
8             THE COURT:  TRAVEL IS RESTRICTED TO WITHIN THE
9  UNITED STATES.
10            YOU'RE NOT TO VIOLATE ANY LAWS.  I CAN'T THINK OF
11 ANY OTHER CONDITIONS I WOULD SET IN THIS CASE UNLESS YOU HAVE
12 SOME SUGGESTIONS.
13            MR. HALPERN:  YES, YOUR HONOR, THERE IS ONE, WHICH
14 IS SLIGHTLY UNUSUAL.  MR. GERAGOS AND I DISCUSSED IT.
15            THE ARRIVAL AT A BONDING AMOUNT WAS SOMEWHAT
16 DIFFICULT FOR THE GOVERNMENT.  OBVIOUSLY, HE HAS LONG TIES TO
17 THE COMMUNITY HERE.  HE'S KNOWN ABOUT THE CHARGES.  ALL OF
18 THESE THINGS CERTAINLY AUGER HIS APPEARANCE IN COURT TODAY.
19 WE ALLOWED SELF-SURRENDER WITH THAT IN MIND.
20            ON THE OTHER HAND, HIS FINANCIAL CONDITION AS TO
21 WHAT WE READ IN THE NEWSPAPERS AS WELL AS FROM LOOKING AT ALL
22 THE DOCUMENTS WE'VE ASSEMBLED IS CERTAINLY ONE THAT DOESN'T
23 SUGGEST THAT HE HAS A LOT OF FINANCIAL TIES TO THE COMMUNITY.
24            THE ONE THING THAT CONCERNED THE GOVERNMENT WAS WHEN
25 WE WERE LOOKING AT HIS FINANCIAL RECORDS, WE NOTICED THAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   THERE WERE A NUMBER OF FOREIGN BANK ACCOUNTS.  I SPOKE TO
2   MR. GERAGOS ABOUT THIS.  SOME OF THESE BANK ACCOUNTS, AT LEAST
3   ONE OF THEM, WAS USED, IN OUR OPINION, IN THE BRIBERY SCHEME.
4   AND THEREFORE, IT WAS VERY IMPORTANT TO DETERMINE WHAT ASSETS
5   WERE IN THE FOREIGN BANK ACCOUNTS.
6          MR. GERAGOS HAS REPRESENTED, AND I TAKE HIM AT HIS
7   WORD, THAT MR. WILKES WILL PROVIDE THE GOVERNMENT AND THE
8   COURT SOME STATEMENTS FOR THE LAST SEVERAL MONTHS FROM THESE
9   BANK ACCOUNTS AND CERTIFY THAT THESE ARE ALL THE BANK ACCOUNTS
10  HE HAS AND THESE ARE, IN FACT, THE ASSETS IN THIS BANK
11  ACCOUNT.  WITH THAT IN MIND, I DO THINK THAT THE BAIL IS
12  APPROPRIATE.
13         THE ONE OTHER MATTER HAS TO DO WITH THE SALE OF HIS
14  CORPORATE HEADQUARTERS.  IT WOULD APPEAR -- THIS IS SOMETHING
15  THAT THE GOVERNMENT IS IN FAVOR OF -- THERE ARE MANY, MANY
16  DEBTORS THAT ARE INTERESTED IN SEEING THE RESULTS OF THAT
17  SALE.  THE GOVERNMENT CERTAINLY DOESN'T WANT TO INTERFERE WITH
18  THAT.  IT'S IMPORTANT THAT WHOEVER IS OWED MONEY GETS MONEY
19  AND WE DO NOTHING TO INTERFERE WITH THE SALE.  SO I DON'T WANT
20  TO ENCUMBER THE SALE IN ANY WAY.
21         BUT IF, IN FACT, THE SALE IS, I BELIEVE, OVER
22  $12 MILLION OR $15 MILLION I THINK IT IS, THERE WILL BE
23  ADDITIONAL ASSETS THAT MR. WILKES WILL RECEIVE.  AND IT COULD
24  BE AS MUCH AS $3 MILLION.  IF THAT DOES OCCUR, I THINK THAT
25  THE COURT SHOULD, IN FACT -- WE SHOULD REVISIT THE

