1
                  UNITED STATES DISTRICT COURT
                SOUTHERN DISTRICT OF CALIFORNIA

2

        HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING

3

4
UNITED STATES OF AMERICA,       )
                            )
5
            PLAINTIFF,     )  CASE NO. 07CR00329-LAB
                            )
6
      VS.               )
                            )  SAN DIEGO, CALIFORNIA
7
KYLE DUSTIN FOGGO,          )  AUGUST 15, 2007
                            )  10:00 A.M.
8
                            )
            DEFENDANT.     )
9
_____)

10
                 REPORTER'S TRANSCRIPT

11
APPEARANCES:
FOR THE GOVERNMENT:          KAREN P. HEWITT, U.S. ATTORNEY
12
                       BY: PHILLIP L.B. HALPERN, ESQ.
                          JASON A. FORGE, ESQ.
13
                          VALERIE CHU, ESQ.
                      ASSISTANT U.S. ATTORNEYS
14
                      880 FRONT STREET
                      SAN DIEGO, CA. 92101
15
                           -AND-
                      OFFICE OF GENERAL COUNSEL
16
                      CENTRAL INTELLIGENCE AGENCY
                      BY: JOHN L. MCPHERSON, ESQ.
17
                          CHRISTIAN RICCIARDIELLO, ESQ
                      ASSOCIATE GENERAL COUNSEL
18
                      WASHINGTON, DC 20505

19
FOR DEFENDANT FOGGO:        AKIN GUMP STRAUSS HAUER & FELD
                      BY: MARK MAC DOUGALL, ESQ.
20
                          ANDREW J. DOBER, ESQ.
                      1333 NEW HAMPSHIRE AVE., N.W.
21
                      WASHINGTON, DC 20036-1564

22
COURT REPORTER:             EVA OEMICK
                      OFFICIAL COURT REPORTER
23
                      UNITED STATES COURTHOUSE
                      940 FRONT STREET, STE. 2190
24
                      SAN DIEGO, CA 92101
                      TEL: (619) 615-3103
25

1    SAN DIEGO, CALIFORNIA - WEDNESAY, AUGUST 15, 2007-10:00 A.M.

2            THE CLERK:  NO. 1A, 07CR0329, UNITED STATES OF

3    AMERICA VERSUS KYLE DUSTIN FOGGO.

4            IF COUNSEL COULD STATE THEIR APPEARANCES FOR THE

5    RECORD, PLEASE.

6            MR. HALPERN:  PHIL HALPERN, JASON FORGE, AND VALERIE

7    CHU FOR THE UNITED STATES ALONG WITH JOHN MCPHERSON AND

8    CHRISTIAN RICCIARDIELLO FROM THE CIA.

9            MR. MAC DOUGALL:  GOOD MORNING, YOUR HONOR.  MARK

10   MAC DOUGALL FOR DEFENDANT KYLE DUSTIN FOGGO.

11           THE COURT:  GOOD MORNING.

12           THE COURT HAS RECEIVED FROM BOTH COUNSEL FOR THE CIA

13   AND COUNSEL FOR MR. FOGGO REALLY WHAT AMOUNT TO LETTER BRIEFS.

14   I READ THE EXCHANGE OF LETTERS AND E-MAILS GOING BACK TO 2006

15   AND CONTINUING ON THROUGH AUGUST OF 2007.  I'VE READ THE

16   ARGUMENTS HAVING TO DO WITH WHETHER THE COURT HAS JURISDICTION

17   TO DETERMINE THE ISSUE THAT'S IN DISPUTE, AND I HAVE SOME

18   QUESTIONS ABOUT THAT ISSUE.

19           IN THE FIRST INSTANCE, MR. MAC DOUGALL, THE QUESTION

20   I HAVE HAS NOTHING TO DO WITH SUBSTANCE.  IT HAS MORE TO DO

21   WITH THE PROCEDURE.  I THINK IT'S APPROPRIATE THAT THE UNITED

22   STATES, THROUGH THE U.S. ATTORNEY'S OFFICE, REPRESENT THE

23   GOVERNMENT ON THIS ISSUE.  I CALL IT A JURISDICTIONAL ISSUE.

24   IT'S THE ISSUE OF WHETHER YOUR RELIEF AT THIS POINT IS THROUGH

25   ME OR THROUGH THE ADMINISTRATIVE PROCEDURES ACT.  I THINK

PDF created with pdfFactory trial version www.pdffactory.com

3

1    THAT'S A PURELY LEGAL ISSUE.

2         I'VE READ YOUR PAPERS AND THE EXXON CASE AND

3    UNDERSTAND THE ARGUMENT.  IT SEEMS TO ME THE UNITED STATES

4    ATTORNEY'S OFFICE IS IN CHARGE OF THE CASE AND THAT THEY OUGHT

5    TO TAKE THE LEAD ON THAT LEGAL ISSUE.  I UNDERSTAND BECAUSE OF

6    THE PROTECTIVE ORDER AND THE INSTRUCTIONS I'VE GIVEN TO CIA

7    COUNSEL NOT TO DISCLOSE THE NATURE OF THE PROFFERS TO THE U.S.

8    ATTORNEYS, THAT THAT IS A MATTER THAT CONCERNS THE COURT,

9    COURT SECURITY OFFICER, COUNSEL FOR THE CIA, AND YOU.  I DON'T

10   INTEND TO GET INTO THAT IN THE PRESENCE OF THE U.S.

11   PROSECUTORS.

12        THE FIRST ISSUE THAT I NEED TO RESOLVE IS WHETHER I

13   CAN RESOLVE THIS DISPUTE, WHETHER I HAVE THE POWER AND THE

14   AUTHORITY TO RESOLVE IT, OR WHETHER YOUR RELIEF LIES THROUGH

15   THAT ADMINISTRATIVE PROCEDURES ACT.

16        DO YOU AGREE THAT THE U.S. GOVERNMENT THROUGH THE

17   U.S. ATTORNEY'S OFFICE OUGHT TO AT LEAST HANDLE THAT PORTION

18   OF THE HEARING?

19        MR. MAC DOUGALL:  YOUR HONOR, THERE'S NO QUESTION

20   FACTUALLY THAT THE CIA AND THE U.S. ATTORNEY'S OFFICE ARE A

21   SINGLE PARTY HERE.  IF WE'RE ABLE TO GET INTO THE EX PARTE

22   PRESENTATION, THAT'S GOING TO BE AN IMPORTANT ISSUE.  THE CIA

23   IS WELL-REPRESENTED.  AND OUR CONCERN, OUR FUNDAMENTAL

24   CONCERN, IS THAT THE INVESTIGATIVE WORK THAT WE'VE DONE, OUR

25   WORK PRODUCT, NOT BLEED OVER.  IF THE COURT IS SUGGESTING THAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

4

1    THE ARGUMENT WITH RESPECT TO THE APA APPLICATION BE MADE BY

2    THE U.S. ATTORNEY'S OFFICE, I DON'T THINK WE HAVE ANY

3    OBJECTION TO THAT.

4              THE COURT:  IT SEEMS TO ME THAT THEY'RE IN CHARGE OF

5    THE CRIMINAL CASE HERE.  AND THE ISSUE OF WHICH THE COURT CAN

6    MAKE A DECISION ON THE MERITS ON THE CRIMINAL CASE, THAT LEGAL

7    ISSUE OUGHT TO BE ENTRUSTED TO THEM IN THE FIRST INSTANCE.

8    IT'S NOT THAT I HAVE ANY LACK OF CONFIDENCE OR FAITH IN THE

9    CIA COUNSEL'S ABILITY TO ARGUE THE POSITION.  BUT IT JUST

10   SEEMS TO ME THAT THAT ISSUE BEARS MORE ON THE CRIMINAL CASE IN

11   FRONT OF ME AND HOW THAT SHOULD BE DECIDED, WHETHER BY ME OR

12   WHETHER YOU OUGHT TO BE REQUIRED TO FILE A LAWSUIT CHALLENGING

13   THE CIA'S DETERMINATION.  WE CAN DO THAT, DISCUSS THAT,

14   WITHOUT ANY DISCUSSION OF THE MERITS WHATSOEVER.  IT'S A

15   PURELY JURISDICTIONAL ISSUE, I THINK.

16             MR. MAC DOUGALL:  I AGREE WITH THAT, YOUR HONOR.

17   AND WE'RE INDIFFERENT AS TO WHICH LAWYER ARGUES FOR THE

18   GOVERNMENT BECAUSE OUR VIEW IS THAT THEY'RE A SINGLE PARTY.

19   BUT THE THING THAT WE ARE OBSESSIVE ABOUT, THE MORE

20   COLLABORATION THERE IS BETWEEN GENERAL COUNSEL'S OFFICE OF THE

21   CIA AND THE U.S. ATTORNEY'S OFFICE, THE GREATER THE RISK.

22   THAT'S MUCH OF WHAT WE ARE TELLING THEM, WHICH TO US IS BEYOND

23   DESCRIPTION AND VALUE TO THE DEFENSE, NOT BE TRANSFERRED UP.

24   THAT'S GOING TO REQUIRE ALL OF THEM TO BE VERY CAREFUL AND WE

25   DON'T QUESTION ANYONE'S INTEGRITY.  BUT THAT'S THE SOLE

PDF created with pdfFactory trial version www.pdffactory.com

5

1    CONCERN.

2          THE COURT:  I HAVE TO TELL YOU AFTER READING THE

3    RESPONSE FROM MR. MCPHERSON, I'M CONVINCED THAT HE UNDERSTANDS

4    THAT.  HE'S VERY CIRCUMSPECT, AT LEAST IN ALL OF THE

5    CORRESPONDENCE THAT I'VE READ BETWEEN YOU AND HIM AND

6    INCLUDING THE E-MAILS.  SO I AGREE WITH YOU, THAT THAT IS

7    IMPORTANT IN THAT THE COURT'S ORDER IN THAT REGARD NEEDS TO BE

8    FOLLOWED VERY CAREFULLY.

9          LET ME TELL YOU, THEN, WHAT MY TENTATIVE THOUGHT IS

10   ON THAT HAVING READ THE PAPERS.  I FIND MYSELF IN PARTIAL

11   AGREEMENT WITH BOTH SIDES.  I AGREE WITH THE DEFENDANTS THAT

12   THE PROCESS OF GOING THROUGH -- LET ME FIND THE EXACT SPOT

13   THAT I WANT.

14         I FIND MYSELF IN AGREEMENT WITH THE DEFENDANTS THAT

15   THE PROCESS OF GOING THROUGH THE ADMINISTRATIVE PROCEDURES ACT

16   IN THIS CASE WOULD BE TEDIOUS AND TIME-CONSUMING, INCONSISTENT

17   WITH REALITY THAT THE CRIMINAL CASE IS PENDING AGAINST

18   MR. FOGGO AND MR. WILKES WHERE SPEEDY TRIAL RIGHTS, AMONG

19   OTHER RIGHTS, ARE IMPLICATED.

20         IT DOES APPEAR TO ME, UNDER THE AUTHORITY OF THE

21   EXXON CASE CITED BY THE DEFENSE, THAT I, AS THE DISTRICT COURT

22   PRESIDING OVER THE UNDERLYING CRIMINAL CASE IN WHICH THE

23   UNITED STATES IS A PARTY, DO HAVE JURISDICTION TO MAKE THE

24   CALLS.  IT SEEMS SENSIBLE TO ME, TOO.  IT SEEMS LOGICAL AND

25   CONSISTENT WITH THE OBLIGATIONS I HAVE UNDER CIPA ULTIMATELY

PDF created with pdfFactory trial version www.pdffactory.com

6

1   TO MAKE DETERMINATIONS ABOUT RELEVANCY THAT I MAKE THIS --

2   THESE TYPES OF DETERMINATIONS IN THE FIRST INSTANCE.

3         AT THE END OF THE DAY, REALLY WHAT I'M BEING ASKED

4   IS TO SECOND-GUESS THE JUDGMENT -- THE CIA'S INITIAL JUDGMENT

5   ON SOME OF THESE THINGS.  THE THREE AREAS WHERE DEFENSE HAS

6   REQUESTED INFORMATION, MY UNDERSTANDING FROM THE PAPERS IS THE

7   CIA HAS ACCEDED IN ONE AREA COMPLETELY.  IT SAYS, "WE AGREE.

8   WE ACCEPT YOUR PROFFER."  IN ANOTHER, THEY'VE PARTIALLY AGREED

9   AND GIVEN PARTIAL INFORMATION, ALTHOUGH NOT FULL INFORMATION.

10  IN THE THIRD, THEY'VE SAID, "WE DON'T SEE THE RELEVANCY HERE.

11  WE DECLINE TO GIVE ANY INFORMATION ON THIS SCORE."

12        NOW, AT SOME POINT, I THINK SOMEONE WITH SOME

13  CONTEXT ABOUT WHAT THIS CASE IS ABOUT NEEDS TO MAKE THOSE

14  DETERMINATIONS.  I DON'T FORECLOSE THE POSSIBILITY THAT SOME

15  JUDGE PRESIDING IN AN ADMINISTRATIVE PROCEDURES ACT HEARING

16  COULDN'T GET UP TO SPEED AND READ EVERYTHING AND UNDERSTAND

17  THE CONTEXT.  BUT IT MAKES NO SENSE TO ME TO DO THAT, TO

18  BIFURCATE THE RESPONSIBILITY FOR THAT TYPE OF DETERMINATION,

19  PARTICULARLY BECAUSE IN A VERY CLOSELY RELATED CONTEXT, I'M

20  GOING TO BE CHARGED WITH THAT RESPONSIBILITY ULTIMATELY.

21        LET'S TAKE, FOR EXAMPLE, THE AREA ON WHICH YOU

22  AGREE; THAT THE DEFENDANTS ARE ENTITLED TO INFORMATION.

23  ACCESS TO INFORMATION IS QUITE DIFFERENT FROM SAYING THAT THE

24  INFORMATION CAN BE AIRED IN OPEN COURT.  THAT'S THE NEXT STEP.

25  I HAVE TO MAKE THE ULTIMATE DETERMINATION ABOUT RELEVANCY.  SO

PDF created with pdfFactory trial version www.pdffactory.com

7

1    IF I TAKE A STEP BACK AND SAY THAT'S ESSENTIALLY WHAT'S AT

2    ISSUE HERE WITH THIS CLAIM THAT YOU'RE WRONG TO WITHHOLD SOME

3    OF THE INFORMATION THEY SEEK, I WOULD BE MAKING THAT

4    DETERMINATION ULTIMATELY.

5            I DO AGREE, ALSO, GIVEN THAT WE'RE NOW, WHAT,

6    SIX MONTHS, SEVEN MONTHS INTO THE PROCEEDINGS IN THIS CASE AND

7    THE TRIAL DATE HAS BEEN SET, BUT I'VE INDICATED I'M GOING TO

8    VACATE IT IN LIGHT OF THE COUNSEL ISSUES WITH MR. WILKES --

9    BUT THE POINT IS THAT THE SPEEDY TRIAL ACT IS IMPLICATED TO

10   SOME EXTENT.  I'VE HEARD NO WAIVER FROM EITHER MR. WILKES OR

11   MR. FOGGO THAT THEY DON'T CARE WHEN THEY'RE TRIED.  INSTEAD, I

12   GET THE IMPRESSION FROM MR. WILKES THAT HE WANTS THIS TO BE

13   RESOLVED AS QUICKLY AS POSSIBLE.

14           SO ALL THAT TO SAY WERE DEFENDANTS NOW REQUIRED TO

15   GO THROUGH AND FILE A LAWSUIT AND WAIT THAT OUT, I AM, I HAVE

16   TO CONFESS, A LITTLE BIT UNFAMILIAR WITH THE TIMETABLE,

17   ALTHOUGH THE CASES SUGGEST THAT IT COULD BE A LONG AND

18   CUMBERSOME PROCESS.  I DON'T KNOW IF THERE'S AN APPEAL FROM AN

19   INITIAL DECISION UNDER THE ADMINISTRATIVE PROCEDURES ACT.

20           BUT THE LONG AND SHORT OF IT, MR. MCPHERSON, IS WE

21   JUST TAKE A HIATUS HERE.  WE'RE JUST ON HOLD.  I COULDN'T

22   PRESS THE CASE FORWARD WITH THOSE ISSUES PENDING.  IT SEEMS TO

23   ME, FROM A PRACTICAL SENSE STANDPOINT, THAT I OUGHT TO MAKE

24   THE DETERMINATION.  AND IT DOES APPEAR TO ME THAT 9TH CIRCUIT

25   CASE LAW AGREES WITH THAT PRACTICAL SENSE INTERPRETATION.

PDF created with pdfFactory trial version www.pdffactory.com

8

1          THE EXXON CASE WAS A CIVIL MATTER, I UNDERSTAND.

2     BUT I AGREE WITH MR. MAC DOUGALL'S ARGUMENTS THAT THE FACTORS

3     THAT COMPEL THE CONCLUSION IN EXXON ARE IMPLICATED TO AN EVEN

4     GREATER EXTENT IN CRIMINAL CASES THAN THEY WERE IN THAT CIVIL

5     MATTER.

6          SO IN THAT RESPECT, I'M IN TENTATIVE AGREEMENT WITH

7     THE DEFENDANTS THAT THAT DECISION IN THE FIRST INSTANCE OUGHT

8     TO BE MADE BY ME.  THEY OUGHT NOT TO BE REQUIRED TO GO THROUGH

9     THE ADMINISTRATIVE PROCEDURES ACT TO CHALLENGE THE INITIAL

10    DECISION CIA COUNSEL HAS MADE.

11         NOW, WHAT I'M IN DISAGREEMENT WITH IS THAT CIPA HAS

12    NO APPLICATION TO THIS WHOLE THING.  I READ THE ARGUMENTS THAT

13    IT REALLY IS INAPT BECAUSE IT CONTROLS THE PRODUCTION OF

14    INFORMATION BY THE UNITED STATES TO DEFENDANT AND THEN WHAT

15    CAN BE DISSEMINATED IN OPEN COURT.

16         AT ITS BASE, THIS IS A DISPUTE ABOUT CLASSIFIED

17    INFORMATION.  AND THE CIA HAS EVERY RIGHT TO INSTRUCT ITS

18    EMPLOYEES WHO ARE CONTRACTUALLY BOUND NOT TO REVEAL THE

19    INFORMATION, NOT TO TALK TO THE DEFENSE UNLESS THEY BELIEVE

20    IT'S BEEN ORDERED BY A COURT OR IT'S CONSISTENT WITH THE TOUHY

21    REGULATIONS.

22         I TAKE THE POINT THAT THESE ARE PEOPLE WHO, AT LEAST

23    IN THE INSTANCE OF THE SIX OR SEVEN PEOPLE WHO'VE AGREED NOW

24    TO BE INTERVIEWED, THAT THESE ARE VOLUNTARY INTERVIEWS AS

25    OPPOSED TO SOMETHING ORDERED PURSUANT TO RULE 16 OR THE JENCKS

PDF created with pdfFactory trial version www.pdffactory.com

9

1  ACT.

2       BUT AT THE END OF THE DAY, THE INFORMATION TO BE

3  DISCUSSED IS STILL CLASSIFIED INFORMATION IN WHICH THE UNITED

4  STATES GOVERNMENT HAS A GREAT INTEREST IN SECRECY AND

5  MAINTAINING THE SECRECY OF IT.  SO I AM INFORMED AND THE

6  ISSUE, I BELIEVE, IS INFORMED BY THE CLASSIFIED INFORMATION

7  PROTECTION ACT.  SO A LITTLE BIT TO BOTH SIDES AT LEAST IN MY

8  TENTATIVE THINKING.

9       NOW, I'M HAPPY TO HEAR, I SUPPOSE, FIRST FROM YOU,

10  MR. MAC DOUGALL, BECAUSE I DO THINK CIPA APPLIES.  BUT I'M

11  INCLINED TO MAKE THE DECISION MYSELF AND NOT REQUIRE YOU TO GO

12  FILE A LAWSUIT IN SOME OTHER JURISDICTION.

13       MR. MAC DOUGALL:  I THINK THE MOST IMPORTANT THING

14  THAT MR. FOGGO WOULD ASK THE COURT TO KEEP IN MIND IS THE

15  RELIEF WE'RE ASKING FOR HERE IS VERY NARROW.  IT'S LIMITED TO,

16  ONE, SCI'S BEING READ IN.  I'M GOING TO BE VERY CAREFUL.  AND

17  IF I MISSTEP, I'LL STOP.

18       ALL WE'RE ASKING IS TO BE READ INTO TWO SCI'S.

19  WE'RE BEEN READ INTO SEVERAL.  THE DEFENSE HAS GONE TO GREAT

20  PAINS, AS I THINK THE COURT IS AWARE, TO COMPLY WITH THE

21  COMPLEX STRUCTURE THAT'S BEEN SET UP TO PROTECT CLASSIFIED

22  INFORMATION.  WE'RE TRYING TO LIVE WITHIN THAT.

23       AT THE SAME TIME, WE'RE TRYING TO ZEALOUSLY DEFEND

24  MR. FOGGO AND, IN PARTICULAR, PROTECT HIS 6TH AMENDMENT

25  RIGHTS.  SO THE ONLY RELIEF WE'VE ASKED THE COURT FOR, ALL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    WE'VE ASKED THE COURT TO DO IS TO ORDER THE CIA TO DO WHAT IT

2    HAS DONE IN OTHER COMPARTMENTS AND ALLOW US TO BE READ IN SO

3    THAT WHEN WE'RE SITTING WITH ONE OF THESE WILLING WITNESSES

4    WHO ARE ALSO READ INTO THE COMPARTMENT, WE CAN ASK QUESTIONS

5    THAT WE BELIEVE ARE CRITICAL TO OUR DEFENSE -- AND WE'VE

6    COMMITTED TO DO AN EX PARTE PRESENTATION LATER ON, AND THE

7    COURT WILL SEE THAT -- ASK THE QUESTIONS AND GET THE ANSWERS

8    THAT WILL ALLOW US TO PUT THAT TOGETHER.

9         THAT'S A SEALED COMPARTMENT.  WE'RE UNDER THE SAME

10   CONSTRAINTS AS THOSE CIA EMPLOYEES WITH REGARD TO DISCLOSURE,

11   WITH REGARD TO PROTECTION.  I KNOW THE COURT HAS HEARD FROM US

12   MORE THAN YOU WOULD LIKE ABOUT S.C.I.F. ACCESS AND SO FORTH.

13        SO WHAT WE'RE TALKING ABOUT IS A VERY NARROW BIT OF

14   RELIEF WHERE WE'RE ALLOWED TO ASK THESE CLEARED WITNESSES

15   ABOUT INFORMATION THAT WE OURSELVES WOULD BE CLEARED INTO IN A

16   SEALED COMPARTMENT.

17        THE COURT:  IT SEEMS TO ME, THOUGH, THIS GETS BACK

18   TO THE POINT I APPARENTLY DIDN'T MAKE -- I DON'T THINK I MADE

19   IT CLEAR ENOUGH.  IT SEEMS TO ME THAT THE PROCEDURAL WRANGLING

20   NOT ONLY ABOUT WHO DECIDES THIS, BUT WHETHER YOU GET READ IN,

21   ALL SORT OF BEGS THE QUESTION -- THE REAL QUESTION IS DO YOU

22   HAVE A RIGHT TO ASK THESE WILLING WITNESSES THE QUESTIONS YOU

23   WANT TO ASK THEM?  AND IF THEY'RE WILLING, SHOULD THE CIA GIVE

24   THEM PERMISSION TO ANSWER THAT?  BECAUSE I COULD VERY WELL

25   FORESEE, MR. MAC DOUGALL, THEY'LL SAY "FINE.  WE'LL LET YOU

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    IN.  BUT THESE PEOPLE ARE GOING TO BE UNDER EXPLICIT

2    INSTRUCTIONS NOT TO GET INTO CERTAIN THINGS," AND IT WILL BE

3    VERY NONPRODUCTIVE.

4            IT SEEMS TO ME THAT THE ISSUE I OUGHT TO DECIDE

5    IS -- AND I UNDERSTAND I'D HAVE TO DO THIS IN A CONFIDENTIAL

6    SETTING -- I'VE GOT TO DECIDE "GIVE ME YOUR PROFFER.  TELL

7    ME" -- BECAUSE I DON'T HAVE IT.  IT'S NOT CLEAR TO ME.  I KNOW

8    WHAT THE ISSUES ARE, I KNOW WHAT THE GENERAL SUBJECT MATTER

9    IS, BUT I DON'T HAVE THE BENEFIT OF THE DEFENDANT'S PROFFER

10   THAT WAS MADE TO THE CIA ON THIS.  "GIVE ME YOUR PROFFER, HUM

11   A FEW BARS TO ME ABOUT THE RELEVANCE, AND THEN LET ME MAKE

12   THAT DETERMINATION."  AND THEN THAT WOULD GUIDE THESE OTHER

13   THINGS.

14           I THINK IF THE CIA -- WELL, I DON'T KNOW THIS FOR

15   SURE.  I MEAN, THEY CAN TAKE AN APPEAL, I SUPPOSE.  BUT IF THE

16   CIA FINDS THAT I FIND THAT IT IS RELEVANT TO THEORY OF

17   DEFENSE, I WOULD EXPECT THAT EITHER THEY'LL APPEAL OR THEY'LL

18   ACQUIESCE AND INSTRUCT THE WITNESSES THAT THEY MAY ANSWER THE

19   QUESTIONS; ALL OF THIS, OF COURSE, SUBJECT TO THE CIPA

20   PROVISIONS LATER ON THAT DOESN'T CONTROL WHAT'S GOING TO COME

21   OUT OF THE TRIAL.  BUT IT WOULD ALLOW THEM FREE ACCESS TO THE

22   WITNESSES TO FIND OUT THE INFORMATION THAT THEY NEED TO BE

23   PREPARED.

24           ISN'T THAT REALLY WHAT'S AT ISSUE HERE, THE

25   SUBSTANCE OF WHAT YOU WANT TO ASK AND WHETHER SOMEBODY

PDF created with pdfFactory trial version www.pdffactory.com

12

1    DETERMINES THAT IT IS, IN FACT, RELEVANT TO THE CHARGES

2    AGAINST MR. FOGGO AND THE MANNER IN WHICH HE'LL DEFEND

3    HIMSELF?

4         MR. MAC DOUGALL:  WITH REGARD TO THE WITNESSES WHO

5    WE DESCRIBED AS WILLING WITNESSES, WE'VE RECEIVED TOUHY

6    AUTHORIZATION LETTERS FROM THE CIA.  THIS IS INFORMATION THAT

7    THE SUBSTANCE OF THE INFORMATION ARE THINGS THAT WE'RE ALREADY

8    AWARE OF THROUGH OUR CLIENT.  WHAT WE'RE LOOKING FOR FROM

9    THESE WITNESSES IS OBVIOUSLY CORROBORATION AND LEADS TO OTHER

10   VERY CRITICAL AREAS.

11        AND I AGREE WITH THE COURT THAT ONCE WE READ THAT

12   SEALED COMPARTMENT, WE COME TO THE COURT AND COME TO THE COURT

13   SECURITY OFFICER AND HAND IT TO THE GOVERNMENT AND SAY, "WE

14   WANT TO USE THIS EVIDENCE."  BUT I THINK THE MOUSAWI COURT,

15   BOTH THE DISTRICT COURT AND THE 4TH CIRCUIT, ANALYZED THAT

16   VERY CLEARLY.  AND I'M QUOTING FROM MEMORY, BUT IN THE

17   4TH CIRCUIT OPINION, THEY SAID PRE-TRIAL INTERVIEWS ARE NOT

18   COVERED BY SECTION 6 OF CIPA.

19        AND THE OTHER THING I'D PUT OUT AND ASK THE COURT TO

20   CONSIDER IS THAT WAS A CASE IN WHICH THE DEFENDANT WAS ON

21   TRIAL FOR HIS LIFE, WAS ACCUSED OF PARTICIPATING IN ONE OF THE

22   MOST HEINOUS CRIMES IN OUR HISTORY.  MR. FOGGO'S UNDER

23   INDICTMENT FOR GOING TO DINNER.  NOT THAT THAT'S A SMALL

24   THING, BUT NO ONE'S EVER ACCUSED HIM OF VIOLATING ANY FEDERAL

25   LAW RELATING TO ESPIONAGE OR TERRORISM.  THIS IS A DIFFERENT

PDF created with pdfFactory trial version www.pdffactory.com

13

1    THING.

2              WE'VE DEMONSTRATED, THE DEFENSE, A LEVEL OF

3    RESPONSIBILITY.  THE CIA CAN BE COMFORTABLE BECAUSE

4    ULTIMATELY, THE QUESTION THAT I THINK WE HAVE TO ASK IS WHAT

5    IS IT THEY DON'T WANT US TO KNOW?  WHAT IS IT THAT THEY DON'T

6    WANT US TO KNOW AND BRING TO THE COURT UNDER CIPA PROVISIONS?

7              THE COURT:  IT'S DISCONCERTING TO ME THAT THEY DON'T

8    HAVE THE LEVEL OF COMFORT THAT YOU THINK THEY SHOULD HAVE.  I

9    KNOW MY OWN LIMITATIONS HERE.  THESE GENTLEMEN KNOW WHAT THE

10   CONCERNS ARE THAT ANIMATE THE DENIAL AND INFORM THEIR DENIAL.

11   I DON'T.  I WAS NEVER IN THE CIA OR EVEN THE MILITARY, FOR

12   THAT MATTER.  I KNOW WHAT I DON'T KNOW, AND IT SORT OF

13   INTIMIDATES ME IN THIS RESPECT.  I DON'T WANT TO SUBSTITUTE MY

14   JUDGMENT FOR THEIRS IN THE FIRST INSTANCE, PARTICULARLY WHEN I

15   LOOK AT THE CORRESPONDENCE AND IT DOESN'T APPEAR TO ME AT ALL

16   THAT THEY HAVE BEEN INSTINCTIVELY NEGATIVE SAYING, "NO, YOU

17   CAN'T HAVE ANYTHING."  I HASN'T BEEN LIKE THAT.

18             IT APPEARS TO ME FROM THE CORRESPONDENCE BETWEEN YOU

19   THE CIA THAT THEY'VE BEEN VERY THOUGHTFUL IN EVALUATING THE

20   REQUESTS AND THE RESPONSES BACK, WERE THOUGHTFUL.  AND THAT

21   GIVES ME SOME CONFIDENCE THAT THERE'S SOMETHING BEHIND THIS

22   THAT I DON'T KNOW THAT'S OF CONCERN TO THEM.

23             AT WHAT POINT IN THIS EQUATION DO I GIVE SOME

24   DEFERENCE TO OUR SECRET-KEEPERS HERE THAT THEY'RE DOING WHAT

25   THEY'RE TASKED WITH DOING AND SAY I'VE GOT TO DEFER TO THEM ON

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

14

1   THIS UNLESS I FIND THERE'S SOME OVERRIDING REASON UNDER THE

2   6TH AMENDMENT AND MR. FOGGO NEEDS THIS TO DEFEND HIMSELF?

