```
1                    UNITED STATES DISTRICT COURT
                    SOUTHERN DISTRICT OF CALIFORNIA
2
            HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING
3

4   UNITED STATES OF AMERICA,        )
                                     )
5                PLAINTIFF,          )  CASE NO. 07CR00329-LAB
                                     )
6          VS.                       )
                                     )  SAN DIEGO, CALIFORNIA
7                                    )  SEPTEMBER 4, 2007
    BRENT ROGER WILKES, (1)          )  2:00 P.M.
8                                    )
                                     )
9                DEFENDANTS.         )
    _____)
10
                         REPORTER'S TRANSCRIPT
11
                         STATUS CONFERENCE
12
    APPEARANCES:
13
    FOR THE GOVERNMENT:           KAREN P. HEWITT, U.S. ATTORNEY
14                                BY: PHILLIP LB HALPERN, ESQ.
                                      VALERIE CHU, ESQ.
15                                    JASON A. FORGE, ESQ.
                                  ASSISTANT U.S. ATTORNEYS
16                                880 FRONT STREET
                                  SAN DIEGO, CA 92101
17

18  FOR DEFENDANT WILKES:         FEDERAL DEFENDERS, INC.
                                  BY:  REUBEN C. CAHN, ESQ.
19                                     SHEREEN J. CHARLICK, ESQ.
                                  225 BROADWAY, STE. 900
20                                SAN DIEGO, CA. 92101

21
    FOR DEFENDANT FOGGO:          AKIN GUMP STRAUSS HAUER & FELD
22                                BY:  PAUL BUTLER, ESQ.
                                  1333 NEW HAMPSHIRE AVE., N.W.
23                                WASHINGTON, DC 20036-1564

24

25
```

2

1

    COURT REPORTER:               EVA OEMICK
2                                         OFFICIAL COURT REPORTER
                                        UNITED STATES COURTHOUSE
3                                         940 FRONT STREET, STE. 2190
                                        SAN DIEGO, CA 92101
4                                         TEL: (619) 615-3103

