```
                    UNITED STATES DISTRICT COURT
                   SOUTHERN DISTRICT OF CALIFORNIA

              HONORABLE LARRY ALAN BURNS, JUDGE PRESIDING


  UNITED STATES OF AMERICA,        )
                                   )
              PLAINTIFF,           )  CASE NO. 07CR00329-LAB
         VS.                       )
                                   )  SAN DIEGO, CALIFORNIA
  KYLE DUSTIN FOGGO, (1)           )  DECEMBER 17, 2007
  BRENT ROGER WILKES, (2)          )  2:00 P.M.
                                   )
              DEFENDANTS.          )
  _____)


                       REPORTER'S TRANSCRIPT
                        STATUS CONFERENCE

  APPEARANCES:
  FOR THE GOVERNMENT:          KAREN P. HEWITT, U.S. ATTORNEY
                               BY:  PHILLIP L.B. HALPERN, ESQ.
                                    VALERIE CHU, ESQ.
                                    JASON A. FORGE, ESQ.
                               ASSISTANT U.S. ATTORNEYS
                               880 FRONT STREET
                               SAN DIEGO, CA. 92101

  FOR DEFENDANT FOGGO:         AKIN GUMP STRAUSS HAUER & FELD
                               BY:  MARK MAC DOUGALL, ESQ.
                                    PAUL BUTLER, ESQ.
                               1333 NEW HAMPSHIRE AVE., N.W.
                               WASHINGTON, DC 20036-1564

  FOR DEFENDANT WILKES:        FEDERAL DEFENDERS, INC.
                               BY:  REUBEN C. CAHN, ESQ.
                               225 BROADWAY, STE. 900
                               SAN DIEGO, CA 92101


  COURT REPORTER:              EVA OEMICK
                               OFFICIAL COURT REPORTER
                               UNITED STATES COURTHOUSE
                               940 FRONT STREET, STE. 2190
                               SAN DIEGO, CA. 92101
                               TEL: (619) 615-3103
```

```
 1    SAN DIEGO, CALIFORNIA - MONDAY, DECEMBER 17, 2007 - 2:00 P.M.
 2              THE CLERK:  NO. 25, 07CR00329, KYLE DUSTIN FOGGO AND
 3    BRENT ROGER WILKES FOR STATUS CONFERENCE.
 4              COUNSEL, PLEASE STATE YOUR APPEARANCES FOR THE
 5    RECORD.
 6              MR. HALPERN:  GOOD AFTERNOON, YOUR HONOR.  PHIL
 7    HALPERN, JASON FORGE AND VALERIE CHU FOR THE GOVERNMENT.
 8              MR. MAC DOUGALL:  GOOD AFTERNOON, YOUR HONOR.  MARK
 9    MAC DOUGALL AND PAUL BUTLER, COUNSEL FOR DEFENDANT DUSTIN
10    FOGGO.
11              MR. CAHN:  GOOD AFTERNOON, YOUR HONOR.  REUBEN CAHN
12    ON BEHALF OF MR. WILKES.
13              THE COURT:  GOOD AFTERNOON, MR. CAHN.
14              MR. GERAGOS, THERE ARE TWO MATTERS RESPECTING
15    MR. WILKES.  ONE IS THE POST-TRIAL MOTIONS PERTAINING TO THE
16    WILKES/MICHAEL CASE.  THE OTHER IS THE RECONSIDERATION THAT I
17    HAVE GIVEN TO THE MOTION TO TRANSFER THE WILKES MOTION.  MY
18    PREFERENCE IS TO TAKE THE LATTER.
19              MR. GERAGOS:  WHICH DOES NOT INVOLVE ME.
20              THE COURT:  THAT'S GOING TO BE SHORTER.
21              MR. FOGGO IS GOING TO BE AVAILABLE?
22              MR. MAC DOUGALL:  HE IS WORKING TODAY.
23              THE COURT:  MR. HALPERN, THE GOVERNMENT FILED NO
24    RESPONSIVE PAPERS ON THE RECONSIDERATION OF RULE 21.
25              MR. HALPERN:  OUR POSITION, YOUR HONOR, HASN'T
```

PDF created with pdfFactory trial version www.pdffactory.com

1  CHANGED ON WHETHER THE CASE SHOULD MOVE IN TOTAL OR IN PART.
2           SUBSEQUENT TO THAT, IT APPEARED TO THE GOVERNMENT
3  THERE WAS A SHIFTING OF POSITION BY MR. WILKES.  HE IS OPPOSED
4  TO IT WHICH BROUGHT US EXACTLY WHERE WE WHERE FIVE MONTHS AGO.
5  AS I INDICATED, GOVERNMENT'S POSITION HASN'T CHANGED.  WE
6  THINK THE COURT'S HANDS ARE TIED IN SOME WAYS.
7           THE COURT:  HERE IS THE ONE DISTINCTION THAT I SEE
8  BETWEEN THIS CASE AND THE OTHER CASES CITED, ALL OF WHICH I
9  HAVE READ.
10          I THOUGHT IT WOULD MAKE A DIFFERENCE IN THE VICINAGE
11 RIGHT WHEN A PERSON IS TAKEN INTO CUSTODY AND OUT OF CUSTODY.
12 THE CASES SAY NO.  ALTHOUGH THAT'S KIND OF CRAZY TO ME, BUT I
13 GUESS IT GOES BACK TO THE PREDICATE FOR THE RIGHT IN THE FIRST
14 PLACE, WHICH IS A RIGHT TO BE IN THE RIGHT DISTRICT.
15          THE CRIME -- I LOOKED AT THE INDICTMENT ONCE AGAIN.
16 95 PERCENT OF WHAT'S ALLEGED OCCURRED IN A DIFFERENT DISTRICT.
17 AND I THINK THE GOVERNMENT CONCEDES THERE ISN'T A CRIME THAT
18 WAS COMMITTED IN THIS DISTRICT.  MOST OF THIS WAS COMMITTED IN
19 THE OTHER DISTRICT WHICH LEAD TO WHY WOULD WE TRY THE CASE
20 HERE.  THERE ARE ALL THESE COMPELLING REASONS THAT THE CASE BE
21 MOVED TO THE EASTERN DISTRICT OF VIRGINIA.
22          MR. CAHN, I UNDERSTAND MR. WILKES HAS A RIGHT TO BE
23 TRIED IN THE DISTRICT WHERE A CRIME WAS COMMITTED.  BUT AS I
24 SAID, 95 PERCENT OF WHAT THEY ALLEGE ARISES FROM THE EASTERN
25 DISTRICT OF VIRGINIA.  DOES THAT PROVIDE A DISTINCTION THAT