1  APPROPRIATENESS OF THE BOND SO HE NOT BE ALLOWED TO SIMPLY
2  HAVE THOSE ASSETS UNENCUMBERED IN ANY WAY.
3              THE COURT:  MR. WILKES, HOW LONG HAVE YOU LIVED IN
4  SAN DIEGO COUNTY?
5              DEFENDANT WILKES:  ALL MY LIFE.
6              THE COURT:  MR. GERAGOS, ARE YOU IN AGREEMENT TO
7  PROVIDE A CERTIFIED STATEMENT REGARDING THE AMOUNTS IN THE
8  OVERSEAS BANK ACCOUNTS WITHIN THREE WEEKS?
9              MR. GERAGOS:  WHAT I SUGGESTED TO MR. HALPERN IS
10 THERE'S ONE ACCOUNT THAT PIQUED THEIR INTEREST.  IT'S BEEN
11 CLOSED FOR FIVE YEARS.  I WILL GIVE A CERTIFIED STATEMENT AS
12 TO THAT.  I ALSO BROUGHT TO HIS ATTENTION THAT THERE IS ONE
13 OTHER ACCOUNT.  I'M TOLD IT'S GOT $250 IN IT AND THAT HE
14 REPORTS IT ON HIS TAX RETURN.  I'LL SUPPLY A COPY OF THAT
15 SCHEDULE AND ALSO INCLUDE THAT CERTIFICATION WITHIN THREE
16 WEEKS.
17             THE COURT:  THE COURT ORDERS THAT AS AN ADDITIONAL
18 CONDITION.  I'M NOT INCLINED TO DO ANYTHING ABOUT THE SALE OF
19 THE BUSINESS.  I THINK THAT'S GOING TO HAPPEN IN ORDINARY
20 COURSE.  I THINK $2 MILLION IS SUFFICIENT BOND FOR A FELLOW
21 WHO'S BEEN HERE HIS ENTIRE LIFE.  SO I'LL LEAVE IT AT THAT.
22             MR. WILKES, LET ME REMIND YOU, I DON'T KNOW WHETHER
23 YOU'VE GOT FIREARMS IN THE HOUSE.  IT'S A VIOLATION OF FEDERAL
24 LAW TO POSSESS A FIREARM OR AMMUNITION IF YOU'RE UNDER
25 INDICTMENT ON A FEDERAL CRIME.  IF THAT'S THE CASE, FIREARMS

PDF created with pdfFactory trial version www.pdffactory.com

1  HAVE TO GO OUT.  GIVE THEM TO SOMEBODY ELSE.  GIVE THEM TO
2  YOUR LAWYER.  YOU SHOULD NOT BE IN POSSESSION OF ANY FIREARMS.
3          THOSE ARE THE CONDITIONS OF RELEASE AS TO
4  MR. WILKES.
5          AS TO MR. FOGGO?
6          MR. BHANDARI:  YES, YOUR HONOR.
7          WE'VE REACHED AN AGREEMENT TO THE BOND FOR
8  MR. FOGGO.  IT WOULD BE A $200,000 BOND SECURED UP TO $100,000
9  BY SIGNATURES OF TWO OTHER FINANCIALLY RESPONSIBLE ADULTS.
10 AGAIN, WE DON'T ANTICIPATE ANY NEED TO RESTRICT TRAVEL WITHIN
11 THE UNITED STATES.  ANY INTERNATIONAL TRAVEL WILL BE UP TO
12 PRE-TRIAL SERVICES.
13         THE ONLY SPECIAL CONDITION WITH RESPECT TO MR. FOGGO
14 WE WOULD ASK IS THAT ANY DISSEMINATION OF CLASSIFIED
15 INFORMATION BE ON COUNSEL.  COUNSEL HAS BEEN PREVIOUSLY
16 CLEARED BY THE CIA TO RECEIVE CLASSIFIED INFORMATION AND WILL
17 KEEP IT IN ACCORDANCE WITH APPROPRIATE PROCEDURES.  ANY
18 DISSEMINATION BEYOND THAT MUST BE IN CONCURRENCE WITH THE
19 COURT SECURITY OFFICE.
20         THE COURT:  IS HE CURRENTLY EMPLOYED BY THE UNITED
21 STATES GOVERNMENT, MR. FOGGO?
22         MR. MACDOUGALL:  NO, YOUR HONOR.  MR. FOGGO RETIRED
23 IN AUGUST.
24         THE COURT:  SO I'M NOT CLEAR ON THE --
25         HOW WOULD HE DISSEMINATE CLASSIFIED INFORMATION IF