3           MR. MAC DOUGALL:  I THINK THAT POINT IS WHEN WE ARE

4   MAKING A REQUEST THAT THE COURT DETERMINES, BASED UPON THE

5   INFORMATION THAT WE PROVIDE, TO BE UNREASONABLE.  WITHOUT

6   GOING INTO DETAIL, THE INDICTMENT IN THIS CASE WAS FASHIONED

7   THROUGH A CIA INVESTIGATION, INSPECTOR GENERAL'S

8   INVESTIGATION.  THEY CHOSE THE TRANSACTIONS THAT WERE GOING TO

9   BE THE BASIS FOR THESE CRIMINAL CHARGES.  THEY KNEW OR

10  CERTAINLY SHOULD HAVE KNOWN THAT THOSE TRANSACTIONS WERE

11  INTERTWINED WITH HIGHLY SENSITIVE MATERIALS, SO SENSITIVE THAT

12  WE'RE HERE TODAY.

13          AND I THINK, YOUR HONOR, THAT ULTIMATELY THE

14  JUDGMENT OF THE COURTS -- WHEN WE MAKE A PROFFER AND SAY "I

15  JUST DON'T GET IT.  I THINK YOU'RE FISHING NOW," THE COURT

16  KNOWS THAT WE'RE NOT BEING PAID FOR THIS, SO WE'RE NOT OUT TO

17  WASTE OUR TIME.  AND I THINK THE COURT ULTIMATELY IS GOING TO

18  HAVE TO MAKE A DECISION BASED UPON THE EVIDENCE AND THE THEORY

19  THAT WE PUT IN FRONT OF YOU WHETHER WE'RE APPROPRIATE.  AND I

20  THINK THAT'S ENTIRELY WITHIN THE DISCRETION OF THE COURT.

21          THE COURT:  YOU SAY THAT HAPPENS LATER, NOT

22          MY QUESTION IS, THEN, WHAT DEFERENCE DO I GIVE TO

23  THE CIA WHO'S RESISTANT TO SOME OF THESE THINGS AND DOESN'T

24  EVEN WANT TO DISSEMINATE IT UNDERSTANDING THAT YOU HAVE A

25  CLEARANCE?  SOME OF THESE THINGS, I TAKE, ARE SO HIGHLY SECRET

PDF created with pdfFactory trial version www.pdffactory.com

15

1    THAT THEY SAY, "LOOK, WE DON'T THINK THIS HAS ANY RELEVANCY,

2    AND WE DON'T WANT TO RISK IT.  EVEN THOUGH WE'VE GOT COMPLETE

3    FAITH IN MR. MAC DOUGALL AND THE DEFENSE TEAM, WE'RE NOT

4    DISSEMINATING IT."  DO I HAVE TO GIVE THAT SOME DEFERENCE?

5            MR. MAC DOUGALL:  IT SHOULD BE GIVEN SOME DEFERENCE.

6    BUT IN THIS CASE WITH THESE SCI'S THAT WE'RE ASKING FOR, WE

7    BELIEVE THERE'S COMPELLING EVIDENCE THAT IMPLICATES NOT

8    JUST CIPA, NOT JUST THE CIA STATUTORY BASIS, BUT MR. FOGGO'S

9    6TH AMENDMENT RIGHTS.  AS THE COURT HAS OBSERVED QUITE

10   CORRECTLY OVER AND OVER AGAIN, THE CONSTITUTION TRUMPS

11   STATUTES.

12           AND IF WE ARE ABLE TO MAKE A SHOWING THAT IS

13   FUNDAMENTAL TO OUR DEFENSE, TO OUR RIGHT TO CONFRONT

14   WITNESSES, TO OUR RIGHT TO INVESTIGATE THE CASE ON BEHALF OF

15   MR. FOGGO, I THINK IT'S ENTIRELY WITHIN THE COURT'S DISCRETION

16   TO SAY "I THINK YOU'RE ACTING IN GOOD FAITH, CIA, BUT I'VE

17   HEARD IT.  AND MY, JUDGMENT, BASED UPON WHAT I KNOW OF THIS

18   CASE, IS THESE LAWYERS SHOULD BE PERMITTED TO ASK" -- THAT'S

19   ALL WE'RE ASKING FOR -- "TO ASK THESE WITNESSES QUESTIONS" IN

20   AN AREA THAT WE ALREADY KNOW 90 PERCENT, I SUSPECT, OF WHAT

21   THERE IS OUT THERE.

22           THE COURT:  WHAT'S YOUR REACTION GOING TO BE,

23   MR. MAC DOUGALL, IF I GRANT THAT, BUT THE CIA THEN SAYS,

24   "FINE.  WE'RE INSTRUCTING OUR EMPLOYEES NOT TO ANSWER

25   QUESTIONS IN THESE AREAS"?  WHAT'S THE NEXT MOVE BY YOU AND

PDF created with pdfFactory trial version www.pdffactory.com

1    OTHER COUNSEL FOR MR. FOGGO, TO COME IN AND GET SOME KIND OF

2    ORDER -- IT'S A VOLUNTARY INTERVIEW.  I CAN'T IMAGINE THAT I

3    WOULD COMPEL THEM TO ANSWER QUESTIONS UNDER THOSE

4    CIRCUMSTANCES.

5            MR. MAC DOUGALL:  WHEN YOU GO TO WORK FOR THE CIA --

6    I'VE NEVER WORKED FOR THE CIA -- YOU DON'T RESTRICT OUR

7    MOVEMENTS.  YOU HAVE A RIGHT.  AND THEN THERE'S RESTRAINTS

8    THAT THE CIA IMPOSES ON YOU.  AND WHEN YOU UNDERTAKE AND IT IS

9    INCUMBENT UPON YOU TO EXERCISE YOUR RIGHT TO SPEAK TO COUNSEL,

10   TO PARTICIPATE IN TRIALS, TO ASSIST OTHERS WHO ARE DEFENDING

11   THEMSELVES.  SO THAT'S THEIR RIGHT.

12           NOW, IF THE CIA SAYS "WE'RE INSTRUCTING YOU NOT TO

13   TALK," I THINK WE WOULD COME BACK TO THE COURT, AND I THINK WE

14   WOULD ASK FOR AN ORDER.  AND I RESPECTFULLY SUGGEST THAT THE

15   COURT SHOULD GRANT THAT ORDER.  BECAUSE AGAIN, THIS IS A CASE

16   THAT HAS BEEN STRUCTURED BY THE CIA, BY ITS INSPECTOR

17   GENERAL'S OFFICE, BASED UPON CERTAIN FACTS.  AND TO SAY THAT

18   "WE'RE ALLOWED TO USE THAT SO TO PROSECUTE YOU AND SEND YOU TO

19   PRISON.  BUT WHEN YOU WANT TO USE THAT INFORMATION, WHEN YOU

20   WANT TO FIND OUT WHAT THOSE WITNESSES REALLY HAD TO SAY, WHAT

21   THEY WEREN'T -- WHAT DIDN'T GO INTO THOSE INTERVIEWS, YOU

22   CAN'T HAVE THAT," THAT'S NOT THE CONSTITUTION, YOUR HONOR.

23   AND WE WOULD CERTAINLY COME BACK TO THIS COURT AND ASK THE

24   COURT TO ENFORCE IT.

25           THE COURT:  ALL THE WITNESSES WHO HAVE AGREED TO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    TALK TO YOU, ARE THESE ALL PEOPLE THAT YOU BELIEVE TO BE

2    PROSECUTION WITNESSES IN THIS CASE?

3            MR. MAC DOUGALL:  WELL, WHO THE GOVERNMENT CALLS IS

4    AT THE GOVERNMENT'S DISCRETION.  THEY'RE CERTAINLY ALL PEOPLE

5    WHO HAVE BEEN INTERVIEWED BY THE GOVERNMENT, SOME OF THEM BY

6    THE GRAND JURY.

7            THE COURT:  OKAY.  I TAKE IT --

8            MR. MAC DOUGALL:  MAY I HAVE A MOMENT, YOUR HONOR?

9            (DISCUSSION OFF THE RECORD BETWEEN COUNSEL)

10           MR. MAC DOUGALL:  I'M CORRECTED, YOUR HONOR, THAT

11   THERE ARE PEOPLE ON THAT LIST THAT HAVE NOT BEEN INTERVIEWED.

12           THE COURT:  I TAKE IT YOU'RE IN AGREEMENT THAT I

13   SHOULD MAKE A JURISDICTIONAL DECISION IN THE FIRST INSTANCE --

14           MR. MAC DOUGALL:  YES.

15           THE COURT:  -- AND NOT REQUIRE YOU TO FILE A

16   LAWSUIT?

17           MR. MAC DOUGALL:  YES.

18           THE COURT:  ANYTHING ELSE, MR. MAC DOUGALL?

19           MR. MAC DOUGALL:  THANK YOU.

20           MR. HALPERN:  YOUR HONOR, I THINK I'D LIKE TO START

21   JUST BY TAKING A STEP BACK.  IT'S VERY HARD TO ARGUE WHEN

22   YOU'VE WON AND YOU'VE INVITED THE UNITED STATES TO BE HERE

23   THROUGH THE DEPARTMENT OF JUSTICE TO QUARREL WITH THE COURT'S

24   DECISION.  SO I DON'T MEAN TO QUARREL WITH THE COURT'S

25   DECISION, BUT I THINK IT'S IMPORTANT TO SEE HOW WE GOT HERE.

PDF created with pdfFactory trial version www.pdffactory.com

1    BECAUSE I THINK WHEN YOU LOOK BACK, THE COURT'S PROTECTIVE

2    ORDER HAS, IN FACT, SPAWNED A VARIETY OF RAMIFICATIONS THAT I

3    THINK WENT FAR BEYOND WHAT THIS COURT ORIGINALLY ENVISIONED.

4            AND WHILE I APPRECIATE MR. MAC DOUGALL'S OFFER OR

5    COMMENTS THAT HE DOESN'T CARE REALLY WHO REPRESENTS THE

6    GOVERNMENT, I THINK THAT IS BELIED SOMEWHAT BY THE FACT THAT

7    I'M SITTING UP HERE TODAY WITH ABSOLUTELY NO KNOWLEDGE AT ALL

8    OF WHAT HIS ARGUMENT IS.  THE COURT HAS AN IDEA OF WHAT THE

9    ARGUMENT IS.  MR. MCPHERSON HAS SOME IDEA OF WHAT THE ARGUMENT

10   IS BECAUSE HE GOT IT YESTERDAY.  I STILL HAVEN'T SEEN THE

11   BRIEFING PAPERS.  THAT'S A FUNDAMENTAL PROBLEM.

12           SO AT THE VERY BEGINNING, I THINK, WHAT WE FILED

13   SOMETHING LAST NIGHT WAS SIMPLY TO TELL THE COURT WE'VE GOT TO

14   GET THIS SHIP SAILING THE APPROPRIATE WAY.  BECAUSE I THINK

15   WHAT THE COURT PROPERLY DID HAS RESULTED IN MANY, MANY THINGS

16   THAT ARE IMPROPER.  AND I THINK STARTING, NUMBER ONE, IT'S

17   RESULTED IN THE COURT RECEIVING EX PARTE COMMUNICATIONS FROM

18   THE DEFENSE IN THIS CASE.  WHEN I SAY "EX PARTE," I'M TALKING

19   NOT ONLY THE GOVERNMENT HAS NO IDEA WHAT THEY ARE, BUT THE CIA

20   HAD NO IDEA WHAT THEY WERE.

21           THE COURT:  I THINK WE CURED THAT AT THE LAST

22   HEARING.  I ASKED MR. MAC DOUGALL FROM NOW ON TO COPY

23   MR. MCPHERSON ON ANYTHING HAVING TO DO WITH THIS ISSUE OF WHO

24   IS TO BE INTERVIEWED AND WHAT INFORMATION IS AT PLAY.

25           I THINK HE DID THEREAFTER; RIGHT?

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. MCPHERSON:  THAT'S CORRECT.

2          MR. HALPERN:  WELL, IT'S ONLY PARTIALLY CORRECT.

3    THAT'S WHY I BRING IT UP.  I DON'T FAULT THE COURT FOR THIS AT

4    ALL.  I THINK THE COURT WAS VERY CLEAR WHAT WAS SO TROUBLING

5    IS -- AND MR. MCPHERSON IS BEING VERY GRACIOUS, AND PERHAPS

6    I'M NOT AS GRACIOUS AS HE IS.  BUT WHEN HE RECEIVES THE

7    INFORMATION THAT THE COURT SAID THE CIA HAD THE RIGHT TO

8    CONSIDER THE DAY HE'S FILING HIS MOTION RESPONSE, I DON'T

9    THINK THAT'S APPROPRIATE.  MOREOVER, HE'S FILED A MOTION

10   RESPONSE OBJECTING TO WHAT'S GOING ON WITHOUT EVEN HAVING SEEN

11   THE PAPERS FROM THE DEFENSE.

12          AGAIN, I KNOW THE COURT DIDN'T ENVISION THAT.  I

13   FELT IT WAS SOMEWHAT CHILDISH THE OTHER DAY WHEN I WAS ARGUING

14   "WELL, WE HAVE HAD MULTIPLE HEARINGS.  WE NEED TO HAVE -- WE

15   NEED TO KNOW FROM THE GOVERNMENT HOW MANY HEARINGS WE'RE GOING

16   TO HAVE," I KNOW THINGS COME UP IN TRIAL, THINGS COME UP IN

17   PRE-TRIAL LITIGATION WHERE EVEN THOUGH THE COURT HAS SET

18   CERTAIN HEARING DATES, SOMETHING COMES UP AND SOMEBODY HAS TO

19   FILE.  THAT'S ALL WELL AND GOOD.

20          BUT I KNOW THE COURT, FROM LONG EXPERIENCE, LIKES

21   THINGS FILED PROPERLY WITH NOTICE TO THE OTHER SIDE IN

22   APPROPRIATE TIME FRAMES.  BECAUSE WHEN WE DON'T DO IT THAT

23   WAY, FROM THE GOVERNMENT'S POINT OF VIEW, WE'RE NOT ABLE TO

24   GIVE YOU OUR VIEW OF WHAT SHOULD BE DONE.  AND THE COURT IS

25   TRYING TO MAKE A DECISION WITH ONLY INFORMATION FROM ONE SIDE,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    AND THAT MAKES YOUR JOB DIFFICULT.

2            THE COURT:  SEE, THAT'S THE NATURE OF THE PROCESS

3    HERE, MR. HALPERN.  AS YOU KNOW, YOU'RE NOT ENTITLED TO KNOW

4    WHAT THEIR PROFFER IS TO THE CIA.  THAT'S THE PROBLEM.  YOU

5    CAN'T KNOW WHAT THEIR MENTAL PROCESSES ARE ABOUT WHY THEY

6    THINK SOMETHING IS RELEVANT, WHY IT PERTAINS TO THEIR DEFENSE.

7    THEY'RE UNDER NO OBLIGATION TO INFORM THE ACCUSER OF THAT.

8            NOW, IT'S A DIFFERENT SITUATION.  I ACKNOWLEDGE

9    THAT.  THAT'S WHY I ISSUED THE ORDER FORBIDDING THE CIA FROM

10    SHARING THOSE PROFFERS WITH YOU.  IT WAS A WAY TO ACCOMMODATE

11    THE RECEIPT OF THE INFORMATION WITHOUT COMPROMISING

12    MR. FOGGO'S 6TH AMENDMENT RIGHT TO EFFECTIVE REPRESENTATION BY

13    COUNSEL AND HIS 5TH AMENDMENT RIGHTS ABOUT COMPELLED

14    SELF-INCRIMINATION, THAT TYPE OF THING.

15            MR. HALPERN:  WHILE I DON'T QUARREL IN GENERAL WITH

16    THE POINT THE COURT'S MAKING, I THINK AS APPLIED IN THIS CASE

17    I DO TAKE ISSUE WITH IT.  AND IF I CAN JUST EXPLAIN WHY, YOUR

18    HONOR.

19            THE GOVERNMENT -- AND I WILL SAY RELUCTANTLY,

20    BECAUSE IT WAS RELUCTANT.  BUT WE CONSIDERED THIS EXACT

21    ARGUMENT THAT THE COURT MADE IN REFERENCE TO THE TOUHY ISSUE

22    THAT WAS BROUGHT UP SEVERAL MONTHS AGO NOW.  AND WE

23    RELUCTANTLY AGREED.  WE SAID, "OKAY.  WE DON'T NEED TO KNOW

24    THE NAMES OF WHO THESE PEOPLE ARE.  WE DON'T NEED TO KNOW WHAT

25    THEY WANT TO TALK ABOUT."  AT THAT POINT, WE DIDN'T CONCEDE

PDF created with pdfFactory trial version www.pdffactory.com

1   THAT, IN FACT, THIS WAS NECESSARY BY LAW BECAUSE WE'RE -- I'M

2   NOT AWARE OF ANY PRE-TRIAL LITIGATION PRIVILEGE.

3         BUT ASSUMING IT IS AND EVEN IF NOT, AS A MATTER OF

4   FAIR PLAY WE AGREED TO IT WHEN THE COURT SUGGESTED IT.  BUT

5   THAT HAD WITH IT DIRECT CONSEQUENCES.  THE FIRST CONSEQUENCE

6   OF GOING DOWN THAT PATH, YOUR HONOR, WAS THAT WE ADOPTED THE

7   FRAMEWORK OF THE TOUHY REGULATIONS BECAUSE IT CAME UP IN THE

8   TOUHY FRAMEWORK.  ONCE WE ADOPTED THOSE REGULATIONS, WE

9   NECESSARILY DECIDED WHAT THE STANDARD OF REVIEW WAS GOING TO

10   BE, WHAT COURT WAS GOING TO DO IT.  THIS WAS NOT THE

11   GOVERNMENT'S CHOICE AT THAT TIME.

12         WHAT'S REALLY AT ISSUE HERE IS AT THIS POINT NOW,

13   TWO MONTHS LATER, SHOULD THE COURT DISREGARD WHAT THEY DECIDED

14   TO DO AND SOMEHOW TRY TO REACH A COMPROMISE -- YOU KNOW, LOOK

15   AT THE EXXON CASE AND FASHION SOME TYPE OF REMEDY, OR SHOULD

16   THE COURT DO WHAT THE GOVERNMENT THOUGHT WAS APPROPRIATE IN

17   THE BEGINNING AND GIVE THEM A CHOICE?  THEY WANT TO GO TOUHY,

18   FINE.  THEY DON'T, THE QUESTION IS TO GO THROUGH THE NORMAL

19   DISCOVERY CHANNELS AND GO THROUGH CIPA.

20         AND WHILE SECTION 6 CIPA MIGHT NOT APPLY -- AND IT

21   DOESN'T APPLY -- SECTION 4 DOES.  AND IF THIS IS A DISCOVERY

22   REQUEST, WE NEED TO KNOW WHAT IT SO WE CAN INFORM THE CIA.

23         NOW, MR. MAC DOUGALL KIND OF WANTS HIS CAKE AND HE

24   WANT TO EAT IT, TOO.  AND THERE'S NO JURY HERE, SO I DON'T

25   HAVE TO MAKE A CLAIM THAT THIS CASE IS ABOUT MEALS.  IF THE

PDF created with pdfFactory trial version www.pdffactory.com

1    CASE IS ABOUT MEALS, HE DOESN'T NEED ANY CLASSIFIED

2    INFORMATION WHATSOEVER TO DEFEND IT.

3            I THINK HE KNOWS, AS DOES THE GOVERNMENT, THIS CASE

4    IS ABOUT SOMEONE WHO DISREGARDED HIS OATH OF OFFICE AND, IN

5    FACT, REVEALED CLASSIFIED INFORMATION.  IF WHAT HE WANTS

6    INVOLVES THAT CLASSIFIED INFORMATION, WE CAN WORK WITH THE

7    CIA.  IF IT'S DISCOVERABLE, WE HAVE AN OBLIGATION TO GIVE IT

8    TO HIM.

9            THE COURT:  HERE'S WHERE IS BREAKS DOWN, THOUGH,

10   MR. HALPERN:  IT'S ONE THING FOR HIM TO SAY, "I WANT TO

11   INTERVIEW THESE PEOPLE.  TELL THE CIA."  THE FIRST QUESTION I

12   THINK MR. MCPHERSON'S GOING TO ASK YOU IS "WHAT'S HE GOING TO

13   INTERVIEW THEM ABOUT?  WHAT DOES HE WANT TO KNOW?  WHAT

14   QUESTIONS IS HE GOING TO PUT TO THEM?  WHAT INFORMATION IS

15   IMPLICATED?"

16           NOW, HE HAS NO OBLIGATION TO TELL YOU THAT.  IT

17   TURNS THE WHOLE CRIMINAL PROCESS ON ITS HEAD TO SAY, "WELL, HE

18   HAS TO GO THROUGH US FIRST."  IT GIVES YOU AN UNFAIR ADVANTAGE

19   THAT YOU DON'T HAVE IN OTHER CASES.  IN MOST OTHER CASES, YOU

20   DON'T HAVE ANY IDEA WHETHER THERE'S GOING TO BE A DEFENSE,

21   WHAT THE DEFENSE IS, WHAT WITNESSES THE DEFENSE IS GOING TO

22   CALL, WHAT THEIR THEORY OF DEFENSE IS UNTIL THEY BEGIN

23   PRESENTING IT.

24           I'VE BEEN THERE AND DONE THAT.  I KNOW THE

25   DISCONCERTING FEELING WHEN YOU HEAR A NAME THAT YOU'VE NEVER

PDF created with pdfFactory trial version www.pdffactory.com

1    HEARD BEFORE AND SOMEBODY IS WALKING IN BEHIND YOU AND YOU

2    START SCRIBBLING NOTES RIGHT AWAY.  THAT'S THE NATURE OF OUR

3    SYSTEM.

4         YOU'RE SUGGESTING THAT BECAUSE THIS INVOLVES

5    CLASSIFIED INFORMATION, THAT THE STATUTE SOMEHOW TRUMPS OUR

6    PRINCIPLES AND CONVENTIONS THAT I FIND ARE BASED ON

7    CONSTITUTIONAL PROTECTIONS THAT MR. FOGGO HAS.

8         MR. HALPERN:  I'M NOT SAYING IT TRUMPS IT AGAIN.

9    THAT TERM HAS BEEN BANDIED ABOUT A LOT.

10        THE COURT:  I THINK I USED IT IN THE FIRST INSTANCE,

11   NOT GERAGOS.

12        MR. HALPERN:  WHAT I'VE ALWAYS SAID AND WHAT THE

13   POSITION OF THE GOVERNMENT HAS ALWAYS BEEN, CIPA SIMPLY

14   PROVIDES PROCEDURAL FRAMEWORK FOR APPLYING THE NORMAL FEDERAL

15   RULES.  I'M NOT TAKING ANY DIFFERENT POSITION.

16        THE COURT:  IF I APPLY IT IN THE WAY THAT YOU'RE

17   SUGGESTING, I THINK IT'S VIOLATIVE OF THE DEFENDANT'S 5TH AND

18   6TH AMENDMENT RIGHTS.  WHAT YOU'RE -- IF I UNDERSTAND YOU

19   CORRECTLY, WHAT YOU'RE ADVOCATING IS MR. MAC DOUGALL HAS TO

20   COME TO YOU, THE PROSECUTORS, FIRST AND SAY, "HERE'S THE

21   INFORMATION I WANT, AND HERE'S WHY I WANT IT.  HERE'S WHY I

22   THINK IT'S RELEVANT TO OUR DEFENSE."

23        THAT'S WHERE IT STARTS TO BREAK DOWN FOR ME BECAUSE

24   HE HAS NO SUCH OBLIGATION.  IN FACT, HE'S GOT A PRIVILEGE,

25   MR. FOGGO HAS A PRIVILEGE, NOT TO HAVE TO TELL YOU THAT

PDF created with pdfFactory trial version www.pdffactory.com

24

1       INFORMATION.

2                HOW DOES HE GET TO RELEVANT INFORMATION?  HE MAKES

3       THE POINT THAT YOU GUYS CRAFTED THE INDICTMENT.  YOU PICKED

4       THE TRANSACTIONS.  THEN YOU SAY, "WELL, YOU'VE GOT TO TELL US

5       HOW YOU'RE GOING TO DEFEND AGAINST THESE TRANSACTIONS OR YOU

6       CAN'T HAVE THE INFORMATION."  THAT DOESN'T SEEM RIGHT OR LEGAL

7       TO ME.

8                MR. HALPERN:  TWO POINTS.

9                ONE, AS FAR AS CIPA GOES, I THINK THE COURT REACHED

10      THIS POINT IN OUR LAST HEARING.  CIPA, AS APPLIED, WILL FORCE

11      THE DEFENDANT TO REVEAL CERTAIN INFORMATION, MAYBE EVEN

12      CERTAIN QUESTIONS HE IS GOING TO ASK WITNESSES, BEFORE HE ASKS

13      THOSE QUESTIONS.  THIS IS SOMETHING THAT IN NO OTHER CASE DO

14      YOU HAVE TO DO.  THAT'S JUST WHAT THE LAW IS.  IT'S BEEN FOUND

15      TO BE CONSTITUTIONAL BY THE SUPREME COURT OF THE UNITED STATES

16      AND EVERY CIRCUIT COURT THAT HAS ADOPTED IT.

17               SO THE VERY NOTION THAT IN THIS CASE THE DEFENDANT

18      WILL LOSE RIGHTS HE OTHERWISE MIGHT HAVE, WHILE TRUE, DOESN'T

19      MAKE IT UNCONSTITUTIONAL.  AND WE DISAGREE WITH THAT.  AND I

20      THINK THE COURT KNOWS THAT.  BECAUSE AT THE LAST HEARING, YOU

21      SAID, "WELL, SECTION 5, THAT'S AT TRIAL, RIGHT BEFORE TRIAL.

22      WE'RE BEFORE THAT.  IT HASN'T CRYSTALLIZED," I THINK WAS THE

23      WORD OF THE COURT.

24               SO THIS IS A PREGNANT ISSUE; YOU'RE EITHER PREGNANT

25      OR YOU'RE NOT PREGNANT.  EITHER THEY'RE GOING TO HAVE TO GIVE

PDF created with pdfFactory trial version www.pdffactory.com

1   UP RIGHTS OR THEY'RE NOT.  THEY ARE GOING TO HAVE TO GIVE UP

2   SOME GENERAL RIGHTS THAT THEY MIGHT HAVE OTHERWISE HAD.  BUT

3   THEY'RE NOT CONSTITUTIONAL RIGHTS.  THESE ARE RIGHTS YOU GIVE

4   UP IN EVERY CASE.

5            SO THAT'S THE FIRST POINT.

6            THE COURT:  WHAT'S THE DOWNSIDE TO THE COMPROMISE

7   POSITION THAT I CAN CUT YOU OUT AND THAT THE CIA, THROUGH

8   MR. MCPHERSON, IS TOTALLY CAPABLE OF SAYING "WE'VE GOT AN

9   INTEREST IN THIS.  WE HAVE TO KNOW THAT THIS JUST ISN'T A

10  FISHING EXPEDITION," AND YOU, AS THE GUY WHO'S PROSECUTING

11  THIS CASE, NEVER GETS TO FIGURE OUT THEIR THEORY?

12           IN EFFECT, I ERECT ONE OF THE WALLS BETWEEN

13  GOVERNMENT AGENCIES.  THAT'S FAIRLY COMMON EVEN WITHIN

14  PROSECUTORS' OFFICES WHERE AN OFFICE IS ALLOWED TO CONTINUE ON

15  A CASE, ALTHOUGH SOMEBODY MIGHT BE DISQUALIFIED WITHIN THE

16  OFFICE.  YOU ERECT ONE OF THESE WALLS.

17           IN EFFECT, I'VE DONE THAT.  AND I THINK THAT'S

18  CONSTANT WITH BOTH WHAT I REGARD AS MR. FOGGO'S FAIR TRIAL

19  RIGHTS AND STILL HAS FIDELITIES TO THE CIPA PROCEDURES AND THE

20  FACT THAT THIS INFORMATION WAS VERY DIFFERENT IN TIME FROM

21  MOST OF WHAT IS DISSEMINATED AND GIVEN OVER IN CRIMINAL CASES.

22           MR. HALPERN:  I'M GOING TO ASK MR. MCPHERSON TO TELL

23  YOU WHY THIS IS IMPRACTICAL, TO THE EXTENT HE BELIEVES IT IS.

24  BECAUSE NUMBER ONE, FROM OUR POINT OF VIEW, IT, IN SOME

25  REGARDS, HAMPERS THIS DECISION BY MR. MCPHERSON.  HE'S THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    INDIVIDUAL WHO HAS TO MAKE IT.  AND I CAN TELL YOU FROM PRIOR