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

3

1    <u>SAN DIEGO, CALIFORNIA - TUESDAY, SEPTEMBER 4, 2007 - 2:00 P.M.</u>

2            THE CLERK:  CALLING NO. 14 ON THE CALENDAR, 07CR329,

3    UNITED STATES OF AMERICA VERSUS BRENT ROGER WILKES.

4            COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE

5    RECORD.

6            MR. CAHN:  REUBEN CAHN AND SHEREEN CHARLICK ON

7    BEHALF OF MR. WILKES, WHO'S PRESENT IN THE COURTROOM.

8            I'D ASK FOR MY ADMISSION PRO HAC VICE IN THIS CASE

9    AND WAIVE MY ADMISSION TO THE CALIFORNIA BAR.

10           THE COURT:  OF COURSE.  THE COURT GRANTS THAT

11   MOTION.

12           MS. CHU:  VALERIE CHU, JASON FORGE, AND PHIL HALPERN

13   FOR THE UNITED STATES.

14           THE COURT:  THIS WAS ON TODAY ON THE WILKES-FOGGO

15   MATTER TO CONFIRM APPOINTMENT OF FEDERAL DEFENDERS ON BEHALF

16   OF MR. WILKES.

17           MR. GERAGOS:  MARK GERAGOS IS HERE.  GOOD

18   AFTERNOON.

19           THE COURT:  GOOD AFTERNOON.

20           DO YOU HAVE ANYTHING ELSE TO SAY ABOUT SUBSTITUTION

21   OF COUNSEL ON THE WILKES-FOGGO CASE?

22           MR. GERAGOS:  I DO NOT.

23           THE COURT:  ANYTHING ELSE I SHOULD KNOW BEFORE I

24   CONFIRM YOUR APPOINTMENT?  WE HAD A TRIAL DATE SET.  I THINK

25   I'VE MADE VERY CLEAR THAT WE CAN'T HOLD THAT TRIAL DATE AT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

4

1   THIS POINT.

2          MR. CAHN:  OBVIOUSLY, WE'RE NOT EVEN IN A POSITION

3   TO BEGIN TO COMMENT ON WHAT AN APPROPRIATE TRIAL DATE WOULD

4   BE.  I WAS IN WASHINGTON, AND MS. CHARLICK WAS AWAY WHEN WE

5   WERE APPOINTED.  WE'VE BEGUN WORKING ON THE CASE, BUT WE

6   HAVEN'T EVEN RECEIVED DISCOVERY YET.  I DON'T THINK THERE'S

7   ANYTHING ELSE THE COURT NEEDS TO KNOW IN REGARD TO THE

8   APPOINTMENT OF COUNSEL.

9          THE COURT:  NO.  THE COURT WILL RECOGNIZE, THEN,

10  THAT MR. CAHN AND MS. CHARLICK ARE COUNSEL FOR MR. WILKES ON

11  THE WILKES-FOGGO MATTER.  AND MR. GERAGOS, WHO WAS PREVIOUSLY

12  RELIEVED, I CONFIRM THAT DECISION.

13         NOW, I THINK WE WERE ALSO ON FOR STATUS.  I GOT A

14  HUGE FAX FROM SOMEBODY AT THE DEPARTMENT OF JUSTICE, WHICH

15  CAME IN LATE FRIDAY.  I HAVEN'T BEEN ABLE TO GO THROUGH THAT

16  YET.  I DIDN'T BOTHER BECAUSE I DIDN'T THINK IT RELATED TO

17  SOMETHING TO BE HEARD TODAY.  IN FACT, I WAS TOLD IT DID NOT.

18         IS THAT RIGHT?

19         MS. CHU:  AT THE CLOSE OF THE LAST HEARING, THERE

20  WAS A REQUEST THAT THE PARTIES CONFER TO DRAFT A DRAFT OF A

21  MOTION TAKING INTO ACCOUNT ALL THE THINGS THAT YOUR HONOR HAD

22  ORDERED.  THE PARTIES ATTEMPTED TO DO SO.  THERE WERE AREAS OF

23  DISAGREEMENT.  AND THEREFORE, THE PARTIES SUBMITTED SEPARATELY

24  THEIR DRAFT ORDERS IN THIS CASE WITH SOME MOTIONS AS TO WHY --

25         THE COURT:  I'M NOT SURE I GOT ANYTHING FROM COUNSEL

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

5

1    FROM MR. FOGGO.

2              DID YOU SUBMIT ANYTHING, MR. DOBER OR MR. --

3              MR. BUTLER:  YES, YOUR HONOR.  PAUL BUTLER FOR

4    MR. DOBER.

5              YES, YOUR HONOR.  I BELIEVE ABOUT A WEEK AGO, WE

6    SUBMITTED PAPERS AND A PROPOSED ORDER THAT TRACKED THE

7    LANGUAGE FROM YOUR HONOR FROM THE LAST HEARING TO A POINT,

8    MORE OR LESS TAINTING TO ADDRESS THE ISSUE OF MR. FOGGO'S

9    ACCESS TO CERTAIN CIA WITNESSES.

10             THE GOVERNMENT FILED THEIR BRIEF ON FRIDAY, AND THEY

11   DISAGREE WITH THAT PROCEDURE NOW.  WE FILED ACTUALLY A REPLY

12   BRIEF LAST NIGHT.  WE'RE PREPARED TO ARGUE IT TODAY.  IF YOU

13   PREFER, WE CAN ALSO PUT IT OVER.

14             THE COURT:  I THINK THERE WERE 150 PAGES FAXED.  I

15   DON'T THINK THEY GOT HERE UNTIL --

16             MR. HALPERN:  I'M NOT SURE EXACTLY WHAT YOU'RE

17   TALKING ABOUT.

18             THE COURT:  190 PAGES, I'M TOLD.

19             WILL YOU GRAB THAT?

20             IT CAME IN, MR. HALPERN, LIKE AT 5:30 ON FRIDAY.

21             MR. HALPERN:  YOUR HONOR, I'VE BEEN TOLD THAT MY

22   PLEADINGS --

23             THE COURT:  IT WASN'T FROM YOU.  IT WAS FROM

24   SOMEBODY AT THE DEPARTMENT OF JUSTICE.

25             MR. HALPERN:  OURS IS ABOUT 17 PAGES.  SO I'M NOT

PDF created with pdfFactory trial version www.pdffactory.com

6

1    AWARE OF EXACTLY WHAT PLEADING YOU RECEIVED.

2              MR. BUTLER:  MAYBE -- WE SUBMITTED A FILING THROUGH

3    THE COURT SECURITY OFFICER WITH CERTAIN EX PARTE MATERIALS

4    THAT WE PROVIDED TO THE COURT IN SUPPORT OF OUR MOTION, AND

5    THAT MAY BE WHAT YOU RECEIVED IN ORDER.  TO MAKE SURE WE WERE

6    COMPLYING WITH THE CLASSIFICATION REQUIREMENTS, WE SUBMITTED

7    THOSE DOCUMENTS.

8              THE COURT:  WE'LL SEE.  AS I SAID, IT CAME IN SO

9    LATE I DIDN'T HAVE A CHANCE TO LOOK AT IT.  I WAS INFORMED IT

10   WAS FROM --

11             MR. HALPERN:  I MUST SAY, YOUR HONOR, IF THOSE ARE

12   WITH RESPECT TO MR. BUTLER, I'M A LITTLE SURPRISED BY THE FACT

13   THAT THERE WOULD HAVE BEEN ANOTHER EX PARTE FILING AFTER THE

14   LAST COURT HEARING WHERE -- I KNOW WE DIDN'T SETTLE

15   EVERYTHING.  THE PARTIES DID HAVE A DISAGREEMENT.  BUT I

16   THOUGHT ONE OF THE THINGS WE CLEARLY AGREED UPON, THAT THERE

17   WOULD BE NO MORE EX PARTE FILINGS WITHOUT NOTICE TO THE OTHER

18   SIDE.

19             MR. BUTLER:  IT WAS ON NOTICE IN CONNECTION WITH THE

20   BRIEF THAT WAS FILED, YOUR HONOR, WITH ADDITIONAL MATERIALS IN

21   SUPPORT OF THAT BRIEF, I BELIEVE, THAT WE FILED THROUGH THE

22   COURT SECURITY OFFICER, IF I'M CORRECT.

23             IS THAT RIGHT, MR. LONDERGAN?

24             MR. LONDERGAN:  THE DOJ -- IT'S PROBABLY BECAUSE IT

25   CAME OUT FROM THE DOJ FAX.

PDF created with pdfFactory trial version www.pdffactory.com

1          THE COURT:  THAT'S WHAT IT IS.  I WAS INFORMED,

2     MR. LONDERGAN AND MR. BUTLER, THAT THIS HAD ACTUALLY BEEN

3     TRANSMITTED FROM THE DEPARTMENT OF JUSTICE.  AND I SAID, "WHY

4     ARE YOU SENDING ME 190 PAGES OF STUFF AT THIS POINT?"  IT

5     TURNS OUT THAT THIS IS, IN FACT, A DOCUMENT THAT WAS

6     TRANSMITTED THROUGH YOU.  AND I THINK IT WAS THE COVERSHEET

7     THAT THREW THE CLERK OFF.

8          SO I HAVE IT NOW IN FRONT OF ME.  IT IS A RENEWED

9     MOTION TO COMPEL ACCESS TO SPECIALIZED COMPARTMENTED

10    INFORMATION FILED ON BEHALF OF MR. FOGGO BY MR. MAC DOUGALL,

11    MR. BUTLER, MR. PELLEGRINO, AND MR. DOBER.

12         THE PROBLEM IS I HAVEN'T HAD A CHANCE TO REVIEW THIS

13    YET.  I'M HAPPY TO TAKE A LOOK AT IT.

14         I'M ASSUMING THAT THE BULK OF THIS BEYOND THE MOTION

15    ITSELF ARE JUST EXHIBITS THAT I CAN QUICKLY PAGE THROUGH?

16         MR. BUTLER:  THEY ARE, YOUR HONOR.  THEY'RE

17    REFERENCED, I THINK, INDIRECTLY IN THE MOTION PAPERS.  THEY

18    ARE OUR INITIAL SUBMISSION TO THE COURT ON OUR -- WHY WE

19    BELIEVE THE ACCESS THAT WE'RE REQUESTING TO THESE WITNESSES IS

20    RELEVANT AND MATERIAL TO THE CASE.

21         AND AS YOUR HONOR RECALLS, AT THE LAST HEARING WHAT

22    YOUR HONOR LAID OUT IS -- THE PROCEDURE TO FOLLOW WAS TO

23    SUBMIT A PROPOSED ORDER LAYING OUT A TAINTING PROCEDURE, WHICH

24    WE FEEL IS ENTIRELY COMMONPLACE AND DONE IN MANY OTHER