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    WOULD HAVE ME SAY, I'LL RESPECT YOUR VICINAGE RIGHT, BUT THE
 2    VICINAGE IS THE EASTERN DISTRICT OF VIRGINIA.
 3              MR. CAHN:  JUDGE, I UNDERSTAND WHAT THE COURT IS
 4    SAYING, AND I DON'T DISAGREE WITH THE ANALYSIS.  THE VAST
 5    MAJORITY OF THE ACT AT ISSUE OCCURRED EITHER IN THE EASTERN
 6    DISTRICT OF VIRGINIA, THE DISTRICT OF THE DISTRICT OF COLUMBIA
 7    OR OVERSEES.  PROBABLY A GOOD NUMBER HAVE ACTUALLY OCCURRED
 8    OUTSIDE OF THE TERRITORY OF THE UNITED STATES.  BUT OUR
 9    POSITION IS THAT AS A RULE-BASED MATTER, THERE SIMPLY CANNOT
10    BE A TRANSFER WITHOUT THE CONSENT OR REQUEST OF A DEFENDANT.
11              AND SO IT IS NOT SIMPLY A QUESTION OF THE
12    CONSTITUTIONAL RIGHT WHICH UNDERLIES THE RULE.  THE RULE
13    ITSELF WHICH PROVIDES FOR AUTHORITY OR THE TRANSFER DOESN'T DO
14    SO IN THE SITUATION.
15              THE COURT:  I READ THE CASES.  I UNDERSTAND A VERY
16    LITERAL READING OF THE ROLE IS IT READS IN THE SINGULAR.  AND
17    THE DEFENDANT HAS A RIGHT.  A VERY LITERAL READING OF THIS
18    RULE IS IT READS IN THE SINGULAR, AND THE DEFENDANT HAS A
19    RIGHT.  WELL, HERE I HAVE TWO DEFENDANTS AND ONE OF THEM SAYS
20    I WANT TO BE TRIED IN THIS OTHER DISTRICT.
21              IN YOUR JUDGMENT, DOES THAT POSE AN EXCEPTION?  IT
22    DOESN'T IN THE CASE, FOR EXAMPLE, FOR PRETRIAL MOTIONS.  ONE
23    IS SAYING I WANT TO GO TO TRIAL, AND THE OTHER GUY IS SAYING,
24    "OH, NO, NO.  I WANT TO HAVE MY PRE-TRIAL MOTIONS HEARD
25    FIRST."
```

PDF created with pdfFactory trial version www.pdffactory.com

1          YOU AND I BOTH KNOW THAT THE FELLOW WHO WANTS TO GO
2    TO TRIAL PROMPTLY HAS NO RIGHT TO INSIST ON THAT BECAUSE HE IS
3    JOINED WITH ANOTHER DEFENDANT WHO WANTS TO HAVE HIS MOTIONS
4    HEARD.
5          SO WHY WOULDN'T THAT SAME THINKING APPLY HERE?  I
6    HAVE GOT MR. FOGGO WHO HAS GIVEN ME A LOT OF GOOD REASONS WHY
7    THIS THING OUGHT TO BE IN THE EASTERN DISTRICT OF VIRGINIA.
8    AND LET ME DIGRESS FOR A SECOND.
9          I AM NOT TRYING TO SHIRK RESPONSIBILITY OR WORK.  ON
10   THE MERITS I THINK THIS THING SHOULD BE TRIED THERE.  MR. MAC
11   DOUGALL HAS LAID OUT THE CASE THAT MOST OF THE WITNESSES ARE
12   THERE.  MOST OF THE EVIDENCE IS THERE.  I MEAN, JUST LOGICAL.
13   THE THING THAT LEFT ME SCRATCHING MY HEAD THIS WEEKEND AFTER I
14   WENT THROUGH THE CASES IS WHY WAS THIS FILED HERE.
15          MR. CAHN:  AS ONE OF THE CASES SUGGESTS, THE
16   GOVERNMENT HAS TO DISMISS AND RE-INDICT IN THE OTHER DISTRICT
17   IF THEY WISH TO BRING THINGS TOGETHER.
18          THE COURT:  ONE CASE SUGGESTS THAT I COULD DISMISS
19   WITHOUT PREJUDICE WITH THAT IN MIND.
20          MR. CAHN:  YES, YOUR HONOR.
21          THE COURT:  DO YOU AGREE WITH THAT, MR. HALPERN?
22          MR. HALPERN:  YES.  I THINK IT IS CLEARLY
23   CONTEMPLATED BY THE CASE LAW.  IF, IN FACT, A DEFENDANT
24   ATTEMPTED TO GET AN ADVANTAGE BY INSISTING ON TRIAL IN ONE
25   DISTRICT.  I THINK THE COURT SUGGESTED THAT ONE OF THE OPTIONS

PDF created with pdfFactory trial version www.pdffactory.com

1  THE GOVERNMENT WOULD HAVE WOULD BE TO MAKE A MOTION TO DISMISS
2  WITHOUT PREJUDICE, AND THEN WE WOULD BE FREE TO RE-INDICT THE
3  CASE IN VIRGINIA.
4           THE COURT:  HAVE YOU GIVEN ANY THOUGHT TO THAT?
5           MR. HALPERN:  IT IS CERTAINLY SOMETHING THAT IF THE
6  COURT DID SEVER, IT WOULD BE CERTAINLY SOMETHING THAT WOULD
7  WEIGH HEAVILY.  THE GOVERNMENT WOULD NOT WANT TO TRY THIS CASE