PDF created with pdfFactory trial version www.pdffactory.com

1  HE'S NO LONGER EMPLOYED?
2           MR. BHANDARI:  YOUR HONOR, BY VIRTUE OF HIS
3  POSITION, WHAT HE WAS DOING, IT'S IN HIS HEAD.
4           MR. MACDOUGALL:  THAT'S CORRECT.  WHAT MR. BHANDARI
5  IS ASKING FOR IS THE PRACTICE THAT MR. FOGGO HAS OBSERVED ALL
6  OF HIS CAREER IN THE C.I.A.  SO HE'S NOT ASKING FOR ANYTHING
7  BEYOND WHAT MR. FOGGO HAS DONE AND, IN FACT, WHAT HE'S DONE
8  WITH US.
9           THE COURT:  MR. FOGGO, DO YOU HAVE ANY INTENTION TO
10 TRAVEL OUTSIDE THE COUNTRY?
11          DEFENDANT FOGGO:  I HAVE NO INTENTION OF TRAVELING
12 OUTSIDE THE COUNTRY.  I DO HAVE RELATIVES OUTSIDE.  IN THE
13 EVENT OF A DEATH OR SOMETHING, I WOULD APPROACH -- I TRAVELED
14 LAST SUMMER AND LET COUNSEL KNOW SO THERE WAS NO UNEASE
15 ABOUT.
16          THE COURT:  THE COURT SETS THE FOLLOWING CONDITIONS
17 FOR MR. FOGGO'S RELEASE:  HE'S TO POST A PERSONAL SURETY BOND
18 IN THE AMOUNT OF $200,000 SECURED TO THE AMOUNT OF $100,000 BY
19 THE SIGNATURES OF TWO FINANCIALLY RESPONSIBLE PEOPLE.  YOU'RE
20 TO SIGN THE BOND, TOO, MR. FOGGO, ON YOUR OWN BEHALF.
21          TRAVEL WILL BE RESTRICTED TO THE UNITED STATES.  IF
22 SOMETHING COMES UP, MR. MACDOUGALL, YOU CAN PETITION THE COURT
23 FOR SOME DEVIATION FROM THE TRAVEL RESTRICTION.
24          MR. FOGGO, DO WHAT YOU'VE ALWAYS DONE AND KEEP STATE
25 SECRETS TO YOURSELF.  YOU'RE NOT TO DISSEMINATE THAT