 2    DISCUSSIONS WITH THEM THE VIEW WE HAVE AS TO WHAT INFORMATION

 3    SHOULD GO TO THE DEFENSE IS GREATER, PERHAPS, IN SOME RESPECTS

 4    BECAUSE WE KNOW OUR CASE IN A WAY THAT MR. MCPHERSON WILL

 5    NEVER KNOW OUR CASE.

 6          AND THE FACT OF THE MATTER IS THAT MR. MCPHERSON

 7    MAKES IT.  HE WILL DO THE BEST JOB HE CAN DO.  HE'S NOT A

 8    MASTER OF RULE 16.  HE DOESN'T KNOW OUR TRIAL STRATEGY.  HE

 9    DOESN'T KNOW EVERY WITNESS WE'RE GOING TO BE CALLING.  HE

10    DOESN'T KNOW WHAT COULD, IN FACT, BE BRADY AND WHAT ISN'T.

11    BUT HE'S AN EXCELLENT LAWYER.  HE'LL DO AN EXCELLENT JOB.

12          I'LL TELL YOU THIS:  THEY MAY NOT LIKE THE RESULTS.

13    IF THEY'RE HAPPY WITH THAT, I HAVE NO DOUBT THAT THE COURT

14    WILL BE ON SOUND FOOTING SAYING HIS DECISIONS ARE ARBITRARY.

15    HE DOESN'T KNOW EVERYTHING.  WE'RE GOING TO LOSE OUT.  THAT'S

16    WHAT I SEE AS A PROBLEM; ASKING HIM -- PUTTING HIM IN AN

17    IMPOSSIBLE POSITION.  BUT HE REALLY SHOULD ADDRESS THIS

18    BECAUSE I DON'T BELIEVE HIS POSITION IS THAT HE SHOULD DO

19    THAT, HE SHOULD BE ABLE TO REPRESENT THE UNITED STATES FULLY.

20          THE COURT:  MR. MCPHERSON, I'M HAPPY TO HEAR FROM

21    YOU.  I MEAN, THE BACKDROP TO ALL THIS -- I'M GOING TO SAY ONE

22    MORE THING.

23          THE BACKDROP TO ALL THIS IS, I SUPPOSE, IF HE

24    DISAGREES, I WANTED TO CUT TO THE CHASE A WHILE AGO AND SAY,

25    "OKAY.  MR. MCPHERSON AND MR. MAC DOUGALL, COME IN WITH ME.
```

PDF created with pdfFactory trial version www.pdffactory.com

27

1    MR. MAC DOUGALL, TELL ME WHAT YOU TOLD HIM IN PRIVATE SESSION.

2    GIVE ME THE PROFFER ON RELEVANCE.  I'LL MAKE A DETERMINATION

3    BASED ON MY UNDERSTANDING OF RELEVANCE PRINCIPLES AND

4    RULE 16."

5          IF YOU DISAGREE WITH THAT, YOU CAN SAY, "NOPE, WE'RE

6    STILL NOT DOING IT.  WITH ALL RESPECT, WE'RE NOT DOING IT.

7    WE'RE GOING TO PURSUE OUR APPELLATE RIGHTS."

8          YOU HAVE AN IMMEDIATE RIGHT TO APPEAL IF I ORDER THE

9    DISSEMINATION OR PRODUCTION OF INFORMATION YOU DISAGREE WITH;

10   RIGHT?

11         MR. HALPERN:  WE MIGHT.  BUT THE FACT OF THE MATTER

12   IS THE COURT, AGAIN, IS MAKING THE DECISION WITHOUT ANY

13   UNDERSTANDING FROM THE GOVERNMENT'S PROSECUTORS OF WHY IT

14   ISN'T RELEVANT.  AGAIN, YOU HAVE TO REALLY KNOW THE CASE.

15   YOU'RE DOING IT WITH ONE SIDE, THE EXACT DECISIONS YOU'RE

16   GOING TO HAVE TO MAKE AT TRIAL WITH ONLY ONE SIDE.  IT'S JUST

17   DIFFICULT FOR THE COURT.

18         LET ME GIVE YOU AN EXAMPLE, YOUR HONOR.  WE HAD NO

19   KNOWLEDGE OF THE S.C.I.F. ISSUE.  THIS IS GOING TO APPEAR TO

20   BE FUNNY BECAUSE IT'S A SIDE ISSUE, BUT I THINK IT MAKES THE

21   POINT.  WE HAD NO KNOWLEDGE THAT THE COMMUNICATIONS BEFORE THE

22   COURT SAID SOMETHING -- HAD TO DO WITH THE S.C.I.F.  AND I'VE

23   BEEN GOING OUT OF MY WAY.  I'D LIKE TO REPORT BACK ON THAT,

24   ALSO.

25         THE COURT:  AVAILABILITY?

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. HALPERN:  ON THE AVAILABILITY.

2          I'VE GONE OUT OF MY WAY TRYING TO KILL MYSELF TO

3   MAKE THIS HAPPEN WHERE ONCE WE UNDERSTOOD THAT THERE WAS

4   COMMUNICATION WITH THE COURT AND ABOUT THE AVAILABILITY OF

5   S.C.I.F. IN WASHINGTON, HOW COULD WE GET ONE, WE STARTED TO

6   INVESTIGATE.

7          I MUST SAY IT DID TAKE SOMEWHERE BETWEEN 30 SECONDS

8   AND A MINUTE AND GOOGLE BEFORE WE COULD FIND A S.C.I.F. TO

9   RENT IN WASHINGTON.  I WOULD POINT MR. MAC DOUGALL TO GOOGLE.

10  IT'S A SEARCH ENGINE POPULARLY USED.  AND IF HE PUTS IN

11  "WASHINGTON," "RENT," AND "S.C.I.F.," HE'LL BE ABLE TO GET A

12  S.C.I.F. TO RENT, IF THAT'S WHAT HE WANTS TO DO.  AT LEAST WE

13  FOUND SOME.

14         AND WHILE THAT'S OFF-POINT, IT JUST SHOWS THE COURT

15  THE DIFFICULTY WHEN YOU'RE ONLY GETTING ONE SIDE.  AND WHILE

16  THAT'S A TRIVIAL MATTER, WHERE WE'RE TALKING ABOUT RELEVANCE

17  AT TRIAL, NOW, AGAIN, THIS COURT CAN MAKE THOSE DETERMINATIONS

18  AS GOOD AS ANY COURT THAT THERE IS, BUT WITHOUT HAVING BOTH

19  SIDES ARGUE, IT'S VERY DIFFICULT.

20         THE COURT:  WELL, I DON'T THINK IT'S AS DIFFICULT AS

21  YOU MAKE IT OUT TO BE.  I'M ARMED WITH THE INDICTMENT.  I'M

22  ARMED WITH SPECIFIC ALLEGATIONS THAT THE GOVERNMENT MAKES IN

23  THE INDICTMENT.  THE GRAND JURY HAS FOUND PROBABLE CAUSE TO

24  BELIEVE THAT THOSE THINGS ARE TRUE.

25         NOW, THOUGH I KNOW AT LEAST WHAT THE ACCUSATIONS

PDF created with pdfFactory trial version www.pdffactory.com

1    ARE, I MAY NOT BE COMPLETELY CONVERSANT -- IN FACT, I'LL BE

2    THE FIRST TO ADMIT THAT I'M NOT -- WITH WHAT YOUR PROOF IS

3    GOING TO BE, BUT AT LEAST I KNOW WHAT THE ALLEGATIONS ARE.

4            NOW, THIS SEEMS TO ME NO DIFFERENT FROM THE EX PARTE

5    PROCEEDING THAT'S SPECIFICALLY AUTHORIZED BY RULE 16 WHEN

6    THERE'S SOME QUESTION ABOUT RELEVANCY.  AND THE GOVERNMENT, IN

7    AN EX PARTE PROCEEDING, SAYS -- WELL, BRADY, FOR EXAMPLE, "WE

8    DON'T THINK THIS IS BRADY, BUT WE WANT YOU TO PUT YOUR

9    IMPRIMATUR ON IT, JUDGE."  THE DEFENSE HAS NO SAY IN THAT.

10   THE THINGS ARE SUBMITTED TO THE JUDGE IN CAMERA.  HE LOOKS

11   DOWN AND SAYS "I AGREE WITH YOU.  I DON'T THINK IT'S BRADY

12   EITHER," AND THEN IT'S NEVER PRODUCED.  THAT'S A COMPLETELY

13   ONE-SIDED PROCEEDING THAT GETS NO INPUT FROM THE DEFENSE.

14           HERE I FIND MYSELF IT'S THE FLIPSIDE OF THE COIN.  I

15   HAVE AN ACCUSATION.  I KNOW WHAT THE GOVERNMENT ALLEGES.  AND

16   THEN I HAVE A TRAINED LAWYER WHO IS GOING TO SAY, "LOOK,

17   HERE'S WHAT THEY'RE ACCUSING ME OF.  HERE'S WHY WE THINK THIS

18   INFORMATION IS RELEVANT TO HIS DEFENSE.  WE DON'T WANT THE

19   GOVERNMENT TO KNOW WHAT WE'RE THINKING, WHAT DEFENSE WE'RE

20   GOING TO PURSUE.  BUT THIS IS WHY WE NEED THIS INFORMATION."

21           NOW, WHY CAN'T I MAKE THAT ASSESSMENT IN AN EX PARTE

22   PROCEEDING?  APPARENTLY, MR. MAC DOUGALL'S GOING TO DO IT IN

23   FRONT OF MR. MCPHERSON BECAUSE HE'S MADE THAT CLAIM TO MR. MC

24   PHERSON IN THE FIRST INSTANCE.

25           MR. HALPERN:  I THINK YOU CAN, IN SOME INSTANCES,

PDF created with pdfFactory trial version www.pdffactory.com

1    YOUR HONOR.  THE EASY ONES ARE EASY WHETHER IT'S <u>BRADY</u> OR

2    THIS.  IT'S THE HARD ONES THAT -- I WANT MR. MCPHERSON TO

3    ADDRESS THAT.  BUT BEFORE I LET HIM ADDRESS IT, I JUST WANT

4    THE COURT TO KNOW THIS IS NOT ABOUT GAINING A TACTICAL

5    ADVANTAGE.  WE'RE GOING TO FIND THIS OUT ANYWAY.

6         THE COURT:  MR. HALPERN, LOOK, I KNOW THAT.  YOU'RE

7    TOO GOOD AND TOO EXPERIENCED A LAWYER TO TRY TO GET A CHEAP

8    ADVANTAGE HERE.  I UNDERSTAND THAT REALLY THIS IS ABOUT

9    PRINCIPLES THAT -- AND PRECEDENTS THAT YOU'RE CONCERNED ABOUT

10   SETTING HERE.

11        ONE OTHER THING:  I MEAN, I THINK MR. -- YOU'RE

12   TALKING ABOUT WHO'S IN THE BEST POSITION TO KNOW.

13   MR. MCPHERSON IS IN A MUCH BETTER POSITION, I DARE SAY, THAN

14   YOU TO KNOW WHY THIS INFORMATION OUGHT TO REMAIN CLASSIFIED,

15   WHAT THE INTEREST OF THE UNITED STATES IS IN KEEPING IT SUPER

16   SECRET.  YOU AND I PROBABLY HAVE SOME IDEA ABOUT IT, BUT HE

17   KNOWS FIRSTHAND.

18        SO WHO BETTER TO INFORM ME AND THE CIA

19   REPRESENTATIVE AND THE REPRESENTATIVE OF THE DEFENSE IN

20   THIS.

21        MR. HALPERN:  THERE'S NO QUESTION HE HAS TO BE PART

22   OF THE PROCESS BECAUSE HE DOES REPRESENT --

23        THE COURT:  I THINK IN THAT RACE, THE U.S. ATTORNEY

24   COMES IN THIRD.  I DON'T KNOW WHICH ONE OF THESE GUYS WINS IN

25   TERMS OF WHO'S GOT THE MOST IMPORTANT INPUT.  I THINK I'D LOOK

PDF created with pdfFactory trial version www.pdffactory.com

31

1   TO YOU THIRD FOR INPUT AFTER I SAID, "OKAY.  WHY IS THIS

2   RELEVANT?"  THEN I'D TURN TO HIM AND SAY, "TELL ME WHY THIS IS

3   SO COMPELLING THAT DESPITE ITS RELEVANCE IT SHOULDN'T BE

4   TURNED OVER."

5           MR. HALPERN:  THERE'S NO QUESTION AS FAR AS THE

6   COMPELLING NATURE OF IT, THE FACT OF WHY IT'S A HIGHLY

7   CLASSIFIED SECRET, WHY IT SHOULDN'T BE TURNED OVER.

8   MR. MCPHERSON IS THE INDIVIDUAL.  ALL I WOULD BE DOING WOULD

9   BE TALKING TO MR. MCPHERSON AND GIVING IT TO YOU.

10          HOWEVER, AS TO THE RELEVANCE, THE EASY ONES ARE

11  EASY.  IF IT'S RIGHT IN THE INDICTMENT, OF COURSE I DON'T

12  HAVE TO KNOW ABOUT IT.  I DON'T KNOW WHAT'S SO SECRET ABOUT IT

13  TO SAY, "OH, WE WANT TO ASK ABOUT THIS QUESTION THAT IS ON

14  LINE 12 OF YOUR INDICTMENT."  NOBODY'S GOING TO OBJECT.  I'M

15  SURE HE DIDN'T.

16          WE'RE GETTING TO THE AREA HERE WHERE I'M ASSUMING

17  THE AREAS THEY'RE ASKING ABOUT ARE NOT WITHIN THE FOUR CORNERS

18  OF THE INDICTMENT.  IF THEY WERE, MR. MCPHERSON WOULD HAVE

19  APPROVED THEM ALREADY.  AGAIN, I DON'T KNOW WHAT HE DID OR

20  DIDN'T.

21          THE COURT:  IT'S VERY EASY FOR BOTH OF US TO

22  ENVISION A SITUATION WHERE MR. MAC DOUGALL, BY PRESENTING

23  INFORMATION TO YOU, WOULD COMPROMISE MR. FOGGO'S DEFENSE.

24  MAYBE THEY KNOW SOMETHING YOU DON'T KNOW.  MAYBE A WITNESS HAS

25  MADE SOME INCONSISTENT STATEMENT AND THEY HAVE SOUND PROOF OF

PDF created with pdfFactory trial version www.pdffactory.com

1    THAT AND WHEN CONFRONTED WITH IT, THE WITNESS WILL ADMIT IT.

2          AND IF HE HAS TO TELL YOU THAT THAT'S THE REASON

3    THEY WANT TO TALK TO THIS FELLOW, THEN YOU SAY "WE'RE NOT

4    USING THIS GUY.  HE'S DAMAGED GOODS.  WE'RE NOT GOING TO PUT

5    HIM ON ANYMORE.  WE'VE GOT TO FIND ANOTHER WAY TO PROVE THIS,"

6    WHICH SOLIDIFIES THE CASE AGAINST MR. FOGGO AND RUNS

7    COMPLETELY CONTRARY TO FOGGO'S PRIVILEGE AGAINST

8    SELF-INCRIMINATION, HIS FAIR TRIAL RIGHTS UNDER THE 6TH

9    AMENDMENT.  HE DOESN'T HAVE TO SHOW HIS HAND BEFOREHAND.  AND

10   HE'S ALLOWED TO USE THE ADVANTAGE OF SURPRISE AND ALLOWED NOT

11   TO SHARE WITH YOU WHAT HE COMES UP WITH IN HIS INVESTIGATION

12   THAT'S COMPLETELY CONTRARY TO PERHAPS YOUR UNDERSTANDING OF

13   WHAT YOU'VE BEEN TOLD UP TO THIS POINT.

14          I THINK THE SIMPLE WAY TO ACCOMMODATE THAT INTEREST

15   AND AT THE SAME TIME PRESERVE THE INTEREST OF THE UNITED

16   STATES IS TO HAVE ME MEET WITH THE CIA FELLOW -- AS YOU SAY,

17   ALL YOU'D BE IS THE SPOKESMAN AND THE MIDDLEMAN ANYWAY.  I'M

18   ALL IN FAVOR, IN MOST CONTEXTS IN MY LIFE, OF CUTTING THE

19   MIDDLEMAN OUT.  WHEN I BUY A CAR, I GO RIGHT TO THE SALES

20   MANAGER.  I DON'T USE THE SALESMEN ANYMORE BECAUSE I KNOW THAT

21   MEANS COMMISSION.

22          MR. HALPERN:  I APPRECIATE WHAT THE COURT IS TRYING

23   TO DO IN TERMS OF GETTING A RULING AND MOVING THE THING ALONG.

24   I'M HERE AS THE SPOKESPERSON FOR THE CIA REPRESENTING THE

25   DIFFICULTY THEY HAVE.  I'M GOING TO LET MR. MCPHERSON SPEAK TO

PDF created with pdfFactory trial version www.pdffactory.com

1    THAT IN A SECOND.

2           BUT AGAIN, LOOKING BACK AT THE COURT'S POINT, WHILE,

3    AGAIN, I DON'T QUARREL WITH WHAT YOU'RE SAYING, WE BOTH

4    RECOGNIZE THERE ARE NUMEROUS EXAMPLES WHERE THE DEFENSE DOES,

5    IN FACT, HAVE TO COME FORWARD.  THIS IS BUT ONE OF 50 -- WELL,

6    MAYBE NOT 50 -- A DOZEN AT LEAST THAT COULD COME UP HAVING TO

7    DO WITH GIVING AN INSANITY DEFENSE, HAVING TO USE A NATIONAL

8    NECESSITY CLAIM.  THERE ARE MANY TIMES AT TRIAL WHERE THEY

9    HAVE TO GIVE NOTICE.  EXPERTS.  THEY HAVE TO TIP OFF THE OTHER

10   SIDE.  THIS IS PART OF OUR PROCESS.

11          WHEN WE'RE THROWN INTO THE WORLD OF CLASSIFIED

12   INFORMATION, THAT'S ONE OF THESE WHERE IT CHANGES THE RULES A

13   BIT.  AND MY JOB HERE IS JUST TO MAKE SURE THOSE RULES ARE

14   FOLLOWED, TO MAKE SURE THAT THE CIA CAN DO THEIR JOB.

15          IF MR. MCPHERSON HAD NO TROUBLE MAKING THE DECISION,

16   THAT ENDS IT.  BUT ONCE WE GO DOWN THAT ROAD, AS FAR AS I

17   LOOKED AT THE LAW -- I HAVEN'T SEEN THE BRIEFING -- HE'S MADE

18   THOSE DECISIONS.  IF THEY QUARREL WITH HIM, THERE'S AN

19   ACCEPTED PROCEDURE IN THE 9TH CIRCUIT AND EVERY OTHER

20   PROCEDURE.  THEY CAN GO FOLLOW THAT PROCEDURE.  I HAVEN'T READ

21   THE BRIEFINGS BY THE DEFENSE.  WHEN I LOOKED AT THE GOVERNMENT

22   CASES, IT LOOKED COMPLETELY CLEAR TO ME THAT'S THE WAY TO GO.

23          SO AGAIN, I AM AN OFFICER.  I WOULD NEVER URGE THAT

24   THE COURT, EVEN OUT OF EXPEDIENCY, FOLLOW A PATH THAT IS NOT

25   CONSISTENT WITH THE WAY THESE CASES ARE.

PDF created with pdfFactory trial version www.pdffactory.com

1          AGAIN, YOU'VE HEARD BOTH BRIEFS.  IF YOU'RE

2   CONVINCED THAT YOU'RE RIGHT AND THE 9TH CIRCUIT, THE EXXON, I

3   SAY FINE.  I HAVEN'T READ THE OTHER SIDE.  IF I READ THE OTHER

4   SIDE, MAYBE I'D BE IN HERE SAYING, "WELL, MR. MAC DOUGALL HAS

5   A POINT."  BUT I HAVEN'T READ THE OTHER SIDE.  I'VE READ ONE

6   SIDE OF THE CASES.  THEY LOOK VERY CLEAR TO ME.

7          THE COURT:  YOU BELIEVE HIS RECOURSE NOW IS TO FILE

8   A LAWSUIT UNDER THE ADMINISTRATIVE PROCEDURES ACT?

9          MR. HALPERN:  THAT'S CERTAINLY TO OBJECT TO THE

10   TOUHY DECISIONS.  THAT IS CLEARLY IT.  NOW, IF HE WANTS TO

11   THROW THIS BACK INTO DISCOVERY, IF HE WANTS -- YOU KNOW,

12   MR. MAC DOUGALL, IN FACT, ASKED ME FOR ONE BIT OF INFORMATION

13   THAT WE DIDN'T PROVIDE IN DISCOVERY.  I WROTE HIM A LETTER

14   BACK SAYING, "YOU KNOW, LET ME LOOK INTO IT."

15          I HAVE BEEN LOOKING INTO IT.  I'VE BEEN COMPILING

16   IT.  IT'S NOT QUITE YET DONE, BUT IT'S ALMOST DONE.  HE'S

17   GOING TO GET IT.  I LOOKED AT IT AND I SAID, "WELL, HE HAS A

18   RIGHT TO HAVE IT."  WE'RE WORKING ON IT.  WE'RE GOING TO GET

19   HIM THE INFORMATION.  IT HAS TO DO WITH CONTRACT AMOUNTS AND

20   SOME OTHER THINGS THEY WANTED.  THAT'S THE NORMAL WAY THESE

21   THINGS ARE DONE.  AND THEN IF HE WANTS TO --

22          THE COURT:  WERE YOU ALERTED TO THIS EXXON CASE

23   BEFORE YOU CAME IN?

24          MR. HALPERN:  NO.

25          THE COURT:  LET ME READ YOU --

PDF created with pdfFactory trial version www.pdffactory.com

1        MR. HALPERN:  THE EXXON CASE -- PART OF IT, YOUR

2    HONOR -- WE CITED IT.  BUT IN TERMS OF HIS ARGUMENT ON IT, I

3    MUST TELL THE COURT I'M NOT FAMILIAR WITH THE DETAILS OF IT.

4    BUT MR. MCPHERSON IS.

5        THE COURT:  THE LEGAL ISSUE THAT THE DEFENSE HAS

6    RAISED IS ESSENTIALLY THE 9TH CIRCUIT HAS SAID IN A DIFFERENT

7    CONTEXT THAN A CIVIL SUIT THAT THERE'S -- NOTWITHSTANDING THE

8    AVAILABILITY OF THE ADMINISTRATIVE PROCEDURES ACT APPEAL, THAT

9    WHEN A CASE IS IN FRONT OF THE DISTRICT COURT AND INVOLVES THE

10    UNITED STATES AS A PARTY, THAT THE DISTRICT COURT, IN THE

11    FIRST INSTANCE, MAY MAKE THE DETERMINATIONS THAT WOULD

12    OTHERWISE BE MADE IN AN APA CIVIL SUIT.

13        AND THE DEFENSE QUOTES IT HERE FROM PAGE 779.  IT'S

14    AT 34 FED. 3D 779.  THE 9TH CIRCUIT IN EXXON EXPLICITLY

15    DISCARDED THE REMEDY SUGGESTED BY THE GOVERNMENT IN THIS CASE,

16    A CIVIL SUIT UNDER APA.  QUOTE, "COLLATERAL APA PROCEEDINGS

17    CAN BE COSTLY, TIME-CONSUMING, INCONVENIENT TO LITIGANTS, AND

18    MAY EFFECTIVELY EVISCERATE ANY RIGHT TO THE REQUESTED

19    TESTIMONY," END QUOTE.  THUS, QUOTE, "THE NEED FOR DISTRICT

20    COURT REVIEW AND SUCH INSTANCES IS ALL THE MORE COMPELLING,"

21    END QUOTE.

22        AGAIN, CONTEXT IS IMPORTANT.  THIS IS A CIVIL SUIT.

23    BUT THE ISSUE IN EXXON IS THE SAME AS THE ONE BEING PRESENTED

24    TO ME, WHICH IS "YOU'RE INVOLVED IN THIS CASE, AND THE UNITED

25    STATES IS A PARTY.  AND THESE ARE THE TYPES OF DETERMINATIONS

PDF created with pdfFactory trial version www.pdffactory.com

1    YOU'RE MAKING ANYWAY.  YOU'RE GOING TO BE CALLED ON TO MAKE

2    THESE DETERMINATION UNDER SECTION 5.  MAKE THEM.  MAKE THEM.

3    DON'T MAKE US FILE A LAWSUIT.  WHO KNOWS HOW LONG THAT'S GOING

4    TO TAKE.  IT COULD BE A YEAR."

5              AND WHAT WOULD I HAVE TO DO?  I THINK NECESSARILY

6    I'D HAVE TO STAY THIS CRIMINAL CASE WHILE THAT WAS PENDING.

7    AND WHO'S TO SAY THAT THIS IS GOING TO BE THE ONLY DISPUTE.

8    LET'S SAY THAT THE INVESTIGATION TAKES ANOTHER TURN AND THEY

9    COME TO MR. MCPHERSON AND HE SAYS, "I DON'T SEE IT HERE."

10   THEN THEY'VE GOT TO FILE ANOTHER SUIT.  WE COULD BE HELD UP

11   INDEFINITELY.

12             I'M BUFFETED BECAUSE I'VE GOT TWO GUYS THAT HAVE NOT

13   WAIVED THEIR SPEEDY TRIAL RIGHTS.  ONE GUY HAS BEEN FAIRLY

14   INSISTENT THAT HE WANTS TO GET THIS RESOLVED QUICKLY.  HE

15   HASN'T FIRMLY ASSERTED AND SAID, "GIVE ME A RIGHT TO TRIAL IN

16   70 DAYS."

17             BUT YOU KNOW FROM HEARING MR. WILKES SEVERAL TIMES

18   HE DOESN'T LIKE THE CIRCUMSTANCES NOW.  HE WANTS A RESOLUTION

19   OF THIS.  HE BELIEVES HE'S GOING TO BE VINDICATED.  IF I

20   BELIEVED THAT, THEN I WOULD WANT A SPEEDY RESOLUTION, TOO.

21   I'D WANT TO CLEAR MY NAME.

22             SO I'M TRYING TO ACCOMMODATE THAT INTEREST.  I THINK

23   THAT'S MY RESPONSIBILITY HERE.  TO SAY WE'RE GOING TO GO DOWN

24   THIS PATH AND I'M GOING TO TURN THIS WHOLE THING OVER TO SOME

25   MAN OR WOMAN FOR WHOM I HAVE RESPECT, THAT THEY'RE GOING TO

PDF created with pdfFactory trial version www.pdffactory.com

1    HAVE TO COME UP TO SPEED AND SAY, "OKAY.  WHAT'S THIS ABOUT?

2    LET ME GET THE INDICTMENT.  LET ME SEE THIS."  I DON'T KNOW

3    THAT YOU WOULD HAVE ANY SAY IN THAT PROCEEDING, WOULD YOU?

4              MR. HALPERN:  WE WOULD, ACTUALLY, YOUR HONOR.

5              THE COURT:  YOU PERSONALLY OR --

6              MR. HALPERN:  PROBABLY.  WELL, SOMEBODY FROM THE

7    PROSECUTION TEAM.  BUT TWO THINGS, IF I COULD.

8              FIRST, I'D LIKE -- SECONDLY, I'D LIKE MR. MCPHERSON

9    TO TALK ABOUT EXXON BECAUSE I DO THINK IT'S VERY

10   DISTINGUISHABLE.  HE BRIEFED IT.  HE UNDERSTANDS IT.  THAT'S

11   HIS ARGUMENT.

12             BEFORE WE GET THERE, I DON'T MEAN TO BUSHWHACK THE

13   COURT WITH THIS FACT.  I JUST LEARNED OF IT YESTERDAY EVENING.

14   MR. GERAGOS -- OR MR. WILKES, ON HIS BEHALF, HAS SEEMINGLY

15   TAKEN A NEW POSITION AND A NEW TACT.  I WAS SOMEWHAT SURPRISED

16   BECAUSE HE CLEARLY -- HE CALLED ME UP LATE, AND WE HAD A BRIEF

17   CONVERSATION.  AND LET ME SAY HE MISUNDERSTOOD WHAT I SAID.

18   AND HE MADE A FILING WHICH ATTEMPTED TO INDICATE THAT THE

19   GOVERNMENT WOULD SOMEHOW AGREE TO A CONTINUANCE.  BUT HE'S

20   SEEKING A CONTINUANCE NOW.  THE GOVERNMENT IS READY TO TRY

21   THIS CASE WHENEVER THE COURT WANTS TO.

22             THE COURT:  I'M READY TO TRY THE FIRST CASE ON

23   SEPTEMBER 18TH.  I'VE READ HIS PLEADING, AND I'M PREPARED TO

24   RESPOND TO IT.

25             MR. HALPERN:  ASIDE FROM THAT, LET MR. MCPHERSON

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

38

1    ADDRESS THE EXXON VALDEZ BECAUSE I THINK THIS IS INSTRUCTIVE

2    FOR THE COURT.

3            THE COURT:  MR. MCPHERSON.

4            MR. MCPHERSON:  THANK YOU, YOUR HONOR.

5            FIRST, I'D LIKE TO ADDRESS THE HOLDING OF THE EXXON

6    CASE AND THEN ADDRESS MORE BROADLY THE LEGAL REGIME THAT

7    APPLIES TO DISPUTES OF THIS VARIETY.

8            COUNSEL FOR DEFENDANT FOGGO MISAPPREHENDS THE

9    HOLDING IN THE EXXON CASE.  IMMEDIATELY AFTER THE QUOTED

10   MATERIAL THAT THE COURT JUST READ INTO THE RECORD HERE, THE

11   NEXT LINE, THE COURT TALKS ABOUT "WE BELIEVE THAT FEDERAL

12   DISTRICT COURTS IN REVIEWING SUBPOENAS," OKAY?  SO THE CONTEXT