25    INSTANCES IN ATTORNEY-CLIENT PRIVILEGE SITUATIONS.

PDF created with pdfFactory trial version www.pdffactory.com

8

1          SINCE THEN, WE'VE HAD DISCUSSIONS WITH THE

2     GOVERNMENT.  THEY NO LONGER AGREE TO THAT PROCEDURE.  THEY

3     WANT TO SET UP A SERIES OF -- THEY CAN CHARACTERIZE IT IN

4     THEIR ARGUMENTS, BUT A SERIES OF EX PARTE CONFERENCES BEFORE

5     YOUR HONOR WHERE THEY PRESENT AND WE PRESENT WHAT WE BELIEVE

6     WOULD TRACK EXACTLY WHAT YOUR HONOR WANTED TO PUT INTO PLACE.

7     AND THIS WOULD BE A SUBMISSION THAT WOULD GO TO THAT

8     SCREENED-OFF DOJ ATTORNEY TO SHOW WHY IT'S RELEVANT THAT WE --

9          THE COURT:  REFRESH MY MEMORY, BUT I DON'T WANT TO

10    GO BACKWARD ON THIS.  I THOUGHT I'D ALREADY RULED ON THIS AND

11    THERE WAS AN AGREED-UPON PROCEDURE.  MR. FORGE SAID OKAY.  AT

12    THE END OF THE DAY, WE WERE GOING TO GET SOMEBODY FROM THE

13    DEPARTMENT OF JUSTICE TO FIELD THESE THINGS AND TO RAISE

14    OBJECTIONS ON BEHALF OF THE UNITED STATES AND THAT THAT PERSON

15    WOULD NOT COMMUNICATE WITH THE ASSIGNED PROSECUTOR TO SAY,

16    "HERE'S WHAT THEY'RE ASKING FOR.  HERE'S WHY THEY THINK IT'S

17    RELEVANT."  I THOUGHT THAT THAT TOOK CARE OF THE PROBLEM OF

18    PROTECTING THE DEFENDANT'S 5TH AND 6TH AMENDMENT RIGHTS AND AT

19    THE SAME TIME FACILITATING THE CIPA SECTIONS 5 AND 6

20    PROCEDURE.

21         MR. HALPERN:  I COULDN'T DISAGREE MORE, YOUR HONOR,

22    WITH THE CHARACTERIZATION BY MR. BUTLER.

23         THE COURT:  WHICH ONE?

24         MR. HALPERN:  BY THE FACT THAT WE AGREED ON A

25    PROCEDURE.  I HAVE NOW READ THE COURT'S TRANSCRIPT OF 100 PLUS

PDF created with pdfFactory trial version www.pdffactory.com

9

1   PAGES.  I CAN SAY CLEARLY THERE IS NO AGREEMENT.  WE THOUGHT

2   THERE WAS PERHAPS AN AGREEMENT, AND WE CALLED TO THE DEFENSE

3   TO TRY TO SEE IF, IN FACT, THERE WAS A MEETING OF THE MINDS.

4   BECAUSE IT WAS ALWAYS THE GOVERNMENT'S POSITION IN THESE

5   HEARINGS THAT WE WERE ENTITLED TO KNOW WHAT THEY WERE LOOKING

6   FOR, JUST NOT WHY THEY WERE LOOKING FOR IT.

7            CLEARLY, IF YOU READ THE TRANSCRIPT, THE COURT GAVE

8   SEVERAL INDICATIONS THAT AT LEAST YOU WERE ONBOARD THINKING

9   THAT AT VARIOUS TIMES.  I QUOTE RIGHT FROM THE END, PAGE 100,

10  "IF THE DEFENDANTS' DEMAND" -- NOW, THIS IS A QUOTE FROM THE

11  COURT -- "HAS THE EFFECT OF REQUESTING ADDITIONAL DOCUMENTS

12  FROM THE GOVERNMENT, IT'S ENTIRELY PROPER FOR THE MAIN

13  PROSECUTION TEAM TO BE INVOLVED," BECAUSE THERE WAS A

14  RECOGNITION BY THE COURT THAT IF THIS WAS A DISCOVERY DISPUTE,

15  WE NEEDED TO KNOW WHAT THEY WERE ASKING.  IF WE DIDN'T KNOW

16  WHAT THEY WERE ASKING, WE WERE IN NO POSITION TO RESPOND.

17            THE TAINTING, TO THE EXTENT WE UNDERSTOOD THAT THE

18  COURT WAS GOING TO PROPOSE IT, WOULD BE IF, IN FACT, THERE HAD

19  TO BE A DEBATE AS TO WHY THIS WAS NEEDED, WHAT THE RELEVANCE

20  WAS.  THE GOVERNMENT HAS NEVER AGREED NOR IS THERE ONE SINGLE

21  CASE THAT WOULD EVER SUPPORT THE FACT THAT THERE CAN BE A

22  DISCOVERY REQUEST MADE UPON THE GOVERNMENT, BUT THE GOVERNMENT

23  DOESN'T LEARN WHAT THAT REQUEST IS.

24            THE COURT:  MR. BUTLER, LET ME STOP YOU.  I THINK

25  HE'S CORRECT ON THAT, BECAUSE I CLARIFIED THAT WITH

PDF created with pdfFactory trial version www.pdffactory.com

1    MR. MAC DOUGALL AT THE END.  I SAID, "LOOK, THE STANDARD

2    REQUEST FOR ADDITIONAL DOCUMENTS WOULD GO TO THESE ASSIGNED

3    PROSECUTORS."

4              HERE'S WHAT THE CONCERN IS:  THE BOTTOM LINE CONCERN

5    IS THEY DON'T GET TO KNOW WHY YOU THINK THIS IS RELEVANT.

6    THEY DON'T GET TO KNOW WHAT YOUR THEORIES OF DEFENSE ARE OR

7    WHAT THEORIES YOU'RE EXPLORING.

8              AND I THOUGHT THE WAY THAT WE WOULD RESOLVE THAT

9    ISSUE WAS TO SAY, "OKAY.  IF YOU MAKE THE REQUEST AND SOMEBODY

10   SAYS 'I DISAGREE WITH IT,' THE CIA SAYS 'I DISAGREE WITH IT,'

11   FOR EXAMPLE, THEN WE HAVE A LAWYER ALSO ON THIS TEAM

12   REPRESENTING THE UNITED STATES WHOSE SOLE RESPONSIBILITY WOULD

13   BE TO EVALUATE THE BASIS FOR THE REASON AND THEN ADVISE THE

14   CIA AND SAY, 'I THINK THEY'RE ENTITLED TO IT IF THIS IS THEIR

15   THEORY.'"  I THINK LEGALLY THAT'S CORRECT.  AND THAT PERSON

16   DESIGNATED AT THE DEPARTMENT OF JUSTICE WOULD HAVE NO CONTACT

17   AND WOULD NOT COMMUNICATE TO THESE PROSECUTORS WHAT THE BASIS

18   WAS.

19             BUT I THINK MR. HALPERN IS QUITE RIGHT, AND THE

20   EXCERPT HE READ IS APROPOS.  THIS CAME UP AT THE END OF THE

21   HEARING.  AND I SAID, "LOOK, AS TO OTHER REQUESTS, BULK

22   DOCUMENTS AND THINGS LIKE THAT, THAT WILL GO IN THE ORDINARY

23   COURSE.

24             THIS SPECIAL ACCOMMODATION, WHICH AT FIRST THEY

25   GROUCHED ABOUT -- MR. FORGE CAME AROUND TO AGREEING WITH IT,

PDF created with pdfFactory trial version www.pdffactory.com

1   BUT AT FIRST THEY GROUCHED ABOUT IT -- THIS SPECIAL

2   ACCOMMODATION WAS MADE SO THAT I COULD SORT OF TAKE THE EDGE

3   AND THE TENSION OFF OF WHAT I PERCEIVED TO BE A 5TH AMENDMENT

4   AND 6TH AMENDMENT PROBLEM WITH YOU HAVING TO REVEAL YOUR

5   THEORIES OF DEFENSE TO THEM IN ORDER TO GET DISCOVERY.

6           MR. BUTLER:  AND I THINK THAT'S WHAT OUR PROPOSED

7   ORDER TRACKED.  HERE, I THINK, IS THE DIFFERENCE:  WE HAVEN'T

8   MADE A RULE 16 DOCUMENT REQUEST YET.  THEY KEEP TRYING TO

9   PIGEONHOLE THIS INTO THE CIPA PROCESS RIGHT NOW.  IT'S CLEAR

10  THAT CIPA SECTION 4, RULE 16 DEALS WITH DOCUMENTS.  WE ASK FOR

11  DOCUMENTS.  THEY SAY, "WE DON'T WANT TO GIVE THEM TO YOU.

12  WE'LL EITHER REDACT THEM OR WE'LL REFUSE TO GIVE THEM TO YOU,

13  PUT SUBSTITUTIONS IN."

14          WE ARE SIMPLY ASKING TO DO THE MOST FUNDAMENTAL

15  THING THAT A DEFENSE LAWYER DOES IN THE COURSE OF TRYING TO

16  INVESTIGATE THE CASE AND PUT A DEFENSE TOGETHER, AND THAT IS

17  TO TALK TO WITNESSES.  WE HAVE A HANDFUL, MAYBE MORE, OF CIA

18  WITNESSES WHO HAVE SAID THAT THEY'RE WILLING TO SIT DOWN AND

19  TALK TO US.

20          WE BELIEVE THAT SOME OF THE TOPICS THAT ARE MATERIAL

21  TO THE DEFENSE -- AND THAT'S WHAT OUR SUBMISSION IS, IS OUR

22  FIRST SUBMISSION TO THE COURT TO SHOW WHY THIS IS NOT A

23  FISHING EXPEDITION.  YOU'LL SEE IN THE GOVERNMENT PAPERS --

24  THIS IS NOT UNRELATED CONDUCT.  THESE ARE PROGRAMS THAT ARE

25  DIRECTLY RELATED TO THE CONTRACT THAT'S AT THE HEART OF THIS

PDF created with pdfFactory trial version www.pdffactory.com

1    INDICTMENT.

2              THE DEFENDANT HAS A 5TH AND 6TH AMENDMENT RIGHT TO

3    SIT DOWN AND TALK TO WITNESSES WITH INFORMATION THAT'S

4    MATERIAL TO THE DEFENSE.  THE CIA SAYS, "YOU CAN'T DO THAT.

5    THEY'RE BLOCKING US."  THEY SAID UNDER THE TOUHY REGULATIONS

6    AND UNDER THEIR VIEW OF WHAT THEY'RE REQUIRED TO DO, THAT THEY

7    ARE NOT GOING TO READ US INTO THIS COMPARTMENT THAT THE

8    PROGRAM COVERS OR TO ALLOW THE WITNESSES TO OTHERWISE SPEAK

9    WITH US.

10             THE COURT:  THIS IS A SITUATION THAT I HOPED THAT

11   THE INDEPENDENT PERSON FROM THE DEPARTMENT WOULD BE INVOLVED

12   WITH, MR. HALPERN, TO SAY, "OKAY.  TELL ME WHAT YOUR THEORY IS

13   AND WHY YOU THINK YOU NEED TO TALK TO THESE WITNESSES.  I'M