8  IN TWO DISTRICTS, YOUR HONOR.  AND THAT WOULD CERTAINLY BE AN
9  OPTION DEPENDING AGAIN ON WHAT MR. WILKES'S ULTIMATE STATUS IS
10 WHERE HE'LL BE SPENDING TIME.
11          THE COURT:  DOES THE DISMISSAL WITH PREJUDICE HAVE
12 TO BE PREDICATED ON A GOVERNMENT MOTION?
13          MR. HALPERN:  I AM NOT SURE IT DOES, YOUR HONOR.  IT
14 WOULD BE A DISMISSAL WITHOUT PREJUDICE.  I AM NOT SURE IT HAS
15 TO BE ON A GOVERNMENT MOTION.  IF THE COURT DID THAT, IN
16 ESSENCE, WE CERTAINLY WOULD BE ENTITLED TO RE-INDICT THE
17 CASE.
18          THE COURT:  DO YOU THINK I HAVE AUTHORITY TO GRANT
19 MR. FOGGO'S MOTION TO TRANSFER THE CASE AND IN LIEU OF
20 SEVERING IS TO JUST DISMISS THE CHARGES AGAINST MR. WILKES
21 WITHOUT PREJUDICE?
22          MR. HALPERN:  I CAN'T GO THAT FAR, YOUR HONOR.  I
23 KNOW THE GOVERNMENT CERTAINLY WOULD HAVE POWER TO DO THAT.
24 WHAT I CAN SAY IS THAT CERTAINLY THAT WOULD BE AN OPTION THAT
25 WE WOULD HAVE TO CONSIDER.  WHETHER THE COURT ON ITS OWN

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1   MOTION CAN DO IT, I AM NOT AWARE OF ANY AUTHORITY THAT WOULD
2   SUPPORT THAT.  UNTIL I RESEARCH THAT ISSUE, I WOULD THE
3   LOATHED TO RECOMMEND THAT.
4           THE COURT:  I WANT YOU TO LEVEL WITH ME ON THAT.  ON
5   THE MERITS HERE IT APPEARS TO ME THAT THEY HAVE MADE OUT A
6   GOOD CASE FOR THIS CASE TO BE TRIED IN THE EASTERN DISTRICT OF
7   VIRGINIA.  I UNDERSTAND THE PROSECUTORS WERE HERE, AND I AM
8   ASSUMING THAT THIS CASE SORT OF EMANATED FROM THE EARLIER
9   INVESTIGATION.  AND SO THAT WAS THE REASON THAT IT WAS
10  INDICTED HERE.  BUT NOW WE HAVE HAD A FULL TRIAL ON THIS
11  THING.  AND I HAVE LOOKED AT THE INDICTMENT AGAIN, THE WILES
12  FOGGO INDICTMENT, AND I JUST WONDERED IF UNDER ALL THE
13  CIRCUMSTANCES ON THE MERITS IT IS NOT THE BEST AND FAIREST
14  THING TO DO, NOT WITHSTANDING MR. WILKES'S OBJECTION NOW, TO
15  SAY THIS CASE SHOULD BE TRIED WHERE IT HAPPENED FOR THE MOST
16  PART WHICH IS THE EASTERN DISTRICT OF VIRGINIA.
17          MR. HALPERN:  CERTAINLY FROM MR. FOGGO'S PROSPECTIVE
18  I THINK THAT'S CORRECT, YOUR HONOR.  I THINK YOU ARE AWARE OF
19  WHY IT IS.  YOU HIT THE NAIL ON THE HEAD.  IT IS HERE BECAUSE
20  THAT IS WHERE IT IS INVESTIGATED FROM.  IT IS HERE BECAUSE
21  MR. WILKES WHO IS AN EQUAL PARTICIPANT IN THE CRIME, AND IN
22  FACT, IS THE MOTIVATING FORCE BEHIND THE CRIME WITH MR. FOGGO
23  WAS HERE.
24          IF YOU LOOK AT IT OBJECTIVELY, I DON'T THINK THE
25  CASE IS QUITE AS CLEAR AS THE DEFENSE WOULD HAVE IT IN TERMS

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

8

1  OF IT BEING COMPLETELY WEIGHTED TOWARD VIRGINIA, BUT I AM NOT
2  GOING TO QUARREL THAT IT MAY BE MORE THAN 50 PERCENT WEIGHTED
3  THERE.
4         THE COURT: ARE MOST OF THE WITNESSES HAVE TO COME
5  FROM OTHER PARTS OF THE COUNTRY IN THIS SECOND CASE?
6         MR. HALPERN: I DID A BREAKDOWN OF THAT, YOUR HONOR.
7  AGAIN, I THOUGHT THAT THE PRESENTATION AGAIN, ITS ADVOCATES,
8  MIGHT HAVE BEEN A LITTLE MORE SKEWED THAN I WOULD HAVE HAD IT,
9  BUT I WOULD SAY THAT IT MIGHT BE CLOSER TO TWO THIRDS ONE
10 THIRD TOWARDS WASHINGTON. I THINK THAT'S ACCURATE. THAT'S A
11 FACT.
12        THE COURT: SO IT IS EASIER TO SEND FOUR FEDERAL
13 PROSECUTORS, IF YOU CHOSE TO PROSECUTE THAT CASE WITH FOUR
14 PEOPLE TO VIRGINIA THAN TO BRING -- HOW MANY WITNESSES DO YOU
15 CONTEMPLATE -- HOW MANY IN YOUR BREAKDOWN?
16        MR. HALPERN: I HAVE A BREAKDOWN OF 21.
17        THE COURT: THREE QUARTERS OF THAT, 16 BEING BROUGHT