PDF created with pdfFactory trial version www.pdffactory.com

| | |
|---|---|
| 1 | INFORMATION TO ANYONE. |
| 2 | YOU'RE TO VIOLATE NO LAWS. |
| 3 | I DON'T KNOW WHETHER IN YOUR FORMER POSITION YOU HAD |
| 4 | AUTHORITY TO CARRY A FIREARM OR IF YOU HAVE FIREARMS IN THE |
| 5 | HOUSE, BUT THE SAME ADMONITION APPLIES TO YOU AS I GAVE TO |
| 6 | MR. WILKES.  NO FIREARMS OR AMMUNITION IN YOUR POSSESSION.  IF |
| 7 | YOU HAVE SUCH THINGS, GET THEM OUT OF YOUR POSSESSION RIGHT |
| 8 | AWAY. |
| 9 | ANYTHING ELSE WITH RESPECT TO THESE GENTLEMEN? |
| 10 | MR. BHANDARI:  NOTHING FROM THE GOVERNMENT, YOUR |
| 11 | HONOR. |
| 12 | THE COURT:  MR. FOGGO AND MR. MACDOUGALL, YOU'RE |
| 13 | GOING TO HAVE TO GO DOWN, AND MR. FOGGO WILL BE BOOKED AND |
| 14 | RELEASED TODAY.  I'LL PERMIT YOU TO GO DOWN THROUGH THE PUBLIC |
| 15 | ELEVATORS IN THE BOTTOM FLOORS WHERE THE MARSHAL'S OFFICE IS. |
| 16 | ARE YOU FAMILIAR WITH THAT PROCEDURE, |
| 17 | MR. MACDOUGALL? |
| 18 | MR. MACDOUGALL:  YES, I AM. |
| 19 | THE COURT:  IF YOU'LL JUST TAKE HIM DOWN AND TELL |
| 20 | HIM HE'S REPORTING TO BE BOOKED AND RELEASED. |
| 21 | MR. WILKES, YOU'LL HAVE TO DO THAT, TOO, BECAUSE |
| 22 | THERE'S A SECOND INDICTMENT ON WHICH YOU NEED TO BE ARRAIGNED. |
| 23 | DO YOU HAVE A PASSPORT, MR. FOGGO? |
| 24 | DEFENDANT FOGGO:  YES. |
| 25 | THE COURT:  I'M GOING TO ASK THAT YOU SURRENDER THAT |

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1  AS A CONDITION OF PRE-TRIAL RELEASE CONSISTENT WITH THE
2  CONDITIONS THAT I IMPOSED.  IF SOMETHING COMES UP AS YOU
3  HYPOTHESIZED, LIKE A DEATH IN THE FAMILY, THEN I WOULD
4  CERTAINLY ALLOW YOU TO GO ATTEND TO THAT.  BUT FOR THE TIME
5  BEING, YOU'RE TO SURRENDER YOUR PASSPORT.
6              ALL RIGHT.  I'LL SEE YOU BACK, MR. FOGGO, ON
7  APRIL 2ND AT 2:00, AT WHICH TIME WE'LL TAKE UP DISCOVERY
8  MOTIONS.
9              ONE LAST THING.
10             MR. HALPERN, I NOTICED THAT RELATED CASE NOTICES
11 WERE FILED IN BOTH OF THESE CASES.
12             CAN YOU ARTICULATE FOR ME HOW THIS CASE IS RELATED?
13 I'M ASSIGNED THIS CASE BECAUSE I WAS ASSIGNED CONGRESSMAN
14 CUNNINGHAM'S CASE.  I UNDERSTAND THE RELATIONSHIP HAVING READ
15 THE INDICTMENT IN THE FIRST CASE.  I THINK I UNDERSTAND THE
16 RELATIONSHIP HERE, BUT I ALSO WOULD LIKE YOU TO HUM A FEW BARS
17 ABOUT WHY THIS CASE IS RELATED TO THE EARLIER CASE.
18             MR. HALPERN:  CERTAINLY, YOUR HONOR.
19             AS YOU KNOW, BOTH OF THESE CASES STEM FROM THE SAME
20 INVESTIGATION.  AND IN DOING SO, THERE IS A VAST OVERLAP,
21 ESPECIALLY IN THE AMOUNT OF DISCOVERY, BUT AS WELL IN THE
22 WITNESSES THAT THE COURT WILL DEAL WITH AS WELL AS THE FACTUAL
23 SETTING HERE.
24             MR. WADE WAS ONE OF THE CO-CONSPIRATORS IN THE
25 INITIAL CUNNINGHAM-RELATED INDICTMENT.  IN FACT, WORKED FOR