13   HERE IS THIS IS A CIVIL SUBPOENA FOR THE DEPOSITION OF FEDERAL

14   EMPLOYEES.  THAT MEANS THAT EXXON IN THAT CASE HAS JOINED THE

15   ISSUE WITH THE U.S. ATTORNEY'S OFFICE REPRESENTING THE

16   INTERESTS OF THE UNITED STATES WITH DISCOVERY REQUESTS AND A

17   CIVIL SUBPOENA.

18           IT'S A FAR CRY FROM THE SITUATION WE HAVE HERE WHERE

19   MR. HALPERN IS GIVING HIS BEST EFFORT TO RESPOND TO ARGUMENTS

20   THAT HE HAS NEVER SEEN.  SO THAT'S A FUNDAMENTAL DIFFERENCE

21   HERE AS WELL.  AND EXXON STANDS FOR THE SAME PROPOSITION.  IF

22   THIS IS IN THE CONTEXT OF A DISCOVERY REQUEST, WHETHER CIVIL

23   OR CRIMINAL, THEN WE HAVE A LEGAL REGIME THAT APPLIES; THE

24   RULES OF CIVIL PROCEDURE OR THE RULES OF CRIMINAL PROCEDURE.

25           IN THAT CASE, WE AGREE WITH THE 9TH CIRCUIT, AND WE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

39

1    AGREE WITH YOUR HONOR THAT THAT WOULD BE TIME-CONSUMING,

2    DUPLICITOUS, AND WASTEFUL TO EMPLOY AN APA -- A COLLATERAL

3    PROCEEDING UNDER THE APA.

4              THE COURT:  MR. MAC DOUGALL IS NOW AWARE OF --

5              IS IT SEVEN, THE NUMBER OF EMPLOYEES OR FORMER

6    EMPLOYEES WHO ARE WILLING TO SPEAK?

7              MR. MCPHERSON:  YES.

8              THE COURT:  WHAT IF TOMORROW HE TURNS AROUND AND

9    SAYS, "FINE.  HERE'S A SUBPOENA.  I WANT YOUR TESTIMONY" OR "I

10   WANT TO TALK TO YOU.  BE AT THIS PLACE AT THIS TIME," RULE 17

11   TYPE SUBPOENA?

12             MR. MCPHERSON:  THE CASE LAW IS CLEAR THAT HE HAS NO

13   RIGHT TO COMPEL THE ATTENDANCE OF WITNESSES BEFORE TRIAL.

14             THE COURT:  WHAT IF HE SUBPOENAS THEM FOR

15   INFORMATION OR PROPOUNDS INTERROGATORIES TO THEM THAT ASKS THE

16   SAME QUESTIONS THAT HE WOULD OTHERWISE ASK AND TELLS THEM "BE

17   DISCRETE ABOUT THIS.  RETURN IT JUST TO ME"?  DOES THAT PUT

18   HIM CLOSER TO THE EXXON SITUATION OR TO HAVE SOME KIND OF

19   LEGAL PROCESS WHERE THE ISSUE IS JOINED?

20             MR. MCPHERSON:  NO.  SUPREME COURT 9TH CIRCUIT CASE

21   LAW IS CLEAR THAT HE HAS NO RIGHT TO DEMAND THAT AND THIS

22   COURT HAS NO RIGHT TO COMPEL ANY COOPERATION WHATSOEVER BY THE

23   WITNESS.  IT'S SOLELY UP TO THE DISCRETION OF THE WITNESS, NO

24   IMPROPER INFLUENCE BY THE GOVERNMENT, AND NO DEMAND BY THE

25   DEFENSE IN COMPELLING.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

40

1          THE COURT:  AT THE END OF THE DAY, I UNDERSTAND THE

2     DISTINCTIONS THAT YOU'RE POINTING OUT.  WHAT WE HAVE IS A

3     REQUEST FOR WHAT THEY BELIEVE TO BE RELEVANT INFORMATION IN

4     THIS CASE.  AND IN EXXON, I'M ASSUMING THAT IN GOOD FAITH THE

5     SUBPOENAS WERE ISSUED.  AND SO THEY BELIEVED IT WAS RELEVANT

6     INFORMATION, INFORMATION ABOUT A CLAIM OR RELEVANT TO A CLAIM

7     ITSELF.

8          MR. MCPHERSON:  REMEMBER, EXXON WAS JUST SUCH A

9     CASE.  IT WAS A COLLATERAL CIVIL PROCEEDING.  REMEMBER, EXXON

10    WAS THE DEFENDANT IN THE ORIGINAL UNDERLYING DAMAGES LAWSUIT.

11    AND WHEN THE GOVERNMENT, THROUGH THEIR TOUHY REGULATIONS,

12    DENIED ACCESS TO THE EMPLOYEES TO BE WITNESSES IN CIVIL

13    DEPOSITIONS, EXXON HAD TO FILE A SEPARATE CIVIL ACTION IN THE

14    COURT TO HAVE THE ISSUE EVEN HEARD.

15          I WOULD LIKE TO POINT OUT MOST IMPORTANTLY THE COURT

16    HERE IS STRUGGLING WITH WHAT STANDARD TO REVIEW THE CIA

17    DECISION, WHAT LEVEL OF DEFERENCE TO APPLY.  AND THAT'S

18    UNDERSTANDABLE BECAUSE DEFENSE COUNSEL HAS NOT ARTICULATED ANY

19    LEGAL STANDARD WHICH APPLIES.  AND MR. MAC DOUGALL SUGGESTED

20    THE COURT SHOULD REVIEW WHETHER THE APA'S ACTION WAS

21    REASONABLE.  WITH ALL DEFERENCE TO THE COURT, THE COURT

22    DOESN'T SIT AS A CHANCELLOR ROAMING THE COUNTRY TRYING TO --

23          THE COURT:  I AGREE.  I DON'T THINK I WOULD HAVE

24    SUCH A NON-DEFERENTIAL STANDARD WITH YOU.  AS I SAID, YOU KNOW

25    A LOT MORE ABOUT WHY THESE THINGS MUST BE KEPT SECRET THAN I

PDF created with pdfFactory trial version www.pdffactory.com

1   COULD EVER GLEAN OR HOPE TO IMAGINE.  I WOULD TEND TO BE MORE

2   DEFERENTIAL.

3           WHAT'S THE STANDARD ON APA REVIEW?

4           MR. MCPHERSON:  ARBITRARY AND CAPRICIOUS AGENCY

5   ACTION.

6           THE COURT:  CAN'T I MAKE THAT DETERMINATION?  LET'S

7   SAY I EMBRACE THAT STANDARD AND SAY, "YEAH, I THINK IT'S

8   RELEVANT.  BUT ON THE OTHER HAND, THIS DOESN'T RISE TO THE

9   LEVEL OF BEING ARBITRARY AND CAPRICIOUS ON THE CIA'S PART.

10  THEY MAY BALANCE SOME RELEVANCY, BUT THEY STILL HAVE

11  COMPELLING INTEREST THAT SUPERSEDES THIS.  SO I'M NOT GOING TO

12  ALLOW IT.  I DON'T THINK IT'S ARBITRARY FOR THEM TO SAY NO

13  GIVEN WHAT MR. MCPHERSON'S TELLING ME."  WHY CAN'T I DO THAT?

14  THAT CUTS OUT WHAT I BELIEVE TO BE A VERY LENGTHY,

15  COMPLICATED, CUMBERSOME PROCEDURE.

16          MR. MCPHERSON:  I WOULD HOPE THE COURT WOULD NOT

17  REACH SUCH A CONCLUSION WITHOUT BEING HEARD BY THE GOVERNMENT.

18  THAT'S THE ESSENCE OF OUR POSITION HERE; THAT THE DEFENDANT

19  DID, FOR TACTICAL REASONS OR OTHERWISE -- AND IT'S NOT OUR JOB

20  TO SECOND-GUESS -- HAS TWO PATHS AVAILABLE TO HIM.  HE WANTS

21  TO OBTAIN CLASSIFIED INFORMATION FROM THE GOVERNMENT.  HE CAN

22  OBTAIN THAT THROUGH ORAL INTERVIEWS OF CIA EMPLOYEES OR

23  DISCOVERY DEMANDS PROPOUNDED UPON THE GOVERNMENT REPRESENTED

24  BY THE UNITED STATES ATTORNEY'S OFFICE HERE IN THE SOUTHERN

25  DISTRICT OF CALIFORNIA.

PDF created with pdfFactory trial version www.pdffactory.com

42

1            FOR WHATEVER REASON, NOT OURS TO SECOND-GUESS, HE'S

2    CHOSEN TO GO THE FIRST ROUTE THROUGH A TOUHY DEMAND TO THE

3    CIA.  THAT RAISES THE QUESTION FOR THE COURT, WHETHER IT'S

4    TOUHY OR DISCOVERY, WHO DECIDES IN THE FIRST INSTANCE AND WHAT

5    JUDICIAL OFFICIAL, IF ANY, REVIEWS THAT AND UNDER WHAT

6    STANDARD.  IF YOU GO FOR A TOUHY REQUEST, IT'S DECIDED BY THE

7    DIRECTOR OF THE CIA, AND THE REVIEW IS UNDER THE

8    ADMINISTRATIVE PROCEDURES ACT FOR AN ARBITRARY OR CAPRICIOUS

9    ACTION.

10           THE COURT:  WHAT HAPPENS -- I'M UNFAMILIAR WITH IT.

11   SO THE NEXT STEP WOULD BE TO GO TO THE DIRECTOR OF THE CIA,

12   AND MR. MAC DOUGALL WOULD HAVE TO MAKE THE CASE --

13           MR. MCPHERSON:  WE'VE ALREADY OFFERED IN THAT

14   REGARD.  WE'VE PRESENTED OUR DECISIONS TO MR. MAC DOUGALL ON

15   BEHALF OF THE CIA --

16           THE COURT:  WHAT'S --

17           MR. MCPHERSON:  -- THROUGH MY 1 AUGUST 2007 LETTER

18   TO MR. MAC DOUGALL.

19           THE COURT:  WHAT'S HIS NEXT MOVE, THEN, ASSUMING WE

20   GO AS YOU THINK IT OUGHT TO OCCUR?

21           MR. MCPHERSON:  ONE OPTION TO HIM IS TO INSTITUTE A

22   CIVIL ACTION IN AN APPROPRIATE COURT.

23           THE COURT:  WHERE WOULD THAT BE, D.C.?

24           MR. MCPHERSON:  I'D HAVE TO REFER TO THE GENERAL

25   VENUE PROVISION OF THE FEDERAL STATUTES.  MOSTLY LIKELY IN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   VIRGINIA, BUT I WOULD ASK MR. MAC DOUGALL TO DO HIS OWN

2   RESEARCH.

3        THE COURT:  DOES THAT THEN GO TO A DISTRICT COURT

4   THERE OR IS THERE A SPECIAL --

5        MR. MCPHERSON:  A DISTRICT COURT, YOUR HONOR.  IT

6   WOULD BE REVIEWING THE RECORD BELOW AND TO FIND IF THE

7   AGENCY'S ACTION WAS ARBITRARY AND CAPRICIOUS, WHICH COURTS ARE

8   VERY FAMILIAR WITH DOING IN ANY ADMINISTRATIVE PRACTICE.

9        THE MORE EXPEDIENT ROUTE, WHICH WE HAVE SUGGESTED

10  AND WHICH THE U.S. ATTORNEY'S OFFICE HAS URGED, IS TO RIPEN

11  ALL THESE ISSUES AND MAKE A DISCOVERY DEMAND UPON THE

12  GOVERNMENT.  AND THEN HOWEVER THAT DISCOVERY DEMAND IS

13  DECIDED, PERHAPS MR. HALPERN AGREES WITH MR. MAC DOUGALL AND

14  INFORMS ME OF THAT AND THAT CHANGES OUR DECISION OR

15  MR. HALPERN MAKES A DECISION WHICH MR. MAC DOUGALL DOES NOT

16  AGREE WITH.  THAT CAN BE BROUGHT TO THE COURT'S ATTENTION

17  PROPERLY THROUGH A MOTION TO COMPEL AND NOW DECIDES ON THE

18  FEDERAL RULES OF CRIMINAL PROCEDURE.

19       THE REASON THE COURT IS GRAFTED WITH WHAT STANDARD

20  TO APPLY IS BECAUSE THIS IS NEITHER FISH NOR FOWL.  YOU CAN'T

21  SUBMIT A TOUHY REQUEST AND ASK IT TO BE REVIEWED JUDICIALLY

22  UNDER THE FEDERAL RULES OF CRIMINAL PROCEDURE.  THIS COURT --

23  I THINK IT WOULD BE REVERSIBLE ERROR TO FIND THAT THE

24  GOVERNMENT HAS VIOLATED THE DEFENDANT'S 5TH AMENDMENT DUE

25  PROCESS RIGHTS OR 6TH AMENDMENT RIGHTS TO EFFECTIVE ASSISTANCE

PDF created with pdfFactory trial version www.pdffactory.com

44

1     OF COUNSEL WITHOUT THE GOVERNMENT PARTICIPATING IN THE

2     PROCEEDINGS.

3              AND SO THAT'S WHY YOU'VE GOT TWO LANES AVAILABLE TO

4     YOU:  APA ABUSE OF DISCRETION OR A DISCOVERY DEMAND IN WHICH

5     THIS COURT WILL PARTICIPATE DIRECTLY, WHICH WE SUGGEST IS THE

6     MOST EXPEDIENT AND EFFICIENT.  FOR WHATEVER REASON, THAT PATH

7     HAS BEEN OPEN TO MR. MAC DOUGALL SINCE THE DAY OF THE

8     INDICTMENT.  FOR WHATEVER REASON, TACTICAL OR OTHERWISE,

9     THEY'VE CHOSEN NOT TO ELECT THAT ROUTE.  THAT'S FINE.  BUT

10    THERE ARE CONSEQUENCES.  THERE'S A DIFFERENT LEGAL REGIME

11    WHICH APPLIES TO EACH ONE.

12             THE COURT:  YOU UNDERSTAND THE DILEMMA THAT I'M IN,

13    THOUGH.  I'VE ARTICULATED IN THE CONTEXT OF THE ONE EXAMPLE.

14    LET'S SAY THAT THEY HAVE COME UP WITH EVIDENCE THAT SOME

15    WITNESS WHO PREVIOUSLY SPOKE TO THE GOVERNMENT ON WHICH THE

16    GOVERNMENT -- ON WHOM THE GOVERNMENT RELIED IN GAINING THE

17    INDICTMENT WHO THE GOVERNMENT INTENDS TO CALL HAS IN THE PAST

18    MADE AN INCONSISTENT STATEMENT OR DONE SOMETHING THAT WILL --

19    CAN BE EXPOSED AT TRIAL AND RUIN THE PERSON'S CREDIBILITY AND

20    MAY CALL INTO QUESTION THE WHOLE ISSUE OF THE VIABILITY OF THE

21    GOVERNMENT'S CASE.

22             WHAT YOU'RE SUGGESTING IS THEY HAVE TO SHOW THEIR

23    WHOLE CARDS AND REVEAL THAT TO THE GOVERNMENT IN ADVANCE IN

24    ORDER TO GET TO THAT WITNESS.

25             MR. MCPHERSON:  THEY DO NOT.  THERE WOULD BE NO

PDF created with pdfFactory trial version www.pdffactory.com

45

1    NECESSITY FOR MR. MAC DOUGALL TO IDENTIFY THE WITNESS.  THEY

2    CAN PROPOUND A DISCOVERY DEMAND UPON THE GOVERNMENT

3    REPRESENTED BY THE U.S. ATTORNEY AND SAY, "GIVE ME EVERYTHING

4    YOU HAVE ON PROGRAM 1, PROGRAM 2, AND PROGRAM 3."  THE U.S.

5    ATTORNEY'S OFFICE, WHO HAS MUCH BETTER COMMAND OF THE CHARGES,

6    THE EVIDENCE, THE WITNESSES, THE AVAILABLE DEFENSES WILL MAKE

7    SOME DECISION.

8            THE COURT:  I WANT TO TALK IN A HIGH LEVEL OF

9    GENERALITIES.  THERE'S ONE PROGRAM HERE THAT YOU'VE LOOKED AT

10   AND SAID, "WE DON'T SEE THE RELEVANCE.  IT'S HIGHLY SENSITIVE.

11   WE'RE NOT GOING TO TURN IT OVER."

12           IT'S YOUR POSITION THAT ALL MR. MAC DOUGALL HAS TO

13   SAY IS, IN A VERY GENERAL WAY, "WE WANT TO TALK TO THE PEOPLE,

14   AND IT IMPLICATES THIS PROGRAM" OR DOES HE HAVE TO BE AS

15   SPECIFIC AS HE WAS IN THE PAPERS THAT HAVE BEEN FILED WITH ME

16   AND SAY "HERE'S WHAT WE WANT TO ASK.  HERE'S THE SUBPARTS OF

17   THE QUESTIONS WE'RE GOING TO GET INTO"?

18           MR. MCPHERSON:  OUR POSITION, AFTER HEARING HIS

19   PROFFER, IS THAT NONE OF THAT PROGRAM IS RELEVANT TO THE

20   CHARGES IN THE INDICTMENT OR ANY AVAILABLE DEFENSE.

21           THE COURT:  I DON'T KNOW WHERE THAT GETS US.  IF HE

22   MAKES A GENERIC REQUEST TO MR. HALPERN, THEY CONVEY THAT TO

23   YOU, AND YOU SAY "WAIT A MINUTE.  THIS IMPLICATES ALL KINDS OF

24   SPECIFICS, AND I DON'T KNOW EXACTLY WHAT HE'S GOING TO ASK.

25   I'M CONCERNED ABOUT THIS," AND THEN YOU SAY "TELL HIM 'NO,'"

PDF created with pdfFactory trial version www.pdffactory.com

1    AND THEN HALPERN COMES BACK AND TELLS MR. MAC DOUGALL "NO,"

2    WHERE DO WE GO FROM THERE?

3            MR. MCPHERSON:  YOU'D BE IN THE SAME POSITION.  THIS

4    HAS NOTHING TO DO WITH CLASSIFIED INFORMATION.  THAT'S THE

5    POSITION THAT THE COURT IS FACED WITH ANYTIME THE DEFENDANT

6    MAKES A DISCOVERY DEMAND WITH WHICH THE GOVERNMENT DISAGREES.

7            AND THE DEFENDANT IS REVEALING SOMETHING ABOUT HIS

8    THOUGHT PROCESSES WHEN HE SUBMITS HIS DISCOVERY DEMAND TO THE

9    GOVERNMENT.  IT'S UP TO HIM TO FIND THE CONTOURS OF THAT

10   DISCOVERY DEMAND.

11           THE COURT:  WHEN YOU WERE SPEAKING, MR. MCPHERSON,

12   ANOTHER THOUGHT OCCURRED TO ME, WHICH MAY BE A WAY TO SOLVE

13   THIS.

14           I ALLUDED EARLIER TO CREATING A WALL WITHIN A

15   PROSECUTOR'S OFFICE.  THAT HAPPENS OCCASIONALLY.

16           MR. HALPERN, WHY CAN'T ONE OF THE PROSECUTORS

17   ASSIGNED TO THIS CASE BE THE DISCOVERY MONITOR TO WHOM

18   MR. MAC DOUGALL COMMUNICATES THESE REQUESTS, BUT THAT PERSON

19   WILL BE FORBIDDEN FROM TALKING TO THE OTHERS AND CANNOT ANY

20   LONGER TAKE AN ACTIVE PART IN THE TRIAL OF THE CASE?

21           MR. HALPERN:  THE PROBLEM IS --

22           THE COURT:  YOU DON'T NEED ALL THESE PROSECUTORS TO

23   TRY THIS CASE.

24           YOU'VE GOT FOUR?

25           MR. HALPERN:  THE PROBLEM, YOUR HONOR, IS YOU'RE

PDF created with pdfFactory trial version www.pdffactory.com

1    TRYING TO REACH A PRAGMATIC SOLUTION.  AND I DON'T QUARREL

2    WITH WHAT YOU'RE DOING.  IN FACT, IF I WERE SITTING IN YOUR

3    CHAIR, I'D BE DOING THE EXACT SAME THING.  THIS JUST ISN'T THE

4    WAY THAT WE'RE SUPPOSED TO BE DOING THIS UNDER THE LAW.

5         I AGREE WITH THE READING BY MR. MCPHERSON OF EXXON

6    VALDEZ.  I THINK ONE OF THE OTHER POINTS THAT I WOULD HAVE

7    BROUGHT UP IS THAT'S A DIFFERENT CASE BECAUSE AT THE POINT

8    THAT WE'RE CLOSER TO EXXON VALDEZ, DISCOVERY IS PROPOUNDED,

9    AND THEN WE'RE AT THE TABLE.  AND THAT'S REALLY THE PROBLEM.

10   THE COURT SAID, "WELL, HOW ABOUT IF I MADE A BAD RULING?"

11   IT'S NOT THAT WE'RE WORRIED ABOUT YOUR RULING.  BUT YOU SAY,

12   "IF I MAKE A BAD RULING, YOU CAN APPEAL."  HOW CAN I APPEAL?

13   I'M NOT EVEN PART OF THE PROCEEDINGS.  I DON'T KNOW WHAT THE

14   RECORD IS.  WE'RE CUT OUT ENTIRELY.

15        THE COURT:  YOU'RE RIGHT.  THAT'S A PROBLEM.

16        MR. HALPERN:  TOUHY ITSELF, THIS IS WHAT WAS BUILT

17   INTO TOUHY THE WAY TO DO IT.  IF THIS IS A CONSTITUTIONAL

18   ATTACK ON TOUHY, I THINK THAT LOSES.  THE LAW HAS APPROVED

19   THIS AS APPROPRIATE WAY TO ADDRESS THESE ISSUES.

20        THE COURT:  COME BACK TO THE COMPROMISE THAT I'VE

21   SUGGESTED, THOUGH.  AND I DON'T MEAN THIS IN A DISPARAGING WAY

22   AT ALL.

23        WHY CAN'T WE HAVE SOMEBODY FROM THE U.S. ATTORNEY'S

24   OFFICE THAT'S JUST GOING TO DEAL WITH THIS ISSUE OF DISCOVERY

25   AND MAKE THE ARGUMENTS ON BEHALF OF THE UNITED STATES, BUT

PDF created with pdfFactory trial version www.pdffactory.com

48

1    WILL NOT CONVERSE WITH THE OTHER PROSECUTORS AND WILL NOT

2    ACTIVELY PARTICIPATE IN THE TRIAL SO THAT AT LEAST I CAN

3    ACCOMMODATE BOTH SETS OF INTERESTS THAT I'M CONCERNED ABOUT

4    HERE?

5          MR. HALPERN:  WELL, NUMBER ONE, YOUR HONOR, THERE'S

6    NO RIGHT TO HAVE THE GOVERNMENT DO THAT.  I'M NOT SAYING WE

7    CAN'T.  THERE ARE PROBLEMS IN THAT.  IN TERMS OF BIFURCATING

8    OUR PROSECUTIONS TEAM, WE'RE SIMPLY ONE LEVEL REMOVED FROM

9    WHERE WE ARE NOW.  I'M NOT SURE THAT PERSON WOULD REALLY

10   UNDERSTAND THE APPROPRIATE WAY TO DO IT.

11         BUT WHAT REALLY BOTHERS ME ABOUT IT IS NOT SO MUCH

12   THE PRACTICAL SUGGESTION.  IT'S THAT THAT'S NOT WHAT THE LAW

13   SUGGESTS.  IT'S NOT THE WAY WE SHOULD DO IT.  I'M BOTHERED

14   WHEN WE'VE GOT PROBLEMS WITH A TOUHY REQUEST AND IT'S DENIED

15   AND THEN COUNSEL INDICATES "WELL, THIS IS JUST ONE AREA.  IT'S

16   WITHIN THE INDICTMENT."  IT'S NOT.

17         THEY'RE ASKING FOR WHOLESALE ACCESS, WHICH I THINK

18   IS WHAT BOTHERS MR. MCPHERSON, INTO A COMPARTMENT WITH NO

19   JUSTIFICATION TIED TO THE INDICTMENT.  TO THE EXTENT THAT'S

20   APPROPRIATE OR NOT, IT'S SOMETHING WE BOTH HAVE TO -- SHOULD

21   DEFER TO.  AS TO WHETHER IT'S RELEVANT OR NOT, THAT'S

22   SOMETHING THAT FALLS WITHIN OUR SPHERE.  AND IF IT DOES FALL

23   WITHIN OUR SPHERE, THAT'S NORMAL DISCOVERY.  WE DON'T MAKE

24   THIS DISTINCTION.  WE DON'T TRY TO FORM AN ARTIFICIAL WALL IN

25   OTHER CASES.

PDF created with pdfFactory trial version www.pdffactory.com

49

1          THE COURT:  WHAT IF THEY MAKE THAT REQUEST?  LET'S

2     ASSUME THAT I GO WITH YOUR ARGUMENT, AND REQUESTS IN THE FIRST

3     INSTANCE HAVE TO BE PRESENTED TO YOU AS THE CASE PROSECUTOR.

4     IF I'M MR. MAC DOUGALL, I'M GOING TO MAKE IT VERY GENERAL.

5     I'M GOING TO SAY, "HERE'S WHAT I NEED.  TRUST ME.  THIS IS

6     RELEVANT TO THE DEFENSE."  THEN YOU SAY, "NO, WE'RE NOT GIVING

7     IT."  THEN THE ISSUE IS JOINED.  IT'S IN FRONT OF ME NOW.

8          IN MANY OTHER INSTANCES WHERE THAT'S AT ISSUE, I

9     WILL CONFER EX PARTE WITH DEFENSE COUNSEL TO SAY, "TELL ME

10    WHAT YOUR THEORY IS.  TELL ME WHY YOU THINK IT'S RELEVANT."

11    WE'LL MAKE A RECORD ON THAT THAT WILL BE COMPLETELY

12    REVIEWABLE, BUT THEN I'LL COME OUT AND ISSUE AN APPROPRIATE

13    ORDER.  IF I AGREE, I'LL SAY, "YES, YOU MUST TURN IT OVER."

14         HOW DOES THAT HELP THE SITUATION?

15         MR. HALPERN:  WE HAVE TO PUT OVERLAY AT CIPA BECAUSE

16    THEY ARE ASKING FOR DISCLOSURE OF CLASSIFIED INFORMATION.  I

17    DON'T MEAN TO PULL CIPA OUT AS A TRUMP CARD TO GIVE THE

18    ANALOGY DOWN THE ROAD.  BUT THERE IS A FRAMEWORK.  THE CASE IS

19    DECIDED UNDER CIPA.  THAT'S HOW THEY ALL DO IT.

20         DOES IT CUT AWAY SOME OF THE NORMAL MANEUVERING

21    RULES THE DEFENSE HAS?  IT DOES.  I CAN TELL YOU THIS:  IT

22    CUTS AWAY FAR MORE THAN OURS.  IT'S NOT THAT THE GOVERNMENT

23    WANTS CIPA.  "OH, THIS IS GOING TO HELP US."  IT'S A VERY

24    CUMBERSOME PROCEDURE THAT, AS THE COURT IS ABOUT TO SEE AS

25    SOON AS WE GET INTO THE FIVE AND SIX HEARINGS, WE'RE GOING TO

PDF created with pdfFactory trial version www.pdffactory.com

1    HAVE TO MAKE ALL TYPES OF CONCESSIONS IN OUR CASE IN TERMS OF

2    WHAT WE PRESENT THAT WE DON'T WANT TO BUT THAT WE HAVE TO.

3              BECAUSE ANYTIME YOU DEAL WITH CLASSIFIED

4    INFORMATION, WE HAVE TO BOW TO WHAT THE AGENCY SAYS AS TO WHAT

5    WE CAN SAY AND WHAT WE CAN'T SAY.  SO THERE ARE LIMITATIONS ON

6    BOTH WAYS.  THAT'S THE HAND WE'VE BEEN DEALT.  I CAN'T AGREE

7    TO GO DOWN ANY PATH THAT ISN'T, IN FACT, WITHIN THAT

8    FRAMEWORK.

9              THE COURT:  I DON'T LIKE IT.  I'M NOT COMFORTABLE

10   WITH IT.  I TRIED A LOT OF CASES AS A LAWYER.  I TRY A FAIR

11   NUMBER OF THEM NOW AS A JUDGE.  AND I CAN SEE A VERY COMMON

12   CIRCUMSTANCE COMING UP WHERE THEY WOULD HAVE TO REVEAL

13   SOMETHING THAT MIGHT GIVE YOU AN EDGE.  IT MIGHT CAUSE YOU,

14   NOTWITHSTANDING THAT -- PUT ASIDE THE IDEA OF CHANGING COURSE

15   TO PROTECT CLASSIFIED INFORMATION.  I COULD SEE A CHANGE IN

16   COURSE BECAUSE YOU SAY, "WE DIDN'T KNOW ABOUT THIS.  IF THIS

17   COMES UP, THIS IS GOING TO BE BAD.  WE'RE GOING TO CHANGE

18   COURSE ON OUR TRIAL STRATEGY HERE TO AVOID THIS SITUATION."

19   THEY'RE TIPPING THEIR HAND IN ADVANCE.  IT GIVES THE

20   GOVERNMENT AND ADVANTAGE.

21             MR. HALPERN:  YOU MAY BE RIGHT, YOUR HONOR, BUT I'LL

22   SAY THIS.  WE'LL LOOK AT BOTH SIDES.

23             WE'RE GOING TO BE GIVING EVIDENCE ON BOTH ENDS WHEN

24   WE GO INTO SECTION 5 BECAUSE BY OUR PROPOSED SUBSTITUTIONS,