14   FORBIDDEN FROM TALKING TO THE CASE PROSECUTORS.  SO I CAN'T

15   GIVE ANY INFORMATION TO THEM THAT MIGHT COMPROMISE THE DEFENSE

16   OR ITS THEORIES."  THAT'S DIFFERENT FROM PRODUCTION OF

17   DOCUMENTS.

18             MR. HALPERN:  LET ME ADDRESS THAT.  BUT BEFORE WE

19   GET THERE, WE'RE OFF TRACK.  WE ARE WAY FAR FROM WHERE WE

20   SHOULD BE.

21             POINT NO. 1, MR. BUTLER SAYS THIS IS NOT ABOUT A

22   DISCOVERY REQUEST.  IT'S NOT RULE 16 DISCOVERY.  WELL, IF IT

23   ISN'T THAT, I WANT TO SIT DOWN.  THAT'S THE END OF THIS.

24   BECAUSE IF IT'S A REQUEST OF THE CIA UNDER TOUHY, WE KNOW WHAT

25   THE ANSWER IS.  THEY CAN GO LITIGATE IT IN VIRGINIA IF THEY'RE

PDF created with pdfFactory trial version www.pdffactory.com

13

1   ARBITRARY AND CAPRICIOUS.

2           IF THEY WANT TO MAKE A DISCOVERY REQUEST -- AND IF

3   YOU READ THEIR BRIEF, THEY TIE THEMSELVES IN KNOTS, IN MY

4   OPINION, TO MISLEAD THE COURT AS TO WHAT THEY'RE DOING IN

5   NEITHER FISH NOR FOWL.  BECAUSE IF IT'S A DISCOVERY REQUEST,

6   WE CAN DEAL WITH IT AS A DISCOVERY REQUEST.  BUT THEY DON'T

7   WANT TO MAKE -- THEY'RE NOT TELLING US WHAT THEY WANT.  AND

8   THAT'S THE PROBLEM.

9           AND I MIGHT ALSO SAY IF IT IS A DISCOVERY REQUEST

10  AND YOU WANT TO LOOK AT THE COURTS AND WHAT THEY SAY, THEY

11  CLEARLY MAKE NO EXCEPTION FOR THIS AREA OF PRE-DISCOVERY.

12  THIS IS ALL ABOUT GETTING DISCOVERY, AND IT'S ALL ABOUT GRAY

13  MAIL.

14          LOOKING AT THE EXACT WORDS OF WHAT MR. MAC DOUGALL

15  SAID, YOUR HONOR, WHEN HE WAS HERE, HE ASKED THE COURT.  AND

16  THE COURT SAID, "WHAT SHOULD THE RELIEF BE?"  HIS COMMENT TO

17  THE COURT WAS HE WANTED YOU TO ORDER THE CIA TO GIVE THE

18  DEFENSE ACCESS TO CLASSIFIED INFORMATION, TO WHICH THE CIA WAS

19  OBJECTING.  IF THAT'S NOT GRAY MAIL, THERE IS NO SUCH THING AS

20  GRAY MAIL.

21          THE COURT:  I DISAGREE WITH YOU THAT WE'RE OFF TRACK

22  HERE.  THE CONTEXT OF THIS MOTION IS THEY WANT ACCESS TO SOME

23  WITNESSES.  AND THE CIA IS SAYING, "NO, WE'RE NOT GOING TO

24  PERMIT YOU TO TALK TO THEM EVEN THOUGH THE WITNESSES HAVE

25  INDICATED THAT THEY'RE WILLING TO TALK."

PDF created with pdfFactory trial version www.pdffactory.com

14

1          THE CIA, I THINK, NEEDS TO HAVE SOMEBODY FROM THE

2     PROSECUTION INFORM THEM THAT "LOOK, WE THINK THIS IS

3     LEGITIMATE.  THIS GOES TO A THEORY OF DEFENSE.  WE THINK IT'S

4     LIKELY THAT THE COURT WOULD ORDER YOU TO DO THIS, SO GO AHEAD

5     AND DO IT."

6          MR. HALPERN:  THE CIA SAYS, "YOU DON'T HAVE A RIGHT

7     TO THE INFORMATION YOU WANT."  THAT'S WHAT THEY SAY.  THEY

8     SAID, "YOU CAN HAVE ACCESS TO WITNESSES.  THIS ISN'T ABOUT

9     ACCESS TO WITNESSES.  IT'S ABOUT ACCESS TO INFORMATION.  AND

10    THE CIA SAYS, "NO, YOU CAN'T HAVE THAT."  AND THE DEFENSE

11    UNDERSTANDS NOW UNDER THIS LAW THEY HAVE NO RIGHT TO IT UNLESS

12    THEY COME BACK TO DISCOVERY.  IF THEY WANT TO MAKE THAT

13    SHOWING, THEN EVERY CASE SAYS YOU TELL THE GOVERNMENT WHAT YOU

14    WANT.  WE DON'T CARE.

15         THE COURT:  I'VE IMPOSED A SLIGHTLY DIFFERENT

16    PROCEDURE HERE.  WHEN WE GET TO THE POINT OF TELLING THE

17    GOVERNMENT WHAT YOU WANT, I'VE SAID THAT THAT SHOWING WILL BE

18    MADE THROUGH AN INDEPENDENT LAWYER WHO'S NOT GOING TO DISCUSS

19    THIS WITH THE PROSECUTORS BECAUSE THERE'S TENSION THAT I

20    FORESEE WITH THEM HAVING TO SAY, "HERE'S WHY WE WANT TO TALK

21    TO THIS GUY."  THAT COMPROMISES THE DEFENDANTS' 5TH AMENDMENT

22    AND 6TH AMENDMENT RIGHTS.

23         THE SIMPLE SOLUTION, MR. HALPERN, IS TO SAY, "OKAY.

24    WE'VE GOT ANOTHER GUY WHO'S FULLY VERSED IN RULE 16 AND CIPA."

25    AND YOU'LL MAKE THE APPROPRIATE DECISIONS.  AND IF HE

PDF created with pdfFactory trial version www.pdffactory.com

15

1    DISAGREES, THEN HE'LL COME TO THE COURT WITH MR. BUTLER AND

2    ARGUE THAT THIS IS NOT REASONABLE.  THIS ISN'T REASONABLY

3    RELATED.  THIS IS GRAY MAILING.  BUT THE PROSECUTORS WHO ARE

4    ACTUALLY GOING TO PROSECUTE THIS CASE WON'T KNOW ABOUT WHAT

5    THE THEORY IS.  THEY WON'T HAVE THAT JUMP ON THE DEFENSE.

6           MR. HALPERN:  YOU'RE PROBABLY GOING TO QUESTION MY

7    STATEMENT, AND I DON'T SAY THIS LIGHTLY.  YOU ARE NOW GIVING

8    THE GOVERNMENT ACTUALLY MORE THAN WE ARE ASKING FOR.  THE

9    GOVERNMENT BELIEVES ALL THEY REALLY HAVE TO TELL US IS WHAT

10   THEY WANT; WHATEVER THE COMPARTMENTS ARE, WHATEVER THE

11   INFORMATION IN THE COMPARTMENTS.  THEY DON'T HAVE TO TELL US

12   WHY.

13          FROM WHAT I UNDERSTAND THE COURT IS SAYING, AND IT

14   DID SO REACHING IN A VERY PRAGMATIC WAY, "OKAY.  YOU'RE RIGHT.

15   YOU HAVE TO TELL THEM 'WELL, WE HAVEN'T SEEN THAT YET IN

16   DISCOVERY.'"  BUT ASSUMING I GET IT, THEY HAVE TO TELL US

17   WHAT.  BUT AS TO THE WHY, THAT GOES TO A TAINT TEAM.

18          WHAT I'M ABOUT TO TELL YOU IS WE'RE GOING TO DECLINE

19   THAT.  WE'RE HAPPY TO BE LITIGATING WITHOUT THE TAINT TEAM AS

20   LONG AS THEY TELL US WHY.  AND THE REASON I'M SAYING THAT IS

21   YOU'RE SAYING, "YOU'RE GIVING AWAY SOMETHING.  YOU DON'T HAVE

22   TO GIVE IT AWAY."  THAT POSITION IS ODD, TO SAY THE LEAST.

23          THE REASON I'M TAKING THAT POSITION IS AFTER I

24   LOOKED AT THE CASE LAW, I CAN TELL YOU, YOUR HONOR, THAT THERE

25   ARE CIPA CASES SUPPORTING WHAT I'M SAYING.  I HAVEN'T SEEN ANY

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

16

1    CIPA CASES SUGGESTING THAT A TAINT TEAM IS APPROPRIATE.  I'VE

2    SPOKEN TO PEOPLE ALL THE WAY UP TO THE DEPARTMENT OF JUSTICE,

3    THE NATIONAL SECURITY DIVISION.  THEY BELIEVE SETTING UP A

4    TAINT TEAM HAS A NUMBER OF PROBLEMS THAT PERHAPS WE CAN

5    OVERCOME.  PERHAPS WE CAN'T.  CAST ISSUES THERE, SUPERVISORY

6    ISSUES, A NUMBER OF ISSUES WHICH THEY BELIEVE THEY WOULD NOT

7    WANT TO DRAFT IN HERE.

8           SO AS FAR AS I'M SAYING WITH THE GOVERNMENT, I'M

9    ASKING ACTUALLY FOR LESS.  THIS IS WHAT I'VE TRIED TO GET THE

10   DEFENSE TO AGREE TO.  THEY WOULDN'T AGREE TO THIS.  THEY

11   WOULDN'T AGREE TO JUST TELLING US WHAT, WHICH IS WHY I BELIEVE

12   THIS IS SIMPLY ANOTHER WAY TO GRAY MAIL THE GOVERNMENT, YOUR

13   HONOR, BECAUSE CLEARLY, I'M ASKING FOR LESS THAN I THINK THE

14   COURT WAS EVEN WILLING TO AGREE TO GIVE US, AND THEY WOULDN'T

15   DO IT.

16          IF THE COURT SAYS "HEY, YOU'RE GETTING MORE,

17   MR. HALPERN.  YOU SHOULD LIKE IT," I CAN TRY AGAIN.  BUT THE

18   FACT OF THE MATTER IS WE'RE HAPPY SIMPLY KNOWING THE WHAT.

19   AND IF IT'S A QUESTION OF WHY, WE'RE HAPPY WITH THE COURT

20   GOING TO YOU.  WE CAN GO TO YOU EX PARTE IF IT'S NECESSARY AND

21   SAY WHY IT'S NOT RELEVANT.  BUT WE NEED TO KNOW WHAT IT IS.

22   WE NEED TO HAVE A DISCOVERY REQUEST, AND WE CAN HANDLE IT

23   THEN.  BUT THAT'S THE ONLY WAY WE CAN HANDLE IT.

24          MR. BUTLER:  YOUR HONOR, WITH ALL DUE RESPECT, THE

25   GOVERNMENT'S ISSUES, VAGUE AS THEY ARE, CAST OR SUPERVISORY,

PDF created with pdfFactory trial version www.pdffactory.com

17

1    WHATEVER THEY MAY BE, DO NOT SUPERSEDE THE DEFENDANTS' 5TH AND

2    6TH AMENDMENT RIGHTS TO INTERVIEW WITNESSES.