18 HERE?
19        MR. HALPERN: CLOSER TO BEING 13 AND 8. I
20 UNDERSTAND YOUR POINT. AND I WILL SAY THIS: MY WIFE WOULDN'T
21 AGREE WITH YOU, BUT I SEE THE COURT --
22        THE COURT: WHEN DO THE CHERRY BLOSSOMS START
23 BLOOMING?
24        MR. MAC DOUGALL: MIDDLE OF APRIL.
25        MR. CAHN: TWO POINTS AS TO OUR POSITION. FIRST,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    IT'S OUR BELIEF THAT THE GOVERNMENT DOES NEED TO MAKE A MOTION
2    THERE.  AND I'D SAY THAT THE FLIPSIDE OF THE SUPREME COURT'S
3    RULING IN THE PETACH (PHONETIC) CASE IS THAT THE COURT IS
4    WITHOUT AUTHORITY TO DISMISS ON ITS OWN.  WITHOUT AUTHORITY TO
5    DENY THE GOVERNMENT'S MOTION WE WOULD OBJECT.
6              THE COURT:  I HATE THAT, AND I KEEP GETTING TOLD IN
7    ALL THESE DIFFERENT CONTEXTS I JUST DON'T HAVE AUTHORITY TO DO
8    WHAT SEEMS TO BE THE RIGHT THING.
9              MR. CAHN:  USUALLY, IT IS THE GOVERNMENT CITING THAT
10   CASE.
11             THE COURT:  I THINK YOU ARE RIGHT.  IT SURPRISES ME
12   THAT I CAN'T MANAGE A CASE IN LIGHT OF THE MERITS AND SAY THIS
13   BELONGS WHEN IT APPEARS EVERYBODY IS IN AGREEMENT THAT MOST OF
14   WHAT OCCURRED IN A DIFFERENT DISTRICT, AND IT COULD BE FAIRLY
15   TRIED THERE.  I DON'T HAVE AUTHORITY TO DO THAT ABSENT EITHER
16   THE CONSENT OF THE DEFENDANTS OR THE GOVERNMENT MAKING A
17   MOTION.  THAT STRIKES ME AS BACKWARD.  OUR WHOLE THING IS CASE
18   MANAGEMENT.
19             MR. CAHN:  JUDGE, I THINK THE APPROPRIATE REMEDY IS
20   SEVERANCE.  THAT'S WHAT THE COURTS HAVE ADVOCATED IN THESE
21   SITUATIONS WHEN DEFENDANT WANTS TO GO WHERE.  THERE IS GOOD
22   REASON FOR TRANSFERRING THE CASES.  THE GOVERNMENT, OF COURSE,
23   HAS OPTIONS AVAILABLE TO IT THAT NEITHER OF US DO, AND THEY
24   WILL TAKE WHATEVER COURSE THEY CHOOSE TO TAKE.
25             THE COURT:  I KNOW, BUT THE BAD PART ABOUT THAT,

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1  MR. CAHN, IS IF THEY DON'T CHOOSE TO DISMISS HERE WITHOUT
2  PREJUDICE AND RE-INDICT, THEN WE TRY THE SAME CASE TWICE IN
3  TWO DIFFERENT FEDERAL COURTS.  THAT HARDLY MAKES SENSE TO ME
4  EITHER.  AND I AM ASSUMING THE SAME WITNESSES WOULD BE CALLED
5  IN BOTH OF THE CASES.  NOW, I SUPPOSE I CAN FORCE THEIR HAND
6  AND WE CAN PLAY THAT CHESS GAME WHERE I SAY, I AM GOING SEVER
7  AND GRANT THE MOTION OF MR. FOGGO TO GO, AND THEN LET'S SEE IF
8  THEY DON'T MAKE A MOTION TO DISMISS WITHOUT PREJUDICE WHICH,
9  OF COURSE, I WOULD GRANT.  I DON'T KNOW THAT THEY WERE GOING
10 TO -- HAVE YOU THOUGHT ABOUT WHAT YOU DO IF I  GRANT THE
11 MOTION TO SEVER AND TRANSFER?
12        MR. HALPERN:  WE HAVE, IN FACT, CONTEMPLATED EXACTLY
13 THAT TOPIC.  THAT'S SOMETHING THAT THE UNITED STATES ATTORNEY
14 WOULD HAVE TO ANSWER.  WE DON'T HAVE DEFINITIVE WORD FROM
15 HER.
16        THE COURT:  WHEN MIGHT SHE?  HUM A FEW BARS ABOUT
17 THAT.
18        MR. HALPERN:  WELL, IF THE COURT SEVERED -- IT, IF
19 THE COURT'S INCLINATION IS TO SEVER IT, WE CERTAINLY GO BACK
20 TO HER AND THEN ADDRESS THE ISSUE RIGHT AWAY.  OBVIOUSLY, IF
21 THAT WASN'T THE COURT'S INCLINATION I AM NOT SURE SHE WOULD
22 VOLUNTEER THAT, YOUR HONOR.
23        THE COURT:  THE WORST THING IS WE HAVE TRY THE CASE
24 IN TWO DIFFERENT PLACES.  I DON'T WANT TO DO THAT.  I MADE
25 THAT CLEAR THE FIRST TIME.  IT STILL DOESN'T MAKE ANY SENSE.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    I LOOKED CAREFULLY AT THE DECLARATIONS.  AGAIN, I UNDERSTAND
2    ON THE MERITS THIS THING OUGHT TO BE IN A DIFFERENT COURT.  I