PDF created with pdfFactory trial version www.pdffactory.com

1   MR. WILKES FOR A LONG PERIOD OF TIME BRINGING HIM INTO THE
2   CONSPIRACY AS WELL AS ONE OF THE MAJOR WITNESSES THAT WILL
3   HAVE TO APPEAR.
4           THAT IS SIMILAR TO A NUMBER OF OTHER WITNESSES WHICH
5   HAVE BEEN EMPLOYED BY MR. WILKES THAT ARE GOING TO BE ASKED TO
6   TESTIFY IF, IN FACT, THIS CASE GOES TO TRIAL, IN BOTH OF THE
7   TRIALS.
8           THE COURT:  YOU'RE TELLING ME THAT THE EVIDENCE AND
9   THE WITNESSES ON THE CASE I'VE JUST ARRAIGNED MR. FOGGO AND
10  MR. WILKES ON IS GOING TO OVERLAP WITH THE WILKES/HOWARD CASE?
11          MR. HALPERN:  WILKES/MICHAEL, YOUR HONOR.
12          THE COURT:  I'M SORRY.  TELL ME AGAIN, MR. HALPERN.
13          MR. HALPERN:  WILKES/MICHAEL.
14          THE ANSWER TO YOUR QUESTION IS SIMPLY YES.  AS WE GO
15  THROUGH THE TRIAL, YOU'RE GOING TO SEE WE'RE GOING TO HAVE TO
16  DEAL WITH SOME OF THE SIMILAR LEGAL ISSUES.  IN PARTICULAR,
17  STARTING AT THE NEXT HEARING, DISCOVERY OVERLAPS, I WOULD SAY,
18  70 PERCENT BETWEEN THE TWO CASES.
19          THE COURT:  IS THERE A REASON THAT THE CHARGES WERE
20  NOT CONSOLIDATED IN A SINGLE INDICTMENT THAT I SHOULD KNOW
21  NOW, OR IS IT SOMETHING THAT YOU WANT TO ADDRESS IN THE PAPERS
22  LATER?
23          MR. HALPERN:  NO, YOUR HONOR.  IT WAS SIMPLY OUR
24  BELIEF THAT AT THE END OF THE DAY, MR. FOGGO CLEARLY WOULD
25  HAVE WANTED SEVERANCE AND MR. MICHAEL WOULD HAVE WANTED A

PDF created with pdfFactory trial version www.pdffactory.com

1  SEVERANCE.  THIS IS SOMETHING THAT THE COURT I KNOW CONCERNS
2  ITSELF WITH ON A DAILY BASIS.
3         AND IT IS OUR OPINION THAT IF WE WENT DOWN THAT
4  ROAD, THE COURT WOULD BE FACED WITH AN ISSUE OF PROTECTING THE
5  RIGHTS OF THOSE INDIVIDUALS TO A FAIR TRIAL AND WOULD LIKELY
6  HAVE SEVERED THE CASE RATHER THAN HAVE THAT HAPPEN TO THE CASE
7  THE LAST MINUTE, BECAUSE IT'S BETTER TO HAVE THE CASE PROCEED
8  ALONG SEPARATE TRACKS SO THE COURT CAN CONTROL EACH ONE
9  INDIVIDUALLY.
10         THE COURT:  MR. MACDOUGALL, MR. GERAGOS, DO YOU HAVE
11 ANY POSITION REGARDING THE NOTICE OF RELATED CASE ON THE
12 CUNNINGHAM MATTER?
13         MR. GERAGOS:  WE DO NOT.
14         MR. MACDOUGALL:  WITHOUT WAIVING THE RIGHT TO FILE A
15 MOTION FOR SEVERANCE DOWN THE ROAD, NOT AT THE MOMENT.
16         THE COURT:  ALL RIGHT.  THANK YOU, GENTLEMEN.
17         MR. FOGGO, YOU'RE EXCUSED.  YOU NEED TO GO TO THE
18 MARSHAL'S OFFICE BEFORE YOU LEAVE THE BUILDING.
19                           --oOo--
20             I HEREBY CERTIFY THAT THE TESTIMONY
21             ADDUCED IN THE FOREGOING MATTER IS
22             A TRUE RECORD OF SAID PROCEEDINGS.
23             S/ EVA OEMICK              1-30-09
24             EVA OEMICK
               OFFICIAL COURT REPORTER    DATE
25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com