25   THEY'RE GOING TO HAVE -- YOUR HONOR, I THINK, FRANKLY, IT'S A

PDF created with pdfFactory trial version www.pdffactory.com

51

1   FAR MORE ADVANTAGE, THE NOTION ITSELF THAT WE'RE ARGUING ON

2   THIS, THESE SEVEN INDIVIDUALS, THAT WE REALLY CARE ABOUT WHAT

3   THEY'RE GOING TO TALK ABOUT.  THEY CAN'T PRESENT THESE PEOPLE

4   AT TRIAL IF IT'S CLASSIFIED INFORMATION WITHOUT FIRST ALERTING

5   US.

6          SO ALL WE'RE REALLY ARGUING OVER IN TERMS OF A

7   TACTICAL ADVANTAGE IS WE WON'T KNOW THIS SPECIFIC AREA OR

8   WE'LL LEARN IT A MONTH OR TWO EARLIER THAN WE MIGHT HAVE.

9   LIKE THIS IS SUCH AN ADVANTAGE THE GOVERNMENT HAS?  IT'S

10  NOT -- WELL, IT IS AN ADVANTAGE, BUT IT'S NOT A BIG ONE.  IT'S

11  NOTHING THAT I WOULD BE UP HERE ARGUING FOR.  I COULD GIVE

12  THIS AWAY IN A HEARTBEAT.

13         I HAVE TO ARGUE AS A MATTER OF PRINCIPLE THAT THE

14  COURT, THE GOVERNMENT, THE DEFENSE ARE STUCK WITH THESE CIPA

15  PROCEDURES THAT HAVE BEEN APPROVED.  AND MAYBE WE COULD ALL DO

16  BETTER IF WE CAME UP AND THOUGHT ABOUT IT.  BUT THAT'S NOT A

17  LUXURY THAT I HAVE AS A PROSECUTOR; THAT I CAN JUST SAY,

18  "WELL, LET'S IGNORE IT BECAUSE WE CAN GET THERE.  I'VE GOT MY

19  CLIENT RIGHT HERE, AND I'M GOING TO FOLLOW THE INSTRUCTIONS

20  THAT I HAVE TO SAFEGUARD THE INFORMATION AS I SEE IT."

21         AND MR. MCPHERSON SAYS IT'S OKAY.  THAT CHANGES THE

22  BALLGAME, BUT OTHERWISE --

23         THE COURT:  HE SAYS IN ONE AND A HALF RESPECTS IT'S

24  NOT OKAY.  IT'S TEMPTING FOR ME TO COMPARE THE RELATIVE

25  ADVANTAGES, BUT THE VICE IN THAT IS THAT ONE SET OF ADVANTAGES

PDF created with pdfFactory trial version www.pdffactory.com

52

1  HAS CONSTITUTIONAL IMPLICATIONS.  TO ME, AT LEAST.  REQUIRING

2  THEM TO TIP THEIR HAND ON HOW THEY'RE GOING TO DEFEND THIS

3  GUY, WHICH THERE WOULD BE A MIGHTY TEMPTATION ON YOUR PART,

4  EVEN THOUGH I KNOW YOU'RE NOT LOOKING FOR THIS ADVANTAGE, TO

5  SAY, "THIS GUY SAYS, 'OH, WE DIDN'T KNOW ABOUT IT.  WE'RE NOT

6  CALLING THIS GUY.  GET US A SUBSTITUTE WITNESS TO THIS POINT."

7          THAT'S GOING TO BE A BIG PROBLEM FROM MY

8  PERSPECTIVE.  BECAUSE ALL OF A SUDDEN, ALL OF THE DEFENSE WORK

9  GOES UP IN SMOKE.  THE COUPS THAT THEY'RE GOING TO PULL BY

10  HITTING THE GUY WITH THE INCONSISTENT STATEMENTS, "GUESS WHAT?

11  "WE'RE NOT CALLING THAT GUY ANYMORE."

12          MR. HALPERN:  I HAVE ONLY ONE PROBLEM WITH WHAT YOU

13  SAID.  I'M FAMILIAR WITH THIS COURT'S UNDERSTANDING OF TRIAL

14  PRACTICE, WHICH -- I DON'T NORMALLY DO THIS -- I WILL CLEARLY

15  DEFER IT'S GREATER THAN MINE.  I'M NOT IN ANY WAY SUGGESTING

16  THAT YOU'RE NOT SEEING SOMETHING THAT I CAN SEE.

17          MY ONLY QUARREL IS WITH YOUR WORD "CONSTITUTIONAL."

18  IT GIVES THE GOVERNMENT -- NOW, I'M NOT SAYING WE DON'T GIVE

19  UP SOME THINGS.  I DON'T WANT YOU TO WAIT.  BUT IT GIVES THE

20  GOVERNMENT AN ADVANTAGE IN THE AREA YOU ARTICULATED.

21  CONSTITUTIONAL?  WELL, IT'S BEEN DETERMINED BY OTHER COURTS.

22  AND AGAIN, I'M NOT EVEN SAYING IT'S RIGHT OR WRONG.  ALL I

23  KNOW IS THAT'S WHAT THE SUPREME COURT SAYS.  I DISAGREE WITH

24  THE SUPREME COURT A LOT.  AS A GOVERNMENT PROSECUTOR, THOUGH,

25  I ALWAYS COME INTO COURT AND I ARGUE EXACTLY WHAT THEY SAY.

PDF created with pdfFactory trial version www.pdffactory.com

53

1    THAT'S THE LAW.

2              THE COURT:  I'VE ACKNOWLEDGED THAT.  I DENIED

3    MR. WILKES'S MOTIONS TO DECLARE THE STATUTE AND THE PROCEDURES

4    UNCONSTITUTIONAL.  SO I'VE ACKNOWLEDGED THE CONSTITUTIONALITY

5    OF IT.  IT'S VERY TROUBLESOME TO ME.  I DON'T KNOW HOW IT

6    CAN'T BE SAID THAT THAT DOESN'T VIOLATE SOME 5TH AMENDMENT

7    RIGHT OF MR. FOGGO, YOU KNOW, TO REMAIN SILENT.  I INSTRUCT

8    JURIES FROM THIS LITTLE BOOK OVER HERE THAT THE DEFENDANT

9    DOESN'T HAVE TO DO ANYTHING; DOESN'T HAVE TO TESTIFY, DOESN'T

10   HAVE TO PRESENT ANY EVIDENCE.

11             BUT HERE, IN ESSENCE, WE'RE TELLING HIM "YES, YOU

12   DO.  YOU HAVE TO TELL THE GOVERNMENT IN ADVANCE BEFORE YOU CAN

13   DEFEND YOURSELF."

14             MR. HALPERN:  AS A TRIAL ATTORNEY, I THINK WHAT

15   YOU'VE JUST SAID, YOU HAVE NOW ALLOWED MR. FOGGO AND

16   MR. WILKES TO HAVE THEIR CAKE AND EAT IT, TOO.  THE REASON I

17   SAY THAT, THE TACTICAL ADVANTAGE HERE, IN MY OPINION, IS A

18   MINIMAL ONE I'D GIVE UP IN A SECOND.  THEY HAVE THIS ISSUE.

19   THE MAY COURT MAY BE RIGHT.  THIS IS A RECORD.  THIS IS GOING

20   TO BE REVIEWED.

21             IF YOU'RE RIGHT, WE'RE GOING TO -- LET'S SAY THIS:

22   THE 9TH CIRCUIT, I THINK, IS CERTAINLY SENSITIVE TO THESE

23   TYPES OF ISSUES.  IT'S GOING TO BE REVIEWED UP THERE.  AND I

24   DON'T KNOW WHAT THE ANSWER IS GOING TO BE.  ALL I KNOW IS AS I

25   READ THE CASES SO FAR, IT'S BEEN DEEMED TO BE CONSTITUTIONAL

PDF created with pdfFactory trial version www.pdffactory.com

1    EVEN THOUGH BOTH SIDES HAVE TO ADAPT A TRIAL TECHNIQUE.

2            THE COURT:  ARE YOU AGAINST DESIGNATING ON OF YOUR

3    NUMBER -- MAYBE NOT ONE OF THE FOUR ASSIGNED PROSECUTORS, BUT

4    SOMEBODY ELSE WHO CAN GET UP TO SPEED REAL EASY AS BEING THE

5    DISCOVERY CONTACT PERSON AND ERECT THE WALL OF SEPARATION

6    BETWEEN THAT PERSON FOR DISCOVERY ISSUES?

7            THAT PERSON CAN COME IN AND SAY, "LOOK, WE DON'T

8    THINK THIS IS RELEVANT."  I HEAR BOTH SIDES.  THAT PERSON

9    COULD THEN MAKE THE DETERMINATION OF WHETHER AN APPEAL OF MY

10   ORDER DISCLOSING SOMETHING OR REQUIRING THAT SOMETHING BE

11   DISCLOSED --

12           MR. HALPERN:  YOUR HONOR, YOU'RE ASKING FOR ME TO

13   DESIGNATE MYSELF BECAUSE I CAN TELL YOU I'M PROBABLY THE ONLY

14   PERSON WHO REALLY HAS A FULL GRASP OF THE CASE.  MS. CHU

15   CLEARLY DOESN'T, AND SHE'S TRYING TO GET UP TO SPEED.

16           MR. FORGE EVEN, WHO CLEARLY UNDERSTANDS THE LEGAL

17   ISSUES, DOESN'T UNDERSTAND THE FACTS, HASN'T SEEN ALL THE

18   DOCUMENTS.  THE ONLY PERSON WHO HAS PROBABLY IS MYSELF.

19   MR. BHANDARI WOULD BE NEXT.  ALTHOUGH I THINK AS A PRACTICAL

20   MATTER, THAT WOULD BE DIFFICULT.  GETTING UP TO SPEED IN THIS

21   CASE, IT'S NOT -- IT WOULD TAKE A WHILE TO DO IT.  I'M NOT

22   WILLING TO SIT OUT, NOT AT LEAST WITHOUT BEING ORDERED.

23           THE COURT:  ANYTHING ELSE, MR. MCPHERSON?

24           I HAVE YOUR POINT.  I'VE BEEN TURNED AROUND, I

25   GUESS, IN MY THINKING BY WHAT YOU SAY.  IT DOES PRESENT --

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   I'VE SUGGESTED THAT IF YOU DISAGREE WITH ME, YOU HAVE A RIGHT

2   TO APPEAL.  BUT HOW?  YOU'RE NOT GOING TO FILE AN APPEAL ON

3   BEHALF OF THE UNITED STATES TO THE 9TH CIRCUIT.  IT HAS TO BE

4   NECESSARILY THE PROSECUTORS.  AND TO FILE THE APPEAL, THEY

5   HAVE TO KNOW WHAT'S BEING APPEALED.

6           I DON'T LIKE THIS APA PROCEDURE.  I GUESS OPTION 2,

7   DOOR NO. 2, IS THE ONE THAT WE HAVE TO GO WITH, WHICH IS

8   THAT MR. MAC DOUGALL -- AND I'LL HEAR FROM YOU AGAIN,

9   MR. MAC DOUGALL -- WOULD HAVE TO MAKE THE REQUEST IN THE FIRST

10  INSTANCE TO THE UNITED STATES.

11          I DON'T LIKE IT.  I JUST DON'T LIKE THIS PROCEDURE.

12  IT REALLY CUTS AGAINST THE GRAIN OF MY INCULCATION AS THE GUY

13  THAT'S BEEN DOING CRIMINAL STUFF FOR 30 YEARS.  AND I LABORED

14  UNDER THE DISADVANTAGE THAT PROSECUTORS LABOR UNDER IN

15  CRIMINAL CASES.  YOU DON'T KNOW WHAT THE DEFENSE IS.  YOU HAVE

16  NO RIGHT TO KNOW IN ALMOST EVERY INSTANCE.

17          I DON'T KNOW ABOUT 30 EXCEPTIONS TO THAT.  I KNOW

18  ABOUT A COUPLE MENTAL DEFENSES AND NOTICE OF ALIBI IN SOME

19  CASES.  EVEN IN DURESS CASES.  I DON'T -- THEY HAVE TO MEET A

20  STANDARD, BUT THEY DON'T HAVE TO DISCLOSE THAT IN ADVANCE.

21          MR. HALPERN:  THOSE ARE FOR DEFENSES.  I THINK IT

22  CAME DOWN TO A DOZEN.  BUT I THINK THERE ARE AT LEAST A DOZEN

23  I COULD COME UP WITH WHERE YOU HAVE TO GIVE NOTICE, LIKE

24  EXPERT TESTIMONY.  THERE'S A WHOLE RANGE.

25          THE COURT:  IT STILL REMAINS THE EXCEPTION, THOUGH.

PDF created with pdfFactory trial version www.pdffactory.com

56

1    IT DOES.  IN MOST INSTANCES, THE CONVENTION IS THE DEFENSE

2    DOESN'T HAVE TO DISCLOSE ANYTHING.  AS I SAID, YOU'RE IN THAT

3    UNCOMFORTABLE POSITION AS A PROSECUTOR HEARING A NAME CALLED

4    FOR THE FIRST TIME WHEN THE DEFENSE BEGINS ITS CASE.  YOU SAY,

5    "WHO'S THAT?"  YOU'RE DISPATCHING YOUR CASE AGENT TO RUN OUT

6    AND FIND A CRIMINAL RECORD ON A PERSON OR SEE WHAT THEY CAN

7    FIND OUT WHILE YOU BUSILY SCRIBBLE NOTES AND TRY TO WING IT

8    WITH THE PERSON.

9         THAT'S THE DISCONCERTING ASPECT.  THAT'S THE WAY IT

10   WORKS IN MOST CASES.  I'M BEING TOLD IN THIS CASE THEY HAVE NO

11   SUCH ADVANTAGE.

12        MR. MCPHERSON:  I THINK THE COURT RECOGNIZES YOU ARE

13   NOT THE MASTER OF THE FACTS IN THE CASE, NOR SHOULD YOU BE AT

14   THIS POINT BECAUSE YOU HAVEN'T HAD THE BENEFIT OF ADVERSARIAL

15   BRIEFING ON THAT POINT.  WHAT THE DEFENSE IS ASKING IS FOR YOU

16   TO MAKE THOSE SORT OF DISCOVERY DECISIONS, AND THAT'S NOT

17   FAIR.  THEY'RE ASKING YOU TO MAKE A DISCOVERY DECISION WITHOUT

18   A DISCOVERY DEMAND IN WHICH THE GOVERNMENT PRESENTS ITS OWN

19   ADVERSARIAL POSITION.

20        THE COURT:  I'M NOT SO TROUBLED ABOUT MAKING THE

21   RELEVANCY DETERMINATIONS.  THAT PART DOESN'T SCARE ME.  I

22   THINK THE BIGGER CONCERN IS -- AND YOU HIT ON IT -- WHAT

23   STANDARD SHOULD I APPLY HERE?  HOW MUCH DEFERENCE SHOULD I

24   GIVE?  I THINK IT'S ENTIRELY APPROPRIATE THAT THE STANDARD FOR

25   REVIEWING DECISIONS NOT TO RELEASE INFORMATION IN THIS CONTEXT

PDF created with pdfFactory trial version www.pdffactory.com

1    IS ARBITRARY AND CAPRICIOUS.  I AGREE WITH THAT.  SOME OF THIS

2    STUFF IS HIGHLY CLASSIFIED STUFF.

3         WHEN THE DAY BEGINS, I'M AN AMERICAN LIKE EVERYONE

4    ELSE; LIKE MR. MAC DOUGALL AND MR. HALPERN AND YOU.  I DON'T

5    WANT TO DO ANYTHING THAT WOULD JEOPARDIZE OUR NATIONAL

6    SECURITY.  AND I REITERATE, I KNOW WHAT I DON'T KNOW.  WHAT I

7    DON'T KNOW ARE ALL OF THE REASONS THAT INFORM YOUR DECISIONS,

8    WHY THIS STUFF HAS TO REMAIN SECRET.  I HAVE AN IDEA OF IT,

9    BUT I'M SURE YOU COULD TELL ME IN GREAT DETAIL.

10        SO WHAT I ENVISIONED WAS A SITUATION WHERE

11   MR. MAC DOUGALL MADE A CASE ON RELEVANCY, AND THEN HE SAID,

12   "THAT'S ALL WELL AND GOOD, BUT LET ME TELL YOU WHAT THE OTHER

13   SIDE OF THE COIN IS HERE.  HERE'S WHY WE CAN'T GIVE THIS

14   INFORMATION EVEN THOUGH IT MAY HAVE SOME RELEVANCE HERE."  I

15   GUESS IT'S NOT SUPPOSED TO WORK THAT WAY.

16        MR. MCPHERSON:  WE WOULD DISPUTE THE RELEVANCE.

17        THE COURT:  YES.

18        AND SO WHAT TROUBLES ME ABOUT THIS AT THE END OF THE

19   DAY, MR. HALPERN'S GOT TO GET THE EXPLANATION FROM YOU ABOUT

20   WHY THIS IS SO CRITICAL AND SENSITIVE THAT NOTWITHSTANDING

21   SOME MARGINAL RELEVANCE, IT STILL SHOULD BE TURNED OVER.

22        I MAY HAVE INFLATED A FEW THINGS.  IF IT'S RELEVANT,

23   THEN WE MAY HAVE TO GO TO A SITUATION WHERE IT HAS TO BE

24   TURNED OVER OR THEY HAVE TO CHANGE COURSE.  BUT THAT, AGAIN,

25   IMPLICATES THE UNITED STATES ATTORNEY AND THEIR ADVOCACY

PDF created with pdfFactory trial version www.pdffactory.com

1   RATHER THAN YOURS.  YOU'RE NOT TRYING THE CASE.

2            MR. MCPHERSON:  THAT'S WHY WE JOINED THE U.S.

3   ATTORNEY'S OFFICE IN URGING THE COURT TO SET AS SHORT AS

4   POSSIBLE A BRIEFING SCHEDULE AND CIPA SCHEDULE.  BECAUSE IN MY

5   OWN EXPERIENCE IN MANY OF THESE CASES, THAT RESOLVES ALL THESE

6   QUESTIONS, AND THE TOUHY JUST GOES IN LOCK-STEP WITH THE

7   DISCOVERY DECISIONS.

8            THE COURT:  I DON'T UNDERSTAND YOUR LAST STATEMENT

9   BECAUSE HOW DO THEY MAKE THE REQUEST WHEN -- HOW DO THEY COME

10  TO ME AND SAY "HERE'S WHAT WE WANT" WHEN THEY HAVEN'T HAD THE

11  CHANCE TO CONDUCT THESE INTERVIEWS WHICH MAY LEAD TO FURTHER

12  INFORMATION, FOR EXAMPLE.

13           MR. MCPHERSON:  THEY KNOW ENOUGH OF THE PROGRAMS

14  THEY WANT TO TALK ABOUT.  SO THEY KNOW ENOUGH TO SUBMIT THAT

15  DISCOVERY REQUEST TO THE GOVERNMENT.

16           THE COURT:  DON'T YOU WANT TO KNOW MORE, THOUGH?

17  THE BRIEFING HERE IS VERY SPECIFIC ABOUT WHAT PARTS OF THE

18  PROGRAMS THEY'RE INTERESTED IN.

19           NOW, IF I CAN PROGNOSTICATE A LITTLE BIT, I DON'T

20  THINK MR. MAC DOUGALL, IF HE'S FORCED TO GO THROUGH A RULE 16

21  TYPE PROCEDURE, IS GOING TO BE THAT SPECIFIC.  HE'S JUST GOING

22  TO BE FAIRLY GENERIC.  HE'LL COME TO YOU, AND YOU'LL HAVE SOME

23  CONTEXT AND BACKGROUND BECAUSE HE'S ALREADY SPOKEN TO YOU.

24           MR. MCPHERSON:  THE SHORT ANSWER IS YOU GET WHAT YOU

25  ASK FOR.  WHATEVER DISCOVERY DEMAND HE PROPOUNDS UPON THE

PDF created with pdfFactory trial version www.pdffactory.com

59

1    GOVERNMENT, THAT'S WHAT HE'LL GET IF IT'S DETERMINED TO BE

2    MATERIAL TO THE DEFENSE.

3            THE COURT:  THANK YOU, MR. MCPHERSON.

4            MR. MAC DOUGALL, I'VE BEEN TURNED AROUND IN MY

5    THINKING A LITTLE BIT ON THIS.  I HATE TO SEEM SO WISHY-WASHY,

6    BUT I'M BUFFETED HERE.  THERE IS A PROCEDURE -- AND I DON'T

7    WANT TO IGNORE THAT PROCEDURE ENTIRELY.  IT DOESN'T MAKE ANY

8    SENSE TO ME.  I DON'T THINK YOU'LL EMBRACE THAT PROCEDURE IF I

9    GIVE YOU THE TWO CHOICES, MR. MCPHERSON.

10           I LIKE THE IDEA OF MAYBE THE GOVERNMENT DESIGNATING

11   SOMEONE AND THE TWAIN WOULDN'T MEET BETWEEN GOVERNMENT

12   PROSECUTORS.  AT LEAST THEN WE'VE CURED ALL THESE PROBLEMS

13   WITH REPRESENTATIONS BY THE UNITED STATES.

14           BUT THE DILEMMA THAT WE HAVE IS THAT IF I MEET WITH

15   YOU, MR. MCPHERSON, AND HE PERSISTS IN REFUSING AND THEN I SAY

16   "WELL, YOU'VE GOT TO DO THIS," WHO TAKES THE APPEAL FOR THE

17   UNITED STATES FROM THAT DECISION?  HE'S FORBIDDEN FROM TELLING

18   THEM "LOOK, THE OFFER OF PROOF IS."  HE'S NOT IN A POSITION TO

19   REPRESENT THE UNITED STATES IN THE COURT OF APPEALS HERE.

20           MR. MAC DOUGALL:  THE ANSWER TO THAT, YOUR HONOR, IS

21   THE JUSTICE DEPARTMENT HAS MANY THOUSANDS OF VERY FINE

22   LAWYERS.  I USED TO BE ONE OF THEM.  THE APPELLATE DIVISION

23   HAS SEVERAL HUNDRED OF THEM, WHO ARE ALL VERY ACCOMPLISHED

24   PRACTITIONERS.  THERE'S LOTS OF OPPORTUNITY FOR THE GOVERNMENT

25   TO TAKE THIS UP, YOUR HONOR.

PDF created with pdfFactory trial version www.pdffactory.com

1          IT'S A VERY IMPORTANT ISSUE FOR MR. FOGGO AND FOR

2    ANYONE WHO FINDS THEMSELVES IN THAT SITUATION BECAUSE IT GOES

3    TO THE HEART OF HIS ABILITY TO DEFEND HIMSELF.  AND THE COURT

4    POINTED OUT AND USES AN EXAMPLE, A VERY OBVIOUS ONE; THE

5    WITNESS ABOUT WHOM THERE'S IMPEACHMENT EVIDENCE AVAILABLE.

6    THERE ARE MANY OTHER OPPORTUNITIES.

7          AND ONE THAT I WOULD POSIT TO THE COURT WITHOUT

8    GOING INTO TOO MUCH DETAIL IS WHAT IF THEY GOT IT ALL WRONG?

9    WHAT IF THEY MADE A HUGE MISTAKE?  WHAT IF THEY HAVEN'T BEEN

10   READ INTO THESE COMPARTMENTS?  WHAT IF WHEN THEY ARE READ YOU

11   BEGIN TO UNDERSTAND THAT THE CASE IS UPSIDE-DOWN, THAT IT'S

12   WRONG, THAT THERE ARE THINGS THAT WERE IGNORED.  AND WE HAD

13   CONVERSATIONS BEFORE THE INDICTMENT "THERE ARE WITNESSES YOU

14   HAVEN'T TALKED TO.  YOU NEED TO TALK TO THEM."  IT NEVER

15   HAPPENED.

16          THAT'S THE HEART OF THE DEFENSE OF A CRIMINAL CASE,

17   YOUR HONOR.  TO TAKE THAT AWAY FROM US AND TO DO IT WITHOUT

18   HAVING HEARD OUR EX PARTE PRESENTATION, WHICH I WOULD IMPLORE

19   THE COURT TO DO BEFORE MAKING ANY DECISION, IS I THINK TO TAKE

20   AWAY FROM MR. FOGGO A VERY FUNDAMENTAL RIGHT AND PUT THE

21   ABILITY TO TRY THIS CASE EFFECTIVELY WITHOUT IT COMING BACK

22   AGAIN AT GREAT RISK.

23          THE COURT:  WHAT DO YOU MAKE OF THE FACT THAT THE

24   VARIOUS COURTS THAT HAVE LOOKED AT THE CONSTITUTIONALITY OF

25   THIS PROCEDURE AND IN THE PARTICULAR CONTEXT OF THE ARGUMENTS

PDF created with pdfFactory trial version www.pdffactory.com

1    RAISED HERE, THE 5TH AND 6TH AMENDMENT RIGHTS, AND SAID, "NO,

2    IT'S CONSTITUTIONAL"?  WHAT DO I DO WITH THOSE?

3         I HAVEN'T FOUND A COURT THROWING IT OUT BECAUSE YOU

4    HAVE TO SHOW YOUR HAND A LITTLE BIT MORE TO GET THE

5    INFORMATION YOU NEED TO DEFEND IT.  THAT SPECIFIC ISSUE HAS

6    BEEN RAISED.  IT'S BEEN REJECTED BY THE COURTS THAT HAVE

7    LOOKED AT IT.

8         MR. MAC DOUGALL:  AGAIN, YOUR HONOR, ALL WE'RE

9    ASKING FOR IS THE LICENSE TO ASK QUESTIONS.  THE INFORMATION

10   GOES NO FURTHER THAN LAWYERS WHO HAVE BEEN CLEARED AT THE

11   HIGHEST LEVEL.

12        NOW, THAT MAY WELL LEAD US TO MAKE A CIPA MOTION AND

13   FOLLOW THAT PROCEDURE.  BUT THE INFORMATION GOES NO FURTHER.

14   I GO BACK TO THE QUESTION I ASKED EARLIER.  WHAT ARE THEY

15   AFRAID OF?  WHAT ARE THEY AFRAID THAT WE'RE GOING TO HEAR FROM

16   A WITNESS CLEARED AT THE SAME LEVEL WE ARE THAT'S GOING TO

17   CAUSE MISCHIEF?  THERE'S BEEN LEAKS IN THIS CASE.  IT HASN'T

18   BEEN FROM THE DEFENSE.

19        MR. HALPERN MAKES MUCH NORTH OF THE WHOLE EX PARTE

20   PROCESS.  BUT AS THE COURT IS WELL AWARE, THE GOVERNMENT WAS

21   VERY HAPPY TO USE THE EX PARTE PROCESS TO CHANGE THE COURT'S

22   MIND AND REMOVE MR. WILKES'S LAWYER; AS THE COURT REFLECTED IN

23   MAKING THAT RULING, AN EXTRAORDINARY AND VERY DIFFICULT

24   DECISION.

25        SO THE IDEA THAT THE GOVERNMENT IS PERMITTED TO COME

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

62

1    IN AND MAKE EX PARTE PRESENTATIONS AND TURN AROUND AND

2    ESSENTIALLY DEPRIVE, PERHAPS CORRECTLY, A LITIGANT AND HIS

3    LAWYER IN A CRIMINAL CASE AND THE DEFENSE IS NOT ALLOWED TO

4    COME IN AND SAY, "YOUR HONOR, THIS IS POWERFUL STUFF.  THIS IS

5    VERY POWERFUL" -- AND THE COURT MAY DISAGREE -- BUT WE'VE DONE

6    OUR HOMEWORK.  WE'VE GOT SOME DOCUMENTS.  WE'VE GOT SOME

7    FACTS.  AND WE THINK THAT IT GOES TO THE HEART OF THE

8    INDICTMENT.  IT GOES TO THE HEART OF THE EVIDENCE.

9        THE COURT:  YOU DON'T DISAGREE OR DISPUTE THAT

10   ULTIMATELY YOU'RE GOING TO HAVE TO MAKE THAT SAME PRESENTATION

11   TO ME, TO THE EXTENT IT IMPLICATES CLASSIFIED INFORMATION, IN

12   THE PRESENCE OF THE UNITES STATES ATTORNEYS; RIGHT?

13       MR. MAC DOUGALL:  WE ARE, YOUR HONOR.  AND I RESPECT

14   THAT.  AND WE EXPECT THAT ONCE WE HAVE REACHED THAT POINT,

15   WE'D BE PREPARED TO DO IT.

16       BUT HERE'S MY CONCERN, AND IT'S A VERY SERIOUS ONE:

17   THE GOVERNMENT, AS EVERYONE KNOWS, HAS ENORMOUS TOOLS

18   AVAILABLE TO IT.  WHEN I WAS IN THE JUSTICE DEPARTMENT, I SAW

19   A DEFENSE WITNESS INDICTED TO KEEP HIM OFF THE STAND.  THAT

20   HAPPENS.  AND I'M NOT SUGGESTING ANYONE WOULD DO THIS.  WE'VE

21   GOT A SUPERSEDING INDICTMENT.  WE'VE GOT THE GRAND JURY

22   CONTINUED PAST THE INDICTMENT.

23       THE ABILITY TO SEND FEDERAL AGENTS TO GO MEET WITH

24   SOMEONE AND SAY "WE'D LIKE TO TALK TO YOU AGAIN ABOUT WHAT

25   YOU'RE DOING," WE ALL KNOW HOW THAT WORKS.  AND THAT DAY MAY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

63

1    COME.  BUT WE'D LIKE TO HAVE BEFORE THE COURT AND ON THE

2    RECORD WHAT WE'RE TRYING TO ACCOMPLISH AND HOW IMPORTANT IT IS

3    TO THE DEFENSE BECAUSE THEY MIGHT HAVE MISSED IT.

4          THE COURT:  WELL, I'M NOT AGAINST DOING THAT.

5    I JUST DON'T KNOW WHERE IT'S GOING TO GET US, THOUGH,

6    MR. MAC DOUGALL.  I CAN BE IN FULL AGREEMENT WITH YOU, BUT