3          MR. HALPERN SAYS, "I'VE SEEN NO CASES."  THERE ARE

4    CASES.  WE'VE CITED SOME CASES, SUDADAWA (PHONETIC) AND

5    OTHERS, WHERE THE GOVERNMENT HAS DONE SOMETHING TO BLOCK THE

6    DEFENDANTS' ACCESS TO INTERVIEWING WITNESSES FOR INFORMATION

7    THAT'S MATERIAL TO THE DEFENSE.  IT COMES UP SOMETIMES WHEN A

8    WITNESS IS DEPORTED IN THE MIDDLE OF A CASE AND THE DEFENSE

9    DOESN'T HAVE A CHANCE TO TALK TO THEM.

10          ALL THESE ISSUES THAT THE GOVERNMENT HAS, I DON'T

11   UNDERSTAND THEM.  A TAINT TEAM IS PUT IN PLACE IN MANY

12   INSTANCES.  I JUST WORKED WITH ONE.  THE GOVERNMENT EXECUTED A

13   SEARCH WARRANT AND TOOK ATTORNEY-CLIENT PRIVILEGED DOCUMENTS.

14   THEY'RE IN BOXES.  THEY'RE CLEARLY MARKED.  THE PROSECUTORS

15   REALIZED "I DON'T WANT TO LOOK AT THAT INFORMATION."  THEY SET

16   UP A TAINT TEAM RELEVANT TO THAT INFORMATION.  WHETHER THE

17   PARTS LAW EXCEPTION APPLIED WAS LITIGATED WITH THE TAINT TEAM

18   ATTORNEY.

19          I HAVEN'T HEARD ANYTHING FROM THE GOVERNMENT NOW OR

20   IN THEIR PAPERS THAT THEY SUBMITTED THAT CLEARLY ARTICULATES

21   WHAT THE INTEREST IS THAT SUPERSEDES THE DEFENDANTS' RIGHT TO

22   DO THE MOST BASIC THING, AND THAT IS TO SIT DOWN WITH

23   WITNESSES THAT HAVE DIRECT INFORMATION ON THE CONTRACT THAT

24   THEY INDICTED.  THIS IS NOT GRAY MAIL.  WE'RE NOT ASKING FOR

25   THE CIA PROGRAM THAT HAS NOTHING TO DO WITH THE INDICTMENT.

PDF created with pdfFactory trial version www.pdffactory.com

18

1    WE WANT TO KNOW INFORMATION FROM WITNESSES THAT ARE INDICTED

2    ON A SPECIFIC COUNT OF THE INDICTMENT.

3            THE COURT:  MR. BUTLER, WHAT ABOUT THE POINT

4    MR. HALPERN MAKES WHERE HE SAYS, "LOOK, JUST TELL US WHAT

5    INFORMATION IT IS.  NOT WHY YOU THINK IT'S RELEVANT, BUT WHAT

6    THE INFORMATION IS THAT YOU'RE SEEKING TO ELICIT.  AND THEN

7    WE'LL MAKE A DECISION."  THAT SOUNDS TO ME LIKE TANTAMOUNT

8    WITH "TELL US WHAT DOCUMENTS YOU WANT, AND WE'LL EITHER TURN

9    THEM OVER OR WE'LL RAISE AN OBJECTION."

10           MR. BUTLER:  THAT DOESN'T APPLY TO THE DEFENDANTS'

11   RIGHT TO INTERVIEW WITNESSES.  THESE WITNESSES ARE IN -- THE

12   WITNESSES ARE NOT TECHNICALLY IN ANYBODY'S CONTROL.  THESE ARE

13   GOVERNMENT EMPLOYEES.  FOR US TO TIP OUR HAND, SO TO SPEAK,

14   ABOUT OUR THEORY OF THE CASE BY GOING TO THE TRIAL TEAM AND

15   SAYING "THIS IS WHAT WE WANT TO TALK TO OUR WITNESSES ABOUT,

16   WITNESSES WHO HAVE AGREED TO SIT DOWN AND TALK TO US," THERE'S

17   NO OTHER EXAMPLE THAT I CAN THINK OF WHERE WE'VE SAID "WE WANT

18   TO TALK TO THIS WITNESS WHO'S VOLUNTARILY AGREED TO MEET WITH

19   US."  AND WE HAVE TO TELL YOU WHAT IT IS WE WANT TO TALK TO

20   THEM ABOUT.

21           MR. HALPERN:  YOUR HONOR, THIS IS -- WITH ALL DUE

22   RESPECT TO MR. BUTLER, HE'S AN ADVOCATE.  HE'S DOING A GOOD

23   JOB FOR HIS CLIENT.  I THINK HE'S TRYING TO MISLEAD THE COURT.

24   WE TRIED TO ADDRESS THIS --

25           THE COURT:  I DON'T THINK ANYBODY'S TRYING TO

PDF created with pdfFactory trial version www.pdffactory.com

19

1    MISLEAD ME.  I THINK THERE'S DIFFERENCES OF OPINION ABOUT WHAT

2    THE PROCEDURE OUGHT TO BE.  I DON'T FEEL LIKE I'M BEING MISLED

3    OR ANYBODY IS ATTEMPTING TO MISLEAD ME ON EITHER SIDE.

4         MR. HALPERN:  WELL, LET ME PUT IT THIS WAY:  IF THAT

5    WAS REALLY HIS INTEREST, THE GOVERNMENT AGREED LONG AGO TO A

6    QUIET PERIOD.  WE SAID, "WELL, IF YOU'RE JUST AFRAID OF US

7    GETTING TO THESE PEOPLE, WE'LL JUST TAKE A COUPLE WEEKS."  BUT

8    THAT'S NOT WHAT IT'S ABOUT.  IT'S ABOUT THE INFORMATION.

9    THAT'S WHAT THEY WANT.  WE'RE DEALING WITH CLASSIFIED

10   INFORMATION.  IT'S WHY CIPA HAS CONTROL.

11        IF YOU LOOK AT IT, YOUR HONOR, THIS IS SIMPLY A

12   MATTER OF DEALING WITH ANOTHER FORM OF GOVERNMENT PROPERTY.

13   WHETHER YOU CALL IT INFORMATION THAT'S ON A DOCUMENT OR

14   INFORMATION THAT A PERSON HAS IN THEIR HEAD OR WHETHER IT'S

15   INFORMATION THAT'S IN A COMPUTER AS A HARD DRIVE, THE CASE

16   LAW -- AND THERE IS NUMEROUS CASE LAW, WHICH I KNOW MR. BUTLER

17   IS AWARE OF IN HANDLING THESE TYPES OF CASES THAT MAKE IT

18   CLEAR THAT CLASSIFIED INFORMATION IS PROPERTY.  IT'S PROPERTY

19   OF THE GOVERNMENT.  THAT'S WHAT THEY'RE LOOKING FOR.

20        THE COURT:  MR. HALPERN, NONE OF THAT IS IN DISPUTE.

21   HERE'S WHAT THE NARROW DISPUTE IS:  WHAT I GLEAN FROM THE

22   ARGUMENT SO FAR IS THAT IN MAKING A REQUEST OF WHAT WE WANT, I

23   CAN'T MAKE A CLEAR DISTINCTION BETWEEN WHAT THEY WANT AND WHY

24   THEY WANT IT.  THOSE TWO THINGS SEEM TO BLEND TOGETHER A

25   LITTLE BIT.

PDF created with pdfFactory trial version www.pdffactory.com

20

1          AND TO THE EXTENT THAT THEY HAVE TO ASK FOR THINGS

2     WHERE IT'S GOING TO BE READILY APPARENT WHY THEY'RE ASKING FOR

3     IT JUST BY THE REQUEST FOR PRODUCTION, I'VE SET UP A PROCEDURE

4     THAT IS FAITHFUL TO CIPA.  I'M NOT ASKING THAT ANYTHING NOT

5     GOING AROUND CIPA.  I'M JUST SAYING BRING SOMEBODY ELSE IN

6     WHO'S FAMILIAR WITH CIPA AND CAN EVALUATE THE REQUESTS AND

7     MAKE THE COMMON SENSE DECISION "DOES THIS SEEM RIGHT OR DOES

8     THIS SEEM LIKE WE'RE TRYING TO BE HIGH-JACKED HERE?  DOES IT

9     SEEM LIKE THEY'RE ASKING THIS JUST TO PUT US IN A POSITION

10    WHERE WE'RE GOING TO HAVE TO SAY NO AND MAYBE FACE GETTING A

11    COUNT DISMISSED OR NOT BE ABLE TO PROCEED ON SOMETHING BECAUSE

12    WE'RE NOT GOING TO GIVE THEM INFORMATION THAT THEY'RE ENTITLED

13    TO?"

14          AND THAT PERSON IS SEPARATE AND APART FROM THE

15    PROSECUTORS WHO ARE PROSECUTING THE CASE.  THAT HARMONIZES THE

16    CONCERNS I HAVE.  IT'S FAITHFUL TO CIPA, AND AT THE SAME TIME

17    IT PROTECTS THIS FELLOW.

18          WHAT'S WRONG WITH THAT?

19          MR. HALPERN:  STARTING FROM THE OUTSET, YOUR HONOR,

20    THE PREMISE I HAVE A PROBLEM WITH.  IT'S NOT NECESSARILY THE

21    PREMISE OF YOUR PROCEDURE.  IT'S THE PREMISE WITH MR. BUTLER

22    SAYING, "LOOK, JUDGE, ALL WE WANT ARE THINGS THAT ARE OUTLINED

23    IN THE INDICTMENT.  THE PROGRAMS ARE ONES THAT ARE OUTLINED IN

24    THE FOUR CORNERS OF THE INDICTMENT."