3    THINK THAT'S RIGHT.  IT OUGHT TO BE WHERE MOST OF THE CRIME
4    WAS COMMITTED WITH WITNESSES AND EVERYTHING ELSE.
5              THERE ARE OTHER REASONS.  THESE TRUST INFORMATION
6    PROTECTION CASES ARISE MORE FREQUENTLY IN THAT DISTRICT.  THEY
7    HAVE SCIFS THERE THAT AREN'T IN L.A.  I HAVE COUNSEL HERE
8    LABORING UNDER TWO HOUR DRIVES THAT TAKES PROBABLY LONGER TO
9    GET IT SET UP.  SO JUST TO LOOK AT THE DISCOVERY IN THE WILKES
10   FOGGO CASE, MR. CAHN HAS TO GET ON THE TRAIN TO TRAVEL UP
11   THERE.  THAT DOESN'T MAKE GOOD SENSE TO ME.  IT SEEMS TO ME
12   THE BEST OPTION WOULD BE TO HAVE HIM IN A POSITION OR WHOEVER
13   DEFENDS MR. WILKES IN THE POSITION WHERE THEY HAD READY ACCESS
14   TO THE MATERIAL.  AND I KNOW, MR. MAC DOUGALL, THAT'S BEEN A
15   PROBLEM EVEN THERE.  IT'S A SITUATION THAN HAVING TO TRAVEL
16   TWO OR TWO-AND-A-HALF HOURS TO GET TO THE PLACE WHERE YOU CAN
17   LOOK AT THE STUFF.
18             SO ON THE MERITS I THINK THAT THE SECOND THE CASE,
19   ALTHOUGH TECHNICALLY WAS RELATED UNDER OUR RULES, OUGHT TO BE
20   TRIED THERE.  I TRIED TO EXPRESS THAT FROM THE GET GO WHEN
21   THEY FIRST BROUGHT THE MOTION.  I DON'T WANT TO FORCE
22   ANYBODY'S HAND.  I DON'T WANT TO LOOK LIKE I AM PLAYING POKER
23   HERE OR ANTICIPATE THE NEXT MOVE.  MAYBE IF YOU COULD GET ME
24   SOME INCLINATION FROM THE U.S. ATTORNEY.  WE ARE AT THAT POINT
25   WHERE IT WOULD BE VERY HELPFUL FOR ME TO KNOW WHETHER THE

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    GOVERNMENT WOULD MOVE TO DISMISS WITHOUT PREJUDICE IN THE
2    EVENT I TRANSFER THE OTHER CASE.  WHAT DOES THAT MEAN?  IF A
3    PORTION OF THE CASE IS TRANSFERRED ALREADY, DOES IT HAVE TO BE
4    RE-INDICTED AS TO MR. WILKES IF YOU PURSUE THE CHARGES THERE?
5             MR. HALPERN:  YES, YOUR HONOR, UNLESS MR. WILKES
6    AGREED TO IT.  WHAT WE WOULD HAVE TO DO IS WE WOULD HAVE TO
7    RE-INDICT AND JOIN THE CHARGES AGAIN TO JOIN THE SEVERED
8    CASE.
9             THE COURT:  WHAT IF THEY MAKE IT CLEAR -- MAYBE YOU
10   HAVEN'T THOUGHT THIS MANY MOVES AHEAD, MR. CAHN, BUT WHAT IF
11   THEY MAKE IT CLEAR THAT IN THE EVENT I GRANT THE SEVERANCE,
12   THEY MOVE TO DISMISS WITHOUT PREJUDICE AND THEIR INTENTION
13   WOULD TO BE RE-INDICT MR. WILKES, COULD WE FOREGO ALL THAT?
14   CAN YOU HAVE THAT DISCUSSION WITH MR. WILKES IF IT LOOKS LIKE
15   THAT'S THE WAY IT IS GOING TURN OUT?
16            MR. CAHN:  JUDGE, IT IS SOMETHING I WOULD BE WILLING
17   TO TALK TO THE PROSECUTORS ABOUT, BUT I HAVE TO SAY THERE IS A
18   NUMBER OF REASONS -- AND I SET OUT ONE OF THEM IN OUR
19   PLEADINGS THAT THE COURT UNDERSTOOD THAT WE WEREN'T MERELY
20   BEING A OBSTRUCTIONIST IN TAKING THIS POSITION -- THAT WE
21   REALLY WANT THE CASE HERE.  WE REALLY DO NOT -- MR. WILKES
22   DOESN'T WANT IT MOVED.
23            HE HAS GOT A COURT THAT'S FAMILIAR WITH HIM,
24   FAMILIAR WITH THE CASE.  HE KNOWS IT'S A FAIR COURT.  HE HAS
25   GOT LAWYERS WHO ARE COMPETENT.  HE IS NOT SURE IF HE COULD

PDF created with pdfFactory trial version www.pdffactory.com

Case 3:07-cr-00329-LAB   Document 181   Filed 02/05/09   Page 13 of 20

13

1   KEEP THEM.  THERE ARE OTHER REASONS AS WELL THAT I DON'T WANT
2   TO GO INTO.  WE REALLY DON'T WANT TO START DOWN THAT ROAD
3   TOWARDS WHAT HAPPENS IF WE GET TO THE EASTERN DISTRICT OF
4   VIRGINIA AND IF WE TAKE THIS STEP, WILL WE TAKE THAT STEP.
5           THE COURT:  I UNDERSTAND.  IT'S PROBABLY AN UNFAIR
6   QUESTION TO PUT TO YOU AT THIS POINT.