7    THEN I COME BACK TO THESE ESTABLISHED PROCEDURES.  AND I THINK

8    THEY'RE PROBABLY RIGHT.  I DON'T LIKE THE APA APPROACH.  I

9    DON'T LIKE THAT.

10         WHAT'S YOUR EXPERIENCE WITH THAT?  HOW LONG DOES

11   THAT TAKE?  HAVE YOU FILED A CIVIL ACTION IN AN ADMINISTRATIVE

12   PROCEDURES ACT?

13         MR. MAC DOUGALL:  I HAVE.  IT'S LIKE MOST CIVIL

14   DOCKETS.  IT TAKES A GREAT DEAL OF TIME.  AND THIS HASN'T BEEN

15   BRIEFED, YOUR HONOR.  I WAS TRYING TO THINK OF WHETHER TO

16   QUOTE MUHAMMAD ALI OR NOT, BUT I'LL SPARE THE COURT THAT.

17         THE CASE DUBBS V. CENTRAL INTELLIGENCE AGENCY, 866 F

18   2D, 1114, 9TH CIRCUIT, 1989, I'LL JUST READ ONE SENTENCE.

19         "THE CIA'S INDIVIDUAL SCI SECURITY CLEARANCE

20   DETERMINATIONS CANNOT BE REVIEWED UNDER APA SECTION 706(2)(A)

21   BECAUSE SUCH DETERMINATIONS ARE, FOR PURPOSES OF

22   SECTION 701(A)(2), COMMITTED TO AGENCY DISCRETION BY LAW."

23         I THINK THE ROAD WE'RE BEING LED DOWN HERE IS "FILE

24   YOUR APA SUIT AND A MOTION TO DISMISS IN RELIANCE ON DUBBS.

25   YOU'RE OUT OF LUCK, MR. FOGGO."

PDF created with pdfFactory trial version www.pdffactory.com

64

1          THE COURT:  LET ME COME BACK TO DOOR 2, WHICH IS YOU

2     HAVE TO MAKE THE REQUEST IN THE FIRST INSTANCE WITH THE

3     PROSECUTORS.

4          WHEN YOU ACKNOWLEDGE THAT YOU'RE GOING TO HAVE TO DO

5     THAT ULTIMATELY, WHAT DO YOU LOSE BY DOING IT SOONER RATHER

6     THAN LATER?

7          MR. MAC DOUGALL:  WE LOSE THE ABILITY TO CONTINUE

8     THAT WORK, CONTINUE THE INVESTIGATION UNHAMPERED AND

9     UNINTERRUPTED.  WHEN I WAS PROSECUTING CASES, IF YOU FIND OUT

10    THERE'S A PROBLEM WITH A DEFENSE WITNESS, WHAT'S THE FIRST

11    THING YOU DO?  YOU CALL THE CASE AGENT, "GO TALK TO HIM.  SEE

12    WHAT'S GOING ON.  DON'T INTIMIDATE HIM.  FIND OUT WHAT'S GOING

13    ON."  THAT DAY IS GOING TO COME.  AT THIS STAGE WHERE WE'RE

14    TALKING ABOUT SIMPLY BEING PERMITTED TO ASK CLEARED

15    INDIVIDUALS QUESTIONS, IT'S UNNECESSARY.  IT DOESN'T IMPLICATE

16    ANY CONSTITUTIONAL ISSUE AT ALL.

17         THE COURT:  HERE'S WHAT DISTURBS ME, THOUGH:  THE

18    U.S. ATTORNEYS ARE THE LAWYERS FOR THE GOVERNMENT IN THE CASE

19    IN FRONT OF ME.  I'M VERY IMPRESSED WITH MR. MCPHERSON.  HE'S

20    AN ABLE ADVOCATE.  AND I THINK, AS I SAID, FROM LOOKING AT THE

21    CORRESPONDENCE, THAT HE'S A VERY FAIR-MINDED GUY AND THAT HE

22    VERY DILIGENTLY AND PROBABLY CORRECTLY, FROM THE CIA'S POINT

23    OF VIEW, DISCHARGES RESPONSIBILITIES.

24         BUT AT THE END OF THE DAY, HE'S NOT IN A POSITION TO

25    ARGUE TO ME ULTIMATELY WHETHER THIS IS RELEVANT IN THE CONTEXT

PDF created with pdfFactory trial version www.pdffactory.com

1    OF THIS TRIAL.  THAT'S THE JOB OF THE U.S. ATTORNEYS.  AND I

2    DON'T WANT TO PUT HIM IN THAT POSITION.  HE COULD PROBABLY DO

3    IT, BUT IT'S NOT IN HIS JOB DESCRIPTION.

4         THAT'S THE PROBLEM THAT I'M HAVING HERE, BECAUSE I'M

5    PITTING YOU AGAINST HIM TO ARGUE AGAINST RELEVANCY AND THE

6    OTHER FACTORS.  ALTHOUGH I THINK IT'S THE CASE THAT IF YOU

7    CONVINCE ME THAT IT'S RELEVANT NO MATTER HOW CLASSIFIED A

8    SECRET IT IS, THAT IT'S TOO BAD, THEY EITHER HAVE TO NOT USE

9    IT, FOREGO USING IT, AND MAKE THAT REPRESENTATION TO YOU THAT

10   THEY'RE NOT GOING TO USE IT OR COME UP WITH SOME WAY TO

11   SANITIZE IT OR APPEAL MY DECISION.  I THINK THAT'S CORRECT

12   UNDER CIPA, RIGHT?

13        MR. MAC DOUGALL:  I THINK THAT'S RIGHT.

14        IN RESPONSE TO YOUR QUESTION ABOUT WHAT ARE THE

15   ALTERNATIVES, I THINK THERE'S AT LEAST TWO.  ONE IS ONCE WE'VE

16   MADE OUR PRESENTATION TO THE COURT -- AND YOU MAY ASK

17   MR. MCPHERSON QUESTIONS -- THE COURT CAN CALL THE GOVERNMENT

18   IN AND SAY, "I HAVE SOME QUESTIONS FOR YOU."  AND WE WOULD

19   IMPRESS IT TO THE COURT'S DISCRETION TO ASK THOSE QUESTIONS.

20   EX PARTE NOW, "HERE ARE MY CONCERNS."  AND WE WOULD ENTRUST

21   THE COURT WITH THAT INFORMATION AND TO NOT DISCLOSE OR

22   DISCLOSE AS MUCH AS THE COURT FELT WAS NECESSARY.  I THINK

23   THAT'S ONE OF THE OPTIONS.  --

24        THE SECOND IS THIS CASE, WHEN IT WAS INDICTED, WAS

25   HERALDED BY THE GOVERNMENT AS THE INDICTMENT OF THE

PDF created with pdfFactory trial version www.pdffactory.com

1    HIGHEST-RANKING INTELLIGENCE OFFICIAL IN AMERICAN HISTORY.

2    IT'S AN IMPORTANT CASE.  IT'S A VERY IMPORTANT CASE FOR

3    MR. FOGGO AND HIS FAMILY.

4         WITH ALL THE MODESTY OF THE JUSTICE DEPARTMENT

5    THAT'S BROUGHT TO BEAR, IS THERE NO OTHER LAWYER IN THE

6    DEPARTMENT -- AND WITHIN THE CRIMINAL DIVISION OF MAIN JUSTICE

7    THERE ARE MANY WHO COULD BE DESIGNATED.  THIS CASE, AS THE

8    COURT SUGGESTED, IS PROBABLY NOT GOING TO GO TO TRIAL IN

9    OCTOBER -- WHO COULD BE DESIGNATED TO PLAY THE INTERMEDIARY

10   ROLE?  EVEN ONE IS FINE.  WE'RE NOT TRYING TO TIE UP THE

11   GOVERNMENT.  WHAT WE'RE TRYING IS DO IS DO OUR JOB BECAUSE WE

12   THINK WE FOUND A SET OF FACTS THAT ARE VERY IMPORTANT.

13        THE COURT:  WELL, I LIKE THE SECOND APPROACH, TOO.

14   IN MANY, MANY CONTEXTS, WALLS ARE CREATED, ETHICAL WALLS,

15   WITHIN THE SAME OFFICE.  AND IT SEEMS TO ME THAT THIS OBVIATES

16   THE PROBLEM.  THE GOVERNMENT IS STILL REPRESENTED BY THE U.S.

17   ATTORNEY'S OFFICE OF THE DEPARTMENT OF JUSTICE.

18        I DON'T THINK, MR. HALPERN, WITH RESPECT TO YOU AND

19   HOW COMPLICATED THIS CASE IS -- AND I UNDERSTAND THE REAMS OF

20   PAPER INVOLVED.  I REMEMBER YOU TELLING ME THAT THERE'S

21   17,000 PAGES THAT GERAGOS WAS GOING TO HAVE TO LOOK AT AND

22   THAT'S WHY IT WAS IMPRACTICAL TO GO FORWARD WITH THE WAIVER OF

23   ENTITLEMENT UNDER CIPA.

24        ALL THAT SAID, I DON'T UNDERSTAND WHY MAYBE NOT ONE

25   OF THE FOUR -- IT'S PRESUMPTUOUS OF ME, I SUPPOSE, TO SUGGEST

PDF created with pdfFactory trial version www.pdffactory.com

1   SOMEBODY TAKE THEMSELVES OUT OF THE TRIAL IN THIS CASE.  BUT

2   WHY CAN'T WE GET SOMEONE FROM YOUR APPELLATE DIVISION OR THE

3   DEPARTMENT OF JUSTICE?

4          THEY BROUGHT THIS GUY OUT ON -- WHAT WAS IT,

5   TOMMY K.?  NO.  THE OTHER CASE, ARELLANO, WHERE I'VE GOT TWO

6   WRITS UP AGAINST ME FOR WANTING TO RELEASE INFORMATION.  BUT

7   THEY BROUGHT SOME GUY FROM THE JUSTICE DEPARTMENT, AND HE GOT

8   UP TO SPEED ON THAT REAL QUICK.  AND HE'S PURSUING THE APPEAL

9   ON BEHALF OF THE U.S. ATTORNEY'S OFFICE.

10          WHY CAN'T YOU GET SOMEONE FROM THE DEPARTMENT OF

11  JUSTICE TO HANDLE THE DISCOVERY ASPECT OF THIS?  AND THEN THAT

12  SOLVES THE REAL PROBLEM THAT THIS CREATES FOR ME.  HE DOESN'T

13  GET TO TELL YOU ANYTHING ABOUT THEIR THEORIES OF RELEVANCY.

14  HE COMES IN AND ADVOCATES IN FRONT OF ME.  FROM MY

15  PERSPECTIVE, THAT SOLVES BOTH PROBLEMS.  IT DOESN'T PUT

16  MR. MCPHERSON IN THE PINCH OF HAVING TO BE GOVERNMENT

17  PROSECUTOR IN THIS CASE.  IT PROTECTS FOGGO'S RIGHTS AGAINST

18  DISCLOSURE OF THINGS.  THAT PERSON MAY KNOW "DUH, WE'RE GOING

19  TO BE IN FOR HELL IF THIS PERSON TESTIFIES, BUT I CAN'T TELL

20  FORGE AND HALPERN AND CHU ABOUT IT."

21          MR. FORGE:  I THINK THE ARELLANO CASE IS A PERFECT

22  EXAMPLE BECAUSE THAT'S A CASE IN WHICH -- YOU'RE RIGHT --

23  SOMEBODY FROM THE DEPARTMENT WAS BOUGHT IN TO WORK ON THE

24  APPEAL AND TO ARGUE THE APPEAL.  BUT THAT PERSON WORKS WITH

25  THE PROSECUTORS WITH KNOWLEDGE.

PDF created with pdfFactory trial version www.pdffactory.com

1          IN FACT, MS. DUFFY WENT TO THE ORAL ARGUMENT WITH

2     MR. SCHENKER SO SOMEONE WITH KNOWLEDGE OF THE FACTS OF THE

3     CASE COULD BE THERE TO CONSULT WITH HIM AND TO, IF NECESSARY,

4     ANSWER ANY QUESTIONS THE COURT HAD.

5          I THINK WHAT MR. HALPERN'S POINT WAS -- AND I WOULD

6     EMBRACE IT -- IS THAT I'M NOT SAYING IT'S AN UNREASONABLE

7     REQUEST THEORETICALLY.  I JUST THINK PRACTICALLY SPEAKING,

8     WE'RE TALKING ABOUT MONTHS FOR SOMEONE TO GET UP TO SPEED TO

9     THE POINT WHERE THEY CAN REASONABLY PARTICIPATE FULLY IN THE

10    LITIGATION OF THESE ISSUES.

11         THE COURT:  IT WOULD ANTICIPATE, MR. FORGE, AT THIS

12    POINT THAT ALL FOUR PROSECUTORS ARE GOING TO TAKE AN ACTIVE

13    ROLE IN THE PRESENTATION OF THE CASE AT TRIAL?

14         MR. FORGE:  IT IS.  THE TIME OF THE TRIAL MAY ALTER

15    THAT.  OBVIOUSLY, WE HAVE OTHER CASES THAT WE'RE ALL WORKING

16    ON, AND THAT MAY CHANGE AT SOME POINT IN TIME.  BUT RIGHT NOW,

17    ALL FOUR OF US WILL TAKE AN ACTIVE ROLE IN THE CASE.

18         THE COURT:  CALLING WITNESSES OR MAKING OPENING

19    STATEMENTS, CLOSING ARGUMENTS, NOT JUST BEING AT THE TABLE AS

20    FAR AS THE PROSECUTION TEAM ITSELF?  YOU ANTICIPATE THAT

21    YOU'RE GOING TO DIVIDE THIS THING UP IN FOUR PARTS?

22         MR. FORGE:  THAT'S RIGHT, YOUR HONOR, INCLUDING

23    OPENING STATEMENTS, CLOSING ARGUMENTS, REBUTTAL.  THAT IS WHAT

24    IS ANTICIPATED.  OBVIOUSLY, SOME OF US WILL TAKE MORE OF THE

25    LABORING OAR IN TERMS OF LITIGATING MOTIONS THAN OTHERS.

PDF created with pdfFactory trial version www.pdffactory.com

69

1    THAT'S PART OF THE DIVISION.  BUT EVERYBODY, IT IS

2    ANTICIPATED, WILL TAKE A VERY ACTIVE ROLE AND HAVING FULL

3    SHARE OF THE WITNESSES IN THIS CASE.  I THINK --

4            THE COURT:  I'M HAVING TROUBLE.  I UNDERSTAND THE

5    ARGUMENT, AND I UNDERSTAND THE COMPLEXITY AND THE NUMBER OF

6    DOCUMENTS.  BUT LOOK, I HAVEN'T SEEN THOSE DOCUMENTS EITHER.

7    I'M NOT CONVERSANT WITH THE 17,000 PAGES.  WHAT I KNOW IS

8    WHAT'S BEEN FILED IN FRONT OF ME, AND I'VE READ THE

9    INDICTMENT.  AND YET I'M GOING TO BE CHARGED WITH MAKING THESE

10   RELEVANCY DETERMINATIONS.

11           WHY CAN'T A SMART LAWYER IN U.S. ATTORNEY'S OFFICE

12   OF THE DEPARTMENT OF JUSTICE SAY, "GIVE ME THE SUMMARY."

13           DID YOU DO A CROSS-MEMO IN THIS CASE BEFORE IT GOT

14   INDICTED?

15           MR. FORGE:  YES.

16           THE COURT:  "READ OUR CROSS-MEMO, AND WE'LL GIVE YOU

17   SOME UPDATES ON WHERE WE ARE.  HERE'S THE INDICTMENT.  NOW BE

18   PREPARED TO GO IN AND LISTEN TO MR. MAC DOUGALL'S OFFER OF

19   PROOF ABOUT WHY THIS IS RELEVANT."

20           MR. FORGE:  IT'S PRECISELY BECAUSE THE COURT, AS IS

21   ALWAYS THE CASE, HASN'T REVIEWED ALL OF THE INFORMATION.  IT'S

22   PRECISELY BECAUSE OF THAT THAT IT'S IMPERATIVE THAT WHOEVER'S

23   ADVOCATING FOR THE GOVERNMENT IS FAMILIAR SO WE CAN POINT OUT

24   TO YOUR HONOR WHERE WE THINK THE DEFENSE ARGUMENT FAILS AND

25   WHERE WE THINK THERE'S CLEAR EVIDENCE AND CLEAR INDICATIONS

PDF created with pdfFactory trial version www.pdffactory.com

70

1    FROM THE RECORD IN THIS CASE AND THE CHARGES THAT THIS

2    PARTICULAR AREA IS NOT RELEVANT.

3         AGAIN, WE'RE NOT -- NONE OF US ARE DISMISSING OUT OF

4    HAND THIS NOTION OF A TAINT TEAM OR HOWEVER YOU WANT TO

5    CHARACTERIZE IT.  WE'RE NOT -- I'M NOT THROWING UP A WALL TO

6    IT BY SAYING IT'S GOING TO TAKE TIME.  IT WOULD TAKE TIME.

7    THAT DOESN'T MEAN WE DISMISS IT OUT OF HAND.  THAT DOESN'T

8    MEAN WE IGNORE THAT POSSIBILITY.

9         I SIMPLY RAISE THAT ISSUE BECAUSE I DON'T WANT THE

10   COURT TO INTERPRET WHAT WE'RE SAYING AS MEANING THIS IS AN

11   EASY OPTION TO GET THIS RESOLVED QUICKLY.  I THINK IT'S AN

12   OPTION.  IT IS A PRACTICAL OPTION.  IT ADDRESSES, FROM WHAT I

13   DISCERN HERE, EVERYBODY'S CONCERNS.  IT'S JUST GOING TO TAKE

14   TIME.

15        WE COME BACK TO THE PRACTICAL ASPECT OF THIS THING.

16   YOUR HONOR, AS YOU ALWAYS DO, YOU GET TO THE HEART OF THE

17   MATTER WITH THE QUESTIONS.  "MR. MAC DOUGALL, WHAT IS THE

18   PROBLEM?  IF YOU'RE ALREADY AWARE OF 90 PERCENT OF THE

19   INFORMATION" -- HIS REPRESENTATIONS -- "IF YOU'VE ALREADY

20   DETERMINED IT'S CRITICAL TO THE DEFENSE" -- HIS

21   REPRESENTATION -- "AND YOU ALREADY CONCEDED THAT YOU'RE

22   PROBABLY GOING TO HAVE TO DISCLOSE THIS TO THE GOVERNMENT DOWN

23   THE LINE IN A SECTION 5 DISCLOSURE," WHAT IS THE DOWNSIDE OF

24   DISCLOSING IT NOW SO WE CAN LITIGATE IT?

25        THE COURT:  THE PROBLEM IS HE DOESN'T WANT YOU TO

PDF created with pdfFactory trial version www.pdffactory.com

1    SHORE UP THE WEAKNESSES THAT HE PERCEIVES AND THINKS YOU DON'T

2    PERCEIVE AT THIS POINT.   TIMING IS EVERYTHING.   MAYBE HE'S GOT

3    SOME STRATEGY ABOUT WHEN HE'S GOING TO MAKE THOSE SECTION 5

4    REQUESTS AND WHEN, IN THE COURSE OF THINGS, IT'S GOING TO

5    COME.   MAYBE HE'S GOING TO DO IT CLOSER IN TIME TO THE TRIAL

6    SO HE THINKS THAT YOU WON'T BE ABLE TO SHORE UP THE WEAKNESSES

7    THAT THEY'VE EXPOSED.

8         I DON'T KNOW WHAT HIS THINKING IS, BUT THAT'S A

9    POSSIBILITY.   AND THAT'S ONE ANSWER TO WHY IT HURTS HIM TO

10   DISCLOSE IT NOW WHEN ULTIMATELY HE'S GOT TO DISCLOSE IT LATER

11   TO GET THE ACTUAL INFORMATION.

12        MR. FORGE:   THE ONE THING THAT I WANT TO BRING UP

13   AND NOBODY'S RAISED YET IS THAT ULTIMATELY LOOKING FROM BOTH

14   SIDES, WE SHOULD BE ENGAGED IN A SEARCH FOR THE TRUTH.   WHAT

15   MR. MAC DOUGALL SAID, IF HE REALLY BELIEVES IT, IF HE REALLY

16   BELIEVES THAT THIS INFORMATION WILL ENLIGHTEN US AND WE'LL

17   REALIZE THIS CASE IS UPSIDE-DOWN, FRANKLY, HE HAS AN

18   OBLIGATION TO BRING THAT TO OUR ATTENTION.

19        THE COURT:   HE SAYS HE DID AND YOU GUYS WERE

20   INDIFFERENT TO IT.   HE SAYS, "I TOLD YOU BEFORE THE CASE GOT

21   INDICTED YOU NEED TO TALK TO THESE PEOPLE.   THEY WERE NEVER

22   INTERVIEWED."

23        MR. FORGE:   I'M NOT AWARE OF ANY INDIVIDUALS HE

24   IDENTIFIED.   WE GET A COMMUNICATION FROM A DEFENSE COUNSEL

25   SAYING, "HEY, I DON'T THINK YOU'VE TALKED TO EVERYBODY.   DON'T

PDF created with pdfFactory trial version www.pdffactory.com

1    INDICT NOW," THAT OBVIOUSLY IS NOT SOMETHING WE CAN ADDRESS.

2    I'M NOT AWARE OF ANYBODY THAT MR. MAC DOUGALL HAS IDENTIFIED

3    AS SOMEONE WE NEED TO TALK TO AND THAT WE FAILED TO TALK OR

4    ATTEMPT TO TALK TO THAT PERSON.

5         THE COURT:  I WANT TO ASK YOU ONE MORE QUESTION

6    ABOUT THE COMPROMISE PLAN -- THAT'S WHAT I'LL CALL IT --

7    THAT'S BEEN SUGGESTED.

8         IT SEEMS TO ME SOMEBODY READING THE CROSS-MEMO,

9    BEING BRIEFED BY YOU FOLKS BEFORE THEY EVER KNOW WHAT THE

10   REQUEST IS FROM MR. MAC DOUGALL CAN BE UP TO SPEED IN A WEEK

11   ON THIS CASE.  NOT CONVERSANT WITH EVERYTHING, BUT KNOW WHAT

12   THE CASE IS ABOUT, KNOW WHAT THE ALLEGATIONS ARE ABOUT.

13        THEN AS THINGS WORK WITH LAWYERS, THAT PERSON IS

14   CHARGED WITH THE OBLIGATION OF MEETING AND INTERFACING WITH

15   MR. MAC DOUGALL.  AND MR. MAC DOUGALL SAYS, "I WANT ALL THESE

16   THINGS."  I ASSUME THE PERSON WOULD HAVE SOME PRELIMINARY

17   IMPRESSION OF WHETHER THIS IS REALLY RELEVANT.

18        BUT TO THE EXTENT THAT THEY DON'T, THEY CAN GO BACK

19   AND DO SOME RESEARCH FROM THE CASE FILE AND ASK QUESTIONS OF

20   YOU IN THE MANNER THAT HE'S PROPOSED THAT I DO AND SAY,

21   WITHOUT GIVING UP THE GHOST HERE, EXACTLY WHAT HE'S ASKING;

22   "LET ME ASK YOU ABOUT THIS" AND INFORM THEMSELVES.  THAT'S THE

23   WAY THIS BUSINESS WORKS.  THAT'S HOW WE MAKE JUDGMENTS BASED

24   ON NEW INFORMATION.  THAT'S THE STUFF THAT LAWYERS DO.

25        WHY CAN'T THAT WORK AND WHY CAN'T THAT WORK IN

PDF created with pdfFactory trial version www.pdffactory.com

1   FAIRLY SHORT ORDER?

2          MR. FORGE:  IT'S THE LATTER PART, YOUR HONOR, WHERE

3   I THINK WE HAVE A SLIGHT DISAGREEMENT.  IN SHORT ORDER, FOR

4   ME -- DEFINING "SHORT ORDER" IN THIS CASE, WHICH HAS BEEN

5   INVESTIGATED FOR WELL OVER A YEAR, THEY'VE BEEN ON THE CASE

6   FOR SIX MONTHS, AND THEY'RE JUST NOW BRINGING THIS ISSUE TO

7   THE COURT'S ATTENTION.  SHORT ORDER WITH THAT BACK ON THE

8   MIND, THE DISCOVERY IN THIS CASE IS NOT A WEEK.  THESE PEOPLE

9   HAVE TO BE CLEARED.  THEY HAVE TO BE READ INTO THE RIGHT

10  COMPARTMENTS.

11         THE COURT:  THE PROSECUTORS?

12         MR. FORGE:  THAT'S RIGHT, WHOEVER WORKS WITH THIS

13  TAINT TEAM.

14         THE COURT:  YOU CAN'T PICK SOMEBODY WHO'S ALREADY

15  GOT THE TOP SECRET CLEARANCE?  THERE'S A LOT OF PEOPLE AT THE

16  U.S. ATTORNEY'S OFFICE THAT HAVE THIS CLEARANCE.

17         MR. FORGE:  FIRST OF ALL, EVEN IF SOMEBODY HAS TOP

18  SECRET CLEARANCE, WHAT THIS ISSUE IS ABOUT, MY UNDERSTANDING

19  IS, WE'RE TALKING ABOUT COMPARTMENT -- SCI CLEARANCE.  SO

20  EVEN IF YOU HAVE TOP SECRET CLEARANCE, WHICH I BELIEVE

21  MR. MAC DOUGALL HAS, YOU STILL HAVE TO BE CLEARED -- YOU HAVE

22  TO BE READ INTO -- AND I'M NOT SAYING THAT CAN'T BE DONE.

23  WHAT I'M SAYING, THOUGH, IT'S AN ADDITIONAL HURDLE THAT HAS TO

24  BE CLEARED.

25         ONCE WE LIMIT THE POOL OF PEOPLE WHO ARE EVEN

PDF created with pdfFactory trial version www.pdffactory.com

1    ELIGIBLE FOR THIS AND PEOPLE WHO ALREADY HAVE TOP SECRET

2    CLEARANCE, THEN WE'RE NO LONGER TALKING ABOUT AN ARMY OF

3    ASSISTANT U.S. ATTORNEYS.  WE'RE TALKING ABOUT A COUPLE

4    HANDFULS OF PEOPLE.

5            IT'S NOT SO CLEAR THAT SOMEONE IN THAT SELECT GROUP

6    IS GOING TO BE ABLE TO PUT ASIDE EVERYTHING HE OR SHE IS

7    WORKING ON AND CONCENTRATE IN THE NEXT FOUR TO EIGHT WEEKS AND

8    GET UP TO SPEED IN THIS CASE.

9            THE COURT:  WE HAVE SOME TIME.  LOOK, ONE OF THE

10   OTHER THINGS THAT'S GOING ON, AS THE RECORD SHOULD REFLECT, IS

11   THAT THIS AFTERNOON AT 1:30, I EXPECT MR. IREDALE IS GOING TO

12   SHOW UP AND MAKE A GENERAL APPEARANCE ON BEHALF OF MR. WILKES.

13   HE HAD THE FORMS WITH HIM LAST TIME.

14           THE SECURITY CLEARANCE, MR. LONDERGAN, HOW LONG DO

15   YOU ANTICIPATE FROM EXPERIENCE IT WILL TAKE MR. IREDALE TO BE

16   CLEARED, ASSUMING HE CAN BE CLEARED?

17           MR. LONDERGAN:  YOUR HONOR, IT WILL DEPEND ON WHEN

18   THEY'VE COMPLETED THE BACKGROUND INVESTIGATION AND THE FORMS

19   ARRIVE IN WASHINGTON, D.C.

20           THE COURT:  LET'S SAY YOU GET THEM NEXT WEEK.

21           MR. LONDERGAN:  NEXT WEEK AND THEY'RE COMPLETED

22   PROPERLY, WE WOULD TRY TO GET AN OKAY TO BRIEF -- ASSUMING

23   THAT THERE'S NO QUESTIONABLE INFORMATION, WE'D TRY FOR

24   30 DAYS.  THAT MIGHT BE OPTIMISTIC.

25           THE COURT:  I'VE GOT THAT PERIOD OF DEAD TIME

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    ANYWAY.  IF I EMBRACE WHAT I'M CALLING A COMPROMISE, 30 DAYS,

2    THAT SEEMS LIKE A LOT OF TIME FOR SOMEBODY TO AT LEAST BE

3    PREPARED TO ENTERTAIN REQUESTS AND ACT ON THOSE REQUESTS AND

4    APPEAR IN FRONT OF ME AND SAY "NO, THEY SHOULDN'T GET THIS" OR

5    TELL MR. MCPHERSON "YES, WE THINK THEY SHOULD GET THIS."

6         MR. FORGE:  DEPENDING ON THE PERSON'S SCHEDULE AND

7    ASSUMING -- AND THEIR CLEARANCE LEVEL ALREADY, I THINK 30 DAYS

8    IS POSSIBLE.  I'M NOT SAYING IT'S DOABLE.  YOUR HONOR KNOWS

9    AND MR. MAC DOUGALL KNOWS THERE AREN'T TOO MANY AUSA'S WALKING

10   AROUND OUR OFFICE WHO'VE GOT EMPTY PLATES.

11        AND WHILE IT'S TRUE THAT I CAN'T IMAGINE A CASE IN

12   30 DAYS YOU CAN'T GET A PRETTY FIRM HANDLE ON WHAT'S GOING ON

13   IN THE CASE IF YOU'RE REALLY CONCENTRATING ON THE 30 DAYS,

14   THERE AREN'T A WHOLE LOT OF PEOPLE WHO FIT THE BILL AS

15   SOMEBODY WHO YOU CAN JUST SAY, "PUT EVERYTHING ASIDE FOR THE

16   NEXT 30 DAYS."

17        THE COURT:  I DON'T WANT TO TALK OUT OF SCHOOL

18   AGAIN, MR. FORGE, NOR BE PRESUMPTUOUS.  BUT YOU'VE GOT