25          IF THAT IS TRUE, WHY WON'T YOU JUST TELL US?  WE

PDF created with pdfFactory trial version www.pdffactory.com

1    ALREADY KNOW IT.  IS THAT GIVING AWAY SOMETHING?  IT'S THE

2    VERY PROGRAMS IN THE INDICTMENT.

3            THE COURT:  THE PROBLEM COMES WITH THE LEVEL OF

4    SPECIFICITY.  THE CIA IS PROBABLY SAYING, "YOU'VE GOT TO HUM A

5    FEW MORE BARS BEFORE WE'RE GOING TO LET YOU TALK TO THESE

6    PEOPLE OR BEFORE WE'RE GOING TO AGREE TO LET THEM TALK TO YOU

7    ABOUT THUS AND SO."  AND THE PROBLEM IS IF HE'S ANY MORE

8    SPECIFIC, THEN HE GIVES UP WHAT THE THEORY OF DEFENSE IS.  AND

9    YOU'RE NOT ENTITLED TO KNOW THAT.

10            MR. HALPERN:  YOUR HONOR, IF YOU THINK HE'S BEING

11   NOT SPECIFIC ENOUGH, WE CAN ADDRESS THAT AT THE RIGHT TIME.

12   THE PROPER WAY TO DO THIS, THE PROPER WAY TO DO EVERY

13   DISCOVERY REQUEST I'VE EVER SEEN IS THEY SERVE A REQUEST ON

14   THE GOVERNMENT, AND WE SAY "YES" OR WE SAY "NO."  IF WE SAY

15   "NO" AND THEY THINK THEY NEED TO GO TO THE COURT, THEY CAN GO

16   TO THE COURT AND BE MORE SPECIFIC THERE IN TERMS OF

17   EXPLORING --

18            THE COURT:  HERE'S WHAT YOU'RE NOT ADDRESSING:  HE

19   SAYS EVEN IN MAKING THE REQUEST TO YOU, "IF I TELL YOU,

20   MR. HALPERN, I WANT TO TALK TO WITNESSES A, B, AND C ABOUT

21   THESE THINGS," HE SAYS, "JUST IN MAKING THAT REQUEST, YOU'RE

22   GOING TO KNOW WHY WE THINK THAT THEY'RE RELEVANT."

23            WHAT IF HE SAYS TO YOU "I WANT TO TALK TO -- WE

24   BELIEVE THIS PERSON MADE A STATEMENT THAT WAS EXCULPATORY ON

25   OUR CLIENT ON AN EARLIER OCCASION.  WE WANT TO TALK TO HIM

PDF created with pdfFactory trial version www.pdffactory.com

1    ABOUT THAT"?

2              AND YOU SAY, "I DIDN'T KNOW ABOUT THAT.  WE'VE

3    INTERVIEWED THIS PERSON.  HE NEVER MENTIONED ANYTHING ABOUT

4    THAT.  NOW I'M GOING TO DECIDE THAT I'M EITHER GOING TO GO

5    BACK AND REINTERVIEW HIM OR STRAIGHTEN HIM OUT OR I'M NOT

6    USING THIS GUY," WHICH GIVES YOU AN ADVANTAGE, OF COURSE, THAT

7    YOU WOULDN'T OTHERWISE HAVE IN THE ORDINARY CASE.

8              MR. HALPERN:  HERE'S MY PROBLEM, AND IT'S A SLIPPERY

9    SLOPE:  AGAIN, YOU'RE NOW MOVING AWAY.  IF YOU ARE NOW

10   EMBRACING THE POINT THAT THE DEFENSE HAS BEEN TRYING TO

11   PREVAIL ON AS TO WE'RE NOT ENTITLED TO KNOW WHAT -- AND I'M

12   TALKING THE PROSECUTION TEAM NOW -- IF YOU'RE SAYING WE'RE NOT

13   ENTITLED TO KNOW WHAT THEY WANT AS WELL AS WHY THEY WANT IT, I

14   CAN TELL YOU THAT NO CASE HAS EVER EMBRACED THAT.

15             CASES -- AND I CAN GIVE THE COURT CITATIONS, CASES

16   THEY'VE CITED.  THEY'VE CITED THE POINDEXTER CASE.  I WAS

17   AMAZED, YOUR HONOR, BECAUSE I READ THE POINDEXTER CASE.  YOU

18   KNOW WHAT IT SAYS?  IT SAYS IF THEY WANT SOMETHING, THEY TELL

19   THE GOVERNMENT WHAT THEY WANT, AND THEY CAN GO EX PARTE AS TO

20   THE WHY.  IT'S IN FOOTNOTE 16 WHAT THEY CITED.

21             THE COURT:  MR. HALPERN, IT'S SIMPLE WHEN WE'RE

22   TALKING ABOUT DOCUMENTS.  IT'S A SIMPLE DISTINCTION TO MAKE.

23   "WE WANT X DOCUMENTS.  WE'RE NOT GOING TO TELL YOU WHY.  WE

24   JUST WANT TO SEE THEM."  IT'S GETS DICIER WHEN YOU'RE TALKING

25   ABOUT INTERVIEWING WITNESSES.  AND THE CIA IS INSISTING ON

PDF created with pdfFactory trial version www.pdffactory.com

23

1    SOME LEVEL OF SPECIFICITY AS TO WHAT YOU'RE GOING TO ASK THE

2    WITNESSES.

3         I'M TELLING YOU IN ANSWERING THAT, IT'S NOT AS

4    SIMPLE AS SAYING, "I WANT A, B, AND C."  IT GIVES UP A LITTLE

5    BIT OF THE WHY.

6         MR. HALPERN:  TO BE HONEST, IT REALLY IS.  I SAY

7    THAT WITH ALL DUE RESPECT TO THE COURT.  BECAUSE IF WE LOOK AT

8    THEIR SPECIFIC REQUEST, I'M NOT SAYING WE'LL NEVER REACH THE

9    POINT YOU ARE.  BUT LET'S TAKE IT ONE POINT AT A TIME.

10   THEY'RE ASKING TO BE READ INTO CERTAIN COMPARTMENTS.  ALL THEY

11   HAVE TO DO IS TELL US THE NAME OF THE COMPARTMENTS, THE

12   INITIALS.  I CAN'T UNDERSTAND WHY THEY'RE NOT DOING THAT.

13        THE COURT:  WHAT ABOUT THAT, MR. BUTLER?  IF IT'S

14   THAT HIGH LEVEL OF GENERALITY, THAT DOESN'T GIVE UP MUCH TO

15   SAY "WE GENERALLY WANT TO SPEAK ABOUT THIS.  WE'RE NOT GOING

16   TO TELL YOU THE SPECIFIC QUESTIONS.  WE'RE NOT GOING TO GIVE

17   YOU A SCRIPT OF QUESTIONS WE INTEND TO ASK, BUT THIS IS THE

18   COMPARTMENT," AS THEY CALL IT IN THE LEXICON OF THE CIA.

19        MR. BUTLER:  I THINK YOUR HONOR HIT ON IT AT THE

20   LAST HEARING.  THAT WOULD BE THE FIRST STEP, AND WE QUICKLY

21   MOVE BEYOND THAT TO SAY --

22        THE COURT:  WE HAVEN'T GONE TO THAT YET.  HE'S

23   SAYING, "TAKE US TO THE FIRST STEP.  AND WE MAY SAY, YES, WE

24   CAN CONCEIVE -- WE, THE CASE PROSECUTORS HERE, CAN CONCEIVE OF

25   WHY THEY'D WANT TO TALK TO A WITNESS ABOUT THAT."  I THINK YOU

PDF created with pdfFactory trial version www.pdffactory.com

1    OUGHT TO DO THAT.  I THINK MR. MAC DOUGALL AGREED TO THAT.

2           HERE'S WHERE I'M GOING TO STEP IN AND I INSIST THAT

3    THEY PUT IN AN INDEPENDENT PERSON:  IF IT GETS DOWN TO YOUR

4    THEORIES OR WHY YOU THINK IT'S RELEVANT TO THE DEFENSE THAT

5    YOU WANT TO PURSUE A CERTAIN COMPARTMENT OR INQUIRY INTO A

6    CERTAIN COMPARTMENT, THEN I'M GOING TO INSIST THAT THEY DO

7    WHAT THEY TOLD ME THEY'D DO AT THE LAST HEARING, WHICH IS HAVE

8    AN INDEPENDENT PERSON FROM THE DEPARTMENT OF JUSTICE FIELD

9    THAT REQUEST.  AND IF THERE'S AN OBJECTION, THAT PERSON CAN

10   COME OUT AND LITIGATE ON BEHALF OF THE GOVERNMENT WITH YOU.

11   AND I THINK THAT HARMONIZES THE CONCERNS I HAVE.

12          I HAVE A CONCERN THAT HE NOT HAVE TO GIVE UP HIS

13   THEORIES.  IF THAT'S THE WAY CIPA WORKS IN THE ORDINARY

14   COURSE, MR. HALPERN, IT DOESN'T WORK VERY FAIRLY.  IT'S A

15   DIFFERENT KIND OF ANIMAL THAN IT IS IN EVERY OTHER CASE WHERE

16   A DEFENDANT DOESN'T HAVE TO GIVE UP ANYTHING ABOUT HIS THEORY

17   OF DEFENSE IN ORDER TO GAIN RELEVANT DISCOVERY.

18          MR. HALPERN:  WE'RE NOT ASKING FOR THE THEORY OF

19   DEFENSE.

20          MR. BUTLER:  IT DO THINK THAT EVEN DIRECTING THEM TO

21   THE SPECIFIC COMPARTMENT THAT WE'RE TALKING ABOUT WOULD REVEAL