7           MR. CAHN:  CAN I SPEAK TO ONE OTHER ASPECT OF THIS?
8   I UNDERSTAND THE COURT HAS SPOKEN TO THIS IN THE COMPLETION OF
9   THE LAST CASE AND THE COURT'S GENERAL POLICY OF TAKING THE
10  PEOPLE INTO CUSTODY.
11          THE COURT DID SAY IT WILL HEAR FROM ME AT A LATER
12  TIME ABOUT THIS MATTER.  I DON'T WANT TO MAKE A FULL
13  PRESENTATION NOW, BUT I DO WANT TO BRING ONE THING TO THE
14  COURT'S ATTENTION AND THE DIFFICULTY WE ARE GOING TO HAVE.
15  AND ONE OF THE KEY REASONS THAT WE'D BE ASKING THE COURT TO
16  CONTINUING THE BOND DURING THE PRESENTATION OF THIS CASE, NOT
17  THAT -- THE COURT IS WELL AWARE THERE IS CLASSIFIED
18  INFORMATION.
19          THE COURT IS ALSO WELL AWARE THE MEMORANDUM AND
20  UNDERSTANDING THAT MYSELF AND MS. CHARLICK ARE ASSIGNED, AND
21  HOPEFULLY MR. BARTH BE ASSIGNED AS WELL ONCE HE IS CLEARED BY
22  THE GOVERNMENT.  THOSE BARS US FROM DISCUSSING WITH MR. WILKES
23  THE SPECIFICITY OF CLASSIFIED INFORMATION OUTSIDE OF THE SCIF.
24  WE HAVE TO REVIEW THE CLASSIFIED INFORMATION.  WE HAVE TO
25  DISCUSS IT WITH HIM, BECAUSE IT IS INTEGRAL TO THE PREPARATION

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1  OF OUR DEFENSE HERE AND TO JUST BEING READY TO GO FORWARD IN
2  THIS CASE.
3           IF HERE WERE IN CUSTODY, IT WOULD BECOME AN ABSOLUTE
4  NIGHTMARE TO PREPARE THIS CASE EVEN IN LIGHT OF THE CLASSIFIED
5  INFORMATION.  SO I AM NOT ARGUING THIS POINT NOW, BUT I'D LIKE
6  THE COURT AS THE COURT CONSIDERS ALL THE FACTORS THAT WEIGH IN
7  FAVOR AND AGAINST THE TRANSFER WHETHER OR NOT MR. WILKES WOULD
8  STAY IN CUSTODY.  I KNOW THE COURT WOULD KEEP AN OPEN MIND.  I
9  AM ASKING THE COURT JUST TO BE AWARE OF THAT ADDITIONAL FACT.
10          THE COURT:  I WILL.  IT'S PREMATURE, AND YOU ARE
11 RIGHT.  AND IT'S NOT JUST MY POLICY.  THE BALANCE CHANGES
12 UNDER 3143, MR. CAHN, ONCE SOMEBODY IS CONVICTED OF A CRIME.
13 MR. WILKES HAS BEEN PRESUMED INNOCENT UP TO THE TIME THE JURY
14 REACHED ITS VERDICT, AND I PRESUMED HIM TO BE INNOCENT, AND
15 THE CONDITIONS THAT WERE SET FOR HIS RELEASE WERE ALL
16 PREDICATED ON THAT.  BUT THE PRESUMPTION SHIFTS UPON A JURY
17 VERDICT OF GUILTY.  AND ABSENT -- THAT YOU KNOW THIS IS A
18 SHORTCUT, BUT ABSENT EXTRAORDINARY REASON, THE PERSON IS
19 EXPECTED TO GO INTO CUSTODY ONCE THEY ARE CONVICTED AND
20 SENTENCED AND PENDING APPEAL.  AND YOU ARE RIGHT, SO I FOLLOW
21 THAT RULE.  WHETHER IT'S A GENERAL POLICY OR NOT.  I THINK IT
22 IS ADHERENCE TO 3143.
23          MR. CAHN:  WE UNDERSTAND.
24          THE COURT:  IF YOU CAN CONVINCE ME THAT THERE OUGHT
25 TO BE SOME DEVIATION, I AM WILLING TO LISTEN TO THAT.

PDF created with pdfFactory trial version www.pdffactory.com

1  WHAT ARE YOU DOING TO DO IF HE IS OUT?  HE HAS TO
2  TRAVEL TO LOS ANGELES TO TALK TO YOU ABOUT THIS CASE?
3              MR. HALPERN:  YOUR HONOR, IF I MAY, I CAN CUT
4  THROUGH THIS ONE.  THE COURT LONG GO ASKED THE GOVERNMENT TO
5  DO WHAT WE COULD DO SEE IF WE HAVE SECURE SPACE.  I REALLY
6  DILIGENTLY TRIED TO.  I LOOKED ON THE EAST COAST.  IT IS
7  PROBLEMATIC, BUT I CAN REPORT BACK WE HAVE MANAGED TO DO IT
8  AND SPACE IS AVAILABLE TOMORROW.
9              THE COURT:  IN SAN DIEGO?
10             MR. HALPERN:  IT IS.  JUST DISCUSSED THIS WITH
11 MR. LONDERGAN.  HE CAN GET SOMEBODY OUT TO APPROVE IT.  THAT
12 TAKES CARE ALL THESE ISSUES IN TERMS OF --
13             THE COURT:  MAYBE, EXCEPT FOR THE LAST ONE IF
14 MR. WILKES IS IN CUSTODY.
15             MR. HALPERN:  HE CAN BE ESCORTED THERE, YOUR HONOR.
16             MR. CAHN:  I AM SURE THE MARSHALS WILL BE HAPPY