19   SUPERVISORS UP THERE THAT PROBABLY HAVE THE TOP SECRET

20   CLEARANCES WHO COULD SAY, "YOU KNOW, THIS IS VERY LIMITED

21   COLLATERAL DUTY BEYOND MY SUPERVISORIAL RESPONSIBILITIES.  ALL

22   I'VE GOT TO DO IS ANSWER ON THE DISCOVERY THINGS AND GO DOWN

23   TO COURT AND ARGUE AGAINST IT IF I OPPOSE IT."  YOU'VE GOT A

24   BIG POOL OF SUPERVISORS UP THERE.  AGAIN, I'M TALKING OUT OF

25   SCHOOL.  IT'S NOT MY BUSINESS HOW YOU ALLOCATE RESOURCES.

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. FORGE:  I'M NOT TRYING TO DISCOURAGE THIS

2    COMPROMISE.  I'M NOT ARGUING AGAINST IT.  I'M JUST ADVOCATING

3    FOR MORE TIME.

4          THE COURT:  ARE YOU SATISFIED WITH THAT?

5          MR. MAC DOUGALL:  I AM, YOUR HONOR.  IF I JUST MAY

6    ADD THAT AT MAIN JUSTICE IN THE CRIMINAL DIVISION, THERE MAY

7    NOT BE AN ARMY, BUT THERE'S A BATTALION OF LAWYERS WHO HAVE

8    TOP SECRET CLEARANCES AS A RESULT OF THE MOUSAWI AND OTHER

9    TERRORIST CASES.  I CAN TELL YOU SOME OF THEIR NAMES.  I

10   SUSPECT MOST WOULD BE THRILLED TO BE INVOLVED IN THIS CASE.

11         THE COURT:  THAT SEEMS TO ME TO BE THE BEST

12   SOLUTION, FRANKLY, IN THE IMMEDIATE CONTEXT OF MR. MAC DOUGALL

13   HERE.  IF HE'S IN D.C., THOSE DISCUSSIONS BETWEEN HIM AND

14   SOMEBODY IN THE DEPARTMENT ABOUT THIS CASE COULD PRESUMABLY

15   OCCUR OVER THE PHONE.  OR IF THERE'S A DISPUTE, THEY SCHEDULE

16   IT IN FRONT OF ME AND I RESOLVE IT RIGHT AWAY.

17         IT'S A LITTLE UNCONVENTIONAL, MR. FORGE.  I

18   UNDERSTAND IT.  I HAVE TO TELL YOU THAT IN MY HEART OF HEARTS,

19   I'M VERY, VERY TROUBLED ABOUT THE IDEA OF HIM HAVING TO SHOW

20   HIS HOLD CARDS.  I JUST THINK IT PUTS THESE KINDS OF CASES IN

21   A COMPLETELY DIFFERENT CATEGORY WHERE THE DEFENDANT'S

22   DISADVANTAGED WHERE HE WOULD OTHERWISE NOT BE IF THE

23   INFORMATION --

24         MR. FORGE:  I KNOW THAT'S BEEN THE CHARACTERIZATION

25   THAT'S BEEN SLAPPED ON THE SITUATION.  IT'S NOT A

PDF created with pdfFactory trial version www.pdffactory.com

1    DISADVANTAGE.  HE HAS NO CONSTITUTIONAL RIGHTS -- THE TOUHY

2    REGULATIONS ARE ALL WRITTEN REQUIRING THE DEFENDANT TO MAKE A

3    SHOWING.  I'M NOT AWARE OF A SINGLE COURT SAYING THAT

4    REQUIRING THAT THE DEFENDANT MAKE A SHOWING OF RELEVANCY OF

5    WITNESSES IS UNCONSTITUTIONAL.

6              THE COURT:  I AGREE, BUT I'M TROUBLED BY THAT.

7              YOU'RE NOT TROUBLED AT ALL BY THE IDEA THAT HE HAS

8    TO SAY, "I'VE GOT THE GOODS ON ONE OF YOUR WITNESSES.  AND I

9    WANT TO INTERVIEW HIM, AND HERE'S WHAT I WANT TO INTERVIEW HIM

10   ABOUT.  HE MADE A STATEMENT THAT'S CONTRARY TO WHAT HE TOLD

11   YOU FELLOWS A YEAR BEFORE."

12             MR. FORGE:  I'M NOT TROUBLED BY IT.  AND THE REASON

13   IS BECAUSE I TRULY BELIEVE THAT ALL OF US AS OFFICERS OF THE

14   COURT AND AS YOUR HONOR BEING JUDGE -- ALL OF US SHOULD BE

15   INTERESTED IN LEARNING THE TRUTH HERE.  AND I THINK ANY

16   OBSTACLES TO THAT -- AND SOME OF THEM ARE NECESSARY.  BUT I

17   THINK ANY OBSTACLES THAT ARE ERECTED TO OBTAINING THE TRUTH

18   ARE TO BE AVOIDED.  THERE IS NO BETTER REASON FOR THE DEFENSE

19   TO HAVE A RIGHT TO SURPRISE THE GOVERNMENT THAN FOR THE

20   GOVERNMENT TO SURPRISE THE DEFENSE.

21             IF YOU LOOK AT RULE 16, JUST ABOUT EVERY SINGLE

22   PROVISION IN RULE 16 IS RECIPROCAL.  I REALIZE THAT MOST

23   DEFENDANTS DON'T COMPLY.  WE VERY RARELY GET RECIPROCAL

24   DISCOVERY.  BUT IT'S NOT JUST INSANITY DEFENSES.  IT'S NOT

25   JUST ALIBI DEFENSES.  IT'S EVIDENCE.  THEY HAVE TO TELL US.

PDF created with pdfFactory trial version www.pdffactory.com

1    IF THEY WANT TO PUT EVIDENCE IN A TRIAL, THEY HAVE TO TELL US

2    THAT EVIDENCE IN ADVANCE OF TRIAL.

3            THE COURT:  WITNESSES?

4            MR. FORGE:  WE DON'T HAVE TO GIVE THEM WITNESSES

5    IN ADVANCE OF TRIAL.

6            THE COURT:  THEY'VE GOT AN OBLIGATION TO TELL YOU

7    WHO THEIR WITNESSES ARE AND THE SUBSTANCE OF IT IF IT'S NOT

8    RECORDED?

9            MR. FORGE:  NO.  BUT I'M SAYING WE DON'T HAVE TO.

10   THEY DON'T HAVE TO, AND WE DON'T.  WHAT HAPPENS IS THE

11   GOVERNMENT GOES WAY BEYOND, TYPICALLY, AS WE DID IN THIS

12   CASE -- WE GO WAY BEYOND WHAT WE'RE OBLIGATED TO DO

13   STATUTORILY OR EVEN CONSTITUTIONALLY.  AND BECAUSE OF THAT, I

14   THINK IT FORMS THE IMPRESSION THAT THERE IS SYSTEMATICALLY SET

15   UP A BIG DISPARITY IN THE TWO-SIDED OBLIGATIONS.

16           THERE REALLY ISN'T THAT GREAT OF A DISPARITY.  THERE

17   ARE REQUIREMENTS FOR RECIPROCAL DISCOVERY.  AND FRANKLY, I

18   THINK EX PARTE IS THE EXCEPTION, NOT THE RULE, EVEN WHEN IT

19   COMES TO THE DEFENDANT'S DEFENSE.  AND THAT'S WHY IT'S WRITTEN

20   INTO SOME STATUTES AND NOT INTO OTHERS.

21           THE COURT:  ARE YOU WILLING TO ACCEDE TO THIS

22   PROPOSAL THAT I'VE MADE TO BRING SOMEBODY ELSE ONBOARD TO BE

23   THE CONTACT PERSON?  NOT JUST FOR MR. MAC DOUGALL, BECAUSE YOU

24   CAN ANTICIPATE MR. IREDALE'S GOING TO WANT TO DO THE SAME

25   THING.  THE OCTOBER TRIAL DATE SETTING WAS OPTIMISTIC NOW IN

PDF created with pdfFactory trial version www.pdffactory.com

1   RETROSPECT.

2          MR. FORGE:  THEORETICALLY, IF YOU'RE TALKING

3   ABOUT -- IT ENDS, OBVIOUSLY, AT THE POINT -- WE'RE NOT IN ANY

4   WAY ACCEDING TO WHEN IT COMES TO SECTION 5 NOTICE OR ANYTHING

5   ONCE WE --

6          THE COURT:  THAT'S UNDERSTOOD, THAT THAT WILL BE --

7   I WON'T JUST BE DEALING WITH A DISCOVERY DESIGNEE AT THAT

8   POINT.

9          MR. MAC DOUGALL:  ABSOLUTELY.  OUR AIM SOLELY IS TO

10  CORRECT OUR WORK PRODUCT AT THIS STAGE.  THAT'S ALL WE'RE

11  ASKING FOR.

12         MR. FORGE:  IF YOU'RE BASICALLY TALKING, YOUR HONOR,

13  ABOUT SOMEBODY TO STAND IN SIDE BY SIDE WITH CIA'S GENERAL

14  COUNSEL ON THESE TOUHY-RELATED ISSUES --

15         THE COURT:  AND SIDE BY SIDE WITH YOU, BUT

16  WITHOUT TELLING YOU WHAT MR. MCPHERSON IS SAYING OR WHAT

17  MR. MAC DOUGALL IS SAYING AND WHAT THEY'RE THINKING ABOUT THE

18  RELEVANCE.  AND THAT PERSON, IN THE EVENT OF A DISPUTE, WOULD

19  BE THE SOLE REPRESENTATIVE OF THE UNITED STATES THAT CAME

20  TO -- ALTHOUGH I GUESS THOSE WOULD BE EX PARTE PROCEEDINGS,

21  TOO; RIGHT?  THOSE WOULD BE IN CAMERA TYPE PROCEEDINGS IF

22  THERE WAS A DISPUTE ABOUT RELEVANCY BECAUSE IT'S IMPLICATING

23  CLASSIFIED INFORMATION.  SO THERE WOULD BE NO GENERAL PUBLIC

24  RIGHT TO BE PRESENT AND HEAR THE ARGUMENT OVER THAT.

25         MR. MAC DOUGALL:  IT WOULD BE IN CAMERA.  I DON'T

PDF created with pdfFactory trial version www.pdffactory.com

1　THINK IT WOULD BE EX PARTE.

2　　　　THE COURT:  THAT'S WHAT I'M INCLINED TO DO.

3　　　　THAT'S ACCEPTABLE TO YOU ON BEHALF OF MR. FOGGO?

4　IT'S GOING TO TAKE A LITTLE WHILE, BUT NOT UNDULY LONG IN

5　LIGHT OF THE FACT THAT YOU DON'T HAVE A LAWYER --

6　　　　MR. MAC DOUGALL:  WE'LL ALWAYS ACCEPT THE COURT'S

7　RULINGS.  BUT THE ONE ISSUE I RAISES -- AND I DON'T KNOW IF

8　TIME WILL PERMIT IT -- AT SOME EXPENSE TO MR. LONDERGAN, WE DO

9　HAVE OUR MATERIAL HERE TO MAKE OUR PROFFER.  WE'D VERY MUCH

10　LIKE TO DO THAT.

11　　　　MR. HALPERN:  NUMBER ONE, WE WOULD ABSOLUTELY OBJECT

12　TO THAT BECAUSE NOW IT'S BEING DONE WITHOUT THE GOVERNMENT

13　AGAIN.  THAT'S EXACTLY OUR POINT.

14　　　　THE COURT:  MR. LONDERGAN HANDED IT TO ME,

15　MR. MAC DOUGALL, BEFOREHAND.  YOU SAID THAT YOU WOULD DEVISE A

16　WAY WHERE YOU COULD REFER TO PAGES SO THERE WOULD BE NOTHING

17　ON A PUBLIC RECORD.

18　　　　BUT IF WE'RE EMBRACING THIS PLAN WHERE WE'RE GOING

19　TO HAVE A UNITED STATES ATTORNEY OR A JUSTICE DEPARTMENT

20　REPRESENTATIVE HERE, I THINK THAT THE APPROPRIATE TIME TO DO

21　IT IS WHEN THAT PERSON IS UP TO SPEED.

22　　　　MR. MAC DOUGALL:  IF I MAY, THE ONLY POINT I WOULD

23　RAISE WITH THAT IS IN MAKING AN EX PARTE PROFFER JUST AS WHEN

24　THE GOVERNMENT HAS MADE THEIRS IN THIS CASE, I THINK WE WOULD

25　FEEL FREE TO EXERCISE A GREAT DEAL OF CANDOR WITH THE COURT,

PDF created with pdfFactory trial version www.pdffactory.com

1    WHICH WE MIGHT NOT DO IN AN CAMERA PROCEEDING WITH THE OTHER

2    SIDE THERE.

3            AS MR. FORGE SAID SEVERAL TIMES, A SEARCH FOR THE

4    TRUTH.  AND THE COURT IS IN THE LEAD ON THAT.  I DON'T KNOW

5    WHAT HARM THERE WOULD BE IN MAKING THIS INFORMATION AND OUR

6    WORK PRODUCT AVAILABLE TO THE COURT TO INFORM THE COURT'S

7    THINKING.

8            THE COURT:  DO YOU HAVE ANY OBJECTION, MR. HALPERN,

9    TO ME AT LEAST CONSIDERING THAT?  I WON'T MAKE ANY RULING

10   UNTIL I'VE HEARD FROM THE UNITED STATES.  BUT THEY'VE GOT IT

11   HERE.  I CAN LOOK AT IT.  I CAN BE PREPARED TO COME WHEN YOU

12   SAY, "HERE'S OUR DESIGNEE."

13           MR. HALPERN:  NUMBER ONE, LET ME JUST SAY JUMPING

14   BACK AND EMBRACING THE COURT'S SUGGESTION, I WANT MY RESPONSE

15   TO BE MEASURED BECAUSE IT'S DIFFICULT WHEN THE COURT MAKES

16   WHAT APPEARS TO BE PRACTICAL SUGGESTIONS.  I, AS A PROSECUTOR,

17   NEVER WANT TO GET UP HERE AND MAKE A STATEMENT THAT MAKES ME

18   LOOK UNREASONABLE OR IMPRACTICAL OR TAKING A POSITION JUST FOR

19   REASONS UNRELATED TO FAIRNESS.

20           AS MR. FORGE MORE ELOQUENTLY THAN I MADE CLEAR, THIS

21   IS ABOUT JUSTICE.  WE TAKE THIS VERY SERIOUSLY.  I DON'T

22   BELIEVE I'VE EVER BEEN IN FRONT OF THIS COURT MAKING ARGUMENTS

23   THAT ARE NOT SUPPORTED OR THE COURT DOESN'T AT LEAST

24   UNDERSTAND WHY I'M DOING IT.  IT'S NOT JUST FOR A POINT.

25   WHETHER IT'S ON A SENTENCE OR ANYTHING, I DON'T GET UP IN

PDF created with pdfFactory trial version www.pdffactory.com

82

1    COURT AND ARGUE FOR THE MAXIMUM JUST BECAUSE I THINK THAT'S

2    WHAT I NEED TO DO.

3         I'M CONCERNED ABOUT THE PRACTICALITY.  I WANT THE

4    COURT TO THINK ABOUT THIS.

5         NUMBER ONE, WE HAVE SOMEBODY ELSE TO COME IN HERE.

6    AND LET'S SAY WE GET SOMEBODY FROM DOJ.  DOJ IS WILLING TO DO

7    THAT.  HE COMES OUT HERE.  HE STARTS LOOKING THROUGH ALL THE

8    DISCOVERY.  HE GETS TO THE POINT.  I HAVE NO DOUBT ONCE HE'S

9    UP TO SPEED, AN ISSUE'S GOING TO COME UP.  HE'S GOING TO COME

10   TO US, AND HE'S GOING TO START TALKING ABOUT AREAS.  AND THE

11   MINUTE HE DOES THAT, "WELL, HERE'S THE AREAS.  WHAT'S THE

12   QUESTION ABOUT THIS?  I NEED TO KNOW MORE INFORMATION ON,"

13   LET'S JUST SAY, "THE ALLIGATOR LIZARD PROGRAM.  WHAT ABOUT

14   THAT?"  WE'RE GOING TO KNOW THE GENERAL AREA.  IF THAT'S NOT

15   TIPPING US OFF, WHY DOESN'T MR. MAC DOUGALL JUST TELL US THAT?

16        THE COURT:  THERE'S A WAY THAT THAT CAN BE DONE,

17   MR. HALPERN, YOU AND I BOTH KNOW, WHERE IT WOULDN'T BE THE

18   KIND OF SPECIFIC SHOWING THAT MR. MAC DOUGALL HAS TO MAKE TO

19   CONVINCE ME THAT HE'S ENTITLED TO THE INFORMATION AND THERE'S

20   RELEVANCE.  SOMEBODY CAN ASK GENERALIZED QUESTIONS OF YOU AND

21   INFORM THEMSELVES OR SAY, "HOW DO I INFORM MYSELF?  SHOW ME

22   THE DOCUMENTS THAT WILL GIVE ME MORE INFORMATION ON THIS."

23   THERE IS A WAY TO DO IT CONSISTENT WITH WHAT WE'VE DISCUSSED

24   HERE.

25        MR. FORGE:  MAY I MAKE ANOTHER PROPOSAL FOR POSSIBLE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

83

1    COMPROMISE?

2            SO FAR MR. MAC DOUGALL HAS THE MAIN ISSUE HE WANTS

3    IS ACCESS TO THESE WITNESSES BEFORE WE GET ACCESS TO THEM TO

4    REHABILITATE THEM OR TO INTERVIEW THEM.  HE'S GENEROUSLY

5    ACKNOWLEDGING "WE'RE NOT GOING TO TRY TO INTIMIDATE THEM."

6            WHAT I WOULD SUGGEST IS THIS:  THIS DISPUTE IS OVER

7    A PROGRAM, NOT OVER WITNESSES.  THE PROGRAM DOES NOT REVEAL

8    WHO THE WITNESSES THEY WANT TO TALK TO WOULD BE.  WHY DON'T WE

9    TRY THIS IN TERMS OF A LEGITIMATE DISCOVERY DISPUTE OVER

10   ACCESS TO THIS PROGRAM?  DON'T TELL US WHO THE WITNESSES ARE

11   YOU WANT TO TALK TO.  DON'T TELL US WHO YOU WANT TO INTERVIEW

12   IF YOU GET THE CLEARANCE -- THE SCI CLEARANCE INTO THAT

13   PROGRAM.  LET'S JUST TALK ABOUT THE RELEVANCE OF THAT PROGRAM.

14           THE COURT:  TELL ME HOW THAT'S GOING TO WORK,

15   THOUGH.  I'VE TRIED TO ENVISION THAT, MR. FORGE.  HE SAYS --

16   MR. HALPERN SAID, "ALLIGATOR LIZARD PROGRAM."  HE SAYS, "I

17   WANT ACCESS TO THE ALLIGATOR LIZARD PROGRAM."

18           WHAT'S YOUR RESPONSE GOING TO BE, "WHAT DOES THAT

19   HAVE TO DO WITH THIS?"

20           MR. FORGE:  OUR RESPONSE WOULD BE "THIS CASE

21   INVOLVES DEER, ELEPHANT, AND LION PROGRAMS.  THE ALLIGATOR

22   LIZARD PROGRAM IS COMPLETELY SEPARATE AND HAS NOTHING TO DO

23   WITH THE ALLEGATIONS IN THIS CASE.  THERE'S NO OVERLAP

24   WHATSOEVER."

25           THE COURT:  THEN THE BALL'S BACK IN HIS COURT TO BE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   MORE SPECIFIC.

2           MR. FORGE:  THE BALL'S BACK IN HIS COURT.  AND HE

3   SAYS, "WE WANT TO BE ABLE TO SHOW THAT MR. FOGGO'S IS SO

4   VALUABLE TO THE ALLIGATOR LIZARD.  HE WAS DEDICATING 99

5   PERCENT OF HIS TIME TO ALLIGATOR" --

6           THE COURT:  THAT'S THE PROBLEM.

7           MR. FORGE:  BUT THEY CAN DO THAT WITHOUT IDENTIFYING

8   THE WITNESS.

9           THE COURT:  I DON'T THINK THEY CAN.  I THINK THAT HE

10  IS REQUIRED TO GET MORE SPECIFIC SO THAT YOU CAN KIND OF

11  CRYSTALLIZE WHY THEY NEED IT.  THAT IMPLICATES THE VERY

12  PROBLEM THAT I'M STRUGGLING WITH, WHICH IS HE'S GOT TO TIP HIS

13  HAND IN ORDER TO GET THE INFORMATION.

14          I THINK THE BETTER WAY, MR. FORGE, IS TO HAVE

15  SOMEBODY THAT WILL NOT TELL YOU WHAT THE PROFFERS ARE.  "WE'LL

16  STILL ASSOCIATE WITH THE GOVERNMENT.  WE'LL STILL COME DOWN

17  AND BE KNOWLEDGEABLE ABOUT YOUR CASE.  WE'LL ADVOCATE THAT

18  'JUDGE, THIS IS WRONG.  THEY SHOULDN'T HAVE THIS.'"  I THINK

19  THAT SOLVES IT.

20          THEN THE ACTUAL TRIAL PROSECUTORS -- THERE'S NO HINT

21  OR SUGGESTION THAT YOU'VE HAD AN ADVANTAGE OR YOU'VE GONE BACK

22  TO WITNESSES TO TRY TO SHORE UP THINGS BASED ON INFORMATION --

23          MR. FORGE:  WE'RE ALL TALKING ABOUT TIMING.  IT'S A

24  QUESTION OF TIMING FOR MR. MAC DOUGALL BECAUSE HE WANTS TO

25  HAVE SOME TIME, A QUIET PERIOD, TO GAIN ACCESS TO THIS PROGRAM

PDF created with pdfFactory trial version www.pdffactory.com

1   AND GAIN ACCESS TO THESE WITNESSES BEFORE INFORMING US OF WHAT

2   IT IS.  WE WANT TIME TO GET A SURROGATE PROSECUTOR UP TO SPEED

3   ON THIS THING.

4           THE COURT:  I'LL GIVE YOU 30 DAYS.  I THINK THAT'S

5   AN APPROPRIATE PERIOD OF TIME.  IREDALE'S CLEARANCE ISN'T

6   GOING TO BE -- IF HE STEPS IN, THAT WON'T BE FINISHED BEFORE

7   THEN.  YOU'RE GOING TO FACE THE SAME ISSUES FROM MR. IREDALE.

8   I THINK NECESSARILY SO THAT THE REQUESTS ARE GOING TO HAVE TO

9   BE MADE SEPARATELY.  THEY CAN'T GET TOGETHER AND SHARE

10  INFORMATION.

11          MR. FORGE:  WHEN YOU SAY 30 DAYS, DOES THAT MEAN

12  THAT THEIR DISCOVERY MOTION WILL BE DUE IN 30 DAYS AND THEN WE

13  WOULD HAVE TWO WEEKS TO RESPOND?

14          THE COURT:  YES.  I WANT YOU TO GET SOMEBODY UP TO

15  SPEED WITHIN 30 DAYS.  I THINK THAT'S CONSISTENT WITH WHAT I

16  NOW ENVISION THE TIMETABLE IS GOING TO BE ON THIS CASE.  BUT I

17  THINK THAT WILL SOLVE A LOT OF PROBLEMS AND HELP FLY US

18  THROUGH.

19          THE UNDERSTANDING -- I WANT TO REITERATE,

20  MR. MAC DOUGALL -- IS AT SUCH POINT AFTER ALL THIS PRELIMINARY

21  INVESTIGATION IS DONE, THEN THE PROSECUTION TEAM AND THE

22  PERSON WITH MR. HALPERN, MR. FORGE, MS. CHU, AND MR. BHANDARI,

23  GET TO COME IN DURING THE CIPA, RULE 5, AND RULE 6

24  DETERMINATIONS AND MAKE WHATEVER ARGUMENTS.

25          THEY'RE NOT GOING TO BE RELEGATED TO USING THIS

PDF created with pdfFactory trial version www.pdffactory.com

86

1   PERSON THAT'S COME IN TO HELP THEM OUT IN THE PRELIMINARY

2   STAGES; RIGHT?

3            MR. MAC DOUGALL:  I UNDERSTAND THAT.  BUT IF I MAY,

4   WE ARE PREPARED TO MAKE OUR MOTION TOMORROW.  WE'RE NOT GOING

5   TO WAIT 30 DAYS.  OUR MOTION'S ALREADY ESSENTIALLY MADE WITH

6   THE COURT.  WE'D LIKE ACCESS TO THESE PROGRAMS.

7            THE COURT:  I'LL TAKE THAT UNDER SUBMISSION.  IT

8   SOLVES ANOTHER PROBLEM I HAD IN THE BACK OF MY MIND LAST NIGHT

9   AT 1:00 A.M. WHEN I WAS IN BED READING THIS STUFF, WHICH IS

10  I'M GOING TO MAKE SURE I'VE ACCOUNTED FOR THE SPEEDY TRIAL

11  TIME IN THIS CASE.  I DIDN'T DECLARE IT COMPLEX, BUT THAT WILL

12  HELP WITH THE MOTION PENDING.  SO YOU MAY FILE THE MOTION.  I

13  HAVE THE PAPERWORK HERE.

14           IS THIS YOUR SET OF PAPERWORK, MR. LONDERGAN, OR IS

15  IT FOR ME?

16           MR. LONDERGAN:  IT'S FOR YOUR HONOR.

17           THE COURT:  AND THESE ARE THE EXHIBITS, I ASSUME,

18  FOR THE MOTION.  I'LL HOLD IT.  I'LL TAKE IT INTO

19  CONSIDERATION.  I'LL WAIT FOR THEIR DESIGNATION WITHIN 30 DAYS

20  OF THE REPRESENTATIVE.  AT THAT POINT, THE MOTION CAN BE FILED

21  WITH THAT PERSON.  AND WITHIN TWO WEEKS, GIVE ME A RESPONSE,

22  AND WE'LL CONVENE A HEARING AND GET GOING ON THIS.

23           I HATE TO GIVE A 30-DAY SETBACK.  THE ADVANTAGE OF

24  THAT, MR. MAC DOUGALL, IS THAT IT OBVIATES SOME OF THE CONCERN

25  THAT I HAVE AND YOU HAVE ABOUT YOU HAVING TO TIP YOUR HAND TO

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

87

1    THE VERY PEOPLE THAT ARE PROSECUTING THIS FELLOW.

2              MR. MAC DOUGALL:   IF THE COURT HAS THE TIME TODAY,

3    WE'RE PREPARED TO PUT THAT INFORMATION IN FRONT OF THE COURT?

4              MR. MCPHERSON:   I'D LIKE TO POINT OUT THIS IS

5    INFORMATION WE HAVEN'T REVIEWED YET.   THE ESSENCE OF AN

6    ADMINISTRATIVE PROCEDURES ACT PROCEEDING IS THAT JUDICIAL

7    REVIEW IS CONFINED TO THE RECORD BELOW.   NONE OF THIS

8    INFORMATION WAS SUBMITTED TO THE CIA AT THE TIME THE REQUEST

9    WAS MADE.

10             THE COURT:   HE'S CHOSEN GATE 2, THOUGH,

11   MR. MCPHERSON.   WE'RE AGREED THAT THIS IS GOING TO BE MADE IN

12   THE CONTEXT OF A RULE 16 REQUEST.   I'M NOT EVEN CONSIDERING

13   THIS AS AN ADMINISTRATIVE PROCEDURES ACT.   THIS IS BEING MADE

14   TO ME.   I'M GOING TO GIVE THE GOVERNMENT, THROUGH THE PERSON

15   DESIGNATED BY THE U.S. ATTORNEY, AN OPPORTUNITY TO REVIEW THE

16   MOTION, CONSULT WITH YOU, AND THEN RESPOND.   AND THEN I'LL

17   MAKE A DECISION.

18             I THINK WHAT MR. MAC DOUGALL IS SUGGESTING IS "LOOK,

19   I'M OUT HERE TODAY.   WE'RE PRO BONO ON THIS CASE.   I DON'T

20   WANT TO MAKE ANOTHER TRIP OUT HERE JUST TO MAKE A PROFFER.   I

21   CAN'T DO IT OVER THE PHONE BECAUSE OF THE NATURE OF THE

22   INFORMATION.   SO IT MAKES SENSE FOR ME TO TELL YOU WHY WE WANT

23   IT NOW."

24             MR. FORGE:   THE SUBMISSION OF THE DOCUMENTS, IF I'M

25   UNDERSTANDING YOUR HONOR CORRECTLY, IS GOING TO BE SHARED WITH

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    CIA AND WITH THE DESIGNATED DOJ ULTIMATELY.  THERE IS

2    NOTHING -- THERE IS NO -- NOTHING PROPER ABOUT MR. MAC DOUGALL

3    MEETING WITH THE COURT EX PARTE IN CAMERA ON THIS ISSUE.  THIS

4    IS GOING TO BE ARGUED.  IT'S LIKE A PRE-ARGUMENT.

5         THE COURT:  I'M CONCERNED ABOUT THAT.  YOU'RE RIGHT,

6    MR. MAC DOUGALL, THAT THEY CAME DOWN TO GIVE ME SOME CONTEXT

7    ON WHY -- I'VE BEEN DOWN THE WRONG PATH ON MY OWN ACCORD A

8    COUPLE OF TIMES.  ONE WAS THE IDEA AT FIRST WITH MR. WILKES

9    THAT SOMEHOW WE COULD WAIVE THE CIPA THING AND WHISTLE PAST

10   THE GRAVEYARD.  IT BECAME CLEAR TO ME AFTER I HAD GREATER

11   CONTEXT THAT THAT WASN'T GOING TO WORK.