22   AND AWFUL LOT ABOUT THE THEORY THAT WE'RE PURSUING.

23          THE COURT:  I DON'T AGREE WITH THAT, MR. BUTLER.  I

24   THINK YOU CAN SAY, "LOOK, WE WANT TO TALK TO SOMEBODY ABOUT

25   THIS GENERIC SUBJECT MATTER.  WE'RE NOT GOING TO TELL YOU WHAT

PDF created with pdfFactory trial version www.pdffactory.com

1   WE'RE GOING TO ASK.  WE'RE NOT GOING TO TELL YOU WHAT WE'RE

2   ARMED WITH OR WHAT OUR THESIS IS GOING IN.  BUT THIS IS WHAT

3   WE WANT TO TALK ABOUT."  LET THEM MAKE THE ASSESSMENT IN THE

4   FIRST INSTANCE.  I THINK THAT THAT'S A CLOSE ANALOGY TO THE

5   DOCUMENT CASES THAT MR. HALPERN HAS RAISED.

6           MR. BUTLER:  JUST TO BE CLEAR, YOUR HONOR, WHEN THE

7   ANSWER COMES BACK "NO"?

8           THE COURT:  THEN WE GO TO ROUND 2.  ROUND 2 IS YOU

9   AND THE INDEPENDENT FELLOW OR WOMAN FROM THE DEPARTMENT OF

10  JUSTICE CAN COME IN AND ARGUE RELEVANCY WITH ME, AND THESE

11  PROSECUTORS WILL NOT BE PRESENT FOR THAT.  AND THE PERSON FROM

12  THE DEPARTMENT WILL BE UNDER AN ORDER NOT TO REVEAL TO THEM

13  WHAT THE SPECIFIC THEORIES OF THE DEFENSE ARE.

14          MR. HALPERN:  THE ONLY CAVEAT I WOULD HAVE, YOUR

15  HONOR -- AND I CAN'T SEE ANY OBJECTION TO THIS -- IS THAT THE

16  GOVERNMENT ITSELF, MEANING THE PROSECUTION TEAM, WE MIGHT EVEN

17  CHOOSE TO RESPOND EVEN WITHOUT THE INFORMATION.  PERHAPS THE

18  DEPARTMENT PERSON WOULD BE IN A BETTER POSITION, AND PERHAPS

19  WE'LL LET THEM DO IT.  IF WE THINK IT'S CRYSTAL CLEAR, WE

20  MIGHT DO IT.

21          THE COURT:  THAT'S WHAT I'M HOPING.  I'M HOPING TO

22  AVERT ROUND 2 BY HAVING YOU SAY, "FINE.  WE GET IT.  WE KNOW

23  THIS CASE.  WE CAN UNDERSTAND WHY SOMEBODY PURSUING A DEFENSE

24  WOULD WANT TO TALK TO THESE PEOPLE ABOUT THIS GENERAL SUBJECT

25  MATTER.  SO WE APPROVE.  WE'LL SO NOTIFY THE CIA."  AND THEN

PDF created with pdfFactory trial version www.pdffactory.com

1     WE WON'T BE BACK HERE EACH TIME THEY WANT TO DO AN INTERVIEW.

2          I THINK THAT WAS THE RULING THAT I MADE LAST TIME.

3     IF I WASN'T CLEAR ABOUT IT, I APOLOGIZE.  BUT THAT'S WHAT I

4     INTENDED.  I'M DOING MY BEST TO PREVENT THEM FROM KNOWING WHAT

5     YOUR THEORIES ARE AND HOW YOU INTEND ON DEFENDING THIS FELLOW

6     AND WHAT INFORMATION YOU GLEAN THROUGH INDEPENDENT

7     INVESTIGATIONS THAT CAUSES YOU TO WANT TO LOOK FURTHER.

8          BUT IF IT'S JUST A MATTER OF GENERICALLY IDENTIFYING

9     DOCUMENTS OR SO-CALLED COMPARTMENTS, THAT IS, VERY GENERALIZED

10    DESCRIPTIONS OF THE AREA OF INFORMATION YOU WANT TO INTERVIEW

11    ABOUT, I THINK IT'S INCUMBENT UPON YOU, MR. BUTLER AND

12    MR. FOGGO'S OTHER LAWYERS, TO GO TO THESE LAWYERS IN THE FIRST

13    PLACE AND FOLLOW THE RULE 16 PROCEDURES AND SAY, "HERE'S WHAT

14    WE WANT TO TALK ABOUT.  WE'RE NOT GOING TO TELL YOU ANYTHING

15    MORE THAN THE GENERAL SUBJECT MATTER."  IF IT GETS STICKIER

16    BEYOND THAT, THEN I'LL INSIST THAT THEY BRING IN THE PERSON.

17         BY THE WAY, DO WE HAVE A PERSON DESIGNATED ALREADY

18    AT THE DEPARTMENT PURSUANT TO THE --

19         MR. HALPERN:  WE DON'T, YOUR HONOR, BECAUSE THEY

20    OBJECTED TO IT.  BUT WE'LL GO BACK THERE NOW UNDERSTANDING --

21         THE COURT:  TELL THEM THAT I'VE ORDERED THAT.  THEY

22    HAVE RECOURSE.  THEY CAN APPEAL THE ORDER IF THEY DON'T LIKE

23    IT.  THAT'S WHAT I'VE ORDERED.  I THINK I'VE CLARIFIED TODAY

24    THE SCOPE OF THAT PERSON'S RESPONSIBILITIES.

25         MR. HALPERN:  UNDERSTANDING THAT WE KNOW THE WHAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

27

1   AND THEY HANDLE THE WHY, I THINK THAT MIGHT BE A DIFFERENT

2   STORY.

3           THE COURT:  THAT'S A GOOD WAY TO PUT IT.

4           MR. BUTLER:  I UNDERSTAND WHEN I WENT TO SIT DOWN,

5   BUT LET ME JUST MAKE ONE MORE POINT.

6           THAT IS THAT I THINK WE'RE ENGAGED IN KIND OF A

7   FRUITLESS EXERCISE HERE IN THE SENSE THAT IF YOU READ THE

8   GOVERNMENT'S PAPERS THAT THEY FILED ON FRIDAY NIGHT, IT'S

9   HENNY PENNY, THE SKY IS FALLING.

10          UNDER THOSE CIRCUMSTANCES, WILL ANYBODY EVER

11   ASSOCIATED WITH THIS DEFENSE TEAM EVER GET ACCESS TO THIS

12   INFORMATION?  WE'RE GOING THROUGH A FORMALITY HERE, YOUR

13   HONOR.  IT'S GOING TO DO NOTHING BUT REVEAL OUR DEFENSE TO

14   THEM AND RESULT IN US JUST MOVING ON.

15          THE COURT:  NO, THAT ISN'T GOING TO HAPPEN,

16   MR. BUTLER.  BECAUSE, AS I SAID, IF YOU DO WHAT I'VE ASKED YOU

17   TO DO, WHICH IS TO COMMUNICATE TO THEM "THIS IS THE GENERAL

18   AREA OF INQUIRY THAT WE WANT ACCESS TO" AND THEY SAY "NO,"

19   THEN, AS FAR AS I'M CONCERNED, THAT TRIGGERS THE NEXT ROUND,

20   WHICH IS YOU SAY, "OKAY.  WE REALLY BELIEVE THAT WE ARE

21   ENTITLED TO DO THIS.  WE WANT TO TALK TO YOUR PERSON AT DOJ

22   AND TELL THEM WHY."  THEN THE DISPUTE IS CRYSTALLIZED.  AND IT

23   COMES TO ME, AND I'LL MAKE THE DECISION.

24          THIS IS NOT AN EXERCISE IN FUTILITY.  I'M GOING TO

25   TAKE MR. HALPERN AT HIS WORD THAT HE'S GOING TO ACT IN GOOD

PDF created with pdfFactory trial version www.pdffactory.com

28

1    FAITH.  THESE THREE PROSECUTORS AND MR. BHANDARI KNOW THE CASE

2    VERY WELL.  IT MAY BE THAT THEY CAN LOOK AT A GENERIC REQUEST

3    AND SAY, "THIS MAKES SENSE TO US.  IF WE WERE DEFENDING

4    MR. FOGGO, WE'D ASK FOR ACCESS TO THIS COMPARTMENT, TOO."

5    THAT MAY BE THE END OF IT.

6         NOW, I'M NOT GOING TO BE POLLYANNA ABOUT IT.  IF

7    DISPUTES DEVELOP, THEN I'VE SET UP A MECHANISM FOR RESOLVING

8    THOSE.  AND I WILL.

9         MR. HALPERN, GO BACK AND TELL THEM THAT THIS IS WHAT

10   I'VE ORDERED.  "IF YOU DON'T LIKE IT, GO TO THE 9TH CIRCUIT."

11        MR. HALPERN:  THANK YOU, YOUR HONOR.

12        MR. BUTLER:  THANK YOU, YOUR HONOR.

13        THE COURT:  ANYTHING ELSE ON THE -- ARE YOU SURE YOU

14   WANT TO GET INTO THIS?

15        MR. CAHN:  I HAVE MY DOUBTS, BUT I'VE TOLD

16   MR. WILKES THAT WE'RE WITH HIM 100 PERCENT, THAT WE'RE HERE.

17        THE COURT:  THAT WILL BE THE PROCEDURE, OBVIOUSLY,

18   THAT I'LL FILE ONCE YOU GET YOUR SLEEVES ROLLED UP AND GET

19   INTO THE CASE AS WELL.  I THINK WHILE IT MAY BE NEWFANGLED,