17 ABOUT ESCORTING EVERY DAY ON A REGULAR BASIS.
18             THE COURT:  WE ARE NOT THERE YET.  WE WILL CROSS
19 THAT BRIDGE WHEN WE COME TO IT.
20             MR. MAC DOUGALL, I AM HAPPY TO HEAR FROM YOU.  I AM
21 WITH YOU ON THE MERITS, BUT YOU SEE THE DILEMMA THAT I FACE?
22 THIS CASE SHOULDN'T BE TRIED TWICE.  IF I HAD SOME ASSURANCE
23 FROM THE U.S. ATTORNEY THAT MAYBE THAT IS FORTHCOMING THAT
24 THEY SAY, FINE, WE WILL FOLD OUR TENT AND TRY THE CASE WHERE
25 IT SHOULD HAVE BEEN BROUGHT IN THE FIRST INSTANCE, THEN I

PDF created with pdfFactory trial version www.pdffactory.com

Case 3:07-cr-00329-LAB   Document 181   Filed 02/05/09   Page 16 of 20

16

1  DON'T THINK I'D HESITATE.  I'D HESITATE, BUT I'D HEAR MR. CAHN
2  OUT ABOUT CONTINUITY OF COUNSEL.
3         YOU HAVE RAISED GOOD REASONS FOR MOVING THE CASE
4  FROM MR. FOGGO'S PROSPECTIVE.  AND JUST ON THE MERITS, MOST OF
5  IT OCCURRED THERE.  ONE WOULD THINK THAT THAT WOULD HAVE BEEN
6  THE PLACE WHERE THEY BROUGHT IT IN THE FIRST INSTANCE.
7         MR. MAC DOUGALL:  I HEARD EVERYTHING THIS COURT
8  SAID.  THE ONE THING I ADD, YOUR HONOR, IS THAT THE ESSENCE OF
9  21(B) IS IN THE INTEREST OF JUSTICE.  I KNOW THE COURT
10 REALIZES -- I THINK EVERYONE DOES -- HOW PHYSICALLY DIFFICULT
11 IT IS FOR US TO DO THIS BI-COASTAL BASIS.  MR. BUTLER AND I
12 CAN'T HAVE A CONVERSATION ABOUT THE EVIDENCE WITHOUT MAKING AN
13 APPOINTMENT TO GO THE SCIF.  THERE THE TWO SCIFS NOW IN THE
14 COURTHOUSE IN ALEXANDRIA.  ONE OF THEM WE UNDERSTAND IS NOW
15 OPEN.
16        THE COURT:  YOU GET PRIORITY NOW.  I CALLED BACK
17 THERE TRYING TO GET ONE OF THOSE SKIFFS MADE AVAILABLE FOR
18 YOUR CONVENIENCE IN THIS CASE.  THEY WERE ALL SPOKEN FOR, BUT
19 IT SUPPOSE YOU GET PRIORITY IF THE CASE WERE ACTUALLY PENDING
20 IN THAT COURT, RIGHT?
21        MR. MAC DOUGALL:  THAT'S MY UNDERSTANDING, YOUR
22 HONOR.  I WANT TO ADD -- AND I DO THIS WITH APOLOGY IN ADVANCE
23 TO MR. WILKES AND HIS COUNSEL.  MR. WILKES HAS BEEN TRIED AND
24 CONVICTED.  HE IS NOW FACING A SECOND INDICTMENT AND PROSPECT
25 OF BEING REMANDED.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1      THE TYPICAL RESULT OF THAT SITUATION, THE VAST
2 MAJORITY -- I THINK EVERYONE WOULD RECOGNIZE WHEN PEOPLE FIND
3 THEMSELVES IN THAT SITUATION DON'T WANT TO GO THROUGH IT
4 AGAIN.  I THINK THE ULTIMATE INJUSTICE WOULD BE IF THIS CASE
5 FOR HIGHLY PROCEDURAL REASONS AND BECAUSE THE U.S. ATTORNEY
6 TAKES A PARTICULAR POSITION HAS TO STAY HERE UNTIL THREE WEEKS
7 BEFORE TRIAL AND THEN A PLEA AGREEMENT IS ENTERED.  I AM NOT
8 PROJECTING THAT, BUT I THINK THAT WOULD BE AN EVENTUALITY.
9      THE COURT:  YOU WEREN'T HARDENED BY THE COMMENT OF
10 MR. CAHN ABOUT WHAT FAIR COURT THIS WAS?
11      MR. MAC DOUGALL:  I AGREE WITH ALL, BUT I JUST KNOW
12 HUMAN NATURE AND THE PROCESS THAT THE COURT DOES.
13      THE COURT:  WELL, I AGREE AS A PRACTICAL MATTER IT
14 IS SOMETHING THAT I AM NOT EVEN SUPPOSED TO TALK ABOUT.  I
15 LOOK THE OTHER WAY WHEN THERE IS DISCUSSION THAT THERE IS
16 GOING TO BE A PLEA AGREEMENT IN THIS CASE.
17      HERE IS WHAT I AM GOING TO DO.  I KNOW IT IS NOT
18 VERY SATISFACTORY TO ANYBODY AT THIS POINT, BUT I AM GOING
19 DEFER RULING ON THIS.  AND MR. HALPERN, I AM GOING TO ASK THAT
20 YOU GO BACK TO MS. HEWITT AND HAVE THE DISCUSSION, AND THEN
21 REPORT BACK TO ME.  I UNDERSTAND THE HOLIDAYS ARE ON US, BUT I
22 THINK THAT ALSO PROVIDES SOME IMPETUS TO GET THE DECISION MADE
23 SO THAT EVERYBODY HAS AN IDEA WHAT MIGHT HAPPENED AFTER THE