12        I'M GENERALLY CONCERNED ABOUT EX PARTE PROCEEDINGS

13   BECAUSE IT TOTALLY OBLITERATES THE FAIR TRIAL RIGHTS OF ONE

14   SIDE OR THE OTHER.  AND THAT APPLIES TO YOU AND YOUR CLIENT AS

15   WELL AS TO THE UNITED STATES.  I THINK THEIR DESIGNATED

16   PROSECUTOR OUGHT TO BE HERE TO HEAR THE -- OR MAYBE WE'LL MEET

17   YOU HALFWAY OR GO SOMEWHERE TO HEAR IT.  BUT I THINK THAT

18   PERSON OUGHT TO BE A PARTY TO THE PROFFER.

19        BECAUSE THE PROFFER INFORMS THE LEGAL ISSUE; RIGHT?

20   THE PROFFER IS GOING TO BE WHY THIS IS RELEVANT, WHY WE NEED

21   TO HAVE THIS.

22        MR. MAC DOUGALL:  WELL, WE HAD ANTICIPATED

23   MR. MCPHERSON BE PRESENT FOR THIS.  THIS WAS NOT INTENDED TO

24   BE --

25        THE COURT:  SEE, THE PROBLEM THAT THEY HAVE IS THAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    MR. MCPHERSON IS NOT A REPRESENTATIVE OF THE UNITED STATES IN

2    THIS CASE.  THEY WANT A REPRESENTATIVE OF THE UNITED STATES IN

3    THIS CASE BECAUSE NOW WE'RE OPERATING UNDER THE AUSPICES OF

4    RULE 16 AND NOT THE ADMINISTRATIVE PROCEDURES ACT.  NONE OF US

5    WANTS THAT.  I THINK PROBABLY I SHOULD WAIT.

6             DO YOU ANTICIPATE THAT YOU'LL BE OUT HERE AGAIN?

7             MR. MAC DOUGALL:  I WILL, YOUR HONOR.  PRIOR -- I

8    WASN'T GOING TO BACK TO THIS.  MR. HALPERN MADE A REFERENCE TO

9    THE S.C.I.F. FOR SALE ON GOOGLE.  WHAT HE DIDN'T TELL YOU IS

10   IT'S $100,000 A MONTH.  AND MR. FOGGO, OUR CLIENT, CAN'T

11   AFFORD TO COME TO HIS HEARINGS.

12            THE COURT:  LET ME DIGRESS FOR JUST A MINUTE.

13            MR. LONDERGAN, DO YOU HAVE ANYTHING NEW ON THAT

14   FRONT?

15            MR. HALPERN:  I CAN PROBABLY --

16            THE COURT:  YOU'LL PAY FOR THE S.C.I.F.?

17            MR. HALPERN:  ABSOLUTELY.  I'LL SPEAK TO THE

18   ATTORNEY GENERAL ABOUT IT.

19            THE COURT:  YOU MAKE MORE THAN 100,000 A YEAR.

20            MR. HALPERN:  AFTER TAXES, I THINK MAYBE I'M OUT OF

21   LUCK.

22            THE LATEST IS THIS:  THE PEOPLE WITH GSA ARE

23   PREPARED TO BUILD A S.C.I.F.  IT WILL TAKE NO MORE THAN TWO

24   WEEKS.

25            THE COURT:  HERE.

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. HALPERN:  HERE.

2          THE BIG PROBLEM IS THE LEAD TIME ON THE DOOR -- AND

3     I DON'T WANT TO GO INTO ALL THE DETAILS.  THERE'S SOME OTHER

4     LONG DETAILS THAT ARE A PROBLEM.  THEY'RE TRYING TO WORK ON

5     IT.  THEY BELIEVE IT WILL BE EIGHT WEEKS.  MAYBE IT CAN BE A

6     LITTLE SHORTER.

7          THE COURT:  GET THEM DOWN TO 30 DAYS.

8          WHAT CAN YOU DO TO HELP HIM IN THE FIRST INSTANCE,

9     THOUGH?  BECAUSE HE NEEDS S.C.I.F. SPACE AVAILABLE ON

10    EVENINGS AND WEEKENDS IN D.C.  DO YOU HAVE ANY STROKE THERE,

11    MR. HALPERN?

12         MR. HALPERN:  MR. LONDERGAN HAS FAR MORE THAN I DO.

13    HE'S BACK THERE, AND HE CAN'T GET IT ACCOMPLISHED.  I KNOW A

14    LOT OF PEOPLE IN THE DEPARTMENT, BUT NOT WHO HAVE S.C.I.F.'S

15    IN THEIR BACKYARD.

16         THE COURT:  I CALLED -- I THINK I'VE TOLD YOU THIS,

17    MR. MAC DOUGALL.  I CALLED THE CHIEF JUDGE IN THE EASTERN

18    DISTRICT OF VIRGINIA.  HE REFERRED ME TO JUDGE LEONIE

19    BRINKEMA.  SHE UNDERTOOK TO LOOK IN THE AREA AND SAID, "NO,

20    THERE'S ABSOLUTELY NOTHING."

21         BUT AGAIN, MAYBE I'M TOO PRACTICAL FOR MY OWN GOOD.

22    OTHER THAN COMPONENTS OF THE JUSTICE DEPARTMENT, FOR EXAMPLE,

23    THE CIA, THERE'S GOT TO BE OTHER S.C.I.F.'S AVAILABLE THAT

24    AREN'T IN USE.

25         DOESN'T THE DEPARTMENT OF DEFENSE, FOR EXAMPLE, HAVE

PDF created with pdfFactory trial version www.pdffactory.com

1   ONE?  YOU HAVE ALL KINDS OF CONTACTS WITH THOSE AGENCIES.  NOT

2   YOU PERSONALLY, BUT YOUR OFFICE DOES.  THEY DEFEND THEM HERE.

3   CAN'T SOMEBODY MAKE THE CALL AND SAY, "DO YOU HAVE ONE

4   COLLECTING DUST?  WE NEED S.C.I.F. AVAILABILITY.  THESE FOLKS

5   ARE CLEARED.  THEY'LL SIGN IN."

6           MR. HALPERN:  I'M HAPPY TO DO THAT.  IT'S JUST I'M

7   TELLING YOU THIS IS NOT SOMETHING -- THE REASON WHY THE

8   S.C.I.F. SPACE IS $100,000 A MONTH -- AND FRANKLY, I BELIEVE

9   MAYBE I COULD RECOMMEND A GOOD REAL ESTATE AGENT.  IF THEY

10  DON'T NEED IT FULL TIME, THE PRICE WOULD GO DOWN.  BUT THE

11  REASON THE PRICE IS HIGH HAS TO DO WITH THEIR LACK OF

12  AVAILABILITY.  I'M AWARE OF TWO S.C.I.F.'S THAT WE HAVE ACCESS

13  TO HERE:  ONE AT THE FBI, AND ONE IN OUR OFFICE.  IT'S BEING

14  USED ALMOST FULL TIME.

15          THE COURT:  YOU DON'T THINK WITH ALL THE MILITARY

16  INSTALLATIONS HERE, THERE'S NOT A S.C.I.F. AT ONE OF THOSE?

17          MR. HALPERN:  I HAVE NO DOUBT, BUT I WOULD DOUBT

18  VERY HIGHLY THAT IT WOULD BE FREE.  I KNOW INDIVIDUALS WHO

19  WORK IN S.C.I.F.'S.  MOST OF THE DEFENSE CONTRACTORS, THEY

20  HAVE S.C.I.F.'S THAT ARE SPACES.  THEY MAY BE LABORATORIES.

21  THEY MAY BE OFFICES WITH NUMEROUS PEOPLE IN THEM.  IT'S NOT

22  LIKE THERE'S ONE ROOM THAT'S SET ASIDE THAT WILL HAVE THIS

23  S.C.I.F.

24          THE COURT:  MR. HALPERN, WILL YOU MAKE SOME CALLS?

25  CALL MR. STAHL AT THE CIVIL DIVISION AND ASK HIM TO MAKE SOME

PDF created with pdfFactory trial version www.pdffactory.com

1   INQUIRIES WITH THESE OTHER AGENCIES.

2           AS FAR AS I'M CONCERNED, MR. MCPHERSON, UNLESS I'M

3   WRONG, AS LONG AS IT'S AN APPROVED S.C.I.F., IT DOESN'T HAVE

4   TO BE ONE THAT'S ASSOCIATED NECESSARILY WITH THE DEPARTMENT OF

5   JUSTICE OR THE CRIMINAL JUSTICE SYSTEM AT ALL.  IT COULD BE,

6   FOR EXAMPLE, ONE ASSOCIATED WITH DEFENSE AND USED FOR THE

7   PURPOSE OF THIS CASE IF IT'S CONVENIENT.

8           AM I WRONG ABOUT THAT?

9           MR. MCPHERSON:  THAT'S CORRECT.  IT MUST MEET THE

10  APPROVAL OF MR. LONDERGAN'S OFFICE.

11          THE COURT:  MR. LONDERGAN, I'M NOT TRYING TO PUT YOU

12  OUT OF BUSINESS.  I KNOW YOU'RE ON TOP OF THIS.  BUT MAYBE,

13  JUST MAYBE, IF MR. STAHL, FOR EXAMPLE, WHO IS THE HEAD OF

14  THEIR CIVIL DIVISION, CALLS IN A FAVOR TO SOMEBODY AND THEY

15  MAKE A COUPLE OF CALLS, MAYBE WE CAN GET SOME MOVEMENT WHERE

16  OTHERWISE YOU'VE BEEN TOLD NO BEFORE.

17          MR. LONDERGAN:  WE'RE TALKING ABOUT IN SAN DIEGO?

18          THE COURT:  NO.  I'M TALKING ABOUT SOMEWHERE IN D.C.

19  YOU'VE BEEN VERY GRACIOUS UP TO THIS POINT TO MAKE YOUR

20  OFFICES AVAILABLE.  I'M SURE MR. MAC DOUGALL APPRECIATES IT.

21  HE'S SAID THAT MANY TIMES.

22          THE PROBLEM IS THAT THEY'RE NOT AVAILABLE ON THE

23  EVENINGS AND WEEKENDS WHEN THEY WANT TO WORK.  AS IT GETS

24  CLOSER TO CRUNCH TIME ON THIS CASE AND THE SECTION 5,

25  SECTION 6 REQUESTS COME IN, I'M SURE THAT THEY'RE GOING TO

PDF created with pdfFactory trial version www.pdffactory.com

1    WANT MORE TIME THAN IS PROBABLY AVAILABLE AND MORE TIME THAT

2    WOULD BE CONVENIENT FOR THEM.  THEY'RE PRO BONO ON THIS CASE.

3    I'M SURE THEY'RE HANDLING OTHER MATTERS IN THEIR PRIVATE

4    PRACTICE DURING THE DAY.  THEY TURN TO THIS IN THE EVENINGS OR

5    ON THE WEEKENDS, THAT TYPE OF THING.  I'M GOING TO TRY TO

6    ACCOMMODATE THAT SCHEDULE, TO THE EXTENT I CAN.

7            MR. LONDERGAN:  YOUR HONOR, MY UNDERSTANDING IS THAT

8    THE DEFENSE TEAM NEEDS A DEDICATED 24/7 FACILITY.  AND

9    "DEDICATED" WOULD MEAN DEDICATED IN ITS ENTIRETY FOR THE FOGGO

10   DEFENSE TEAM.

11           THE COURT:  IS THAT WHAT IT IS?

12           MR. MAC DOUGALL:  NOT NECESSARILY.  I DON'T MEAN TO

13   QUARREL WITH MR. LONDERGAN.  WE'RE HAPPY TO SHARE SPACE,

14   CERTAINLY.  THE DIFFICULTY WITH MR. LONDERGAN'S S.C.I.F. IS

15   SOMETIMES IT'S BOOKED FOR TWO WEEKS AT A TIME AND WE'RE OUT OF

16   LUCK.  IT'S NOT DEDICATED IN A SENSE THAT NO ONE ELSE CAN USE

17   IT.  IT WOULD JUST BE DEDICATED IN A SENSE THAT WE WOULD HAVE

18   ACCESS TO IT AS WE NEEDED IT.  AND IF WE HAVE TO COLLABORATE

19   WITH SOME OTHER GROUP OF LAWYERS, WE'LL DO THAT.  IT'S

20   CERTAINLY BETTER THAN WE HAVE NOW.

21           MR. LONDERGAN:  YOUR HONOR, THE SECOND POINT IN

22   TERMS OF LOCATION OR THE OWNERSHIP OF THAT PARTICULAR

23   FACILITY, THERE'S ONE PARTICULAR AGENCY WHO HAS THE

24   PREPONDERANCE OR ALL OF THE CLASSIFIED INFORMATION.  AS LONG

25   AS THERE'S NO OBJECTION BY THAT PARTICULAR AGENCY FOR USING AN

PDF created with pdfFactory trial version www.pdffactory.com

94

1    ACCREDITED S.C.I.F. IN SOME OTHER PART OF THE GOVERNMENT, THEN

2    IT WOULD BE NO ISSUE TO US.

3            THE COURT:  THAT'S WHY I PUT THE QUESTION TO

4    MR. MCPHERSON.

5            YOU SAY IF MR. LONDERGAN SIGNS OFF ON IT AS AN

6    ACCREDITED S.C.I.F., YOU WOULDN'T OBJECT?

7            MR. MCPHERSON:  FOR THE LEVEL OF INFORMATION.  THAT

8    WOULD BE DETERMINED BY WHAT THE COURT RULES ABOUT THESE

9    PROGRAMS.

10           THE COURT:  THE GIST OF THIS, MR. HALPERN, IS IF YOU

11   CAN LEND A HAND, I WANT TO TRY TO ACCOMMODATE MR. FOGGO'S

12   COUNSEL IN THIS CASE, GET THEM A PLACE WHERE THEY CAN WORK AT

13   IRREGULAR TIMES.  AND THEY'RE COMPETING.  MR. LONDERGAN'S DONE

14   HIS BEST TO PULL THE BALANCE THROUGH BETWEEN ALL THE PEOPLE

15   THAT WANT ACCESS TO THAT THING.  AS MR. MAC DOUGALL POINTS OUT

16   AND HAS POINTED OUT TO ME, SOMETIMES THAT INVOLVES OR

17   NECESSITATES A TWO-WEEK WAIT TO EVEN GET IN.  IF YOU CAN HELP

18   WITH THAT --

19           MR. HALPERN:  I'LL MAKE A CALL TO THE NATIONAL

20   SECURITY PEOPLE THERE.  I DO THINK THAT WE SHOULD MOVE FORWARD

21   QUICKLY IN SAN DIEGO ON THE FUNDING SO BY THE END OF OCTOBER,

22   WHICH IS NOT THAT FAR AWAY, WE HAVE A S.C.I.F. HERE FULL

23   TIME.

24           THE COURT:  I AGREE.  BECAUSE IF IT IS, MR. IREDALE

25   IS GOING TO BE HONKING TO GET INTO THE S.C.I.F. AND USE IT.

PDF created with pdfFactory trial version www.pdffactory.com

1        MR. MAC DOUGALL, I THINK MY ANSWER ON THE OTHER

2   THING IS I'LL HOLD OFF ON THE PROFFER.  I THINK THAT A

3   GOVERNMENT REPRESENTATIVE HAS A RIGHT TO HEAR THAT PROFFER,

4   TOO, AND KNOW WHAT IT IS BEFORE IT'S MADE IN THE EX PARTE.  IT

5   IS, AFTER ALL, A RULE 16 TYPE REQUEST.  I WANT TO HEAR FROM

6   BOTH SIDES BEFORE I MAKE THE DECISION ON IT.  I HAVE THE

7   MATERIAL.  I'LL GIVE IT BACK TO MR. LONDERGAN UNTIL THE PERSON

8   COMES.  YOU CAN FILE THE MOTION, AS FAR AS I'M CONCERNED.

9        YOU DON'T HAVE ANY OBJECTION TO THAT, HIM FILING THE

10  MOTION AND THEN --

11       MR. HALPERN:  OUR ONLY OBJECTION WOULD BE IF HE

12  DOESN'T DO IT APPROPRIATELY.  THE GOVERNMENT FILED A MOTION IN

13  THIS CASE.  WE FILED IT PUBLICLY.

14       THE COURT:  THE NATURE OF THIS IS IT CAN'T BE FILED

15  PUBLICLY.

16       MR. HALPERN:  NO, YOUR HONOR.  ALL THE LEGAL

17  ARGUMENTS CAN BE FILED PUBLICLY AS WE DID.  IF IT'S JUST A

18  DECLARATION SAYING "WE'RE FILING A MOTION.  AND OUR

19  PRESENTATION AND OUR DOCUMENTS ARE EX PARTE," THAT'S FINE.  IN

20  FACT, I DID ONE VERY RECENTLY, ALSO.  IT'S JUST SO THERE'S

21  NOTICE.  IT'S ON THE COURT'S CALENDAR.  EVERYBODY CAN SEE HE'S

22  FILED A MOTION AND WHAT IT IS.

23       THE COURT:  THE GOVERNMENT'S CONCERN FOR THE

24  PUBLIC'S RIGHT TO KNOW IS REFRESHING, ISN'T IT?

25       MR. MAC DOUGALL:  IT IS.  MR. KONTOGIANNIS WOULD BE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   THRILLED TO HEAR THAT.

2           MR. HALPERN:  YOUR HONOR, WE'VE BEEN EDUCATED BY THE

3   COURT.  AND NOW WE'RE BENDING OVER BACKWARDS IN THE WAY I

4   THINK THE COURT WOULD LIKE IT DONE.  WITH THAT IN MIND, IT IS

5   TRUE THAT THE GOVERNMENT DID FILE ONE EX PARTE IN THIS CASE.

6   WHEN WE DID IT, WE NOTICED IT.  WE FILED IT IN THE DOCUMENT.

7   WE TOLD THEM WE WERE GOING TO DO IT.  WE'LL GIVE THEM THE

8   OPPORTUNITY TO DO IT AGAIN.

9           THE COURT:  I AGREE WITH WHAT YOU SAID, MR. HALPERN.

10  WE'LL DO THAT FROM NOW ON.  THE EXHIBITS THEMSELVES WILL BE

11  SEALED AND PRESENTED TO THE COURT TO PRESERVE CLASSIFIED

12  INFORMATION.

13          MR. MAC DOUGALL:  ONE LAST REQUEST, YOUR HONOR, WITH

14  REGARD TO THE S.C.I.F. ISSUE.  I DON'T MEAN TO GO AWAY FROM

15  THAT, BUT IT WEIGHS HEAVILY ON OUR MINDS.

16          IN THE INDICTMENT, THERE ARE REFERENCES TO A

17  S.C.I.F. HAVING BEEN CONSTRUCTED AT ONE OF THE CONTRACTORS IN

18  CHANTILLY, VIRGINIA, WHICH IS ABOUT 20 MILES FROM WASHINGTON.

19  WE'RE TRYING TO FIND OUT WHERE THAT S.C.I.F. IS AND WHO

20  CONTROLS IT NOW BECAUSE WE'D BE WILLING TO USE THAT S.C.I.F.

21  EVEN THOUGH IT'S QUITE A DISTANCE.  THAT'S SOMETHING THAT THE

22  U.S. ATTORNEY'S OFFICE, I WOULD THINK, WOULD HAVE INTIMATE

23  ACCESS TO.  IT WOULD BE VERY HELPFUL.

24          MR. HALPERN:  ALL IT WOULD TAKE IS A PHONE CALL.

25  I'M HAPPY TO HELP OUT.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  MAYBE YOU CAN HAVE ACCESS TO THAT.

2          TO SUM UP AND REITERATE THE DECISIONS THAT I'VE

3   MADE, AT THE PRESENT TIME I DENY THE PENDING MOTION TO COMPEL

4   THE CIA TO ADMIT MR. FOGGO'S LEGAL REPRESENTATIVES INTO THE

5   ADDITIONAL COMPARTMENTS.  DENIED WITHOUT PREJUDICE.

6          WITHIN 30 DAYS, HOPEFULLY SOONER, THE GOVERNMENT

7   WILL DESIGNATE A PERSON TO ACT AS THEIR DISCOVERY LEAD PERSON.

8   THE UNDERSTANDING WILL BE THAT THAT PERSON WILL REPRESENT THE

9   UNITED STATES -- THE INTERESTS OF THE UNITED STATES IN THIS

10  CASE WITH RESPECT TO ANY DISCOVERY REQUESTS MADE PRIOR TO THE

11  SECTION 5, SECTION 6 REQUESTS THAT EVERYONE EXPECTS ARE

12  FORTHCOMING.

13         THAT PERSON WILL DEAL WITH PRELIMINARY DISCOVERY

14  REQUESTS SUCH AS THE ONE THAT WAS PRESENTED TO THE COURT

15  TODAY.

16         THAT PERSON WILL BE FORBIDDEN FROM DISCUSSING THE

17  OFFERS OF PROOF OR THE RELEVANCY OFFERED BY THE DEFENSE FOR

18  WHY THEY NEED THAT INFORMATION WITH THE PROSECUTORS ASSIGNED

19  TO THIS CASE, ALTHOUGH THE PERSON WILL BE FREE TO DISCUSS WITH

20  MR. MCPHERSON AND WITH THE PROSECUTORS IN GENERAL THE

21  RELEVANCE AND MORE SPECIFICALLY WITH MR. MCPHERSON WHAT THE

22  PROFFERED RELEVANCE IS.

23         IT WILL BE THAT DESIGNATED PERSON WHO WILL THEN

24  PRESENT THE UNITED STATES IN ANY DISPUTES THAT ARISES WITH

25  RESPECT TO ENTITLEMENT TO DISCOVERY.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

98

1          MR. FORGE:  THERE ARE TWO CLARIFICATIONS.

2          FIRST OF ALL, DISCOVERY DISPUTES RELATING TO ACCESS

3    TO WITNESSES; RIGHT?

4          THE COURT:  WELL, AND ACCESS TO CLASSIFIED

5    INFORMATION.

6          MR. FORGE:  AND SECOND, I THINK IT'S COMPLETELY

7    IMPRACTICAL TO DO THIS IF THAT PERSON DOES NOT HAVE ACCESS TO

8    THE AGENTS.  THERE'S ABSOLUTELY NO WAY SOMEONE CAN GET UP TO

9    SPEED --

10         THE COURT:  THE PERSON WILL HAVE ACCESS TO THE

11   AGENTS, BUT I WOULD WANT THE DESIGNATED PERSON TO MAINTAIN THE

12   SAME POSTURE WITH RESPECT TO THE AGENTS THAT HE OR SHE IS

13   MAINTAINING WITH RESPECT TO THE ASSIGNED PROSECUTORS IN THE

14   CASE; THAT IS, NOT TO TELL THE AGENTS SPECIFICALLY WHY THEY

15   THINK THEY NEED IT, BUT RATHER TO DISCUSS MATTERS GENERALLY

16   WITH THEM IN ORDER TO INFORM HIMSELF OR HERSELF WHAT THE

17   POSITION THE UNITED STATES SHOULD BE IN EITHER ACQUIESCING OR

18   OPPOSING THE REQUEST FOR DISCOVERY.

19         MR. FORGE:  WHAT WE'LL DO IS IF THAT WINDS UP POSING

20   A PRACTICAL PROBLEM, THAT PERSON AND NOT US CAN COME BEFORE

21   YOUR HONOR WITH DEFENSE COUNSEL AND EXPLAIN "LOOK, I NEED TO

22   TALK TO SO-AND-SO."

23         THE COURT:  THAT'S WHAT I EXPECT.  I'M NOT TRYING TO

24   PREVENT THAT PERSON FROM HAVING ACCESS TO ANY INFORMATION THE

25   DESIGNATED PERSON NEEDS TO HAVE IN ORDER TO FORMULATE WHAT THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

POSITION OF THE UNITED STATES IS WITH RESPECT TO DISCOVERY.

WHAT I'M TRYING TO ACCOMPLISH HERE IS THAT THROUGH
INADVERTENCE THE PROSECUTORS WHO ARE PROSECUTING MR. FOGGO
DON'T GET AN ADVANTAGE AS TO WHERE HE'S GOING WITH HIS DEFENSE
OR HOLES IN THE GOVERNMENT'S CASE FROM HIS PERSPECTIVE.  I
THINK THAT CAN BE ACCOMPLISHED BY MAINTAINING A WALL OF
SEPARATION BETWEEN WHAT HE'S HEARING FROM MR. MAC DOUGALL AND
OTHER REPRESENTATIVES OF MR. FOGGO AND MR. WILKES AND KEEPING
THAT SECRET AND UNKNOWN BY THE PROSECUTORS AND THE CASE
AGENTS.

MR. FORGE:  LASTLY, TO THE EXTENT THAT -- I KNOW YOU
REFERENCED SECTIONS 5 AND 6 OF CIPA.  TO THE EXTENT THAT WE
HAVE INFORMATION THAT FALLS -- THAT WE WANT TO MAKE
DISCOVERABLE TO THE DEFENSE, THAT WE WANT PROTECTION UNDER
SECTION 4.  SO IT'S DISCOVERY THAT WE WANT TO GIVE TO THE
DEFENSE WITH SUBSTITUTIONS.  SO WE'RE ALREADY AWARE OF IT.
I'M ASSUMING THAT'S SOMETHING WE CAN HANDLE.

THE COURT:  I AGREE.  THERE'S NO PRIVACY INTEREST
THAT I'M AWARE OF THAT'S IMPLICATED BY THAT.

MR. MCPHERSON, SOMETHING ELSE?

MR. MCPHERSON:  YES, YOUR HONOR.

I BELIEVE YOU SAID THIS APPLIES NOT JUST TO
WITNESSES, BUT DOCUMENTS AS WELL, WHICH WOULD HAVE THE EFFECT
OF CUTTING OUT THE PRIMARY PROSECUTION TEAM FROM ANY CIPA
SECTION 4 PROCEEDINGS.  I THINK THAT'S A PROBLEM.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  I AGREE.  THAT'S A PROBLEM.  THAT'S NOT

2     MY INTENTION.  BUT THE CONTACT PERSON IN THE FIRST INSTANCE

3     WILL BE THIS DISCOVERY DESIGNEE.

4          MR. MCPHERSON:  FOR WITNESSES.

5          THE COURT:  FOR WITNESSES.

6          MR. MAC DOUGALL:  IT DOES RELATE TO DOCUMENTS THAT

7     MAY BE PROFFERED IN THE COURSE OF IN CAMERA PROCEEDINGS.

8          THE COURT:  THAT'S WHAT I WOULD NOT WANT THE PERSON

9     TO SHARE.  IF IT'S MADE IN THE COURSE OF A PROFFER BY

10    MR. MAC DOUGALL, I DON'T WANT THE PROSECUTOR TO GO BACK AND

11    WHISPER IN MR. FORGE'S EAR "TAKE A CLOSE LOOK AT THESE THINGS.

12    THE DEFENSE IS ONTO SOMETHING."

13         MR. MCPHERSON:  ANY DOCUMENT WHICH HAS ALREADY BEEN

14    PRODUCED TO THE DEFENSE, OUR UNDERSTANDING IS THE SAME.  THAT

15    WOULD NOT BE CONVEYED BACK TO THE MAIN PROSECUTION TEAM.  IF

16    THEIR DOCUMENT DEMAND HAS THE EFFECT OF REQUESTING ADDITIONAL

17    DOCUMENTS FROM THE GOVERNMENT, IT'S ENTIRELY PROPER FOR THE

18    MAIN PROSECUTION TEAM TO BE INVOLVED.

19         THE COURT:  I AGREE.

20         NOW, WHAT I WANT IS THE TWO PARTIES, GOVERNMENT AND

21    COUNSEL FOR MR. FOGGO, TO DRAFT AN APPROPRIATE ORDER THAT

22    MIMICS THE AGREEMENTS AND THE RULINGS THAT I'VE MADE FROM THE

23    BENCH TODAY SO WE HAVE A WRITTEN ORDER.  I WANT TO HAVE A

24    WRITTEN ORDER SO THAT THERE'S NO DISPUTE ABOUT WHAT WAS SAID.

25    WE DON'T HAVE TO RESORT TO THE TRANSCRIPT OR PARSING THE

PDF created with pdfFactory trial version www.pdffactory.com

101

1     TRANSCRIPT.

2              SO IF YOU WOULD COLLABORATE WITH ONE ANOTHER AND

3     PREPARE A WRITTEN ORDER.  AND I EXPECT THAT THAT ORDER WILL

4     ALSO BE IN EFFECT WITH RESPECT TO WHOEVER THE LEGAL

5     REPRESENTATIVES FOR MR. WILKES.  WE'LL FOLLOW THE SAME

6     PROCEDURE THERE.

7              ANYTHING ELSE?  WE'RE IN RECESS.

8              MR. FORGE:  THANK YOU, YOUR HONOR.

9              MR. HALPERN:  THANK YOU, YOUR HONOR.

10                        --O0O--

11

12

13

14              I HEREBY CERTIFY THAT THE TESTIMONY

15              ADDUCED IN THE FOREGOING MATTER IS

16              A TRUE RECORD OF SAID PROCEEDINGS.

17

18              S/EVA OEMICK                8-22-07

19              EVA OEMICK                  DATE
               OFFICIAL COURT REPORTER

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com