20   I'M COMFORTABLE WITH IT.  AS I SAID, I THINK IT PROTECTS THE

21   DEFENDANTS' 5TH AND 6TH AMENDMENT RIGHTS.  I WOULDN'T EXPECT

22   YOU TO REVEAL THEORIES OF DEFENSE IN ORDER TO GET ACCESS TO

23   INFORMATION THAT'S RELEVANT.  SO THE SAME RULE AND WHATEVER

24   ORDER EMANATES FROM ALL OF THIS WILL FIND MR. WILKES AS WELL.

25        ANYTHING ELSE ON WILKES-FOGGO TODAY?

PDF created with pdfFactory trial version www.pdffactory.com

1          MR. BUTLER:  NO.

2          MS. CHU:  IS THERE A DATE FOR US TO COME BACK?

3          THE COURT:  I WANT TO SET A DATE.

4          HOW MUCH TIME DO YOU THINK BEFORE YOU CAN BE --

5          MR. CAHN:  A STATUS IN ABOUT A MONTH.  WE'RE GOING

6     TO DIG IN.  I'M DROPPING EVERYTHING.  I'M REQUIRING

7     MS. CHARLICK TO DROP QUITE A FEW THINGS, ALSO.  WE'RE GOING TO

8     DIG IN AND TRY AND FIGURE OUT EXACTLY WHERE WE ARE.  I THINK

9     IN A MONTH, WE'D BE IN A DECENT POSITION TO AT LEAST DISCUSS

10    THAT WITH THE COURT.

11         THE COURT:  DOES THAT SEEM FAIR TO EVERYONE

12    CONCERNED, A MONTH FOR STATUS?

13         MR. BUTLER:  YES.

14         THE COURT:  OBVIOUSLY, MR. BUTLER, IF THIS ISSUE --

15    I DON'T EXPECT IT TO STALL YOUR PREPARATION FOR A MONTH.  IF

16    THIS THING CRYSTALLIZES AND IT DOESN'T HAPPEN AS I'D HOPE AND

17    AS I THINK WE HAVE AN UNDERSTANDING, THEN YOU'RE FREE TO FILE

18    ANOTHER MOTION AND COME BACK HERE AND I'LL RESOLVE IT AS SOON

19    AS POSSIBLE.

20         I DO WANT YOU WITH ALL DELIBERATE SPEED TO

21    COMMUNICATE THE COURT'S ORDER TO THE DEPARTMENT OF JUSTICE AND

22    GET SOMEBODY DESIGNATED.  I WAS TOLD A WHILE AGO THAT THAT

23    WOULD HAPPEN SO THE PERSON COULD BE UP TO SPEED AT THIS POINT

24    BECAUSE THAT'S NECESSARILY GOING TO DELAY THIS IF --

25         MR. HALPERN:  WE UNDERSTAND THE COURT'S ORDER.  THAT

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

30

1    SHOULDN'T BE A PROBLEM.

2            YOUR HONOR, THERE WAS ONE OUTSTANDING PART OF OUR

3    PAPERS THAT PERHAPS WE CAN RESOLVE, ALSO.  THAT JUST HAS TO DO

4    WITH A REQUEST FOR A PRE-TRAIL CONFERENCE UNDER CIPA.  PERHAPS

5    THE DATE THAT THE COURT HAS INDICATED WOULD BE AN APPROPRIATE

6    TIME TO DO THAT.

7            THE COURT:  HAS IT CRYSTALLIZED TO THAT EXTENT WHERE

8    YOU CAN MAKE A --

9            MR. BUTLER:  I DON'T BELIEVE SO, YOUR HONOR.

10            MR. HALPERN:  IT'S JUST A CONFERENCE, YOUR HONOR.

11    AT THE CONFERENCE, THEN WE CAN GET DATES.  WHAT I'M SAYING IS

12    IT MIGHT MAKE SENSE FOR THE COURT TO GIVE BOTH SIDES A MONTH

13    OR SO.  WE CAN THEN COME BACK AND SAY HOW LONG WE THINK IT

14    WILL TAKE SO THE COURT CAN JUST SOMEHOW --

15            THE COURT:  WHY DON'T I SET THAT PRE-TRIAL

16    CONFERENCE DATE AS THE STATUS DATE.  BECAUSE WHAT I'D LIKE AT

17    THIS POINT INSOFAR AS POSSIBLE IS THAT THIS PROCEEDS NOT ON

18    SEPARATE TRACKS WITH MR. WILKES AND MR. FOGGO, BUT TOGETHER.

19            BECAUSE I'M ASSUMING, MR. HALPERN, THAT THE REQUESTS

20    ARE GOING TO BE JOINT REQUESTS; THAT ONE DEFENDANT IS GOING TO

21    JOIN IN THE OTHER DEFENDANT'S REQUESTS.  THERE'S GOING TO BE

22    MAYBE SOME DIFFERENCES.  BUT I THINK IF DISPUTES DEVELOP ABOUT

23    BEING READ INTO SOME COMPARTMENTS, THAT BOTH DEFENDANTS ARE

24    GOING TO HAVE AN INTEREST IN THAT.

25            SO I WANT TO GIVE MR. CAHN AND MS. CHARLICK A MONTH

PDF created with pdfFactory trial version www.pdffactory.com

1   TO GET READY.  I'LL SET THE PRE-TRIAL CONFERENCE AT THE NEXT

2   STATUS HEARING ON WILKES-FOGGO.

3           IS THAT AGREEABLE?

4           MR. CAHN:  JUDGE, IF I CAN BE CLEAR BECAUSE I

5   UNDERSTAND THAT THERE ARE SEVERAL CONFERENCES THAT TAKE PLACE

6   UNDER CIPA.

7           THIS WOULD BE ONE SIMPLY TO DISCUSS THE STATUS AND

8   NOT TO DESIGNATE THOSE MATERIALS THAT WOULD BE DISCLOSED?

9           THE COURT:  THAT'S RIGHT.  THIS IS FOR ME TO SET --

10  I GUESS MR. HALPERN WANTS ME TO SET A DEADLINE FOR THE

11  BEGINNING OF THE DESIGNATION PROCESS OR A DATE BY WHICH THE

12  SUBMISSIONS SHOULD BE TO ME.

13          MR. HALPERN:  IT'S SIMPLY A CIPA SECTION 2

14  CONFERENCE.  WE'RE NOT TRYING TO SUGGEST DATES.  IF THE COURT

15  WANTS US TO, WE CAN.  WE'RE NOT TRYING TO UNILATERALLY SUGGEST

16  WHAT THE DATE SHOULD BE JUST TO GOVERN THE DISCOVERY PROCESS,

17  SO THAT YOU'LL KNOW WHEN BOTH SIDES WILL BE READY TO PUT THEIR

18  DISCOVERY REQUEST IN.

19          THE COURT:  THEY'RE LABORING UNDER A BIG

20  DISADVANTAGE HAVING JUST GOTTEN INVOLVED IN THE CASE.  I'M

21  GOING TO GIVE THEM A MONTH.

22          REMIND ME, MR. HALPERN.  I'LL SET THE PRE-TRIAL

23  CONFERENCE DATE AT THE HEARING, THE STATUS DATE, NEXT MONTH.

24          OCTOBER 9TH.  LET'S SET IT AT 3:00 SO PEOPLE DON'T

25  HAVE TO WAIT.  OCTOBER 9TH AT 3:00.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1           IS THAT A CONVENIENT TIME FOR YOU, MR. BUTLER?

2           MR. BUTLER:  THAT'S FINE, YOUR HONOR.  THANK YOU.

3           THE COURT:  MR. WILKES, YOU'LL NEED TO BE BACK ON

4    THAT DATE.

5           DEFENDANT WILKES:  YES, YOUR HONOR.

6           THE COURT:  YOU'LL BE HERE BEFORE THEN, TOO.  YOU'LL

7    HAVE TO BE BACK ON THAT DATE ON THE SECOND CASE, WILKES-FOGGO.

8           MS. CHARLICK:  WE'RE FINE.

9           THE COURT:  OCTOBER 9TH AT 3:00 P.M. FOR STATUS AND

10   THE SETTING OF THE PRE-TRIAL CONFERENCE IN THE WILKES-FOGGO

11   MATTER.

12          I'LL REVIEW THE COMPETING ORDERS AND TRY TO

13   HARMONIZE THEM AND COME UP WITH A FINAL ORDER RESPECTING THIS

14   DECISION THAT I'VE MADE ABOUT ACCESS TO WITNESSES AND

15   MATERIAL.

16          THAT'S IT FOR WILKES-FOGGO.  THANK YOU.

17          MR. BUTLER:  THANK YOU, YOUR HONOR.

18                         --O0O--

19              I HEREBY CERTIFY THAT THE TESTIMONY

20              ADDUCED IN THE FOREGOING MATTER IS

21              A TRUE RECORD OF SAID PROCEEDINGS.

22

23          S/EVA OEMICK                9-21-07

24          EVA OEMICK                  DATE
            OFFICIAL COURT REPORTER
25

PDF created with pdfFactory trial version www.pdffactory.com