24 NEW YEAR.
25      MR. HALPERN:  YES, YOUR HONOR.

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1    THE COURT: A WEEK? HOW ABOUT JANUARY 2ND? CAN YOU
2    HAVE A DECISION BY JANUARY 2ND?
3    MR. HALPERN: WITHOUT QUESTION, YOUR HONOR.
4    THE COURT: I'LL DEFER RULING UNTIL I GET THE
5    GOVERNMENT'S POSITION ON WHAT THEY ARE LIKELY TO DO IN THE
6    EVENT I GRANTED THE SEVERANCE.
7    LET ME SUM UP HERE. I AGREE AT THIS POINT, AT
8    LEAST, THAT THE BALANCE OF EQUITIES -- AND THERE IS EQUITIES
9    AFFECTING ALL SIDES HERE. MR. WILKES TO BE SURE, MR. FOGGO,
10   AND THE UNITED STATES. THE BALANCE OF EQUITIES, I THINK AT
11   THIS POINT, FAVOR THE APPLICATION FOR TRANSFER. AND I TRIED
12   TO PUT THE PERSONALITIES OUT OF IT AND THE PERSONAL
13   CONVENIENCE. MR. WILKES LIVES HERE IN SAN DIEGO. HE WANTS TO
14   BE TRIED HERE IN SAN DIEGO. I GET THAT. I UNDERSTAND THAT.
15   BUT WHEN I LOOK AT THE CASE OBJECTIVELY, MOST OF
16   WHAT'S ALLEGED OCCURRED ON THE EAST COAST OR OUTSIDE OF THE
17   COUNTRY. MOST OF THE WITNESSES ARE THERE THAT HAVE CONSENTED
18   TO BE INTERVIEWED, THEY DON'T WANT TO COME HERE TO BE
19   INTERVIEWED. THEY WANT LAWYERS TO GO THERE. MOST OF THE
20   PREPARATION OUTSIDE OF READING THE DISCOVERY IS GOING TO HAVE
21   TO OCCUR IN THAT VENUE, NOT THIS ONE. SO IT SEEMS TO ME THAT
22   THE BALANCE OF EQUITIES FAVOR HAVING THE CASE TRIED IN THE
23   EASTERN DISTRICT OF VIRGINIA.
24   I AM NOT GOING TO DO THAT, MR. MAC DOUGALL, UNDER
25   THE PAIN OF HAVING TO TRY THE CASE TWICE. I AM MINDFUL THAT A

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   LOT OF TIME THERE ARE AGREEMENTS MADE WHEN THERE HAS BEEN A
 2   CONVICTION IN ONE CASE AND OTHER ONE FOLLOWS ON THE HEELS, BUT
 3   I DON'T THINK I SPECULATE AS TO WHAT'S LIKELY TO HAPPEN THERE.
 4             I THINK THE LAST PIECE OF THE PUZZLE IS WHAT THE
 5   U.S. ATTORNEY WILL BE INCLINED TO DO IF THE COURT GRANTED THE
 6   MOTION TO SEVER AND TRANSFER MR. FOGGO'S CASE WHICH IS
 7   PENDING, RIGHT, ON BEHALF OF MR. FOGGO?  YOU MADE THAT AND YOU
 8   HAVE RENEWED IT?
 9             MR. MAC DOUGALL:  NO, RENEWED IT.
10             THE COURT:  I WILL TAKE THAT UNDER SUBMISSION.
11             MR. HALPERN, IF YOU COULD HAVE SOMETHING TO ME NO
12   LATER THAN THE 2ND, SEND A COPY TO COUNSEL FOR BOTH DEFENDANTS
13   WHAT THE U.S. ATTORNEY'S POSITION IS ON THAT, AND THEN I WILL
14   NOTIFY YOU IN A WRITTEN ORDER WHAT THE COURT'S DECISION IS.
15             THE OBJECTION IS SUSTAINED, FOR WHAT IT'S WORTH,
16   MR. CAHN, TO MY INCLINATION JUST TO SEND THE THING WITHOUT THE
17   CONSENT OF EITHER SIDE.  I REALIZE I DON'T HAVE AUTHORITY TO
18   DO THAT.
19             ANYTHING ELSE?
20             MR. MAC DOUGALL:  NO, YOUR HONOR.
21             THE COURT:  MR. CAHN, ANYTHING ELSE ON THE WILKES
22   FOGGO MATTER?
23             MR. CAHN:  NOTHING THAT I CAN THINK OF, YOUR
24   HONOR.
25             MR. HALPERN:  NOTHING FROM THE GOVERNMENT.
```

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com

1        THE COURT:  MR. LONDERGAN, GOOD TO SEE YOU.

2        MR. LONDERGAN:  HAPPY HOLIDAYS.

3                        --O0O--

4

5

6        I HEREBY CERTIFY THAT THE TESTIMONY

7        ADDUCED IN THE FOREGOING MATTER IS

8        A TRUE RECORD OF SAID PROCEEDINGS.

9

10       S/EVA OEMICK                    1-11-08

11       EVA OEMICK                      DATE
         OFFICIAL COURT REPORTER

COMPUTER-AIDED TRANSCRIPTION

PDF created with pdfFactory trial version www.pdffactory.com